CLOSED

# U.S. District Court
## District of New Jersey [LIVE] (Newark)
## CIVIL DOCKET FOR CASE #: 2:08-cv-00126-SDW-MCA
### Internal Use Only

EIDMAN v. O'NEAL et al
Assigned to: Susan D. Wigenton
Referred to: Magistrate Judge Madeline C. Arleo
Cause: 15:78m(a) Securities Exchange Act

Date Filed: 01/09/2008
Date Terminated: 06/06/2008
Jury Demand: Plaintiff
Nature of Suit: 850
Securities/Commodities
Jurisdiction: Federal Question

**Plaintiff**

**DAVID EIDMAN**
*Derivatively On Behalf of MERRILL
LYNCH & CO., INC.*

represented by **JAMES V. BASHIAN**
LAW OFFICE OF JAMES V.
BASHIAN, PC
FAIRFIELD COMMONS
271 ROUTE 46 WEST
SUITE F207
FAIRFIELD, NJ 07004
(973) 227-6330
Email: jbashian@bashianlaw.com
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*

**PAUL OLIVA PARADIS**
HORWITZ HORWITZ & PARADIS
28 WEST 44TH STREET
16TH FLOOR
NEW YORK, NY 10036
212-404-2200
Email: pparadis@hhplawny.com
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*



U.S. DISTRICT COURT
FILED
JUN 1 2 2008
S. D. OF N.Y.

V.

**Defendant**

**ERNEST STANLEY O'NEAL**

represented by **MICHAEL R. GRIFFINGER**
GIBBONS, PC
ONE GATEWAY CENTER
NEWARK, NJ 07102-5310
(973) 596-4500
Email: griffinger@gibbonslaw.com

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**CAROL T. CHRIST**                    represented by  **MICHAEL R. GRIFFINGER**
                                                       (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

**Defendant**

**ARMANDO M. CODINA**                  represented by  **MICHAEL R. GRIFFINGER**
                                                       (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

**Defendant**

**VIRGIS W. COLBERT**                  represented by  **MICHAEL R. GRIFFINGER**
                                                       (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

**Defendant**

**ALBERTO CRIBIORE**                   represented by  **MICHAEL R. GRIFFINGER**
                                                       (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

**Defendant**

**JOHN D. FINNEGAN**                   represented by  **MICHAEL R. GRIFFINGER**
                                                       (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

**Defendant**

**JUDITH MAYHEW JONAS**                represented by  **MICHAEL R. GRIFFINGER**
                                                       (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

**Defendant**

**AULANA L. PETERS**                   represented by  **MICHAEL R. GRIFFINGER**
                                                       (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

**Defendant**

**JOSEPH W. PRUEHER**                  represented by  **MICHAEL R. GRIFFINGER**
                                                       (See above for address)
                                                       *LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Defendant**

**ANN N. REESE**                    represented by **MICHAEL R. GRIFFINGER**
                                    (See above for address)
                                    *LEAD ATTORNEY*
                                    *ATTORNEY TO BE NOTICED*

**Defendant**

**CHARLES O. ROSSOTTI**             represented by **MICHAEL R. GRIFFINGER**
                                    (See above for address)
                                    *LEAD ATTORNEY*
                                    *ATTORNEY TO BE NOTICED*

**Defendant**

**MERRILL LYNCH & CO., INC.**       represented by **MICHAEL R. GRIFFINGER**
*NOMINAL DEFENDANT*                 (See above for address)
                                    *LEAD ATTORNEY*
                                    *ATTORNEY TO BE NOTICED*

                                    **PAUL OLIVA PARADIS**
                                    (See above for address)
                                    *LEAD ATTORNEY*
                                    *ATTORNEY TO BE NOTICED*

                                    **GEOFFREY A. NORTH**
                                    GIBBONS, PC
                                    ONE GATEWAY CENTER
                                    NEWARK, NJ 07102-5310
                                    (973) 596-4500
                                    Fax: (973) 596-0545
                                    Email: gnorth@gibbonslaw.com
                                    *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 01/09/2008 | 1 | NOTICE OF REMOVAL by MERRILL LYNCH & CO., INC. from SUPERIOR COURT OF BERGEN COUNTY, case number L-8872-07. ( Filing fee $ 350 receipt number 1807929) (Attachments: # 1 EXH A 1 OF 5# 2 EXH A 2 OF 5 (VERIFIED AMENDED DERIVATIVE COMPLAINT)# 3 EXH A 3 OF 5# 4 EXH A 4 OF 5# 5 EXH A 5 OF 5# 6 EXH B# 7 EXH C# 8 CERT RULE 11.2# 9 CERT OF SRV)(dr, ) (Entered: 01/10/2008) |
| 01/09/2008 | 2 | Corporate Disclosure Statement by MERRILL LYNCH & CO., INC. identifying NONE as Corporate Parent.. (dr, ) (Entered: 01/10/2008) |
| 01/10/2008 | 3 | Application and Proposed Order for Clerk's Order to extend time to answer as to Nominal Defendant Merrill Lynch & Co., Inc., pursuant to Rule 6.1.. (Attachments: # 1 Certificate of Service)(GRIFFINGER, MICHAEL) |

| | | |
|---|---|---|
| | | (Entered: 01/10/2008) |
| 01/10/2008 | 8 | MOTION to Transfer Case to SO. DIST. OF NY by MERRILL LYNCH & CO., INC.. (Attachments: # 1 Brief # 2 Certificate of Service # 3 Cover Letter)(DD, ) (Entered: 01/15/2008) |
| 01/11/2008 | 4 | NOTICE by MERRILL LYNCH & CO., INC. *of Filing Notice of Removal Stamped Filed by the Superior Court of New Jersey, Law Division, Bergen County* (Attachments: # 1 Exhibit A, Part 1 of 5# 2 Exhibit A, Part 2 of 5# 3 Exhibit A, Part 3 of 5# 4 Exhibit A, Part 4 of 5# 5 Exhibit A, Part 5 of 5# 6 Exhibit B# 7 Exhibit C)(GRIFFINGER, MICHAEL) (Entered: 01/11/2008) |
| 01/11/2008 | 5 | CERTIFICATE OF SERVICE by MERRILL LYNCH & CO., INC. re 4 Notice (Other), Notice (Other) *Stamped Filed by the Superior Court of New Jersey, Law Division, Bergen County* (GRIFFINGER, MICHAEL) (Entered: 01/11/2008) |
| 01/11/2008 | 6 | CERTIFICATE OF SERVICE by MERRILL LYNCH & CO., INC. re 4 Notice (Other), Notice (Other) (GRIFFINGER, MICHAEL) (Entered: 01/11/2008) |
| 01/11/2008 | | CLERKS TEXT ORDER - The Application for a Clerks Order Extending Time to Answer - Document #3 submitted by (M. GRIFFINGER) on (1/10/08) has been GRANTED. The answer due date has been set for (1/31/08). (DD, ) (Entered: 01/11/2008) |
| 01/14/2008 | 7 | MOTION to Stay *Proceedings Pending Determination of the Judicial Panel on Multidistrict Litigation* by MERRILL LYNCH & CO., INC.. (Attachments: # 1 Declaration of Scott D. Musoff# 2 Exhibit A to Declaration of Scott D. Musoff# 3 Exhibit B to Declaration of Scott D. Musoff# 4 Brief # 5 Text of Proposed Order # 6 Certificate of Service) (GRIFFINGER, MICHAEL) Modified on 1/28/2008 (DD, ). (Entered: 01/14/2008) |
| 01/15/2008 | | (Court only) ***Motions terminated: 8 MOTION to Transfer Case to SO. DIST. OF NY filed by MERRILL LYNCH & CO., INC., 7 MOTION to Stay *Proceedings Pending Determination of the Judicial Panel on Multidistrict Litigation* filed by MERRILL LYNCH & CO., INC.. (DD, ) (Entered: 01/15/2008) |
| 01/16/2008 | 9 | Application and Proposed Order for Clerk's Order to extend time to answer as to Ernest Stanley O'Neal, Carol T. Christ, Armando M. Codina, Virgis W. Colbert, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, Aulana L. Peters, Joseph W. Prueher, Ann N. Reese and Charles O. Rosotti.. (Attachments: # 1 Certificate of Service)(GRIFFINGER, MICHAEL) (Entered: 01/16/2008) |
| 01/22/2008 | | CLERKS TEXT ORDER - The Application for a Clerks Order Extending Time to Answer - Document # 9 submitted by (M. GRIFFINGER) on (1/16/08) has been GRANTED. The answer due date has been set for (1/31/08). (DD, ) (Entered: 01/22/2008) |
| 01/22/2008 | | (Court only) ***Attorney MICHAEL R. GRIFFINGER for JUDITH |

| | | |
|---|---|---|
| | | MAYHEW JONAS and AULANA L. PETERS added. (DD, ) (Entered: 01/22/2008) |
| 01/23/2008 | 10 | MOTION to Remand *to New Jersey Superior Court* by DAVID EIDMAN. (Attachments: # 1 Brief in Support of Motion to Remand# 2 Text of Proposed Order # 3 Certificate of Service)(BASHIAN, JAMES) (Entered: 01/23/2008) |
| 01/24/2008 | | Set Deadlines as to 10 MOTION to Remand *to New Jersey Superior Court*. Motion Hearing set for 2/19/2008 before Susan D. Wigenton. [PLEASE BE ADVISED THAT THIS MOTION WILL BE DECIDED ON THE PAPERS UNLESS OTHERWISE NOTIFIED BY THE COURT] (DD, ) (Entered: 01/24/2008) |
| 01/25/2008 | 11 | BRIEF *in Opposition to Defendants' 7 Motion to Stay Proceedings Pending Determination of Judicial Panel on Multidistrict Litigation* filed by DAVID EIDMAN. (Attachments: # 1 Certificate of Service)(BASHIAN, JAMES) (Entered: 01/25/2008) |
| 01/28/2008 | | Set Deadlines as to 7 MOTION to Stay *Proceedings Pending Determination of the Judicial Panel on Multidistrict Litigation*. Motion Hearing set for 2/19/2008 before Susan D. Wigenton. [PLEASE BE ADVISED THAT THIS MOTION WILL BE DECIDED ON THE PAPERS UNLESS OTHERWISE NOTIFIED BY THE COURT] (DD, ) (Entered: 01/28/2008) |
| 01/28/2008 | 12 | APPLICATION/PETITION for Order Extending Defendants' Time to Answer, Move or Otherwise Respond to Plaintiff's Verified Amended Derivative Complaint for by JUDITH MAYHEW JONAS, AULANA L. PETERS, JOSEPH W. PRUEHER, ANN N. REESE, CHARLES O. ROSSOTTI, MERRILL LYNCH & CO., INC., ERNEST STANLEY O'NEAL, CAROL T. CHRIST, ARMANDO M. CODINA, VIRGIS W. COLBERT, ALBERTO CRIBIORE, JOHN D. FINNEGAN. (Attachments: # 1 Letter to Magistrate Judge Arleo, # 2 Text of Proposed Order Extending Defendants' Time to Answer, Move or Otherwise Respond to Plaintiff's Verified Amended Derivative Complaint, # 3 Certificate of Service) (GRIFFINGER, MICHAEL) (Entered: 01/28/2008) |
| 01/31/2008 | 13 | Letter from Michael R. Griffinger to William T. Walsh, Clerk of Court, Invoking Local Civil Rule 7.1(d)(5) re 10 MOTION to Remand *to New Jersey Superior Court*. (Attachments: # 1 Certificate of Service) (GRIFFINGER, MICHAEL) (Entered: 01/31/2008) |
| 02/04/2008 | 14 | ORDER EXTENDING TIME for defts., MERRILL LYNCH & CO., INC. & CO-DEFTS. answer Amended Cmp. until & including 10 days after this Court hears & decides both Merrill Lynch's pending motion to stay.. Signed by Magistrate Judge Madeline C. Arleo on 1/30/08. (DD, ) (Entered: 02/04/2008) |
| 02/07/2008 | 15 | Letter from Michael R. Griffinger to the Hon. Susan D. Wigenton Respectfully Requesting an Adjournment of the Motion Day for Merrill Lynch & Co., Inc.'s Motion to Stay and an Extension of the Time within which Merrill Lynch May File and Serve Reply Papers re 7 MOTION to Stay *Proceedings Pending Determination of the Judicial Panel on* |

| | | |
|---|---|---|
| | | *Multidistrict Litigation.* (Attachments: # 1 Text of Proposed Order Adjourning the Motion Day for Merrill Lynch & Co., Inc.'s Motion to Stay and Extending the Time within which Merrill Lynch May File and Serve Reply Papers, # 2 Certificate of Service)(GRIFFINGER, MICHAEL) (Entered: 02/07/2008) |
| 02/08/2008 | 16 | Letter from Michael R. Griffinger to The Honorable Susan D. Wigenton Confirming All Parties Consent to Adjourning Motion to Stay and Extending Merrill Lynch & Co., Inc.'s Time to File Reply Papers re 7 MOTION to Stay *Proceedings Pending Determination of the Judicial Panel on Multidistrict Litigation.* (Attachments: # 1 Enclosure to Letter to Judge Wigenton, # 2 Certificate of Service)(GRIFFINGER, MICHAEL) (Entered: 02/08/2008) |
| 02/15/2008 | 17 | ORDER resetting Hearing on Motion 7 MOTION to Stay *Proceedings Pending Determination of the Judicial Panel on Multidistrict Litigation* : Motion Hearing reset for 3/3/2008 10:00 AM before Susan D. Wigenton.. Signed by Magistrate Judge Madeline C. Arleo on 2/13/08; that the time w/in which Merrill Lynch shall file & serve its reply papers on the Stay Motion shall be extended until 2/15/08. (DD, ) (Entered: 02/15/2008) |
| 02/15/2008 | 18 | REPLY to Response to Motion re 7 MOTION to Stay *Proceedings Pending Determination of the Judicial Panel on Multidistrict Litigation* filed by MERRILL LYNCH & CO., INC.. (Attachments: # 1 Declaration of Scott D. Musoff in Further Support of Motion to Stay, # 2 Exhibit A to Musoff Declaration, # 3 Exhibit B to Musoff Declaration, # 4 Exhibit C to Musoff Declaration, # 5 Exhibit D to Musoff Declaration, # 6 Exhibit E to Musoff Declaration, # 7 Certificate of Service)(GRIFFINGER, MICHAEL) (Entered: 02/15/2008) |
| 02/19/2008 | 19 | BRIEF in Opposition re 10 MOTION to Remand *to New Jersey Superior Court* filed by MERRILL LYNCH & CO., INC.. (Attachments: # 1 Certificate of Service)(GRIFFINGER, MICHAEL) (Entered: 02/19/2008) |
| 02/20/2008 | 20 | NOTICE of Appearance by GEOFFREY A. NORTH on behalf of MERRILL LYNCH & CO., INC. (NORTH, GEOFFREY) (Entered: 02/20/2008) |
| 02/25/2008 | 21 | REPLY to Response to Motion re 10 MOTION to Remand *to New Jersey Superior Court* filed by DAVID EIDMAN. (Attachments: # 1 Certificate of Service)(BASHIAN, JAMES) (Entered: 02/25/2008) |
| 02/27/2008 | 22 | Letter from Michael R. Griffinger. (Attachments: # 1 Enclosure, # 2 Enclosure)(GRIFFINGER, MICHAEL) (Entered: 02/27/2008) |
| 03/17/2008 | 23 | Letter from Michael R. Griffinger to the Honorable Susan D. Wigenton, U.S.D.J. re 22 Letter. (Attachments: # 1 Enclosure - In re Merrill Lynch Consolidation Order, # 2 Certificate of Service)(GRIFFINGER, MICHAEL) (Entered: 03/17/2008) |
| 04/07/2008 | 24 | Letter from Michael R. Griffinger to the Hon. Susan D. Wigenton. (Attachments: # 1 Enclosure to Letter to Judge Wigenton, # 2 Certificate of Service)(GRIFFINGER, MICHAEL) (Entered: 04/07/2008) |
| | | |

| 05/07/2008 | 25 | ORDER denying as moot 7 Motion to Stay; denying as moot 10 Motion to Remand. Signed by Susan D. Wigenton on 5/1/08. (DD, ) (Entered: 05/07/2008) |
| 06/05/2008 | 26 | Certified Copy of MDL ORDER transferring action to USDC for the Southern District of New York (jd, ) (Entered: 06/06/2008) |
| 06/06/2008 |  | ***Civil Case Terminated. (jd, ) (Entered: 06/06/2008) |

..........ed as a true copy on
This Date: 6-6-08
By Anewell Monaeka
Clerk
Deputy

Michael R. Griffinger
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102-5310
mgriffinger@gibbonslaw.com
Tel:  973-596-4500
Fax:  973-639-6294

Jay B. Kasner
Scott D. Musoff
**SKADDEN, ARPS, SLATE,**
  **MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
Tel: 212-735-3000
Fax: 212-735-2000

*Co-Counsel for Nominal Defendant*
*Merrill Lynch & Co., Inc.*

<div align="center">

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

</div>

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| DAVID EIDMAN, Derivatively On Behalf of MERRILL LYNCH & CO., INC., | SUPERIOR COURT OF NEW JERSEY LAW DIVISION:  BERGEN COUNTY |
| Plaintiff, | (State Court Docket No. L-8872-07) |
| vs. | CIVIL ACTION NO. _____ |
| ERNEST STANLEY O'NEAL, CAROL T. CHRIST, ARMANDO M. CODINA, VIRGIS W. COLBERT, ALBERTO CRIBIORE, JOHN D. FINNEGAN, JUDITH MAYHEW JONAS, AULANA L. PETERS, JOSEPH W. PRUEHER, ANN N. REESE and CHARLES O. ROSOTTI, | **NOTICE OF REMOVAL**  **Document Filed Electronically** |
| Defendants, | |
| -and- | |
| MERRILL LYNCH & CO., INC., | |
| Nominal Defendant. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

TO:   THE HONORABLE JUDGES OF THE UNITED STATES
      DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

           PLEASE TAKE NOTICE that for the reasons set forth below, Defendant Merrill

Lynch & Co., Inc. ("Merrill Lynch") files this Notice of Removal to remove this action from the

Superior Court of New Jersey, Law Division, Bergen County, New Jersey ("Superior Court") to

the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1441.  In

support of the Notice of Removal, Merrill Lynch states as follows:

## BACKGROUND TO THE NOTICE OF REMOVAL

1.     Plaintiff David Eidman (the "plaintiff") filed a "Verified Derivative Complaint" on

or about December 4, 2007 in the Superior Court.  On or about December 17, 2007, plaintiff

filed an "Verified Amended Derivative Complaint" (the "Complaint") which corrected the

caption of the Complaint.  True and correct copies of the Verified Derivative Complaint, the

Complaint and Summons are attached hereto as Exhibit A.  No defendant was served with the

Complaint prior to December 21, 2007.

2.     The Complaint purports to assert claims derivatively on behalf of Merrill Lynch

for Breach of Fiduciary Duties, Abuse of Control, Gross Mismanagement, Waste of Corporate

Assets and Quasi Contract/Unjust Enrichment based upon, among other things, violations of the

federal securities laws including allegedly permitting Merrill Lynch to file false and misleading

filings with the Securities and Exchange Commission (the "SEC").

3.     The Complaint alleges, *inter alia*, that in early October, 2007, Merrill Lynch

issued an earnings pre-release estimating an "overall $4.5 billion write-down across CDOs

[collateralized debt obligations] and U.S. subprime mortgages for the third quarter of 2007."

(Compl. ¶ 49).

2

4. The Complaint further alleges that on October 24, 2007, Merrill Lynch "was forced to write down an overall $7.9 billion across CDOs and U.S. subprime mortgages, $2.4 billion higher than the earnings pre-release estimate." (*Id.* ¶ 50).

5. On October 30, 2007, a purported securities class action asserting claims based on Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Securities and Exchange Commission Rule 10b-5 promulgated thereunder was commenced in the United States District Court for the Southern District of New York against Merrill Lynch and former CEO E. Stanley O'Neal, Co-Presidents and Co-COOs Ahmass L. Fakahany and Gregory J. Fleming and then, now former, CFO Jeffrey N. Edwards. This action, which is assigned to the Hon. Leonard B. Sand, is styled *Life Enrichment Foundation v. Merrill Lynch & Co., Inc., et al.*, 07 CV 9633 (LBS). Among other things, the allegations in the complaint in the *Life Enrichment* action center on purportedly false and misleading statements and/or omissions concerning Merrill Lynch's business and financial results with respect to CDO and subprime exposure issued during an alleged class period of February 26, 2007 through and including October 23, 2007. Four other substantially identical putative securities class actions were filed on November 6, 2007, December 4, 2007, December 7, 2007 and December 28, 2007 (collectively, all five actions are referred to as the "Federal Securities Actions"). These subsequently filed actions are styled *Savena v. Merrill Lynch & Co., Inc.*, 07 CV 9837 (LBS); *Kosseff v. Merrill Lynch & Co., Inc., et al.*, 07 CV 10984 (LBS); *Garber v. Merrill Lynch & Co., Inc., et al.*, 07 CV 11080 (LBS); and *Conn v. Merrill Lynch & Co., Inc., et al.*, 07 CV 11626.[1]

---

[1] The *Conn* action, a purported class action on behalf of persons who exchanged securities of First Republic Bank for securities of Merrill Lynch in connection with a merger in September 2007, sets forth virtually the same allegations as the other purported securities class actions.

3

6.     Additionally, three purported shareholder derivative actions are pending before Judge Sand.  Two were commenced in the Southern District of New York on November 1, 2007 and November 8, 2007 against Merrill Lynch (as nominal defendant) and the same defendants that were subsequently named in the State Court Action.  One, originally filed in New York state court on November 11, 2007, was removed to the Southern District of New York on December 7, 2007 (the "Federal Derivative Actions").  The Federal Derivative Actions are styled *Arthur v. O'Neal, et al.*, 07 CV 9696 (LBS); *Loveman v. O'Neal, et al.*, 07 CV 9888 (LBS); and *Operative Plasterers & Cement Masons Local 262 Pension and Annuity Funds v. E. Stanley O'Neal, et al.*, 07 CV 11085 (LBS).  The Federal Derivative Actions include essentially the same allegations as the Federal Securities Actions, *i.e.*, that defendants issued purportedly false and misleading statements and/or omissions concerning Merrill Lynch's business and financial results with respect to CDO and subprime exposure.

7.     In addition to the Federal Securities Actions and the Federal Derivative Actions, multiple purported class actions asserting, among other things, violations of sections 404 and 405 of the Employee Retirement Income Security Act ("ERISA") arising out of the same core allegations have also been commenced in the Southern District of New York (the "ERISA Actions") and are pending before or are in the process of being assigned to Judge Sand.  *See, e.g.*, *Estey v. Merrill Lynch & Co., Inc., et al.*, 07 CV 10268 (LBS).

8.     On December 13, 2007, Judge Sand adjourned the time for all defendants to move, answer or otherwise respond to the complaints in those actions pending in the Southern District of New York.  A true and correct copy of this letter is attached hereto as Exhibit B.

4

9. For the reasons explained below, the State Court Action is properly removable under 28 U.S.C. §§ 1331 and 1441 because the claims asserted therein arise under the laws of the United States.

## FEDERAL QUESTION JURISDICTION

10. The State Court Action is removable under 28 U.S.C. §§ 1331 and 1441 because the claims asserted therein involve a strong federal interest and pose substantial federal questions under the federal securities laws. As set forth below by way of example, the focus and thrust of the Complaint is alleged conduct that is governed by, and allegedly in contravention of, the federal securities laws.

11. Among other things, plaintiff alleges that the "director defendants permitted Merrill to issue a series of materially false and misleading financial statements and SEC filings." (Compl. at 22). Plaintiff specifically alleges, citing to Merrill Lynch's 2006 SEC Form 10-K filing filed on February 26, 2007, that "Defendants caused false statements to be issued in SEC filings." (Compl. ¶ 61).

12. Similarly, referring in part to the 2006 SEC Form 10-K filing and an SEC Form 10-Q filed on August 3, 2007, plaintiff alleges that "[b]y permitting Merrill and its management to issue these materially false and misleading statements, the Directors breached their fiduciary duties to Merrill." (Compl. ¶ 66). Plaintiff asserts that defendants "caus[ed] the filing of false public statements that contained material misstatements and omissions regarding the financial health of the Company." (Compl. ¶ 77(ii)).

13. Plaintiff also alleges that the "Securities and Exchange Commission has initiated an informal inquiry and investigation to examine whether Merrill accurately valued the Company's mortgage portfolio." (Compl. ¶ 68). See also (Compl. ¶ 73(b)(ii) ("An informal

5

inquiry has been initiated by the SEC in order to determine whether the Company has violated the federal securities laws.")).

14.     Plaintiff further alleges, among other things, that:

- The "Director Defendants were involved in reviewing and/or disseminating the materially false and misleading statements and information contained in the Company's SEC filings, press releases, and other public documents . . . in violation of the federal securities laws." (Compl. ¶ 73(b)(i))(emphasis added);

- The members of the audit committee "individually and collectively failed in their duties of ensuring that the Company file true and complete financial statements with the SEC and are thereby liable for violations of the federal securities laws.  An informal inquiry has been initiated by the SEC in order to determine whether the Company has violated the federal securities laws." (Compl. ¶ 73(b)(ii))(emphasis added); and

- The members of the finance committee "individually and collectively failed in their duties of ensuring that the Company file true and complete financial statements with the SEC and are thereby liable for violations of the federal securities laws.  An informal inquiry has been initiated by the SEC in order to determine whether the Company has violated the federal securities laws." (Compl. ¶ 73(b)(iii))(emphasis added).

15.     Each of the above allegations is incorporated by reference and realleged in each of the five causes of action contained in the Complaint.

16.     Accordingly, plaintiff alleges conduct – the filings and other public statements – that is governed by the federal securities laws.  Plaintiff's alleged injuries also depend primarily upon accusations against Merrill Lynch for violations of the federal securities law.  Thus, this case involves a strong federal interest and will require the interpretation of federal law.

#1258391 v1
999999-00104

**THE REMOVAL PREREQUISITES HAVE BEEN SATISFIED**

17.     Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is being filed within thirty days after the receipt by the first defendant, through service or otherwise, of a copy of the initial pleading, and it is, therefore, timely.  *See Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999).

18.     True and correct copies of all process, pleadings and orders served upon Merrill Lynch in the State Court Action are attached hereto as Exhibit A.

19.     All other defendants consent to removal.  These consents are attached hereto as Exhibit C.

20.     The District of New Jersey is the district in which the Superior Court of New Jersey, Law Division, Bergen County, New Jersey is located and in which plaintiff filed his Complaint and the action is pending.

21.     In accordance with 28 U.S.C. § 1446(d), promptly after filing this Notice of Removal, Merrill Lynch will give written notice to all adverse parties and will file a copy of this Notice of Removal with the Superior Court of New Jersey, Law Division, Bergen County, New Jersey.

22.     No previous application has been made by Merrill Lynch for this or similar relief.

#1258391 v1
999999-00104

WHEREFORE, Merrill Lynch submits that this action is now properly removed from the

Superior Court of New Jersey, Law Division, Bergen County, New Jersey and is properly before

this District Court and that all further actions should take place before this Court.

Dated: January 9, 2008
      Newark, New Jersey                    GIBBONS P.C.

                                    By:  s/ Michael R. Griffinger
                                          Michael R. Griffinger
                                          GIBBONS P.C.
                                          One Gateway Center
                                          Newark, NJ 07102-5310
                                          mgriffinger@gibbonslaw.com
                                          Tel: 973-596-4500
                                          Fax: 973-639-6294

                                          *Attorneys for Defendant*
                                          *Merrill Lynch & Co., Inc.*

Of counsel:

      Jay B. Kasner
      Scott D. Musoff
      SKADDEN, ARPS, SLATE,
       MEAGHER & FLOM LLP
      Four Times Square
      New York, New York 10036
      Tel: 212-735-3000
      Fax: 212-735-2000

      *Attorneys for Defendant*
      *Merrill Lynch & Co., Inc.*

#1258391 v1
999999-00104

Exhibit A

LAW OFFICES OF JAMES V. BASHIAN, P.C..
James V. Bashian, Esq. (JB-6331)
271 Route 46 West, Suite F207
Fairfield, New Jersey 07004
Tel: (973) 227-6330
Fax: (973) 808-8665

Attorney for Plaintiff

[Additional Counsel Appear on Signature Page]

**SUPERIOR COURT BERGEN COUNTY**
**FILED**

**DEC – 4 2007**

*[signature]*

DEPUTY CLERK

| | |
|---|---|
| David Eidman,<br>Derivatively On Behalf of<br><br>MERRILL LYNCH & CO., INC.,<br><br>       Plaintiff,<br><br><br>v.<br><br>ERNEST STANLEY O'NEAL,<br>CAROL T. CHRIST, ARMANDO M.<br>CODINA, VIRGIS W. COLBERT,<br>ALBERTO CRIBIORE, JOHN D.<br>FINNEGAN, JUDITH MAYHEW JONAS,<br>AULANA L. PETERS, JOSEPH W.<br>PRUEHER, ANN N. REESE,<br>CHARLES O. ROSSOTTI, AHMASS L.<br>FAKAHANY, GREGORY J. FLEMING and<br>JEFFREY N. EDWARDS<br><br>       Defendants,<br><br>and<br><br>MERRILL LYNCH & CO., INC.,<br><br>       Nominal Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br><br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION: BERGEN COUNTY
Docket No.: *L- 8872-07*

CIVIL ACTION

**VERIFIED DERIVATIVE**
**COMPLAINT**

## NATURE OF THE ACTION

1.     Plaintiff, David Eidman ("Plaintiff"), brings this action derivatively on behalf of nominal defendant Merrill Lynch & Co., Inc. (hereinafter "Merrill" "Merrill Lynch" or the "Company") against its Board of Directors (hereinafter the "Board," "Director Defendants," ), in connection with breaches of their fiduciary duties of loyalty, due care and oversight of Merrill's imprudent underwriting of Collateralized Debt Obligations ("CDOs") and insufficient internal controls and mismanagement by the Company's managing senior executives between 2003 and 2007 (hereinafter the "Relevant Time Period").  Plaintiff alleges upon personal knowledge as to his own acts, and upon information and belief as to all other matters.  Plaintiff's information and belief is based on the investigation conducted by counsel.

2.     This shareholder derivative suit seeks to remedy Defendants' breach of fiduciary duties, abuse of control, and gross mismanagement arising out of a wrongful course of business conduct whereby Defendants: (i) caused Merrill to engage in unsound underwriting practices of CDOs that ultimately forced the Company to write down losses exceeding $7.9 billlion for the third quarter of 2007; (ii) exposed Merrill to over $40 billion in CDOs as of July of 2007; and (iii) agreed to allow the Chief Executive Officer to resign and receive a full retirement package worth more than $160 million.

## JURISDICTION AND VENUE

3.     The allegations contained herein are brought derivatively on behalf of nominal defendant Merrill.  Accordingly, this Court has jurisdiction pursuant to N.J. Court Rules, R. 4:32-5.

4.     Plaintiff David Eidman currently resides in Bergen County, New Jersey. Accordingly, Venue is properly laid in this County pursuant to N.J. Court Rules, R.4:3-2(a).

# PARTIES

## Plaintiff

5.       Plaintiff David Eidman is a Merrill shareholder and was a Merrill shareholder throughout the entirety of the time period of the complained of actions alleged herein, and remains a Merrill shareholder continuously to date. Plaintiff David Eidman purchased shares on November 16, 2003. Plaintiff is a citizen and resident of the State of New Jersey.

## Nominal Defendant

6.       Nominal Defendant Merrill Lynch & Co., Inc. is a corporation incorporated, organized and existing under the laws of the State of Delaware, with its registered office located at Corporation Trust Center, 1209 Orange Street, in the City of Wilmington, County of New Castle. The Company's central corporate headquarters is located at 4 World Financial Center, 250 Vesey Street, New York, New York, 10080. According to the Company's website, "Merrill is one of the world's leading wealth management, capital markets and advisory companies, with offices in 38 countries and territories and total client assets of approximately $1.8 trillion. Merrill Lynch offers a broad range of services to private clients, small businesses, and institutions and corporations, organizing its activities into two interrelated business segments - Global Markets & Investment Banking Group and Global Wealth Management, which is comprised of Global Private Client and Global Investment Management. As an investment bank, it is a leading global trader and underwriter of securities and derivatives across a broad range of asset classes and serves as a strategic advisor to corporations, governments, institutions and individuals worldwide."

**Director Defendants**

7.    Defendant Ernest Stanley O'Neal is the former Chief Executive Officer and the former Chairman of the Board of Directors of Merrill. He resigned on November 1, 2007 after having served in numerous senior management positions at the Company prior to serving as Chief Executive Officer. Defendant O'Neal joined Merrill in 1986 and worked in the bond department. In the early 1990s, Defendant O'Neal became the head of Merrill's leveraged finance division. After serving as global head of capital markets and co-head of the corporate and institutional client group, he spent two years as CFO from 1998 to 2000. He then became President of Merrill's U.S. Private Client Group, before becoming President of the Company in 2001. In 2003, Mr. O'Neal became CEO and Chairman of the Board of Merrill Lynch. In addition, Mr. O'Neal was a member of the Board of Directors of General Motors from 2001-2006, and recently resigned from the Board of Directors of BlackRock, Inc. on October 30, 2007. Defendant O'Neal is a citizen of the State of New York.

8.    Defendant Carol T. Christ has been a Merrill Director since July of 2007 and has served as a member of the Public Policy and Responsibility Committee of the Board. In June 2002, Director Christ became the 10th president of Smith College. Prior to that, Ms. Christ spent more than 30 years at the University of California, Berkeley. She joined the English faculty in 1970, and, as chair of her department from 1985 to 1988, she built and maintained one of the top-ranked English departments in the country. She entered the University's administration in 1988, serving first as Dean of Humanities and later as Provost and Dean of the College of Letters and Sciences. In 1994, Ms. Christ was appointed Vice Chancellor and provost at Berkeley. Defendant Christ is a citizen of the State of Massachusetts.

9. Defendant Armando M. Codina has been a Merrill Director since 2005. Defendant Codina is currently the President and Chief Executive Officer of Flagler Development Group, a real estate investment, development, construction, brokerage and property management company, and has been since 2006. He was also the Founder, Chairman and CEO of Codina Group, a real estate investment company from 1979, until its combination with Flagler Development Group in 2006. He also serves as a director on the board of the following companies: AMR Corp., Burger King Corp., Florida East Coast Industries, Inc., and GM. Defendant Codina is a citizen of the State of Florida.

10. Defendant Virgis W. Colbert has been a Merrill Director since 2006. Defendant Colbert has also served as the Senior Advisor to the Miller Brewing Company, a beer brewing company, since 2006. He was employed at Miller Brewing Company from 1997 through 2005, where he served in a variety of positions, including as the Executive Vice President of Worldwide Operations. Defendant Colbert has been, or currently is, a board member of the following companies: The Manitowoc Company, Inc., Sara Lee Corporation, and The Stanley Works. Defendant Colbert is a citizen of the State of Wisconsin.

11. Defendant Alberto Cribiore has been a Merrill Director since 2003. Immediately following the departure of Defendant O'Neal from Merrill, he was elected by the Merrill Board to serve as Interim Non-Executive Chairman. Defendant Cribiore is the founder and Managing Principal of Brera Capital Partners, LLC, a private equity investment firm, and has been since 1997. He has also served as the Co-President of Clayton, Dubilier & Rice, Inc., an equity investment firm, from 1985 through 1997. From 1982 to 1985 he served as the Senior Vice President of Warner Communications, predecessor to Time Warner Inc. and was responsible for

business strategy, mergers, acquisitions and divestitures. Defendant Cribiore is a citizen of the State of New York.

12.     Defendant John D. Finnegan has been a Merrill Director since 2004. He has been the President and CEO of The Chubb Corporation since December 2002 and has been the Chairman of the Board since December 2003. He has also served as the Executive Vice President of GM, where he also served as the Chairman and President of GM Acceptance Corporation, a finance company and subsidiary of GM, from May 1999 to December 2002. Defendant Finnegan has a B.A. degree in political science from Princeton University, a law degree from Fordham University and an M.B.A. from Rutgers University. Defendant Finnegan is a citizen of the State of New Jersey.

13.     Defendant Judith Mayhew Jonas has been a Merrill Director since 2006. Defendant Jonas has been a member of the United Kingdom government's Equality Review Panel since 2005. She has a law degree from the University of Otaga, New Zealand's oldest university. She has also served as Provost of Kings College, Cambridge from 2003 to 2006. She is a citizen of the United Kingdom.

14.     Defendant Aulana L. Peters has been a Merrill Director since 1994. She has a B.A. in philosophy from the College of New Rochelle, New York and has a law degree from the University of Southern California in Los Angeles, California. She was a partner of the law firm Gibson, Dunn & Crutcher from 1984 to 1998. She has served as a Commissioner of the Securities and Exchange Commission. Defendant Peters has or currently serves as a board member of the following companies: 3M, Deere & Company and Northrop Grumman Corporation. Defendant Peters is a citizen of the State of California.

15.     Defendant Joseph W. Prueher has been a Merrill Director since 2001.  Defendant Prueher has served as a former United States Ambassador for the People's Republic of China from 1999 to 2001.  Defendant Prueher was a consulting Professor at the Stanford University Center for International Security and Cooperation and a lecturer and Senior Advisor to the Stanford-Harvard Defense Project.  From 1996 to 1999, Prueher served in the military as Commander in Chief of U.S. Pacific Command and as a retired admiral.  Defendant Prueher currently serves or has served on the boards of the following companies: Emerson Electric Company, Fluor Corporation, DynCorp. International, McNeil Technologies, New York Life Insurance Company and the Wornick Company.  Director Prueher is a citizen of the State of Virginia.

16.     Defendant Ann N. Reese has been a Merrill Director since 2004.  Defendant Reese has a B.A. from the University of Pennsylvania and an M.B.A. from the New York University Stern School of Business.  She is the Co-Founder of the Center for Adoption Policy and served as a Principal for Clayton, Dubilier & Rice from 1999-2000.  Defendant Reese has served on the boards of the following companies: CBS, Jones Apparel Group, Sears Roebuck and Co., and Xerox.  She has also served as an FAS Advisory Council member.  Defendant Reese is a citizen of the State of New York.

17.     Defendant Charles O. Rossotti has been a Merrill Director since 2004.  Defendant Rossotti is a former Commissioner of Internal Revenue at the United States Internal Revenue Service.  He served in that position from 1997 to 2002.  He was the founder, Chairman of the Board, President and CEO of American Management Systems, an international business and information technology consulting firm, from 1970 to 1997.  Defendant Rossotti has also served as a Senior Advisor to The Carlyle Group, a private global investment firm, since 2003. He has

served as a director on the boards of the following companies: AES Corp., Adesso Systems Corp., Compusearch Software Systems, Inc., and Liquid Engines, Inc. Defendant Rossotti is a citizen of Washington D.C.

## Merrill's Board Committees

18.     The chart below illustrates the key Board committees and their current membership:

| | Audit Committee | Finance Committee | Management Development & Compensation Committee | Nominating & Corporate Governance Committee | Public Policy & Responsibility Committee |
|---|---|---|---|---|---|
| Alberto Cribiore (Interim Chairman) | | ✓ | ✓ | ✓ | |
| Carol T. Christ | | | | | ✓ |
| Armando M. Codina | | | ✓ | Chair | |
| Virgis W. Colbert | | | ✓ | ✓ | ✓ |
| John D. Finnegan | | ✓ | Chair | ✓ | |
| Judith Mayhew Jonas | ✓ | | | | ✓ |
| Aulana L. Peters | | | ✓ | | ✓ |
| Joseph W. Prueher | ✓ | | | | Chair |
| Ann N. Reese | Chair | ✓ | | | |
| Charles O. Rossotti | ✓ | Chair | | | |

## Merrill's Audit Committee

19.     According to the Audit Committee's charter, the Audit Committee is primarily responsible for:

**Assist[ing] the Board in fulfilling its oversight responsibility relating to the:**

**A. Preparation and integrity of the Corporation's financial statements and oversight of related disclosure matters;**

**B. Qualifications, independence and performance of, and the Corporation's relationship with, its registered public accounting firm (the "independent auditor");**

8

**C. Performance of the Corporation's internal audit function and internal controls; and**

**D. Compliance by the Corporation with legal and regulatory requirements.**

(Emphasis added).

**Merrill's Finance Committee**

20.     According to the Finance Committee's charter, the Finance Committee is primarily responsible for:

**Assist[ing] the Board in fulfilling its oversight responsibilities relating to:**

**A. Financial commitments and investments;**

**B. The Corporation's financial and operating plan;**

**C. The Corporation's financing plan, including funding, liquidity and insurance programs;**

**D. Balance sheet and capital management; and**

**E. Credit and market risk management.**

(Emphasis added).

## DEFENDANTS' DUTIES

21.     Defendants owe and owed Merrill fiduciary obligations of fidelity, trust, loyalty, candor, and due care, and were and are required to manage Merrill in a fair, just, honest and equitable manner. Defendants were and are required to act in furtherance of the best interests of Merrill and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. Each Defendant owes Merrill the highest obligations of good faith and fair dealing. In addition, as officers and/or directors of a publicly held company, Defendants have a duty to manage the Company's exposure to credit and market risk in order to prevent losses.

9

22.     The Director Defendants, because of their positions of control and authority of Merrill, were able to and did, directly and indirectly, control the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company. Because of their advisory, executive, managerial, and directorial positions with Merrill, each Defendant had access to material, adverse, non-public information about the financial condition, operations and future business prospects of Merrill, including, without limitation, the misconduct in which Defendants caused Merrill to engage.

23.     By knowingly engaging in and/or knowingly acquiescing in the wrongful conduct complained of herein, Defendants breached the fiduciary duties that each of them owed to Merrill and caused Merrill to incur billions of dollars in damages and other injuries more fully described below.

24.     By reason of their positions as officers, directors and/or fiduciaries of Merrill and because of their ability to control the business and corporate affairs of Merrill, Defendants owed Merrill and its shareholders fiduciary obligations of trust, loyalty, good faith and due care, and were and are required to use their utmost ability to control and manage Merrill in a fair, just, honest and equitable manner. Defendants were and are required to act in furtherance of the best interests of Merrill and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

25.     Each director and officer of the Company owes to Merrill and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing. In addition, as officers and/or directors of a publicly held company, Defendants

10

had a duty to assure themselves and shareholders that Merrill would not write down over $7.9 billion of losses due to its positional overexposure in risky CDOs.

## SUBSTANTIVE ALLEGATIONS

26.     Merrill Lynch has boasted about its strong internal operational and credit risk management controls since as early as 2001. At a joint conference on capital allocation for operational risk hosted by the Federal Reserve Bank of Boston in November of 2001, Clinton Lively, then Managing Director of Corporate Risk Management at Merrill, described Merrill's Process Risk Management Program.

27.     By way of an elaborate PowerPoint presentation (which is annexed as Exhibit A hereto), Mr. Lively stated that Merrill's risk management program goals to were to: (i) motivate its internal control personnel to "learn from mistakes"; and (ii) "**assess[] the adequacy of controls for the risks we take.**" Mr. Lively's presentation stated:

> "The key criteria for developing the model for us has been how well it motivates managers to adopt the practices we have endorsed. **The internal mechanics of the model are a secondary priority – and become important only in so far as they influence behavior in the firm**. To this end, **business units receive reductions in their risk capital allocations to the extent they engage in the practices prescribed by the program- and for initiatives which result in demonstrated reductions in process risk**."

(Emphasis added).

28.     As described in particular detail below, the Director Defendants and Merrill's other senior ranking executives completely disregarded Merrill's Process Risk Management Program and, as a result, permitted Merrill to engage in and become exposed to highly risky investments such that Merrill's financial risk exposure was materially beyond the risk levels permitted by Merrill's Process Risk Management Program.

29.     The Director Defendants either completely failed to, or were totally ineffective in curtailing Merrill from making these highly risky investments that were made in direct contravention of Merrill's Process Risk Management Program and, as a direct result, caused the Company to incur billions of dollars in losses.  The Director Defendants blatantly ignored the restrictions imposed by Merrill's Process Risk Management Program and permitted Merrill's employees to do so as well, all to the extreme financial detriment of the Company.

30.     The Director Defendants were responsible for acting to insure that Merrill's Process Risk Management Program was implemented, and that the Company's employees were acting in accordance with this Program.  The Director Defendants were also responsible for acting to insure that there was a system of checks and balances in place to monitor the activities of the Company's employees. Contrary to the public image that was painted of Merrill being a Company that prided itself on having and utilizing strong risk management policies and practices, Merrill was in fact a Company that did not adhere to its stated risk management policies and whose employees failed to conduct themselves in accordance with such policies. Such misconduct on the part of Merrill's employees was the direct result of the Director Defendants failing to fulfill their fiduciary responsibilities.

**Merrill's Former CEO
Was Obesssed With
Competing With Goldman Sachs**

31.     Merrill Lynch was a Company with substantial problems when Defendant O'Neal was given the responsibilities of CEO and Chairman of the Board in late 2001. At the same time, the Company's chief competitor, Goldman Sachs, was recording and reporting tremendous revenues and was quickly separating itself from the failing Merrill Lynch.

12

32.    In order to close the gap, and in appreciation of the deep financial woes that were then plaguing the Company, Defendant O'Neal fired a substantial portion of Merrill's workforce and tightened the Company's overall costs and spending in an attempt to maintain Merrill's reputation as a Wall Street leader.

33.    These actions proved to be insufficient in closing the widening gap between Merrill's performance and Goldman Sach's performance, however.    As a result, Defendant O'Neal implemented a new strategy that involved the risky financing of debt and derivatives, instruments whose valued is based upon the change in some underlying asset.

**Merrill Management**
**Takes On Added Risk**
**In Violation Of Merrill's**
**Process Risk Management Program**

34.    According to a Wall Street Journal ("WSJ") article dated October 25, 2007, O'Neal determined that Merrill needed to exponentially raise its holdings in the speculative business of securitizations in order to increase its profitability and to enhance its standing vis-avis Goldman Sachs.    In order to implement its new and aggressive investment strategy, Merrill hired major players in the CDOs and securitization industries, including Christopher Ricciardi, "who liked to be called the grandfather of CDOs."

35.    Securitization is the process of creating a financial instrument by combining other financial assets and then marketing them to investors.    These secured instruments are backed by loans, leases or receivables.    There are many types of secured instruments including, but not limited to, asset backed securities, residential mortgage backed securities and commercial mortgage backed securities.    An asset backed security is one backed by any receivable that is not earned from real estate.    Examples of asset backed securitizations include credit card receivables, automobile loans/leases/floor plan receivables and volatile aircraft receivables.

36.     Mortgage backed securities ("MBS"), on the other hand, are backed by the receivables from residential and commercial mortgages. In an MBS, the trust's pooled collateral varies and can consist of strong conforming mortgages or can consist of high risk sub-prime mortgages. Sub-prime mortgages are highly susceptible to default because the requested mortgages are issued to borrowers that have low income, shaky credit, job instability and few assets. Residential MBS accounts for close to half of all securitization collateral and almost 75% of all MBS are secured by sub-prime loans.

37.     CDOs are pools of debts that bundle together a collection of securities and are sold through an assortment of tranches that are assessed based upon the safety and security of the underlying collateral. The investors in the CDOs bear the credit risk of the collateral. The tranches are categorized as senior, mezzanine and subordinated according to their degree of credit risk. If there are defaults in the loans, or if the collateral backing the CDO otherwise underperforms, the senior tranches are the first on the food chain and get paid out first. Every CDO has a sponsoring organization, which establishes the vehicle to hold collateral and issue securities.

**Merrill Becomes the World's Leading Sponsor of CDOs**

38.     In response to the stock market troubles of late 2000, the Federal Reserve slashed interest rates with hopes of reviving the economy. This period of sustained drop in interest rates allowed the mortgage industry to significantly streamline underwriting and fulfillment operations, thus driving down the cost to refinance and providing enhanced access to credit to marginal borrowers. There were also reductions in down payment requirements and the movement to low documentation loans greatly expanded during the early 2000s.

14

39.     The fuel behind the increased loan documentation was the issuance of CDOs. CDO issuance was just $52 billion in 1999, but it rapidly rose to an astounding $388 billion in 2006.  The sale of these instruments to investors brought new capital into the business of mortgages, and helped recycle loans so lenders could lend more, creating a national housing boom.

40.     As the issuance throughout the industry rose, so too did Merrill's underwriting of CDOs and the fees associated with such underwriting.  According to the above mentioned WSJ article, "Merrill leapt from 15th place among CDO underwriting ranks in 2002, when it arranged just $2.22 billion of deals, to the No. 1 spot on Wall Street in 2004 with $19 billion, according to Dealogic.  In 2005 Merrill's underwriting total soared to $35 billion, of which $14 billion were backed mostly by securities tied to sub-prime mortgages... [Merrill] reaped an estimated $400 million in CDO underwriting profits in 2005."

41.     By reason of the fact that Merrill was investing considerable monies in risky securitizations, the Director Defendants should have inquired and/or acted to insure that these investments were conducted in accordance with Merrill's Process Risk Management Program. By failing to do so, the Director Defendants breached the fiduciary duties that each of them owed to Merrill.

42.     Director Defendants decided instead to reward Merrill's management for violating the Company's Process Risk Management Program. Specifically, Defendant O'Neal's compensation was tied to the amount of fees that Merrill generated and in 2006, O'Neal received an $18.5 million bonus on top of $30 million in various forms of compensation.  By approving such a bonus, the Director Defendants actively rewarded this ongoing violation of Merrill's Process Risk Management Program and improperly rewarded management's imprudent

investing strategies, thereby subjecting the Company tremendous financial risk and wasting Merrill's assets by utilizing Merrill funds to compensate management that was acting in direct violation of Merrill's Process Risk Management Program, as further detailed herein.

43.    However, the roller coaster peaked in early 2006, when signs of trouble in the market for sub-prime mortgages began appearing. Home prices started declining for the first time in years and home builders' orders slowed. Credit agencies that ranked CDOs began downgrading the now risky investments. Companies started scrambling to concoct proper exit strategies that would lessen their exposure to CDOs.

**Despite The Burst Of The Housing
Bubble, Merrill Keeps Underwriting CDOs**

44.    Notwithstanding the fact that most companies were attempting to cut off all ties to sub-prime mortgages, Defendants allowed Merrill to continue on its spree of underwriting CDOs. According to the WSJ, top executives "sought to reassure the CDO group that Merrill remained committed to the business, saying it would do "whatever it takes" to remain No. 1 in CDOs…"

45.    Under the leadership of Defendant O'Neal, Merrill underwrote over 100 CDO deals with a value over $90 billion between 2006 and 2007. The Company collected millions in underwriting fees, and consequently, O'Neal collected millions in compensation. Merrill's overall exposure to the volatile CDOs of mortgage backed securities exceeded $41 billion as of late June of 2007.

46.    The Director Defendants should not have allowed this risky exposure and should have seen the red flags associated with maintaining the abnormal CDO positions. Yet, there is no reported activity of either the Audit Committee or the Finance Committee, let alone the entire Board, taking any steps whatsoever to stop management from continuing to engage in these

highly risky investments in violation of Merrill's Process Risk Management Program. While other prudent firms were positioning themselves against a fall, Merrill continued its head-first plunge into the sub-prime CDOs.

47.     Despite the obvious fact that Merrill's management had repeatedly violated Merrill's Process Risk Management Program and lost control, Defendant O'Neal assured investors in June of 2007 that the problems in the sub-prime area "were reasonably well contained" adding that "there have been no clear signs that it was spilling into other subsets of the bond market, the fixed income market and the credit market." This statement was known to be false to the Director Defendants at the time it was made by Defendant O'Neal because the Director Defendants knew, but did not disclose, that Merrill's management had long been engaged in making highly risky CDO investments in violation of Merrill's Process Risk Management Program, but failed to disclose this clearly material fact.

**Merrill Is Unable To Unload Its**
**Oversized Position In CDOs, And Writes**
**Down Billions of Dollars Of CDOs**

48.     Because of the housing slump that was progressively worsening by the month, Merrill was unable to find buyers willing to accept any significant portion of Merrill's $41 billion position in the risky CDO market. Specifically, as of October of 2005, Merrill still held a position of over $20.9 billion.

49.     In early October of 2007, Merrill issued its earnings pre-release and estimated an astounding overall **$4.5 billion** write-down across CDOs and U.S. subprime mortgages for the third quarter of 2007.

50.     However, in an October 24, 2007 earnings conference call, Defendant O'Neal made a rare telephonic appearance and announced that Merrill, in fact, was forced to write down

17

an overall **$7.9 billion** across CDOs and U.S. subprime mortgages, $2.4 billion higher than the earnings pre-release estimate. Merrill also announced that day that it incurred a net loss from continuing operations for the third quarter of $2.3 billion, or $2.85 per diluted share, significantly below net earnings of $2.22 per diluted share for the second quarter of 2007 and $3.14 for the third quarter of 2006.

51.   This announced loss was a shocking $2 billion dollars higher than the loss expected based upon the material misstatements made by Merrill just a couple of weeks prior and was the Company's largest loss in around 100 years. The fact that the Company had failed to accurately disclose its expected losses and had understated this expected loss by more than $2 billion clearly establishes that the Director Defendants had failed to act to insure that Merrill's investment activities in the CDO market were conducted in accordance with Merrill's Process Risk Management Program, or alternatively, that these policies were in place and were blatantly ignored.

52.   The already depressed shares of Merrill fell over 5% since the write off announcement. As well, numerous credit agencies have downgraded the Company's ratings.

53.   The press release issued that same day stated:

> Merrill Lynch (**NYSE: MER**) today reported a net loss from continuing operations for the third quarter of $2.3 billion, or $2.85 per diluted share, significantly below net earnings of $2.22 per diluted share for the second quarter of 2007 and $3.14 for the third quarter of 2006. Third-quarter 2006 net earnings per diluted share, excluding the impact of the one-time, after-tax net benefit of $1.1 billion ($1.8 billion pretax) related to the merger of Merrill Lynch Investment Managers (MLIM) and BlackRock (NYSE: BLK), were $1.97. Third-quarter 2007 results reflect significant net write-downs and losses attributable to Merrill Lynch's Fixed Income, Currencies & Commodities (FICC) business, including write-downs of $7.9 billion across CDOs and U.S. subprime mortgages, which are significantly greater than the incremental $4.5 billion write-down Merrill Lynch disclosed at the time of its earnings pre-release. These write-downs and losses were partially offset by strong revenues in Global Wealth Management (GWM), Equity Markets and Investment Banking, particularly in regions outside

18

of the U.S. The results described above and herein, exclude Merrill Lynch Insurance Group (MLIG), which is reported under discontinued operations.

Third-quarter 2007 total net revenues of $577 million decreased 94 percent from $9.8 billion in the prior-year period and were down 94 percent from $9.7 billion in the second quarter of 2007. Merrill Lynch's third-quarter 2007 pretax net loss was $3.5 billion. At the end of the third quarter, book value per share was $39.75, down slightly from the end of the third quarter 2006.

Mortgage and leveraged finance-related write-downs in our FICC business depressed our financial performance for the quarter. In light of difficult credit markets and additional analysis by management during our quarter-end closing process, we re-examined our remaining CDO positions with more conservative assumptions. The result is a larger write-down of these assets than initially anticipated," said **Stan O'Neal**, chairman and chief executive officer. "We expect market conditions for subprime mortgage-related assets to continue to be uncertain and we are working to resolve the remaining impact from our positions," Mr. O'Neal continued. "Away from the mortgage-related areas, we continue to believe that secular trends in the global economy are favorable and that our businesses can perform well, as they have all year."

Net revenues for the first nine months of 2007 were $20.0 billion, down 23 percent from $25.8 billion in the comparable 2006 period. Net earnings per diluted share of $1.94 were down 62 percent from $5.12 in the prior-year period, and net earnings of $2.0 billion were down 61 percent. Results for the first nine months of 2006 included $1.2 billion of one-time, after-tax compensation expenses ($1.8 billion pretax) related to the adoption of Statement of Financial Accounting Standards No. 123R ("one-time compensation expenses") incurred in the first quarter of 2006, as well as the net benefit associated with the MLIM merger. Excluding these one-time items, net revenues for the first nine months of 2007 were down 16 percent, net earnings per diluted share were down 63 percent and net earnings were down 62 percent from the prior-year period. The pretax profit margin for the first nine months was 12.8 percent, down 14.2 percentage points from the comparable 2006 period, or down 16.3 percentage points excluding the one-time items. The annualized return on average common equity was 6.5 percent, down 13.0 percentage points from the first nine months of 2006, or down 13.4 percentage points excluding the one-time items.

**Business Segment Review:**

In the first quarter of 2006, Merrill Lynch recorded the one-time compensation expenses (pretax) in the business segments as follows: $1.4 billion to Global Markets and Investment Banking, $281 million to Global Wealth Management and $109 million to Merrill Lynch Investment Managers (which ceased to exist as a business segment upon its merger with BlackRock). The one-time net benefit associated with the MLIM merger was recorded in the Corporate Segment.

Comparisons to results from the third quarter and first nine months of 2006 in the following discussion of business segment results exclude the impact of these one-time items. A reconciliation of these segment results appears on <u>Attachment V</u> to this release.

**Global Markets & Investment Banking (GMI)**
GMI recorded negative net revenues and a pretax loss for the third quarter of 2007 of $3.0 billion and $4.4 billion, respectively, as strong net revenues from Equity Markets and Investment Banking were more than offset by the net losses in FICC. GMI's third quarter net revenues also included a net benefit of approximately $600 million due to the impact of the widening of Merrill Lynch's credit spreads on the carrying value of certain long-term debt liabilities.

▪ Third-quarter and year-to-date 2007 net revenues from GMI's three major business lines were as follows:

▪ FICC net revenues were negative $5.6 billion for the quarter, impacted primarily by losses across CDOs and U.S. subprime mortgages. These positions consist of CDO trading positions and warehouses, as well as U.S. subprime mortgage related whole loans, warehouse lending, residual positions and residential mortgage backed securities.

<center>*      *      *</center>

**<u>Third-quarter write-downs of $7.9 billion across CDOs and U.S. subprime mortgages are significantly greater than the incremental $4.5 billion write-downs Merrill Lynch disclosed at the time of its earnings pre-release. This is due to additional analysis and price verification completed as part of the quarter-end closing process, including the use of more conservative loss assumptions in valuing the underlying collateral.</u>**

(Emphasis added).

54.     The $7.9 billion write down by the Company clearly shows that the Director Defendants were grossly negligent in their oversight of management. By not questioning Merrill's corporate credit risk investment strategy, the Board proximately caused Merrill to incur billions of dollars in damages.

55.     On October 25, 2007, the WSJ reported that:

"The 8.4 billion dollar hit leaves it clear that Mr. O'Neal and his team did not always appreciate the risks they took to achieve the greater profits. The write-downs surpass a $6 billion loss suffered in 2005 by the hedge fund Amaranth LLC, which had stood as the largest single known Wall Street loss...**On the**

<center>20</center>

**Conference call, Mr. O'Neal accepted a share of the responsibility, saying, "I am accountable for the mistakes as I am accountable for the performance of the firm overall."**

(Emphasis added).

**O'Neal Attempts To Single-handedly**
**Merge Merrill With Wachovia Without Board Authority**

56.     Despite the admissions made by Defendant O'Neal regarding the mistakes he made in authorizing the underwriting of the risky CDOs, and despite the fact that the price per share of Merrill fell over 30% in just over 3 months, the Director Defendants did not fire Defendant O'Neal from his position as CEO of the Company.

57.     On October 26, 2007, the New York Times reported that Defendant O'Neal had conducted serious merger talks with Wachovia Bank without prior authorization or approval from Merrill's Board.   Knowing that he would secure a severance package exceeding $250 million, Defendant O'Neal pushed for a merger that would result in new management of the Company.

**Director Defendants Approve The**
**Resignation Of Defendant O'Neal**
**From Merrill And Improperly Reward**
**Him With A $160 Million Payment**

58.     On October 30, 2007, Merrill issued a press release announcing the retirement of Defendant O'Neal from the Company. The press release stated:

> The company said Mr. O'Neal and the board of directors both agreed that a change in leadership would best enable Merrill Lynch to move forward and focus on maintaining the strong operating performance of its businesses, which the company last week reported were performing well, apart from sub-prime mortgages and CDOs. 'We would like to thank Stan for the contribution he has made leading a major transformation of Merrill Lynch into a global and diversified company with enormous potential ahead of it,' said Mr. Cribiore. '**His commitment to the company, its clients, shareholders and employees has**

**never wavered and the company will reap tremendous benefits in the future from his work.'**

(Emphasis added).

59.     The Board should have fired Defendant O'Neal after the Company announced its biggest loss in close to 100 years. Instead, the Director Defendants substantially wasted corporate assets by unjustifiably rewarding him with an over $160 million retirement package.

60.     According to the Corporate Library, the leading independent source for U.S. corporate governance:

> Stanley O'Neal's departure from Merrill Lynch with 'no severance' and no 2007 bonus would seem to present a picture of a decisive board in control. **Yet, when 'no severance' equals $161.5 million and an office and executive assistant for three years, what else did they think they needed to give him?...When a compensation committee retains discretion over whether a severance package will be offered, it would seem to suggest that it will exercise its discretion in favor of shareholders. Yet all this meant was that it decided not to pay the approximately $30 million in cash severance that might have been due had Mr. O'Neal pulled off a merger with Wachovia**... But while the board is trying to present itself as decisive and in control now, **where was its oversight when the strategic decisions that led to this massive wrote-off of value were being made.** Since it also looks as if the board may be considering an external candidate...it appears to have failed in yet another of its most important duties: ensuring a proper succession plan is in place...**Finally, The Corporate Library has rated the Merrill Lynch board as a high risk board for all but 18 months of the five years we have provided ratings on company governance**.

(Emphasis added).

**The Director Defendants Permitted**
**Merrill To Issue A Series Of Materially False**
**And Misleading Financial Statements and SEC Filings**

61.     In addition to the acts detailed above, Defendants caused false statements to be issued in SEC filings. On February 26, 2007 the Company filed a 10-K with the SEC for 2006, which stated that "our GMI business generated record setting financial performance by continuing to serve clients well, **take measured principal risk** and execute on a variety of key

growth initiatives around the world…we announced an agreement to acquire First Franklin mortgage origination franchise and related servicing platform from National City Corporation…" (Emphasis added).

62.    These statements were materially false at the time, because Merrill was, in reality, overexposed to billions of dollars in the fast sinking CDOs that were backed by subprime loans. The agreement to purchase First Franklin perplexed analysts at the time, as it did not appear to make good business sense to invest in an industry that was tanking.    These imprudent investments caused by the actions or inactions of the Board all resulted in the massive financial losses that crippled the Company since October of 2007.

63.    On April 19, 2007, Merrill announced its financial results for the first quarter of 2007, and stated that "This was a terrific quarter…our product capabilities and geographic reach are stronger and broader now than at any point in our history, **and we continue to make investments to further enhance our franchise.**" (Emphasis added).

64.    The true fact remained that the Company was overexposed and was continuing to make further investments in CDOs that further **injured** the Company.

65.    On August 03, 2007, Merrill filed its Form 10-Q with the SEC and stated that:

"Merrill Lynch continues to be a major participant in these markets with risk exposures through cash positions, loans, derivatives and commitments. Given current market conditions, significant risk remains that could adversely impact these exposures and results of operations. **We continue our disciplined risk management efforts to proactively execute market strategies to manage our overall portfolio of positions and exposures with respect to market, credit and liquidity risks**."

(Emphasis added).

66.    By permitting Merrill and its management to issue these materially false and misleading statements, the Director Defendants breached their fiduciary duties to Merrill.

23

67.    It took a $7.9 billion debacle in order for the Company and the Board to appreciate that remedial measures were needed to correct the failure to adhere to Merrill's stated Process Risk Management Program and limit the Company's exposure to CDOs.  Only **after** Merrill had suffered billions of dollars in damages did Merrill create the position entitled Chief Risk Officer and vest this employee with the primary responsibility of monitoring both market and credit risk functions. According to the Company's 10-Q filed dated November 7, 2007:

> "In addition, with the establishment of the Chief Risk Officer...we are enhancing our capacity to monitor the associated risk levels vigilantly on a daily basis to ensure that they remain within corporate risk guidelines and risk tolerance levels."

The fact that the Company admitted in a SEC filing that they needed to "remain within corporate risk guidelines and risk tolerance levels" conclusively proves that the Director Defendants were grossly negligent in their oversight of the Company.

68.    According to a New York Times article dated November 04, 2007, the Securities and Exchange Commission has initiated an informal inquiry and investigation to examine whether Merrill accurately valued the Company's mortgage portfolio.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

69.    Plaintiff brings this action derivatively in right and for the benefit of Merrill to redress injuries suffered, and to be suffered, by Merrill as a direct result of the breaches of fiduciary duty, waste of corporate assets, and unjust enrichment.

70.    Merrill is named as a nominal defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

71.    Plaintiff will adequately and fairly represent the interests of Merrill in enforcing and prosecuting its right.

72.     Plaintiff is and was an owner of stock of Merrill during the relevant time period of Defendants' wrongful course of conduct alleged herein, and remains a shareholder of the Company. Plaintiff will remain a shareholder of Merrill through the conclusion of this litigation.

73.     Plaintiff has not made any demand on the Board of Merrill to institute this action because such a demand would be futile for the following reasons:

a.     The Director Defendants are accused of breaching their fiduciary duties and are liable for failing to ensure adequate internal controls and adequate means of supervision to prevent the wrongs alleged herein.

b.     The Director Defendants have for a substantial time been aware, or should have been aware, of the wrongs alleged, but have chosen not to protect Merrill or rectify the policies and practices complained of herein. The Director Defendants have participated in, acquiesced in, and approved the wrongs alleged and did so in breach of their duties to Merrill's shareholders. The Defendants therefore participated in a continuing course of corporate misconduct that included the following:

(i)     Director Defendants were involved in reviewing and/or disseminating the materially false and misleading statements and information contained in the Company's SEC filings, press releases, and other public documents, were aware or recklessly disregarded that materially false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws. Each Director Defendant was provided with copies of the documents alleged herein to be misleading prior to their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each Defendant is responsible for the accuracy of the public reports and releases detailed

herein, and is therefore primarily liable for the materially false representations contained therein. Because the Defendants are liable for filing incorrect statements with the SEC and are thereby liable for violating the federal securities laws, demand would be futile.

(ii)    The Director Defendants Reese, Rossotti, Prueher and Jonas currently comprise the Audit Committee and individually and collectively failed in their duties of ensuring that the Company file true and complete financial statements with the SEC and are thereby liable for violations of the federal securities laws. An informal inquiry has been initiated by the SEC in order to determine whether the Company has violated the federal securities laws.    Because Merrill's financial statements described herein contained material misstatements and omissions about the Company's exposure to risky CDOs, the Audit Committee failed to perform its duties, thereby exposing any and all of the Director Defendants to liability for their breach of fiduciary duties. As well, the Audit Committee shares some responsibility for overseeing risk policies and, therefore, Director Defendants Reese, Rossotti, Prueher and Jonas are liable for not ensuring that the employees of the Company did not overexpose the company to damaging risk. By not implementing proper risk procedures and by failing to comply with the risk procedures in place, Defendants Reese, Rossotti, Prueher and Jonas did not exercise reasonable due care and allowed the Company to be exposed to $41 billion in CDOS and enabled a write down of over $7.9 billion in losses in the third quarter. Accordingly, the Director Defendants on the Audit Committee cannot impartially act on a demand;

(iii)    The Director Defendants Reese, Rossotti, Finnegan and Cribiore currently comprise the Finance Committee and individually and collectively failed in their duties of ensuring that the Company competently manage its credit risk exposure. According to

26

the Finance Committee's charter that was in effect throughout the relevant time period, the Finance Committee is primarily responsible "for credit and market risk management." By allowing the Company to obtain a $41 billion position in CDOs and by allowing the Company to suffer $7.9 billion in losses as a direct result of their gross negligence and failure to properly manage risk, Director Defendants Reese, Rossotti, Finnegan and Cribiore abdicated their fiduciary duties of due care and failed to monitor the Company's risk properly. As well, the Director Defendants mentioned above individually and collectively failed in their duties of ensuring that the Company file true and complete financial statements with the SEC and are thereby liable for violations of the federal securities laws. An informal inquiry has been initiated by the SEC in order to determine whether the Company has violated the federal securities laws. Because Merrill's financial statements described herein contained material misstatements and omissions about the Company's exposure to risky CDOs, the Finance Committee failed to perform its duties, therefore, demand would be futile;

(iv)     Director Defendants Cribiore, Colbert, Codina, Finnegan and Peters currently comprise the Management Development and Compensation Committee of the Board. The Director Defendants approved and authorized Defendant O'Neal retirement and thereby enabled him to receive an undeserving $161.5 million resignation package. This waste of corporate assets was perpetrated by the Director Defendants, and exposed them to liability as those monies should have been distributed to Merrill's shareholders and were intentionally misappropriated; and

(v)   Defendant O'Neal selected five sixths of the current Board. As such, the Director Defendants feel an obligation of indebtedness to management, and therefore will not bring this lawsuit on behalf of the Company;

c.   The Director Defendants are accused of conduct that is not subject to business judgment protection or subject to ratification.

d.   The wrongful actions or inactions complained herein by the Director Defendants amounted to breaches of their fiduciary duties of good faith, disclosure, due care and loyalty to Merrill and its shareholders, and the abdication of their responsibilities give rise to liability to the Company.

e.   The Director Defendants failed to put into place adequate internal controls and adequate means of supervision to stop the wrongful conduct alleged herein despite the fact that the Board knew or should have known about such wrongful business practices.

74.   These acts, and the acts alleged in this action, demonstrate a pattern of misconduct.  A pattern of gross misconduct is not conduct taken in a good faith exercise of business judgment.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

Breach of Fiduciary Duties Against All Defendants

75.   Plaintiff incorporates by reference and realleges each and every allegation set forth herein.

76.   Each of Defendants owed and owes fiduciary duties to Merrill and its shareholders.  By reason of their fiduciary relationships, Defendants all owed Merrill the highest obligation of good faith, fair dealing, loyalty and due care and diligence in the management of

the affairs f the Company. Moreover, Defendants owed and owe the duty of full and candid disclosure of all material facts.

77.     Defendants have been responsible for the gross and reckless management of Merrill and ignored their fiduciary responsibilities by:

        (i)     allowing the Company to amass an uncontrolled underwriting and position in CDOs that were mainly based on risky collateral in the form of sub-prime mortgages. The Company was forced to write down $7.9 billion in losses due to the breaches of fiduciary duties by the Director Defendants;

        (ii)    actively or indirectly causing the filing of false public statements that contained material misstatements and omissions regarding the financial health of the Company; and

        (iii)   wasting corporate assets by rewarding Defendant O'Neal with an $161.5 million resignation package.

78.     All Defendants engaged in the above conduct in intentional breach of their fiduciary duties to the Company.

79.     Defendants conspired to abuse, and did abuse, their positions of control and oversight in Merrill.

80.     Plaintiff and Merrill have been injured by reason of Defendants' disregard to their important fiduciary duties to the Company. Plaintiff as a shareholder and representative of the company seeks damages and other relief for the Company.

81.     Plaintiff on behalf of Merrill has no adequate remedy at law.

## SECOND CAUSE OF ACTION

### Abuse of Control Against All Defendants

82. Plaintiff incorporates by reference and realleges each and every allegation set forth herein.

83. Defendants' misconduct alleged herein constituted a breach of their fiduciary duties because they abused their ability to control and influence on Merrill, for which they are legally responsible.

84. As a direct and proximate result of Defendants' abuse of control, Merrill has sustained significant damages.

85. As a result of the misconduct alleged herein, Defendants are liable to the Company.

86. Plaintiff on behalf of Merrill has no adequate remedy at law.

## THIRD CAUSE OF ACTION

### Gross Mismanagement Against All Defendants

87. Plaintiff incorporates by reference and realleges each and every allegation set forth herein.

88. By their actions alleged herein, Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of Merrill in a manner consistent with the operations of a publicly held corporation.

89. As a direct and proximate result of Defendants' gross mismanagement and breaches of duty alleged herein, Merrill has sustained significant damages.

90.     As a result of the misconduct and breaches of duty alleged herein, Defendants are liable to the Company.

91.     Plaintiff on behalf of Merrill has no adequate remedy at law.

## FOURTH CAUSE OF ACTION

### Waste Of Corporate Assets Against All Defendants

92.     Plaintiff incorporates by reference and realleges each and every allegation set forth herein.

93.     As a result of the improper conduct described herein, and by failing to properly consider the interests of the Company and its public shareholders by failing to conduct proper supervision, Defendants have caused Merrill to waste valuable corporate assets by: awarding excessive compensation to senior executives, and by incurring potentially million of dollars of legal liability and legal costs to defend Defendants' unlawful actions.

94.     Plaintiff on behalf of Merrill has no adequate remedy at law.

## FIFTH CAUSE OF ACTION

### Quasi Contract/ Unjust Enrichment Against All Defendants

95.     Plaintiff incorporates by reference and realleges each and every allegation set forth herein.

96.     By their wrongful acts and omissions, Defendants were unjustly enriched at the expense of, and to the detriment of, Merrill.

97.     Plaintiff, as a shareholder and representative of Merrill, seeks restitution from Defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by Defendants, and each of them, from their wrongful conduct and fiduciary breaches.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A. Against Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of Defendants' breaches of fiduciary duties, waste of corporate assets and unjust enrichment;

B. Directing Merrill to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Merrill and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote on Corporate Governance Policies concerning compliance with all applicable IRS regulations and federal tax laws;

C. Extraordinary equitable and/or injunctive relief as permitted by law, equity and state statutory provisions sued hereunder, including attaching, impounding and imposing a constructive trust on or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of Merrill has an effective remedy;

D. Awarding to Merrill restitution from Defendants, and each of them, including ordering disgorgement of all profits, benefits and other compensation obtained by Defendants;

E. Awarding Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

F. Granting such other and further relief as the Court deems just and proper.

## DEMAND FOR A TRIAL BY JURY

Plaintiff demands a trial by jury on all issues so triable as a matter of right.

## RULE 4:5-1 CERTIFICATION

To the best of my knowledge, the matter in controversy is not the subject of any other

action or arbitration proceeding, now or contemplated, and that no parties should be joined in

this action pursuant to R. 4:5-1.

Dated: November 29, 2007

By: _____
LAW OFFICES OF JAMES V.
BASHIAN, P.C..
James V. Bashian, Esq. (JB-6331)
271 Route 46 West, Suite F207
Fairfield, New Jersey 07004
Tel: (973) 227-6330
Fax: (973) 808-8665

Paul O. Paradis, Esq.
Richard Doherty, Esq.
Gina M. Tufaro, Esq.
James Smith, Esq.
**HORWITZ, HORWITZ &
PARADIS, Attorneys at Law**
28 West 44th Street, 16th Floor
New York, NY 10036
Phone: (212) 404-2200
Fax:     (212) 404-2226

Attorneys For Derivative Plaintiff

**VERIFICATION**

I, David Eidman, hereby state under penalty of perjury under the laws of the United States that:

1.     I am the named plaintiff in this action.

2.     I verify that I have reviewed the attached Shareholder Derivative Complaint ("Complaint") and authorized my counsel to file the Complaint.

3.     To the best of my knowledge, information and belief, the facts set forth in the Complaint are true and correct.

Sworn to under penalty of perjury this 29 th day of November, 2007 at Englewood, New Jersey.

MERNA MILLER
Notary Public, State of New York
No. 01MI5515718
Qualified in Nassau County
Commission Expires Nov. 30, 2009

_____
Notary

_____
David Eidman

LAW OFFICES OF JAMES V. BASHIAN, P.C..
James V. Bashian, Esq. (JB-6331)
271 Route 46 West, Suite F207
Fairfield, New Jersey 07004
Tel: (973) 227-6330
Fax: (973) 808-8665

Attorney for Plaintiff

[Additional Counsel Appear on Signature Page]

| | |
|---|---|
| David Eidman,<br>Derivatively On Behalf of<br><br>MERRILL LYNCH & CO., INC.,<br><br>      Plaintiff,<br><br><br>   v.<br><br>ERNEST STANLEY O'NEAL,<br>CAROL T. CHRIST, ARMANDO M.<br>CODINA, VIRGIS W. COLBERT,<br>ALBERTO CRIBIORE, JOHN D.<br>FINNEGAN, JUDITH MAYHEW JONAS,<br>AULANA L. PETERS, JOSEPH W.<br>PRUEHER, ANN N. REESE and<br>CHARLES O. ROSSOTTI<br><br><br>      Defendants,<br><br>and<br><br>MERRILL LYNCH & CO., INC.,<br><br>   Nominal Defendant.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br> SUPERIOR COURT OF NEW JERSEY<br> LAW DIVISION: BERGEN COUNTY<br> Docket No.: L-8872-07<br><br> CIVIL ACTION<br><br><br>**VERIFIED AMENDED DERIVATIVE<br>COMPLAINT** |

## NATURE OF THE ACTION

1. Plaintiff, David Eidman ("Plaintiff"), brings this action derivatively on behalf of nominal defendant Merrill Lynch & Co., Inc. (hereinafter "Merrill" "Merrill Lynch" or the "Company") against its Board of Directors (hereinafter the "Board," "Director Defendants," ), in connection with breaches of their fiduciary duties of loyalty, due care and oversight of Merrill's imprudent underwriting of Collateralized Debt Obligations ("CDOs") and insufficient internal controls and mismanagement by the Company's managing senior executives between 2003 and 2007 (hereinafter the "Relevant Time Period"). Plaintiff alleges upon personal knowledge as to his own acts, and upon information and belief as to all other matters. Plaintiff's information and belief is based on the investigation conducted by counsel.

2. This shareholder derivative suit seeks to remedy Defendants' breach of fiduciary duties, abuse of control, and gross mismanagement arising out of a wrongful course of business conduct whereby Defendants: (i) caused Merrill to engage in unsound underwriting practices of CDOs that ultimately forced the Company to write down losses exceeding $7.9 billlion for the third quarter of 2007; (ii) exposed Merrill to over $40 billion in CDOs as of July of 2007; and (iii) agreed to allow the Chief Executive Officer to resign and receive a full retirement package worth more than $160 million.

## JURISDICTION AND VENUE

3. The allegations contained herein are brought derivatively on behalf of nominal defendant Merrill. Accordingly, this Court has jurisdiction pursuant to N.J. Court Rules, R. 4:32-5.

4. Plaintiff David Eidman currently resides in Bergen County, New Jersey. Accordingly, Venue is properly laid in this County pursuant to N.J. Court Rules, R.4:3-2(a).

## PARTIES

**Plaintiff**

5.    Plaintiff David Eidman is a Merrill shareholder and was a Merrill shareholder throughout the entirety of the time period of the complained of actions alleged herein, and remains a Merrill shareholder continuously to date.  Plaintiff David Eidman purchased shares on November 16, 2003.  Plaintiff is a citizen and resident of the State of New Jersey.

**Nominal Defendant**

6.    Nominal Defendant Merrill Lynch & Co., Inc. is a corporation incorporated, organized and existing under the laws of the State of Delaware, with its registered office located at Corporation Trust Center, 1209 Orange Street, in the City of Wilmington, County of New Castle.  The Company's central corporate headquarters is located at 4 World Financial Center, 250 Vesey Street, New York, New York, 10080.  According to the Company's website, "Merrill is one of the world's leading wealth management, capital markets and advisory companies, with offices in 38 countries and territories and total client assets of approximately $1.8 trillion. Merrill Lynch offers a broad range of services to private clients, small businesses, and institutions and corporations, organizing its activities into two interrelated business segments - Global Markets & Investment Banking Group and Global Wealth Management, which is comprised of Global Private Client and Global Investment Management.  As an investment bank, it is a leading global trader and underwriter of securities and derivatives across a broad range of asset classes and serves as a strategic advisor to corporations, governments, institutions and individuals worldwide."

3

**Director Defendants**

7.     Defendant Ernest Stanley O'Neal is the former Chief Executive Officer and the former Chairman of the Board of Directors of Merrill. He resigned on November 1, 2007 after having served in numerous senior management positions at the Company prior to serving as Chief Executive Officer. Defendant O'Neal joined Merrill in 1986 and worked in the bond department. In the early 1990s, Defendant O'Neal became the head of Merrill's leveraged finance division. After serving as global head of capital markets and co-head of the corporate and institutional client group, he spent two years as CFO from 1998 to 2000. He then became President of Merrill's U.S. Private Client Group, before becoming President of the Company in 2001. In 2003, Mr. O'Neal became CEO and Chairman of the Board of Merrill Lynch. In addition, Mr. O'Neal was a member of the Board of Directors of General Motors from 2001-2006, and recently resigned from the Board of Directors of BlackRock, Inc. on October 30, 2007. Defendant O'Neal is a citizen of the State of New York.

8.     Defendant Carol T. Christ has been a Merrill Director since July of 2007 and has served as a member of the Public Policy and Responsibility Committee of the Board. In June 2002, Director Christ became the 10th president of Smith College. Prior to that, Ms. Christ spent more than 30 years at the University of California, Berkeley. She joined the English faculty in 1970, and, as chair of her department from 1985 to 1988, she built and maintained one of the top-ranked English departments in the country. She entered the University's administration in 1988, serving first as Dean of Humanities and later as Provost and Dean of the College of Letters and Sciences. In 1994, Ms. Christ was appointed Vice Chancellor and provost at Berkeley. Defendant Christ is a citizen of the State of Massachusetts.

9.      Defendant Armando M. Codina has been a Merrill Director since 2005. Defendant Codina is currently the President and Chief Executive Officer of Flagler Development Group, a real estate investment, development, construction, brokerage and property management company, and has been since 2006.  He was also the Founder, Chairman and CEO of Codina Group, a real estate investment company from 1979, until its combination with Flagler Development Group in 2006.  He also serves as a director on the board of the following companies: AMR Corp., Burger King Corp., Florida East Coast Industries, Inc., and GM. Defendant Codina is a citizen of the State of Florida.

10.      Defendant Virgis W. Colbert has been a Merrill Director since 2006. Defendant Colbert has also served as the Senior Advisor to the Miller Brewing Company, a beer brewing company, since 2006.  He was employed at Miller Brewing Company from 1997 through 2005, where he served in a variety of positions, including as the Executive Vice President of Worldwide Operations.  Defendant Colbert has been, or currently is, a board member of the following companies: The Manitowoc Company, Inc., Sara Lee Corporation, and The Stanley Works. Defendant Colbert is a citizen of the State of Wisconsin.

11.      Defendant Alberto Cribiore has been a Merrill Director since 2003.  Immediately following the departure of Defendant O'Neal from Merrill, he was elected by the Merrill Board to serve as Interim Non-Executive Chairman.  Defendant Cribiore is the founder and Managing Principal of Brera Capital Partners, LLC, a private equity investment firm, and has been since 1997.  He has also served as the Co-President of Clayton, Dubilier & Rice, Inc., an equity investment firm, from 1985 through 1997.  From 1982 to 1985 he served as the Senior Vice President of Warner Communications, predecessor to Time Warner Inc. and was responsible for

5

business strategy, mergers, acquisitions and divestitures. Defendant Cribiore is a citizen of the State of New York.

12.    Defendant John D. Finnegan has been a Merrill Director since 2004. He has been the President and CEO of The Chubb Corporation since December 2002 and has been the Chairman of the Board since December 2003. He has also served as the Executive Vice President of GM, where he also served as the Chairman and President of GM Acceptance Corporation, a finance company and subsidiary of GM, from May 1999 to December 2002. Defendant Finnegan has a B.A. degree in political science from Princeton University, a law degree from Fordham University and an M.B.A. from Rutgers University. Defendant Finnegan is a citizen of the State of New Jersey.

13.    Defendant Judith Mayhew Jonas has been a Merrill Director since 2006. Defendant Jonas has been a member of the United Kingdom government's Equality Review Panel since 2005. She has a law degree from the University of Otaga, New Zealand's oldest university. She has also served as Provost of Kings College, Cambridge from 2003 to 2006. She is a citizen of the United Kingdom.

14.    Defendant Aulana L. Peters has been a Merrill Director since 1994. She has a B.A. in philosophy from the College of New Rochelle, New York and has a law degree from the University of Southern California in Los Angeles, California. She was a partner of the law firm Gibson, Dunn & Crutcher from 1984 to 1998. She has served as a Commissioner of the Securities and Exchange Commission. Defendant Peters has or currently serves as a board member of the following companies: 3M, Deere & Company and Northrop Grumman Corporation. Defendant Peters is a citizen of the State of California.

6

15. Defendant Joseph W. Prueher has been a Merrill Director since 2001. Defendant Prueher has served as a former United States Ambassador for the People's Republic of China from 1999 to 2001. Defendant Prueher was a consulting Professor at the Stanford University Center for International Security and Cooperation and a lecturer and Senior Advisor to the Stanford-Harvard Defense Project. From 1996 to 1999, Prueher served in the military as Commander in Chief of U.S. Pacific Command and as a retired admiral. Defendant Prueher currently serves or has served on the boards of the following companies: Emerson Electric Company, Fluor Corporation, DynCorp. International, McNeil Technologies, New York Life Insurance Company and the Wornick Company. Director Prueher is a citizen of the State of Virginia.

16. Defendant Ann N. Reese has been a Merrill Director since 2004. Defendant Reese has a B.A. from the University of Pennsylvania and an M.B.A. from the New York University Stern School of Business. She is the Co-Founder of the Center for Adoption Policy and served as a Principal for Clayton, Dubilier & Rice from 1999-2000. Defendant Reese has served on the boards of the following companies: CBS, Jones Apparel Group, Sears Roebuck and Co., and Xerox. She has also served as an FAS Advisory Council member. Defendant Reese is a citizen of the State of New York.

17. Defendant Charles O. Rossotti has been a Merrill Director since 2004. Defendant Rossotti is a former Commissioner of Internal Revenue at the United States Internal Revenue Service. He served in that position from 1997 to 2002. He was the founder, Chairman of the Board, President and CEO of American Management Systems, an international business and information technology consulting firm, from 1970 to 1997. Defendant Rossotti has also served as a Senior Advisor to The Carlyle Group, a private global investment firm, since 2003. He has

7

served as a director on the boards of the following companies: AES Corp., Adesso Systems Corp., Compusearch Software Systems, Inc., and Liquid Engines, Inc. Defendant Rossotti is a citizen of Washington D.C.

## Merrill's Board Committees

18. The chart below illustrates the key Board committees and their current membership:

| | Audit Committee | Finance Committee | Management Development & Compensation Committee | Nominating & Corporate Governance Committee | Public Policy & Responsibility Committee |
|---|---|---|---|---|---|
| Alberto Cribiore (Interim Chairman) | | ✓ | ✓ | ✓ | |
| Carol T. Christ | | | | | ✓ |
| Armando M. Codina | | | ✓ | Chair | |
| Virgis W. Colbert | | | ✓ | ✓ | ✓ |
| John D. Finnegan | | ✓ | Chair | ✓ | |
| Judith Mayhew Jonas | ✓ | | | | ✓ |
| Aulana L. Peters | | | ✓ | | ✓ |
| Joseph W. Prueher | ✓ | | | | Chair |
| Ann N. Reese | Chair | ✓ | | | |
| Charles O. Rossotti | ✓ | Chair | | | |

## Merrill's Audit Committee

19. According to the Audit Committee's charter, the Audit Committee is primarily responsible for:

> **Assist[ing] the Board in fulfilling its oversight responsibility relating to the:**
>
> **A. Preparation and integrity of the Corporation's financial statements and oversight of related disclosure matters;**
>
> **B. Qualifications, independence and performance of, and the Corporation's relationship with, its registered public accounting firm (the "independent auditor");**

**C. Performance of the Corporation's internal audit function and internal controls; and**

**D. Compliance by the Corporation with legal and regulatory requirements.**

(Emphasis added).

## Merrill's Finance Committee

20.     According to the Finance Committee's charter, the Finance Committee is primarily responsible for:

**Assist[ing] the Board in fulfilling its oversight responsibilities relating to:**

**A. Financial commitments and investments;**

**B. The Corporation's financial and operating plan;**

**C. The Corporation's financing plan, including funding, liquidity and insurance programs;**

**D. Balance sheet and capital management; and**

**E. Credit and market risk management.**

(Emphasis added).

## DEFENDANTS' DUTIES

21.     Defendants owe and owed Merrill fiduciary obligations of fidelity, trust, loyalty, candor, and due care, and were and are required to manage Merrill in a fair, just, honest and equitable manner. Defendants were and are required to act in furtherance of the best interests of Merrill and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. Each Defendant owes Merrill the highest obligations of good faith and fair dealing. In addition, as officers and/or directors of a publicly held company, Defendants have a duty to manage the Company's exposure to credit and market risk in order to prevent losses.

9

22.     The Director Defendants, because of their positions of control and authority of Merrill, were able to and did, directly and indirectly, control the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company. Because of their advisory, executive, managerial, and directorial positions with Merrill, each Defendant had access to material, adverse, non-public information about the financial condition, operations and future business prospects of Merrill, including, without limitation, the misconduct in which Defendants caused Merrill to engage.

23.     By knowingly engaging in and/or knowingly acquiescing in the wrongful conduct complained of herein, Defendants breached the fiduciary duties that each of them owed to Merrill and caused Merrill to incur billions of dollars in damages and other injuries more fully described below.

24.     By reason of their positions as officers, directors and/or fiduciaries of Merrill and because of their ability to control the business and corporate affairs of Merrill, Defendants owed Merrill and its shareholders fiduciary obligations of trust, loyalty, good faith and due care, and were and are required to use their utmost ability to control and manage Merrill in a fair, just, honest and equitable manner. Defendants were and are required to act in furtherance of the best interests of Merrill and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

25.     Each director and officer of the Company owes to Merrill and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing. In addition, as officers and/or directors of a publicly held company, Defendants

had a duty to assure themselves and shareholders that Merrill would not write down over $7.9 billion of losses due to its positional overexposure in risky CDOs.

## SUBSTANTIVE ALLEGATIONS

26.     Merrill Lynch has boasted about its strong internal operational and credit risk management controls since as early as 2001. At a joint conference on capital allocation for operational risk hosted by the Federal Reserve Bank of Boston in November of 2001, Clinton Lively, then Managing Director of Corporate Risk Management at Merrill, described Merrill's Process Risk Management Program.

27.     By way of an elaborate PowerPoint presentation (which is annexed as Exhibit A hereto), Mr. Lively stated that Merrill's risk management program goals to were to: (i) motivate its internal control personnel to "learn from mistakes"; and (ii) "**assess[] the adequacy of controls for the risks we take.**" Mr. Lively's presentation stated:

> "The key criteria for developing the model for us has been how well it motivates managers to adopt the practices we have endorsed. **The internal mechanics of the model are a secondary priority – and become important only in so far as they influence behavior in the firm**. To this end, **business units receive reductions in their risk capital allocations to the extent they engage in the practices prescribed by the program- and for initiatives which result in demonstrated reductions in process risk.**"

(Emphasis added).

28.     As described in particular detail below, the Director Defendants and Merrill's other senior ranking executives completely disregarded Merrill's Process Risk Management Program and, as a result, permitted Merrill to engage in and become exposed to highly risky investments such that Merrill's financial risk exposure was materially beyond the risk levels permitted by Merrill's Process Risk Management Program.

29.     The Director Defendants either completely failed to, or were totally ineffective in curtailing Merrill from making these highly risky investments that were made in direct contravention of Merrill's Process Risk Management Program and, as a direct result, caused the Company to incur billions of dollars in losses. The Director Defendants blatantly ignored the restrictions imposed by Merrill's Process Risk Management Program and permitted Merrill's employees to do so as well, all to the extreme financial detriment of the Company.

30.     The Director Defendants were responsible for acting to insure that Merrill's Process Risk Management Program was implemented, and that the Company's employees were acting in accordance with this Program. The Director Defendants were also responsible for acting to insure that there was a system of checks and balances in place to monitor the activities of the Company's employees. Contrary to the public image that was painted of Merrill being a Company that prided itself on having and utilizing strong risk management policies and practices, Merrill was in fact a Company that did not adhere to its stated risk management policies and whose employees failed to conduct themselves in accordance with such policies. Such misconduct on the part of Merrill's employees was the direct result of the Director Defendants failing to fulfill their fiduciary responsibilities.

**Merrill's Former CEO**
**Was Obsessed With**
**Competing With Goldman Sachs**

31.     Merrill Lynch was a Company with substantial problems when Defendant O'Neal was given the responsibilities of CEO and Chairman of the Board in late 2001. At the same time, the Company's chief competitor, Goldman Sachs, was recording and reporting tremendous revenues and was quickly separating itself from the failing Merrill Lynch.

12

32.     In order to close the gap, and in appreciation of the deep financial woes that were then plaguing the Company, Defendant O'Neal fired a substantial portion of Merrill's workforce and tightened the Company's overall costs and spending in an attempt to maintain Merrill's reputation as a Wall Street leader.

33.     These actions proved to be insufficient in closing the widening gap between Merrill's performance and Goldman Sach's performance, however.  As a result, Defendant O'Neal implemented a new strategy that involved the risky financing of debt and derivatives, instruments whose valued is based upon the change in some underlying asset.

**Merrill Management
Takes On Added Risk
In Violation Of Merrill's
Process Risk Management Program**

34.     According to a Wall Street Journal ("WSJ") article dated October 25, 2007, O'Neal determined that Merrill needed to exponentially raise its holdings in the speculative business of securitizations in order to increase its profitability and to enhance its standing vis-à-vis Goldman Sachs.  In order to implement its new and aggressive investment strategy, Merrill hired major players in the CDOs and securitization industries, including Christopher Ricciardi, "who liked to be called the grandfather of CDOs."

35.     Securitization is the process of creating a financial instrument by combining other financial assets and then marketing them to investors.  These secured instruments are backed by loans, leases or receivables.  There are many types of secured instruments including, but not limited to, asset backed securities, residential mortgage backed securities and commercial mortgage backed securities.  An asset backed security is one backed by any receivable that is not earned from real estate. Examples of asset backed securitizations include credit card receivables, automobile loans/leases/floor plan receivables and volatile aircraft receivables.

13

36. Mortgage backed securities ("MBS"), on the other hand, are backed by the receivables from residential and commercial mortgages. In an MBS, the trust's pooled collateral varies and can consist of strong conforming mortgages or can consist of high risk sub-prime mortgages. Sub-prime mortgages are highly susceptible to default because the requested mortgages are issued to borrowers that have low income, shaky credit, job instability and few assets. Residential MBS accounts for close to half of all securitization collateral and almost 75% of all MBS are secured by sub-prime loans.

37. CDOs are pools of debts that bundle together a collection of securities and are sold through an assortment of tranches that are assessed based upon the safety and security of the underlying collateral. The investors in the CDOs bear the credit risk of the collateral. The tranches are categorized as senior, mezzanine and subordinated according to their degree of credit risk. If there are defaults in the loans, or if the collateral backing the CDO otherwise underperforms, the senior tranches are the first on the food chain and get paid out first. Every CDO has a sponsoring organization, which establishes the vehicle to hold collateral and issue securities.

**Merrill Becomes the World's Leading Sponsor of CDOs**

38. In response to the stock market troubles of late 2000, the Federal Reserve slashed interest rates with hopes of reviving the economy. This period of sustained drop in interest rates allowed the mortgage industry to significantly streamline underwriting and fulfillment operations, thus driving down the cost to refinance and providing enhanced access to credit to marginal borrowers. There were also reductions in down payment requirements and the movement to low documentation loans greatly expanded during the early 2000s.

14

39.   The fuel behind the increased loan documentation was the issuance of CDOs. CDO issuance was just $52 billion in 1999, but it rapidly rose to an astounding $388 billion in 2006. The sale of these instruments to investors brought new capital into the business of mortgages, and helped recycle loans so lenders could lend more, creating a national housing boom.

40.   As the issuance throughout the industry rose, so too did Merrill's underwriting of CDOs and the fees associated with such underwriting. According to the above mentioned WSJ article, "Merrill leapt from 15th place among CDO underwriting ranks in 2002, when it arranged just $2.22 billion of deals, to the No. 1 spot on Wall Street in 2004 with $19 billion, according to Dealogic. In 2005 Merrill's underwriting total soared to $35 billion, of which $14 billion were backed mostly by securities tied to sub-prime mortgages... [Merrill] reaped an estimated $400 million in CDO underwriting profits in 2005."

41.   By reason of the fact that Merrill was investing considerable monies in risky securitizations, the Director Defendants should have inquired and/or acted to insure that these investments were conducted in accordance with Merrill's Process Risk Management Program. By failing to do so, the Director Defendants breached the fiduciary duties that each of them owed to Merrill.

42.   Director Defendants decided instead to reward Merrill's management for violating the Company's Process Risk Management Program. Specifically, Defendant O'Neal's compensation was tied to the amount of fees that Merrill generated and in 2006, O'Neal received an $18.5 million bonus on top of $30 million in various forms of compensation. By approving such a bonus, the Director Defendants actively rewarded this ongoing violation of Merrill's Process Risk Management Program and improperly rewarded management's imprudent

investing strategies, thereby subjecting the Company tremendous financial risk and wasting Merrill's assets by utilizing Merrill funds to compensate management that was acting in direct violation of Merrill's Process Risk Management Program, as further detailed herein.

43. However, the roller coaster peaked in early 2006, when signs of trouble in the market for sub-prime mortgages began appearing. Home prices started declining for the first time in years and home builders' orders slowed. Credit agencies that ranked CDOs began downgrading the now risky investments. Companies started scrambling to concoct proper exit strategies that would lessen their exposure to CDOs.

**Despite The Burst Of The Housing**
**Bubble, Merrill Keeps Underwriting CDOs**

44. Notwithstanding the fact that most companies were attempting to cut off all ties to sub-prime mortgages, Defendants allowed Merrill to continue on its spree of underwriting CDOs. According to the WSJ, top executives "sought to reassure the CDO group that Merrill remained committed to the business, saying it would do "whatever it takes" to remain No. 1 in CDOs..."

45. Under the leadership of Defendant O'Neal, Merrill underwrote over 100 CDO deals with a value over $90 billion between 2006 and 2007. The Company collected millions in underwriting fees, and consequently, O'Neal collected millions in compensation. Merrill's overall exposure to the volatile CDOs of mortgage backed securities exceeded $41 billion as of late June of 2007.

46. The Director Defendants should not have allowed this risky exposure and should have seen the red flags associated with maintaining the abnormal CDO positions. Yet, there is no reported activity of either the Audit Committee or the Finance Committee, let alone the entire Board, taking any steps whatsoever to stop management from continuing to engage in these

highly risky investments in violation of Merrill's Process Risk Management Program. While other prudent firms were positioning themselves against a fall, Merrill continued its head-first plunge into the sub-prime CDOs.

47. Despite the obvious fact that Merrill's management had repeatedly violated Merrill's Process Risk Management Program and lost control, Defendant O'Neal assured investors in June of 2007 that the problems in the sub-prime area "were reasonably well contained" adding that "there have been no clear signs that it was spilling into other subsets of the bond market, the fixed income market and the credit market." This statement was known to be false to the Director Defendants at the time it was made by Defendant O'Neal because the Director Defendants knew, but did not disclose, that Merrill's management had long been engaged in making highly risky CDO investments in violation of Merrill's Process Risk Management Program, but failed to disclose this clearly material fact.

**Merrill Is Unable To Unload Its Oversized Position In CDOs, And Writes Down Billions of Dollars Of CDOs**

48. Because of the housing slump that was progressively worsening by the month, Merrill was unable to find buyers willing to accept any significant portion of Merrill's $41 billion position in the risky CDO market. Specifically, as of October of 2005, Merrill still held a position of over $20.9 billion.

49. In early October of 2007, Merrill issued its earnings pre-release and estimated an astounding overall **$4.5 billion** write-down across CDOs and U.S. subprime mortgages for the third quarter of 2007.

50. However, in an October 24, 2007 earnings conference call, Defendant O'Neal made a rare telephonic appearance and announced that Merrill, in fact, was forced to write down

17

an overall **$7.9 billion** across CDOs and U.S. subprime mortgages, $2.4 billion higher than the earnings pre-release estimate. Merrill also announced that day that it incurred a net loss from continuing operations for the third quarter of $2.3 billion, or $2.85 per diluted share, significantly below net earnings of $2.22 per diluted share for the second quarter of 2007 and $3.14 for the third quarter of 2006.

51.     This announced loss was a shocking $2 billion dollars higher than the loss expected based upon the material misstatements made by Merrill just a couple of weeks prior and was the Company's largest loss in around 100 years. The fact that the Company had failed to accurately disclose its expected losses and had understated this expected loss by more than $2 billion clearly establishes that the Director Defendants had failed to act to insure that Merrill's investment activities in the CDO market were conducted in accordance with Merrill's Process Risk Management Program, or alternatively, that these policies were in place and were blatantly ignored.

52.     The already depressed shares of Merrill fell over 5% since the write off announcement. As well, numerous credit agencies have downgraded the Company's ratings.

53.     The press release issued that same day stated:

> Merrill Lynch (**NYSE: MER**) today reported a net loss from continuing operations for the third quarter of $2.3 billion, or $2.85 per diluted share, significantly below net earnings of $2.22 per diluted share for the second quarter of 2007 and $3.14 for the third quarter of 2006. Third-quarter 2006 net earnings per diluted share, excluding the impact of the one-time, after-tax net benefit of $1.1 billion ($1.8 billion pretax) related to the merger of Merrill Lynch Investment Managers (MLIM) and BlackRock (NYSE: BLK), were $1.97. Third-quarter 2007 results reflect significant net write-downs and losses attributable to Merrill Lynch's Fixed Income, Currencies & Commodities (FICC) business, including write-downs of $7.9 billion across CDOs and U.S. subprime mortgages, which are significantly greater than the incremental $4.5 billion write-down Merrill Lynch disclosed at the time of its earnings pre-release. These write-downs and losses were partially offset by strong revenues in Global Wealth Management (GWM), Equity Markets and Investment Banking, particularly in regions outside

18

of the U.S. The results described above and herein, exclude Merrill Lynch Insurance Group (MLIG), which is reported under discontinued operations.

Third-quarter 2007 total net revenues of $577 million decreased 94 percent from $9.8 billion in the prior-year period and were down 94 percent from $9.7 billion in the second quarter of 2007. Merrill Lynch's third-quarter 2007 pretax net loss was $3.5 billion. At the end of the third quarter, book value per share was $39.75, down slightly from the end of the third quarter 2006.

Mortgage and leveraged finance-related write-downs in our FICC business depressed our financial performance for the quarter. In light of difficult credit markets and additional analysis by management during our quarter-end closing process, we re-examined our remaining CDO positions with more conservative assumptions. The result is a larger write-down of these assets than initially anticipated," said **Stan O'Neal**, chairman and chief executive officer. "We expect market conditions for subprime mortgage-related assets to continue to be uncertain and we are working to resolve the remaining impact from our positions," Mr. O'Neal continued. "Away from the mortgage-related areas, we continue to believe that secular trends in the global economy are favorable and that our businesses can perform well, as they have all year."

Net revenues for the first nine months of 2007 were $20.0 billion, down 23 percent from $25.8 billion in the comparable 2006 period. Net earnings per diluted share of $1.94 were down 62 percent from $5.12 in the prior-year period, and net earnings of $2.0 billion were down 61 percent. Results for the first nine months of 2006 included $1.2 billion of one-time, after-tax compensation expenses ($1.8 billion pretax) related to the adoption of Statement of Financial Accounting Standards No. 123R ("one-time compensation expenses") incurred in the first quarter of 2006, as well as the net benefit associated with the MLIM merger. Excluding these one-time items, net revenues for the first nine months of 2007 were down 16 percent, net earnings per diluted share were down 63 percent and net earnings were down 62 percent from the prior-year period. The pretax profit margin for the first nine months was 12.8 percent, down 14.2 percentage points from the comparable 2006 period, or down 16.3 percentage points excluding the one-time items. The annualized return on average common equity was 6.5 percent, down 13.0 percentage points from the first nine months of 2006, or down 13.4 percentage points excluding the one-time items.

**Business Segment Review:**

In the first quarter of 2006, Merrill Lynch recorded the one-time compensation expenses (pretax) in the business segments as follows: $1.4 billion to Global Markets and Investment Banking, $281 million to Global Wealth Management and $109 million to Merrill Lynch Investment Managers (which ceased to exist as a business segment upon its merger with BlackRock). The one-time net benefit associated with the MLIM merger was recorded in the Corporate Segment.

Comparisons to results from the third quarter and first nine months of 2006 in the following discussion of business segment results exclude the impact of these one-time items. A reconciliation of these segment results appears on <u>Attachment V</u> to this release.

**Global Markets & Investment Banking (GMI)**
GMI recorded negative net revenues and a pretax loss for the third quarter of 2007 of $3.0 billion and $4.4 billion, respectively, as strong net revenues from Equity Markets and Investment Banking were more than offset by the net losses in FICC. GMI's third quarter net revenues also included a net benefit of approximately $600 million due to the impact of the widening of Merrill Lynch's credit spreads on the carrying value of certain long-term debt liabilities.

- Third-quarter and year-to-date 2007 net revenues from GMI's three major business lines were as follows:

- FICC net revenues were negative $5.6 billion for the quarter, impacted primarily by losses across CDOs and U.S. subprime mortgages. These positions consist of CDO trading positions and warehouses, as well as U.S. subprime mortgage related whole loans, warehouse lending, residual positions and residential mortgage backed securities.

<p style="text-align:center">*  *  *</p>

<u>**Third-quarter write-downs of $7.9 billion across CDOs and U.S. subprime mortgages are significantly greater than the incremental $4.5 billion write-downs Merrill Lynch disclosed at the time of its earnings pre-release. This is due to additional analysis and price verification completed as part of the quarter-end closing process, including the use of more conservative loss assumptions in valuing the underlying collateral.**</u>

(Emphasis added).

54.     The $7.9 billion write down by the Company clearly shows that the Director Defendants were grossly negligent in their oversight of management. By not questioning Merrill's corporate credit risk investment strategy, the Board proximately caused Merrill to incur billions of dollars in damages.

55.     On October 25, 2007, the WSJ reported that:

"The 8.4 billion dollar hit leaves it clear that Mr. O'Neal and his team did not always appreciate the risks they took to achieve the greater profits. The write-downs surpass a $6 billion loss suffered in 2005 by the hedge fund Amaranth LLC, which had stood as the largest single known Wall Street loss…**On the**

<div style="text-align:center">20</div>

**Conference call, Mr. O'Neal accepted a share of the responsibility, saying, "I am accountable for the mistakes as I am accountable for the performance of the firm overall."**

(Emphasis added).

**O'Neal Attempts To Single-handedly**
**Merge Merrill With Wachovia Without Board Authority**

56.     Despite the admissions made by Defendant O'Neal regarding the mistakes he made in authorizing the underwriting of the risky CDOs, and despite the fact that the price per share of Merrill fell over 30% in just over 3 months, the Director Defendants did not fire Defendant O'Neal from his position as CEO of the Company.

57.     On October 26, 2007, the New York Times reported that Defendant O'Neal had conducted serious merger talks with Wachovia Bank without prior authorization or approval from Merrill's Board.  Knowing that he would secure a severance package exceeding $250 million, Defendant O'Neal pushed for a merger that would result in new management of the Company.

**Director Defendants Approve The**
**Resignation Of Defendant O'Neal**
**From Merrill And Improperly Reward**
**Him With A $160 Million Payment**

58.     On October 30, 2007, Merrill issued a press release announcing the retirement of Defendant O'Neal from the Company. The press release stated:

> The company said Mr. O'Neal and the board of directors both agreed that a change in leadership would best enable Merrill Lynch to move forward and focus on maintaining the strong operating performance of its businesses, which the company last week reported were performing well, apart from sub-prime mortgages and CDOs. 'We would like to thank Stan for the contribution he has made leading a major transformation of Merrill Lynch into a global and diversified company with enormous potential ahead of it,' said Mr. Cribiore. '**His commitment to the company, its clients, shareholders and employees has**

<u>never wavered and the company will reap tremendous benefits in the future from his work.</u>'

(Emphasis added).

59. The Board should have fired Defendant O'Neal after the Company announced its biggest loss in close to 100 years. Instead, the Director Defendants substantially wasted corporate assets by unjustifiably rewarding him with an over $160 million retirement package.

60. According to the Corporate Library, the leading independent source for U.S. corporate governance:

> Stanley O'Neal's departure from Merrill Lynch with 'no severance' and no 2007 bonus would seem to present a picture of a decisive board in control. **Yet, when 'no severance' equals $161.5 million and an office and executive assistant for three years, what else did they think they needed to give him?...When a compensation committee retains discretion over whether a severance package will be offered, it would seem to suggest that it will exercise its discretion in favor of shareholders. Yet all this meant was that it decided not to pay the approximately $30 million in cash severance that might have been due had Mr. O'Neal pulled off a merger with Wachovia**... But while the board is trying to present itself as decisive and in control now, **where was its oversight when the strategic decisions that led to this massive wrote-off of value were being made.** Since it also looks as if the board may be considering an external candidate...it appears to have failed in yet another of its most important duties: ensuring a proper succession plan is in place...**Finally, The Corporate Library has rated the Merrill Lynch board as a high risk board for all but 18 months of the five years we have provided ratings on company governance.**

(Emphasis added).

**The Director Defendants Permitted**
**Merrill To Issue A Series Of Materially False**
**And Misleading Financial Statements and SEC Filings**

61. In addition to the acts detailed above, Defendants caused false statements to be issued in SEC filings. On February 26, 2007 the Company filed a 10-K with the SEC for 2006, which stated that "our GMI business generated record setting financial performance by continuing to serve clients well, **take measured principal risk** and execute on a variety of key

growth initiatives around the world...we announced an agreement to acquire First Franklin mortgage origination franchise and related servicing platform from National City Corporation..." (Emphasis added).

62. These statements were materially false at the time, because Merrill was, in reality, overexposed to billions of dollars in the fast sinking CDOs that were backed by subprime loans. The agreement to purchase First Franklin perplexed analysts at the time, as it did not appear to make good business sense to invest in an industry that was tanking. These imprudent investments caused by the actions or inactions of the Board all resulted in the massive financial losses that crippled the Company since October of 2007.

63. On April 19, 2007, Merrill announced its financial results for the first quarter of 2007, and stated that "This was a terrific quarter...our product capabilities and geographic reach are stronger and broader now than at any point in our history, **and we continue to make investments to further enhance our franchise**." (Emphasis added).

64. The true fact remained that the Company was overexposed and was continuing to make further investments in CDOs that further **injured** the Company.

65. On August 03, 2007, Merrill filed its Form 10-Q with the SEC and stated that:

> "Merrill Lynch continues to be a major participant in these markets with risk exposures through cash positions, loans, derivatives and commitments. Given current market conditions, significant risk remains that could adversely impact these exposures and results of operations. **We continue our disciplined risk management efforts to proactively execute market strategies to manage our overall portfolio of positions and exposures with respect to market, credit and liquidity risks.**"

(Emphasis added).

66. By permitting Merrill and its management to issue these materially false and misleading statements, the Director Defendants breached their fiduciary duties to Merrill.

67.    It took a $7.9 billion debacle in order for the Company and the Board to appreciate that remedial measures were needed to correct the failure to adhere to Merrill's stated Process Risk Management Program and limit the Company's exposure to CDOs.  Only **after** Merrill had suffered billions of dollars in damages did Merrill create the position entitled Chief Risk Officer and vest this employee with the primary responsibility of monitoring both market and credit risk functions. According to the Company's 10-Q filed dated November 7, 2007:

> "In addition, with the establishment of the Chief Risk Officer…we are enhancing our capacity to monitor the associated risk levels vigilantly on a daily basis to ensure that they remain within corporate risk guidelines and risk tolerance levels."

The fact that the Company admitted in a SEC filing that they needed to "remain within corporate risk guidelines and risk tolerance levels" conclusively proves that the Director Defendants were grossly negligent in their oversight of the Company.

68.    According to a New York Times article dated November 04, 2007, the Securities and Exchange Commission has initiated an informal inquiry and investigation to examine whether Merrill accurately valued the Company's mortgage portfolio.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

69.    Plaintiff brings this action derivatively in right and for the benefit of Merrill to redress injuries suffered, and to be suffered, by Merrill as a direct result of the breaches of fiduciary duty, waste of corporate assets, and unjust enrichment.

70.    Merrill is named as a nominal defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

71.    Plaintiff will adequately and fairly represent the interests of Merrill in enforcing and prosecuting its right.

72.    Plaintiff is and was an owner of stock of Merrill during the relevant time period of Defendants' wrongful course of conduct alleged herein, and remains a shareholder of the Company. Plaintiff will remain a shareholder of Merrill through the conclusion of this litigation.

73.    Plaintiff has not made any demand on the Board of Merrill to institute this action because such a demand would be futile for the following reasons:

a.    The Director Defendants are accused of breaching their fiduciary duties and are liable for failing to ensure adequate internal controls and adequate means of supervision to prevent the wrongs alleged herein.

b.    The Director Defendants have for a substantial time been aware, or should have been aware, of the wrongs alleged, but have chosen not to protect Merrill or rectify the policies and practices complained of herein. The Director Defendants have participated in, acquiesced in, and approved the wrongs alleged and did so in breach of their duties to Merrill's shareholders. The Defendants therefore participated in a continuing course of corporate misconduct that included the following:

(i)    Director Defendants were involved in reviewing and/or disseminating the materially false and misleading statements and information contained in the Company's SEC filings, press releases, and other public documents, were aware or recklessly disregarded that materially false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws. Each Director Defendant was provided with copies of the documents alleged herein to be misleading prior to their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each Defendant is responsible for the accuracy of the public reports and releases detailed

25

herein, and is therefore primarily liable for the materially false representations contained therein. Because the Defendants are liable for filing incorrect statements with the SEC and are thereby liable for violating the federal securities laws, demand would be futile.

(ii) The Director Defendants Reese, Rossotti, Prueher and Jonas currently comprise the Audit Committee and individually and collectively failed in their duties of ensuring that the Company file true and complete financial statements with the SEC and are thereby liable for violations of the federal securities laws. An informal inquiry has been initiated by the SEC in order to determine whether the Company has violated the federal securities laws. Because Merrill's financial statements described herein contained material misstatements and omissions about the Company's exposure to risky CDOs, the Audit Committee failed to perform its duties, thereby exposing any and all of the Director Defendants to liability for their breach of fiduciary duties. As well, the Audit Committee shares some responsibility for overseeing risk policies and, therefore, Director Defendants Reese, Rossotti, Prueher and Jonas are liable for not ensuring that the employees of the Company did not overexpose the company to damaging risk. By not implementing proper risk procedures and by failing to comply with the risk procedures in place, Defendants Reese, Rossotti, Prueher and Jonas did not exercise reasonable due care and allowed the Company to be exposed to $41 billion in CDOS and enabled a write down of over $7.9 billion in losses in the third quarter. Accordingly, the Director Defendants on the Audit Committee cannot impartially act on a demand;

(iii) The Director Defendants Reese, Rossotti, Finnegan and Cribiore currently comprise the Finance Committee and individually and collectively failed in their duties of ensuring that the Company competently manage its credit risk exposure. According to

the Finance Committee's charter that was in effect throughout the relevant time period, the Finance Committee is primarily responsible "for credit and market risk management." By allowing the Company to obtain a $41 billion position in CDOs and by allowing the Company to suffer $7.9 billion in losses as a direct result of their gross negligence and failure to properly manage risk, Director Defendants Reese, Rossotti, Finnegan and Cribiore abdicated their fiduciary duties of due care and failed to monitor the Company's risk properly. As well, the Director Defendants mentioned above individually and collectively failed in their duties of ensuring that the Company file true and complete financial statements with the SEC and are thereby liable for violations of the federal securities laws. An informal inquiry has been initiated by the SEC in order to determine whether the Company has violated the federal securities laws. Because Merrill's financial statements described herein contained material misstatements and omissions about the Company's exposure to risky CDOs, the Finance Committee failed to perform its duties, therefore, demand would be futile;

(iv)   Director Defendants Cribiore, Colbert, Codina, Finnegan and Peters currently comprise the Management Development and Compensation Committee of the Board. The Director Defendants approved and authorized Defendant O'Neal retirement and thereby enabled him to receive an undeserving $161.5 million resignation package. This waste of corporate assets was perpetrated by the Director Defendants, and exposed them to liability as those monies should have been distributed to Merrill's shareholders and were intentionally misappropriated; and

27

(v) Defendant O'Neal selected five sixths of the current Board. As such, the Director Defendants feel an obligation of indebtedness to management, and therefore will not bring this lawsuit on behalf of the Company;

      c. The Director Defendants are accused of conduct that is not subject to business judgment protection or subject to ratification.

      d. The wrongful actions or inactions complained herein by the Director Defendants amounted to breaches of their fiduciary duties of good faith, disclosure, due care and loyalty to Merrill and its shareholders, and the abdication of their responsibilities give rise to liability to the Company.

      e. The Director Defendants failed to put into place adequate internal controls and adequate means of supervision to stop the wrongful conduct alleged herein despite the fact that the Board knew or should have known about such wrongful business practices.

74. These acts, and the acts alleged in this action, demonstrate a pattern of misconduct. A pattern of gross misconduct is not conduct taken in a good faith exercise of business judgment.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Breach of Fiduciary Duties Against All Defendants

75. Plaintiff incorporates by reference and realleges each and every allegation set forth herein.

76. Each of Defendants owed and owes fiduciary duties to Merrill and its shareholders. By reason of their fiduciary relationships, Defendants all owed Merrill the highest obligation of good faith, fair dealing, loyalty and due care and diligence in the management of

the affairs of the Company. Moreover, Defendants owed and owe the duty of full and candid disclosure of all material facts.

77. Defendants have been responsible for the gross and reckless management of Merrill and ignored their fiduciary responsibilities by:

    (i)    allowing the Company to amass an uncontrolled underwriting and position in CDOs that were mainly based on risky collateral in the form of sub-prime mortgages. The Company was forced to write down $7.9 billion in losses due to the breaches of fiduciary duties by the Director Defendants;

    (ii)    actively or indirectly causing the filing of false public statements that contained material misstatements and omissions regarding the financial health of the Company; and

    (iii)    wasting corporate assets by rewarding Defendant O'Neal with an $161.5 million resignation package.

78. All Defendants engaged in the above conduct in intentional breach of their fiduciary duties to the Company.

79. Defendants conspired to abuse, and did abuse, their positions of control and oversight in Merrill.

80. Plaintiff and Merrill have been injured by reason of Defendants' disregard to their important fiduciary duties to the Company. Plaintiff as a shareholder and representative of the company seeks damages and other relief for the Company.

81. Plaintiff on behalf of Merrill has no adequate remedy at law.

## SECOND CAUSE OF ACTION

### Abuse of Control Against All Defendants

82.    Plaintiff incorporates by reference and realleges each and every allegation set forth herein.

83.    Defendants' misconduct alleged herein constituted a breach of their fiduciary duties because they abused their ability to control and influence on Merrill, for which they are legally responsible.

84.    As a direct and proximate result of Defendants' abuse of control, Merrill has sustained significant damages.

85.    As a result of the misconduct alleged herein, Defendants are liable to the Company.

86.    Plaintiff on behalf of Merrill has no adequate remedy at law.

## THIRD CAUSE OF ACTION

### Gross Mismanagement Against All Defendants

87.    Plaintiff incorporates by reference and realleges each and every allegation set forth herein.

88.    By their actions alleged herein, Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of Merrill in a manner consistent with the operations of a publicly held corporation.

89.    As a direct and proximate result of Defendants' gross mismanagement and breaches of duty alleged herein, Merrill has sustained significant damages.

90. As a result of the misconduct and breaches of duty alleged herein, Defendants are liable to the Company.

91. Plaintiff on behalf of Merrill has no adequate remedy at law.

## FOURTH CAUSE OF ACTION

### Waste Of Corporate Assets Against All Defendants

92. Plaintiff incorporates by reference and realleges each and every allegation set forth herein.

93. As a result of the improper conduct described herein, and by failing to properly consider the interests of the Company and its public shareholders by failing to conduct proper supervision, Defendants have caused Merrill to waste valuable corporate assets by: awarding excessive compensation to senior executives, and by incurring potentially million of dollars of legal liability and legal costs to defend Defendants' unlawful actions.

94. Plaintiff on behalf of Merrill has no adequate remedy at law.

## FIFTH CAUSE OF ACTION

### Quasi Contract/ Unjust Enrichment Against All Defendants

95. Plaintiff incorporates by reference and realleges each and every allegation set forth herein.

96. By their wrongful acts and omissions, Defendants were unjustly enriched at the expense of, and to the detriment of, Merrill.

97. Plaintiff, as a shareholder and representative of Merrill, seeks restitution from Defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by Defendants, and each of them, from their wrongful conduct and fiduciary breaches.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment as follows:

A. Against Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of Defendants' breaches of fiduciary duties, waste of corporate assets and unjust enrichment;

B. Directing Merrill to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Merrill and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote on Corporate Governance Policies concerning compliance with all applicable IRS regulations and federal tax laws;

C. Extraordinary equitable and/or injunctive relief as permitted by law, equity and state statutory provisions sued hereunder, including attaching, impounding and imposing a constructive trust on or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of Merrill has an effective remedy;

D. Awarding to Merrill restitution from Defendants, and each of them, including ordering disgorgement of all profits, benefits and other compensation obtained by Defendants;

E. Awarding Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

F. Granting such other and further relief as the Court deems just and proper.

32

## DEMAND FOR A TRIAL BY JURY

Plaintiff demands a trial by jury on all issues so triable as a matter of right.

## RULE 4:5-1 CERTIFICATION

To the best of my knowledge, the matter in controversy is not the subject of any other action or arbitration proceeding, now or contemplated, and that no parties should be joined in this action pursuant to R. 4:5-1.

Dated: December 17, 2007

By: _____

LAW OFFICES OF JAMES V. BASHIAN, P.C..
James V. Bashian, Esq. (JB-6331)
271 Route 46 West, Suite F207
Fairfield, New Jersey 07004
Tel: (973) 227-6330
Fax: (973) 808-8665

Paul O. Paradis, Esq.
Gina M. Tufaro, Esq.
James Smith, Esq.
**HORWITZ, HORWITZ &
PARADIS, Attorneys at Law**
28 West 44th Street, 16th Floor
New York, NY 10036
Phone: (212) 404-2200
Fax:     (212) 404-2226

Attorneys For Derivative Plaintiff

33

## VERIFICATION

I, David Eidman, hereby state under penalty of perjury under the laws of the United States that:

1.     I am the named plaintiff in this action.

2.     I verify that I have reviewed the attached Verified Amended Derivative Complaint (the "Amended Complaint") and authorized my counsel to file the Amended Complaint.

3.     To the best of my knowledge, information and belief, the facts set forth in the Amended Complaint are true and correct.

Sworn to under penalty of perjury this 17th day of December, 2007.

_____
David Eidman

_____
James Bashian, Attorney Admitted to
Practice in the State of New Jersey

## APPENDIX XII. SUMMONS AND CIVIL CASE INFORMATION STATEMENT (CIS)

### APPENDIX XII-A.   SUMMONS

Attorney(s):  LAW OFFICES OF JAMES V. BASHIAN, P.C.
Office Address & Tel. No.::  271 Route 46 West, Suite F207, Fairfield, NJ 07004 (973) 227-6330
Attorney(s) for Plaintiff(s)   James V. Bashian, Esq. (JB-6331)

|  |  |
|---|---|
| David Eidman, Derivatively On Behalf of<br>MERRILL LYNCH & CO., INC.,<br><u>     Plaintiff(s)</u> | SUPERIOR COURT OF NEW JERSEY<br>     BERGEN     COUNTY<br>     LAW     DIVISION |

vs.

Docket No.  L-8872-07

ERNEST STANLEY O'NEAL, CAROL T.
CHRIST, ARMANDO CODINA, ET AL.,
     Defendant(s)

CIVIL ACTION

SUMMONS

From The State of New Jersey To The Defendant(s) Named Above:

    The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey.  The complaint attached to this summons states the basis for this lawsuit.  If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it.  (The address of each deputy clerk of the Superior Court is provided.)  If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971.  A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed.  You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above.  A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $135.00 and completed Case Information Statement) if you want the court to hear your defense.

    If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit.  If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

    If you cannot afford an attorney, you may call the Legal Services office in the county where you live.  A list of these offices is provided.  If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services.  A list of these numbers is also provided.

<div align="right">

_____
Theodore J. Fetter
Acting Clerk of the Superior Court

</div>

DATED:  12/17/2007

Name of Defendant to Be Served:  ERNEST STANLEY O'NEAL

Address of Defendant to Be Served: 211 W 56TH ST APT 18K
                                       NEW YORK, NY 10019-4321

## **APPENDIX XII. SUMMONS AND CIVIL CASE INFORMATION STATEMENT (CIS)**

### **APPENDIX XII-A. SUMMONS**

Attorney(s): LAW OFFICES OF JAMES V. BASHIAN, P.C.

Office Address & Tel. No.: 271 Route 46 West, Suite F207, Fairfield, NJ 07004 (973) 227-6330

Attorney(s) for Plaintiff(s)   James V. Bashian, Esq. (JB-6331)

|  |  |
|---|---|
| David Eidman, Derivatively On Behalf of<br>MERRILL LYNCH & CO., INC.,<br>       Plaintiff(s)<br><br>vs.<br><br>ERNEST STANLEY O'NEAL, CAROL T.<br>CHRIST, ARMANDO CODINA, ET AL.<br>       Defendant(s) | SUPERIOR COURT OF NEW JERSEY<br>     BERGEN     COUNTY<br>     LAW     DIVISION<br><br>Docket No.  L-8872-07<br><br>CIVIL ACTION<br><br>SUMMONS |

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is provided.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $135.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live. A list of these offices is provided. If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

                                                      Theodore J. Fetter<br>                                                      Acting Clerk of the Superior Court

DATED:  12/17/2007

Name of Defendant to Be Served:  CAROL T. CHRIST

Address of Defendant to Be Served: 8 PARADISE RD
                                         NORTHAMPTON, MA 01060-2907

## APPENDIX XII. SUMMONS AND CIVIL CASE INFORMATION STATEMENT (CIS)

### APPENDIX XII-A. SUMMONS

Attorney(s): LAW OFFICES OF JAMES V. BASHIAN, P.C.
Office Address & Tel. No.: 271 Route 46 West, Suite F207, Fairfield, NJ 07004 (973) 227-6330
Attorney(s) for Plaintiff(s)   James V. Bashian, Esq. (JB-6331)

|  |  |
|---|---|
| David Eidman, Derivatively On Behalf of MERRILL LYNCH & CO., INC., <br> Plaintiff(s) <br><br> vs. <br><br> ERNEST STANLEY O'NEAL, CAROL T. CHRIST, ARMANDO CODINA, ET AL., <br> Defendant(s) | SUPERIOR COURT OF NEW JERSEY <br> BERGEN COUNTY <br> LAW DIVISION <br><br> Docket No. L-8872-07 <br><br> CIVIL ACTION <br><br> SUMMONS |

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is provided.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $135.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live. A list of these offices is provided. If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

_____
Theodore J. Fetter
Acting Clerk of the Superior Court

DATED:  12/17/2007

Name of Defendant to Be Served:  ARMANDO M. CODINA

Address of Defendant to Be Served: 50 CASUARINA CONCOURSE
CORAL GABLES, FL 33143-6510

## APPENDIX XII. SUMMONS AND CIVIL CASE INFORMATION STATEMENT (CIS)

### APPENDIX XII-A. SUMMONS

Attorney(s):  LAW OFFICES OF JAMES V. BASHIAN, P.C.

Office Address & Tel. No.: 271 Route 46 West, Suite F207, Fairfield, NJ 07004 (973) 227-6330

Attorney(s) for Plaintiff(s)  James V. Bashian, Esq. (JB-6331)

|  |  |
|---|---|
| David Eidman, Derivatively On Behalf of<br>MERRILL LYNCH & CO., INC.,<br><u>Plaintiff(s)</u> | SUPERIOR COURT OF NEW JERSEY<br>BERGEN COUNTY<br>LAW DIVISION<br><br>Docket No. L-8872-07 |
| vs. | CIVIL ACTION |
| ERNEST STANLEY O'NEAL, CAROL T.<br>CHRIST, ARMANDO CODINA, ET AL.<br><u>Defendant(s)</u> | SUMMONS |

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is provided.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $135.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live. A list of these offices is provided. If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

Theodore J. Fetter
Acting Clerk of the Superior Court

DATED:  12/17/2007

Name of Defendant to Be Served:  VIRGIS W. COLBERT

Address of Defendant to Be Served: 706 E EASTWYN BAY DR 104N
MEQUON, WI 53092-6401

**APPENDIX XII. SUMMONS AND CIVIL CASE INFORMATION STATEMENT (CIS)**

### APPENDIX XII-A. SUMMONS

Attorney(s): LAW OFFICES OF JAMES V. BASHIAN, P.C.

Office Address & Tel. No.: 271 Route 46 West, Suite F207, Fairfield, NJ 07004 (973) 227-6330

Attorney(s) for Plaintiff(s)   James V. Bashian, Esq. (JB-6331)

| | |
|---|---|
| David Eidman, Derivatively On Behalf of <br> MERRILL LYNCH & CO., INC., <br> —————————————————————— <br> Plaintiff(s) | SUPERIOR COURT OF NEW JERSEY <br> BERGEN   COUNTY <br> LAW   DIVISION |
| vs. | Docket No. L-8872-07 |
| ERNEST STANLEY O'NEAL, CAROL T. <br> CHRIST, ARMANDO CODINA, ET AL. <br> Defendant(s) | CIVIL ACTION <br><br> SUMMONS |

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is provided.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $135.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live. A list of these offices is provided. If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

—————————————————————

Theodore J. Fetter

Acting Clerk of the Superior Court

DATED: 12/17/2007

Name of Defendant to Be Served: ALBERTO CRIBIORE

Address of Defendant to Be Served: 17 SUTTON PL
NEW YORK, NY 10022-2406

## APPENDIX XII. SUMMONS AND CIVIL CASE INFORMATION STATEMENT (CIS)

### APPENDIX XII-A. SUMMONS

Attorney(s): LAW OFFICES OF JAMES V. BASHIAN, P.C.
Office Address & Tel. No.: 271 Route 46 West, Suite F207, Fairfield, NJ 07004 (973) 227-6330
Attorney(s) for Plaintiff(s)  James V. Bashian, Esq. (JB-6331)

|  |  |
|---|---|
| David Eidman, Derivatively On Behalf of <br> MERRILL LYNCH & CO., INC., <br> ———————————————— <br> Plaintiff(s) | SUPERIOR COURT OF NEW JERSEY <br> BERGEN       COUNTY <br> LAW        DIVISION |
| vs. | Docket No.  L-8872-07 |
| ERNEST STANLEY O'NEAL, CAROL T. <br> CHRIST, ARMANDO CODINA, ET AL. <br> ———————————————— <br> Defendant(s) | CIVIL ACTION <br><br> SUMMONS |

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is provided.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $135.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live. A list of these offices is provided. If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

———————————————————
Theodore J. Fetter
Acting Clerk of the Superior Court

DATED:  12/17/2007

Name of Defendant to Be Served:  JOHN D. FINNEGAN

Address of Defendant to Be Served: 563 MILLER CT
                  WYCKOFF, NJ 07481-1147

## APPENDIX XII. SUMMONS AND CIVIL CASE INFORMATION STATEMENT (CIS)

### APPENDIX XII-A.  SUMMONS

Attorney(s):  LAW OFFICES OF JAMES V. BASHIAN, P.C.
Office Address & Tel. No.:  271 Route 46 West, Suite F207, Fairfield, NJ 07004 (973) 227-6330
Attorney(s) for Plaintiff(s)  James V. Bashian, Esq. (JB-6331)

|  |  |
|---|---|
| David Eidman, Derivatively On Behalf of MERRILL LYNCH & CO., INC., | SUPERIOR COURT OF NEW JERSEY BERGEN COUNTY LAW DIVISION |
| Plaintiff(s) | |
| vs. | Docket No.  L-8872-07 |
| | CIVIL ACTION |
| ERNEST STANLEY O'NEAL, CAROL T. CHRIST, ARMANDO CODINA, ET AL. | |
| Defendant(s) | SUMMONS |

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey.  The complaint attached to this summons states the basis for this lawsuit.  If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it.  (The address of each deputy clerk of the Superior Court is provided.)  If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971.  A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed.  You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above.  A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $135.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit.  If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live.  A list of these offices is provided.  If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services.  A list of these numbers is also provided.

_____
Theodore J. Fetter
Acting Clerk of the Superior Court

DATED:  12/17/2007

Name of Defendant to Be Served:  JUDITH MAYHEW JONAS

Address of Defendant to Be Served:  25 VICTORIA AVE.
LONDON
UNITED KINGDOM

**APPENDIX XII. SUMMONS AND CIVIL CASE INFORMATION STATEMENT (CIS)**

### APPENDIX XII-A. SUMMONS

Attorney(s): LAW OFFICES OF JAMES V. BASHIAN, P.C.
Office Address & Tel. No.: 271 Route 46 West, Suite F207, Fairfield, NJ 07004 (973) 227-6330
Attorney(s) for Plaintiff(s)   James V. Bashian, Esq. (JB-6331)

|  |  |
|---|---|
| David Eidman, Derivatively On Behalf of MERRILL LYNCH & CO., INC., <br> _____Plaintiff(s)_____ <br><br> vs. <br><br> ERNEST STANLEY O'NEAL, CAROL T. CHRIST, ARMANDO CODINA, ET AL., <br> Defendant(s) | SUPERIOR COURT OF NEW JERSEY <br> BERGEN COUNTY <br> LAW DIVISION <br><br> Docket No.  L-8872-07 <br><br> CIVIL ACTION <br><br> SUMMONS |

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is provided.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $135.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live. A list of these offices is provided. If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

_____
Theodore J. Fetter
Acting Clerk of the Superior Court

DATED:  12/17/2007

Name of Defendant to Be Served:  AULANA L. PETERS

Address of Defendant to Be Served: 1337 N KENTER AVE
                                    LOS ANGELES, CA 90049-1319

**APPENDIX XII. SUMMONS AND CIVIL CASE INFORMATION STATEMENT (CIS)**

## APPENDIX XII-A.  SUMMONS

Attorney(s):  LAW OFFICES OF JAMES V. BASHIAN, P.C.

Office Address & Tel. No.:  271 Route 46 West, Suite F207, Fairfield, NJ 07004 (973) 227-6330

Attorney(s) for Plaintiff(s)    James V. Bashian, Esq. (JB-6331)

|  |  |
|---|---|
| David Eidman, Derivatively On Behalf of <br> MERRILL LYNCH & CO., INC., <br> Plaintiff(s) <br><br> vs. <br><br> ERNEST STANLEY O'NEAL, CAROL T. CHRIST, ARMANDO CODINA, ET AL. <br> Defendant(s) | SUPERIOR COURT OF NEW JERSEY <br> BERGEN          COUNTY <br> LAW                    DIVISION <br><br> Docket No.  L-8872-07 <br><br> CIVIL ACTION <br><br> SUMMONS |

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey.  The complaint attached to this summons states the basis for this lawsuit.  If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it.  (The address of each deputy clerk of the Superior Court is provided.)  If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971.  A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed.  You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above.  A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $135.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit.  If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live.  A list of these offices is provided.  If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services.  A list of these numbers is also provided.

<br>

_____

Theodore J. Fetter

Acting Clerk of the Superior Court

DATED:  12/17/2007

Name of Defendant to Be Served:  JOSEPH W. PRUEHER

Address of Defendant to Be Served: 126 PINEWOOD RD

VIRGINIA BEACH, VA 23451-3923

Revised 09/2006, CN 10792-English

# APPENDIX XII. SUMMONS AND CIVIL CASE INFORMATION STATEMENT (CIS)

## APPENDIX XII-A. SUMMONS

Attorney(s): LAW OFFICES OF JAMES V. BASHIAN, P.C.
Office Address & Tel. No.: 271 Route 46 West, Suite F207, Fairfield, NJ 07004 (973) 227-6330
Attorney(s) for Plaintiff(s) James V. Bashian, Esq. (JB-6331)

| | |
|---|---|
| David Eidman, Derivatively On Behalf of MERRILL LYNCH & CO., INC., | SUPERIOR COURT OF NEW JERSEY |
| Plaintiff(s) | BERGEN COUNTY LAW DIVISION |
| vs. | Docket No. L-8872-07 |
| ERNEST STANLEY O'NEAL, CAROL T. CHRIST, ARMANDO CODINA, ET AL. | CIVIL ACTION |
| Defendant(s) | SUMMONS |

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is provided.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $135.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live. A list of these offices is provided. If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

Theodore J. Fetter
Acting Clerk of the Superior Court

DATED: 12/17/2007

Name of Defendant to Be Served: ANN N. REESE

Address of Defendant to Be Served: 168 KIRBY LN # A
RYE, NY 10580-4320

## APPENDIX XII. SUMMONS AND CIVIL CASE INFORMATION STATEMENT (CIS)

### APPENDIX XII-A.  SUMMONS

Attorney(s):  LAW OFFICES OF JAMES V. BASHIAN, P.C.
Office Address & Tel. No.:  271 Route 46 West, Suite F207, Fairfield, NJ 07004 (973) 227-6330
Attorney(s) for Plaintiff(s)  James V. Bashian, Esq. (JB-6331)

|  |  |
|---|---|
| David Eidman, Derivatively On Behalf of<br>MERRILL LYNCH & CO., INC.,<br>———————————————<br>Plaintiff(s)<br><br>vs.<br><br>ERNEST STANLEY O'NEAL, CAROL T.<br>CHRIST, ARMANDO CODINA, ET AL.<br>———————————————<br>Defendant(s) | SUPERIOR COURT OF NEW JERSEY<br>BERGEN      COUNTY<br>LAW      DIVISION<br><br>Docket No.  L-8872-07<br><br>CIVIL ACTION<br><br>SUMMONS |

From The State of New Jersey To The Defendant(s) Named Above:

    The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey.  The complaint attached to this summons states the basis for this lawsuit.  If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it.  (The address of each deputy clerk of the Superior Court is provided.)  If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971.  A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed.  You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above.  A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $135.00 and completed Case Information Statement) if you want the court to hear your defense.

    If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit.  If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

    If you cannot afford an attorney, you may call the Legal Services office in the county where you live.  A list of these offices is provided.  If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services.  A list of these numbers is also provided.

 

————————————————————
Theodore J. Fetter
Acting Clerk of the Superior Court

DATED:  12/17/2007

Name of Defendant to Be Served:  CHARLES O. ROSSOTTI

Address of Defendant to Be Served: 3314 N ST NW
                WASHINGTON, DC 20007-2807



# CIVIL CASE INFORMATION STATEMENT
## (CIS)

Use for initial Law Division
Civil Part pleadings (not motions) under Rule 4:5-1
**Pleading will be rejected for filing, under Rule 1:5-6(c),
if information above the black bar is not completed or
if attorney's signature is not affixed.**

| FOR USE BY CLERK'S OFFICE ONLY |
| --- |
| PAYMENT TYPE: CK    CG    CA |
| CHG/CK NO. |
| AMOUNT: |
| OVERPAYMENT: |
| BATCH NUMBER: |

| ATTORNEY/PRO SE NAME | TELEPHONE NUMBER | COUNTY OF VENUE |
| --- | --- | --- |
| James V. Bashian | (973) 227-6330 | Bergen |

| FIRM NAME (If applicable) | DOCKET NUMBER (When available) |
| --- | --- |
| LAW OFFICES OF JAMES V. BASHIAN, P.C. | L-8872-07 |

| OFFICE ADDRESS | DOCUMENT TYPE |
| --- | --- |
| 271 Route 46 West, F207, Fairfield Commons <br> Fairfield, NJ 07704 | COMPLAINT |
| | JURY DEMAND   ☒ YES   ☐ NO |

| NAME OF PARTY (e.g., John Doe, Plaintiff) | CAPTION |
| --- | --- |
| DAVID EIDMAN | David Eidman, Derivatively on behalf of Merrill Lynch & Co. Inc., v. Ernest Stanley O'Neal, Carol T. Christ, Armando M. Codina, Virgis W. Colbert, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, et al. |

| CASE TYPE NUMBER (See reverse side for listing) | IS THIS A PROFESSIONAL MALPRACTICE CASE? ☐ YES   ☒ NO |
| --- | --- |
| 508 | IF YOU HAVE CHECKED "YES," SEE N.J.S.A. 2A:53A-27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |

| RELATED CASES PENDING? ☐ YES ☒ NO | IF YES, LIST DOCKET NUMBERS |
| --- | --- |

| DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of same transaction or occurrence)? ☐ YES ☒ NO | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY, IF KNOWN <br> ☐ NONE <br> ☒ UNKNOWN |
| --- | --- |

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP? ☐ YES ☒ NO | IF YES, IS THAT RELATIONSHIP ☐ EMPLOYER-EMPLOYEE ☐ FRIEND/NEIGHBOR ☐ OTHER (explain) <br> ☐ FAMILIAL ☐ BUSINESS |
| --- | --- |

DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY? ☐ YES ☒ NO

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION

Shareholder Derivative Action

| DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS? ☐ YES ☒ NO | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION: |
| --- | --- |
| WILL AN INTERPRETER BE NEEDED? ☐ YES ☒ NO | IF YES, FOR WHAT LANGUAGE: |

ATTORNEY SIGNATURE:

revised effective 9/15/07, CN 10517 English

page 1 of 2



# CIVIL CASE INFORMATION STATEMENT
## (CIS)
Use for initial pleadings (not motions) under *Rule* 4:5-1

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

### Track I — 150 days' discovery
| | |
|---|---|
| 151 | NAME CHANGE |
| 175 | FORFEITURE |
| 302 | TENANCY |
| 399 | REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction) |
| 502 | BOOK ACCOUNT (debt collection matters only) |
| 505 | OTHER INSURANCE CLAIM (INCLUDING DECLARATORY JUDGMENT ACTIONS) |
| 506 | PIP COVERAGE |
| 510 | UM or UIM CLAIM |
| 511 | ACTION ON NEGOTIABLE INSTRUMENT |
| 512 | LEMON LAW |
| 801 | SUMMARY ACTION |
| 802 | OPEN PUBLIC RECORDS ACT (SUMMARY ACTION) |
| 999 | OTHER (Briefly describe nature of action) |

### Track II — 300 days' discovery
| | |
|---|---|
| 305 | CONSTRUCTION |
| 509 | EMPLOYMENT (other than CEPA or LAD) |
| 599 | CONTRACT/COMMERCIAL TRANSACTION |
| 603 | AUTO NEGLIGENCE – PERSONAL INJURY |
| 605 | PERSONAL INJURY |
| 610 | AUTO NEGLIGENCE – PROPERTY DAMAGE |
| 699 | TORT – OTHER |

### Track III — 450 days' discovery
| | |
|---|---|
| 005 | CIVIL RIGHTS |
| 301 | CONDEMNATION |
| 602 | ASSAULT AND BATTERY |
| 604 | MEDICAL MALPRACTICE |
| 606 | PRODUCT LIABILITY |
| 607 | PROFESSIONAL MALPRACTICE |
| 608 | TOXIC TORT |
| 609 | DEFAMATION |
| 616 | WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES |
| 617 | INVERSE CONDEMNATION |
| 618 | LAW AGAINST DISCRIMINATION (LAD) CASES |

### Track IV — Active Case Management by Individual Judge / 450 days' discovery
| | |
|---|---|
| 156 | ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION |
| 303 | MT. LAUREL |
| 508 | COMPLEX COMMERCIAL |
| 513 | COMPLEX CONSTRUCTION |
| 514 | INSURANCE FRAUD |
| 701 | ACTIONS IN LIEU OF PREROGATIVE WRITS |

### Mass Tort (Track IV)
| | | | |
|---|---|---|---|
| 241 | TOBACCO | 274 | RISPERDAL/SEROQUEL/ZYPREXA |
| 248 | CIBA GEIGY | 275 | ORTHO EVRA |
| 264 | FPA | 276 | DEPO-PROVERA |
| 266 | HORMONE REPLACEMENT THERAPY (HRT) | 601 | ASBESTOS |
| 271 | ACCUTANE | 619 | VIOXX |
| 272 | BEXTRA/CELEBREX | | |

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1, in the space under "Case Characteristics."

Please check off each applicable category:

☐ Verbal Threshold          ☐ Putative Class Action          ☐ Title 59

ERGEN COUNTY COURTHOUSE
UPERIOR COURT LAW DIV
ERGEN COUNTY JUSTICE CTR RM 415
ACKENSACK          NJ 07601-7680

TRACK ASSIGNMENT NOTICE

OURT TELEPHONE NO. (201) 527-2600
OURT HOURS

                    DATE:    DECEMBER 05, 2007
                    RE:      MERRILL LYNCH & CO INC VS O NEAL
                    DOCKET:  BER L -008872 07

    THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 4.

    DISCOVERY IS PRESUMPTIVELY 450 DAYS BUT MAY BE ENLARGED OR SHORTENED BY THE
UDGE AND RUNS FROM THE FIRST ANSWER OR 90 DAYS FROM SERVICE ON THE FIRST
EFENDANT, WHICHEVER COMES FIRST.

    THE MANAGING JUDGE ASSIGNED IS:  HON JONATHAN N. HARRIS

    IF YOU HAVE ANY QUESTIONS, CONTACT TEAM       003
T:  (201) 527-2600.

    IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
    PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
ITH R.4:5A-2.
                    ATTENTION:
                              ATT: JAMES V. BASHIAN
                              JAMES V. BASHIAN
                              FAIRFIELD COMMONS
                              271 ROUTE 46 WEST   SUITE F 207
                              FAIRFIELD          NJ 07004

JGGES

Exhibit B

# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR TIMES SQUARE

NEW YORK 10036-6522

TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

DIRECT DIAL
(212) 735-2628
DIRECT FAX
(917) 777-2628
EMAIL ADDRESS
JKASNER@SKADDEN.COM

FIRM/AFFILIATE OFFICES

BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA



RECEIVED
DEC 1 3 2007
CHAMBERS OF
LEONARD B. SAND

December 12, 2007

BY HAND

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12-13-07

Hon. Leonard B. Sand
United States District Judge
 for the Southern District of New York
United States Courthouse
500 Pearl Street, Room 1650
New York, New York 10007

Re:   *Life Enrichment Foundation v. Merrill Lynch & Co.,*
      *Inc., et al.,* 07 CV 9633 (LBS) and related actions

Dear Judge Sand:

        We represent Merrill Lynch & Co., Inc. ("Merrill Lynch") in connection with the actions identified on the enclosed chart related to Merrill Lynch's recent announcements concerning its exposure to the collateralized debt obligation and subprime mortgage markets (the "Related Actions"). It is our understanding that the Court is accepting assignment of the Related Actions. Pending the implementation of a case management plan or plans organizing the Related Actions, Merrill Lynch respectfully requests that all defendants' time to move, answer or otherwise respond to the complaints be adjourned until further order of Court.

                                    Respectfully submitted,

                                    Jay B. Kasner

cc:    Counsel of Record
        (via facsimile or e-mail)

Granted
                    Sand
                    (LSB)   12/13/07

MEMO ENDORSED

Exhibit C

## CONSENT FOR REMOVAL

Defendant Ernest Stanely O'Neal consents to the removal of <u>David Eidman v.</u>
<u>Ernest Stanley O'Neal, et al.</u>, Docket No. L-8872-07, currently pending in the Superior
Court of New Jersey, Law Division, Bergen County, New Jersey to the United States
District Court for the District of New Jersey.

Dated: January 7, 2008

*Michael J. Chepiga*

Michael J. Chepiga
Paul C. Curnin
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017-3954
T: (212) 455-2000

Attorneys for Defendant Ernest Stanley
O'Neal

## CONSENT FOR REMOVAL

Defendants Carol T. Christ, Armando M. Codina, Virgis W. Colbert, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, Aulana L. Peters, Joseph W. Prueher, Ann N. Reese and Charles O. Rossotti consent to the removal of <u>David Eidman v. Ernest Stanley O'Neal, et al.</u>, Docket No. L-8872-07, currently pending in the Superior Court of New Jersey, Law Division, Bergen County, New Jersey to the United States District Court for the District of New Jersey.

Dated: January 7, 2008

*Jason Halper / DJB w/permission*

Dennis J. Block
Jason Halper
CADWALADER, WICKERSHAM
 & TAFT LLP
One World Financial Center
New York, NY 10281
T: (212) 504-6000

Attorneys for Defendants Carol T. Christ,
Armando M. Codina, Virgis W. Colbert,
Alberto Cribiore, John D. Finnegan, Judith
Mayhew Jonas, Aulana L. Peters, Joseph W.
Prueher, Ann N. Reese and Charles O.
Rossotti

Michael R. Griffinger
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102-5310
mgriffinger@gibbonslaw.com
Tel: 973-596-4500
Fax: 973-639-6294

Jay B. Kasner
Scott D. Musoff
**SKADDEN, ARPS, SLATE,**
  **MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
Tel: 212-735-3000
Fax: 212-735-2000

*Co-Counsel for Nominal Defendant*
*Merrill Lynch & Co., Inc.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| DAVID EIDMAN, Derivatively On Behalf of MERRILL LYNCH & CO., INC., | CIVIL ACTION NO. _____ |
| Plaintiff, | **CERTIFICATION PURSUANT TO** <u>**LOCAL CIVIL RULE 11.2**</u> |
| vs. | **Document Filed Electronically** |
| ERNEST STANLEY O'NEAL, CAROL T. CHRIST, ARMANDO M. CODINA, VIRGIS W. COLBERT, ALBERTO CRIBIORE, JOHN D. FINNEGAN, JUDITH MAYHEW JONAS, AULANA L. PETERS, JOSEPH W. PRUEHER, ANN N. REESE and CHARLES O. ROSOTTI, | |
| Defendants, | |
| -and- | |
| MERRILL LYNCH & CO., INC., | |
| Nominal Defendant. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

-1-

I, Michael R. Griffinger, admitted to the bars of the State of New Jersey and this Court and a Director in the law firm of Gibbons P.C., co-counsel for Nominal Defendant MERRILL LYNCH & CO., INC. ("Merrill Lynch") in the above-captioned matter, hereby certify that, to my knowledge, the above-captioned matter is neither the subject of any other action pending in any court, nor the subject of any pending arbitration or administrative proceeding, other than the actions listed on the attached chart.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated:  January 9, 2008
        Newark, New Jersey

s/ Michael R. Griffinger
Michael R. Griffinger
GIBBONS P.C.
One Gateway Center
Newark, NJ 07102-5310
mgriffinger@gibbonslaw.com
Tel: 973-596-4500
Fax: 973-639-6294

*Attorneys for Nominal Defendant*
*Merrill Lynch & Co., Inc.*

Of counsel:

Jay B. Kasner
Scott D. Musoff
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Tel: 212-735-3000
Fax: 212-735-2000

*Attorneys for Nominal Defendant*
*Merrill Lynch & Co., Inc.*

-2-

## CHART OF RELATED ACTIONS

1.      Life Enrichment Foundation v. Merrill Lynch & Co., E. Stanley O'Neal, Ahmass L. Fakahany, Gregory J. Fleming and Jeffrey N. Edwards, 07 CV 9633 (LBS) (SDNY)

2.      Michael J. Savena v. Merrill Lynch & Co., Inc., E. Stanley O'Neal, Ahmass L. Fakahany, Gregory J. Fleming, Jeffrey N. Edwards, 07 CV 9837(LBS) (SDNY)

3.      Gary Kosseff v. Merrill Lynch & Co., Inc., E. Stanley O'Neal, Ahmass L. Fakahany, Gregory J. Fleming, Jeffrey N. Edwards, 07 CV 10984 (LBS) (SDNY)

4.      Robert R. Garber v. Merrill Lynch & Co., Inc., E. Stanley O'Neal, Ahmass L. Fakahany, Gregory J. Fleming, Jeffrey N. Edwards, 07 CV 11080 (LBS) (SDNY)

5.      James Conn v. Merrill Lynch & Co., Inc., E. Stanley O'Neal, Jeffrey N. Edwards, Lawrence A. Tosi, Armando M. Codina, Virgis W. Colbert, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, Aulana L. Peters, Joseph W. Prueher, Ann N. Reese and Charles O. Rossotti, 07 CV 11626 (SDNY)

6.      Patricia Arthur v. E. Stanley O'Neal, Ahmass L. Fakahany, Gregory J. Fleming, Jeffrey N. Edwards, Carol T. Christ, Armando D. Codina, Virgis W. Colbert, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, Joseph W. Prueher, Ann N. Reese, Charles O. Rossotti & Merrill Lynch & Co., Inc., 07 CV 9696 (LBS) (SDNY)

7.      Miriam Loveman v. E. Stanley O'Neal, Ahmass L. Fakahany, Gregory J. Fleming, Jeffrey N. Edwards, Carol T. Christ, Armando D. Codina, Virgis W. Colbert, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, Joseph W. Prueher, Ann N. Reese, Charles O. Rossotti & Merrill Lynch & Co., Inc. (nominal defendant), 07 CV 9888 (LBS) (SDNY)

8.      Operative Plasterers & Cement Masons Local 262 Pension and Annuity Funds v. E. Stanley O'Neal, Ahmass L. Fakahany, Gregory J. Fleming, Jeffrey N. Edwards, Carol T. Christ, Armando D. Codina, Virgis W. Colbert, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, Joseph W. Prueher, Ann N. Reese, Charles O. Rossotti & Merrill Lynch & Co., Inc. (nominal defendant), 07 CV 11085 (LBS) (SDNY)

9.      Elizabeth Estey v. Merrill Lynch & Co., Inc., Merrill Lynch & Co., Inc. Plan "Investment Committee", Merrill Lynch & Co., Inc. Plan Administrative Committee, Merrill Lynch & Co., Inc. Management Development and Compensation Committee, Louis DiMaria, E. Stanley O'Neal, Alberto Cribiore, Armando M. Codina, Virgis W. Colbert, John D. Finnegan, Aulana L. Peters and John Does 1-10, 07 CV 10268 (LBS) (SDNY)

10.     Mary Gidaro v. Merrill Lynch & Co., Inc., Stan O'Neal, Lou DiMaria, Investment Committee of the Merrill Lynch Savings and Investment Plan, Administrative Committee of the Merrill Lynch Savings and Investment Plan, and John Does 1-30, 07 CV 10273 (LBS) (SDNY)

#1258637 v1
999999-00104

11.     Tara Moore v. Merrill Lynch & Co., Inc., Merrill Lynch & Co., Inc. Plan "Investment Committee", Merrill Lynch & Co., Inc. Plan Administrative Committee, Merrill Lynch & Co., Inc. Management Development and Compensation Committee, Louis DiMaria, E. Stanley O'Neal, Alberto Cribiore, Armando M. Codina, Virgis W. Colbert, John D. Finnegan, Aulana L. Peters and John Does 1-10, 07 CV 10398 (LBS) (SDNY)

12.     Gregory Yashgur v. Merrill Lynch & Co., Inc., Administrative Committee of the Merrill Lynch & Co., Inc. 401(k) Saving and Investment Plan, Louis DiMaria, Stan O'Neal, Alberto Cribiore, Carol T. Christ, Armando M. Codina, Virgis W. Colbert, John D. Finnegan, Judith Mayhew Jonas, Aulana L. Peters, Joseph W. Prueher, Ann N. Reese, and Charles O. Rossotti, and John Does 1-30, 07 CV 10569 (LBS) (SDNY)

13.     Christine Donlon v. Merrill Lynch & Co., Inc., E. Stanley O'Neal, Carol T. Christ, Armando M. Codina, Virgis W. Colbert, Jill K. Conway, Alberto Cribiore, Louis DiMaria, John D. Finnegan, Judith Mayhew Jonas, Aulana L. Peters, Joseph W. Prueher, Ann N. Reese, Charles O. Rossotti, John Does 1-20 (Being Current and Former Members of the Benefits Administration Committee of the Merrill Lynch & Co., Inc. Employee Stock Ownership Plan) and John Does 21-40 (Being Current and Former Members of the Investment Committee of the Merrill Lynch & Co., Inc. Employee Stock Ownership Plan), 07 CV 10661 (LBS) (SDNY)

14.     Carl Esposito v. Merrill Lynch & Co., Inc., E. Stanley O'Neal, Carol T. Christ, Armando M. Codina, Virgis W. Colbert, Jill K. Conway, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, David K. Newbigging, Aulana L. Peters, Joseph W. Prueher, Ann N. Reese, Charles O. Rossotti, Louis DiMaria, Peter Stingi and John and Jane Does 1-20, 07 CV 10687 (JGK) (SDNY)

15      Sean Shaughnessey v. Merrill Lynch & Co., Inc.; The Merrill Lynch Trust Company, FSB; Administrative Committee of the Merrill Lynch & Co., Inc. 401(k) Saving and Investment Plan, Louis DiMaria, John Does 1-20; the Merrill Lynch & Co., Inc. Investment Committee; John Does 20 to 40; Management Development and Compensation Committee of the Merrill Lynch & Co., Inc. Board of Directors; Armando M. Codina; Virgis W. Colbert; Alberto Cribiore; John D. Finnegan and Aulana L. Peters, 07 CV 10710 (LBS) (SDNY)

16.     Barbara Boland and Anna Molin v. Merrill Lynch & Co., Inc., E. Stanley O'Neal, Carol T. Christ, Armando M. Codina, Virgis W. Colbert, Jill K. Conway, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, David K. Newbigging, Aulana L. Peters, Joseph W. Prueher, Ann N. Reese, Charles O. Rossotti, Louis DiMaria, Peter Stingi and John and Jane Does 1-20, 07 CV 11054 (MGC) (SDNY)

17.     Francis Lee Summers, III v. Merrill Lynch & Co., Inc., Stan O'Neal, Lou DiMaria, Investment Committee of the Merrill Lynch Savings and Investment Plan, Administrative Committee of the Merrill Lynch Savings and Investment Plan, and John Does 1-30, 07 CV 11615 (SDNY)

18.     James Eastman v. Merrill Lynch & Co., Inc., Stan O'Neal, Lou DiMaria, Alberto Cribiore, Armando M. Codina, Virgis W. Colbert, John D. Finnegan, Aulana L. Peters, Charles O.

2

Rossotti, Jill K. Conway, Carol T. Christ, Judith Mayhew Jonas, Joseph W. Prueher, Ann N. Reese, David K. Newbigging, Investment Committee of the Merrill Lynch 401(K) Savings and Investment Plan, Administrative Committee of the Merrill Lynch 401(K) Savings and Investment Plan, and John Does 1-20, 08 CV 0058 (SDNY)

19.     Ronald Levin v. E. Stanley O'Neal, Ahmass L. Fakahany, Gregory J. Fleming, Jeffrey N. Edwards, Carol T. Christ, Armando D. Codina, Virgis W. Colbert, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, Joseph W. Prueher, Ann N. Reese, Charles O. Rossotti, Aulana L. Peters & Merrill Lynch & Co., Inc. (nominal defendant), Index No. 07-603662 (Justice Freedman) (NY State Supreme Court)

20.     Janyce Wziontka v. E. Stanley O'Neal, Ahmass L. Fakahany, Gregory J. Fleming, Jeffrey N. Edwards, Carol T. Christ, Armando D. Codina, Virgis W. Colbert, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, Joseph W. Prueher, Ann N. Reese, Charles O. Rossotti, Aulana L. Peters & Merrill Lynch & Co., Inc. (nominal defendant), Index No. 07- 603663 (NY State Supreme Court)

21.     Laura Diamond v. E. Stanley O'Neal, Carol T. Christ, Armando M. Codina, Virgis W. Colbert, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, Joseph W. Prueher, Ann N. Reese, Charles O. Rossotti, Aulana L. Peters & Merrill Lynch & Co., Inc. (nominal defendant), Index No. 08-60000 (NY State Supreme Court)

22.     Diane Blas, as Trustee of the Ray & Virginia Hunter Intervivos Trust) v. E. Stanley O'Neal, Ahmass L. Fakahany, Gregory J. Fleming and Jeffrey N. Edwards & Merrill Lynch & Co., Inc. (nominal defendant), Federal Docket No. Pending (DDEL)

3

Michael R. Griffinger
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102-5310
mgriffinger@gibbonslaw.com
Tel: 973-596-4500
Fax: 973-639-6294

Jay B. Kasner
Scott D. Musoff
**SKADDEN, ARPS, SLATE,**
 **MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
Tel: 212-735-3000
Fax: 212-735-2000

*Co-counsel for Nominal Defendant*
*Merrill Lynch & Co., Inc.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DAVID EIDMAN, Derivatively On Behalf of
MERRILL LYNCH & CO., INC.,

                Plaintiff,

                vs.

ERNEST STANLEY O'NEAL, CAROL T.
CHRIST, ARMANDO M. CODINA, VIRGIS W.
COLBERT, ALBERTO CRIBIORE, JOHN D.
FINNEGAN, JUDITH MAYHEW JONAS,
AULANA L. PETERS, JOSEPH W. PRUEHER,
ANN N. REESE and CHARLES O. ROSOTTI,

                Defendants,

                -and-

MERRILL LYNCH & CO., INC.,

                Nominal Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

: CIVIL ACTION NO. _____

: **CERTIFICATE OF SERVICE**

: **Document Filed Electronically**

**MELISSA C. FULTON**, of full age, hereby certifies as follows:

1.     I am an associate of the law firm of Gibbons P.C., co-counsel for nominal defendant Merrill Lynch & Co., Inc. ("Merrill Lynch") in the above-entitled action.

2.     On January 9, 2008, I caused true and correct copies of Merrill Lynch's Notice of Removal with exhibits, Certification Pursuant to Local Civil Rule 11.2, Disclosure Statement Pursuant to Federal Rule of Civil Procedure 7.1 and this Certificate of Service to be served, *via* Federal Express, Priority Overnight, upon the following counsel:

James V. Bashian, Esq.
LAW OFFICES OF
JAMES V. BASHIAN, P.C.
271 Route 46 West, Suite F207
Fairfield, NJ 07004

*Attorneys for Plaintiffs*

Paul O. Paradis, Esq.
HORWITZ, HORWITZ & PARADIS
28 West 44th Street, 16th Floor
New York, NY 10036

*Attorneys for Plaintiffs*

Michael C. Chepiga
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017-3954

*Attorneys for Defendant Ernest Stanley O'Neal*

Dennis J. Block
CADWALADER, WICKERSHAM &
TAFT LLP
One World Financial Center
New York, NY 10281

*Attorneys for Defendants Carol T. Christ, Armando M. Codina, Virgis W. Colbert, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, Aulana L. Peters, Joseph W. Prueher, Ann N. Reese and Charles O. Rossotti*

I declare under penalty of perjury that the foregoing statements made by me are true and correct. I am aware that if any such statements are willfully false, I am subject to punishment.

Melissa C. Fulton

Dated:  January 9, 2008
          Newark, New Jersey

Michael R. Griffinger
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102-5310
mgriffinger@gibbonslaw.com
Tel: 973-596-4500
Fax: 973-639-6294

Jay B. Kasner
Scott D. Musoff
**SKADDEN, ARPS, SLATE,**
  **MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
Tel: 212-735-3000
Fax: 212-735-2000

*Co-Counsel for Nominal Defendant*
*Merrill Lynch & Co., Inc.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DAVID EIDMAN, Derivatively On Behalf of
MERRILL LYNCH & CO., INC.,        :   CIVIL ACTION NO. _____

       Plaintiff,            :   **DISCLOSURE STATEMENT**
                               **PURSUANT TO FEDERAL RULE**
       vs.               :   <u>**OF CIVIL PROCEDURE 7.1**</u>

ERNEST STANLEY O'NEAL, CAROL T.   :   **Document Filed Electronically**
CHRIST, ARMANDO M. CODINA, VIRGIS W.
COLBERT, ALBERTO CRIBIORE, JOHN D.   :
FINNEGAN, JUDITH MAYHEW JONAS,
AULANA L. PETERS, JOSEPH W. PRUEHER,  :
ANN N. REESE and CHARLES O. ROSOTTI,

       Defendants,          :

       -and-              :

MERRILL LYNCH & CO., INC.,        :

       Nominal Defendant.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure, and to enable Judges and Magistrate Judges to evaluate possible disqualification or recusal, Nominal Defendant Merrill Lynch & Co., Inc. hereby states by and through its undersigned counsel that it is a publicly held company whose shares are traded on the New York Stock Exchange and there is no publicly held corporation that owns 10% or more of its stock.

Dated: January 9, 2008
     Newark, New Jersey            GIBBONS P.C.


By:  s/ Michael R. Griffinger
    Michael R. Griffinger
    GIBBONS P.C.
    One Gateway Center
    Newark, NJ 07102-5310
    mgriffinger@gibbonslaw.com
    Tel: 973-596-4500
    Fax: 973-639-6294

    *Attorneys for Nominal Defendant*
    *Merrill Lynch & Co., Inc.*

Of counsel:

    Jay B. Kasner
    Scott D. Musoff
    SKADDEN, ARPS, SLATE,
     MEAGHER & FLOM LLP
    Four Times Square
    New York, New York 10036
    Tel: 212-735-3000
    Fax: 212-735-2000

    *Attorneys for Nominal Defendant*
    *Merrill Lynch & Co., Inc.*

#1258608 v1
999999-00104

Michael R. Griffinger
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102-5310
mgriffinger@gibbonslaw.com
Tel:  973-596-4500
Fax:  973-639-6294

Jay B. Kasner (*Pro Hac Vice* Application to be Filed)
Scott D. Musoff (*Pro Hac Vice* Application to be Filed)
**SKADDEN, ARPS, SLATE,**
  **MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
Tel: 212-735-3000
Fax: 212-735-2000

*Co-Counsel for Nominal Defendant*
*Merrill Lynch & Co., Inc.*

<div align="center">

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

</div>

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| DAVID EIDMAN, Derivatively on Behalf of MERRILL LYNCH & CO., INC., | Civil Action No. 08-126 (SDW) (MCA) |
| : | |
| Plaintiff, | **RULE 6.1 APPLICATION** |
| : | |
| vs. | **Document Filed Electronically** |
| : | |
| ERNEST STANLEY O'NEAL, CAROL T. CHRIST, ARMANDO M. CODINA, VIRGIS W. COLBERT, ALBERTO CRIBIORE, JOHN D. FINNEGAN, JUDITH MAYHEW JONAS, AULANA L. PETERS, JOSEPH W. PRUEHER, ANN N. REESE and CHARLES O. ROSOTTI, | : |
| : | |
| Defendants, | : |
| : | |
| -and- | : |
| MERRILL LYNCH & CO., INC., | : |
| : | |
| Nominal Defendant. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

#1258602 v2
101454-61824

Application is hereby made to the Clerk of the United States District Court for the District of New Jersey by Gibbons P.C., co-counsel for nominal defendant Merrill Lynch & Co., Inc. ("Merrill Lynch"), for an extension of the time within which Merrill Lynch must answer or otherwise respond to the Verified Amended Derivative Complaint herein for a period of fifteen (15) days pursuant to Local Civil Rule 6.1(b), said defendant having come before the Court solely for this extension but not for the purpose of appearing either generally or specially in this jurisdiction, nor having waived any defenses available to it by such appearance; and it is represented that:

1.    There have been no prior extensions of the time within which Merrill Lynch must answer or otherwise respond to the Verified Amended Derivative Complaint herein;

2.    Merrill Lynch electronically filed its Notice of Removal in this Court on January 9, 2008; therefore, the deadline for Merrill Lynch to answer or otherwise respond to the Verified Amended Derivative Complaint herein is January 16, 2008; and

3.    The time within which Merrill Lynch must answer or otherwise respond to the Verified Amended Derivative Complaint herein has not yet expired.

Dated: January 10, 2008
     Newark, New Jersey         GIBBONS P.C.


By:  s/ Michael R. Griffinger
     Michael R. Griffinger
     GIBBONS P.C.
     One Gateway Center
     Newark, NJ 07102-5310
     mgriffinger@gibbonslaw.com
     Tel: 973-596-4500
     Fax: 973-639-6294

     *Co-Counsel for Nominal Defendant*
     *Merrill Lynch & Co., Inc.*

2

#1258602 v2
101454-61824

Of counsel:

> Jay B. Kasner
> Scott D. Musoff
> SKADDEN, ARPS, SLATE,
>   MEAGHER & FLOM LLP
> Four Times Square
> New York, New York 10036
> Tel: 212-735-3000
> Fax: 212-735-2000
>
> *Co-Counsel for Nominal Defendant*
> *Merrill Lynch & Co., Inc.*

The above application shall be and hereby is **GRANTED,** and the time within which Merrill Lynch & Co., Inc. shall answer or otherwise respond to the Verified Amended Derivative Complaint herein is extended for a period of fifteen (15) days up to and including January 31, 2008 pursuant to Local Civil Rule 6.1(b) of the United States District Court for the District of New Jersey.

> WILLIAM T. WALSH, Clerk of the
> United States District Court
> District of New Jersey
>
> By:_____
>                         Deputy Clerk

Dated: January ___, 2008

3

Michael R. Griffinger
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102-5310
mgriffinger@gibbonslaw.com
Tel:  973-596-4500
Fax:  973-639-6294

Jay B. Kasner
Scott D. Musoff
**SKADDEN, ARPS, SLATE,**
 **MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
Tel: 212-735-3000
Fax: 212-735-2000

*Co-counsel for Nominal Defendant*
*Merrill Lynch & Co., Inc.*

<div align="center">
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
</div>

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |
|---|---|
| DAVID EIDMAN, Derivatively On Behalf of MERRILL LYNCH & CO., INC., | : Civil Action No. 08-126 (SDW) (MCA) |
| Plaintiff, | : |
| vs. | : |
| ERNEST STANLEY O'NEAL, CAROL T. CHRIST, ARMANDO M. CODINA, VIRGIS W. COLBERT, ALBERTO CRIBIORE, JOHN D. FINNEGAN, JUDITH MAYHEW JONAS, AULANA L. PETERS, JOSEPH W. PRUEHER, ANN N. REESE and CHARLES O. ROSOTTI, | : |
| Defendants, | : |
| -and- | : |
| MERRILL LYNCH & CO., INC., | : |
| Nominal Defendant. | : |

**CERTIFICATE OF SERVICE**

**Document Filed Electronically**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MELISSA C. FULTON**, of full age, hereby certifies as follows:

1.     I am an associate of the law firm of Gibbons P.C., co-counsel for nominal defendant Merrill Lynch & Co., Inc. ("Merrill Lynch") in the above-entitled action.

2.     On January 10, 2008, I caused true and correct copies of Merrill Lynch's Rule 6.1 Application and this Certificate of Service to be served, *via* Federal Express, Priority Overnight, upon the following counsel:

James V. Bashian, Esq.
LAW OFFICES OF
JAMES V. BASHIAN, P.C.
271 Route 46 West, Suite F207
Fairfield, NJ 07004

*Attorneys for Plaintiffs*

Paul O. Paradis, Esq.
HORWITZ, HORWITZ & PARADIS
28 West 44th Street, 16th Floor
New York, NY 10036

*Attorneys for Plaintiffs*

Michael J. Chepiga
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017-3954

*Attorneys for Defendant Ernest Stanley O'Neal*

Dennis J. Block
CADWALADER, WICKERSHAM &
TAFT LLP
One World Financial Center
New York, NY 10281

*Attorneys for Defendants Carol T. Christ, Armando M. Codina, Virgis W. Colbert, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, Aulana L. Peters, Joseph W. Prueher, Ann N. Reese and Charles O. Rossotti*

I declare under penalty of perjury that the foregoing statements made by me are true and correct. I am aware that if any such statements are willfully false, I am subject to punishment.

Melissa C. Fulton

Dated: January 10, 2008
        Newark, New Jersey

#1259259 v1
101454-61824

Michael R. Griffinger
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102-5310
mgriffinger@gibbonslaw.com
Tel: 973-596-4500
Fax: 973-639-6294

Jay B. Kasner
Scott D. Musoff
**SKADDEN, ARPS, SLATE,**
  **MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
Tel: 212-735-3000
Fax: 212-735-2000

*Co-Counsel for Nominal Defendant*
*Merrill Lynch & Co., Inc.*

RECEIVED

2008 JAN -9 ̣ 9. ̣ 9 .

CIVIL DIVISION
CASE PROCESSING

------------------------------------ x

DAVID EIDMAN, Derivatively On Behalf of
MERRILL LYNCH & CO., INC.,

        Plaintiff,

        vs.

ERNEST STANLEY O'NEAL, CAROL T.
CHRIST, ARMANDO M. CODINA, VIRGIS W.
COLBERT, ALBERTO CRIBIORE, JOHN D.
FINNEGAN, JUDITH MAYHEW JONAS,
AULANA L. PETERS, JOSEPH W. PRUEHER,
ANN N. REESE and CHARLES O. ROSOTTI,

        Defendants,

        -and-

MERRILL LYNCH & CO., INC.,

        Nominal Defendant.

------------------------------------ x

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION: BERGEN COUNTY
DOCKET NO. L-8872-07

CIVIL ACTION

**NOTICE OF FILING**
**NOTICE OF REMOVAL**

#1258465 v1
999999-00104

PLEASE TAKE NOTICE that Nominal Defendant Merrill Lynch & Co., Inc., by and through its undersigned counsel, has this day electronically filed a Notice of Removal of this action with the office of the Clerk of the United States District Court for the District of New Jersey. A true and correct copy of the Notice of Removal is attached hereto.

Dated: January 9, 2008
      Newark, New Jersey

GIBBONS P.C.

By: _____
    Michael R. Griffinger
    GIBBONS P.C.
    One Gateway Center
    Newark, NJ 07102-5310
    mgriffinger@gibbonslaw.com
    Tel: 973-596-4500
    Fax: 973-639-6294

    *Attorneys for Defendant*
    *Merrill Lynch & Co., Inc.*

Of counsel:

    Jay B. Kasner
    Scott D. Musoff
    SKADDEN, ARPS, SLATE,
      MEAGHER & FLOM LLP
    Four Times Square
    New York, New York 10036
    Tel: 212-735-3000
    Fax: 212-735-2000

    *Attorneys for Defendant*
    *Merrill Lynch & Co., Inc.*

#1258465 v1
999999-00104

TO:

Clerk of the Superior Court of New Jersey, Bergen County

James V. Bashian, Esq.
LAW OFFICES OF JAMES V. BASHIAN, P.C.
271 Route 46 West, Suite F207
Fairfield, NJ 07004

Paul O. Paradis, Esq.
HORWITZ, HORWITZ & PARADIS
28 West 44th Street, 16th Floor
New York, NY 10036

3

Michael R. Griffinger
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102-5310
mgriffinger@gibbonslaw.com
Tel:  973-596-4500
Fax:  973-639-6294

Jay B. Kasner
Scott D. Musoff
**SKADDEN, ARPS, SLATE,**
  **MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
Tel: 212-735-3000
Fax: 212-735-2000

*Co-Counsel for Nominal Defendant*
*Merrill Lynch & Co., Inc.*

<div align="center">

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

</div>

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| DAVID EIDMAN, Derivatively On Behalf of MERRILL LYNCH & CO., INC., | SUPERIOR COURT OF NEW JERSEY |
| | : LAW DIVISION:  BERGEN COUNTY |
| Plaintiff, | : (State Court Docket No. L-8872-07) |
| vs. | : CIVIL ACTION NO. _____ |
| ERNEST STANLEY O'NEAL, CAROL T. CHRIST, ARMANDO M. CODINA, VIRGIS W. COLBERT, ALBERTO CRIBIORE, JOHN D. FINNEGAN, JUDITH MAYHEW JONAS, AULANA L. PETERS, JOSEPH W. PRUEHER, ANN N. REESE and CHARLES O. ROSOTTI, | : <u>**NOTICE OF REMOVAL**</u> : **Document Filed Electronically** |
| Defendants, | : |
| -and- | : |
| MERRILL LYNCH & CO., INC., | : |
| Nominal Defendant. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

#1258391 v1
999999-00104

TO:    THE HONORABLE JUDGES OF THE UNITED STATES
          DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

        PLEASE TAKE NOTICE that for the reasons set forth below, Defendant Merrill

Lynch & Co., Inc. ("Merrill Lynch") files this Notice of Removal to remove this action from the

Superior Court of New Jersey, Law Division, Bergen County, New Jersey ("Superior Court") to

the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1441.  In

support of the Notice of Removal, Merrill Lynch states as follows:

### <u>BACKGROUND TO THE NOTICE OF REMOVAL</u>

      1.    Plaintiff David Eidman (the "plaintiff") filed a "Verified Derivative Complaint" on

or about December 4, 2007 in the Superior Court.  On or about December 17, 2007, plaintiff

filed an "Verified Amended Derivative Complaint" (the "Complaint") which corrected the

caption of the Complaint.  True and correct copies of the Verified Derivative Complaint, the

Complaint and Summons are attached hereto as Exhibit A.  No defendant was served with the

Complaint prior to December 21, 2007.

      2.    The Complaint purports to assert claims derivatively on behalf of Merrill Lynch

for Breach of Fiduciary Duties, Abuse of Control, Gross Mismanagement, Waste of Corporate

Assets and Quasi Contract/Unjust Enrichment based upon, among other things, violations of the

federal securities laws including allegedly permitting Merrill Lynch to file false and misleading

filings with the Securities and Exchange Commission (the "SEC").

      3.    The Complaint alleges, *inter alia*, that in early October, 2007, Merrill Lynch

issued an earnings pre-release estimating an "overall $4.5 billion write-down across CDOs

[collateralized debt obligations] and U.S. subprime mortgages for the third quarter of 2007."

(Compl. ¶ 49).

<div align="center">2</div>

4.      The Complaint further alleges that on October 24, 2007, Merrill Lynch "was forced to write down an overall $7.9 billion across CDOs and U.S. subprime mortgages, $2.4 billion higher than the earnings pre-release estimate." (*Id.* ¶ 50).

5.      On October 30, 2007, a purported securities class action asserting claims based on Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Securities and Exchange Commission Rule 10b-5 promulgated thereunder was commenced in the United States District Court for the Southern District of New York against Merrill Lynch and former CEO E. Stanley O'Neal, Co-Presidents and Co-COOs Ahmass L. Fakahany and Gregory J. Fleming and then, now former, CFO Jeffrey N. Edwards.  This action, which is assigned to the Hon. Leonard B. Sand, is styled *Life Enrichment Foundation v. Merrill Lynch & Co., Inc., et al.*, 07 CV 9633 (LBS).  Among other things, the allegations in the complaint in the *Life Enrichment* action center on purportedly false and misleading statements and/or omissions concerning Merrill Lynch's business and financial results with respect to CDO and subprime exposure issued during an alleged class period of February 26, 2007 through and including October 23, 2007.  Four other substantially identical putative securities class actions were filed on November 6, 2007, December 4, 2007, December 7, 2007 and December 28, 2007 (collectively, all five actions are referred to as the "Federal Securities Actions").  These subsequently filed actions are styled *Savena v. Merrill Lynch & Co., Inc.*, 07 CV 9837 (LBS); *Kosseff v. Merrill Lynch & Co., Inc., et al.*, 07 CV 10984 (LBS); *Garber v. Merrill Lynch & Co., Inc., et al.*, 07 CV 11080 (LBS); and *Conn v. Merrill Lynch & Co., Inc., et al.*, 07 CV 11626.[1]

---

[1]    The *Conn* action, a purported class action on behalf of persons who exchanged securities of First Republic Bank for securities of Merrill Lynch in connection with a merger in September 2007, sets forth virtually the same allegations as the other purported securities class actions.

3

6.     Additionally, three purported shareholder derivative actions are pending before Judge Sand.  Two were commenced in the Southern District of New York on November 1, 2007 and November 8, 2007 against Merrill Lynch (as nominal defendant) and the same defendants that were subsequently named in the State Court Action.  One, originally filed in New York state court on November 11, 2007, was removed to the Southern District of New York on December 7, 2007 (the "Federal Derivative Actions").  The Federal Derivative Actions are styled *Arthur v. O'Neal, et al.*, 07 CV 9696 (LBS); *Loveman v. O'Neal, et al.*, 07 CV 9888 (LBS); and *Operative Plasterers & Cement Masons Local 262 Pension and Annuity Funds v. E. Stanley O'Neal, et al.*, 07 CV 11085 (LBS).  The Federal Derivative Actions include essentially the same allegations as the Federal Securities Actions, *i.e.*, that defendants issued purportedly false and misleading statements and/or omissions concerning Merrill Lynch's business and financial results with respect to CDO and subprime exposure.

7.     In addition to the Federal Securities Actions and the Federal Derivative Actions, multiple purported class actions asserting, among other things, violations of sections 404 and 405 of the Employee Retirement Income Security Act ("ERISA") arising out of the same core allegations have also been commenced in the Southern District of New York (the "ERISA Actions") and are pending before or are in the process of being assigned to Judge Sand.  *See, e.g.*, *Estey v. Merrill Lynch & Co., Inc., et al.*, 07 CV 10268 (LBS).

8.     On December 13, 2007, Judge Sand adjourned the time for all defendants to move, answer or otherwise respond to the complaints in those actions pending in the Southern District of New York.  A true and correct copy of this letter is attached hereto as Exhibit B.

#1258391 v1
999999-00104

9. For the reasons explained below, the State Court Action is properly removable under 28 U.S.C. §§ 1331 and 1441 because the claims asserted therein arise under the laws of the United States.

## FEDERAL QUESTION JURISDICTION

10. The State Court Action is removable under 28 U.S.C. §§ 1331 and 1441 because the claims asserted therein involve a strong federal interest and pose substantial federal questions under the federal securities laws. As set forth below by way of example, the focus and thrust of the Complaint is alleged conduct that is governed by, and allegedly in contravention of, the federal securities laws.

11. Among other things, plaintiff alleges that the "director defendants permitted Merrill to issue a series of materially false and misleading financial statements and SEC filings." (Compl. at 22). Plaintiff specifically alleges, citing to Merrill Lynch's 2006 SEC Form 10-K filing filed on February 26, 2007, that "Defendants caused false statements to be issued in SEC filings." (Compl. ¶ 61).

12. Similarly, referring in part to the 2006 SEC Form 10-K filing and an SEC Form 10-Q filed on August 3, 2007, plaintiff alleges that "[b]y permitting Merrill and its management to issue these materially false and misleading statements, the Directors breached their fiduciary duties to Merrill." (Compl. ¶ 66). Plaintiff asserts that defendants "caus[ed] the filing of false public statements that contained material misstatements and omissions regarding the financial health of the Company." (Compl. ¶ 77(ii)).

13. Plaintiff also alleges that the "Securities and Exchange Commission has initiated an informal inquiry and investigation to examine whether Merrill accurately valued the Company's mortgage portfolio." (Compl. ¶ 68). See also (Compl. ¶ 73(b)(ii) ("An informal

#1258391 v1
999999-00104

inquiry has been initiated by the SEC in order to determine whether the Company has violated the federal securities laws.")).

14.     Plaintiff further alleges, among other things, that:

- The "Director Defendants were involved in reviewing and/or disseminating the materially false and misleading statements and information contained in the Company's SEC filings, press releases, and other public documents . . . <u>in violation of the federal securities laws.</u>" (Compl. ¶ 73(b)(i))(emphasis added);

- The members of the audit committee "individually and collectively failed in their duties of ensuring that the Company file true and complete financial statements with the SEC and <u>are thereby liable for violations of the federal securities laws.  An informal inquiry has been initiated by the SEC in order to determine whether the Company has violated the federal securities laws.</u>" (Compl. ¶ 73(b)(ii))(emphasis added); and

- The members of the finance committee "individually and collectively failed in their duties of ensuring that the Company file true and complete financial statements with the SEC and <u>are thereby liable for violations of the federal securities laws.  An informal inquiry has been initiated by the SEC in order to determine whether the Company has violated the federal securities laws.</u>" (Compl. ¶ 73(b)(iii))(emphasis added).

15.     Each of the above allegations is incorporated by reference and realleged in each of the five causes of action contained in the Complaint.

16.     Accordingly, plaintiff alleges conduct – the filings and other public statements – that is governed by the federal securities laws.  Plaintiff's alleged injuries also depend primarily upon accusations against Merrill Lynch for violations of the federal securities law.  Thus, this case involves a strong federal interest and will require the interpretation of federal law.

6

**THE REMOVAL PREREQUISITES HAVE BEEN SATISFIED**

17.     Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is being filed within thirty days after the receipt by the first defendant, through service or otherwise, of a copy of the initial pleading, and it is, therefore, timely.  *See Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999).

18.     True and correct copies of all process, pleadings and orders served upon Merrill Lynch in the State Court Action are attached hereto as Exhibit A.

19.     All other defendants consent to removal.  These consents are attached hereto as Exhibit C.

20.     The District of New Jersey is the district in which the Superior Court of New Jersey, Law Division, Bergen County, New Jersey is located and in which plaintiff filed his Complaint and the action is pending.

21.     In accordance with 28 U.S.C. § 1446(d), promptly after filing this Notice of Removal, Merrill Lynch will give written notice to all adverse parties and will file a copy of this Notice of Removal with the Superior Court of New Jersey, Law Division, Bergen County, New Jersey.

22.     No previous application has been made by Merrill Lynch for this or similar relief.

#1258391 v1
999999-00104

WHEREFORE, Merrill Lynch submits that this action is now properly removed from the Superior Court of New Jersey, Law Division, Bergen County, New Jersey and is properly before this District Court and that all further actions should take place before this Court.

Dated: January 9, 2008
      Newark, New Jersey               GIBBONS P.C.

By:  s/ Michael R. Griffinger
     Michael R. Griffinger
     GIBBONS P.C.
     One Gateway Center
     Newark, NJ 07102-5310
     mgriffinger@gibbonslaw.com
     Tel: 973-596-4500
     Fax: 973-639-6294

     *Attorneys for Defendant*
     *Merrill Lynch & Co., Inc.*

Of counsel:

     Jay B. Kasner
     Scott D. Musoff
     SKADDEN, ARPS, SLATE,
      MEAGHER & FLOM LLP
     Four Times Square
     New York, New York 10036
     Tel: 212-735-3000
     Fax: 212-735-2000

     *Attorneys for Defendant*
     *Merrill Lynch & Co., Inc.*

#1258391 v1
999999-00104

Exhibit A

LAW OFFICES OF JAMES V. BASHIAN, P.C..
James V. Bashian, Esq. (JB-6331)
271 Route 46 West, Suite F207
Fairfield, New Jersey 07004
Tel: (973) 227-6330
Fax: (973) 808-8665

Attorney for Plaintiff

[Additional Counsel Appear on Signature Page]

**SUPERIOR COURT BERGEN COUNTY**
**FILED**

DEC - 4 2007

*[signature]*
DEPUTY CLERK

| | |
|---|---|
| David Eidman,<br>Derivatively On Behalf of<br><br>MERRILL LYNCH & CO., INC.,<br><br>       Plaintiff,<br><br><br><br>v.<br><br>ERNEST STANLEY O'NEAL,<br>CAROL T. CHRIST, ARMANDO M.<br>CODINA, VIRGIS W. COLBERT,<br>ALBERTO CRIBIORE, JOHN D.<br>FINNEGAN, JUDITH MAYHEW JONAS,<br>AULANA L. PETERS, JOSEPH W.<br>PRUEHER, ANN N. REESE,<br>CHARLES O. ROSSOTTI, AHMASS L.<br>FAKAHANY, GREGORY J. FLEMING and<br>JEFFREY N. EDWARDS<br><br>       Defendants,<br><br>and<br><br>MERRILL LYNCH & CO., INC.,<br><br>       Nominal Defendant. | )<br>)<br>) SUPERIOR COURT OF NEW JERSEY<br>) LAW DIVISION: BERGEN COUNTY<br>) Docket No.: *L - 8872-07*<br>)<br>) CIVIL ACTION<br><br>) **VERIFIED DERIVATIVE**<br>) **COMPLAINT**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## NATURE OF THE ACTION

1.     Plaintiff, David Eidman ("Plaintiff"), brings this action derivatively on behalf of nominal defendant Merrill Lynch & Co., Inc. (hereinafter "Merrill" "Merrill Lynch" or the "Company") against its Board of Directors (hereinafter the "Board," "Director Defendants," ), in connection with breaches of their fiduciary duties of loyalty, due care and oversight of Merrill's imprudent underwriting of Collateralized Debt Obligations ("CDOs") and insufficient internal controls and mismanagement by the Company's managing senior executives between 2003 and 2007 (hereinafter the "Relevant Time Period").  Plaintiff alleges upon personal knowledge as to his own acts, and upon information and belief as to all other matters.  Plaintiff's information and belief is based on the investigation conducted by counsel.

2.     This shareholder derivative suit seeks to remedy Defendants' breach of fiduciary duties, abuse of control, and gross mismanagement arising out of a wrongful course of business conduct whereby Defendants: (i) caused Merrill to engage in unsound underwriting practices of CDOs that ultimately forced the Company to write down losses exceeding $7.9 billlion for the third quarter of 2007; (ii) exposed Merrill to over $40 billion in CDOs as of July of 2007; and (iii) agreed to allow the Chief Executive Officer to resign and receive a full retirement package worth more than $160 million.

### JURISDICTION AND VENUE

3.     The allegations contained herein are brought derivatively on behalf of nominal defendant Merrill.  Accordingly, this Court has jurisdiction pursuant to N.J. Court Rules, R. 4:32-5.

4.     Plaintiff David Eidman currently resides in Bergen County, New Jersey. Accordingly, Venue is properly laid in this County pursuant to N.J. Court Rules, R.4:3-2(a).

2

## PARTIES

**Plaintiff**

5.     Plaintiff David Eidman is a Merrill shareholder and was a Merrill shareholder throughout the entirety of the time period of the complained of actions alleged herein, and remains a Merrill shareholder continuously to date.  Plaintiff David Eidman purchased shares on November 16, 2003.  Plaintiff is a citizen and resident of the State of New Jersey.

**Nominal Defendant**

6.     Nominal Defendant Merrill Lynch & Co., Inc. is a corporation incorporated, organized and existing under the laws of the State of Delaware, with its registered office located at Corporation Trust Center, 1209 Orange Street, in the City of Wilmington, County of New Castle.  The Company's central corporate headquarters is located at 4 World Financial Center, 250 Vesey Street, New York, New York, 10080.  According to the Company's website, "Merrill is one of the world's leading wealth management, capital markets and advisory companies, with offices in 38 countries and territories and total client assets of approximately $1.8 trillion. Merrill Lynch offers a broad range of services to private clients, small businesses, and institutions and corporations, organizing its activities into two interrelated business segments - Global Markets & Investment Banking Group and Global Wealth Management, which is comprised of Global Private Client and Global Investment Management.  As an investment bank, it is a leading global trader and underwriter of securities and derivatives across a broad range of asset classes and serves as a strategic advisor to corporations, governments, institutions and individuals worldwide."

**Director Defendants**

7.    Defendant Ernest Stanley O'Neal is the former Chief Executive Officer and the former Chairman of the Board of Directors of Merrill. He resigned on November 1, 2007 after having served in numerous senior management positions at the Company prior to serving as Chief Executive Officer. Defendant O'Neal joined Merrill in 1986 and worked in the bond department. In the early 1990s, Defendant O'Neal became the head of Merrill's leveraged finance division. After serving as global head of capital markets and co-head of the corporate and institutional client group, he spent two years as CFO from 1998 to 2000. He then became President of Merrill's U.S. Private Client Group, before becoming President of the Company in 2001. In 2003, Mr. O'Neal became CEO and Chairman of the Board of Merrill Lynch. In addition, Mr. O'Neal was a member of the Board of Directors of General Motors from 2001-2006, and recently resigned from the Board of Directors of BlackRock, Inc. on October 30, 2007. Defendant O'Neal is a citizen of the State of New York.

8.    Defendant Carol T. Christ has been a Merrill Director since July of 2007 and has served as a member of the Public Policy and Responsibility Committee of the Board. In June 2002, Director Christ became the 10th president of Smith College. Prior to that, Ms. Christ spent more than 30 years at the University of California, Berkeley. She joined the English faculty in 1970, and, as chair of her department from 1985 to 1988, she built and maintained one of the top-ranked English departments in the country. She entered the University's administration in 1988, serving first as Dean of Humanities and later as Provost and Dean of the College of Letters and Sciences. In 1994, Ms. Christ was appointed Vice Chancellor and provost at Berkeley. Defendant Christ is a citizen of the State of Massachusetts.

9.      Defendant Armando M. Codina has been a Merrill Director since 2005. Defendant Codina is currently the President and Chief Executive Officer of Flagler Development Group, a real estate investment, development, construction, brokerage and property management company, and has been since 2006.  He was also the Founder, Chairman and CEO of Codina Group, a real estate investment company from 1979, until its combination with Flagler Development Group in 2006.   He also serves as a director on the board of the following companies: AMR Corp., Burger King Corp., Florida East Coast Industries, Inc., and GM. Defendant Codina is a citizen of the State of Florida.

10.     Defendant Virgis W. Colbert has been a Merrill Director since 2006.  Defendant Colbert has also served as the Senior Advisor to the Miller Brewing Company, a beer brewing company, since 2006.  He was employed at Miller Brewing Company from 1997 through 2005, where he served in a variety of positions, including as the Executive Vice President of Worldwide Operations.  Defendant Colbert has been, or currently is, a board member of the following companies: The Manitowoc Company, Inc., Sara Lee Corporation, and The Stanley Works. Defendant Colbert is a citizen of the State of Wisconsin.

11.     Defendant Alberto Cribiore has been a Merrill Director since 2003.  Immediately following the departure of Defendant O'Neal from Merrill, he was elected by the Merrill Board to serve as Interim Non-Executive Chairman.  Defendant Cribiore is the founder and Managing Principal of Brera Capital Partners, LLC, a private equity investment firm, and has been since 1997.  He has also served as the Co-President of Clayton, Dubilier & Rice, Inc., an equity investment firm, from 1985 through 1997.  From 1982 to 1985 he served as the Senior Vice President of Warner Communications, predecessor to Time Warner Inc. and was responsible for

5

business strategy, mergers, acquisitions and divestitures. Defendant Cribiore is a citizen of the State of New York.

12.     Defendant John D. Finnegan has been a Merrill Director since 2004. He has been the President and CEO of The Chubb Corporation since December 2002 and has been the Chairman of the Board since December 2003. He has also served as the Executive Vice President of GM, where he also served as the Chairman and President of GM Acceptance Corporation, a finance company and subsidiary of GM, from May 1999 to December 2002. Defendant Finnegan has a B.A. degree in political science from Princeton University, a law degree from Fordham University and an M.B.A. from Rutgers University. Defendant Finnegan is a citizen of the State of New Jersey.

13.     Defendant Judith Mayhew Jonas has been a Merrill Director since 2006. Defendant Jonas has been a member of the United Kingdom government's Equality Review Panel since 2005. She has a law degree from the University of Otaga, New Zealand's oldest university. She has also served as Provost of Kings College, Cambridge from 2003 to 2006. She is a citizen of the United Kingdom.

14.     Defendant Aulana L. Peters has been a Merrill Director since 1994. She has a B.A. in philosophy from the College of New Rochelle, New York and has a law degree from the University of Southern California in Los Angeles, California. She was a partner of the law firm Gibson, Dunn & Crutcher from 1984 to 1998. She has served as a Commissioner of the Securities and Exchange Commission. Defendant Peters has or currently serves as a board member of the following companies: 3M, Deere & Company and Northrop Grumman Corporation. Defendant Peters is a citizen of the State of California.

15.    Defendant Joseph W. Prueher has been a Merrill Director since 2001.  Defendant Prueher has served as a former United States Ambassador for the People's Republic of China from 1999 to 2001.  Defendant Prueher was a consulting Professor at the Stanford University Center for International Security and Cooperation and a lecturer and Senior Advisor to the Stanford-Harvard Defense Project.  From 1996 to 1999, Prueher served in the military as Commander in Chief of U.S. Pacific Command and as a retired admiral.  Defendant Prueher currently serves or has served on the boards of the following companies: Emerson Electric Company, Fluor Corporation, DynCorp. International, McNeil Technologies, New York Life Insurance Company and the Wornick Company.  Director Prueher is a citizen of the State of Virginia.

16.    Defendant Ann N. Reese has been a Merrill Director since 2004.  Defendant Reese has a B.A. from the University of Pennsylvania and an M.B.A. from the New York University Stern School of Business.  She is the Co-Founder of the Center for Adoption Policy and served as a Principal for Clayton, Dubilier & Rice from 1999-2000.  Defendant Reese has served on the boards of the following companies: CBS, Jones Apparel Group, Sears Roebuck and Co., and Xerox.  She has also served as an FAS Advisory Council member.  Defendant Reese is a citizen of the State of New York.

17.    Defendant Charles O. Rossotti has been a Merrill Director since 2004.  Defendant Rossotti is a former Commissioner of Internal Revenue at the United States Internal Revenue Service.  He served in that position from 1997 to 2002.  He was the founder, Chairman of the Board, President and CEO of American Management Systems, an international business and information technology consulting firm, from 1970 to 1997.  Defendant Rossotti has also served as a Senior Advisor to The Carlyle Group, a private global investment firm, since 2003. He has

7

served as a director on the boards of the following companies: AES Corp., Adesso Systems Corp., Compusearch Software Systems, Inc., and Liquid Engines, Inc. Defendant Rossotti is a citizen of Washington D.C.

## Merrill's Board Committees

18.     The chart below illustrates the key Board committees and their current membership:

| | Audit Committee | Finance Committee | Management Development & Compensation Committee | Nominating & Corporate Governance Committee | Public Policy & Responsibility Committee |
|---|---|---|---|---|---|
| Alberto Cribiore (Interim Chairman) | | ✓ | ✓ | ✓ | |
| Carol T. Christ | | | | | ✓ |
| Armando M. Codina | | | ✓ | Chair | |
| Virgis W. Colbert | | | ✓ | ✓ | ✓ |
| John D. Finnegan | | ✓ | Chair | ✓ | |
| Judith Mayhew Jonas | ✓ | | | | ✓ |
| Aulana L. Peters | | | ✓ | | ✓ |
| Joseph W. Prueher | ✓ | | | | Chair |
| Ann N. Reese | Chair | ✓ | | | |
| Charles O. Rossotti | ✓ | Chair | | | |

## Merrill's Audit Committee

19.     According to the Audit Committee's charter, the Audit Committee is primarily responsible for:

> **Assist[ing] the Board in fulfilling its oversight responsibility relating to the:**
> **A. Preparation and integrity of the Corporation's financial statements and oversight of related disclosure matters;**
> **B. Qualifications, independence and performance of, and the Corporation's relationship with, its registered public accounting firm (the "independent auditor");**

**C. Performance of the Corporation's internal audit function and internal controls; and**

**D. Compliance by the Corporation with legal and regulatory requirements.**

(Emphasis added).

**Merrill's Finance Committee**

20.     According to the Finance Committee's charter, the Finance Committee is primarily responsible for:

**Assist[ing] the Board in fulfilling its oversight responsibilities relating to:**

**A. Financial commitments and investments;**

**B. The Corporation's financial and operating plan;**

**C. The Corporation's financing plan, including funding, liquidity and insurance programs;**

**D. Balance sheet and capital management; and**

**E. Credit and market risk management.**

(Emphasis added).

## DEFENDANTS' DUTIES

21.     Defendants owe and owed Merrill fiduciary obligations of fidelity, trust, loyalty, candor, and due care, and were and are required to manage Merrill in a fair, just, honest and equitable manner. Defendants were and are required to act in furtherance of the best interests of Merrill and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. Each Defendant owes Merrill the highest obligations of good faith and fair dealing. In addition, as officers and/or directors of a publicly held company, Defendants have a duty to manage the Company's exposure to credit and market risk in order to prevent losses.

22.     The Director Defendants, because of their positions of control and authority of Merrill, were able to and did, directly and indirectly, control the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company. Because of their advisory, executive, managerial, and directorial positions with Merrill, each Defendant had access to material, adverse, non-public information about the financial condition, operations and future business prospects of Merrill, including, without limitation, the misconduct in which Defendants caused Merrill to engage.

23.     By knowingly engaging in and/or knowingly acquiescing in the wrongful conduct complained of herein, Defendants breached the fiduciary duties that each of them owed to Merrill and caused Merrill to incur billions of dollars in damages and other injuries more fully described below.

24.     By reason of their positions as officers, directors and/or fiduciaries of Merrill and because of their ability to control the business and corporate affairs of Merrill, Defendants owed Merrill and its shareholders fiduciary obligations of trust, loyalty, good faith and due care, and were and are required to use their utmost ability to control and manage Merrill in a fair, just, honest and equitable manner. Defendants were and are required to act in furtherance of the best interests of Merrill and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

25.     Each director and officer of the Company owes to Merrill and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.  In addition, as officers and/or directors of a publicly held company, Defendants

had a duty to assure themselves and shareholders that Merrill would not write down over $7.9 billion of losses due to its positional overexposure in risky CDOs.

## SUBSTANTIVE ALLEGATIONS

26.     Merrill Lynch has boasted about its strong internal operational and credit risk management controls since as early as 2001.  At a joint conference on capital allocation for operational risk hosted by the Federal Reserve Bank of Boston in November of 2001, Clinton Lively, then Managing Director of Corporate Risk Management at Merrill, described Merrill's Process Risk Management Program.

27.     By way of an elaborate PowerPoint presentation (which is annexed as Exhibit A hereto), Mr. Lively stated that  Merrill's risk management program goals to were to: (i) motivate its internal control personnel to "learn from mistakes"; and (ii) "**assess[] the adequacy of controls for the risks we take.**" Mr. Lively's presentation stated:

> "The key criteria for developing the model for us has been how well it motivates managers to adopt the practices we have endorsed. **The internal mechanics of the model are a secondary priority – and become important only in so far as they influence behavior in the firm**. To this end, **business units receive reductions in their risk capital allocations to the extent they engage in the practices prescribed by the program- and for initiatives which result in demonstrated reductions in process risk**."

(Emphasis added).

28.     As described in particular detail below, the Director Defendants and Merrill's other senior ranking executives completely disregarded Merrill's Process Risk Management Program and, as a result, permitted Merrill to engage in and become exposed to highly risky investments such that Merrill's financial risk exposure was materially beyond the risk levels permitted by Merrill's Process Risk Management Program.

11

29.     The Director Defendants either completely failed to, or were totally ineffective in curtailing Merrill from making these highly risky investments that were made in direct contravention of Merrill's Process Risk Management Program and, as a direct result, caused the Company to incur billions of dollars in losses.  The Director Defendants blatantly ignored the restrictions imposed by Merrill's Process Risk Management Program and permitted Merrill's employees to do so as well, all to the extreme financial detriment of the Company.

30.     The Director Defendants were responsible for acting to insure that Merrill's Process Risk Management Program was implemented, and that the Company's employees were acting in accordance with this Program.  The Director Defendants were also responsible for acting to insure that there was a system of checks and balances in place to monitor the activities of the Company's employees. Contrary to the public image that was painted of Merrill being a Company that prided itself on having and utilizing strong risk management policies and practices, Merrill was in fact a Company that did not adhere to its stated risk management policies and whose employees failed to conduct themselves in accordance with such policies. Such misconduct on the part of Merrill's employees was the direct result of the Director Defendants failing to fulfill their fiduciary responsibilities.

**Merrill's Former CEO**
**Was Obesssed With**
**Competing With Goldman Sachs**

31.     Merrill Lynch was a Company with substantial problems when Defendant O'Neal was given the responsibilities of CEO and Chairman of the Board in late 2001. At the same time, the Company's chief competitor, Goldman Sachs, was recording and reporting tremendous revenues and was quickly separating itself from the failing Merrill Lynch.

32. In order to close the gap, and in appreciation of the deep financial woes that were then plaguing the Company, Defendant O'Neal fired a substantial portion of Merrill's workforce and tightened the Company's overall costs and spending in an attempt to maintain Merrill's reputation as a Wall Street leader.

33. These actions proved to be insufficient in closing the widening gap between Merrill's performance and Goldman Sach's performance, however. As a result, Defendant O'Neal implemented a new strategy that involved the risky financing of debt and derivatives, instruments whose valued is based upon the change in some underlying asset.

**Merrill Management**
**Takes On Added Risk**
**In Violation Of Merrill's**
**Process Risk Management Program**

34. According to a Wall Street Journal ("WSJ") article dated October 25, 2007, O'Neal determined that Merrill needed to exponentially raise its holdings in the speculative business of securitizations in order to increase its profitability and to enhance its standing vis-avis Goldman Sachs. In order to implement its new and aggressive investment strategy, Merrill hired major players in the CDOs and securitization industries, including Christopher Ricciardi, "who liked to be called the grandfather of CDOs."

35. Securitization is the process of creating a financial instrument by combining other financial assets and then marketing them to investors. These secured instruments are backed by loans, leases or receivables. There are many types of secured instruments including, but not limited to, asset backed securities, residential mortgage backed securities and commercial mortgage backed securities. An asset backed security is one backed by any receivable that is not earned from real estate. Examples of asset backed securitizations include credit card receivables, automobile loans/leases/floor plan receivables and volatile aircraft receivables.

13

36.     Mortgage backed securities ("MBS"), on the other hand, are backed by the receivables from residential and commercial mortgages. In an MBS, the trust's pooled collateral varies and can consist of strong conforming mortgages or can consist of high risk sub-prime mortgages. Sub-prime mortgages are highly susceptible to default because the requested mortgages are issued to borrowers that have low income, shaky credit, job instability and few assets. Residential MBS accounts for close to half of all securitization collateral and almost 75% of all MBS are secured by sub-prime loans.

37.     CDOs are pools of debts that bundle together a collection of securities and are sold through an assortment of tranches that are assessed based upon the safety and security of the underlying collateral. The investors in the CDOs bear the credit risk of the collateral. The tranches are categorized as senior, mezzanine and subordinated according to their degree of credit risk. If there are defaults in the loans, or if the collateral backing the CDO otherwise underperforms, the senior tranches are the first on the food chain and get paid out first. Every CDO has a sponsoring organization, which establishes the vehicle to hold collateral and issue securities.

**Merrill Becomes the World's Leading Sponsor of CDOs**

38.     In response to the stock market troubles of late 2000, the Federal Reserve slashed interest rates with hopes of reviving the economy. This period of sustained drop in interest rates allowed the mortgage industry to significantly streamline underwriting and fulfillment operations, thus driving down the cost to refinance and providing enhanced access to credit to marginal borrowers. There were also reductions in down payment requirements and the movement to low documentation loans greatly expanded during the early 2000s.

14

39. The fuel behind the increased loan documentation was the issuance of CDOs. CDO issuance was just $52 billion in 1999, but it rapidly rose to an astounding $388 billion in 2006. The sale of these instruments to investors brought new capital into the business of mortgages, and helped recycle loans so lenders could lend more, creating a national housing boom.

40. As the issuance throughout the industry rose, so too did Merrill's underwriting of CDOs and the fees associated with such underwriting. According to the above mentioned WSJ article, "Merrill leapt from 15th place among CDO underwriting ranks in 2002, when it arranged just $2.22 billion of deals, to the No. 1 spot on Wall Street in 2004 with $19 billion, according to Dealogic. In 2005 Merrill's underwriting total soared to $35 billion, of which $14 billion were backed mostly by securities tied to sub-prime mortgages... [Merrill] reaped an estimated $400 million in CDO underwriting profits in 2005."

41. By reason of the fact that Merrill was investing considerable monies in risky securitizations, the Director Defendants should have inquired and/or acted to insure that these investments were conducted in accordance with Merrill's Process Risk Management Program. By failing to do so, the Director Defendants breached the fiduciary duties that each of them owed to Merrill.

42. Director Defendants decided instead to reward Merrill's management for violating the Company's Process Risk Management Program. Specifically, Defendant O'Neal's compensation was tied to the amount of fees that Merrill generated and in 2006, O'Neal received an $18.5 million bonus on top of $30 million in various forms of compensation. By approving such a bonus, the Director Defendants actively rewarded this ongoing violation of Merrill's Process Risk Management Program and improperly rewarded management's imprudent

investing strategies, thereby subjecting the Company tremendous financial risk and wasting Merrill's assets by utilizing Merrill funds to compensate management that was acting in direct violation of Merrill's Process Risk Management Program, as further detailed herein.

43. However, the roller coaster peaked in early 2006, when signs of trouble in the market for sub-prime mortgages began appearing. Home prices started declining for the first time in years and home builders' orders slowed. Credit agencies that ranked CDOs began downgrading the now risky investments. Companies started scrambling to concoct proper exit strategies that would lessen their exposure to CDOs.

**Despite The Burst Of The Housing
Bubble, Merrill Keeps Underwriting CDOs**

44. Notwithstanding the fact that most companies were attempting to cut off all ties to sub-prime mortgages, Defendants allowed Merrill to continue on its spree of underwriting CDOs. According to the WSJ, top executives "sought to reassure the CDO group that Merrill remained committed to the business, saying it would do "whatever it takes" to remain No. 1 in CDOs..."

45. Under the leadership of Defendant O'Neal, Merrill underwrote over 100 CDO deals with a value over $90 billion between 2006 and 2007. The Company collected millions in underwriting fees, and consequently, O'Neal collected millions in compensation. Merrill's overall exposure to the volatile CDOs of mortgage backed securities exceeded $41 billion as of late June of 2007.

46. The Director Defendants should not have allowed this risky exposure and should have seen the red flags associated with maintaining the abnormal CDO positions. Yet, there is no reported activity of either the Audit Committee or the Finance Committee, let alone the entire Board, taking any steps whatsoever to stop management from continuing to engage in these

highly risky investments in violation of Merrill's Process Risk Management Program. While other prudent firms were positioning themselves against a fall, Merrill continued its head-first plunge into the sub-prime CDOs.

47. Despite the obvious fact that Merrill's management had repeatedly violated Merrill's Process Risk Management Program and lost control, Defendant O'Neal assured investors in June of 2007 that the problems in the sub-prime area "were reasonably well contained" adding that "there have been no clear signs that it was spilling into other subsets of the bond market, the fixed income market and the credit market." This statement was known to be false to the Director Defendants at the time it was made by Defendant O'Neal because the Director Defendants knew, but did not disclose, that Merrill's management had long been engaged in making highly risky CDO investments in violation of Merrill's Process Risk Management Program, but failed to disclose this clearly material fact.

**Merrill Is Unable To Unload Its Oversized Position In CDOs, And Writes Down Billions of Dollars Of CDOs**

48. Because of the housing slump that was progressively worsening by the month, Merrill was unable to find buyers willing to accept any significant portion of Merrill's $41 billion position in the risky CDO market. Specifically, as of October of 2005, Merrill still held a position of over $20.9 billion.

49. In early October of 2007, Merrill issued its earnings pre-release and estimated an astounding overall **$4.5 billion** write-down across CDOs and U.S. subprime mortgages for the third quarter of 2007.

50. However, in an October 24, 2007 earnings conference call, Defendant O'Neal made a rare telephonic appearance and announced that Merrill, in fact, was forced to write down

an overall **$7.9 billion** across CDOs and U.S. subprime mortgages, $2.4 billion higher than the earnings pre-release estimate. Merrill also announced that day that it incurred a net loss from continuing operations for the third quarter of $2.3 billion, or $2.85 per diluted share, significantly below net earnings of $2.22 per diluted share for the second quarter of 2007 and $3.14 for the third quarter of 2006.

51.    This announced loss was a shocking $2 billion dollars higher than the loss expected based upon the material misstatements made by Merrill just a couple of weeks prior and was the Company's largest loss in around 100 years. The fact that the Company had failed to accurately disclose its expected losses and had understated this expected loss by more than $2 billion clearly establishes that the Director Defendants had failed to act to insure that Merrill's investment activities in the CDO market were conducted in accordance with Merrill's Process Risk Management Program, or alternatively, that these policies were in place and were blatantly ignored.

52.    The already depressed shares of Merrill fell over 5% since the write off announcement. As well, numerous credit agencies have downgraded the Company's ratings.

53.    The press release issued that same day stated:

> Merrill Lynch (**NYSE: MER**) today reported a net loss from continuing operations for the third quarter of $2.3 billion, or $2.85 per diluted share, significantly below net earnings of $2.22 per diluted share for the second quarter of 2007 and $3.14 for the third quarter of 2006. Third-quarter 2006 net earnings per diluted share, excluding the impact of the one-time, after-tax net benefit of $1.1 billion ($1.8 billion pretax) related to the merger of Merrill Lynch Investment Managers (MLIM) and BlackRock (NYSE: BLK), were $1.97. Third-quarter 2007 results reflect significant net write-downs and losses attributable to Merrill Lynch's Fixed Income, Currencies & Commodities (FICC) business, including write-downs of $7.9 billion across CDOs and U.S. subprime mortgages, which are significantly greater than the incremental $4.5 billion write-down Merrill Lynch disclosed at the time of its earnings pre-release. These write-downs and losses were partially offset by strong revenues in Global Wealth Management (GWM), Equity Markets and Investment Banking, particularly in regions outside

18

of the U.S. The results described above and herein, exclude Merrill Lynch Insurance Group (MLIG), which is reported under discontinued operations.

Third-quarter 2007 total net revenues of $577 million decreased 94 percent from $9.8 billion in the prior-year period and were down 94 percent from $9.7 billion in the second quarter of 2007. Merrill Lynch's third-quarter 2007 pretax net loss was $3.5 billion. At the end of the third quarter, book value per share was $39.75, down slightly from the end of the third quarter 2006.

Mortgage and leveraged finance-related write-downs in our FICC business depressed our financial performance for the quarter. In light of difficult credit markets and additional analysis by management during our quarter-end closing process, we re-examined our remaining CDO positions with more conservative assumptions. The result is a larger write-down of these assets than initially anticipated," said **Stan O'Neal**, chairman and chief executive officer. "We expect market conditions for subprime mortgage-related assets to continue to be uncertain and we are working to resolve the remaining impact from our positions," Mr. O'Neal continued. "Away from the mortgage-related areas, we continue to believe that secular trends in the global economy are favorable and that our businesses can perform well, as they have all year."

Net revenues for the first nine months of 2007 were $20.0 billion, down 23 percent from $25.8 billion in the comparable 2006 period. Net earnings per diluted share of $1.94 were down 62 percent from $5.12 in the prior-year period, and net earnings of $2.0 billion were down 61 percent. Results for the first nine months of 2006 included $1.2 billion of one-time, after-tax compensation expenses ($1.8 billion pretax) related to the adoption of Statement of Financial Accounting Standards No. 123R ("one-time compensation expenses") incurred in the first quarter of 2006, as well as the net benefit associated with the MLIM merger. Excluding these one-time items, net revenues for the first nine months of 2007 were down 16 percent, net earnings per diluted share were down 63 percent and net earnings were down 62 percent from the prior-year period. The pretax profit margin for the first nine months was 12.8 percent, down 14.2 percentage points from the comparable 2006 period, or down 16.3 percentage points excluding the one-time items. The annualized return on average common equity was 6.5 percent, down 13.0 percentage points from the first nine months of 2006, or down 13.4 percentage points excluding the one-time items.

**Business Segment Review:**

In the first quarter of 2006, Merrill Lynch recorded the one-time compensation expenses (pretax) in the business segments as follows: $1.4 billion to Global Markets and Investment Banking, $281 million to Global Wealth Management and $109 million to Merrill Lynch Investment Managers (which ceased to exist as a business segment upon its merger with BlackRock). The one-time net benefit associated with the MLIM merger was recorded in the Corporate Segment.

Comparisons to results from the third quarter and first nine months of 2006 in the following discussion of business segment results exclude the impact of these one-time items. A reconciliation of these segment results appears on <u>Attachment V</u> to this release.

**Global Markets & Investment Banking (GMI)**
GMI recorded negative net revenues and a pretax loss for the third quarter of 2007 of $3.0 billion and $4.4 billion, respectively, as strong net revenues from Equity Markets and Investment Banking were more than offset by the net losses in FICC. GMI's third quarter net revenues also included a net benefit of approximately $600 million due to the impact of the widening of Merrill Lynch's credit spreads on the carrying value of certain long-term debt liabilities.

- Third-quarter and year-to-date 2007 net revenues from GMI's three major business lines were as follows:

- FICC net revenues were negative $5.6 billion for the quarter, impacted primarily by losses across CDOs and U.S. subprime mortgages. These positions consist of CDO trading positions and warehouses, as well as U.S. subprime mortgage related whole loans, warehouse lending, residual positions and residential mortgage backed securities.

<p style="text-align:center;">*       *       *</p>

<u>**Third-quarter write-downs of $7.9 billion across CDOs and U.S. subprime mortgages are significantly greater than the incremental $4.5 billion write-downs Merrill Lynch disclosed at the time of its earnings pre-release. This is due to additional analysis and price verification completed as part of the quarter-end closing process, including the use of more conservative loss assumptions in valuing the underlying collateral.**</u>

(Emphasis added).

54.    The $7.9 billion write down by the Company clearly shows that the Director Defendants were grossly negligent in their oversight of management. By not questioning Merrill's corporate credit risk investment strategy, the Board proximately caused Merrill to incur billions of dollars in damages.

55.    On October 25, 2007, the WSJ reported that:

"The 8.4 billion dollar hit leaves it clear that Mr. O'Neal and his team did not always appreciate the risks they took to achieve the greater profits. The write-downs surpass a $6 billion loss suffered in 2005 by the hedge fund Amaranth LLC, which had stood as the largest single known Wall Street loss…**On the**

**Conference call, Mr. O'Neal accepted a share of the responsibility, saying, "I am accountable for the mistakes as I am accountable for the performance of the firm overall."**

(Emphasis added).

### O'Neal Attempts To Single-handedly Merge Merrill With Wachovia Without Board Authority

56.    Despite the admissions made by Defendant O'Neal regarding the mistakes he made in authorizing the underwriting of the risky CDOs, and despite the fact that the price per share of Merrill fell over 30% in just over 3 months, the Director Defendants did not fire Defendant O'Neal from his position as CEO of the Company.

57.    On October 26, 2007, the New York Times reported that Defendant O'Neal had conducted serious merger talks with Wachovia Bank without prior authorization or approval from Merrill's Board.   Knowing that he would secure a severance package exceeding $250 million, Defendant O'Neal pushed for a merger that would result in new management of the Company.

### Director Defendants Approve The Resignation Of Defendant O'Neal From Merrill And Improperly Reward Him With A $160 Million Payment

58.    On October 30, 2007, Merrill issued a press release announcing the retirement of Defendant O'Neal from the Company. The press release stated:

> The company said Mr. O'Neal and the board of directors both agreed that a change in leadership would best enable Merrill Lynch to move forward and focus on maintaining the strong operating performance of its businesses, which the company last week reported were performing well, apart from sub-prime mortgages and CDOs. 'We would like to thank Stan for the contribution he has made leading a major transformation of Merrill Lynch into a global and diversified company with enormous potential ahead of it,' said Mr. Cribiore. '**His commitment to the company, its clients, shareholders and employees has**

21

> **never wavered and the company will reap tremendous benefits in the future from his work.'**

(Emphasis added).

59.    The Board should have fired Defendant O'Neal after the Company announced its biggest loss in close to 100 years. Instead, the Director Defendants substantially wasted corporate assets by unjustifiably rewarding him with an over $160 million retirement package.

60.    According to the Corporate Library, the leading independent source for U.S. corporate governance:

> Stanley O'Neal's departure from Merrill Lynch with 'no severance' and no 2007 bonus would seem to present a picture of a decisive board in control. **Yet, when 'no severance' equals $161.5 million and an office and executive assistant for three years, what else did they think they needed to give him?**...**When a compensation committee retains discretion over whether a severance package will be offered, it would seem to suggest that it will exercise its discretion in favor of shareholders. Yet all this meant was that it decided not to pay the approximately $30 million in cash severance that might have been due had Mr. O'Neal pulled off a merger with Wachovia**... But while the board is trying to present itself as decisive and in control now, **where was its oversight when the strategic decisions that led to this massive wrote-off of value were being made.** Since it also looks as if the board may be considering an external candidate...it appears to have failed in yet another of its most important duties: ensuring a proper succession plan is in place...**Finally, The Corporate Library has rated the Merrill Lynch board as a high risk board for all but 18 months of the five years we have provided ratings on company governance**.

(Emphasis added).

**The Director Defendants Permitted**
**Merrill To Issue A Series Of Materially False**
**And Misleading Financial Statements and SEC Filings**

61.    In addition to the acts detailed above, Defendants caused false statements to be issued in SEC filings. On February 26, 2007 the Company filed a 10-K with the SEC for 2006, which stated that "our GMI business generated record setting financial performance by continuing to serve clients well, **take measured principal risk** and execute on a variety of key

growth initiatives around the world...we announced an agreement to acquire First Franklin mortgage origination franchise and related servicing platform from National City Corporation..." (Emphasis added).

62. These statements were materially false at the time, because Merrill was, in reality, overexposed to billions of dollars in the fast sinking CDOs that were backed by subprime loans. The agreement to purchase First Franklin perplexed analysts at the time, as it did not appear to make good business sense to invest in an industry that was tanking. These imprudent investments caused by the actions or inactions of the Board all resulted in the massive financial losses that crippled the Company since October of 2007.

63. On April 19, 2007, Merrill announced its financial results for the first quarter of 2007, and stated that "This was a terrific quarter...our product capabilities and geographic reach are stronger and broader now than at any point in our history, **and we continue to make investments to further enhance our franchise.**" (Emphasis added).

64. The true fact remained that the Company was overexposed and was continuing to make further investments in CDOs that further **injured** the Company.

65. On August 03, 2007, Merrill filed its Form 10-Q with the SEC and stated that:

"Merrill Lynch continues to be a major participant in these markets with risk exposures through cash positions, loans, derivatives and commitments. Given current market conditions, significant risk remains that could adversely impact these exposures and results of operations. **We continue our disciplined risk management efforts to proactively execute market strategies to manage our overall portfolio of positions and exposures with respect to market, credit and liquidity risks**."

(Emphasis added).

66. By permitting Merrill and its management to issue these materially false and misleading statements, the Director Defendants breached their fiduciary duties to Merrill.

67.    It took a $7.9 billion debacle in order for the Company and the Board to appreciate that remedial measures were needed to correct the failure to adhere to Merrill's stated Process Risk Management Program and limit the Company's exposure to CDOs. Only **after** Merrill had suffered billions of dollars in damages did Merrill create the position entitled Chief Risk Officer and vest this employee with the primary responsibility of monitoring both market and credit risk functions. According to the Company's 10-Q filed dated November 7, 2007:

> "In addition, with the establishment of the Chief Risk Officer...we are enhancing our capacity to monitor the associated risk levels vigilantly on a daily basis to ensure that they remain within corporate risk guidelines and risk tolerance levels."

The fact that the Company admitted in a SEC filing that they needed to "remain within corporate risk guidelines and risk tolerance levels" conclusively proves that the Director Defendants were grossly negligent in their oversight of the Company.

68.    According to a New York Times article dated November 04, 2007, the Securities and Exchange Commission has initiated an informal inquiry and investigation to examine whether Merrill accurately valued the Company's mortgage portfolio.

### DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

69.    Plaintiff brings this action derivatively in right and for the benefit of Merrill to redress injuries suffered, and to be suffered, by Merrill as a direct result of the breaches of fiduciary duty, waste of corporate assets, and unjust enrichment.

70.    Merrill is named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

71.    Plaintiff will adequately and fairly represent the interests of Merrill in enforcing and prosecuting its right.

72.     Plaintiff is and was an owner of stock of Merrill during the relevant time period of Defendants' wrongful course of conduct alleged herein, and remains a shareholder of the Company. Plaintiff will remain a shareholder of Merrill through the conclusion of this litigation.

73.     Plaintiff has not made any demand on the Board of Merrill to institute this action because such a demand would be futile for the following reasons:

a.      The Director Defendants are accused of breaching their fiduciary duties and are liable for failing to ensure adequate internal controls and adequate means of supervision to prevent the wrongs alleged herein.

b.      The Director Defendants have for a substantial time been aware, or should have been aware, of the wrongs alleged, but have chosen not to protect Merrill or rectify the policies and practices complained of herein. The Director Defendants have participated in, acquiesced in, and approved the wrongs alleged and did so in breach of their duties to Merrill's shareholders. The Defendants therefore participated in a continuing course of corporate misconduct that included the following:

(i)     Director Defendants were involved in reviewing and/or disseminating the materially false and misleading statements and information contained in the Company's SEC filings, press releases, and other public documents, were aware or recklessly disregarded that materially false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws. Each Director Defendant was provided with copies of the documents alleged herein to be misleading prior to their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each Defendant is responsible for the accuracy of the public reports and releases detailed

herein, and is therefore primarily liable for the materially false representations contained therein. Because the Defendants are liable for filing incorrect statements with the SEC and are thereby liable for violating the federal securities laws, demand would be futile.

(ii)   The Director Defendants Reese, Rossotti, Prueher and Jonas currently comprise the Audit Committee and individually and collectively failed in their duties of ensuring that the Company file true and complete financial statements with the SEC and are thereby liable for violations of the federal securities laws. An informal inquiry has been initiated by the SEC in order to determine whether the Company has violated the federal securities laws.   Because Merrill's financial statements described herein contained material misstatements and omissions about the Company's exposure to risky CDOs, the Audit Committee failed to perform its duties, thereby exposing any and all of the Director Defendants to liability for their breach of fiduciary duties.  As well, the Audit Committee shares some responsibility for overseeing risk policies and, therefore, Director Defendants Reese, Rossotti, Prueher and Jonas are liable for not ensuring that the employees of the Company did not overexpose the company to damaging risk.  By not implementing proper risk procedures and by failing to comply with the risk procedures in place, Defendants Reese, Rossotti, Prueher and Jonas did not exercise reasonable due care and allowed the Company to be exposed to $41 billion in CDOS and enabled a write down of over $7.9 billion in losses in the third quarter.  Accordingly, the Director Defendants on the Audit Committee cannot impartially act on a demand;

(iii)   The Director Defendants Reese, Rossotti, Finnegan and Cribiore currently comprise the Finance Committee and individually and collectively failed in their duties of ensuring that the Company competently manage its credit risk exposure.  According to

the Finance Committee's charter that was in effect throughout the relevant time period, the Finance Committee is primarily responsible "for credit and market risk management." By allowing the Company to obtain a $41 billion position in CDOs and by allowing the Company to suffer $7.9 billion in losses as a direct result of their gross negligence and failure to properly manage risk, Director Defendants Reese, Rossotti, Finnegan and Cribiore abdicated their fiduciary duties of due care and failed to monitor the Company's risk properly. As well, the Director Defendants mentioned above individually and collectively failed in their duties of ensuring that the Company file true and complete financial statements with the SEC and are thereby liable for violations of the federal securities laws. An informal inquiry has been initiated by the SEC in order to determine whether the Company has violated the federal securities laws. Because Merrill's financial statements described herein contained material misstatements and omissions about the Company's exposure to risky CDOs, the Finance Committee failed to perform its duties, therefore, demand would be futile;

(iv)     Director Defendants Cribiore, Colbert, Codina, Finnegan and Peters currently comprise the Management Development and Compensation Committee of the Board. The Director Defendants approved and authorized Defendant O'Neal retirement and thereby enabled him to receive an undeserving $161.5 million resignation package. This waste of corporate assets was perpetrated by the Director Defendants, and exposed them to liability as those monies should have been distributed to Merrill's shareholders and were intentionally misappropriated; and

(v)     Defendant O'Neal selected five sixths of the current Board. As such, the Director Defendants feel an obligation of indebtedness to management, and therefore will not bring this lawsuit on behalf of the Company;

c.      The Director Defendants are accused of conduct that is not subject to business judgment protection or subject to ratification.

d.      The wrongful actions or inactions complained herein by the Director Defendants amounted to breaches of their fiduciary duties of good faith, disclosure, due care and loyalty to Merrill and its shareholders, and the abdication of their responsibilities give rise to liability to the Company.

e.      The Director Defendants failed to put into place adequate internal controls and adequate means of supervision to stop the wrongful conduct alleged herein despite the fact that the Board knew or should have known about such wrongful business practices.

74.     These acts, and the acts alleged in this action, demonstrate a pattern of misconduct. A pattern of gross misconduct is not conduct taken in a good faith exercise of business judgment.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

Breach of Fiduciary Duties Against All Defendants

75.     Plaintiff incorporates by reference and realleges each and every allegation set forth herein.

76.     Each of Defendants owed and owes fiduciary duties to Merrill and its shareholders. By reason of their fiduciary relationships, Defendants all owed Merrill the highest obligation of good faith, fair dealing, loyalty and due care and diligence in the management of

28

the affairs f the Company. Moreover, Defendants owed and owe the duty of full and candid disclosure of all material facts.

77.     Defendants have been responsible for the gross and reckless management of Merrill and ignored their fiduciary responsibilities by:

> (i)     allowing the Company to amass an uncontrolled underwriting and position in CDOs that were mainly based on risky collateral in the form of sub-prime mortgages. The Company was forced to write down $7.9 billion in losses due to the breaches of fiduciary duties by the Director Defendants;

> (ii)    actively or indirectly causing the filing of false public statements that contained material misstatements and omissions regarding the financial health of the Company; and

> (iii)   wasting corporate assets by rewarding Defendant O'Neal with an $161.5 million resignation package.

78.     All Defendants engaged in the above conduct in intentional breach of their fiduciary duties to the Company.

79.     Defendants conspired to abuse, and did abuse, their positions of control and oversight in Merrill.

80.     Plaintiff and Merrill have been injured by reason of Defendants' disregard to their important fiduciary duties to the Company. Plaintiff as a shareholder and representative of the company seeks damages and other relief for the Company.

81.     Plaintiff on behalf of Merrill has no adequate remedy at law.

## SECOND CAUSE OF ACTION

### Abuse of Control Against All Defendants

82.     Plaintiff incorporates by reference and realleges each and every allegation set forth herein.

83.     Defendants' misconduct alleged herein constituted a breach of their fiduciary duties because they abused their ability to control and influence on Merrill, for which they are legally responsible.

84.     As a direct and proximate result of Defendants' abuse of control, Merrill has sustained significant damages.

85.     As a result of the misconduct alleged herein, Defendants are liable to the Company.

86.     Plaintiff on behalf of Merrill has no adequate remedy at law.

## THIRD CAUSE OF ACTION

### Gross Mismanagement Against All Defendants

87.     Plaintiff incorporates by reference and realleges each and every allegation set forth herein.

88.     By their actions alleged herein, Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of Merrill in a manner consistent with the operations of a publicly held corporation.

89.     As a direct and proximate result of Defendants' gross mismanagement and breaches of duty alleged herein, Merrill has sustained significant damages.

30

90. As a result of the misconduct and breaches of duty alleged herein, Defendants are liable to the Company.

91. Plaintiff on behalf of Merrill has no adequate remedy at law.

## FOURTH CAUSE OF ACTION

### Waste Of Corporate Assets Against All Defendants

92. Plaintiff incorporates by reference and realleges each and every allegation set forth herein.

93. As a result of the improper conduct described herein, and by failing to properly consider the interests of the Company and its public shareholders by failing to conduct proper supervision, Defendants have caused Merrill to waste valuable corporate assets by: awarding excessive compensation to senior executives, and by incurring potentially million of dollars of legal liability and legal costs to defend Defendants' unlawful actions.

94. Plaintiff on behalf of Merrill has no adequate remedy at law.

## FIFTH CAUSE OF ACTION

### Quasi Contract/ Unjust Enrichment Against All Defendants

95. Plaintiff incorporates by reference and realleges each and every allegation set forth herein.

96. By their wrongful acts and omissions, Defendants were unjustly enriched at the expense of, and to the detriment of, Merrill.

97. Plaintiff, as a shareholder and representative of Merrill, seeks restitution from Defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by Defendants, and each of them, from their wrongful conduct and fiduciary breaches.

31

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A. Against Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of Defendants' breaches of fiduciary duties, waste of corporate assets and unjust enrichment;

B. Directing Merrill to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Merrill and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote on Corporate Governance Policies concerning compliance with all applicable IRS regulations and federal tax laws;

C. Extraordinary equitable and/or injunctive relief as permitted by law, equity and state statutory provisions sued hereunder, including attaching, impounding and imposing a constructive trust on or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of Merrill has an effective remedy;

D. Awarding to Merrill restitution from Defendants, and each of them, including ordering disgorgement of all profits, benefits and other compensation obtained by Defendants;

E. Awarding Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

F. Granting such other and further relief as the Court deems just and proper.

32

## DEMAND FOR A TRIAL BY JURY

Plaintiff demands a trial by jury on all issues so triable as a matter of right.

## RULE 4:5-1 CERTIFICATION

To the best of my knowledge, the matter in controversy is not the subject of any other action or arbitration proceeding, now or contemplated, and that no parties should be joined in this action pursuant to R. 4:5-1.

Dated: November 29, 2007

By: _____

LAW OFFICES OF JAMES V.
BASHIAN, P.C..
James V. Bashian, Esq. (JB-6331)
271 Route 46 West, Suite F207
Fairfield, New Jersey 07004
Tel: (973) 227-6330
Fax: (973) 808-8665

Paul O. Paradis, Esq.
Richard Doherty, Esq.
Gina M. Tufaro, Esq.
James Smith, Esq.
**HORWITZ, HORWITZ &**
**PARADIS, Attorneys at Law**
28 West 44th Street, 16th Floor
New York, NY 10036
Phone: (212) 404-2200
Fax:    (212) 404-2226

Attorneys For Derivative Plaintiff

## VERIFICATION

I, David Eidman, hereby state under penalty of perjury under the laws of the United States that:

1.     I am the named plaintiff in this action.

2.     I verify that I have reviewed the attached Shareholder Derivative Complaint ("Complaint") and authorized my counsel to file the Complaint.

3.     To the best of my knowledge, information and belief, the facts set forth in the Complaint are true and correct.

Sworn to under penalty of perjury this 29th day of November, 2007 at Englewood, New Jersey.

MERNA MILLER
Notary Public, State of New York
No. 01MI5157l8
Qualified in Nassau County
Commission Expires Nov. 30, 2029

_____
Notary

_____
David Eidman

LAW OFFICES OF JAMES V. BASHIAN, P.C..
James V. Bashian, Esq. (JB-6331)
271 Route 46 West, Suite F207
Fairfield, New Jersey 07004
Tel: (973) 227-6330
Fax: (973) 808-8665

Attorney for Plaintiff

[Additional Counsel Appear on Signature Page]

| | |
|---|---|
| David Eidman,<br>Derivatively On Behalf of<br><br>MERRILL LYNCH & CO., INC.,<br><br>       Plaintiff,<br><br><br>v.<br><br>ERNEST STANLEY O'NEAL,<br>CAROL T. CHRIST, ARMANDO M.<br>CODINA, VIRGIS W. COLBERT,<br>ALBERTO CRIBIORE, JOHN D.<br>FINNEGAN, JUDITH MAYHEW JONAS,<br>AULANA L. PETERS, JOSEPH W.<br>PRUEHER, ANN N. REESE and<br>CHARLES O. ROSSOTTI<br><br><br>       Defendants.<br><br>and<br><br>MERRILL LYNCH & CO., INC.,<br><br>       Nominal Defendant. | )<br>) SUPERIOR COURT OF NEW JERSEY<br>) LAW DIVISION: BERGEN COUNTY<br>) Docket No.: L-8872-07<br>)<br>) CIVIL ACTION<br>)<br>) **VERIFIED AMENDED DERIVATIVE**<br>) **COMPLAINT**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## NATURE OF THE ACTION

1. Plaintiff, David Eidman ("Plaintiff"), brings this action derivatively on behalf of nominal defendant Merrill Lynch & Co., Inc. (hereinafter "Merrill" "Merrill Lynch" or the "Company") against its Board of Directors (hereinafter the "Board," "Director Defendants," ), in connection with breaches of their fiduciary duties of loyalty, due care and oversight of Merrill's imprudent underwriting of Collateralized Debt Obligations ("CDOs") and insufficient internal controls and mismanagement by the Company's managing senior executives between 2003 and 2007 (hereinafter the "Relevant Time Period"). Plaintiff alleges upon personal knowledge as to his own acts, and upon information and belief as to all other matters. Plaintiff's information and belief is based on the investigation conducted by counsel.

2. This shareholder derivative suit seeks to remedy Defendants' breach of fiduciary duties, abuse of control, and gross mismanagement arising out of a wrongful course of business conduct whereby Defendants: (i) caused Merrill to engage in unsound underwriting practices of CDOs that ultimately forced the Company to write down losses exceeding $7.9 billlion for the third quarter of 2007; (ii) exposed Merrill to over $40 billion in CDOs as of July of 2007; and (iii) agreed to allow the Chief Executive Officer to resign and receive a full retirement package worth more than $160 million.

## JURISDICTION AND VENUE

3. The allegations contained herein are brought derivatively on behalf of nominal defendant Merrill. Accordingly, this Court has jurisdiction pursuant to N.J. Court Rules, R. 4:32-5.

4. Plaintiff David Eidman currently resides in Bergen County, New Jersey. Accordingly, Venue is properly laid in this County pursuant to N.J. Court Rules, R.4:3-2(a).

## PARTIES

### Plaintiff

5.     Plaintiff David Eidman is a Merrill shareholder and was a Merrill shareholder throughout the entirety of the time period of the complained of actions alleged herein, and remains a Merrill shareholder continuously to date.  Plaintiff David Eidman purchased shares on November 16, 2003.  Plaintiff is a citizen and resident of the State of New Jersey.

### Nominal Defendant

6.     Nominal Defendant Merrill Lynch & Co., Inc. is a corporation incorporated, organized and existing under the laws of the State of Delaware, with its registered office located at Corporation Trust Center, 1209 Orange Street, in the City of Wilmington, County of New Castle.  The Company's central corporate headquarters is located at 4 World Financial Center, 250 Vesey Street, New York, New York, 10080.  According to the Company's website, "Merrill is one of the world's leading wealth management, capital markets and advisory companies, with offices in 38 countries and territories and total client assets of approximately $1.8 trillion. Merrill Lynch offers a broad range of services to private clients, small businesses, and institutions and corporations, organizing its activities into two interrelated business segments - Global Markets & Investment Banking Group and Global Wealth Management, which is comprised of Global Private Client and Global Investment Management.  As an investment bank, it is a leading global trader and underwriter of securities and derivatives across a broad range of asset classes and serves as a strategic advisor to corporations, governments, institutions and individuals worldwide."

3

**Director Defendants**

7.      Defendant Ernest Stanley O'Neal is the former Chief Executive Officer and the former Chairman of the Board of Directors of Merrill.  He resigned on November 1, 2007 after having served in numerous senior management positions at the Company prior to serving as Chief Executive Officer.  Defendant O'Neal joined Merrill in 1986 and worked in the bond department.  In the early 1990s, Defendant O'Neal became the head of Merrill's leveraged finance division.  After serving as global head of capital markets and co-head of the corporate and institutional client group, he spent two years as CFO from 1998 to 2000.  He then became President of Merrill's U.S. Private Client Group, before becoming President of the Company in 2001.  In 2003, Mr. O'Neal became CEO and Chairman of the Board of Merrill Lynch.  In addition, Mr. O'Neal was a member of the Board of Directors of General Motors from 2001-2006, and recently resigned from the Board of Directors of BlackRock, Inc. on October 30, 2007. Defendant O'Neal is a citizen of the State of New York.

8.      Defendant Carol T. Christ has been a Merrill Director since July of 2007 and has served as a member of the Public Policy and Responsibility Committee of the Board.  In June 2002, Director Christ became the 10th president of Smith College. Prior to that, Ms. Christ spent more than 30 years at the University of California, Berkeley.  She joined the English faculty in 1970, and, as chair of her department from 1985 to 1988, she built and maintained one of the top-ranked English departments in the country.  She entered the University's administration in 1988, serving first as Dean of Humanities and later as Provost and Dean of the College of Letters and Sciences.  In 1994, Ms. Christ was appointed Vice Chancellor and provost at Berkeley. Defendant Christ is a citizen of the State of Massachusetts.

4

9.      Defendant Armando M. Codina has been a Merrill Director since 2005. Defendant Codina is currently the President and Chief Executive Officer of Flagler Development Group, a real estate investment, development, construction, brokerage and property management company, and has been since 2006. He was also the Founder, Chairman and CEO of Codina Group, a real estate investment company from 1979, until its combination with Flagler Development Group in 2006. He also serves as a director on the board of the following companies: AMR Corp., Burger King Corp., Florida East Coast Industries, Inc., and GM. Defendant Codina is a citizen of the State of Florida.

10.     Defendant Virgis W. Colbert has been a Merrill Director since 2006. Defendant Colbert has also served as the Senior Advisor to the Miller Brewing Company, a beer brewing company, since 2006. He was employed at Miller Brewing Company from 1997 through 2005, where he served in a variety of positions, including as the Executive Vice President of Worldwide Operations. Defendant Colbert has been, or currently is, a board member of the following companies: The Manitowoc Company, Inc., Sara Lee Corporation, and The Stanley Works. Defendant Colbert is a citizen of the State of Wisconsin.

11.     Defendant Alberto Cribiore has been a Merrill Director since 2003. Immediately following the departure of Defendant O'Neal from Merrill, he was elected by the Merrill Board to serve as Interim Non-Executive Chairman. Defendant Cribiore is the founder and Managing Principal of Brera Capital Partners, LLC, a private equity investment firm, and has been since 1997. He has also served as the Co-President of Clayton, Dubilier & Rice, Inc., an equity investment firm, from 1985 through 1997. From 1982 to 1985 he served as the Senior Vice President of Warner Communications, predecessor to Time Warner Inc. and was responsible for

5

business strategy, mergers, acquisitions and divestitures. Defendant Cribiore is a citizen of the State of New York.

12.     Defendant John D. Finnegan has been a Merrill Director since 2004. He has been the President and CEO of The Chubb Corporation since December 2002 and has been the Chairman of the Board since December 2003. He has also served as the Executive Vice President of GM, where he also served as the Chairman and President of GM Acceptance Corporation, a finance company and subsidiary of GM, from May 1999 to December 2002. Defendant Finnegan has a B.A. degree in political science from Princeton University, a law degree from Fordham University and an M.B.A. from Rutgers University. Defendant Finnegan is a citizen of the State of New Jersey.

13.     Defendant Judith Mayhew Jonas has been a Merrill Director since 2006. Defendant Jonas has been a member of the United Kingdom government's Equality Review Panel since 2005. She has a law degree from the University of Otaga, New Zealand's oldest university. She has also served as Provost of Kings College, Cambridge from 2003 to 2006. She is a citizen of the United Kingdom.

14.     Defendant Aulana L. Peters has been a Merrill Director since 1994. She has a B.A. in philosophy from the College of New Rochelle, New York and has a law degree from the University of Southern California in Los Angeles, California. She was a partner of the law firm Gibson, Dunn & Crutcher from 1984 to 1998. She has served as a Commissioner of the Securities and Exchange Commission. Defendant Peters has or currently serves as a board member of the following companies: 3M, Deere & Company and Northrop Grumman Corporation. Defendant Peters is a citizen of the State of California.

6

15.     Defendant Joseph W. Prueher has been a Merrill Director since 2001. Defendant Prueher has served as a former United States Ambassador for the People's Republic of China from 1999 to 2001. Defendant Prueher was a consulting Professor at the Stanford University Center for International Security and Cooperation and a lecturer and Senior Advisor to the Stanford-Harvard Defense Project. From 1996 to 1999, Prueher served in the military as Commander in Chief of U.S. Pacific Command and as a retired admiral. Defendant Prueher currently serves or has served on the boards of the following companies: Emerson Electric Company, Fluor Corporation, DynCorp. International, McNeil Technologies, New York Life Insurance Company and the Wornick Company. Director Prueher is a citizen of the State of Virginia.

16.     Defendant Ann N. Reese has been a Merrill Director since 2004. Defendant Reese has a B.A. from the University of Pennsylvania and an M.B.A. from the New York University Stern School of Business. She is the Co-Founder of the Center for Adoption Policy and served as a Principal for Clayton, Dubilier & Rice from 1999-2000. Defendant Reese has served on the boards of the following companies: CBS, Jones Apparel Group, Sears Roebuck and Co., and Xerox. She has also served as an FAS Advisory Council member. Defendant Reese is a citizen of the State of New York.

17.     Defendant Charles O. Rossotti has been a Merrill Director since 2004. Defendant Rossotti is a former Commissioner of Internal Revenue at the United States Internal Revenue Service. He served in that position from 1997 to 2002. He was the founder, Chairman of the Board, President and CEO of American Management Systems, an international business and information technology consulting firm, from 1970 to 1997. Defendant Rossotti has also served as a Senior Advisor to The Carlyle Group, a private global investment firm, since 2003. He has

served as a director on the boards of the following companies: AES Corp., Adesso Systems Corp., Compusearch Software Systems, Inc., and Liquid Engines, Inc. Defendant Rossotti is a citizen of Washington D.C.

## Merrill's Board Committees

18. The chart below illustrates the key Board committees and their current membership:

| | Audit Committee | Finance Committee | Management Development & Compensation Committee | Nominating & Corporate Governance Committee | Public Policy & Responsibility Committee |
|---|---|---|---|---|---|
| Alberto Cribiore (Interim Chairman) | | ✓ | ✓ | ✓ | |
| Carol T. Christ | | | | | ✓ |
| Armando M. Codina | | | ✓ | Chair | |
| Virgis W. Colbert | | | ✓ | ✓ | ✓ |
| John D. Finnegan | | ✓ | Chair | ✓ | |
| Judith Mayhew Jonas | ✓ | | | | ✓ |
| Aulana L. Peters | | | ✓ | | ✓ |
| Joseph W. Prueher | ✓ | | | | Chair |
| Ann N. Reese | Chair | ✓ | | | |
| Charles O. Rossotti | ✓ | Chair | | | |

## Merrill's Audit Committee

19. According to the Audit Committee's charter, the Audit Committee is primarily responsible for:

> **Assist[ing] the Board in fulfilling its oversight responsibility relating to the:**
>
> **A. Preparation and integrity of the Corporation's financial statements and oversight of related disclosure matters;**
>
> **B. Qualifications, independence and performance of, and the Corporation's relationship with, its registered public accounting firm (the "independent auditor");**

**C. Performance of the Corporation's internal audit function and internal controls; and**

**D. Compliance by the Corporation with legal and regulatory requirements.**

(Emphasis added).

**Merrill's Finance Committee**

20.    According to the Finance Committee's charter, the Finance Committee is primarily responsible for:

**Assist[ing] the Board in fulfilling its oversight responsibilities relating to:**

**A. Financial commitments and investments;**

**B. The Corporation's financial and operating plan;**

**C. The Corporation's financing plan, including funding, liquidity and insurance programs;**

**D. Balance sheet and capital management; and**

**E. Credit and market risk management.**

(Emphasis added).

## DEFENDANTS' DUTIES

21.    Defendants owe and owed Merrill fiduciary obligations of fidelity, trust, loyalty, candor, and due care, and were and are required to manage Merrill in a fair, just, honest and equitable manner. Defendants were and are required to act in furtherance of the best interests of Merrill and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. Each Defendant owes Merrill the highest obligations of good faith and fair dealing. In addition, as officers and/or directors of a publicly held company, Defendants have a duty to manage the Company's exposure to credit and market risk in order to prevent losses.

22.     The Director Defendants, because of their positions of control and authority of Merrill, were able to and did, directly and indirectly, control the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company. Because of their advisory, executive, managerial, and directorial positions with Merrill, each Defendant had access to material, adverse, non-public information about the financial condition, operations and future business prospects of Merrill, including, without limitation, the misconduct in which Defendants caused Merrill to engage.

23.     By knowingly engaging in and/or knowingly acquiescing in the wrongful conduct complained of herein, Defendants breached the fiduciary duties that each of them owed to Merrill and caused Merrill to incur billions of dollars in damages and other injuries more fully described below.

24.     By reason of their positions as officers, directors and/or fiduciaries of Merrill and because of their ability to control the business and corporate affairs of Merrill, Defendants owed Merrill and its shareholders fiduciary obligations of trust, loyalty, good faith and due care, and were and are required to use their utmost ability to control and manage Merrill in a fair, just, honest and equitable manner. Defendants were and are required to act in furtherance of the best interests of Merrill and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

25.     Each director and officer of the Company owes to Merrill and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing. In addition, as officers and/or directors of a publicly held company, Defendants

10

had a duty to assure themselves and shareholders that Merrill would not write down over $7.9 billion of losses due to its positional overexposure in risky CDOs.

## SUBSTANTIVE ALLEGATIONS

26.     Merrill Lynch has boasted about its strong internal operational and credit risk management controls since as early as 2001. At a joint conference on capital allocation for operational risk hosted by the Federal Reserve Bank of Boston in November of 2001, Clinton Lively, then Managing Director of Corporate Risk Management at Merrill, described Merrill's Process Risk Management Program.

27.     By way of an elaborate PowerPoint presentation (which is annexed as Exhibit A hereto), Mr. Lively stated that Merrill's risk management program goals to were to: (i) motivate its internal control personnel to "learn from mistakes"; and (ii) "**assess[] the adequacy of controls for the risks we take.**" Mr. Lively's presentation stated:

> "The key criteria for developing the model for us has been how well it motivates managers to adopt the practices we have endorsed. **The internal mechanics of the model are a secondary priority – and become important only in so far as they influence behavior in the firm**. To this end, **business units receive reductions in their risk capital allocations to the extent they engage in the practices prescribed by the program- and for initiatives which result in demonstrated reductions in process risk.**"

(Emphasis added).

28.     As described in particular detail below, the Director Defendants and Merrill's other senior ranking executives completely disregarded Merrill's Process Risk Management Program and, as a result, permitted Merrill to engage in and become exposed to highly risky investments such that Merrill's financial risk exposure was materially beyond the risk levels permitted by Merrill's Process Risk Management Program.

11

29.     The Director Defendants either completely failed to, or were totally ineffective in curtailing Merrill from making these highly risky investments that were made in direct contravention of Merrill's Process Risk Management Program and, as a direct result, caused the Company to incur billions of dollars in losses. The Director Defendants blatantly ignored the restrictions imposed by Merrill's Process Risk Management Program and permitted Merrill's employees to do so as well, all to the extreme financial detriment of the Company.

30.     The Director Defendants were responsible for acting to insure that Merrill's Process Risk Management Program was implemented, and that the Company's employees were acting in accordance with this Program. The Director Defendants were also responsible for acting to insure that there was a system of checks and balances in place to monitor the activities of the Company's employees. Contrary to the public image that was painted of Merrill being a Company that prided itself on having and utilizing strong risk management policies and practices, Merrill was in fact a Company that did not adhere to its stated risk management policies and whose employees failed to conduct themselves in accordance with such policies. Such misconduct on the part of Merrill's employees was the direct result of the Director Defendants failing to fulfill their fiduciary responsibilities.

**Merrill's Former CEO**
**Was Obsessed With**
**Competing With Goldman Sachs**

31.     Merrill Lynch was a Company with substantial problems when Defendant O'Neal was given the responsibilities of CEO and Chairman of the Board in late 2001. At the same time, the Company's chief competitor, Goldman Sachs, was recording and reporting tremendous revenues and was quickly separating itself from the failing Merrill Lynch.

32.     In order to close the gap, and in appreciation of the deep financial woes that were then plaguing the Company, Defendant O'Neal fired a substantial portion of Merrill's workforce and tightened the Company's overall costs and spending in an attempt to maintain Merrill's reputation as a Wall Street leader.

33.     These actions proved to be insufficient in closing the widening gap between Merrill's performance and Goldman Sach's performance, however.  As a result, Defendant O'Neal implemented a new strategy that involved the risky financing of debt and derivatives, instruments whose valued is based upon the change in some underlying asset.

**Merrill Management
Takes On Added Risk
In Violation Of Merrill's
Process Risk Management Program**

34.     According to a Wall Street Journal ("WSJ") article dated October 25, 2007, O'Neal determined that Merrill needed to exponentially raise its holdings in the speculative business of securitizations in order to increase its profitability and to enhance its standing vis-à-vis Goldman Sachs.  In order to implement its new and aggressive investment strategy, Merrill hired major players in the CDOs and securitization industries, including Christopher Ricciardi, "who liked to be called the grandfather of CDOs."

35.     Securitization is the process of creating a financial instrument by combining other financial assets and then marketing them to investors.  These secured instruments are backed by loans, leases or receivables.  There are many types of secured instruments including, but not limited to, asset backed securities, residential mortgage backed securities and commercial mortgage backed securities.  An asset backed security is one backed by any receivable that is not earned from real estate. Examples of asset backed securitizations include credit card receivables, automobile loans/leases/floor plan receivables and volatile aircraft receivables.

13

36.     Mortgage backed securities ("MBS"), on the other hand, are backed by the receivables from residential and commercial mortgages. In an MBS, the trust's pooled collateral varies and can consist of strong conforming mortgages or can consist of high risk sub-prime mortgages. Sub-prime mortgages are highly susceptible to default because the requested mortgages are issued to borrowers that have low income, shaky credit, job instability and few assets. Residential MBS accounts for close to half of all securitization collateral and almost 75% of all MBS are secured by sub-prime loans.

37.     CDOs are pools of debts that bundle together a collection of securities and are sold through an assortment of tranches that are assessed based upon the safety and security of the underlying collateral. The investors in the CDOs bear the credit risk of the collateral. The tranches are categorized as senior, mezzanine and subordinated according to their degree of credit risk. If there are defaults in the loans, or if the collateral backing the CDO otherwise underperforms, the senior tranches are the first on the food chain and get paid out first. Every CDO has a sponsoring organization, which establishes the vehicle to hold collateral and issue securities.

**Merrill Becomes the World's Leading Sponsor of CDOs**

38.     In response to the stock market troubles of late 2000, the Federal Reserve slashed interest rates with hopes of reviving the economy. This period of sustained drop in interest rates allowed the mortgage industry to significantly streamline underwriting and fulfillment operations, thus driving down the cost to refinance and providing enhanced access to credit to marginal borrowers. There were also reductions in down payment requirements and the movement to low documentation loans greatly expanded during the early 2000s.

14

39.     The fuel behind the increased loan documentation was the issuance of CDOs. CDO issuance was just $52 billion in 1999, but it rapidly rose to an astounding $388 billion in 2006.  The sale of these instruments to investors brought new capital into the business of mortgages, and helped recycle loans so lenders could lend more, creating a national housing boom.

40.     As the issuance throughout the industry rose, so too did Merrill's underwriting of CDOs and the fees associated with such underwriting.  According to the above mentioned WSJ article, "Merrill leapt from 15th place among CDO underwriting ranks in 2002, when it arranged just $2.22 billion of deals, to the No. 1 spot on Wall Street in 2004 with $19 billion, according to Dealogic.  In 2005 Merrill's underwriting total soared to $35 billion, of which $14 billion were backed mostly by securities tied to sub-prime mortgages... [Merrill] reaped an estimated $400 million in CDO underwriting profits in 2005."

41.     By reason of the fact that Merrill was investing considerable monies in risky securitizations, the Director Defendants should have inquired and/or acted to insure that these investments were conducted in accordance with Merrill's Process Risk Management Program. By failing to do so, the Director Defendants breached the fiduciary duties that each of them owed to Merrill.

42.     Director Defendants decided instead to reward Merrill's management for violating the Company's Process Risk Management Program. Specifically, Defendant O'Neal's compensation was tied to the amount of fees that Merrill generated and in 2006, O'Neal received an $18.5 million bonus on top of $30 million in various forms of compensation.  By approving such a bonus, the Director Defendants actively rewarded this ongoing violation of Merrill's Process Risk Management Program and improperly rewarded management's imprudent

15

investing strategies, thereby subjecting the Company tremendous financial risk and wasting Merrill's assets by utilizing Merrill funds to compensate management that was acting in direct violation of Merrill's Process Risk Management Program, as further detailed herein.

43. However, the roller coaster peaked in early 2006, when signs of trouble in the market for sub-prime mortgages began appearing. Home prices started declining for the first time in years and home builders' orders slowed. Credit agencies that ranked CDOs began downgrading the now risky investments. Companies started scrambling to concoct proper exit strategies that would lessen their exposure to CDOs.

**Despite The Burst Of The Housing
Bubble, Merrill Keeps Underwriting CDOs**

44. Notwithstanding the fact that most companies were attempting to cut off all ties to sub-prime mortgages, Defendants allowed Merrill to continue on its spree of underwriting CDOs. According to the WSJ, top executives "sought to reassure the CDO group that Merrill remained committed to the business, saying it would do "whatever it takes" to remain No. 1 in CDOs..."

45. Under the leadership of Defendant O'Neal, Merrill underwrote over 100 CDO deals with a value over $90 billion between 2006 and 2007. The Company collected millions in underwriting fees, and consequently, O'Neal collected millions in compensation. Merrill's overall exposure to the volatile CDOs of mortgage backed securities exceeded $41 billion as of late June of 2007.

46. The Director Defendants should not have allowed this risky exposure and should have seen the red flags associated with maintaining the abnormal CDO positions. Yet, there is no reported activity of either the Audit Committee or the Finance Committee, let alone the entire Board, taking any steps whatsoever to stop management from continuing to engage in these

16

highly risky investments in violation of Merrill's Process Risk Management Program. While other prudent firms were positioning themselves against a fall, Merrill continued its head-first plunge into the sub-prime CDOs.

47.    Despite the obvious fact that Merrill's management had repeatedly violated Merrill's Process Risk Management Program and lost control, Defendant O'Neal assured investors in June of 2007 that the problems in the sub-prime area "were reasonably well contained" adding that "there have been no clear signs that it was spilling into other subsets of the bond market, the fixed income market and the credit market." This statement was known to be false to the Director Defendants at the time it was made by Defendant O'Neal because the Director Defendants knew, but did not disclose, that Merrill's management had long been engaged in making highly risky CDO investments in violation of Merrill's Process Risk Management Program, but failed to disclose this clearly material fact.

**Merrill Is Unable To Unload Its**
**Oversized Position In CDOs, And Writes**
**Down Billions of Dollars Of CDOs**

48.    Because of the housing slump that was progressively worsening by the month, Merrill was unable to find buyers willing to accept any significant portion of Merrill's $41 billion position in the risky CDO market. Specifically, as of October of 2005, Merrill still held a position of over $20.9 billion.

49.    In early October of 2007, Merrill issued its earnings pre-release and estimated an astounding overall **$4.5 billion** write-down across CDOs and U.S. subprime mortgages for the third quarter of 2007.

50.    However, in an October 24, 2007 earnings conference call, Defendant O'Neal made a rare telephonic appearance and announced that Merrill, in fact, was forced to write down

an overall **$7.9 billion** across CDOs and U.S. subprime mortgages, $2.4 billion higher than the earnings pre-release estimate. Merrill also announced that day that it incurred a net loss from continuing operations for the third quarter of $2.3 billion, or $2.85 per diluted share, significantly below net earnings of $2.22 per diluted share for the second quarter of 2007 and $3.14 for the third quarter of 2006.

51. This announced loss was a shocking $2 billion dollars higher than the loss expected based upon the material misstatements made by Merrill just a couple of weeks prior and was the Company's largest loss in around 100 years. The fact that the Company had failed to accurately disclose its expected losses and had understated this expected loss by more than $2 billion clearly establishes that the Director Defendants had failed to act to insure that Merrill's investment activities in the CDO market were conducted in accordance with Merrill's Process Risk Management Program, or alternatively, that these policies were in place and were blatantly ignored.

52. The already depressed shares of Merrill fell over 5% since the write off announcement. As well, numerous credit agencies have downgraded the Company's ratings.

53. The press release issued that same day stated:

> Merrill Lynch (**NYSE: MER**) today reported a net loss from continuing operations for the third quarter of $2.3 billion, or $2.85 per diluted share, significantly below net earnings of $2.22 per diluted share for the second quarter of 2007 and $3.14 for the third quarter of 2006. Third-quarter 2006 net earnings per diluted share, excluding the impact of the one-time, after-tax net benefit of $1.1 billion ($1.8 billion pretax) related to the merger of Merrill Lynch Investment Managers (MLIM) and BlackRock (NYSE: BLK), were $1.97. Third-quarter 2007 results reflect significant net write-downs and losses attributable to Merrill Lynch's Fixed Income, Currencies & Commodities (FICC) business, including write-downs of $7.9 billion across CDOs and U.S. subprime mortgages, which are significantly greater than the incremental $4.5 billion write-down Merrill Lynch disclosed at the time of its earnings pre-release. These write-downs and losses were partially offset by strong revenues in Global Wealth Management (GWM), Equity Markets and Investment Banking, particularly in regions outside

18

of the U.S. The results described above and herein, exclude Merrill Lynch Insurance Group (MLIG), which is reported under discontinued operations.

Third-quarter 2007 total net revenues of $577 million decreased 94 percent from $9.8 billion in the prior-year period and were down 94 percent from $9.7 billion in the second quarter of 2007. Merrill Lynch's third-quarter 2007 pretax net loss was $3.5 billion. At the end of the third quarter, book value per share was $39.75, down slightly from the end of the third quarter 2006.

Mortgage and leveraged finance-related write-downs in our FICC business depressed our financial performance for the quarter. In light of difficult credit markets and additional analysis by management during our quarter-end closing process, we re-examined our remaining CDO positions with more conservative assumptions. The result is a larger write-down of these assets than initially anticipated," said **Stan O'Neal**, chairman and chief executive officer. "We expect market conditions for subprime mortgage-related assets to continue to be uncertain and we are working to resolve the remaining impact from our positions," Mr. O'Neal continued. "Away from the mortgage-related areas, we continue to believe that secular trends in the global economy are favorable and that our businesses can perform well, as they have all year."

Net revenues for the first nine months of 2007 were $20.0 billion, down 23 percent from $25.8 billion in the comparable 2006 period. Net earnings per diluted share of $1.94 were down 62 percent from $5.12 in the prior-year period, and net earnings of $2.0 billion were down 61 percent. Results for the first nine months of 2006 included $1.2 billion of one-time, after-tax compensation expenses ($1.8 billion pretax) related to the adoption of Statement of Financial Accounting Standards No. 123R ("one-time compensation expenses") incurred in the first quarter of 2006, as well as the net benefit associated with the MLIM merger. Excluding these one-time items, net revenues for the first nine months of 2007 were down 16 percent, net earnings per diluted share were down 63 percent and net earnings were down 62 percent from the prior-year period. The pretax profit margin for the first nine months was 12.8 percent, down 14.2 percentage points from the comparable 2006 period, or down 16.3 percentage points excluding the one-time items. The annualized return on average common equity was 6.5 percent, down 13.0 percentage points from the first nine months of 2006, or down 13.4 percentage points excluding the one-time items.

**Business Segment Review:**

In the first quarter of 2006, Merrill Lynch recorded the one-time compensation expenses (pretax) in the business segments as follows: $1.4 billion to Global Markets and Investment Banking, $281 million to Global Wealth Management and $109 million to Merrill Lynch Investment Managers (which ceased to exist as a business segment upon its merger with BlackRock). The one-time net benefit associated with the MLIM merger was recorded in the Corporate Segment.

Comparisons to results from the third quarter and first nine months of 2006 in the following discussion of business segment results exclude the impact of these one-time items. A reconciliation of these segment results appears on <u>Attachment V</u> to this release.

**Global Markets & Investment Banking (GMI)**
GMI recorded negative net revenues and a pretax loss for the third quarter of 2007 of $3.0 billion and $4.4 billion, respectively, as strong net revenues from Equity Markets and Investment Banking were more than offset by the net losses in FICC. GMI's third quarter net revenues also included a net benefit of approximately $600 million due to the impact of the widening of Merrill Lynch's credit spreads on the carrying value of certain long-term debt liabilities.

- Third-quarter and year-to-date 2007 net revenues from GMI's three major business lines were as follows:

- FICC net revenues were negative $5.6 billion for the quarter, impacted primarily by losses across CDOs and U.S. subprime mortgages. These positions consist of CDO trading positions and warehouses, as well as U.S. subprime mortgage related whole loans, warehouse lending, residual positions and residential mortgage backed securities.

\*      \*      \*

**<u>Third-quarter write-downs of $7.9 billion across CDOs and U.S. subprime mortgages are significantly greater than the incremental $4.5 billion write-downs Merrill Lynch disclosed at the time of its earnings pre-release. This is due to additional analysis and price verification completed as part of the quarter-end closing process, including the use of more conservative loss assumptions in valuing the underlying collateral.</u>**

(Emphasis added).

54.     The $7.9 billion write down by the Company clearly shows that the Director Defendants were grossly negligent in their oversight of management.  By not questioning Merrill's corporate credit risk investment strategy, the Board proximately caused Merrill to incur billions of dollars in damages.

55.     On October 25, 2007, the WSJ reported that:

"The 8.4 billion dollar hit leaves it clear that Mr. O'Neal and his team did not always appreciate the risks they took to achieve the greater profits.  The write-downs surpass a $6 billion loss suffered in 2005 by the hedge fund Amaranth LLC, which had stood as the largest single known Wall Street loss...**On the**

**Conference call, Mr. O'Neal accepted a share of the responsibility, saying, "I am accountable for the mistakes as I am accountable for the performance of the firm overall."**

(Emphasis added).

**O'Neal Attempts To Single-handedly
Merge Merrill With Wachovia Without Board Authority**

56.     Despite the admissions made by Defendant O'Neal regarding the mistakes he made in authorizing the underwriting of the risky CDOs, and despite the fact that the price per share of Merrill fell over 30% in just over 3 months, the Director Defendants did not fire Defendant O'Neal from his position as CEO of the Company.

57.     On October 26, 2007, the New York Times reported that Defendant O'Neal had conducted serious merger talks with Wachovia Bank without prior authorization or approval from Merrill's Board.  Knowing that he would secure a severance package exceeding $250 million, Defendant O'Neal pushed for a merger that would result in new management of the Company.

**Director Defendants Approve The
Resignation Of Defendant O'Neal
From Merrill And Improperly Reward
Him With A $160 Million Payment**

58.     On October 30, 2007, Merrill issued a press release announcing the retirement of Defendant O'Neal from the Company. The press release stated:

> The company said Mr. O'Neal and the board of directors both agreed that a change in leadership would best enable Merrill Lynch to move forward and focus on maintaining the strong operating performance of its businesses, which the company last week reported were performing well, apart from sub-prime mortgages and CDOs. 'We would like to thank Stan for the contribution he has made leading a major transformation of Merrill Lynch into a global and diversified company with enormous potential ahead of it,' said Mr. Cribiore. '**His commitment to the company, its clients, shareholders and employees has**

**never wavered and the company will reap tremendous benefits in the future from his work.**'

(Emphasis added).

59.     The Board should have fired Defendant O'Neal after the Company announced its biggest loss in close to 100 years. Instead, the Director Defendants substantially wasted corporate assets by unjustifiably rewarding him with an over $160 million retirement package.

60.     According to the Corporate Library, the leading independent source for U.S. corporate governance:

> Stanley O'Neal's departure from Merrill Lynch with 'no severance' and no 2007 bonus would seem to present a picture of a decisive board in control. **Yet, when 'no severance' equals $161.5 million and an office and executive assistant for three years, what else did they think they needed to give him?...When a compensation committee retains discretion over whether a severance package will be offered, it would seem to suggest that it will exercise its discretion in favor of shareholders. Yet all this meant was that it decided not to pay the approximately $30 million in cash severance that might have been due had Mr. O'Neal pulled off a merger with Wachovia**... But while the board is trying to present itself as decisive and in control now, **where was its oversight when the strategic decisions that led to this massive wrote-off of value were being made.** Since it also looks as if the board may be considering an external candidate...it appears to have failed in yet another of its most important duties: ensuring a proper succession plan is in place...**Finally, The Corporate Library has rated the Merrill Lynch board as a high risk board for all but 18 months of the five years we have provided ratings on company governance**.

(Emphasis added).

**The Director Defendants Permitted**
**Merrill To Issue A Series Of Materially False**
**And Misleading Financial Statements and SEC Filings**

61.     In addition to the acts detailed above, Defendants caused false statements to be issued in SEC filings. On February 26, 2007 the Company filed a 10-K with the SEC for 2006, which stated that "our GMI business generated record setting financial performance by continuing to serve clients well, **take measured principal risk** and execute on a variety of key

22

growth initiatives around the world…we announced an agreement to acquire First Franklin mortgage origination franchise and related servicing platform from National City Corporation…" (Emphasis added).

62.     These statements were materially false at the time, because Merrill was, in reality, overexposed to billions of dollars in the fast sinking CDOs that were backed by subprime loans. The agreement to purchase First Franklin perplexed analysts at the time, as it did not appear to make good business sense to invest in an industry that was tanking.    These imprudent investments caused by the actions or inactions of the Board all resulted in the massive financial losses that crippled the Company since October of 2007.

63.     On April 19, 2007, Merrill announced its financial results for the first quarter of 2007, and stated that "This was a terrific quarter…our product capabilities and geographic reach are stronger and broader now than at any point in our history, **and we continue to make investments to further enhance our franchise**." (Emphasis added).

64.     The true fact remained that the Company was overexposed and was continuing to make further investments in CDOs that further **injured** the Company.

65.     On August 03, 2007, Merrill filed its Form 10-Q with the SEC and stated that:

> "Merrill Lynch continues to be a major participant in these markets with risk exposures through cash positions, loans, derivatives and commitments. Given current market conditions, significant risk remains that could adversely impact these exposures and results of operations. **We continue our disciplined risk management efforts to proactively execute market strategies to manage our overall portfolio of positions and exposures with respect to market, credit and liquidity risks**."

(Emphasis added).

66.     By permitting Merrill and its management to issue these materially false and misleading statements, the Director Defendants breached their fiduciary duties to Merrill.

67.     It took a $7.9 billion debacle in order for the Company and the Board to appreciate that remedial measures were needed to correct the failure to adhere to Merrill's stated Process Risk Management Program and limit the Company's exposure to CDOs. Only **after** Merrill had suffered billions of dollars in damages did Merrill create the position entitled Chief Risk Officer and vest this employee with the primary responsibility of monitoring both market and credit risk functions. According to the Company's 10-Q filed dated November 7, 2007:

> "In addition, with the establishment of the Chief Risk Officer…we are enhancing our capacity to monitor the associated risk levels vigilantly on a daily basis to ensure that they remain within corporate risk guidelines and risk tolerance levels."

The fact that the Company admitted in a SEC filing that they needed to "remain within corporate risk guidelines and risk tolerance levels" conclusively proves that the Director Defendants were grossly negligent in their oversight of the Company.

68.     According to a New York Times article dated November 04, 2007, the Securities and Exchange Commission has initiated an informal inquiry and investigation to examine whether Merrill accurately valued the Company's mortgage portfolio.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

69.     Plaintiff brings this action derivatively in right and for the benefit of Merrill to redress injuries suffered, and to be suffered, by Merrill as a direct result of the breaches of fiduciary duty, waste of corporate assets, and unjust enrichment.

70.     Merrill is named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

71.     Plaintiff will adequately and fairly represent the interests of Merrill in enforcing and prosecuting its right.

72.     Plaintiff is and was an owner of stock of Merrill during the relevant time period of Defendants' wrongful course of conduct alleged herein, and remains a shareholder of the Company. Plaintiff will remain a shareholder of Merrill through the conclusion of this litigation.

73.     Plaintiff has not made any demand on the Board of Merrill to institute this action because such a demand would be futile for the following reasons:

a.     The Director Defendants are accused of breaching their fiduciary duties and are liable for failing to ensure adequate internal controls and adequate means of supervision to prevent the wrongs alleged herein.

b.     The Director Defendants have for a substantial time been aware, or should have been aware, of the wrongs alleged, but have chosen not to protect Merrill or rectify the policies and practices complained of herein. The Director Defendants have participated in, acquiesced in, and approved the wrongs alleged and did so in breach of their duties to Merrill's shareholders. The Defendants therefore participated in a continuing course of corporate misconduct that included the following:

(i)     Director Defendants were involved in reviewing and/or disseminating the materially false and misleading statements and information contained in the Company's SEC filings, press releases, and other public documents, were aware or recklessly disregarded that materially false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws. Each Director Defendant was provided with copies of the documents alleged herein to be misleading prior to their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each Defendant is responsible for the accuracy of the public reports and releases detailed

25

herein, and is therefore primarily liable for the materially false representations contained therein. Because the Defendants are liable for filing incorrect statements with the SEC and are thereby liable for violating the federal securities laws, demand would be futile.

(ii) The Director Defendants Reese, Rossotti, Prueher and Jonas currently comprise the Audit Committee and individually and collectively failed in their duties of ensuring that the Company file true and complete financial statements with the SEC and are thereby liable for violations of the federal securities laws. An informal inquiry has been initiated by the SEC in order to determine whether the Company has violated the federal securities laws. Because Merrill's financial statements described herein contained material misstatements and omissions about the Company's exposure to risky CDOs, the Audit Committee failed to perform its duties, thereby exposing any and all of the Director Defendants to liability for their breach of fiduciary duties. As well, the Audit Committee shares some responsibility for overseeing risk policies and, therefore, Director Defendants Reese, Rossotti, Prueher and Jonas are liable for not ensuring that the employees of the Company did not overexpose the company to damaging risk. By not implementing proper risk procedures and by failing to comply with the risk procedures in place, Defendants Reese, Rossotti, Prueher and Jonas did not exercise reasonable due care and allowed the Company to be exposed to $41 billion in CDOS and enabled a write down of over $7.9 billion in losses in the third quarter. Accordingly, the Director Defendants on the Audit Committee cannot impartially act on a demand;

(iii) The Director Defendants Reese, Rossotti, Finnegan and Cribiore currently comprise the Finance Committee and individually and collectively failed in their duties of ensuring that the Company competently manage its credit risk exposure. According to

the Finance Committee's charter that was in effect throughout the relevant time period, the Finance Committee is primarily responsible "for credit and market risk management." By allowing the Company to obtain a $41 billion position in CDOs and by allowing the Company to suffer $7.9 billion in losses as a direct result of their gross negligence and failure to properly manage risk, Director Defendants Reese, Rossotti, Finnegan and Cribiore abdicated their fiduciary duties of due care and failed to monitor the Company's risk properly. As well, the Director Defendants mentioned above individually and collectively failed in their duties of ensuring that the Company file true and complete financial statements with the SEC and are thereby liable for violations of the federal securities laws. An informal inquiry has been initiated by the SEC in order to determine whether the Company has violated the federal securities laws. Because Merrill's financial statements described herein contained material misstatements and omissions about the Company's exposure to risky CDOs, the Finance Committee failed to perform its duties, therefore, demand would be futile;

(iv)      Director Defendants Cribiore, Colbert, Codina, Finnegan and Peters currently comprise the Management Development and Compensation Committee of the Board. The Director Defendants approved and authorized Defendant O'Neal retirement and thereby enabled him to receive an undeserving $161.5 million resignation package. This waste of corporate assets was perpetrated by the Director Defendants, and exposed them to liability as those monies should have been distributed to Merrill's shareholders and were intentionally misappropriated; and

(v) Defendant O'Neal selected five sixths of the current Board. As such, the Director Defendants feel an obligation of indebtedness to management, and therefore will not bring this lawsuit on behalf of the Company;

c. The Director Defendants are accused of conduct that is not subject to business judgment protection or subject to ratification.

d. The wrongful actions or inactions complained herein by the Director Defendants amounted to breaches of their fiduciary duties of good faith, disclosure, due care and loyalty to Merrill and its shareholders, and the abdication of their responsibilities give rise to liability to the Company.

e. The Director Defendants failed to put into place adequate internal controls and adequate means of supervision to stop the wrongful conduct alleged herein despite the fact that the Board knew or should have known about such wrongful business practices.

74. These acts, and the acts alleged in this action, demonstrate a pattern of misconduct. A pattern of gross misconduct is not conduct taken in a good faith exercise of business judgment.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

Breach of Fiduciary Duties Against All Defendants

75. Plaintiff incorporates by reference and realleges each and every allegation set forth herein.

76. Each of Defendants owed and owes fiduciary duties to Merrill and its shareholders. By reason of their fiduciary relationships, Defendants all owed Merrill the highest obligation of good faith, fair dealing, loyalty and due care and diligence in the management of

the affairs of the Company. Moreover, Defendants owed and owe the duty of full and candid disclosure of all material facts.

77. Defendants have been responsible for the gross and reckless management of Merrill and ignored their fiduciary responsibilities by:

    (i)    allowing the Company to amass an uncontrolled underwriting and position in CDOs that were mainly based on risky collateral in the form of sub-prime mortgages. The Company was forced to write down $7.9 billion in losses due to the breaches of fiduciary duties by the Director Defendants;

    (ii)    actively or indirectly causing the filing of false public statements that contained material misstatements and omissions regarding the financial health of the Company; and

    (iii)    wasting corporate assets by rewarding Defendant O'Neal with an $161.5 million resignation package.

78. All Defendants engaged in the above conduct in intentional breach of their fiduciary duties to the Company.

79. Defendants conspired to abuse, and did abuse, their positions of control and oversight in Merrill.

80. Plaintiff and Merrill have been injured by reason of Defendants' disregard to their important fiduciary duties to the Company. Plaintiff as a shareholder and representative of the company seeks damages and other relief for the Company.

81. Plaintiff on behalf of Merrill has no adequate remedy at law.

## SECOND CAUSE OF ACTION

### Abuse of Control Against All Defendants

82. Plaintiff incorporates by reference and realleges each and every allegation set forth herein.

83. Defendants' misconduct alleged herein constituted a breach of their fiduciary duties because they abused their ability to control and influence on Merrill, for which they are legally responsible.

84. As a direct and proximate result of Defendants' abuse of control, Merrill has sustained significant damages.

85. As a result of the misconduct alleged herein, Defendants are liable to the Company.

86. Plaintiff on behalf of Merrill has no adequate remedy at law.

## THIRD CAUSE OF ACTION

### Gross Mismanagement Against All Defendants

87. Plaintiff incorporates by reference and realleges each and every allegation set forth herein.

88. By their actions alleged herein, Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of Merrill in a manner consistent with the operations of a publicly held corporation.

89. As a direct and proximate result of Defendants' gross mismanagement and breaches of duty alleged herein, Merrill has sustained significant damages.

30

90. As a result of the misconduct and breaches of duty alleged herein, Defendants are liable to the Company.

91. Plaintiff on behalf of Merrill has no adequate remedy at law.

## FOURTH CAUSE OF ACTION

### Waste Of Corporate Assets Against All Defendants

92. Plaintiff incorporates by reference and realleges each and every allegation set forth herein.

93. As a result of the improper conduct described herein, and by failing to properly consider the interests of the Company and its public shareholders by failing to conduct proper supervision, Defendants have caused Merrill to waste valuable corporate assets by: awarding excessive compensation to senior executives, and by incurring potentially million of dollars of legal liability and legal costs to defend Defendants' unlawful actions.

94. Plaintiff on behalf of Merrill has no adequate remedy at law.

## FIFTH CAUSE OF ACTION

### Quasi Contract/ Unjust Enrichment Against All Defendants

95. Plaintiff incorporates by reference and realleges each and every allegation set forth herein.

96. By their wrongful acts and omissions, Defendants were unjustly enriched at the expense of, and to the detriment of, Merrill.

97. Plaintiff, as a shareholder and representative of Merrill, seeks restitution from Defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by Defendants, and each of them, from their wrongful conduct and fiduciary breaches.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment as follows:

A. Against Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of Defendants' breaches of fiduciary duties, waste of corporate assets and unjust enrichment;

B. Directing Merrill to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Merrill and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote on Corporate Governance Policies concerning compliance with all applicable IRS regulations and federal tax laws;

C. Extraordinary equitable and/or injunctive relief as permitted by law, equity and state statutory provisions sued hereunder, including attaching, impounding and imposing a constructive trust on or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of Merrill has an effective remedy;

D. Awarding to Merrill restitution from Defendants, and each of them, including ordering disgorgement of all profits, benefits and other compensation obtained by Defendants;

E. Awarding Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

F. Granting such other and further relief as the Court deems just and proper.

## DEMAND FOR A TRIAL BY JURY

Plaintiff demands a trial by jury on all issues so triable as a matter of right.

## RULE 4:5-1 CERTIFICATION

To the best of my knowledge, the matter in controversy is not the subject of any other action or arbitration proceeding, now or contemplated, and that no parties should be joined in this action pursuant to R. 4:5-1.

Dated: December 17, 2007

By: _____

LAW OFFICES OF JAMES V.
BASHIAN, P.C..
James V. Bashian, Esq. (JB-6331)
271 Route 46 West, Suite F207
Fairfield, New Jersey 07004
Tel: (973) 227-6330
Fax: (973) 808-8665

Paul O. Paradis, Esq.
Gina M. Tufaro, Esq.
James Smith, Esq.
**HORWITZ, HORWITZ &
PARADIS, Attorneys at Law**
28 West 44th Street, 16th Floor
New York, NY 10036
Phone: (212) 404-2200
Fax: (212) 404-2226

Attorneys For Derivative Plaintiff

33

## VERIFICATION

I, David Eidman, hereby state under penalty of perjury under the laws of the United States that:

1.    I am the named plaintiff in this action.

2.    I verify that I have reviewed the attached Verified Amended Derivative Complaint (the "Amended Complaint") and authorized my counsel to file the Amended Complaint.

3.    To the best of my knowledge, information and belief, the facts set forth in the Amended Complaint are true and correct.

Sworn to under penalty of perjury this 17th day of December, 2007.

_____
David Eidman

_____
James Bashian, Attorney Admitted to
Practice in the State of New Jersey

<u>**APPENDIX XII. SUMMONS AND CIVIL CASE INFORMATION STATEMENT (CIS)**</u>

### APPENDIX XII-A. SUMMONS

Attorney(s):  LAW OFFICES OF JAMES V. BASHIAN, P.C.
Office Address & Tel. No.:  271 Route 46 West, Suite F207, Fairfield, NJ 07004 (973) 227-6330
Attorney(s) for Plaintiff(s)  James V. Bashian, Esq. (JB-6331)

|  |  |
|---|---|
| David Eidman, Derivatively On Behalf of<br>MERRILL LYNCH & CO., INC.,<br><u>      Plaintiff(s)</u> | SUPERIOR COURT OF NEW JERSEY<br>BERGEN   COUNTY<br>LAW   DIVISION |
| vs. | Docket No.  L-8872-07 |
| ERNEST STANLEY O'NEAL, CAROL T.<br><u>CHRIST, ARMANDO CODINA, ET AL,</u><br>Defendant(s) | CIVIL ACTION<br><br>SUMMONS |

From The State of New Jersey To The Defendant(s) Named Above:

    The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey.  The complaint attached to this summons states the basis for this lawsuit.  If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it.  (The address of each deputy clerk of the Superior Court is provided.)  If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971.  A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed.  You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above.  A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $135.00 and completed Case Information Statement) if you want the court to hear your defense.

    If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit.  If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

    If you cannot afford an attorney, you may call the Legal Services office in the county where you live.  A list of these offices is provided.  If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services.  A list of these numbers is also provided.

<div style="text-align:right">

           <u>                      </u>
Theodore J. Fetter
Acting Clerk of the Superior Court

</div>

DATED:  12/17/2007

Name of Defendant to Be Served:  ERNEST STANLEY O'NEAL

Address of Defendant to Be Served: 211 W 56TH ST APT 18K
                                      NEW YORK, NY 10019-4321

## APPENDIX XII. SUMMONS AND CIVIL CASE INFORMATION STATEMENT (CIS)

### APPENDIX XII-A. SUMMONS

Attorney(s):  LAW OFFICES OF JAMES V. BASHIAN, P.C.
Office Address & Tel. No.:  271 Route 46 West, Suite F207, Fairfield, NJ 07004 (973) 227-6330
Attorney(s) for Plaintiff(s)  James V. Bashian, Esq. (JB-6331)

|  |  |
|---|---|
| David Eidman, Derivatively On Behalf of<br>MERRILL LYNCH & CO., INC.,<br>Plaintiff(s)<br><br>vs.<br><br>ERNEST STANLEY O'NEAL, CAROL T.<br>CHRIST, ARMANDO CODINA, ET AL.<br>Defendant(s) | SUPERIOR COURT OF NEW JERSEY<br>BERGEN COUNTY<br>LAW DIVISION<br><br>Docket No.  L-8872-07<br><br>CIVIL ACTION<br><br>SUMMONS |

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey.  The complaint attached to this summons states the basis for this lawsuit.  If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it.  (The address of each deputy clerk of the Superior Court is provided.)  If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971.  A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed.  You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $135.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit.  If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live.  A list of these offices is provided.  If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services.  A list of these numbers is also provided.

_____
Theodore J. Fetter
Acting Clerk of the Superior Court

DATED:  12/17/2007

Name of Defendant to Be Served:  CAROL T. CHRIST

Address of Defendant to Be Served: 8 PARADISE RD
NORTHAMPTON, MA 01060-2907

**APPENDIX XII. SUMMONS AND CIVIL CASE INFORMATION STATEMENT (CIS)**

**APPENDIX XII-A. SUMMONS**

Attorney(s): LAW OFFICES OF JAMES V. BASHIAN, P.C.
Office Address & Tel. No.: 271 Route 46 West, Suite F207, Fairfield, NJ 07004 (973) 227-6330
Attorney(s) for Plaintiff(s) James V. Bashian, Esq. (JB-6331)

|  |  |
|---|---|
| David Eidman, Derivatively On Behalf of MERRILL LYNCH & CO., INC.,<br>Plaintiff(s)<br><br>vs.<br><br>ERNEST STANLEY O'NEAL, CAROL T. CHRIST, ARMANDO CODINA, ET AL.,<br>Defendant(s) | SUPERIOR COURT OF NEW JERSEY<br>BERGEN COUNTY<br>LAW DIVISION<br><br>Docket No. L-8872-07<br><br>CIVIL ACTION<br><br>SUMMONS |

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is provided.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $135.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live. A list of these offices is provided. If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

Theodore J. Fetter
Acting Clerk of the Superior Court

DATED: 12/17/2007

Name of Defendant to Be Served: ARMANDO M. CODINA

Address of Defendant to Be Served: 50 CASUARINA CONCOURSE
CORAL GABLES, FL 33143-6510

**APPENDIX XII. SUMMONS AND CIVIL CASE INFORMATION STATEMENT (CIS)**

### APPENDIX XII-A. SUMMONS

Attorney(s): LAW OFFICES OF JAMES V. BASHIAN, P.C.
Office Address & Tel. No.: 271 Route 46 West, Suite F207, Fairfield, NJ 07004 (973) 227-6330
Attorney(s) for Plaintiff(s)   James V. Bashian, Esq. (JB-6331)

|  |  |
|---|---|
| David Eidman, Derivatively On Behalf of MERRILL LYNCH & CO., INC., | SUPERIOR COURT OF NEW JERSEY<br>BERGEN         COUNTY<br>LAW            DIVISION |
| Plaintiff(s) | Docket No. L-8872-07 |
| vs. | CIVIL ACTION |
| ERNEST STANLEY O'NEAL, CAROL T. CHRIST, ARMANDO CODINA, ET AL. | |
| Defendant(s) | SUMMONS |

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is provided.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $135.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live. A list of these offices is provided. If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

_____
Theodore J. Fetter
Acting Clerk of the Superior Court

DATED:  12/17/2007

Name of Defendant to Be Served:  VIRGIS W. COLBERT

Address of Defendant to Be Served: 706 E EASTWYN BAY DR 104N
MEQUON, WI 53092-6401

## **APPENDIX XII. SUMMONS AND CIVIL CASE INFORMATION STATEMENT (CIS)**

### **APPENDIX XII-A. SUMMONS**

Attorney(s): LAW OFFICES OF JAMES V. BASHIAN, P.C.
Office Address & Tel. No.: 271 Route 46 West, Suite F207, Fairfield, NJ 07004 (973) 227-6330
Attorney(s) for Plaintiff(s)  James V. Bashian, Esq. (JB-6331)

|  |  |
|---|---|
| David Eidman, Derivatively On Behalf of MERRILL LYNCH & CO., INC., <br> ———————————————————— <br> Plaintiff(s) <br><br> vs. <br><br> ERNEST STANLEY O'NEAL, CAROL T. CHRIST, ARMANDO CODINA, ET AL. <br> ———————————————— <br> Defendant(s) | SUPERIOR COURT OF NEW JERSEY <br> BERGEN COUNTY <br> LAW DIVISION <br><br> Docket No. L-8872-07 <br><br> CIVIL ACTION <br><br> SUMMONS |

From The State of New Jersey To The Defendant(s) Named Above:

   The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is provided.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $135.00 and completed Case Information Statement) if you want the court to hear your defense.

   If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

   If you cannot afford an attorney, you may call the Legal Services office in the county where you live. A list of these offices is provided. If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

———————————————————————
Theodore J. Fetter
Acting Clerk of the Superior Court

DATED: 12/17/2007

Name of Defendant to Be Served: ALBERTO CRIBIORE

Address of Defendant to Be Served: 17 SUTTON PL
                                                            NEW YORK, NY 10022-2406

**APPENDIX XII. SUMMONS AND CIVIL CASE INFORMATION STATEMENT (CIS)**

### APPENDIX XII-A.  SUMMONS

Attorney(s):  LAW OFFICES OF JAMES V. BASHIAN, P.C.
Office Address & Tel. No.:  271 Route 46 West, Suite F207, Fairfield, NJ 07004 (973) 227-6330
Attorney(s) for Plaintiff(s)   James V. Bashian, Esq. (JB-6331)

David Eidman, Derivatively On Behalf of
MERRILL LYNCH & CO., INC.,
<div align="center">Plaintiff(s)</div>

vs.

ERNEST STANLEY O'NEAL, CAROL T.
CHRIST, ARMANDO CODINA, ET AL.
<div>Defendant(s)</div>

SUPERIOR COURT OF NEW JERSEY
BERGEN        COUNTY
LAW            DIVISION

Docket No.  L-8872-07

CIVIL ACTION

SUMMONS

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey.  The complaint attached to this summons states the basis for this lawsuit.  If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it.  (The address of each deputy clerk of the Superior Court is provided.)  If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971.  A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed.  You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $135.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit.  If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live.  A list of these offices is provided.  If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services.  A list of these numbers is also provided.

Theodore J. Fetter
Acting Clerk of the Superior Court

DATED:  12/17/2007

Name of Defendant to Be Served:  JOHN D. FINNEGAN

Address of Defendant to Be Served: 563 MILLER CT
WYCKOFF, NJ 07481-1147

## APPENDIX XII. SUMMONS AND CIVIL CASE INFORMATION STATEMENT (CIS)

### APPENDIX XII-A. SUMMONS

Attorney(s):  LAW OFFICES OF JAMES V. BASHIAN, P.C.
Office Address & Tel. No.:  271 Route 46 West, Suite F207, Fairfield, NJ 07004 (973) 227-6330
Attorney(s) for Plaintiff(s)  James V. Bashian, Esq. (JB-6331)

David Eidman, Derivatively On Behalf of
MERRILL LYNCH & CO., INC.,
_____
Plaintiff(s)

vs.

ERNEST STANLEY O'NEAL, CAROL T.
CHRIST, ARMANDO CODINA, ET AL.
_____
Defendant(s)

SUPERIOR COURT OF NEW JERSEY
BERGEN      COUNTY
LAW        DIVISION

Docket No. L-8872-07

CIVIL ACTION

SUMMONS

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey.  The complaint attached to this summons states the basis for this lawsuit.  If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it.  (The address of each deputy clerk of the Superior Court is provided.)  If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971.  A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed.  You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $135.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit.  If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live.  A list of these offices is provided.  If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services.  A list of these numbers is also provided.

_____
Theodore J. Fetter
Acting Clerk of the Superior Court

DATED:  12/17/2007

Name of Defendant to Be Served:  JUDITH MAYHEW JONAS

Address of Defendant to Be Served:  25 VICTORIA AVE.
LONDON
UNITED KINGDOM

## APPENDIX XII. SUMMONS AND CIVIL CASE INFORMATION STATEMENT (CIS)

### APPENDIX XII-A. SUMMONS

Attorney(s): LAW OFFICES OF JAMES V. BASHIAN, P.C.
Office Address & Tel. No.: 271 Route 46 West, Suite F207, Fairfield, NJ 07004 (973) 227-6330
Attorney(s) for Plaintiff(s) James V. Bashian, Esq. (JB-6331)

|  |  |
|---|---|
| David Eidman, Derivatively On Behalf of <br> MERRILL LYNCH & CO., INC., <br> _____ Plaintiff(s) <br><br> vs. <br><br> ERNEST STANLEY O'NEAL, CAROL T. <br> CHRIST, ARMANDO CODINA, ET AL., <br> Defendant(s) | SUPERIOR COURT OF NEW JERSEY <br> BERGEN COUNTY <br> LAW DIVISION <br><br> Docket No.  L-8872-07 <br><br> CIVIL ACTION <br><br> SUMMONS |

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey.  The complaint attached to this summons states the basis for this lawsuit.  If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it.  (The address of each deputy clerk of the Superior Court is provided.)  If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971.  A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed.  You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above.  A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $135.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit.  If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live.  A list of these offices is provided.  If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services.  A list of these numbers is also provided.

_____
Theodore J. Fetter
Acting Clerk of the Superior Court

DATED:  12/17/2007

Name of Defendant to Be Served:  AULANA L. PETERS

Address of Defendant to Be Served: 1337 N KENTER AVE
LOS ANGELES, CA 90049-1319

## APPENDIX XII. SUMMONS AND CIVIL CASE INFORMATION STATEMENT (CIS)

### APPENDIX XII-A. SUMMONS

Attorney(s): LAW OFFICES OF JAMES V. BASHIAN, P.C.

Office Address & Tel. No.: 271 Route 46 West, Suite F207, Fairfield, NJ 07004 (973) 227-6330

Attorney(s) for Plaintiff(s)  James V. Bashian, Esq. (JB-6331)

|  |  |
|---|---|
| David Eidman, Derivatively On Behalf of MERRILL LYNCH & CO., INC., <br> _____ <br> Plaintiff(s) <br><br> vs. <br><br> ERNEST STANLEY O'NEAL, CAROL T. CHRIST, ARMANDO CODINA, ET AL. <br> _____ <br> Defendant(s) | SUPERIOR COURT OF NEW JERSEY <br> BERGEN        COUNTY <br> LAW          DIVISION <br><br> Docket No.  L-8872-07 <br><br> CIVIL ACTION <br><br> SUMMONS |

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is provided.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $135.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live. A list of these offices is provided. If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

_____

Theodore J. Fetter

Acting Clerk of the Superior Court

DATED:  12/17/2007

Name of Defendant to Be Served:  JOSEPH W. PRUEHER

Address of Defendant to Be Served: 126 PINEWOOD RD

VIRGINIA BEACH, VA 23451-3923

# APPENDIX XII. SUMMONS AND CIVIL CASE INFORMATION STATEMENT (CIS)

## APPENDIX XII-A. SUMMONS

Attorney(s): LAW OFFICES OF JAMES V. BASHIAN, P.C.
Office Address & Tel. No.: 271 Route 46 West, Suite F207, Fairfield, NJ 07004 (973) 227-6330
Attorney(s) for Plaintiff(s) James V. Bashian, Esq. (JB-6331)

|  |  |
|---|---|
| David Eidman, Derivatively On Behalf of MERRILL LYNCH & CO., INC., <br> _Plaintiff(s)_ <br><br> vs. <br><br> ERNEST STANLEY O'NEAL, CAROL T. CHRIST, ARMANDO CODINA, ET AL. <br> _Defendant(s)_ | SUPERIOR COURT OF NEW JERSEY <br> BERGEN COUNTY <br> LAW DIVISION <br><br> Docket No. L-8872-07 <br><br> CIVIL ACTION <br><br> SUMMONS |

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is provided.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $135.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live. A list of these offices is provided. If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

Theodore J. Fetter
Acting Clerk of the Superior Court

DATED: 12/17/2007

Name of Defendant to Be Served: ANN N. REESE

Address of Defendant to Be Served: 168 KIRBY LN # A
RYE, NY 10580-4320

# APPENDIX XII. SUMMONS AND CIVIL CASE INFORMATION STATEMENT (CIS)

## APPENDIX XII-A.  SUMMONS

Attorney(s):  LAW OFFICES OF JAMES V. BASHIAN, P.C.
Office Address & Tel. No.:  271 Route 46 West, Suite F207, Fairfield, NJ 07004 (973) 227-6330
Attorney(s) for Plaintiff(s)   James V. Bashian, Esq. (JB-6331)

|  |  |
|---|---|
| David Eidman, Derivatively On Behalf of<br>MERRILL LYNCH & CO., INC.,<br><div style="text-align:center">Plaintiff(s)</div> | SUPERIOR COURT OF NEW JERSEY<br>BERGEN COUNTY<br>LAW DIVISION |
| vs. | Docket No.  L-8872-07 |
| ERNEST STANLEY O'NEAL, CAROL T.<br>CHRIST, ARMANDO CODINA, ET AL.,<br><div style="text-align:center">Defendant(s)</div> | CIVIL ACTION<br><br>SUMMONS |

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey.  The complaint attached to this summons states the basis for this lawsuit.  If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it.  (The address of each deputy clerk of the Superior Court is provided.)  If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971.  A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed.  You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above.  A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $135.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit.  If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live.  A list of these offices is provided.  If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services.  A list of these numbers is also provided.

<div style="text-align:right">Theodore J. Fetter<br>Acting Clerk of the Superior Court</div>

DATED:  12/17/2007

Name of Defendant to Be Served:  CHARLES O. ROSSOTTI

Address of Defendant to Be Served: 3314 N ST NW
<div style="text-align:center">WASHINGTON, DC 20007-2807</div>



# CIVIL CASE INFORMATION STATEMENT
## (CIS)

Use for initial Law Division
Civil Part pleadings (not motions) under Rule 4:5-1
**Pleading will be rejected for filing, under Rule 1:5-6(c),
if information above the black bar is not completed or
if attorney's signature is not affixed.**

| FOR USE BY CLERK'S OFFICE ONLY |
| --- |
| PAYMENT TYPE: CK   CG   CA |
| CHG/CK NO. |
| AMOUNT: |
| OVERPAYMENT: |
| BATCH NUMBER: |

| ATTORNEY/PRO SE NAME | TELEPHONE NUMBER | COUNTY OF VENUE |
| --- | --- | --- |
| James V. Bashian | (973) 227-6330 | Bergen |

**FIRM NAME (If applicable)**
LAW OFFICES OF JAMES V. BASHIAN, P.C.

DOCKET NUMBER (When available)
*L-8872-07*

**OFFICE ADDRESS**
271 Route 46 West, F207, Fairfield Commons
Fairfield, NJ 07704

DOCUMENT TYPE
COMPLAINT

JURY DEMAND  ☒ YES  ☐ NO

| NAME OF PARTY (e.g., John Doe, Plaintiff) | CAPTION |
| --- | --- |
| DAVID EIDMAN | David Eidman, Derivatively on behalf of Merrill Lynch & Co. Inc.,  v. Ernest Stanley O'Neal, Carol T. Christ, Armando M. Codina, Virgis W. Colbert, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas,  et al. |

| CASE TYPE NUMBER (See reverse side for listing) | IS THIS A PROFESSIONAL MALPRACTICE CASE? ☐ YES  ☒ NO |
| --- | --- |
| 508 | IF YOU HAVE CHECKED "YES," SEE N.J.S.A. 2A:53A-27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |

| RELATED CASES PENDING? ☐ YES  ☒ NO | IF YES, LIST DOCKET NUMBERS |
| --- | --- |

| DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of same transaction or occurrence)? ☐ YES  ☒ NO | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY, IF KNOWN |
| --- | --- |
| | ☐ NONE  ☒ UNKNOWN |

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP? ☐ YES  ☒ NO | IF YES, IS THAT RELATIONSHIP | ☐ EMPLOYER-EMPLOYEE  ☐ FRIEND/NEIGHBOR  ☐ OTHER (explain) ☐ FAMILIAL  ☐ BUSINESS |
| --- | --- | --- |

DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?   ☐ YES  ☒ NO

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION

Shareholder Derivative Action

| DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS? ☐ YES  ☒ NO | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION. |
| --- | --- |
| WILL AN INTERPRETER BE NEEDED?  ☐ YES  ☒ NO | IF YES, FOR WHAT LANGUAGE? |

ATTORNEY'S SIGNATURE:

revised effective 9/15/97, CN 10517 English

page 1 of 2



# CIVIL CASE INFORMATION STATEMENT
## (CIS)
Use for initial pleadings (not motions) under *Rule* 4:5-1

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

**Track I — 150 days' discovery**

| | |
|---|---|
| 151 | NAME CHANGE |
| 175 | FORFEITURE |
| 302 | TENANCY |
| 399 | REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction) |
| 502 | BOOK ACCOUNT (debt collection matters only) |
| 505 | OTHER INSURANCE CLAIM (INCLUDING DECLARATORY JUDGMENT ACTIONS) |
| 506 | PIP COVERAGE |
| 510 | UM or UIM CLAIM |
| 511 | ACTION ON NEGOTIABLE INSTRUMENT |
| 512 | LEMON LAW |
| 801 | SUMMARY ACTION |
| 802 | OPEN PUBLIC RECORDS ACT (SUMMARY ACTION) |
| 999 | OTHER (Briefly describe nature of action) |

**Track II — 300 days' discovery**

| | |
|---|---|
| 305 | CONSTRUCTION |
| 509 | EMPLOYMENT (other than CEPA or LAD) |
| 599 | CONTRACT/COMMERCIAL TRANSACTION |
| 603 | AUTO NEGLIGENCE – PERSONAL INJURY |
| 605 | PERSONAL INJURY |
| 610 | AUTO NEGLIGENCE – PROPERTY DAMAGE |
| 699 | TORT – OTHER |

**Track III — 450 days' discovery**

| | |
|---|---|
| 005 | CIVIL RIGHTS |
| 301 | CONDEMNATION |
| 602 | ASSAULT AND BATTERY |
| 604 | MEDICAL MALPRACTICE |
| 606 | PRODUCT LIABILITY |
| 607 | PROFESSIONAL MALPRACTICE |
| 608 | TOXIC TORT |
| 609 | DEFAMATION |
| 616 | WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES |
| 617 | INVERSE CONDEMNATION |
| 618 | LAW AGAINST DISCRIMINATION (LAD) CASES |

**Track IV — Active Case Management by Individual Judge / 450 days' discovery**

| | |
|---|---|
| 156 | ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION |
| 303 | MT. LAUREL |
| 508 | COMPLEX COMMERCIAL |
| 513 | COMPLEX CONSTRUCTION |
| 514 | INSURANCE FRAUD |
| 701 | ACTIONS IN LIEU OF PREROGATIVE WRITS |

**Mass Tort (Track IV)**

| | | | | |
|---|---|---|---|---|
| 248 | TOBACCO | | 274 | RISPERDAL/SEROQUEL/ZYPREXA |
| 248 | CIBA GEIGY | | 275 | ORTHO EVRA |
| 264 | FPA | | 276 | DEPO-PROVERA |
| 266 | HORMONE REPLACEMENT THERAPY (HRT) | | 601 | ASBESTOS |
| 271 | ACCUTANE | | 619 | VIOXX |
| 272 | BEXTRA/CELEBREX | | | |

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1, in the space under "Case Characteristics."

Please check off each applicable category:

☐ Verbal Threshold          ☐ Putative Class Action          ☐ Title 59

BERGEN COUNTY COURTHOUSE
SUPERIOR COURT LAW DIV
BERGEN COUNTY JUSTICE CTR RM 415
HACKENSACK        NJ 07601-7680

COURT TELEPHONE NO. (201) 527-2600
COURT HOURS

TRACK ASSIGNMENT NOTICE

DATE:    DECEMBER 05, 2007
RE:      MERRILL LYNCH & CO INC VS O NEAL
DOCKET: BER L -008872 07

THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 4.

DISCOVERY IS PRESUMPTIVELY 450 DAYS BUT MAY BE ENLARGED OR SHORTENED BY THE
JUDGE AND RUNS FROM THE FIRST ANSWER OR 90 DAYS FROM SERVICE ON THE FIRST
DEFENDANT, WHICHEVER COMES FIRST.

THE MANAGING JUDGE ASSIGNED IS:  HON JONATHAN N. HARRIS

IF YOU HAVE ANY QUESTIONS, CONTACT TEAM      003
AT:  (201) 527-2600.

IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH R.4:5A-2.

ATTENTION:
                         ATT: JAMES V. BASHIAN
                         JAMES V. BASHIAN
                         FAIRFIELD COMMONS
                         271 ROUTE 46 WEST   SUITE F 207
                         FAIRFIELD        NJ 07004

JDGES

Exhibit B

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**

FOUR TIMES SQUARE

NEW YORK 10036-6522

―――

TEL: (212) 735-3000

FAX: (212) 735-2000

www.skadden.com

DIRECT DIAL
(212) 735-2628

DIRECT FAX
(917) 777-2628

EMAIL ADDRESS
JKASNER@SKADDEN.COM

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
―――
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

RECEIVED
DEC 1 3 2007
CHAMBERS OF
LEONARD B. SAND

December 12, 2007

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12-13-07

BY HAND

Hon. Leonard B. Sand
United States District Judge
  for the Southern District of New York
United States Courthouse
500 Pearl Street, Room 1650
New York, New York 10007

MEMO ENDORSED

Re:    *Life Enrichment Foundation v. Merrill Lynch & Co.,*
       *Inc., et al.,* 07 CV 9633 (LBS) and related actions

Dear Judge Sand:

We represent Merrill Lynch & Co., Inc. ("Merrill Lynch") in connection with the actions identified on the enclosed chart related to Merrill Lynch's recent announcements concerning its exposure to the collateralized debt obligation and subprime mortgage markets (the "Related Actions"). It is our understanding that the Court is accepting assignment of the Related Actions. Pending the implementation of a case management plan or plans organizing the Related Actions, Merrill Lynch respectfully requests that all defendants' time to move, answer or otherwise respond to the complaints be adjourned until further order of Court.

Respectfully submitted,

Jay B. Kasner

cc:    Counsel of Record
       (via facsimile or e-mail)

12/13/07

**MEMO ENDORSED**

Exhibit C

## CONSENT FOR REMOVAL

Defendant Ernest Stanely O'Neal consents to the removal of <u>David Eidman v.</u>
<u>Ernest Stanley O'Neal, et al.</u>, Docket No. L-8872-07, currently pending in the Superior
Court of New Jersey, Law Division, Bergen County, New Jersey to the United States
District Court for the District of New Jersey.

Dated: January 7, 2008

Michael J. Chepiga
Paul C. Curnin
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017-3954
T: (212) 455-2000

Attorneys for Defendant Ernest Stanley
O'Neal

## CONSENT FOR REMOVAL

Defendants Carol T. Christ, Armando M. Codina, Virgis W. Colbert, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, Aulana L. Peters, Joseph W. Prueher, Ann N. Reese and Charles O. Rossotti consent to the removal of <u>David Eidman v. Ernest Stanley O'Neal, et al.</u>, Docket No. L-8872-07, currently pending in the Superior Court of New Jersey, Law Division, Bergen County, New Jersey to the United States District Court for the District of New Jersey.

Dated: January 7, 2008

*Jason Halper / DJB w/permission*

Dennis J. Block
Jason Halper
CADWALADER, WICKERSHAM
 & TAFT LLP
One World Financial Center
New York, NY 10281
T: (212) 504-6000

Attorneys for Defendants Carol T. Christ,
Armando M. Codina, Virgis W. Colbert,
Alberto Cribiore, John D. Finnegan, Judith
Mayhew Jonas, Aulana L. Peters, Joseph W.
Prueher, Ann N. Reese and Charles O.
Rossotti

Michael R. Griffinger
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102-5310
mgriffinger@gibbonslaw.com
Tel: 973-596-4500
Fax: 973-639-6294

Jay B. Kasner
Scott D. Musoff
**SKADDEN, ARPS, SLATE,**
  **MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
Tel: 212-735-3000
Fax: 212-735-2000

*Co-Counsel for Nominal Defendant*
*Merrill Lynch & Co., Inc.*

------------------------------------------------- x

DAVID EIDMAN, Derivatively On Behalf of
MERRILL LYNCH & CO., INC.,

        Plaintiff,

        vs.

ERNEST STANLEY O'NEAL, CAROL T.
CHRIST, ARMANDO M. CODINA, VIRGIS W.
COLBERT, ALBERTO CRIBIORE, JOHN D.
FINNEGAN, JUDITH MAYHEW JONAS,
AULANA L. PETERS, JOSEPH W. PRUEHER,
ANN N. REESE and CHARLES O. ROSOTTI,

        Defendants,

        -and-

MERRILL LYNCH & CO., INC.,

        Nominal Defendant.

------------------------------------------------- x

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION: BERGEN COUNTY
DOCKET NO. L-8872-07

CIVIL ACTION

**CERTIFICATE OF SERVICE**

RECEIVED

2008 JAN -9    9:59

CIVIL DIVISION
CASE PROCESSING

#1258465 v1
999999-00104

I, MELISSA C. FULTON, hereby certify that, on this 9th day of January 2008, I caused true and correct copies of Nominal Defendant Merrill Lynch & Co., Inc.'s NOTICE OF FILING NOTICE OF REMOVAL with attachments to be served, *via* Federal Express, Priority Overnight, upon the following counsel:

James V. Bashian, Esq.
LAW OFFICES OF
JAMES V. BASHIAN, P.C.
271 Route 46 West, Suite F207
Fairfield, NJ 07004

*Attorneys for Plaintiffs*

Paul O. Paradis, Esq.
HORWITZ, HORWITZ & PARADIS
28 West 44th Street, 16th Floor
New York, NY 10036

*Attorneys for Plaintiffs*

Michael C. Chepiga
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017-3954

*Attorneys for Defendant Ernest Stanley O'Neal*

Dennis J. Block
CADWALADER, WICKERSHAM &
TAFT LLP
One World Financial Center
New York, NY 10281

*Attorneys for Defendants Carol T. Christ, Armando M. Codina, Virgis W. Colbert, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, Aulana L. Peters, Joseph W. Prueher, Ann N. Reese and Charles O. Rossotti*

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Melissa C. Fulton

Dated: January 9, 2008
Newark, New Jersey

2

Michael R. Griffinger
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102-5310
mgriffinger@gibbonslaw.com
Tel: 973-596-4500
Fax: 973-639-6294

Jay B. Kasner
Scott D. Musoff
**SKADDEN, ARPS, SLATE,**
**  MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
Tel: 212-735-3000
Fax: 212-735-2000

*Co-counsel for Nominal Defendant*
*Merrill Lynch & Co., Inc.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| DAVID EIDMAN, Derivatively on Behalf of MERRILL LYNCH & CO., INC., | : | Civil Action No. 08-126 (SDW) (MCA) |
| Plaintiff, | | |
| vs. | : | **CERTIFICATE OF SERVICE** |
| ERNEST STANLEY O'NEAL, CAROL T. CHRIST, ARMANDO M. CODINA, VIRGIS W. COLBERT, ALBERTO CRIBIORE, JOHN D. FINNEGAN, JUDITH MAYHEW JONAS, AULANA L. PETERS, JOSEPH W. PRUEHER, ANN N. REESE and CHARLES O. ROSOTTI, | : : : | **Document Filed Electronically** |
| Defendants, | | |
| -and- | : | |
| MERRILL LYNCH & CO., INC., | | |
| Nominal Defendant. | : | |
| | : | |
| | : | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

I, **MELISSA C. FULTON**, hereby certify as follows:

1.     I am an associate of the law firm of Gibbons P.C., co-counsel for nominal defendant Merrill Lynch & Co., Inc. ("Merrill Lynch") in the above-captioned action.

2.     On January 11, 2008, I electronically filed and served (i) Merrill Lynch's Notice of Filing Notice of Removal stamped "filed" by the Clerk's Office of the Superior Court of New Jersey, Law Division, Bergen County, (ii) Merrill Lynch's Certificate of Service concerning the preceding document stamped "filed" by the Clerk's Office of the Superior Court of New Jersey, Law Division, Bergen County and (iii) this Certificate of Service; upon the following counsel pursuant to Local Civil Rule 5.2:

| | |
|---|---|
| James V. Bashian, Esq. | Paul O. Paradis, Esq. |
| LAW OFFICES OF | HORWITZ, HORWITZ & PARADIS |
| JAMES V. BASHIAN, P.C. | 28 West 44th Street, 16th Floor |
| 271 Route 46 West, Suite F207 | New York, NY 10036 |
| Fairfield, NJ 07004 | |
| | *Attorneys for Plaintiffs* |
| *Attorneys for Plaintiffs* | |

3.     Also on January 11, 2008, I caused true and correct copies of (i) Merrill Lynch's Notice of Filing Notice of Removal stamped "filed" by the Clerk's Office of the Superior Court of New Jersey, Law Division, Bergen County, (ii) Merrill Lynch's Certificate of Service concerning the preceding document stamped "filed" by the Clerk's Office of the Superior Court of New Jersey, Law Division, Bergen County and (iii) this Certificate of Service; to be served upon the following counsel by regular mail:

2

#1259548 v1
101454-61824

Michael J. Chepiga
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017-3954

Dennis J. Block
CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, NY 10281

*Attorneys for Defendant Ernest Stanley O'Neal*

*Attorneys for Defendants Carol T. Christ, Armando M. Codina, Virgis W. Colbert, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, Aulana L. Peters, Joseph W. Prueher, Ann N. Reese and Charles O. Rossotti*

I hereby certify that the foregoing statements made by me are true.  I am aware that if any

of the foregoing statements made by me are willfully false, I am subject to punishment.

MELISSA C. FULTON

Dated:  January 11, 2008
Newark, New Jersey

3

#1259548 v1
101454-61824

Michael R. Griffinger
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102-5310
mgriffinger@gibbonslaw.com
Tel: 973-596-4500
Fax: 973-639-6294

Jay B. Kasner (*Pro Hac Vice* Application to be Filed)
Scott D. Musoff
**SKADDEN, ARPS, SLATE,**
  **MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
Tel: 212-735-3000
Fax: 212-735-2000

*Co-Counsel for Nominal Defendant*
*Merrill Lynch & Co., Inc.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DAVID EIDMAN, Derivatively on Behalf of
MERRILL LYNCH & CO., INC.,                      :

              Plaintiff,                              :

              vs.                                     :

ERNEST STANLEY O'NEAL, CAROL T.                 :
CHRIST, ARMANDO M. CODINA, VIRGIS W.
COLBERT, ALBERTO CRIBIORE, JOHN D.             :
FINNEGAN, JUDITH MAYHEW JONAS,
AULANA L. PETERS, JOSEPH W. PRUEHER,           :
ANN N. REESE and CHARLES O. ROSOTTI,

              Defendants,                             :

              -and-                                   :

MERRILL LYNCH & CO., INC.,                      :

              Nominal Defendant.                      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**FILED ELECTRONICALLY**

Civil Action No. 08-126 (SDW) (MCA)

Hon. Susan D. Wigenton, U.S.D.J.

Motion Day: February 19, 2008

**NOTICE OF MOTION
TO STAY PROCEEDINGS
PENDING DETERMINATION
OF THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

TO:    James V. Bashian, Esq.
        LAW OFFICES OF JAMES V. BASHIAN, P.C.
        271 Route 46 West, Suite F207
        Fairfield, NJ 07004

        Paul O. Paradis, Esq.
        HORWITZ, HORWITZ & PARADIS
        28 West 44th Street, 16th Floor
        New York, NY 10036

COUNSEL:

**PLEASE TAKE NOTICE** that Nominal Defendant Merrill Lynch & Co., Inc. ("Merrill Lynch"), by and through its undersigned counsel, on its own behalf and for the benefit of all defendants, shall move before the Honorable Susan D. Wigenton, U.S.D.J., on February 19, 2008 at 10:00 a.m., or as soon thereafter as counsel may be heard, at the United States Courthouse for the District of New Jersey, 50 Walnut Street, Newark, New Jersey 07101, for an Order staying all proceedings in the above-captioned matter until ten (10) days after the Judicial Panel on Multidistrict Litigation has taken final action on Defendants' request that the above-captioned case be transferred, pursuant to 28 U.S.C. § 1407, for coordination for pretrial purposes to the United States District Court for the Southern District of New York, where 17 other related federal actions are currently pending.

**PLEASE TAKE FURTHER NOTICE** that Merrill Lynch shall rely upon the accompanying Memorandum in Support of the Motion to Stay Proceedings Pending Determination of the Judicial Panel on Multidistrict Litigation, the January 14, 2008 Declaration of Scott D. Musoff and the exhibits annexed thereto and upon the pleadings and all prior proceedings had herein.

#1260106 v1
101454-61824

**PLEASE TAKE FURTHER NOTICE** that a proposed form of Order is submitted herewith.

**PLEASE TAKE FURTHER NOTICE** that a certificate attesting to the date and manner of service of these moving papers is submitted herewith.

Dated: January 14, 2008
      Newark, New Jersey              GIBBONS P.C.

By: s/ Michael R. Griffinger
     Michael R. Griffinger
     GIBBONS P.C.
     One Gateway Center
     Newark, NJ 07102-5310
     mgriffinger@gibbonslaw.com
     Tel: 973-596-4500
     Fax: 973-639-6294

     *Co-Counsel for Nominal Defendant*
     *Merrill Lynch & Co., Inc.*

Of counsel:

     Jay B. Kasner
     Scott D. Musoff
     SKADDEN, ARPS, SLATE,
      MEAGHER & FLOM LLP
     Four Times Square
     New York, New York 10036
     Tel: 212-735-3000
     Fax: 212-735-2000

     *Co-Counsel for Nominal Defendant*
     *Merrill Lynch & Co., Inc.*

#1260106 v1
101454-61824

Michael R. Griffinger
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102-5310
mgriffinger@gibbonslaw.com
Tel: 973-596-4500
Fax: 973-639-6294

Jay B. Kasner (*Pro Hac Vice* Application to be Filed)
Scott D. Musoff
**SKADDEN, ARPS, SLATE,**
 **MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
Tel: 212-735-3000
Fax: 212-735-2000

*Co-Counsel for Nominal Defendant*
*Merrill Lynch & Co., Inc.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DAVID EIDMAN, Derivatively on Behalf of     :
MERRILL LYNCH & CO., INC.,

            Plaintiff,                :

             vs.                    :

ERNEST STANLEY O'NEAL, CAROL T.      :
CHRIST, ARMANDO M. CODINA, VIRGIS W.
COLBERT, ALBERTO CRIBIORE, JOHN D.    :
FINNEGAN, JUDITH MAYHEW JONAS,
AULANA L. PETERS, JOSEPH W. PRUEHER,   :
ANN N. REESE and CHARLES O. ROSOTTI,

            Defendants,           :

            -and-                :

MERRILL LYNCH & CO., INC.,         :

            Nominal Defendant.   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**FILED ELECTRONICALLY**

Civil Action No. 08-126 (SDW) (MCA)

Hon. Susan D. Wigenton, U.S.D.J.

Motion Day: February 19, 2008

**DECLARATION OF SCOTT D.
MUSOFF IN SUPPORT OF
MERRILL LYNCH & CO., INC.'S
MOTION TO STAY PROCEEDINGS
PENDING DETERMINATION
OF THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

SCOTT D. MUSOFF, pursuant to 28 U.S.C. § 1746, declares under penalties of perjury as follows:

1.     I, Scott D. Musoff, am a member of the law firm of Skadden, Arps, Slate, Meagher & Flom LLP, co-counsel for Merrill Lynch & Co., Inc. ("Merrill Lynch") in the above captioned action. I submit this declaration in support of Merrill Lynch's Motion to Motion to Stay Proceedings Pending Determination of the Judicial Panel on Multidistrict Litigation. I am admitted in the United States District Court for the District of New Jersey and the Southern District of New York in addition to other federal courts.

2.     Annexed hereto as Exhibit A is a true and correct copy of Merrill Lynch's Motion to Transfer filed January 9, 2008 (the "Transfer Motion") with the Judicial Panel on Multidistrict Litigation (the "MDL Panel").

3.     Annexed hereto as Exhibit B is a true and correct copy of Merrill Lynch's Memorandum of Law in Support of its Motion, Pursuant to 28 U.S.C. § 1407, For Centralization and Transfer to the Southern District of New York.

4.     I have been advised by personnel in the office of the clerk of the MDL Panel that the Transfer Motion will be heard by the MDL Panel on its March, 2008 calendar.

    I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 14, 2008, New York, New York

_____
Scott D. Musoff

-2-

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

---

| | |
|---|---|
| IN RE MERRILL LYNCH & CO., INC.<br>SECURITIES, ERISA AND DERIVATIVE<br>LITIGATION | )<br>)<br>)<br>)<br>) |

MDL Docket No. _____

<u>MOTION TO TRANSFER</u>

Merrill Lynch & Co., Inc. ("Merrill Lynch") respectfully moves the Panel for an

Order, pursuant to 28 U.S.C. § 1407, centralizing 20 actions by transferring two related actions

and any tag-along actions to the United States District Court for the Southern District of New

York for consolidation or coordination with the 18 related actions currently pending in that

District.  In support of such transfer, and as set forth in greater detail in the accompanying

Memorandum of Law, Merrill Lynch states the following:

<u>BASIS FOR THIS MOTION</u>

1.      As of January 9, 2008, 20 federal actions have been filed, including 18 in

the United States District Court for the Southern District of New York (the "Southern District

Actions"), alleging (among other things) that Merrill Lynch and various individually named

defendants violated, among other things, federal securities laws and ERISA, in connection with

Merrill Lynch's announcements that its third quarter financial results had been impacted by adverse developments in the credit markets, including relating to collateralized debt obligations ("CDOs") and subprime mortgages. Two such actions were initially commenced in state courts and have since been removed and are pending in the United States District Court for the District of Delaware captioned <u>Diane Blas (Trustee to Hunter Inter Vivos Trust) v. E. Stanley O'Neal, et al.,</u> Case No. 08-15 (D. Del.) and the United States District Court for the District of New Jersey captioned <u>David Eidman v. Ernest Stanley O'Neal, et al.,</u> 08 CV ____ (D.N.J.) (collectively, the "Related Actions").

       2.     This motion seeks the transfer of the Related Actions and any subsequently filed tag-along actions to the United States District Court for the Southern District of New York. The Southern District Actions are either before or, we understand, are in the process of being assigned to the Honorable Leonard B. Sand of that Court. The Related Actions and Southern District Actions are reflected in a schedule provided in accordance with J.P.M.L. Rule 7.2(a)(ii), which is provided as Exhibit A to the Memorandum and is also annexed hereto for the convenience of the Panel.

       3.     Because the Related Actions and the Southern District Actions arise from the same set of alleged facts and because many of the individually named defendants in the Related Actions and the Southern District Actions are common, the Related Actions should be transferred to the Southern District of New York for the reasons listed herein and the reasons set forth in Merrill Lynch's Memorandum of Law in Support of Motion for Transfer. Absent transfer, the parties and courts will face the burden and expense of:

2

      a.      Inconsistent pretrial rulings on substantive matters, including motions to dismiss and/or for summary judgment;

      b.      Needlessly duplicative discovery and discovery disputes if motions to dismiss are not granted; and

      c.      Requiring defendants to litigate the same issues in two different judicial districts on different schedules.

4.      Transfer of the Actions and any tag-along actions to the Southern District of New York would best serve the convenience of the parties and witnesses and promote the just and efficient conduct of the actions. These concerns are particularly acute where the duplicative litigation involves derivative actions – shareholder actions purportedly brought on behalf of and for the benefit of the corporation. Here, the only two federal actions pending outside of the Southern District of New York are two derivative actions which are duplicative of the three derivative actions pending in the Southern District of New York.

5.      New York is the most appropriate venue because, among other things:

      a.      Eighteen actions, including the first-filed action, already are pending in the Southern District of New York as of January 9, 2008;

      b.      Relevant documents necessary for discovery are located in New York; and

      c.      Defendants and their counsel are located in or around New York.

6.      Discovery has not commenced in any of the Related Actions or the Southern District Actions.

WHEREFORE, Merrill Lynch respectfully requests an Order:

(i)      Transferring the Related Actions to the Southern District of New York for coordination or consolidation for pretrial purposes with the Southern District Actions pending there;

(ii)     Transferring any tag-along actions to the Southern District of New York for
         coordination or consolidation for pretrial purposes with the actions pending there;
         and

(iii)    For such other and further relief as the Panel may deem just and proper.

Date:    New York, New York
         January 9, 2008

                                        Respectfully submitted,

                                        _Jay Kasner / ARC/_

                                        Jay B. Kasner
                                        Scott D. Musoff
                                        SKADDEN, ARPS, SLATE,
                                          MEAGHER & FLOM LLP
                                        Four Times Square
                                        New York, New York 10036
                                        (212) 735-3000

                                        Attorneys for Merrill Lynch & Co., Inc.

# EXHIBIT A

| MDL-_____- In re Merrill Lynch & Co., Inc. Securities, ERISA and Derivative Litigation | | | |
|---|---|---|---|
| Case Captions | Court | Civil Action No. | Judge |
| **Plaintiff:** Life Enrichment Foundation, Individually and On Behalf of All Others Similarly Situated<br>**Defendants:** Merrill Lynch & Co., Inc., E. Stanley O'Neal, Ahmass L. Fakahany, Gregory J. Fleming and Jeffrey N. Edwards | S.D. New York | 07 CV 9633 | Hon. Leonard B. Sand |
| **Plaintiff:** Patricia Arthur, Derivatively on Behalf of Merrill Lynch & Co., Inc.<br>**Defendants:** E. Stanley O'Neal, Ahmass L. Fakahany, Gregory J. Fleming, Jeffrey N. Edwards, Carol T. Christ, Armando D. Codina, Virgis W. Colbert, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, Joseph W. Prueher, Ann N. Reese, Charles O. Rossotti<br>**Nominal Defendant:** Merrill Lynch & Co., Inc. | S.D. New York | 07 CV 9696 | Hon. Leonard B. Sand |
| **Plaintiff:** Michael J. Savena, Individually and On Behalf of All Others Similarly Situated<br>**Defendants:** Merrill Lynch & Co., Inc., E. Stanley O'Neal, Ahmass L. Fakahany, Gregory J. Fleming and Jeffrey N. Edwards | S.D. New York | 07 CV 9837 | Hon. Leonard B. Sand |

| | | | |
|---|---|---|---|
| **Plaintiff:** Miriam Loveman, derivatively and on behalf of Merrill Lynch & Co., Inc. **Defendants:** E. Stanley O'Neal, Ahmass L. Fakahany, Gregory J. Fleming, Jeffrey N. Edwards, Carol T. Christ, Armando D. Codina, Virgis W. Colbert, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, Joseph W. Prueher, Ann N. Reese, Charles O. Rossotti **Nominal Defendant:** Merrill Lynch & Co., Inc. | S.D. New York | 07 CV 9888 | Hon. Leonard B. Sand |
| **Plaintiff:** Elizabeth Estey, Individually and On Behalf of All Others Similarly Situated **Defendants:** Merrill Lynch & Co., Inc., Merrill Lynch & Co., Inc. Plan "Investment Committee", Merrill Lynch & Co., Inc. Plan Administrative Committee, Merrill Lynch & Co., Inc. Management Development and Compensation Committee, Louis DiMaria, E. Stanley O'Neal, Alberto Cribiore, Armando M. Codina, Virgis W. Colbert, John D. Finnegan, Aulana L. Peters and John Does 1-10 | S.D. New York | 07 CV 10268 | Hon. Leonard B. Sand |
| **Plaintiff:** Mary Gidaro, Individually and on behalf of all others similarly situated **Defendants:** Merrill Lynch & Co., Inc., Stan O'Neal, Lou DiMaria, Investment Committee of the Merrill Lynch Savings and Investment Plan, Administrative Committee of the Merrill Lynch Savings and Investment Plan, and John Does 1-30 | S.D. New York | 07 CV 10273 | Hon. Leonard B. Sand |

| Plaintiff: Tara Moore, Individually and On Behalf of All Others Similarly Situated Defendants: Merrill Lynch & Co., Inc., Merrill Lynch & Co., Inc. Plan "Investment Committee", Merrill Lynch & Co., Inc. Plan Administrative Committee, Merrill Lynch & Co., Inc. Management Development and Compensation Committee, Louis DiMaria, E. Stanley O'Neal, Alberto Cribiore, Armando M. Codina, Virgis W. Colbert, John D. Finnegan, Aulana L. Peters and John Does 1-10 | S.D. New York | 07 CV 10398 | Hon. Leonard B. Sand |
| Plaintiff: Gregory Yashgur, on Behalf of Himself and a Class of Persons Similarly Situated Defendants: Merrill Lynch & Co., Inc., Administrative Committee of the Merrill Lynch & Co., Inc. 401(k) Saving and Investment Plan, Louis DiMaria, Stan O'Neal, Alberto Cribiore, Carol T. Christ, Armando M. Codina, Virgis W. Colbert, John D. Finnegan, Judith Mayhew Jonas, Aulana L. Peters, Joseph W. Prueher, Ann N. Reese, and Charles O. Rossotti, and John Does 1-30 | S.D. New York | 07 CV 10569 | Being assigned to Hon. Leonard B. Sand |

| **Plaintiff:** Christine Donlon, on Behalf of All Others Similarly Situated<br>**Defendants:** Merrill Lynch & Co., Inc., E. Stanley O'Neal, Carol T. Christ, Armando M. Codina, Virgis W. Colbert, Jill K. Conway, Alberto Cribiore, Louis DiMaria, John D. Finnegan, Judith Mayhew Jonas, Aulana L. Peters, Joseph W. Prueher, Ann N. Reese, Charles O. Rossotti, John Does 1-20 (Being Current and Former Members of the Benefits Administration Committee of the Merrill Lynch & Co., Inc. Employee Stock Ownership Plan) and John Does 21-40 (Being Current and Former Members of the Investment Committee of the Merrill Lynch & Co., Inc. Employee Stock Ownership Plan) | S.D. New York | 07 CV 10661 | Hon. Leonard B. Sand |
| **Plaintiff:** Carl Esposito, Individually and On Behalf of All Others Similarly Situated<br>**Defendants:** Merrill Lynch & Co., Inc., E. Stanley O'Neal, Carol T. Christ, Armando M. Codina, Virgis W. Colbert, Jill K. Conway, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, David K. Newbigging, Aulana L. Peters, Joseph W. Prueher, Ann N. Reese, Charles O. Rossotti, Louis DiMaria, Peter Stingi and John and Jane Does 1-20 | S.D. New York | 07 CV 10687 | Being assigned to Hon. Leonard B. Sand |

| **Plaintiff:** Sean Shaughnessey, individually, on behalf of the Merrill Lynch & Co., Inc. 401(k) Savings and Investment Plan, the Retirement Accumulation Plan, the Employee Stock Ownership Plan and all others similarly situated<br>**Defendants:** Merrill Lynch & Co., Inc.; the Merrill Lynch Trust Company, FSB; Administrative Committee of the Merrill Lynch & Co., Inc. 401(k) Saving and Investment Plan, Louis DiMaria, John Does 1 to 20; the Merrill Lynch & Co., Inc. Investment Committee; John Does 20 to 40; Management Development and Compensation Committee of the Merrill Lynch & Co., Inc. Board of Directors; Armando M. Codina, Virgis W. Colbert, Alberto Cribiore, John D. Finnegan and Aulana L. Peters | S.D. New York | 07 CV 10710 | Being assigned to Hon. Leonard B. Sand |
| **Plaintiff:** Gary Kosseff, Individually and On Behalf of All Others Similarly Situated<br>**Defendants:** Merrill Lynch & Co., Inc., E. Stanley O'Neal, Ahmass L. Fakahany, Gregory J. Fleming and Jeffrey N. Edwards | S.D. New York | 07 CV 10984 | Hon. Leonard B. Sand |
| **Plaintiffs:** Barbara Boland and Anna Molin, individually and on behalf of all others similarly situated<br>**Defendants:** Merrill Lynch & Co., Inc., E. Stanley O'Neal, Carol T. Christ, Armando M. Codina, Virgis W. Colbert, Jill K. Conway, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, David K. Newbigging, Aulana L. Peters, Joseph W. Prueher, Ann N. Reese, Charles O. Rossotti, Louis DiMaria, Peter Stingi and John and Jane Does 1-20 | S.D. New York | 07 CV 11054 | Being assigned to Hon. Leonard B. Sand |

| Plaintiff: Robert R. Garber, Individually and On Behalf of All Others Similarly Situated<br>Defendants: Merrill Lynch & Co., Inc., E. Stanley O'Neal, Ahmass L. Fakahany, Gregory J. Fleming and Jeffrey N. Edwards | S.D. New York | 07 CV 11080 | Hon. Leonard B. Sand |
|---|---|---|---|
| Plaintiff: Operative Plasterers & Cement Masons Local 262 Pension and Annuity Funds, Derivatively On Behalf of Nominal Defendant Merrill Lynch & Co., Inc.<br>Defendants: E. Stanley O'Neal, Ahmass L. Fakahany, Gregory J. Fleming, Jeffrey N. Edwards, Carol T. Christ, Armando D. Codina, Virgis W. Colbert, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, Joseph W. Prueher, Ann N. Reese, Charles O. Rossotti<br>Nominal Defendant: Merrill Lynch & Co., Inc. | S.D. New York | 07 CV 11085 | Hon. Leonard B. Sand |
| Plaintiff: Francis Lee Summers, III, individually and on behalf of all others similarly situated<br>Defendants: Merrill Lynch & Co., Inc.; Stan O'Neal; Lou DiMaria; Investment Committee of the Merrill Lynch Savings and Investment Plan; Administrative Committee of the Merrill Lynch Savings and Investment Plan; and John Does 1-30 | S.D. New York | 07 CV 11615 | Being assigned to Hon. Leonard B. Sand |
| Plaintiff: James Conn, Individually and On Behalf of All Others Similarly Situated<br>Defendants: Merrill Lynch & Co., Inc., E. Stanley O'Neal, Jeffrey N. Edwards, Lawrence A. Tosi, Armando M. Codina, Virgis W. Colbert, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, Aulana L. Peters, Joseph W. Prueher, Ann N. Reese, and Charles O. Rossotti | S.D. New York | 07 CV 11626 | Being assigned to Hon. Leonard B. Sand |

| Plaintiff: James Eastman, On Behalf of Himself and All Others Similarly Situated **Defendants:** Merrill Lynch & Co., Inc., E. Stanley O'Neal, Louis DiMaria, Alberto Cribiore, Armando M. Codina, Virgis W. Colbert, John D. Finnegan, Aulana L. Peters, Charles O. Rossotti, Jill K. Conway, Carol T. Christ, Judith Mayhew Jonas, Joseph W. Prueher, Ann N. Reese, David K. Newbigging, Investment Committee of the Merrill Lynch 401(k) Savings and Investment Plan, Administrative Committee of the Merrill Lynch 401(k) Savings and Investment Plan, and John Does 1-20 | S.D. New York | 08 CV 0058 | Being assigned to Hon. Leonard B. Sand |
|---|---|---|---|
| **Plaintiff:** Diane Blas, as Trustee of the RAY & VIRGINIA HUNTER INTERVIVOS TRUST, derivatively on behalf of the Nominal Defendant. **Defendants:** E. Stanley O'Neal, Ahmass L. Fakahany, Gregory J. Fleming and Jeffrey N. Edwards **Nominal Defendant:** Merrill Lynch & Co., Inc. | D. Delaware | Case no. 08-15 | TBA |
| **Plaintiff:** David Eidman, Derivatively on Behalf of Merrill Lynch & Co., Inc. **Defendants:** Ernest Stanley O'Neal, Carol T. Christ, Armando M. Codina, Virgis W. Colbert, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, Aulana L. Peters, Joseph W. Prueher, Ann N. Reese, Charles O. Rossotti | D. New Jersey | TBA | TBA |

BEFORE THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

————————————————————— )
                                 )
IN RE MERRILL LYNCH & CO., INC.    )   MDL DOCKET NO. _____
SECURITIES, ERISA AND DERIVATIVE )
LITIGATION                            )
————————————————————— )

## MEMORANDUM OF LAW IN SUPPORT OF MERRILL LYNCH & CO., INC.'S MOTION, PURSUANT TO 28 U.S.C. §1407, FOR CENTRALIZATION AND TRANSFER TO THE SOUTHERN DISTRICT OF NEW YORK

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Jay B. Kasner
Scott D. Musoff
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Merrill Lynch & Co., Inc.

## Table of Contents

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     1.    The Derivative Actions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
     2.    The Federal Securities Actions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     3.    The ERISA Actions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ALL PENDING ACTIONS SHOULD BE CENTRALIZED IN,
AND THE RELATED ACTIONS SHOULD BE TRANSFERRED
TO, THE SOUTHERN DISTRICT OF NEW YORK . . . . . . . . . . . . . . . . . . . . . . . . 7

I.     The Actions Involve Common Questions of Fact  . . . . . . . . . . . . . . . . . . . . 7

II.    Pretrial Transfer and Coordination Will Advance
        the Just and Efficient Conduct of the Actions . . . . . . . . . . . . . . . . . . . . . . 9
     A.    Transfer Will Avoid Duplication of Discovery . . . . . . . . . . . . . . . . . . 10
     B.    Transfer Will Avoid Inconsistent Pretrial Rulings  . . . . . . . . . . . . . . . 11
     C.    Transfer Will Conserve the Resources of the Parties and the Judiciary  . . . . . . . 12

III.   Transfer to the Southern District of New York Will
        Best Serve the Convenience of the Parties and Witnesses . . . . . . . . . . . . . . . . . 13
     A.    Location of Relevant Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
     B.    Location of Key Witnesses and Defendants  . . . . . . . . . . . . . . . . . . . . 14
     C.    Other Related Factors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# TABLE OF AUTHORITIES

## CASES

<u>In re Air Crash Disaster at Sioux City, Iowa, on July 19, 1989</u>,
    128 F.R.D. 131 (J.P.M.L. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

<u>In re American Home Mortgage Securities Litigation</u>,
    2007 U.S. Dist. LEXIS 94723 (J.P.M.L. Dec. 19, 2007) . . . . . . . . . . . . . . . . . 10, 11,
                                                                                     13, 15

<u>In re Bayou Hedge Funds Invest. Litigation</u>, 429 F. Supp. 2d 1374
    (J.P.M.L. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

<u>In re Delphi Corp. Securities, Derivative & "ERISA" Litigation</u>, 403 F.Supp.2d 1358
    (J.P.M.L. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

<u>In re Equity Funding Corp. of America Securities Litigation</u>, 375 F. Supp. 1378
    (J.P.M.L. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

<u>In re Federal Home Loan Mortgage Corp. Securities & Derivative Litigation (NO. II)</u>,
    303 F. Supp. 2d 1379 (J.P.M.L. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

<u>In re Federal National Mortgage Association Securities, Derivative &</u>
    <u>"ERISA" Litigation</u>, 370 F. Supp. 2d 1359 (J.P.M.L. 2005) . . . . . . . . . . . . . . . .  9

<u>In re Four Seasons Securities Laws Litigation</u>, 361 F. Supp. 636 (J.P.M.L. 1973) . . . . .  7

<u>In re General Motors Corp. Securities & Derivative Litigation</u>,
    429 F. Supp. 2d 1368 (J.P.M.L. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

<u>In re General Tire & Rubber Co. Securities Litigation</u>, 429 F. Supp. 1032
    (J.P.M.L. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

<u>In re LTV Corp. Securities Litigation</u>, 470 F. Supp. 859 (J.P.M.L. 1979) . . . . . . . . . .  14

<u>MacAlister v. Guterma</u>, 263 F.2d 65 (2d Cir. 1958) . . . . . . . . . . . . . . . . . . . . . .  12

<u>In re Marsh & McLennan Co., Inc., Securities Litigation</u>, 429 F. Supp. 2d 1376
    (J.P.M.L. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

In re Medical Resources, Inc. Securities Litigation, No. 1247,
1998 U.S. Dist. LEXIS 15832 (J.P.M.L. Oct. 7, 1998) . . . . . . . . . . . . . . . . . . . . . 9

In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation,
223 F. Supp. 2d 1388 (J.P.M.L. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 13

In re  Plumbing Fixture Cases, 295 F. Supp. 33 (J.P.M.L. 1968) . . . . . . . . . . . . . . . . 9

In re Practice of Naturopathy Litigation, 434 F. Supp. 1240 (J.P.M.L. 1977) . . . . . . . 11

In re Qwest Committee International, Inc., Securities & "ERISA" Litigation (NO.
II), 444 F. Supp. 2d 1343 (J.P.M.L. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

In re Regents of the University of California, 964 F.2d 1128 (Fed. Cir. 1992) . . . . . . . 10

In re SFBC International, Inc., Securities & Derivative Litigation,
435 F. Supp. 2d 1355 (J.P.M.L. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 13

In re Salomon Brothers Treasury Securities Litigation, 796 F. Supp. 1537
(J.P.M.L. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

In re Transocean Tender Offer Securities Litigation, 415 F. Supp. 382
(J.P.M.L. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

In re Veeco Instruments Inc. Securities Litigation, 387 F. Supp. 2d 1365
(J.P.M.L. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

In re Vonage IPO Securities Litigation, 471 F. Supp. 2d 1354 (J.P.M.L. 2007) . . . . . . . 7

In re Washington Public Power Supply System Securities Litigation,
568 F. Supp. 1250 (J.P.M.L. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

In re Waste Management, Inc. Securities Litigation, 177 F. Supp. 2d 1373
(J.P.M.L. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## STATUTES

28 U.S.C. § 1407 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7

## MISCELLANEOUS

15 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure
§ 3862 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Movant Merrill Lynch & Co., Inc. ("Merrill Lynch") respectfully submits this brief in support of its motion to centralize the actions set forth in the Schedule of Actions attached hereto as Exhibit A (the "Actions") for coordination for pretrial purposes in the United States District Court for the Southern District of New York and, insofar as two actions pending in the United States District Court for the District of Delaware and the District of New Jersey are concerned, transferring those actions to the Southern District of New York.

<u>PRELIMINARY STATEMENT</u>

As with many financial institutions throughout the country, Merrill Lynch has been impacted by recent adverse developments in the credit markets, including those relating to so-called subprime loans.  In the wake of an announcement of its third quarter financial results, Merrill Lynch has been named, as of January 9, 2008, in 20 federal actions alleging violations of the federal securities laws; violations of ERISA; breaches of fiduciary duty, abuse of control and/or corporate waste; and/or seeking indemnification/contribution.  As of the date of this motion, 18 of the 20 federal actions are pending in the United States District Court for the Southern District of New York (the "Southern District Actions"); one action is pending in the United States District Court for District of New Jersey (the "New Jersey Action"); and one action is pending in the United States District Court for the District of Delaware (the "Delaware Action"). The New Jersey Action and the Delaware Action are collectively referred to as the "Related Actions."

As set forth below, centralization of the Actions in, and transfer of the Related Actions to, the Southern District of New York is warranted and necessary for at least three rea-

sons. First, the Actions are based upon substantially related factual allegations and legal issues. The Related Actions and Southern District Actions all arise from allegations relating to Merrill Lynch's exposure to collateralized debt obligations ("CDOs") and subprime loan-related markets; Merrill Lynch's relevant disclosures related thereto; and the conduct of members of Merrill Lynch senior management and members of its board of directors.

Second, centralizing all the Actions in the Southern District of New York will advance the just and efficient conduct of the Actions by avoiding inconsistent pretrial rulings and duplicative discovery, and conserving the resources of the parties and the judiciary. If the Actions are not centralized in one district and coordinated, there will be multiple actions involving many of the same legal and factual issues pending simultaneously in different places. These concerns are particularly acute where the duplicative litigation involves derivative actions – shareholder actions purportedly brought on behalf of and for the benefit of the corporation. Here, the only two federal Actions pending outside of the Southern District of New York – the Related Actions – are two derivative actions which are duplicative of the three derivative actions pending in the Southern District of New York.

Third, the documentary evidence plaintiffs are likely to seek to obtain, key witnesses and defendants are located in New York, where Merrill Lynch is headquartered.

Accordingly, the Actions should be centralized in, and the Related Actions should be transferred to, the Southern District of New York for coordination for pretrial purposes.

## FACTUAL BACKGROUND

On October 24, 2007, Merrill Lynch announced its third quarter results, including a write-down of $7.9 billion across CDOs and U.S. subprime mortgages. In the days following that announcement, 18 related actions were filed in, or removed to, the Southern District of New York.

The complaints in the Actions allege the same basic facts concerning Merrill Lynch's exposure to the CDO and subprime markets; the alleged issuance of false and misleading information in public filings with the Securities and Exchange Commission and elsewhere relating thereto; and the alleged conduct of Merrill Lynch senior management and board of directors. Of the 18 actions that were commenced in, or removed to, the Southern District of New York: three are derivative actions, five are federal securities laws actions and ten are ERISA actions. They are assigned, or are in the process of being assigned, to the Honorable Leonard B. Sand. More than four weeks after the first action was filed in the Southern District of New York, two additional derivative actions were commenced: one in state court in Delaware and the other in New Jersey. Merrill Lynch removed those actions and now seeks to have them transferred to the Southern District of New York for coordinated pretrial proceedings.

1.  The Derivative Actions

Two purported derivative actions were filed in the Southern District of New York on November 1 and 8, 2007.[1] A third purported derivative action was removed from the

---

[1]     Arthur v. O'Neal, et al., 07 CV 9696 (LBS) (SDNY) and Loveman v. O'Neal, et al., 07
(continued...)

Supreme Court of the State of New York to the Southern District of New York on December 7, 2007.[2] Plaintiffs allege these actions were brought on behalf of and for the benefit of Merrill Lynch against certain members of the board of directors and executive officers. The challenged conduct allegedly arises from the adverse impact on Merrill Lynch from its exposure to CDO and subprime related markets, as well as the alleged dissemination by Merrill Lynch of false and misleading statements related thereto. (See Arthur Compl. ¶ 64; Loveman Compl. ¶ 64)

Subsequently, two additional purported derivative actions were commenced in state courts in Delaware and New Jersey asserting nearly identical allegations to the three derivative actions pending in the Southern District of New York.[3] For example, plaintiff in the New Jersey Action alleges, among other things, that the "Director Defendants should not have allowed this risky exposure and should have seen the red flags associated with maintaining the abnormal CDO positions." (Eidman Compl. ¶ 46) Plaintiff in the New Jersey Action also alleges, among other things, that "Defendants caused false statements to be issued in SEC filings." (Eidman Compl. ¶ 61). Plaintiff in the Delaware Action similarly alleges, among other things, that "the defendants, officers and/or directors of the Company breached their fiduciary duties by issuing

---

[1]     (...continued)
CV 9888 (LBS) (SDNY).

[2]     Operative Plasterers & Cement Masons Local 262 Pension and Annuity Funds v. E. Stanley O'Neal, et al., 07 CV 11085 (LBS) (SDNY) .

[3]     These actions were removed to federal court. Eidman v. O'Neal, et al., Case No. 08-____ (D.N.J.); Blas v. O'Neal, Case No. 08-15 (D. Del.)

materially false and misleading information to the investing public regarding the Company's projected exposure to sub-prime lending liability." (Blas Compl. ¶ 1)

2.    The Federal Securities Actions

      Beginning on or about October 30, 2007, five putative federal securities class actions have been commenced in the Southern District of New York.[4] The federal securities actions assert claims against Merrill Lynch and certain officers under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§78j(b) and (b)(a), and, in one case, Section 11 of the Securities Act of 1933. The claims are premised upon allegations that "defendants issued materially false and misleading statements regarding the Company's business" which was "invested heavily into Collateralized Debt obligations ("CDO")." (See, e.g., Savena Compl. ¶ 3)

3.    The ERISA Actions

      Beginning on or about November 9, 2007, ten putative class actions were commenced alleging claims for violations of the Employee Retirement Security Act of 1974 ("ERISA") against Merrill Lynch, certain of its directors and officers, and others.[5]

---

[4]    Life Enrichment Foundation v. Merrill Lynch & Co., Inc., et al., 07 CV 9633 (LBS) (SDNY); Savena v. Merrill Lynch & Co., Inc., et al., 07 CV 9837 (LBS) (SDNY); Kosseff v. Merrill Lynch & Co., Inc., et al., 07 CV 10984 (LBS) (SDNY); Garber v. Merrill Lynch & Co., Inc., et al., 07 CV 11080 (LBS) (SDNY); and Conn v. Merrill Lynch & Co., Inc., et al., 07 CV 11626 (LBS) (SDNY).

[5]    Estey v. Merrill Lynch & Co., Inc., et al., 07 CV 10268 (LBS) (SDNY); Gidaro v. Merrill Lynch & Co., Inc., et al., 07 CV 10273 (LBS) (SDNY); Moore v. Merrill Lynch & Co., Inc., et al., 07 CV 10398 (LBS) (SDNY); Yashgur v. Merrill Lynch & Co., Inc., et al., 07 CV 10569 (JSR)/(LBS) (SDNY); Donlon v. Merrill Lynch & Co., Inc., et al., 07 CV 10661 (LBS) (SDNY); Esposito v. Merrill Lynch & Co., Inc., et al., 07 CV 10687

                                    (continued...)

Plaintiffs' claims are premised, among other things, upon the allegation that "Defendants repeatedly issued inaccurate, incomplete and materially misleading statements to plan participants. Although they knew or should have known that the Company's stock was artificially inflated, due to the Company's mammoth involvement in the securitized subprime mortgage market, Defendants continuously reassured Plan participants and did nothing to protect the heavy investment of their retirement savings in Merrill Lynch stock."  (Estey Compl. ¶ 89)

---

[5]    (...continued)
       (JGK)/(LBS) (SDNY); Shaughnessy v. Merrill Lynch & Co., Inc., et al., 07 CV 10710
       (GEL)/ (LBS) (SDNY); Boland v. Merrill Lynch & Co., Inc., et al., 07 CV 11054 (MGC)/
       (LBS) (SDNY); Summers v. Merrill Lynch & Co., Inc., et al., 07 CV 11615 (LBS)
       (SDNY); and Eastman v. Merrill Lynch & Co., Inc., et al., 08 CV 0058 (LBS) (SDNY).

## ARGUMENT

ALL PENDING ACTIONS SHOULD BE CENTRALIZED IN,
AND THE RELATED ACTIONS SHOULD BE TRANSFERRED
TO, THE SOUTHERN DISTRICT OF NEW YORK

The Multidistrict Litigation Act, 28 U.S.C. § 1407, sets forth three requirements for transfer. The transfer must: (i) involve actions having one or more common questions of fact; (ii) further the "just and efficient conduct" of the actions; and (iii) promote "the convenience of parties and witnesses." 28 U.S.C. § 1407(a). All three criteria weigh heavily in favor of centralizing these Actions to the Southern District of New York for all pretrial purposes.

**I.    The Actions Involve
       Common Questions of Fact**

The Judicial Panel for Multidistrict Litigation regularly transfers actions which involve common questions of fact, as do the Actions here. See, e.g., In re Vonage IPO Sec. Litig., 471 F. Supp. 2d 1354 (J.P.M.L. 2007); In re Qwest Comm. Int'l, Inc., Sec. & "ERISA" Litig. (NO. II), 444 F. Supp. 2d 1343 (J.P.M.L. 2006); In re SFBC Int'l, Inc., Sec. & Deriv. Litig., 435 F. Supp. 2d 1355 (J.P.M.L. 2006); In re Waste Mgmt., Inc. Sec. Litig., 177 F. Supp. 2d 1373 (J.P.M.L. 2001) (centralization of securities actions warranted where actions shared allegations concerning misrepresentations or omissions about financial condition); In re Wash. Pub. Power Supply Sys. Sec. Litig., 568 F. Supp. 1250 (J.P.M.L. 1983); In re Four Seasons Sec. Laws Litig., 361 F. Supp. 636 (J.P.M.L. 1973) (federal and state claims transferred); 15 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3862 (noting that Section 1407 was specifi-

cally contemplated to deal with actions alleging securities law violations and citing the House of

Representatives Report that accompanied the legislation).

The standard for transfer does not require the existence of identical – or even a

preponderance of – common issues of fact before a transfer is warranted.  See In re Med. Res.,

Inc. Sec. Litig., No. 1247, 1998 U.S. Dist. LEXIS 15832, at *3 (J.P.M.L. Oct. 7, 1998) ("transfer

under Section 1407 does not require a complete identity or even majority of common issues as a

prerequisite to transfer"); see also In re Federal Nat'l Mortgage Ass'n Sec., Deriv. & "ERISA"

Litig., 370 F. Supp. 2d 1359, 1361 (J.P.M.L. 2005) (the type of action is immaterial so long as it

is one of a type that "can be expected to focus on a significant number of common events, defen-

dants, and/or witnesses").

Here, the Actions are all premised upon common alleged facts — Merrill Lynch's

alleged conduct in connection with its exposure to the CDO and subprime markets and the al-

leged issuance of false and misleading statements and filings related to such exposure.  Plaintiffs

essentially assert that after purportedly increasing inappropriately its exposure to the CDO and

so-called subprime related markets, Merrill Lynch allegedly failed adequately to disclose such

exposure and purportedly failed to take appropriate risk measures to mitigate its exposure to the

subprime housing market.

That the Actions do not all bring identical claims is of no moment.  The actions

need not rest upon identical legal theories.  As explained by the Panel:

> The concept of transferring actions, sharing one or more common questions of
> fact but resting upon different legal theories, to a single district and assigning
> them to the same judge is not new to the Panel.  We have always been at pains to

leave the extent of coordination or consolidation to the ingenuity and resourceful-
ness of the transferee judge.

In re Equity Funding Corp. of Am. Sec. Litig., 375 F. Supp. 1378, 1384 (J.P.M.L. 1974); see also

In re Gen. Motors Corp. Sec. & Deriv. Litig., 429 F. Supp. 2d 1368, 1369 (J.P.M.L. 2006) (find-

ing transfer appropriate even where the different actions necessarily involved differing factual

inquiries); In re Delphi Corp. Sec., Deriv. & "ERISA" Litig. 403 F. Supp. 2d 1358 (J.P.M.L.

2005); In re Salomon Bros. Treasury Sec. Litig., 796 F. Supp. 1537, 1538 (J.P.M.L. 1992) (trans-

ferring action with common factual issues despite recognizing that "[l]egal theories . . . vary

among the actions, with some actions raising claims not common to all actions"); In re Plumbing

Fixture Cases, 295 F. Supp. 33, 33-34 (J.P.M.L. 1968) (finding transfer appropriate even where

there was no commonality of parties or the types of discovery needed for each of the defendants).

Similarly, that some of the Actions contain state law claims or additional defendants should not

alter the Panel's analysis because common questions of fact exist.  See, e.g., In re Gen. Motors,

429 F. Supp. 2d at 1368 (transferring action with common factual issues even though some plain-

tiffs brought action under federal securities laws while others brought common-law shareholder

derivative actions).

## II.     Pretrial Transfer and Coordination Will Advance
the Just and Efficient Conduct of the Actions

Where, as here, numerous complex actions are pending that present common is-

sues of fact, transfer pursuant to Section 1407 is not just warranted, it is "necessary in order to

eliminate duplicative discovery, prevent inconsistent pretrial rulings . . . , and conserve the re-

9

sources of the parties, their counsel and the judiciary." In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig., 223 F. Supp. 2d 1388, 1389 (J.P.M.L. 2002) (emphasis added).

A.    Transfer Will Avoid Duplication of Discovery

Panels regularly transfer actions to avoid subjecting defendants to overlapping discovery in similar actions pending in multiple forums. See In re Am. Home Mortgage Sec. Litig., 2007 U.S. Dist. LEXIS 94723, at *2 (J.P.M.L. Dec. 19, 2007) ("Centralization under Section 1407 will eliminate duplicative discovery"); In re Regents of the Univ. of Cal., 964 F.2d 1128, 1135-36 (Fed. Cir. 1992) (upholding the decision of the Panel to transfer for consolidated or coordinated pretrial proceedings where, among other things, the Panel relied on need for depositions common to all actions); In re Gen. Tire & Rubber Co. Sec. Litig., 429 F. Supp. 1032, 1034 (J.P.M.L. 1977) (placing actions "under the control of a single judge" in order to "ensure that duplicative discovery on the complex factual questions will be prevented" and "eliminat[e] the possibility of conflicting pretrial rulings").

Here, if the Actions are not dismissed on motion, plaintiffs in each of the Actions that proceed will almost certainly seek overlapping discovery.  In addition to the similarities of the basic factual allegations, the duplicative nature of the claims brought by the Actions could result in overlapping discovery.  Plaintiffs will likely seek documents from, and depositions of, many of the same witnesses, most of whom reside or work in New York where Merrill Lynch is headquartered.  Moreover, to the extent there are any discovery disputes over such requests or any others, coordination will avoid the risk of inconsistent discovery rulings.

10

B.     Transfer Will Avoid Inconsistent Pretrial Rulings

Transfer is also warranted to avoid potentially conflicting pretrial rulings. See, e.g., In re Am. Home Mortgage Sec. Litig., 2007 U.S. Dist. LEXIS 94723, at *2; In re Merrill Lynch, 223 F. Supp. 2d at 1389 (among other reasons, centralization necessary to prevent inconsistent pretrial rulings); In re Transocean Tender Offer Sec. Litig., 415 F. Supp. 382, 384 (J.P.M.L. 1976).

Given the overlap of issues in the Actions, there exists a significant risk of conflicting decisions which could be avoided by coordinating all the Actions before a single court.  It is anticipated that defendants will move to dismiss the complaints in most, if not all, of the Actions.  See In re Practice of Naturopathy Litig., 434 F. Supp. 1240, 1243 (J.P.M.L. 1977) (transfer is not "premature because of the defendants' desire to challenge sufficiency of the complaints;" noting that, "presentation of these matters to a single judge will further the purposes of Section 1407").  If these motions are not granted in their entirety, other dispositive motions, such as for class certification and summary judgment, would also be premised on overlapping legal and factual issues.  Absent transfer under Section 1407, there would be a strong potential for inconsistent rulings by the  different district courts.  See, e.g., In re Transocean, 415 F. Supp. at 384 ("[T]he likelihood of motions for partial dismissal and summary judgment in all three actions grounded at least in part on [a common issue] makes Section 1407 treatment additionally necessary to prevent conflicting pretrial rulings and conserve judicial effort.").

C.   Transfer Will Conserve the Resources of the Parties and the Judiciary

Transferring the Actions to the Southern District of New York will also conserve the resources of the parties and the judiciary. Absent transfer, the parties will be forced simultaneously to litigate the same issues in separate judicial districts, resulting in a significant increase in burden and expense. Moreover, repetitive – and potentially conflicting – adjudications concerning substantially similar discovery disputes and other pretrial motions would constitute a waste of judicial resources, particularly when a straightforward transfer can prevent such waste. In the absence of the coordination of these actions in one district, full development of each of the Actions will require that several judges (i) become familiar with, inter alia, the factual background, structure and allegations related to not only Merrill Lynch's exposure to the CDO and so-called subprime related markets, but that of Wall Street as a whole; and (ii) resolve and rule upon complex factual and legal issues. Furthermore, the Actions can be coordinated easily because discovery has not commenced in any of the Actions.

These issues are of even greater concern when derivative actions are involved. In a derivative action, the plaintiff purports to bring the action on behalf of and for the benefit of the corporation. To force the corporation to defend nearly identical derivative actions in multiple forums would be an utter waste of corporate resources – the very resources plaintiff purports to seek to protect. See, e.g., MacAlister v. Guterma, 263 F.2d 65, 68 (2d Cir. 1958) (derivative actions often call for "special treatment" because the cost of defending multiple suits by stockholders "may well do serious harm to the very corporation in whose interest they are supposedly brought"). Here, the only two federal actions pending outside the Southern District of New York

12

are derivative actions – one in the District of Delaware and one in the District of New Jersey. Accordingly, the transfer of those two actions to the Southern District of New York will conserve the resources of the judiciary, Merrill Lynch and the other parties.

## III. Transfer to the Southern District of New York Will Best Serve the Convenience of the Parties and Witnesses

The selection of a transferee forum also depends upon the location of documents and witnesses, and the residence and location of defendants. See In re Merrill Lynch, 223 F. Supp. 2d at 1390 (recognizing the importance of a "conveniently located" forum  in transferring actions under Section 1407); In re Fed. Home Loan Mortgage Corp. Sec. & Deriv. Litig. (No. II), 303 F. Supp. 2d 1379, 1380 (J.P.M.L. 2004) (transferring litigation to a "readily accessible" district).  These factors compel transfer to the Southern District of New York.  Absent such transfer and coordination, the movement of people and documents that would be required for the full development of each action would involve exponential expense and would threaten to disrupt Merrill Lynch's business.

### A.   Location of Relevant Documents

Most, if not all, of the relevant documents are located in New York.  The relevant Merrill Lynch documents will be found in New York City where Merrill Lynch is headquartered. See In re Am. Home Mortgage Sec. Litig, 2007 U.S. Dist. LEXIS 94723, at *2-3 (transfer to district where corporate defendant "was headquartered" since "relevant documents and witnesses may be found there"); In re SFBC Int'l, Inc., Sec. & Deriv. Litig., 435 F. Supp. 2d at 1356 (transfer to district where the defendant is headquartered because "relevant documents and witnesses

13

may be found" there); <u>In re LTV Corp. Sec. Litig.</u>, 470 F. Supp. 859, 862 (J.P.M.L. 1979) (transfer to district because it is the location where defendant has headquarters and therefore the location also of relevant files, officers, directors and employees); <u>In re Air Crash Disaster at Sioux City, Iowa, on July 19, 1989</u>, 128 F.R.D. 131, 132 (J.P.M.L. 1989) ("relevant documents can likely be found within this district at [defendant's] headquarters"); <u>In re Marsh & McLennan Co., Inc., Sec. Litig.</u>, 429 F. Supp. 2d 1376, 1378 (J.P.M.L. 2006) (finding that the district in which the defendants were headquartered was a "likely source of relevant documents and witnesses.").

> B. <u>Location of Key Witnesses and Defendants</u>

In addition, most of the key witnesses either live or work in New York. Current Merrill Lynch executives and employees who are likely to be deposed work, for the most part, at Merrill Lynch offices in New York, New York. Accordingly, the convenience of the parties and witnesses will best be served if all actions proceed in the Southern District of New York.

> C. <u>Other Related Factors</u>

Other factors that compel transfer to the Southern District of New York include the location of the district with the closest relationship to the litigation, the location where the first action was filed, the location of counsel and the accessibility of the Southern District of New York. See <u>In re Bayou Hedge Funds Invest. Litig.</u>, 429 F. Supp. 2d 1374, 1376 (J.P.M.L. 2006) (transferring action to district with the strongest relationship to the litigation by virtue of the fact that governmental actions also were taking place in that district); <u>In re Veeco Instruments Inc. Sec. Litig.</u>, 387 F. Supp. 2d 1365, 1366 (J.P.M.L. 2005) (transferring actions to forum where the first-filed action was pending).

14

Not only is the headquarters of Merrill Lynch located in New York, but that the Southern District of New York has the closest relationship to the litigation is demonstrated by plaintiffs themselves. The first action, <u>Life Enrichment Foundation v. Merrill Lynch & Co.</u>, No. 07 CV 9633 (LBS), was filed on or about October 30, 2007 there. Subsequently, 17 others were filed in the Southern District of New York. It was more than five weeks before these Related Actions were filed in Delaware and New Jersey. Therefore, the Southern District of New York is by far the district with the strongest connection to the litigation. <u>See, e.g.</u> <u>In re Am. Home Mortgage Sec. Litig.</u>, 2007 U.S. Dist. LEXIS 94723, at *2-3 (transfer of single action pending in Florida to Eastern District of New York where eighteen other actions were pending).

Moreover, the plaintiffs in both the New Jersey Action and the Delaware Action have New York counsel. In any event, the Southern District of New York is also easily accessible to out of state counsel. The Southern District of New York is located in Manhattan, only about 10-12 miles from Newark, New Jersey and a 1.5 hour train ride from Wilmington, Delaware.

## **CONCLUSION**

For all the foregoing reasons, Merrill Lynch respectfully requests that the Panel

grant its Motion for Transfer and issue an Order centralizing the Actions in, and transferring the

Related Actions to, the Southern District of New York for coordination of pretrial proceedings.

Dated: New York, New York
      January 9, 2008

Respectfully submitted,

*Jay Kasner /ARC/*

Jay B. Kasner
Scott D. Musoff
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Merrill Lynch & Co., Inc.

# EXHIBIT A

| MDL-_____ - In re Merrill Lynch & Co., Inc. Securities, ERISA and Derivative Litigation | | | |
|---|---|---|---|
| **Case Captions** | **Court** | **Civil Action No.** | **Judge** |
| **Plaintiff:** Life Enrichment Foundation, Individually and On Behalf of All Others Similarly Situated<br>**Defendants:** Merrill Lynch & Co., Inc., E. Stanley O'Neal, Ahmass L. Fakahany, Gregory J. Fleming and Jeffrey N. Edwards | S.D. New York | 07 CV 9633 | Hon. Leonard B. Sand |
| **Plaintiff:** Patricia Arthur, Derivatively on Behalf of Merrill Lynch & Co., Inc.<br>**Defendants:** E. Stanley O'Neal, Ahmass L. Fakahany, Gregory J. Fleming, Jeffrey N. Edwards, Carol T. Christ, Armando D. Codina, Virgis W. Colbert, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, Joseph W. Prueher, Ann N. Reese, Charles O. Rossotti<br>**Nominal Defendant:** Merrill Lynch & Co., Inc. | S.D. New York | 07 CV 9696 | Hon. Leonard B. Sand |
| **Plaintiff:** Michael J. Savena, Individually and On Behalf of All Others Similarly Situated<br>**Defendants:** Merrill Lynch & Co., Inc., E. Stanley O'Neal, Ahmass L. Fakahany, Gregory J. Fleming and Jeffrey N. Edwards | S.D. New York | 07 CV 9837 | Hon. Leonard B. Sand |

| | | | |
|---|---|---|---|
| **Plaintiff:** Miriam Loveman, derivatively and on behalf of Merrill Lynch & Co., Inc. **Defendants:** E. Stanley O'Neal, Ahmass L. Fakahany, Gregory J. Fleming, Jeffrey N. Edwards, Carol T. Christ, Armando D. Codina, Virgis W. Colbert, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, Joseph W. Prueher, Ann N. Reese, Charles O. Rossotti **Nominal Defendant:** Merrill Lynch & Co., Inc. | S.D. New York | 07 CV 9888 | Hon. Leonard B. Sand |
| **Plaintiff:** Elizabeth Estey, Individually and On Behalf of All Others Similarly Situated **Defendants:** Merrill Lynch & Co., Inc., Merrill Lynch & Co., Inc. Plan "Investment Committee", Merrill Lynch & Co., Inc. Plan Administrative Committee, Merrill Lynch & Co., Inc. Management Development and Compensation Committee, Louis DiMaria, E. Stanley O'Neal, Alberto Cribiore, Armando M. Codina, Virgis W. Colbert, John D. Finnegan, Aulana L. Peters and John Does 1-10 | S.D. New York | 07 CV 10268 | Hon. Leonard B. Sand |
| **Plaintiff:** Mary Gidaro, Individually and on behalf of all others similarly situated **Defendants:** Merrill Lynch & Co., Inc., Stan O'Neal, Lou DiMaria, Investment Committee of the Merrill Lynch Savings and Investment Plan, Administrative Committee of the Merrill Lynch Savings and Investment Plan, and John Does 1-30 | S.D. New York | 07 CV 10273 | Hon. Leonard B. Sand |

| | | | |
|---|---|---|---|
| **Plaintiff:** Tara Moore, Individually and On Behalf of All Others Similarly Situated<br>**Defendants:** Merrill Lynch & Co., Inc., Merrill Lynch & Co., Inc. Plan "Investment Committee", Merrill Lynch & Co., Inc. Plan Administrative Committee, Merrill Lynch & Co., Inc. Management Development and Compensation Committee, Louis DiMaria, E. Stanley O'Neal, Alberto Cribiore, Armando M. Codina, Virgis W. Colbert, John D. Finnegan, Aulana L. Peters and John Does 1-10 | S.D. New York | 07 CV 10398 | Hon. Leonard B. Sand |
| **Plaintiff:** Gregory Yashgur, on Behalf of Himself and a Class of Persons Similarly Situated<br>**Defendants:** Merrill Lynch & Co., Inc., Administrative Committee of the Merrill Lynch & Co., Inc. 401(k) Saving and Investment Plan, Louis DiMaria, Stan O'Neal, Alberto Cribiore, Carol T. Christ, Armando M. Codina, Virgis W. Colbert, John D. Finnegan, Judith Mayhew Jonas, Aulana L. Peters, Joseph W. Prueher, Ann N. Reese, and Charles O. Rossotti, and John Does 1-30 | S.D. New York | 07 CV 10569 | Being assigned to Hon. Leonard B. Sand |

| | | | |
|---|---|---|---|
| **Plaintiff:** Christine Donlon, on Behalf of All Others Similarly Situated<br>**Defendants:** Merrill Lynch & Co., Inc., E. Stanley O'Neal, Carol T. Christ, Armando M. Codina, Virgis W. Colbert, Jill K. Conway, Alberto Cribiore, Louis DiMaria, John D. Finnegan, Judith Mayhew Jonas, Aulana L. Peters, Joseph W. Prueher, Ann N. Reese, Charles O. Rossotti, John Does 1-20 (Being Current and Former Members of the Benefits Administration Committee of the Merrill Lynch & Co., Inc. Employee Stock Ownership Plan) and John Does 21-40 (Being Current and Former Members of the Investment Committee of the Merrill Lynch & Co., Inc. Employee Stock Ownership Plan) | S.D. New York | 07 CV 10661 | Hon. Leonard B. Sand |
| **Plaintiff:** Carl Esposito, Individually and On Behalf of All Others Similarly Situated<br>**Defendants:** Merrill Lynch & Co., Inc., E. Stanley O'Neal, Carol T. Christ, Armando M. Codina, Virgis W. Colbert, Jill K. Conway, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, David K. Newbigging, Aulana L. Peters, Joseph W. Prueher, Ann N. Reese, Charles O. Rossotti, Louis DiMaria, Peter Stingi and John and Jane Does 1-20 | S.D. New York | 07 CV 10687 | Being assigned to Hon. Leonard B. Sand |

| **Plaintiff:** Sean Shaughnessey, individually, on behalf of the Merill Lynch & Co., Inc. 401(k) Savings and Investment Plan, the Retirement Accumulation Plan, the Employee Stock Ownership Plan and all others similarly situated<br>**Defendants:** Merrill Lynch & Co., Inc.; the Merrill Lynch Trust Company, FSB; Administrative Committee of the Merrill Lynch & Co., Inc. 401(k) Saving and Investment Plan, Louis DiMaria, John Does 1 to 20; the Merrill Lynch & Co., Inc. Investment Committee; John Does 20 to 40; Management Development and Compensation Committee of the Merrill Lynch & Co., Inc. Board of Directors; Armando M. Codina, Virgis W. Colbert, Alberto Cribiore, John D. Finnegan and Aulana L. Peters | S.D. New York | 07 CV 10710 | Being assigned to Hon. Leonard B. Sand |
| **Plaintiff:** Gary Kosseff, Individually and On Behalf of All Others Similarly Situated<br>**Defendants:** Merrill Lynch & Co., Inc., E. Stanley O'Neal, Ahmass L. Fakahany, Gregory J. Fleming and Jeffrey N. Edwards | S.D. New York | 07 CV 10984 | Hon. Leonard B. Sand |
| **Plaintiffs:** Barbara Boland and Anna Molin, individually and on behalf of all others similarly situated<br>**Defendants:** Merrill Lynch & Co., Inc., E. Stanley O'Neal, Carol T. Christ, Armando M. Codina, Virgis W. Colbert, Jill K. Conway, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, David K. Newbigging, Aulana L. Peters, Joseph W. Prueher, Ann N. Reese, Charles O. Rossotti, Louis DiMaria, Peter Stingi and John and Jane Does 1-20 | S.D. New York | 07 CV 11054 | Being assigned to Hon. Leonard B. Sand |

| Plaintiff: Robert R. Garber, Individually and On Behalf of All Others Similarly Situated Defendants: Merrill Lynch & Co., Inc., E. Stanley O'Neal, Ahmass L. Fakahany, Gregory J. Fleming and Jeffrey N. Edwards | S.D. New York | 07 CV 11080 | Hon. Leonard B. Sand |
|---|---|---|---|
| Plaintiff: Operative Plasterers & Cement Masons Local 262 Pension and Annuity Funds, Derivatively On Behalf of Nominal Defendant Merill Lynch & Co., Inc. Defendants: E. Stanley O'Neal, Ahmass L. Fakahany, Gregory J. Fleming, Jeffrey N. Edwards, Carol T. Christ, Armando D. Codina, Virgis W. Colbert, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, Joseph W. Prueher, Ann N. Reese, Charles O. Rossotti Nominal Defendant: Merrill Lynch & Co., Inc. | S.D. New York | 07 CV 11085 | Hon. Leonard B. Sand |
| Plaintiff: Francis Lee Summers, III, individually and on behalf of all others similarly situated Defendants: Merrill Lynch & Co., Inc.; Stan O'Neal; Lou DiMaria; Investment Committee of the Merrill Lynch Savings and Investment Plan; Administrative Committee of the Merrill Lynch Savings and Investment Plan; and John Does 1-30 | S.D. New York | 07 CV 11615 | Being assigned to Hon. Leonard B. Sand |
| Plaintiff: James Conn, Individually and On Behalf of All Others Similarly Situated Defendants: Merrill Lynch & Co., Inc., E. Stanley O'Neal, Jeffrey N. Edwards, Lawrence A. Tosi, Armando M. Codina, Virgis W. Colbert, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, Aulana L. Peters, Joseph W. Prueher, Ann N. Reese, and Charles O. Rossotti | S.D. New York | 07 CV 11626 | Being assigned to Hon. Leonard B. Sand |

| Plaintiff: James Eastman, On Behalf of Himself and All Others Similarly Situated **Defendants:** Merrill Lynch & Co., Inc., E. Stanley O'Neal, Louis DiMaria, Alberto Cribiore, Armando M. Codina, Virgis W. Colbert, John D. Finnegan, Aulana L. Peters, Charles O. Rossotti, Jill K. Conway, Carol T. Christ, Judith Mayhew Jonas, Joseph W. Prueher, Ann N. Reese, David K. Newbigging, Investment Committee of the Merrill Lynch 401(k) Savings and Investment Plan, Administrative Committee of the Merrill Lynch 401(k) Savings and Investment Plan, and John Does 1-20 | S.D. New York | 08 CV 0058 | Being assigned to Hon. Leonard B. Sand |
|---|---|---|---|
| **Plaintiff:** Diane Blas, as Trustee of the RAY & VIRGINIA HUNTER INTERVIVOS TRUST, derivatively on behalf of the Nominal Defendant. **Defendants:** E. Stanley O'Neal, Ahmass L. Fakahany, Gregory J. Fleming and Jeffrey N. Edwards **Nominal Defendant:** Merrill Lynch & Co., Inc. | D. Delaware | Case no. 08-15 | TBA |
| **Plaintiff:** David Eidman, Derivatively on Behalf of Merrill Lynch & Co., Inc. **Defendants:** Ernest Stanley O'Neal, Carol T. Christ, Armando M. Codina, Virgis W. Colbert, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, Aulana L. Peters, Joseph W. Prueher, Ann N. Reese, Charles O. Rossotti | D. New Jersey | TBA | TBA |

Michael R. Griffinger
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102-5310
mgriffinger@gibbonslaw.com
Tel: 973-596-4500
Fax: 973-639-6294

Jay B. Kasner (*Pro Hac Vice* Application to be Filed)
Scott D. Musoff
**SKADDEN, ARPS, SLATE,**
  **MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
Tel: 212-735-3000
Fax: 212-735-2000

*Co-Counsel for Nominal Defendant*
*Merrill Lynch & Co., Inc.*

<div align="center">

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

</div>

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| DAVID EIDMAN, Derivatively on Behalf of MERRILL LYNCH & CO., INC., | **FILED ELECTRONICALLY** |
| Plaintiff, | Civil Action No. 08-126 (SDW) (MCA) |
| vs. | Hon. Susan D. Wigenton, U.S.D.J. |
| ERNEST STANLEY O'NEAL, CAROL T. CHRIST, ARMANDO M. CODINA, VIRGIS W. COLBERT, ALBERTO CRIBIORE, JOHN D. FINNEGAN, JUDITH MAYHEW JONAS, AULANA L. PETERS, JOSEPH W. PRUEHER, ANN N. REESE and CHARLES O. ROSOTTI, | Motion Day: February 19, 2008 |
| Defendants, | **MEMORANDUM IN SUPPORT OF THE MOTION TO STAY PROCEEDINGS PENDING DETERMINATION OF THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION** |
| -and- | |
| MERRILL LYNCH & CO., INC., | |
| Nominal Defendant. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

#1259945 v2
101454-61824

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................................1

FACTUAL BACKGROUND ......................................................................................4

ARGUMENT ...............................................................................................................5

THIS ACTION SHOULD BE STAYED PENDING
RESOLUTION OF THE MDL TRANSFER MOTION ............................................5

    A.    The Balance of Factors Favors The Issuance of a Stay ..........................5

CONCLUSION.............................................................................................................9

#1259945 v2
101454-61824

# TABLE OF CASES

Aikins v. Microsoft Corp., No. 00-0242, 2000 U.S. Dist. LEXIS 4371
  (E.D. La. Mar. 24, 2000) ...............................................................................7

American Seafood, Inc. v. Magnolia Processing, Inc., Civ. A. Nos. 92-
  1030, 92-1086, 1992 U.S. Dist. LEXIS 7374 (E.D. Pa. May 6, 1992)..............3, 6, 7, 8

Arthur-Magna, Inc. v. Del-Val Finance Corp., Civ. A. No. 90-4378, 1991
  U.S. Dist. LEXIS 1431 (D.N.J. Feb. 1, 1991) ........................................2, 3, 6

Commonwealth Insurance Co. v. Underwriters, Inc., 846 F.2d 196 (3d Cir.
  1988) .............................................................................................................5

Hertz Corp. v. Gator Corp., 250 F. Supp. 2d 421 (D.N.J. 2003)....................................2, 6

Landis v. North America Co., 299 U.S. 248 (1936)...........................................................5

MacAlister v. Guterma, 263 F.2d 65 (2d Cir. 1958) ..........................................................8

Medical Society v. Connecticut General Corp., 187 F. Supp. 2d 89
  (S.D.N.Y. 2001)............................................................................................3

Nekritz v. Canary Capital Partners, LLC, Civ. A. No. 03-5081 (DRD),
  2004 U.S. Dist. LEXIS 12473 (D.N.J. Jan. 12, 2004)...........................................2, 6, 8

Portnoy v. Zenith Laboratories, Civ. A. No. 86-3512, 1987 U.S. Dist.
  LEXIS 16134 (D.D.C. Apr. 21, 1987)........................................................3, 9

Register v. Bayer Corp., No. Civ. A. 02-1013, 2002 U.S. Dist. LEXIS
  13438 (E.D. La. July 16, 2002) .......................................................................9

Republic of Venezuela v. Philip Morris Cos., No. 99-0586-CIV, 1999 U.S.
  Dist. LEXIS 22742 (S.D. Fla. Apr. 28, 1998) .......................................................5, 8, 9

Rivers v. Walt Disney Co., 980 F. Supp. 1358 (C.D. Cal. 1997)............................3, 5, 6, 7

Rosenfeld v. Hartford Fire Insurance Co., Nos. 88 Civ. 2153, 88 Civ.
  2252, 1988 U.S. Dist. LEXIS 4068 (S.D.N.Y. May 12, 1988) ................................3, 8

Scott v. Bayer Corp., No. Civ. A. 03-2888, 2004 U.S. Dist. LEXIS 371
  (E.D. La. Jan. 12, 2004)................................................................................3

Sevel v. AOL Time Warner, Inc., 232 F. Supp. 2d 615 (E.D. Va. 2002)............................3

#1259945 v2
101454-61824

Tench v. Jackson National Life Insurance Co., No. 99 C 5182, 1999 U.S.
    Dist. LEXIS 18023 (N.D. Ill. Nov. 10, 1999) ............................................................3, 7

Weinke v. Microsoft Corp., 84 F. Supp. 2d 989 (E.D. Wis. 2000) .................................3, 7

-iii-

#1259945 v2
101454-61824

Merrill Lynch & Co., Inc. ("Merrill Lynch"), on its own behalf and for the benefit of all defendants, respectfully submits this Memorandum in support of its motion to stay all proceedings in this action until 10 days after the Judicial Panel on Multidistrict Litigation (the "MDL Panel") rules on Merrill Lynch's motion to transfer this related action for coordination for pretrial purposes to the United States District Court for the Southern District of New York where 17 other related federal actions are currently pending. Merrill Lynch has been advised that the MDL Panel will hear argument on this application in March, 2008.

## PRELIMINARY STATEMENT

This case is one of 20 federal actions[1] (collectively, "the Actions") commenced in the wake of Merrill Lynch's announcement that it had been adversely impacted -- as with many financial institutions throughout the country -- by recent developments in the credit markets, including relating to so-called subprime loans. The actions allege violations of the federal securities laws; violations of ERISA; breaches of fiduciary duty; abuse of control and/or corporate waste; and/or claims for indemnity/contribution. Currently, 17 of the Actions are pending in the United States District Court for the Southern District of New York. The purported derivative action in this Court is one of only two federal actions pending outside of the Southern District of New York. This is the only action pending in the District of New Jersey. This action and another purported derivative action pending in the District of Delaware are duplicative of the three derivative actions pending in the Southern District of New York. Merrill Lynch

---

[1]    One action, Savena v. O'Neal, 07 CV 9837 (LBS) (SDNY), has subsequently been dismissed.

filed its motion to transfer all related actions to the Southern District of New York before the MDL Panel on January 9, 2007 and anticipates that the motion will be heard in the March session.

In the absence of a stay of this action, the ability of the MDL Panel to advance the just and efficient conduct of the Actions by avoiding inconsistent pretrial rulings, avoiding duplicative proceedings and conserving the resources of the parties and the judiciary will be adversely impacted. The inherent concerns associated with multiple related actions involving many of the same legal and factual issues proceeding simultaneously in different places are particularly acute where the duplicative litigation involves derivative actions – shareholder actions purportedly brought on behalf of and for the benefit of the corporation.

Accordingly, courts in this circuit have routinely stayed actions – even in cases where dispositive motions were pending – until the MDL Panel determined an appropriate transferee court for the purpose of pretrial coordination or consolidation. See Hertz Corp. v. Gator Corp., 250 F. Supp. 2d 421, 428 (D.N.J. 2003) (court stayed case, including a pending motion for preliminary injunction, until the MDL Panel ruled on a transfer motion); Nekritz v. Canary Capital Partners, LLC, Civ. A. No. 03-5081 (DRD), 2004 U.S. Dist. LEXIS 12473, at *14 (D.N.J. Jan. 12, 2004) (court found that interests of judicial economy were best served by a stay pending MDL Panel decision on transfer motion, with little or no disadvantage to the plaintiff); Arthur-Magna, Inc. v. Del-Val Fin. Corp., Civ. A. No. 90-4378, 1991 U.S. Dist. LEXIS 1431, at *4 (D.N.J. Feb. 1, 1991) (court stayed case pending MDL Panel decision on transfer motion, finding that "even if a temporary stay can be characterized as a delay prejudicial to plaintiffs, there are

2

considerations of judicial economy and hardship to defendants that are compelling enough to warrant such a delay."); Am. Seafood, Inc. v. Magnolia Processing, Inc., Civ. A. Nos. 92-1030, 92-1086, 1992 U.S. Dist. LEXIS 7374, at *3 (E.D. Pa. May 6, 1992) (court granted stay pending MDL Panel decision to conserve judicial resources).[2]

---

[2]  Moreover, courts in virtually every other circuit have stayed matters before them pending the MDL Panel's determination of a transferee jurisdiction, citing as the overriding purpose of the stay to enhance the just and efficient coordination of multidistrict litigation.  See, e.g., Sevel v. AOL Time Warner, Inc., 232 F. Supp. 2d 615, 616 (E.D. Va. 2002) (court stayed proceedings concerning choice of lead plaintiff and lead counsel pending MDL Panel decision on motion to transfer to avoid confusion and duplication of effort, and to further the purposes of the MDL Panel proceeding); Rosenfeld v. Hartford Fire Ins. Co., Nos. 88 Civ. 2153, 88 Civ. 2252, 1988 U.S. Dist. LEXIS 4068, at *4 (S.D.N.Y. May 12, 1988) (court held that a stay pending an MDL Panel decision on a transfer motion was warranted to further the underlying purposes of coordination of multidistrict litigation: "'to promote the just and efficient conduct of such actions.' 28 U.S.C. § 1407(a)"); Scott v. Bayer Corp., No. Civ. A. 03-2888, 2004 U.S. Dist. LEXIS 371, at *5 (E.D. La. Jan. 12, 2004) (court grants stay pending ruling by MDL Panel, finding that the plaintiff will not be unduly prejudiced and the stay will serve interests of judicial economy and minimize risk of inconsistent rulings in related cases); Portnoy v. Zenith Labs., Civ. A. No. 86-3512, 1987 U.S. Dist. LEXIS 16134, at *2 (D.D.C. Apr. 21, 1987) (court stayed case pending decision on transfer by the MDL Panel, finding that stay would further judicial economy and that plaintiffs would not be prejudiced by minimal stay); Rivers v. Walt Disney Co., 980 F. Supp. 1358, 1362 (C.D. Cal. 1997) (the "majority of courts have concluded that it is often appropriate to stay preliminary pretrial proceedings while a motion to transfer and consolidate is pending with the MDL Panel because of the judicial resources that are conserved."); Med. Soc'y v. Conn. Gen. Corp., 187 F. Supp. 2d 89, 91 (S.D.N.Y. 2001) (court found that a stay pending a decision on MDL transfer was the "preferable practice"); Weinke v. Microsoft Corp., 84 F. Supp. 2d 989, 990 (E.D. Wis. 2000) (court granted stay pending MDL Panel transfer decision after finding that it would serve the interests of judicial economy and avoid inconsistent results in multiple venues); Tench v. Jackson Nat'l Life Ins. Co., No. 99 C 5182, 1999 U.S. Dist. LEXIS 18023, at *5 (N.D. Ill. Nov. 10, 1999) (court stayed action pending MDL Panel transfer decision after finding that stay would serve judicial economy).

3

## FACTUAL BACKGROUND

On October 24, 2007, Merrill Lynch announced its third quarter results, including a write-down of $7.9 billion across CDOs and U.S. subprime mortgages. Following that announcement, 18 related actions were filed in, or removed to, the Southern District of New York. The complaints in the Actions allege the same basic facts concerning Merrill Lynch's exposure to the CDO and subprime markets; the alleged issuance of false and misleading information in public filings with the Securities and Exchange Commission and elsewhere relating thereto; and the alleged conduct of Merrill Lynch senior management and/or its board of directors. Of the 18 Actions that were commenced in, or removed to, the Southern District of New York, three are derivative actions, five are federal securities laws actions and ten are ERISA actions. They are assigned, or are in the process of being assigned, to the Honorable Leonard B. Sand.

Two purported derivative actions were filed in the Southern District of New York on November 1 and 8, 2007. A third purported derivative action was removed from the Supreme Court of the State of New York to the Southern District of New York on December 7, 2007 (together with the November 1 and 8 actions, the "Southern District Derivative Actions"). More than four weeks after the first action was filed in the Southern District of New York, this purported derivative action was commenced in the Superior Court of the State of New Jersey. Merrill Lynch removed this action and filed a motion on January 9, 2008 to have it transferred to the Southern District of New York through the MDL Panel. (See January 14, 2008 Declaration of Scott D. Musoff ("Musoff Decl.") at ¶ 2.)

4

Plaintiffs in the Southern District Derivative Actions allege that the actions were brought on behalf, and for the benefit, of Merrill Lynch against certain members of the board of directors and executive officers.  The challenged conduct arises from the adverse impact on Merrill Lynch from its exposure to CDO and subprime related markets, as well as the alleged dissemination by Merrill Lynch of false and misleading statements related thereto.  Here, plaintiff similarly alleges that the "Director Defendants should not have allowed this risky exposure and should have seen the red flags associated with maintaining the abnormal CDO positions."  (Compl. ¶ 46.)  Plaintiff also alleges that "Defendants caused false statements to be issued in SEC filings."  (Compl. ¶ 61.)

## ARGUMENT

### THIS ACTION SHOULD BE STAYED PENDING RESOLUTION OF THE MDL TRANSFER MOTION

**A.**   **The Balance of Factors Favors The Issuance of a Stay**

This Court enjoys broad discretion to issue a stay as part of its inherent power "to control . . . its docket" in the interest of "economy of time and effort for itself, for counsel, and for litigants."  Landis v. N. Am. Co., 299 U.S. 248, 254 (1936); see also Commonwealth Ins. Co. v. Underwriters, Inc., 846 F.2d 196, 199 (3d Cir. 1988).  When specifically considering whether to grant a stay pending a decision by the MDL Panel, courts look to three factors to decide whether a stay is proper:  prejudice to the non-movant, hardship and inequity to the movant if there is no stay, and the impact on judicial resources.  See Republic of Venezuela v. Philip Morris Cos., No. 99-0586-CIV, 1999 U.S. Dist. LEXIS 22742, at *6 (S.D. Fla. Apr. 28, 1998); Rivers v. Walt Disney Co., 980 F.

5

Supp. 1358, 1360 (C.D. Cal. 1997).  The circumstances of this case strongly favor issuance of a brief stay pending the MDL Panel's decision.

The aforementioned concerns of economy and effort for the Court and litigants are particularly pronounced when the MDL Panel is considering transferring actions or consolidation and coordination of proceedings.  Accordingly, as one district court has recognized, it is "often appropriate to stay preliminary pretrial proceedings while a motion to transfer and consolidate is pending with the MDL panel because of the judicial resources that are conserved."  Rivers, 980 F. Supp. at 1362.

The reasons for this familiar practice are evident.  See Hertz Corp., 250 F. Supp. 2d at 428 (court stayed case, including a pending motion for preliminary injunction, until the MDL Panel ruled on a transfer motion); Nekritz, 2004 U.S. Dist. LEXIS 12473, at *14 (court found that interests of judicial economy were best served by a stay pending MDL Panel decision on transfer motion, with little or no disadvantage to the plaintiff); Arthur-Magna, 1991 U.S. Dist. LEXIS 1431, at *4 (court stayed case pending MDL Panel decision on transfer motion, finding that "even if a temporary stay can be characterized as a delay prejudicial to plaintiffs, there are considerations of judicial economy and hardship to defendants that are compelling enough to warrant such a delay."); Am. Seafood, 1992 U.S. Dist. LEXIS 7374, at *3 (court granted stay pending MDL Panel decision to conserve judicial resources).  First, as explained at length in Rivers, judicial resources are, more or less by definition, conserved.  See Rivers, 980 F. Supp. at 1361-62.  When the MDL Panel is considering a motion to transfer, if the transferor court expends resources on the case and the transfer subsequently occurs, the court "will have needlessly expended its energies familiarizing itself with the intricacies

6

of a case that would be heard by another judge." Id. at 1360. In the same vein, efforts "concerning case management will most likely have to be replicated by the [new] judge . . . ." Id. at 1360-61. "[S]tays are frequently granted [in these circumstances] to . . . preserve valuable judicial resources." Tench, 1999 U.S. Dist. LEXIS 18023, at *3. Other cases invariably articulate similar concerns. See also Weinke, 84 F. Supp. 2d at 990 (granting stay of action, including remand motion, noting that "in light of the pending MDL Panel ruling on transfer, this action should be stayed in the interest of judicial economy and to avoid inconsistent results."); Aikins v. Microsoft Corp., No. 00-0242, 2000 U.S. Dist. LEXIS 4371, at *5 (E.D. La. Mar. 24, 2000) ("[T]he interests of judicial economy would best be served by granting a stay."). Thus, as a matter of common sense, there can be no question that, where, as here, the MDL Panel is expected to rule on the transfer of actions, and the filed action is only in its very preliminary stages, the factor implicating judicial resources weighs overwhelmingly in favor of a stay.

Second, equally clear from the cases is that, again practically by definition, defendants who must defend actions in multiple jurisdictions will be prejudiced by the absence of a stay under these circumstances. In this case, for example, in the absence of a stay the defendants risk multiple proceedings on the same issues. Such circumstances greatly favor a stay, and the cases so recognize. See, e.g., Aikins, 2000 U.S. Dist. LEXIS 4371, at *5 (reasoning that stay pending MDL Panel decision was warranted because defendant "would suffer a considerable hardship and inequity if forced to simultaneously litigate multiple suits in multiple courts" as well as "potentially suffer conflicting rulings by different judges ..."); accord Am. Seafood, 1992 U.S. Dist. LEXIS 7374, at *6 ("The duplicative motion practice . . . demonstrate[s] that judicial economy and prejudice to the

7

defendants weigh heavily in favor of the stay."); see also Rosenfeld, 1988 U.S. Dist. LEXIS 4068, at *4 (holding that stays pending decision by MDL Panel were "warranted . . . to further the underlying purposes of coordination of multidistrict litigation . . .").

These issues are of greater concern when derivative actions are involved. In a derivative action, the plaintiff purports to bring the action on behalf, and for the benefit, of the corporation. To force the corporation to defend nearly identical derivative actions in multiple forums would be an utter waste of corporate resources – the very resources the plaintiff purports to seek to protect. See, e.g., MacAlister v. Guterma, 263 F.2d 65, 68 (2d Cir. 1958) (derivative actions often call for "special treatment" because the cost of defending multiple suits by stockholders "may well do serious harm to the very corporation in whose interest they are supposedly brought"). Accordingly, the MDL's transfer of those two actions to the Southern District of New York will conserve the resources of the judiciary, Merrill Lynch and the other parties.

The third, and only other factor to be considered in deciding the propriety of a stay, is whether there will be prejudice to the plaintiffs. In the circumstances of this case, the answer is an unequivocal "no." This action was only recently commenced. Moreover, the stay will be of a modest duration. Based on information Merrill Lynch has received, the MDL Panel is sitting in March to consider the transfer request, and a decision likely will issue promptly thereafter. (See Musoff Decl. at ¶ 4.) Under similar circumstances, courts have repeatedly held that a brief delay causes no prejudice to the plaintiffs. See, e.g., Nekritz, 2004 U.S. Dist. LEXIS 12473, at *15; see also Republic of Venezuela, 1999 U.S. Dist. LEXIS 22742, at *6 (holding that the "brief stay" pending the

8

MDL Panel's decision would not prejudice plaintiff); Register v. Bayer Corp., No. Civ. A. 02-1013, 2002 U.S. Dist. LEXIS 13438, at *4 (E.D. La. July 16, 2002) (holding that plaintiff would not be prejudiced by a temporary stay until the MDL Panel's decision); Portnoy, 1987 U.S. Dist. LEXIS 16134, at *2 (granting stay where plaintiffs would not be prejudiced by "a short-term stay").

## CONCLUSION

For all the foregoing reasons, this action should be stayed until 10 days after the MDL Panel decides Merrill Lynch's motion to transfer.

Dated: Newark, New Jersey
     January 14, 2008            GIBBONS P.C.

                                      By: s/ Michael R. Griffinger
                                         Michael R. Griffinger
                                         GIBBONS P.C.
                                         One Gateway Center
                                         Newark, NJ 07102-5310
                                         mgriffinger@gibbonslaw.com
                                         Tel: 973-596-4500
                                         Fax: 973-639-6294

                                         *Co-Counsel for Nominal Defendant*
                                         *Merrill Lynch & Co., Inc.*

Of counsel:

             Jay B. Kasner
             Scott D. Musoff
             SKADDEN, ARPS, SLATE,
              MEAGHER & FLOM LLP
             Four Times Square
             New York, New York 10036
             Tel: 212-735-3000
             Fax: 212-735-2000

             *Co-Counsel for Nominal Defendant*
             *Merrill Lynch & Co., Inc.*

<div align="center">9</div>

#1259945 v2
101454-61824

Michael R. Griffinger
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102-5310
mgriffinger@gibbonslaw.com
Tel: 973-596-4500
Fax: 973-639-6294

Jay B. Kasner (*Pro Hac Vice* Application to be Filed)
Scott D. Musoff
**SKADDEN, ARPS, SLATE,**
  **MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
Tel: 212-735-3000
Fax: 212-735-2000

*Co-Counsel for Nominal Defendant*
*Merrill Lynch & Co., Inc.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| DAVID EIDMAN, Derivatively on Behalf of MERRILL LYNCH & CO., INC., | **FILED ELECTRONICALLY** |
| Plaintiff, | : |
| | : Civil Action No. 08-126 (SDW) (MCA) |
| vs. | : |
| ERNEST STANLEY O'NEAL, CAROL T. CHRIST, ARMANDO M. CODINA, VIRGIS W. COLBERT, ALBERTO CRIBIORE, JOHN D. FINNEGAN, JUDITH MAYHEW JONAS, AULANA L. PETERS, JOSEPH W. PRUEHER, ANN N. REESE and CHARLES O. ROSOTTI, | : **[PROPOSED] ORDER GRANTING STAY OF PROCEEDINGS PENDING DETERMINATION OF THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION** |
| Defendants, | : |
| -and- | : |
| MERRILL LYNCH & CO., INC., | : |
| Nominal Defendant. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

#1260100 v1
101454-61824

This matter having been presented to the Court upon the motion of Nominal Defendant Merrill Lynch & Co., Inc. ("Merrill Lynch") for an Order staying all proceedings in this matter until ten (10) days after the Judicial Panel on Multidistrict Litigation (the "MDL Panel") has rendered a final determination on Merrill Lynch's motion to transfer this action, among other things, to the United States District Court for the Southern District of New York for consolidation or coordination with 17 other related federal actions currently pending there and to so designate those actions as MDL [    ]: *In re Merrill Lynch & Co., Inc. Securities, ERISA and Derivative Litigation* (the "Requested MDL Proceeding"); and the court having considered Merrill Lynch's Memorandum in Support of the Motion to Stay Proceedings Pending Determination of the Judicial Panel on Multidistrict Litigation, the January 14, 2008 Declaration of Scott D. Musoff and the exhibits attached thereto, and all other papers submitted in support of or in opposition to, the same motion, and the arguments of counsel, if any, and for good cause shown;

IT IS on this ___ day of _____ 2008,

ORDERED that Merrill Lynch's motion for a stay of all proceedings until ten (10) days after the final determination by the MDL Panel on Merrill Lynch's Motion to Transfer this matter, among other things, to the Requested MDL Proceeding shall be and hereby is GRANTED.

_____
Honorable Susan D. Wigenton
United States District Judge

-2-

Michael R. Griffinger
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102-5310
mgriffinger@gibbonslaw.com
Tel: 973-596-4500
Fax: 973-639-6294

Jay B. Kasner
Scott D. Musoff
**SKADDEN, ARPS, SLATE,**
  **MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
Tel: 212-735-3000
Fax: 212-735-2000

*Co-counsel for Nominal Defendant*
*Merrill Lynch & Co., Inc.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |
|---|---|
| DAVID EIDMAN, Derivatively on Behalf of MERRILL LYNCH & CO., INC., | : Civil Action No. 08-126 (SDW) (MCA) |
| Plaintiff, | : **CERTIFICATE OF SERVICE** |
| vs. | : **Document Filed Electronically** |
| ERNEST STANLEY O'NEAL, CAROL T. CHRIST, ARMANDO M. CODINA, VIRGIS W. COLBERT, ALBERTO CRIBIORE, JOHN D. FINNEGAN, JUDITH MAYHEW JONAS, AULANA L. PETERS, JOSEPH W. PRUEHER, ANN N. REESE and CHARLES O. ROSOTTI, | : |
| Defendants, | : |
| -and- | : |
| MERRILL LYNCH & CO., INC., | : |
| Nominal Defendant. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

#1260008 v1
101454-61824

I, **MELISSA C. FULTON**, hereby certify as follows:

1.      I am an associate of the law firm of Gibbons P.C., co-counsel for nominal defendant Merrill Lynch & Co., Inc. ("Merrill Lynch") in the above-captioned action.

2.      On January 14, 2008, pursuant to Local Civil Rule 5.2, I electronically filed and served (i) Merrill Lynch's Notice of Motion to Stay Proceedings Pending Determination of the Judicial Panel on Multidistrict Litigation, (ii) Declaration of Scott D. Musoff in Support of Merrill Lynch & Co., Inc.'s Motion to Stay Proceedings Pending Determination of the Judicial Panel on Multidistrict Litigation, (iii) Merrill Lynch's Memorandum in Support of the Motion to Stay Proceedings Pending Determination of the Judicial Panel on Multidistrict Litigation, (iv) Merrill Lynch's [Proposed] Order Granting Stay of Proceedings Pending Determination of the Judicial Panel on Multidistrict Litigation and (v) this Certificate of Service; upon the following counsel:

James V. Bashian, Esq.                  Paul O. Paradis, Esq.
LAW OFFICES OF                          HORWITZ, HORWITZ & PARADIS
JAMES V. BASHIAN, P.C.                   28 West 44th Street, 16th Floor
271 Route 46 West, Suite F207           New York, NY 10036
Fairfield, NJ 07004
                                        *Attorneys for Plaintiffs*
*Attorneys for Plaintiffs*

3.      Also on January 14, 2008, I caused true and correct copies of (i) Merrill Lynch's Notice of Motion to Stay Proceedings Pending Determination of the Judicial Panel on Multidistrict Litigation, (ii) Declaration of Scott D. Musoff in Support of Merrill Lynch & Co., Inc.'s Motion to Stay Proceedings Pending Determination of the Judicial Panel on Multidistrict Litigation, (iii) Merrill Lynch's Memorandum in Support of the Motion to Stay Proceedings Pending Determination of the Judicial Panel on Multidistrict Litigation, (iv) Merrill Lynch's [Proposed] Order Granting Stay of Proceedings Pending Determination of the Judicial Panel on

2

Multidistrict Litigation and (v) this Certificate of Service; to be served upon the following counsel by Federal Express and regular mail:

Michael J. Chepiga, Esq.
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017-3954

Dennis J. Block, Esq.
CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, NY 10281

*Attorneys for Defendant Ernest Stanley O'Neal*

*Attorneys for Defendants Carol T. Christ, Armando M. Codina, Virgis W. Colbert, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, Aulana L. Peters, Joseph W. Prueher, Ann N. Reese and Charles O. Rossotti*

     I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

MELISSA C. FULTON

Dated: January 14, 2008
Newark, New Jersey

3

#1260008 v1
101454-61824

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

|  |  |  |
|---|---|---|
| IN RE MERRILL LYNCH & CO., INC. SECURITIES, ERISA AND DERIVATIVE LITIGATION | ) ) ) ) ) | MDL Docket No. _____ <br><br> <u>MOTION TO TRANSFER</u> |

        Merrill Lynch & Co., Inc. ("Merrill Lynch") respectfully moves the Panel for an

Order, pursuant to 28 U.S.C. § 1407, centralizing 20 actions by transferring two related actions

and any tag-along actions to the United States District Court for the Southern District of New

York for consolidation or coordination with the 18 related actions currently pending in that

District.  In support of such transfer, and as set forth in greater detail in the accompanying

Memorandum of Law, Merrill Lynch states the following:

<u>BASIS FOR THIS MOTION</u>

       1.    As of January 9, 2008, 20 federal actions have been filed, including 18 in

the United States District Court for the Southern District of New York (the "Southern District

Actions"), alleging (among other things) that Merrill Lynch and various individually named

defendants violated, among other things, federal securities laws and ERISA, in connection with

Merrill Lynch's announcements that its third quarter financial results had been impacted by adverse developments in the credit markets, including relating to collateralized debt obligations ("CDOs") and subprime mortgages. Two such actions were initially commenced in state courts and have since been removed and are pending in the United States District Court for the District of Delaware captioned <u>Diane Blas (Trustee to Hunter Inter Vivos Trust) v. E. Stanley O'Neal, et al.</u>, Case No. 08-15 (D. Del.) and the United States District Court for the District of New Jersey captioned <u>David Eidman v. Ernest Stanley O'Neal, et al.</u>, 08 CV ____ (D.N.J.) (collectively, the "Related Actions").

    2.     This motion seeks the transfer of the Related Actions and any subsequently filed tag-along actions to the United States District Court for the Southern District of New York. The Southern District Actions are either before or, we understand, are in the process of being assigned to the Honorable Leonard B. Sand of that Court. The Related Actions and Southern District Actions are reflected in a schedule provided in accordance with J.P.M.L. Rule 7.2(a)(ii), which is provided as Exhibit A to the Memorandum and is also annexed hereto for the convenience of the Panel.

    3.     Because the Related Actions and the Southern District Actions arise from the same set of alleged facts and because many of the individually named defendants in the Related Actions and the Southern District Actions are common, the Related Actions should be transferred to the Southern District of New York for the reasons listed herein and the reasons set forth in Merrill Lynch's Memorandum of Law in Support of Motion for Transfer. Absent transfer, the parties and courts will face the burden and expense of:

2

a. Inconsistent pretrial rulings on substantive matters, including motions to dismiss and/or for summary judgment;

b. Needlessly duplicative discovery and discovery disputes if motions to dismiss are not granted; and

c. Requiring defendants to litigate the same issues in two different judicial districts on different schedules.

4. Transfer of the Actions and any tag-along actions to the Southern District of New York would best serve the convenience of the parties and witnesses and promote the just and efficient conduct of the actions. These concerns are particularly acute where the duplicative litigation involves derivative actions – shareholder actions purportedly brought on behalf of and for the benefit of the corporation. Here, the only two federal actions pending outside of the Southern District of New York are two derivative actions which are duplicative of the three derivative actions pending in the Southern District of New York.

5. New York is the most appropriate venue because, among other things:

a. Eighteen actions, including the first-filed action, already are pending in the Southern District of New York as of January 9, 2008;

b. Relevant documents necessary for discovery are located in New York; and

c. Defendants and their counsel are located in or around New York.

6. Discovery has not commenced in any of the Related Actions or the Southern District Actions.

WHEREFORE, Merrill Lynch respectfully requests an Order:

(i) Transferring the Related Actions to the Southern District of New York for coordination or consolidation for pretrial purposes with the Southern District Actions pending there;

3

(ii)     Transferring any tag-along actions to the Southern District of New York for coordination or consolidation for pretrial purposes with the actions pending there; and

(iii)    For such other and further relief as the Panel may deem just and proper.

Date:   New York, New York
        January 9, 2008

Respectfully submitted,

_____

Jay B. Kasner
Scott D. Musoff
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Merrill Lynch & Co., Inc.

4

| MDL-_____ - In re Merrill Lynch & Co., Inc. Securities, ERISA and Derivative Litigation | | | |
|---|---|---|---|
| **Case Captions** | **Court** | **Civil Action No.** | **Judge** |
| **Plaintiff:** Life Enrichment Foundation, Individually and On Behalf of All Others Similarly Situated<br>**Defendants:** Merrill Lynch & Co., Inc., E. Stanley O'Neal, Ahmass L. Fakahany, Gregory J. Fleming and Jeffrey N. Edwards | S.D. New York | 07 CV 9633 | Hon. Leonard B. Sand |
| **Plaintiff:** Patricia Arthur, Derivatively on Behalf of Merrill Lynch & Co., Inc.<br>**Defendants:** E. Stanley O'Neal, Ahmass L. Fakahany, Gregory J. Fleming, Jeffrey N. Edwards, Carol T. Christ, Armando D. Codina, Virgis W. Colbert, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, Joseph W. Prueher, Ann N. Reese, Charles O. Rossotti<br>**Nominal Defendant:** Merrill Lynch & Co., Inc. | S.D. New York | 07 CV 9696 | Hon. Leonard B. Sand |
| **Plaintiff:** Michael J. Savena, Individually and On Behalf of All Others Similarly Situated<br>**Defendants:** Merrill Lynch & Co., Inc., E. Stanley O'Neal, Ahmass L. Fakahany, Gregory J. Fleming and Jeffrey N. Edwards | S.D. New York | 07 CV 9837 | Hon. Leonard B. Sand |

| | | | |
|---|---|---|---|
| **Plaintiff:** Miriam Loveman, derivatively and on behalf of Merrill Lynch & Co., Inc. **Defendants:** E. Stanley O'Neal, Ahmass L. Fakahany, Gregory J. Fleming, Jeffrey N. Edwards, Carol T. Christ, Armando D. Codina, Virgis W. Colbert, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, Joseph W. Prueher, Ann N. Reese, Charles O. Rossotti **Nominal Defendant:** Merrill Lynch & Co., Inc. | S.D. New York | 07 CV 9888 | Hon. Leonard B. Sand |
| **Plaintiff:** Elizabeth Estey, Individually and On Behalf of All Others Similarly Situated **Defendants:** Merrill Lynch & Co., Inc., Merrill Lynch & Co., Inc. Plan "Investment Committee", Merrill Lynch & Co., Inc. Plan Administrative Committee, Merrill Lynch & Co., Inc. Management Development and Compensation Committee, Louis DiMaria, E. Stanley O'Neal, Alberto Cribiore, Armando M. Codina, Virgis W. Colbert, John D. Finnegan, Aulana L. Peters and John Does 1-10 | S.D. New York | 07 CV 10268 | Hon. Leonard B. Sand |
| **Plaintiff:** Mary Gidaro, Individually and on behalf of all others similarly situated **Defendants:** Merrill Lynch & Co., Inc., Stan O'Neal, Lou DiMaria, Investment Committee of the Merrill Lynch Savings and Investment Plan, Administrative Committee of the Merrill Lynch Savings and Investment Plan, and John Does 1-30 | S.D. New York | 07 CV 10273 | Hon. Leonard B. Sand |

| Plaintiff: Tara Moore, Individually and On Behalf of All Others Similarly Situated Defendants: Merrill Lynch & Co., Inc., Merrill Lynch & Co., Inc. Plan "Investment Committee", Merrill Lynch & Co., Inc. Plan Administrative Committee, Merrill Lynch & Co., Inc. Management Development and Compensation Committee, Louis DiMaria, E. Stanley O'Neal, Alberto Cribiore, Armando M. Codina, Virgis W. Colbert, John D. Finnegan, Aulana L. Peters and John Does 1-10 | S.D. New York | 07 CV 10398 | Hon. Leonard B. Sand |
| Plaintiff: Gregory Yashgur, on Behalf of Himself and a Class of Persons Similarly Situated Defendants: Merrill Lynch & Co., Inc., Administrative Committee of the Merrill Lynch & Co., Inc. 401(k) Saving and Investment Plan, Louis DiMaria, Stan O'Neal, Alberto Cribiore, Carol T. Christ, Armando M. Codina, Virgis W. Colbert, John D. Finnegan, Judith Mayhew Jonas, Aulana L. Peters, Joseph W. Prueher, Ann N. Reese, and Charles O. Rossotti, and John Does 1-30 | S.D. New York | 07 CV 10569 | Being assigned to Hon. Leonard B. Sand |

| Plaintiff: Christine Donlon, on Behalf of All Others Similarly Situated<br>**Defendants:** Merrill Lynch & Co., Inc., E. Stanley O'Neal, Carol T. Christ, Armando M. Codina, Virgis W. Colbert, Jill K. Conway, Alberto Cribiore, Louis DiMaria, John D. Finnegan, Judith Mayhew Jonas, Aulana L. Peters, Joseph W. Prueher, Ann N. Reese, Charles O. Rossotti, John Does 1-20 (Being Current and Former Members of the Benefits Administration Committee of the Merrill Lynch & Co., Inc. Employee Stock Ownership Plan) and John Does 21-40 (Being Current and Former Members of the Investment Committee of the Merrill Lynch & Co., Inc. Employee Stock Ownership Plan) | S.D. New York | 07 CV 10661 | Hon. Leonard B. Sand |
| Plaintiff: Carl Esposito, Individually and On Behalf of All Others Similarly Situated<br>**Defendants:** Merrill Lynch & Co., Inc., E. Stanley O'Neal, Carol T. Christ, Armando M. Codina, Virgis W. Colbert, Jill K. Conway, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, David K. Newbigging, Aulana L. Peters, Joseph W. Prueher, Ann N. Reese, Charles O. Rossotti, Louis DiMaria, Peter Stingi and John and Jane Does 1-20 | S.D. New York | 07 CV 10687 | Being assigned to Hon. Leonard B. Sand |

| Plaintiff: Sean Shaughnessey, individually, on behalf of the Merill Lynch & Co., Inc. 401(k) Savings and Investment Plan, the Retirement Accumulation Plan, the Employee Stock Ownership Plan and all others similarly situated **Defendants:** Merrill Lynch & Co., Inc.; the Merrill Lynch Trust Company, FSB; Administrative Committee of the Merrill Lynch & Co., Inc. 401(k) Saving and Investment Plan, Louis DiMaria, John Does 1 to 20; the Merrill Lynch & Co., Inc. Investment Committee; John Does 20 to 40; Management Development and Compensation Committee of the Merrill Lynch & Co., Inc. Board of Directors; Armando M. Codina, Virgis W. Colbert, Alberto Cribiore, John D. Finnegan and Aulana L. Peters | S.D. New York | 07 CV 10710 | Being assigned to Hon. Leonard B. Sand |
|---|---|---|---|
| **Plaintiff:** Gary Kosseff, Individually and On Behalf of All Others Similarly Situated **Defendants:** Merrill Lynch & Co., Inc., E. Stanley O'Neal, Ahmass L. Fakahany, Gregory J. Fleming and Jeffrey N. Edwards | S.D. New York | 07 CV 10984 | Hon. Leonard B. Sand |
| **Plaintiffs:** Barbara Boland and Anna Molin, individually and on behalf of all others similarly situated **Defendants:** Merrill Lynch & Co., Inc., E. Stanley O'Neal, Carol T. Christ, Armando M. Codina, Virgis W. Colbert, Jill K. Conway, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, David K. Newbigging, Aulana L. Peters, Joseph W. Prueher, Ann N. Reese, Charles O. Rossotti, Louis DiMaria, Peter Stingi and John and Jane Does 1-20 | S.D. New York | 07 CV 11054 | Being assigned to Hon. Leonard B. Sand |

| **Plaintiff:** Robert R. Garber, Individually and On Behalf of All Others Similarly Situated<br>**Defendants:** Merrill Lynch & Co., Inc., E. Stanley O'Neal, Ahmass L. Fakahany, Gregory J. Fleming and Jeffrey N. Edwards | S.D. New York | 07 CV 11080 | Hon. Leonard B. Sand |
|---|---|---|---|
| **Plaintiff:** Operative Plasterers & Cement Masons Local 262 Pension and Annuity Funds, Derivatively On Behalf of Nominal Defendant Merill Lynch & Co., Inc.<br>**Defendants:** E. Stanley O'Neal, Ahmass L. Fakahany, Gregory J. Fleming, Jeffrey N. Edwards, Carol T. Christ, Armando D. Codina, Virgis W. Colbert, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, Joseph W. Prueher, Ann N. Reese, Charles O. Rossotti<br>**Nominal Defendant:** Merrill Lynch & Co., Inc. | S.D. New York | 07 CV 11085 | Hon. Leonard B. Sand |
| **Plaintiff:** Francis Lee Summers, III, individually and on behalf of all others similarly situated<br>**Defendants:** Merrill Lynch & Co., Inc.; Stan O'Neal; Lou DiMaria; Investment Committee of the Merrill Lynch Savings and Investment Plan; Administrative Committee of the Merrill Lynch Savings and Investment Plan; and John Does 1-30 | S.D. New York | 07 CV 11615 | Being assigned to Hon. Leonard B. Sand |
| **Plaintiff:** James Conn, Individually and On Behalf of All Others Similarly Situated<br>**Defendants:** Merrill Lynch & Co., Inc., E. Stanley O'Neal, Jeffrey N. Edwards, Lawrence A. Tosi, Armando M. Codina, Virgis W. Colbert, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, Aulana L. Peters, Joseph W. Prueher, Ann N. Reese, and Charles O. Rossotti | S.D. New York | 07 CV 11626 | Being assigned to Hon. Leonard B. Sand |

| Plaintiff: James Eastman, On Behalf of Himself and All Others Similarly Situated Defendants: Merrill Lynch & Co., Inc., E. Stanley O'Neal, Louis DiMaria, Alberto Cribiore, Armando M. Codina, Virgis W. Colbert, John D. Finnegan, Aulana L. Peters, Charles O. Rossotti, Jill K. Conway, Carol T. Christ, Judith Mayhew Jonas, Joseph W. Prueher, Ann N. Reese, David K. Newbigging, Investment Committee of the Merrill Lynch 401(k) Savings and Investment Plan, Administrative Committee of the Merrill Lynch 401(k) Savings and Investment Plan, and John Does 1-20 | S.D. New York | 08 CV 0058 | Being assigned to Hon. Leonard B. Sand |
|---|---|---|---|
| Plaintiff: Diane Blas, as Trustee of the RAY & VIRGINIA HUNTER INTERVIVOS TRUST, derivatively on behalf of the Nominal Defendant. Defendants: E. Stanley O'Neal, Ahmass L. Fakahany, Gregory J. Fleming and Jeffrey N. Edwards Nominal Defendant: Merrill Lynch & Co., Inc. | D. Delaware | Case no. 08-15 | TBA |
| Plaintiff: David Eidman, Derivatively on Behalf of Merrill Lynch & Co., Inc. Defendants: Ernest Stanley O'Neal, Carol T. Christ, Armando M. Codina, Virgis W. Colbert, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, Aulana L. Peters, Joseph W. Prueher, Ann N. Reese, Charles O. Rossotti | D. New Jersey | TBA | TBA |

RECEIVED-CLERK
U.S. DISTRICT COURT

2008 JAN 10 A II: 32

BEFORE THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | |
|---|---|
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ ) | |
| IN RE MERRILL LYNCH & CO., INC. ) | MDL DOCKET NO. _____ |
| SECURITIES, ERISA AND DERIVATIVE ) | |
| LITIGATION ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## MERRILL LYNCH & CO., INC.'S
## MOTION, PURSUANT TO 28 U.S.C. §1407, FOR
## CENTRALIZATION AND TRANSFER
## TO THE SOUTHERN DISTRICT OF NEW YORK

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Jay B. Kasner
Scott D. Musoff
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Merrill Lynch & Co., Inc.

## Table of Contents

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      1.    The Derivative Actions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
      2.    The Federal Securities Actions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
      3.    The ERISA Actions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ALL PENDING ACTIONS SHOULD BE CENTRALIZED IN,
AND THE RELATED ACTIONS SHOULD BE TRANSFERRED
TO, THE SOUTHERN DISTRICT OF NEW YORK . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.     The Actions Involve Common Questions of Fact    . . . . . . . . . . . . . . . . . . . . . . . . . . 7

II.    Pretrial Transfer and Coordination Will Advance
        the Just and Efficient Conduct of the Actions . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
     A.    Transfer Will Avoid Duplication of Discovery . . . . . . . . . . . . . . . . . . . . . . . . . 10
     B.    Transfer Will Avoid Inconsistent Pretrial Rulings . . . . . . . . . . . . . . . . . . . . . . . 11
     C.    Transfer Will Conserve the Resources of the Parties and the Judiciary . . . . . . . 12

III.   Transfer to the Southern District of New York Will
        Best Serve the Convenience of the Parties and Witnesses . . . . . . . . . . . . . . . . . 13
     A.    Location of Relevant Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
     B.    Location of Key Witnesses and Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
     C.    Other Related Factors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## TABLE OF AUTHORITIES

## CASES

In re Air Crash Disaster at Sioux City, Iowa, on July 19, 1989,
128 F.R.D. 131 (J.P.M.L. 1989) ..................................... 14

In re American Home Mortgage Securities Litigation,
2007 U.S. Dist. LEXIS 94723 (J.P.M.L. Dec. 19, 2007) .................. 10, 11,
13, 15

In re Bayou Hedge Funds Invest. Litigation, 429 F. Supp. 2d 1374
(J.P.M.L. 2006) ................................................. 14

In re Delphi Corp. Securities, Derivative & "ERISA" Litigation, 403 F.Supp.2d 1358
(J.P.M.L. 2005) ................................................... 9

In re Equity Funding Corp. of America Securities Litigation, 375 F. Supp. 1378
(J.P.M.L. 1974) ................................................... 9

In re Federal Home Loan Mortgage Corp. Securities & Derivative Litigation (NO. II),
303 F. Supp. 2d 1379 (J.P.M.L. 2004) ................................. 13

In re Federal National Mortgage Association Securities, Derivative &
"ERISA" Litigation, 370 F. Supp. 2d 1359 (J.P.M.L. 2005) .................. 9

In re Four Seasons Securities Laws Litigation, 361 F. Supp. 636 (J.P.M.L. 1973) ..... 7

In re General Motors Corp. Securities & Derivative Litigation,
429 F. Supp. 2d 1368 (J.P.M.L. 2006) ................................. 9

In re General Tire & Rubber Co. Securities Litigation, 429 F. Supp. 1032
(J.P.M.L. 1977) .................................................. 10

In re LTV Corp. Securities Litigation, 470 F. Supp. 859 (J.P.M.L. 1979) .......... 14

MacAlister v. Guterma, 263 F.2d 65 (2d Cir. 1958) .......................... 12

In re Marsh & McLennan Co., Inc., Securities Litigation, 429 F. Supp. 2d 1376
(J.P.M.L. 2006) .................................................. 14

In re Medical Resources, Inc. Securities Litigation, No. 1247,
1998 U.S. Dist. LEXIS 15832 (J.P.M.L. Oct. 7, 1998) . . . . . . . . . . . . . . . . . . . . . . . 9

In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation,
223 F. Supp. 2d 1388 (J.P.M.L. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 13

In re Plumbing Fixture Cases, 295 F. Supp. 33 (J.P.M.L. 1968) . . . . . . . . . . . . . . . . . 9

In re Practice of Naturopathy Litigation, 434 F. Supp. 1240 (J.P.M.L. 1977) . . . . . . . . 11

In re Qwest Committee International, Inc., Securities & "ERISA" Litigation (NO.
II), 444 F. Supp. 2d 1343 (J.P.M.L. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

In re Regents of the University of California, 964 F.2d 1128 (Fed. Cir. 1992) . . . . . . . 10

In re SFBC International, Inc., Securities & Derivative Litigation,
435 F. Supp. 2d 1355 (J.P.M.L. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 13

In re Salomon Brothers Treasury Securities Litigation, 796 F. Supp. 1537
(J.P.M.L. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

In re Transocean Tender Offer Securities Litigation, 415 F. Supp. 382
(J.P.M.L. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

In re Veeco Instruments Inc. Securities Litigation, 387 F. Supp. 2d 1365
(J.P.M.L. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

In re Vonage IPO Securities Litigation, 471 F. Supp. 2d 1354 (J.P.M.L. 2007) . . . . . . . 7

In re Washington Public Power Supply System Securities Litigation,
568 F. Supp. 1250 (J.P.M.L. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

In re Waste Management, Inc. Securities Litigation, 177 F. Supp. 2d 1373
(J.P.M.L. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## STATUTES

28 U.S.C. § 1407 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7

## MISCELLANEOUS

15 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure
§ 3862 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Movant Merrill Lynch & Co., Inc. ("Merrill Lynch") respectfully submits this brief in support of its motion to centralize the actions set forth in the Schedule of Actions attached hereto as Exhibit A (the "Actions") for coordination for pretrial purposes in the United States District Court for the Southern District of New York and, insofar as two actions pending in the United States District Court for the District of Delaware and the District of New Jersey are concerned, transferring those actions to the Southern District of New York.

## PRELIMINARY STATEMENT

As with many financial institutions throughout the country, Merrill Lynch has been impacted by recent adverse developments in the credit markets, including those relating to so-called subprime loans. In the wake of an announcement of its third quarter financial results, Merrill Lynch has been named, as of January 9, 2008, in 20 federal actions alleging violations of the federal securities laws; violations of ERISA; breaches of fiduciary duty, abuse of control and/or corporate waste; and/or seeking indemnification/contribution. As of the date of this motion, 18 of the 20 federal actions are pending in the United States District Court for the Southern District of New York (the "Southern District Actions"); one action is pending in the United States District Court for District of New Jersey (the "New Jersey Action"); and one action is pending in the United States District Court for the District of Delaware (the "Delaware Action"). The New Jersey Action and the Delaware Action are collectively referred to as the "Related Actions."

As set forth below, centralization of the Actions in, and transfer of the Related Actions to, the Southern District of New York is warranted and necessary for at least three rea-

sons.  First, the Actions are based upon substantially related factual allegations and legal issues. The Related Actions and Southern District Actions all arise from allegations relating to Merrill Lynch's exposure to collateralized debt obligations ("CDOs") and subprime loan-related markets; Merrill Lynch's relevant disclosures related thereto; and the conduct of members of Merrill Lynch senior management and members of its board of directors.

Second, centralizing all the Actions in the Southern District of New York will advance the just and efficient conduct of the Actions by avoiding inconsistent pretrial rulings and duplicative discovery, and conserving the resources of the parties and the judiciary.  If the Actions are not centralized in one district and coordinated, there will be multiple actions involving many of the same legal and factual issues pending simultaneously in different places.  These concerns are particularly acute where the duplicative litigation involves derivative actions – shareholder actions purportedly brought on behalf of and for the benefit of the corporation.  Here, the only two federal Actions pending outside of the Southern District of New York – the Related Actions – are two derivative actions which are duplicative of the three derivative actions pending in the Southern District of New York.

Third, the documentary evidence plaintiffs are likely to seek to obtain, key witnesses and defendants are located in New York, where Merrill Lynch is headquartered.

Accordingly, the Actions should be centralized in, and the Related Actions should be transferred to, the Southern District of New York for coordination for pretrial purposes.

## FACTUAL BACKGROUND

On October 24, 2007, Merrill Lynch announced its third quarter results, including a write-down of $7.9 billion across CDOs and U.S. subprime mortgages. In the days following that announcement, 18 related actions were filed in, or removed to, the Southern District of New York.

The complaints in the Actions allege the same basic facts concerning Merrill Lynch's exposure to the CDO and subprime markets; the alleged issuance of false and misleading information in public filings with the Securities and Exchange Commission and elsewhere relating thereto; and the alleged conduct of Merrill Lynch senior management and board of directors. Of the 18 actions that were commenced in, or removed to, the Southern District of New York: three are derivative actions, five are federal securities laws actions and ten are ERISA actions. They are assigned, or are in the process of being assigned, to the Honorable Leonard B. Sand. More than four weeks after the first action was filed in the Southern District of New York, two additional derivative actions were commenced: one in state court in Delaware and the other in New Jersey. Merrill Lynch removed those actions and now seeks to have them transferred to the Southern District of New York for coordinated pretrial proceedings.

1.    The Derivative Actions

Two purported derivative actions were filed in the Southern District of New York on November 1 and 8, 2007.[1] A third purported derivative action was removed from the

---

[1]    Arthur v. O'Neal, et al., 07 CV 9696 (LBS) (SDNY) and Loveman v. O'Neal, et al., 07
(continued...)

Supreme Court of the State of New York to the Southern District of New York on December 7, 2007.[2]  Plaintiffs allege these actions were brought on behalf of and for the benefit of Merrill Lynch against certain members of the board of directors and executive officers.  The challenged conduct allegedly arises from the adverse impact on Merrill Lynch from its exposure to CDO and subprime related markets, as well as the alleged dissemination by Merrill Lynch of false and misleading statements related thereto.  (See Arthur Compl. ¶ 64; Loveman Compl. ¶ 64)

Subsequently, two additional purported derivative actions were commenced in state courts in Delaware and New Jersey asserting nearly identical allegations to the three derivative actions pending in the Southern District of New York.[3]  For example, plaintiff in the New Jersey Action alleges, among other things, that the "Director Defendants should not have allowed this risky exposure and should have seen the red flags associated with maintaining the abnormal CDO positions."  (Eidman Compl. ¶ 46)  Plaintiff in the New Jersey Action also alleges, among other things, that "Defendants caused false statements to be issued in SEC filings."  (Eidman Compl. ¶ 61).  Plaintiff in the Delaware Action similarly alleges, among other things, that "the defendants, officers and/or directors of the Company breached their fiduciary duties by issuing

---

[1]  (...continued)
CV 9888 (LBS) (SDNY).

[2]  Operative Plasterers & Cement Masons Local 262 Pension and Annuity Funds v. E. Stanley O'Neal, et al., 07 CV 11085 (LBS) (SDNY) .

[3]  These actions were removed to federal court.  Eidman v. O'Neal, et al., Case No. 08-___ (D.N.J.); Blas v. O'Neal, Case No. 08-15 (D. Del.)

4

materially false and misleading information to the investing public regarding the Company's pro-jected exposure to sub-prime lending liability." (Blas Compl. ¶ 1)

2.     The Federal Securities Actions

         Beginning on or about October 30, 2007, five putative federal securities class ac-tions have been commenced in the Southern District of New York.[4] The federal securities ac-tions assert claims against Merrill Lynch and certain officers under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§78j(b) and (b)(a), and, in one case, Section 11 of the Securities Act of 1933. The claims are premised upon allegations that "defendants issued materially false and misleading statements regarding the Company's business" which was "in-vested heavily into Collateralized Debt obligations ("CDO")." (See, e.g., Savena Compl. ¶ 3)

3.     The ERISA Actions

         Beginning on or about November 9, 2007, ten putative class actions were com-menced alleging claims for violations of the Employee Retirement Security Act of 1974 ("ERISA") against Merrill Lynch, certain of its directors and officers, and others.[5]

---

[4]     Life Enrichment Foundation v. Merrill Lynch & Co., Inc., et al., 07 CV 9633 (LBS) (SDNY); Savena v. Merrill Lynch & Co., Inc., et al., 07 CV 9837 (LBS) (SDNY); Kosseff v. Merrill Lynch & Co., Inc., et al., 07 CV 10984 (LBS) (SDNY); Garber v. Merrill Lynch & Co., Inc., et al., 07 CV 11080 (LBS) (SDNY); and Conn v. Merrill Lynch & Co., Inc., et al., 07 CV 11626 (LBS) (SDNY).

[5]     Estey v. Merrill Lynch & Co., Inc., et al., 07 CV 10268 (LBS) (SDNY); Gidaro v. Merrill Lynch & Co., Inc., et al., 07 CV 10273 (LBS) (SDNY); Moore v. Merrill Lynch & Co., Inc., et al., 07 CV 10398 (LBS) (SDNY); Yashgur v. Merrill Lynch & Co., Inc., et al., 07 CV 10569 (JSR)/(LBS) (SDNY); Donlon v. Merrill Lynch & Co., Inc., et al., 07 CV 10661 (LBS) (SDNY); Esposito v. Merrill Lynch & Co., Inc., et al., 07 CV 10687

(continued...)

Plaintiffs' claims are premised, among other things, upon the allegation that "Defendants repeatedly issued inaccurate, incomplete and materially misleading statements to plan participants. Although they knew or should have known that the Company's stock was artificially inflated, due to the Company's mammoth involvement in the securitized subprime mortgage market, Defendants continuously reassured Plan participants and did nothing to protect the heavy investment of their retirement savings in Merrill Lynch stock." (Estey Compl. ¶ 89)

---

[5] (...continued)
(JGK)/(LBS) (SDNY); Shaughnessy v. Merrill Lynch & Co., Inc., et al., 07 CV 10710 (GEL)/ (LBS) (SDNY); Boland v. Merrill Lynch & Co., Inc., et al., 07 CV 11054 (MGC)/ (LBS) (SDNY): Summers v. Merrill Lynch & Co., Inc., et al., 07 CV 11615 (LBS) (SDNY); and Eastman v. Merrill Lynch & Co., Inc., et al., 08 CV 0058 (LBS) (SDNY).

**ARGUMENT**

## ALL PENDING ACTIONS SHOULD BE CENTRALIZED IN, AND THE RELATED ACTIONS SHOULD BE TRANSFERRED TO, THE SOUTHERN DISTRICT OF NEW YORK

The Multidistrict Litigation Act, 28 U.S.C. § 1407, sets forth three requirements for transfer. The transfer must: (i) involve actions having one or more common questions of fact; (ii) further the "just and efficient conduct" of the actions; and (iii) promote "the convenience of parties and witnesses." 28 U.S.C. § 1407(a). All three criteria weigh heavily in favor of centralizing these Actions to the Southern District of New York for all pretrial purposes.

## I.      The Actions Involve Common Questions of Fact

The Judicial Panel for Multidistrict Litigation regularly transfers actions which involve common questions of fact, as do the Actions here. See, e.g., In re Vonage IPO Sec. Litig., 471 F. Supp. 2d 1354 (J.P.M.L. 2007); In re Qwest Comm. Int'l, Inc., Sec. & "ERISA" Litig. (NO. II), 444 F. Supp. 2d 1343 (J.P.M.L. 2006); In re SFBC Int'l, Inc., Sec. & Deriv. Litig., 435 F. Supp. 2d 1355 (J.P.M.L. 2006); In re Waste Mgmt., Inc. Sec. Litig., 177 F. Supp. 2d 1373 (J.P.M.L. 2001) (centralization of securities actions warranted where actions shared allegations concerning misrepresentations or omissions about financial condition); In re Wash. Pub. Power Supply Sys. Sec. Litig., 568 F. Supp. 1250 (J.P.M.L. 1983); In re Four Seasons Sec. Laws Litig., 361 F. Supp. 636 (J.P.M.L. 1973) (federal and state claims transferred); 15 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3862 (noting that Section 1407 was specifi-

cally contemplated to deal with actions alleging securities law violations and citing the House of
Representatives Report that accompanied the legislation).

The standard for transfer does not require the existence of identical – or even a
preponderance of – common issues of fact before a transfer is warranted. See In re Med. Res.,
Inc. Sec. Litig., No. 1247, 1998 U.S. Dist. LEXIS 15832, at *3 (J.P.M.L. Oct. 7, 1998) ("transfer
under Section 1407 does not require a complete identity or even majority of common issues as a
prerequisite to transfer"); see also In re Federal Nat'l Mortgage Ass'n Sec., Deriv. & "ERISA"
Litig., 370 F. Supp. 2d 1359, 1361 (J.P.M.L. 2005) (the type of action is immaterial so long as it
is one of a type that "can be expected to focus on a significant number of common events, defen-
dants, and/or witnesses").

Here, the Actions are all premised upon common alleged facts — Merrill Lynch's
alleged conduct in connection with its exposure to the CDO and subprime markets and the al-
leged issuance of false and misleading statements and filings related to such exposure. Plaintiffs
essentially assert that after purportedly increasing inappropriately its exposure to the CDO and
so-called subprime related markets, Merrill Lynch allegedly failed adequately to disclose such
exposure and purportedly failed to take appropriate risk measures to mitigate its exposure to the
subprime housing market.

That the Actions do not all bring identical claims is of no moment. The actions
need not rest upon identical legal theories. As explained by the Panel:

> The concept of transferring actions, sharing one or more common questions of
> fact but resting upon different legal theories, to a single district and assigning
> them to the same judge is not new to the Panel. We have always been at pains to

8

leave the extent of coordination or consolidation to the ingenuity and resourceful-
ness of the transferee judge.

In re Equity Funding Corp. of Am. Sec. Litig., 375 F. Supp. 1378, 1384 (J.P.M.L. 1974); see also

In re Gen. Motors Corp. Sec. & Deriv. Litig., 429 F. Supp. 2d 1368, 1369 (J.P.M.L. 2006) (find-

ing transfer appropriate even where the different actions necessarily involved differing factual

inquiries); In re Delphi Corp. Sec., Deriv. & "ERISA" Litig. 403 F. Supp. 2d 1358 (J.P.M.L.

2005); In re Salomon Bros. Treasury Sec. Litig., 796 F. Supp. 1537, 1538 (J.P.M.L. 1992) (trans-

ferring action with common factual issues despite recognizing that "[l]egal theories . . . vary

among the actions, with some actions raising claims not common to all actions"); In re Plumbing

Fixture Cases, 295 F. Supp. 33, 33-34 (J.P.M.L. 1968) (finding transfer appropriate even where

there was no commonality of parties or the types of discovery needed for each of the defendants).

Similarly, that some of the Actions contain state law claims or additional defendants should not

alter the Panel's analysis because common questions of fact exist. See, e.g., In re Gen. Motors,

429 F. Supp. 2d at 1368 (transferring action with common factual issues even though some plain-

tiffs brought action under federal securities laws while others brought common-law shareholder

derivative actions).

## II. Pretrial Transfer and Coordination Will Advance the Just and Efficient Conduct of the Actions

Where, as here, numerous complex actions are pending that present common is-

sues of fact, transfer pursuant to Section 1407 is not just warranted, it is "necessary in order to

eliminate duplicative discovery, prevent inconsistent pretrial rulings . . . , and conserve the re-

9

sources of the parties, their counsel and the judiciary." In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig., 223 F. Supp. 2d 1388, 1389 (J.P.M.L. 2002) (emphasis added).

### A.   Transfer Will Avoid Duplication of Discovery

Panels regularly transfer actions to avoid subjecting defendants to overlapping discovery in similar actions pending in multiple forums. See In re Am. Home Mortgage Sec. Litig., 2007 U.S. Dist. LEXIS 94723, at *2 (J.P.M.L. Dec. 19, 2007) ("Centralization under Section 1407 will eliminate duplicative discovery"); In re Regents of the Univ. of Cal., 964 F.2d 1128, 1135-36 (Fed. Cir. 1992) (upholding the decision of the Panel to transfer for consolidated or coordinated pretrial proceedings where, among other things, the Panel relied on need for depositions common to all actions); In re Gen. Tire & Rubber Co. Sec. Litig., 429 F. Supp. 1032, 1034 (J.P.M.L. 1977) (placing actions "under the control of a single judge" in order to "ensure that duplicative discovery on the complex factual questions will be prevented" and "eliminat[e] the possibility of conflicting pretrial rulings").

Here, if the Actions are not dismissed on motion, plaintiffs in each of the Actions that proceed will almost certainly seek overlapping discovery.  In addition to the similarities of the basic factual allegations, the duplicative nature of the claims brought by the Actions could result in overlapping discovery.  Plaintiffs will likely seek documents from, and depositions of, many of the same witnesses, most of whom reside or work in New York where Merrill Lynch is headquartered.  Moreover, to the extent there are any discovery disputes over such requests or any others, coordination will avoid the risk of inconsistent discovery rulings.

B.     Transfer Will Avoid Inconsistent Pretrial Rulings

Transfer is also warranted to avoid potentially conflicting pretrial rulings. See, e.g., In re Am. Home Mortgage Sec. Litig., 2007 U.S. Dist. LEXIS 94723, at *2; In re Merrill Lynch, 223 F. Supp. 2d at 1389 (among other reasons, centralization necessary to prevent inconsistent pretrial rulings); In re Transocean Tender Offer Sec. Litig., 415 F. Supp. 382, 384 (J.P.M.L. 1976).

Given the overlap of issues in the Actions, there exists a significant risk of conflicting decisions which could be avoided by coordinating all the Actions before a single court. It is anticipated that defendants will move to dismiss the complaints in most, if not all, of the Actions. See In re Practice of Naturopathy Litig., 434 F. Supp. 1240, 1243 (J.P.M.L. 1977) (transfer is not "premature because of the defendants' desire to challenge sufficiency of the complaints;" noting that, "presentation of these matters to a single judge will further the purposes of Section 1407"). If these motions are not granted in their entirety, other dispositive motions, such as for class certification and summary judgment, would also be premised on overlapping legal and factual issues. Absent transfer under Section 1407, there would be a strong potential for inconsistent rulings by the different district courts. See, e.g., In re Transocean, 415 F. Supp. at 384 ("[T]he likelihood of motions for partial dismissal and summary judgment in all three actions grounded at least in part on [a common issue] makes Section 1407 treatment additionally necessary to prevent conflicting pretrial rulings and conserve judicial effort.").

C.     Transfer Will Conserve the Resources of the Parties and the Judiciary

Transferring the Actions to the Southern District of New York will also conserve the resources of the parties and the judiciary. Absent transfer, the parties will be forced simultaneously to litigate the same issues in separate judicial districts, resulting in a significant increase in burden and expense. Moreover, repetitive – and potentially conflicting – adjudications concerning substantially similar discovery disputes and other pretrial motions would constitute a waste of judicial resources, particularly when a straightforward transfer can prevent such waste. In the absence of the coordination of these actions in one district, full development of each of the Actions will require that several judges (i) become familiar with, inter alia, the factual background, structure and allegations related to not only Merrill Lynch's exposure to the CDO and so-called subprime related markets, but that of Wall Street as a whole; and (ii) resolve and rule upon complex factual and legal issues. Furthermore, the Actions can be coordinated easily because discovery has not commenced in any of the Actions.

These issues are of even greater concern when derivative actions are involved. In a derivative action, the plaintiff purports to bring the action on behalf of and for the benefit of the corporation. To force the corporation to defend nearly identical derivative actions in multiple forums would be an utter waste of corporate resources – the very resources plaintiff purports to seek to protect. See, e.g., MacAlister v. Guterma, 263 F.2d 65, 68 (2d Cir. 1958) (derivative actions often call for "special treatment" because the cost of defending multiple suits by stockholders "may well do serious harm to the very corporation in whose interest they are supposedly brought"). Here, the only two federal actions pending outside the Southern District of New York

12

are derivative actions – one in the District of Delaware and one in the District of New Jersey. Accordingly, the transfer of those two actions to the Southern District of New York will conserve the resources of the judiciary, Merrill Lynch and the other parties.

## III. Transfer to the Southern District of New York Will Best Serve the Convenience of the Parties and Witnesses

The selection of a transferee forum also depends upon the location of documents and witnesses, and the residence and location of defendants. See In re Merrill Lynch, 223 F. Supp. 2d at 1390 (recognizing the importance of a "conveniently located" forum in transferring actions under Section 1407); In re Fed. Home Loan Mortgage Corp. Sec. & Deriv. Litig. (No. II), 303 F. Supp. 2d 1379, 1380 (J.P.M.L. 2004) (transferring litigation to a "readily accessible" district). These factors compel transfer to the Southern District of New York. Absent such transfer and coordination, the movement of people and documents that would be required for the full development of each action would involve exponential expense and would threaten to disrupt Merrill Lynch's business.

### A. Location of Relevant Documents

Most, if not all, of the relevant documents are located in New York. The relevant Merrill Lynch documents will be found in New York City where Merrill Lynch is headquartered. See In re Am. Home Mortgage Sec. Litig, 2007 U.S. Dist. LEXIS 94723, at *2-3 (transfer to district where corporate defendant "was headquartered" since "relevant documents and witnesses may be found there"); In re SFBC Int'l, Inc., Sec. & Deriv. Litig., 435 F. Supp. 2d at 1356 (transfer to district where the defendant is headquartered because "relevant documents and witnesses

may be found" there); In re LTV Corp. Sec. Litig., 470 F. Supp. 859, 862 (J.P.M.L. 1979) (transfer to district because it is the location where defendant has headquarters and therefore the location also of relevant files, officers, directors and employees); In re Air Crash Disaster at Sioux City, Iowa, on July 19, 1989, 128 F.R.D. 131, 132 (J.P.M.L. 1989) ("relevant documents can likely be found within this district at [defendant's] headquarters"); In re Marsh & McLennan Co., Inc., Sec. Litig., 429 F. Supp. 2d 1376, 1378 (J.P.M.L. 2006) (finding that the district in which the defendants were headquartered was a "likely source of relevant documents and witnesses.").

### B. Location of Key Witnesses and Defendants

In addition, most of the key witnesses either live or work in New York. Current Merrill Lynch executives and employees who are likely to be deposed work, for the most part, at Merrill Lynch offices in New York, New York. Accordingly, the convenience of the parties and witnesses will best be served if all actions proceed in the Southern District of New York.

### C. Other Related Factors

Other factors that compel transfer to the Southern District of New York include the location of the district with the closest relationship to the litigation, the location where the first action was filed, the location of counsel and the accessibility of the Southern District of New York. See In re Bayou Hedge Funds Invest. Litig., 429 F. Supp. 2d 1374, 1376 (J.P.M.L. 2006) (transferring action to district with the strongest relationship to the litigation by virtue of the fact that governmental actions also were taking place in that district); In re Veeco Instruments Inc. Sec. Litig., 387 F. Supp. 2d 1365, 1366 (J.P.M.L. 2005) (transferring actions to forum where the first-filed action was pending).

14

Not only is the headquarters of Merrill Lynch located in New York, but that the Southern District of New York has the closest relationship to the litigation is demonstrated by plaintiffs themselves. The first action, <u>Life Enrichment Foundation v. Merrill Lynch & Co.</u>, No. 07 CV 9633 (LBS), was filed on or about October 30, 2007 there. Subsequently, 17 others were filed in the Southern District of New York. It was more than five weeks before these Related Actions were filed in Delaware and New Jersey. Therefore, the Southern District of New York is by far the district with the strongest connection to the litigation. <u>See, e.g. In re Am. Home Mortgage Sec. Litig.</u>, 2007 U.S. Dist. LEXIS 94723, at *2-3 (transfer of single action pending in Florida to Eastern District of New York where eighteen other actions were pending).

Moreover, the plaintiffs in both the New Jersey Action and the Delaware Action have New York counsel. In any event, the Southern District of New York is also easily accessible to out of state counsel. The Southern District of New York is located in Manhattan, only about 10-12 miles from Newark, New Jersey and a 1.5 hour train ride from Wilmington, Delaware.

## CONCLUSION

For all the foregoing reasons, Merrill Lynch respectfully requests that the Panel

grant its Motion for Transfer and issue an Order centralizing the Actions in, and transferring the

Related Actions to, the Southern District of New York for coordination of pretrial proceedings.

Dated: New York, New York
      January 9, 2008

Respectfully submitted,

Jay B. Kasner
Scott D. Musoff
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Merrill Lynch & Co., Inc.

16

| MDL-_____- In re Merrill Lynch & Co., Inc. Securities, ERISA and Derivative Litigation | | | |
|---|---|---|---|
| **Case Captions** | **Court** | **Civil Action No.** | **Judge** |
| **Plaintiff:** Life Enrichment Foundation, Individually and On Behalf of All Others Similarly Situated<br>**Defendants:** Merrill Lynch & Co., Inc., E. Stanley O'Neal, Ahmass L. Fakahany, Gregory J. Fleming and Jeffrey N. Edwards | S.D. New York | 07 CV 9633 | Hon. Leonard B. Sand |
| **Plaintiff:** Patricia Arthur, Derivatively on Behalf of Merrill Lynch & Co., Inc.<br>**Defendants:** E. Stanley O'Neal, Ahmass L. Fakahany, Gregory J. Fleming, Jeffrey N. Edwards, Carol T. Christ, Armando D. Codina, Virgis W. Colbert, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, Joseph W. Prueher, Ann N. Reese, Charles O. Rossotti<br>**Nominal Defendant:** Merrill Lynch & Co., Inc. | S.D. New York | 07 CV 9696 | Hon. Leonard B. Sand |
| **Plaintiff:** Michael J. Savena, Individually and On Behalf of All Others Similarly Situated<br>**Defendants:** Merrill Lynch & Co., Inc., E. Stanley O'Neal, Ahmass L. Fakahany, Gregory J. Fleming and Jeffrey N. Edwards | S.D. New York | 07 CV 9837 | Hon. Leonard B. Sand |

| Plaintiff: Miriam Loveman, derivatively and on behalf of Merrill Lynch & Co., Inc. **Defendants:** E. Stanley O'Neal, Ahmass L. Fakahany, Gregory J. Fleming, Jeffrey N. Edwards, Carol T. Christ, Armando D. Codina, Virgis W. Colbert, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, Joseph W. Prueher, Ann N. Reese, Charles O. Rossotti **Nominal Defendant:** Merrill Lynch & Co., Inc. | S.D. New York | 07 CV 9888 | Hon. Leonard B. Sand |
|---|---|---|---|
| Plaintiff: Elizabeth Estey, Individually and On Behalf of All Others Similarly Situated **Defendants:** Merrill Lynch & Co., Inc., Merrill Lynch & Co., Inc. Plan "Investment Committee", Merrill Lynch & Co., Inc. Plan Administrative Committee, Merrill Lynch & Co., Inc. Management Development and Compensation Committee, Louis DiMaria, E. Stanley O'Neal, Alberto Cribiore, Armando M. Codina, Virgis W. Colbert, John D. Finnegan, Aulana L. Peters and John Does 1-10 | S.D. New York | 07 CV 10268 | Hon. Leonard B. Sand |
| Plaintiff: Mary Gidaro, Individually and on behalf of all others similarly situated **Defendants:** Merrill Lynch & Co., Inc., Stan O'Neal, Lou DiMaria, Investment Committee of the Merrill Lynch Savings and Investment Plan, Administrative Committee of the Merrill Lynch Savings and Investment Plan, and John Does 1-30 | S.D. New York | 07 CV 10273 | Hon. Leonard B. Sand |

| Plaintiff: Tara Moore, Individually and On Behalf of All Others Similarly Situated Defendants: Merrill Lynch & Co., Inc., Merrill Lynch & Co., Inc. Plan "Investment Committee", Merrill Lynch & Co., Inc. Plan Administrative Committee, Merrill Lynch & Co., Inc. Management Development and Compensation Committee, Louis DiMaria, E. Stanley O'Neal, Alberto Cribiore, Armando M. Codina, Virgis W. Colbert, John D. Finnegan, Aulana L. Peters and John Does 1-10 | S.D. New York | 07 CV 10398 | Hon. Leonard B. Sand |
|---|---|---|---|
| Plaintiff: Gregory Yashgur, on Behalf of Himself and a Class of Persons Similarly Situated Defendants: Merrill Lynch & Co., Inc., Administrative Committee of the Merrill Lynch & Co., Inc. 401(k) Saving and Investment Plan, Louis DiMaria, Stan O'Neal, Alberto Cribiore, Carol T. Christ, Armando M. Codina, Virgis W. Colbert, John D. Finnegan, Judith Mayhew Jonas, Aulana L. Peters, Joseph W. Prueher, Ann N. Reese, and Charles O. Rossotti, and John Does 1-30 | S.D. New York | 07 CV 10569 | Being assigned to Hon. Leonard B. Sand |

| | | | |
|---|---|---|---|
| **Plaintiff:** Christine Donlon, on Behalf of All Others Similarly Situated<br><br>**Defendants:** Merrill Lynch & Co., Inc., E. Stanley O'Neal, Carol T. Christ, Armando M. Codina, Virgis W. Colbert, Jill K. Conway, Alberto Cribiore, Louis DiMaria, John D. Finnegan, Judith Mayhew Jonas, Aulana L. Peters, Joseph W. Prueher, Ann N. Reese, Charles O. Rossotti, John Does 1-20 (Being Current and Former Members of the Benefits Administration Committee of the Merrill Lynch & Co., Inc. Employee Stock Ownership Plan) and John Does 21-40 (Being Current and Former Members of the Investment Committee of the Merrill Lynch & Co., Inc. Employee Stock Ownership Plan) | S.D. New York | 07 CV 10661 | Hon. Leonard B. Sand |
| **Plaintiff:** Carl Esposito, Individually and On Behalf of All Others Similarly Situated<br><br>**Defendants:** Merrill Lynch & Co., Inc., E. Stanley O'Neal, Carol T. Christ, Armando M. Codina, Virgis W. Colbert, Jill K. Conway, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, David K. Newbigging, Aulana L. Peters, Joseph W. Prueher, Ann N. Reese, Charles O. Rossotti, Louis DiMaria, Peter Stingi and John and Jane Does 1-20 | S.D. New York | 07 CV 10687 | Being assigned to Hon. Leonard B. Sand |

| | | | |
|---|---|---|---|
| **Plaintiff:** Sean Shaughnessey, individually, on behalf of the Merill Lynch & Co., Inc. 401(k) Savings and Investment Plan, the Retirement Accumulation Plan, the Employee Stock Ownership Plan and all others similarly situated<br>**Defendants:** Merrill Lynch & Co., Inc.; the Merrill Lynch Trust Company, FSB; Administrative Committee of the Merrill Lynch & Co., Inc. 401(k) Saving and Investment Plan, Louis DiMaria, John Does 1 to 20; the Merrill Lynch & Co., Inc. Investment Committee; John Does 20 to 40; Management Development and Compensation Committee of the Merrill Lynch & Co., Inc. Board of Directors; Armando M. Codina, Virgis W. Colbert, Alberto Cribiore, John D. Finnegan and Aulana L. Peters | S.D. New York | 07 CV 10710 | Being assigned to Hon. Leonard B. Sand |
| **Plaintiff:** Gary Kosseff, Individually and On Behalf of All Others Similarly Situated<br>**Defendants:** Merrill Lynch & Co., Inc., E. Stanley O'Neal, Ahmass L. Fakahany, Gregory J. Fleming and Jeffrey N. Edwards | S.D. New York | 07 CV 10984 | Hon. Leonard B. Sand |
| **Plaintiffs:** Barbara Boland and Anna Molin, individually and on behalf of all others similarly situated<br>**Defendants:** Merrill Lynch & Co., Inc., E. Stanley O'Neal, Carol T. Christ, Armando M. Codina, Virgis W. Colbert, Jill K. Conway, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, David K. Newbigging, Aulana L. Peters, Joseph W. Prueher, Ann N. Reese, Charles O. Rossotti, Louis DiMaria, Peter Stingi and John and Jane Does 1-20 | S.D. New York | 07 CV 11054 | Being assigned to Hon. Leonard B. Sand |

| Plaintiff: Robert R. Garber, Individually and On Behalf of All Others Similarly Situated<br>Defendants: Merrill Lynch & Co., Inc., E. Stanley O'Neal, Ahmass L. Fakahany, Gregory J. Fleming and Jeffrey N. Edwards | S.D. New York | 07 CV 11080 | Hon. Leonard B. Sand |
| Plaintiff: Operative Plasterers & Cement Masons Local 262 Pension and Annuity Funds, Derivatively On Behalf of Nominal Defendant Merrill Lynch & Co., Inc.<br>Defendants: E. Stanley O'Neal, Ahmass L. Fakahany, Gregory J. Fleming, Jeffrey N. Edwards, Carol T. Christ, Armando D. Codina, Virgis W. Colbert, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, Joseph W. Prueher, Ann N. Reese, Charles O. Rossotti<br>Nominal Defendant: Merrill Lynch & Co., Inc. | S.D. New York | 07 CV 11085 | Hon. Leonard B. Sand |
| Plaintiff: Francis Lee Summers, III, individually and on behalf of all others similarly situated<br>Defendants: Merrill Lynch & Co., Inc.; Stan O'Neal; Lou DiMaria; Investment Committee of the Merrill Lynch Savings and Investment Plan; Administrative Committee of the Merrill Lynch Savings and Investment Plan; and John Does 1-30 | S.D. New York | 07 CV 11615 | Being assigned to Hon. Leonard B. Sand |
| Plaintiff: James Conn, Individually and On Behalf of All Others Similarly Situated<br>Defendants: Merrill Lynch & Co., Inc., E. Stanley O'Neal, Jeffrey N. Edwards, Lawrence A. Tosi, Armando M. Codina, Virgis W. Colbert, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, Aulana L. Peters, Joseph W. Prueher, Ann N. Reese, and Charles O. Rossotti | S.D. New York | 07 CV 11626 | Being assigned to Hon. Leonard B. Sand |

| Plaintiff: James Eastman, On Behalf of Himself and All Others Similarly Situated<br>Defendants: Merrill Lynch & Co., Inc., E. Stanley O'Neal, Louis DiMaria, Alberto Cribiore, Armando M. Codina, Virgis W. Colbert, John D. Finnegan, Aulana L. Peters, Charles O. Rossotti, Jill K. Conway, Carol T. Christ, Judith Mayhew Jonas, Joseph W. Prueher, Ann N. Reese, David K. Newbigging, Investment Committee of the Merrill Lynch 401(k) Savings and Investment Plan, Administrative Committee of the Merrill Lynch 401(k) Savings and Investment Plan, and John Does 1-20 | S.D. New York | 08 CV 0058 | Being assigned to Hon. Leonard B. Sand |
|---|---|---|---|
| Plaintiff: Diane Blas, as Trustee of the RAY & VIRGINIA HUNTER INTERVIVOS TRUST, derivatively on behalf of the Nominal Defendant.<br>Defendants: E. Stanley O'Neal, Ahmass L. Fakahany, Gregory J. Fleming and Jeffrey N. Edwards<br>Nominal Defendant: Merrill Lynch & Co., Inc. | D. Delaware | Case no. 08-15 | TBA |
| Plaintiff: David Eidman, Derivatively on Behalf of Merrill Lynch & Co., Inc.<br>Defendants: Ernest Stanley O'Neal, Carol T. Christ, Armando M. Codina, Virgis W. Colbert, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, Aulana L. Peters, Joseph W. Prueher, Ann N. Reese, Charles O. Rossotti | D. New Jersey | TBA | TBA |

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE MERRILL LYNCH & CO., INC. SECURITIES, ERISA AND DERIVATIVE LITIGATION | ) ) ) ) ) |

MDL Docket No. _____

<u>CERTIFICATE OF SERVICE</u>

      I, Lindsay D'Antuono, certify that (1) Merrill Lynch & Co., Inc.'s Motion to Transfer; and (2) Memorandum of Law in Support of Merrill Lynch & Co., Inc.'s Motion to Transfer, were served by overnight mail, postage prepaid, on January 9, 2008, on the parties on the attached Service List.

      In addition, Merrill Lynch's Motion for Transfer was sent by overnight mail, postage prepaid, on January 9, 2008, to the Clerks of the following courts:

Clerk of the Court
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

RECEIVED-CLERK
U.S. DISTRICT COURT

2008 JAN 10  A 11: 33

Clerk of the Court
United States District Court
District of Delaware
J. Caleb Boggs Federal Building
844 North King Street
Wilmington, Delaware  19801

Clerk of the Court
United States District Court
District of New Jersey
4015 Martin Luther King, Jr.
  Federal Bldg and U.S. Courthouse
50 Walnut Street
Newark, New Jersey  07102

Dated:  Washington, DC
        January 9, 2008

Lindsay D'Antuono

2

# SERVICE LIST

## Merrill Lynch & Co., Inc. Securities, ERISA and Derivative Litigation

| Plaintiff | Counsel |
|---|---|
| Patricia Arthur | Thomas G. Amon, Esq.<br>Law Offices of Thomas G. Amon<br>500 Fifth Avenue, Suite 1650<br>New York, NY 10110 |
| Diane Blas | Robert Goldberg, Esq.<br>Biggs and Battaglia<br>921 North Orange Street<br>Wilmington, DE 19899 |
| Barbara Boland<br>Anna Molin | Lynda J. Grant, Esq.<br>Cohen, Milstein, Hausfeld &Toll, P.L.L.C.<br>150 East 52nd Street<br>Thirtieth Floor<br>New York, NY 10022 |
| James Conn | Stanley M. Grossman, Esq.<br>Pomerantz, Haudek, Block, Grossman & Gross LLP<br>100 Park Avenue<br>26th Floor<br>New York, NY 10017 |
| Christine Donlon | Robert I. Harwood, Esq.<br>Harwood Feffer LLP<br>488 Madison Avenue<br>8th Floor<br>New York, NY 10022 |
| James Eastman | Lori G. Feldman, Esq.<br>Milberg Weiss LLP<br>One Pennsylvania Plaza<br>New York, NY 10019 |
| David Eidman | James V. Bashian, P.C.<br>Law Offices of James V. Bashian<br>271 Route 46 West, Suite F207<br>Fairfield, NJ 07004 |

1

| Carl Esposito | Lynda J. Grant, Esq.<br>Cohen, Milstein, Hausfeld &Toll, P.L.L.C.<br>150 East 52nd Street<br>30th Floor<br>New York, NY 10022 |
|---|---|
| Elizabeth Estey | Wai Kin Chan, Esq.<br>Law Offices of Curtis V. Trinko, LLP<br>16 W. 46th Street<br>7th Floor<br>New York, NY 10036 |
| Robert R. Garber | Evan J. Smith, Esq.<br>Brodsky & Smith, LLC<br>240 Mineola Boulevard<br>Mineola, NY 11501 |
| Mary Gidaro | Ralph M. Stone, Esq.<br>Shalov Stone Bonner & Rocco LLP<br>485 Seventh Avenue, Suite 1000<br>New York, NY 10018 |
| Gary Kosseff | Marvin L. Frank, Esq.<br>Murray, Frank & Sailer LLP<br>275 Madison Avenue<br>8th Floor<br>New York, NY 10016 |
| Life Enrichment Foundation | Samuel H. Rudman, Esq.<br>Coughlin Stoia Geller Rudman & Robbins LLP<br>58 South Service Road, Suite 200<br>Melville, NY 11747 |
| Miriam Loveman | David A.P. Brower, Esq.<br>Brower Piven<br>488 Madison Avenue<br>Eighth Floor<br>New York, NY 10022 |
| Tara Moore | Curtis V. Trinko, Esq.<br>Law Offices of Curtis V. Trinko, LLP<br>16 West 46th Street<br>7th Floor<br>New York, NY 10036 |

| Operative Plasterers and Cement Masons Local 262 | Richard Brualdi, Esq.<br>The Brualdi Law Firm, P.C.<br>29 Broadway, Suite 2400<br>New York, NY 10006 |
|---|---|
| Michael J. Savena | Darren T. Kaplan, Esq.<br>Chitwood Harley Harnes LLP<br>11 Grace Avenue, Suite 306<br>Great Neck, NY 11021 |
| Sean Shaughnessey | William Bernarduci, Esq.<br>Schatz Nobel Izard, P.C.<br>20 Church Street, Suite 1700<br>Hartford, CT 06103 |
| Francis Lee Summers, III | Jill S. Abrams, Esq.<br>Abbey, Spanier, Rodd & Abrams LLP<br>212 E. 39th Street<br>New York, NY 10016 |
| Gregory Yashgur | Edwin J. Mills, Esq.<br>Stull, Stull & Brody<br>6 East 45th Street<br>New York, NY 10017 |
| **Defendant** | **Counsel** |
| Counsel for certain individual derivative defendants | Dennis J. Block, Esq.<br>Cadwalader, Wickersham & Taft LLP<br>One World Financial Center<br>New York, NY 10281 |
| Counsel for individual ERISA defendants | Paul Blankenstein, Esq.<br>Gibson Dunn & Crutcher LLP<br>1050 Connecticut Avenue, N.W.<br>Washington, DC 20036-5306 |

# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR TIMES SQUARE

NEW YORK 10036-6522

———

TEL: (212) 735-3000

FAX: (212) 735-2000

www.skadden.com

DIRECT DIAL
212-735-2628
DIRECT FAX
917-777-2628
EMAIL ADDRESS
JKASNER@SKADDEN.COM

FIRM/AFFILIATE OFFICES

BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

January 9, 2008

**BY HAND**

Mr. Jeffrey N. Luthi
Clerk of the Panel
Judicial Panel on Multidistrict Litigation
Thurgood Marshall Federal Judiciary Building
One Columbus Circle, N.E.
Room G-255, North Lobby
Washington, D.C. 20002

2008 JAN 10  A 11: 33

RECEIVED-CLERK
U.S. DISTRICT COURT

Re:   *In re Merrill Lynch & Co., Inc. Securities, ERISA and
Derivative Litigation*, MDL No. _____

Dear Mr. Luthi:

Pursuant to Rule 5.2(c) of the Rules of the Judicial Panel on
Multidistrict Litigation, Merrill Lynch & Co., Inc. hereby designates the following
attorney to receive service of all pleadings, notices, orders, and other papers related
to practice before the Judicial Panel on Multidistrict Litigation on this matter:

Jay B. Kasner
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000 (phone)
(212) 735-2000 (fax)

Mr. Jeffrey N. Luthi
January 9, 2008
Page 2

Respectfully submitted,

*Jay Kasner /ARC/*

Jay B. Kasner

cc:     Service List

Michael R. Griffinger
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102-5310
mgriffinger@gibbonslaw.com
Tel: 973-596-4500
Fax: 973-639-6294

Jay B. Kasner (*Pro Hac Vice* Application to be Filed)
Scott D. Musoff
**SKADDEN, ARPS, SLATE,**
 **MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
Tel: 212-735-3000
Fax: 212-735-2000

*Co-Counsel for Nominal Defendant*
*Merrill Lynch & Co., Inc.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DAVID EIDMAN, Derivatively on Behalf of
MERRILL LYNCH & CO., INC.,

     Plaintiff,

     vs.

ERNEST STANLEY O'NEAL, CAROL T.
CHRIST, ARMANDO M. CODINA, VIRGIS
W. COLBERT, ALBERTO CRIBIORE,
JOHN D. FINNEGAN, JUDITH MAYHEW
JONAS, AULANA L. PETERS, JOSEPH W.
PRUEHER, ANN N. REESE and CHARLES
O. ROSOTTI,

     Defendants,

     -and-

MERRILL LYNCH & CO., INC.,

     Nominal Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Civil Action No. 08-126 (SDW) (MCA)

**RULE 6.1 APPLICATION**

**Document Filed Electronically**

Application is hereby made to the Clerk of the United States District Court for the District of New Jersey by Gibbons P.C., co-counsel for nominal defendant Merrill Lynch & Co., Inc. ("Merrill Lynch"), on behalf of defendants Ernest Stanley O'Neal, Carol T. Christ, Armando M. Codina, Virgis W. Colbert, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, Aulana L. Peters, Joseph W. Prueher, Ann N. Reese and Charles O. Rosotti (collectively, the "Individual Defendants"), for an extension of the time within which the Individual Defendants must move, answer or otherwise respond to the Verified Amended Derivative Complaint herein for a period of fifteen (15) days pursuant to Local Civil Rule 6.1(b), said defendants having come before the Court solely for this extension but not for the purpose of appearing either generally or specially in this jurisdiction, nor having waived any defenses available to them by such appearance; and it is represented that:

1. There have been no prior extensions of the time within which any of the Individual Defendants must move, answer or otherwise respond to the Verified Amended Derivative Complaint herein;

2. Merrill Lynch electronically filed its Notice of Removal in this Court on January 9, 2008; therefore, the deadline for the Individual Defendants to move, answer or otherwise respond to the Verified Amended Derivative Complaint herein is January 16, 2008; and

3. The time within which the Individual Defendants must move, answer or otherwise respond to the Verified Amended Derivative Complaint herein has not yet expired.

2

Dated: January 16, 2008
      Newark, New Jersey                GIBBONS P.C.


By:  <u>s/ Michael R. Griffinger</u>
      Michael R. Griffinger
      GIBBONS P.C.
      One Gateway Center
      Newark, NJ 07102-5310
      mgriffinger@gibbonslaw.com
      Tel: 973-596-4500
      Fax: 973-639-6294

      *Co-Counsel for Nominal Defendant*
      *Merrill Lynch & Co., Inc.*

Of counsel:

      Jay B. Kasner
      Scott D. Musoff
      SKADDEN, ARPS, SLATE,
        MEAGHER & FLOM LLP
      Four Times Square
      New York, New York 10036
      Tel: 212-735-3000
      Fax: 212-735-2000

      *Co-Counsel for Nominal Defendant*
      *Merrill Lynch & Co., Inc.*

The above application shall be and hereby is **GRANTED,** and the time within which defendants Ernest Stanley O'Neal, Carol T. Christ, Armando M. Codina, Virgis W. Colbert, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, Aulana L. Peters, Joseph W. Prueher, Ann N. Reese and Charles O. Rosotti shall move, answer or otherwise respond to the Verified Amended Derivative Complaint herein is extended for a period of fifteen (15) days up to and including January 31, 2008 pursuant to Local Civil Rule 6.1(b) of the United States District Court for the District of New Jersey.

WILLIAM T. WALSH, Clerk of the
United States District Court
District of New Jersey

By:_____
                                    Deputy Clerk

Dated:  January ___, 2008

4

Michael R. Griffinger
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102-5310
mgriffinger@gibbonslaw.com
Tel: 973-596-4500
Fax: 973-639-6294

Jay B. Kasner (*Pro Hac Vice* Application to be Filed)
Scott D. Musoff
**SKADDEN, ARPS, SLATE,**
  **MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
Tel: 212-735-3000
Fax: 212-735-2000

*Co-Counsel for Nominal Defendant*
*Merrill Lynch & Co., Inc.*

<div align="center">

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

</div>

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| DAVID EIDMAN, Derivatively on Behalf of MERRILL LYNCH & CO., INC., | : | Civil Action No. 08-126 (SDW) (MCA) |
| Plaintiff, | : | **CERTIFICATE OF SERVICE** |
| vs. | : | **Document Filed Electronically** |
| ERNEST STANLEY O'NEAL, CAROL T. CHRIST, ARMANDO M. CODINA, VIRGIS W. COLBERT, ALBERTO CRIBIORE, JOHN D. FINNEGAN, JUDITH MAYHEW JONAS, AULANA L. PETERS, JOSEPH W. PRUEHER, ANN N. REESE and CHARLES O. ROSOTTI, | : : : : | |
| Defendants, | : | |
| -and- | : | |
| MERRILL LYNCH & CO., INC., | : | |
| Nominal Defendant. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

#1261047 v1
101454-61824

I, **MELISSA C. FULTON**, hereby certify as follows:

1. I am an associate of the law firm of Gibbons P.C., co-counsel for nominal defendant Merrill Lynch & Co., Inc. ("Merrill Lynch") in the above-captioned action.

2. On January 16, 2008, pursuant to Local Civil Rule 5.2, I electronically filed and served (i) the Rule 6.1 Application by Gibbons P.C. on behalf of defendants Ernest Stanley O'Neal, Carol T. Christ, Armando M. Codina, Virgis W. Colbert, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, Aulana L. Peters, Joseph W. Prueher, Ann N. Reese and Charles O. Rosotti and (ii) this Certificate of Service; upon the following counsel:

James V. Bashian, Esq.
LAW OFFICES OF
JAMES V. BASHIAN, P.C.
271 Route 46 West, Suite F207
Fairfield, NJ 07004

*Attorneys for Plaintiffs*

Paul O. Paradis, Esq.
HORWITZ, HORWITZ & PARADIS
28 West 44th Street, 16th Floor
New York, NY 10036

*Attorneys for Plaintiffs*

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

MELISSA C. FULTON

Dated: January 16, 2008
       Newark, New Jersey

2

LAW OFFICES OF JAMES V. BASHIAN, P.C.
James V. Bashian, Esq. (JB-6331)
271 Route 46 West, Suite F207
Fairfield, New Jersey 07004
Tel: (973) 227-6330
Fax: (973) 808-8665

Attorney for Plaintiff

[Additional Counsel Appear on Signature Page]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| David Eidman, Derivatively and on Behalf Of MERRILL LYNCH & CO., INC., Plaintiff, v. ERNEST STANLEY O'NEAL, CAROL T. CHRIST, ARMANDO M. CODINA, VIRGIS W. COLBERT, ALBERTO CRIBIORE, JOHN D. FINNEGAN, JUDITH MAYHEW JONAS, AULANA L. PETERS, JOSEPH W. PRUEHER, ANN N. REESE and CHARLES O. ROSSOTTI   Defendants, and MERRILL LYNCH & CO., INC., Nominal Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )   Hon. Susan D. Wigenton, U.S.D.J.  **CASE NO. 08-CV-00126 (SDW)(MCA)**   **NOTICE OF MOTION TO REMAND** **MOTION DAY:** February 19, 2008   **ELECTRONICALLY FILED** |

TO:   Michael R. Griffinger
      GIBBONS, P.C.
      One Gateway Center
      Newark, NJ 07102-5310
      Tel: (973) 569-4500
      Fax: (973) 639-6294

Jay B. Kanser
Scott D. Musoff
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Tel: (212) 735-3000
Fax: (212 735-2000

COUNSEL:

**PLEASE TAKE NOTICE** that plaintiff David Eidman, derivatively and on

behalf of Nominal Defendant, Merrill Lynch & Co., Inc. by and through his undersigned

counsel, shall move before the Honorable Susan D. Wigenton, U.S.D.J., on February 19,

2008 at 10:00a.m., or a soon thereafter as counsel may be heard, at the United States

Courthouse for the District of New Jersey, 50 Walnut Street, Newark 07101, for an Order

remanding this matter to the Superior Court of New Jersey, Law Division, Bergen

County, New Jersey.

**PLEASE TAKE FURTHER NOTICE** that Plaintiff shall rely upon the

accompanying Memorandum in Support of the Motion to Remand, and upon the

pleadings and all prior proceedings had herein.

**PLEASE TAKE FURTHER NOTICE** that a proposed form of Order and

certificate of service accompany this motion.

Plaintiff respectfully requests oral argument on this motion.

Dated: January 23, 2008                    By: s/James V. Bashian

                                           LAW OFFICES OF JAMES V.
                                           BASHIAN, P.C.
                                           James V. Bashian, Esq. (JB-6331)
                                           271 Route 46 West, Suite F207
                                           Fairfield, New Jersey 07004
                                           Tel: (973) 227-6330
                                           Fax: (973) 808-8665

2

Paul O. Paradis, Esq.
Michael A. Schwartz, Esq.
Gina M. Tufaro, Esq.
Edward Kroub, Esq.
**HORWITZ, HORWITZ &**
**PARADIS, Attorneys at Law**
28 West 44th Street, 16th Floor
New York, NY 10036
Phone: (212) 404-2200
Fax: (212) 404-2226

Attorneys For Derivative Plaintiff

LAW OFFICES OF JAMES V. BASHIAN, P.C.
James V. Bashian, Esq. (JB-6331)
271 Route 46 West, Suite F207
Fairfield, New Jersey 07004
Tel: (973) 227-6330
Fax: (973) 808-8665

Attorney for Plaintiff

[Additional Counsel Appear on Signature Page]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| David Eidman, | ) | **CASE NO. 08-CV-00126** |
| Derivatively On Behalf of | ) | |
| MERRILL LYNCH & CO., INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OF LAW** |
| | ) | **IN SUPPORT OF PLAINTIFF'S** |
| ERNEST STANLEY O'NEAL, | ) | **MOTION TO REMAND** |
| CAROL T. CHRIST, ARMANDO M. | ) | |
| CODINA, VIRGIS W. COLBERT, | ) | |
| ALBERTO CRIBIORE, JOHN D. | ) | |
| FINNEGAN, JUDITH MAYHEW JONAS, | ) | |
| AULANA L. PETERS, JOSEPH W. | ) | |
| PRUEHER, ANN N. REESE and | ) | |
| CHARLES O. ROSSOTTI, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MERRILL LYNCH & CO., INC., | ) | |
| | ) | |
| Nominal Defendant. | ) | |
| _____ | ) | |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................... ii

PRELIMINARY STATEMENT ......................................................................1

STATEMENT OF FACTS ..............................................................................1

ARGUMENT ..................................................................................................2

    I.   STANDARD OF REVIEW ..........................................................2

    II.  "FEDERAL QUESTION" JURISDICTION DOES NOT EXIST
        HERE BECAUSE PLAINTIFF HAS NOT ALLEGED ANY
        CLAIMS ARISING UNDER FEDERAL LAW .........................2

    III. DEFENDANTS' REMOVAL OF THIS ACTION WAS
        ENTIRELY IMPROPER ............................................................3

CONCLUSION................................................................................................8

### <u>TABLE OF AUTHORITIES</u>

**Page**

## CASES

<u>Boyer v. Snap-On Tools Corp.</u>,
913 F.2d 108 (3d. Cir. 1990)..........................................................................2

<u>Carrington v. RCA Global Communications, Inc.</u>,
762 F. Supp. 632 (D.N.J. 1991) ....................................................................3

<u>Caterpillar Inc. v. Williams</u>,
482 U.S. 386, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987)..............................3

<u>Exxon Mobil Corp., v. Allapattah Services, Inc.</u>,
545 U.S. 546, 125 S. Ct. 2611, 162 L.Ed.2d 502 (2005)..............................2

<u>Fagin v. Gilmartin</u>,
No. 03-2631, 2007 U.S. Dist. Lexis 7256 (D.N.J. Feb. 1, 2007).......................4, 5, 6, 7

<u>Fathergill v. Rouleau</u>,
No. 03-CV-0879-D, 2003 U.S. Dist. Lexis 10654 (N.D. Tex. Jun. 23, 2003) .............6

<u>Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.</u>,
545 U.S. 308, 125 S. Ct. 2363, 162 L. Ed. 2d 257 (2005)........................5, 7

<u>Stechler v. Sidley Austin Brown & Wood, LLP</u>,
No. 05-3485, 2006 U.S. Dist. LEXIS 1148 (D.N.J. Jan. 13, 2006)..........................6, 7

<u>Steel Valley Author. v. Union Switch & Signal Div</u>.,
809 F.2d 1006 (3d Cir. 1987)........................................................................2

## STATUTES

28 U.S.C. § 1331.............................................................................................2, 3

28 U.S.C. § 1441.............................................................................................3

28 U.S.C. § 1441(b)........................................................................................1, 2, 3

28 U.S.C. § 1447(c) ........................................................................................1, 2

## PRELIMINARY STATEMENT

On January 9, 2008, Defendants improperly removed this action from the Superior Court of New Jersey to the United States District Court for the District of New Jersey. Removal was improper under 28 U.S.C. § 1441(b) because the District Court does not have "original jurisdiction" over the action.

Pursuant to 28 U.S.C. § 1447(c), David Eidman ("Plaintiff"), through his counsel, hereby submits this Memorandum of Law in support of Plaintiff's Motion to Remand this action to the Superior Court of New Jersey.

## STATEMENT OF FACTS

This shareholder derivative action alleges state law claims on behalf of Merrill Lynch & Co., Inc. ("Merrill" or the "Company") for breach of fiduciary duty, abuse of control, and gross mismanagement against Merrill's Board of Directors (the "Board"). Plaintiff alleges that the Board: (i) caused Merrill to engage in unsound underwriting practices involving Collateralized Debt Obligations ("CDO's") that ultimately forced the Company to incur losses exceeding $7.9 billion for the third quarter of 2007; (ii) exposed Merrill to over $40 billion in CDOs as of July of 2007 in violation of Merrill's own Process Risk Management Program; (iii) caused Merrill to report a pre-tax loss from continuing operations of $14.9 billion for the fourth quarter of 2007; and (iv) agreed to allow Defendant O'Neal, the Chief Executive Officer, to resign and receive a retirement package worth more than $160 million. Cplt. ¶¶ 1-2. Plaintiff does not allege any claims arising under the federal securities laws.

Plaintiff is a citizen of the State of New Jersey. Cplt. ¶ 5. Plaintiff alleges claims against various members of Merrill's Board, including Defendant John D. Finnegan, who

is also a citizen of the State of New Jersey.  Cplt. ¶ 12.  Accordingly, complete diversity of citizenship among the Plaintiff and Defendants does not exist.[1]

Because Plaintiff's Complaint does not allege any federal claims and "complete" diversity does not exist here, Plaintiff properly filed this action in the Superior Court of New Jersey.

Accordingly, Plaintiff respectfully moves this Court to remand the above-referenced action to the Superior Court of New Jersey pursuant to 28 U.S.C. § 1447(c).

## ARGUMENT

### I.       STANDARD OF REVIEW

Removal statutes "are to be strictly construed against removal and all doubts should be resolved in favor of remand." Steel Valley Author. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987).  In addition, "a party who urges jurisdiction on a federal court bears the burden of proving that jurisdiction exists."  Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d. Cir. 1990).  Defendants cannot meet this burden.

### II.      "FEDERAL QUESTION" JURISDICTION DOES NOT EXIST HERE BECAUSE PLAINTIFF HAS NOT ALLEGED ANY CLAIMS ARISING UNDER FEDERAL LAW

28 U.S.C. § 1441(b) provides that a claim can be removed from state court to a federal court if the district court has "original jurisdiction" over the civil action. "The district courts shall have original jurisdiction of all civil actions arising under the

---

[1]      See Exxon Mobil Corp., v. Allapattah Services, Inc., 545 U.S. 546, 125 S. Ct. 2611, 162 L.Ed.2d 502 (2005)("we have consistently interpreted § 1332 as requiring complete diversity:  In a case with multiple plaintiffs and multiple defendants, the presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action").

Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. This type of jurisdiction is known as "federal question" jurisdiction.

In order for the District Court to have "federal question" jurisdiction over a civil claim, the claim must "arise under" some federal law. See 28 U.S.C. § 1441(b). "The presence or absence of federal question is governed by the well-pleaded complaint rule, which provides that federal question jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded Complaint." Caterpillar Inc. v. Williams, 482 U.S. 386, 392, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987). The well-pleaded complaint rule bars federal jurisdiction where a complaint, on its face, states only state law causes of action, even though issues of federal law may be involved. See Carrington v. RCA Global Communications, Inc., 762 F. Supp. 632, 636 (D.N.J. 1991).

In this action, it is clear from the face of the Complaint that Plaintiff has not alleged any claim arising under any federal law. For example, Count I alleges "breach of fiduciary duty claims against all defendants." Cplt. ¶¶ 75-81. Count II alleges "abuse of control against all defendants." Cplt. ¶¶ 82-86. Count III alleges "gross mismanagement against all defendants." Cplt. ¶¶ 87-91. Count IV alleges "waste of corporate assets against all defendants." Cplt. ¶¶ 92-94. Count V alleges "Quasi Contract/Unjust Enrichment against all defendants." Cplt. ¶¶ 95-97.

Because the complaint does not allege any claims that "arise under" any federal laws, "original jurisdiction" in the District Court does not exist here.[2]

---

[2]    Plaintiff has not pleaded, nor have Defendants argued, that diversity jurisdiction exists.

## III.  DEFENDANTS' REMOVAL OF THIS ACTION WAS ENTIRELY IMPROPER

Defendants incorrectly contend that this action is removable pursuant to 28 U.S.C. § 1331 and § 1441 because: (i) "the focus and thrust of the Complaint is alleged conduct that is governed by, and allegedly in contravention of, the federal securities laws"; and (ii) "Plaintiff's alleged injuries also depend primarily upon accusations against Merrill Lynch for violations under the federal securities laws." Defendants' Notice of Removal at ¶¶ 10, 16.  In essence, Defendants argue that because the Complaint references the fact that Defendants caused Merrill to file false United States Securities and Exchange Commission ("SEC") filings, Plaintiff has asserted federal claims.  Tellingly, Defendants do not cite any cases in support of their erroneous argument – and clearly ignore one very recent decision by a court in this District that sharply contradicts Defendants' argument. See Fagin v. Gilmartin, No. 03-2631, 2007 U.S. Dist. Lexis 7256 (D.N.J. Feb. 1, 2007) (Chesler, J.).

As discussed above, Defendants' argument is based on a mischaracterization of the state law breach of fiduciary duty claims alleged in the Complaint as federal claims, which they clearly are not.  Indeed, it is clear from the face of the Complaint that Plaintiff has not alleged any claims "arising under" the federal securities laws -- or any other federal laws -- but only alleges violations of state law.  See Cplt. ¶¶ 75-97.  All of the claims asserted by Plaintiff in the Complaint are traditional state law claims that are exclusively adjudicated in state courts.  Significantly, Defendants do not contest the fact that this Complaint, on its face, alleges traditional state law counts.

Instead, Defendants incorrectly contend that Plaintiff's state law breach of fiduciary duty claims are somehow transformed into federal securities law claims because

the Complaint makes reference to the fact that Defendants breached the fiduciary duties that they owed to Merrill by, among other things, causing Merrill to make false SEC filings.

This argument is without merit. Indeed, Judge Chesler, in a shareholder derivative action that bears a strong factual resemblance to this case, recently held that Defendants' argument is incorrect as a matter of law. See Fagin v. Gilmartin, 2007 U.S. Dist. Lexis 7256. In Fagin, plaintiffs brought a shareholder derivative action against members of Merck's Board of Directors and Medco Health Solutions, Inc., alleging breaches of fiduciary duties, violations of unjust enrichment and contribution and indemnification in state court. See id. Plaintiff alleged that the Merck Board had breached the fiduciary duties that they owed to Merck by, among other things, causing Merck to improperly recognize revenue of pharmacy co-payments and make false filings with the SEC.

On the basis of these allegations, defendants in Fagin removed the action to the United States District Court for the District of New Jersey claiming that, even though the complaint pled state law causes of action, the District Court had original federal question jurisdiction over the action because those claims "turn on a substantial federal issue and therefore 'arise under' federal law." Fagin, 2007 U.S. Dist. Lexis 7256, at *7.

As Judge Chesler noted, the Supreme Court in Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg., 545 U.S. 308, 312, 125 S. Ct. 2363, 162 L. Ed. 2d 257 (2005), "articulated the standard for determining whether the presence of a federal issue in a purely state law claim may give rise to federal question jurisdiction under § 1331." Fagin, 2007 U.S. Dist. Lexis 7256, at *11.

5

> The [Supreme] Court held that "the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal law and state judicial responsibilities." Id. at 315.

Id, 2007 U.S. Dist. Lexis 7256, at *11-12.

Thus, in rejecting the exact same arguments that Defendants have advanced here -- that the merits of Plaintiffs' state law claims necessarily require the Court to resolve whether the acts allegedly constituting breach of fiduciary duty violated federal securities laws (id. at *13) -- the Fagin court found that the commission of federal securities violations was not an essential element of the state law causes of actions pled in the shareholder derivative suit that alleged state law breach of fiduciary duty:

> In the Court's opinion, however, these factual predicates alleging that one component of the alleged wrongdoing was, in essence, making false filings with the SEC, do not transform the state claims into claims seeking redress for federal violations and do not raise a substantial and disputed question of federal law. The embedded federal issues in this case are not substantial because determining the merits of the claims does not depend on construction of federal law. (Citation omitted). . . . That a court may be called upon to evaluate the offending conduct in light of what federal securities laws and regulations require does not federalize the claims for unjust enrichment, breach of fiduciary duty and contribution and indemnification. The claims pled require the evaluation of duties that are at their core defined by state law. Predicating the alleged violation of duties existing by virtue of state law on conduct which may involve federal securities violations does not bring the federal securities laws to the forefront of the action. Moreover, with regard to the division of labor component of the Grable test, this Court is of the opinion that entertaining the claims presented here would overreach the limits of jurisdiction conferred upon this Court and put the Court in the unacceptable - and unauthorized - position of passing on matters of state law… .

Fagin, 2007 U.S. Dist. Lexis 7256, at *13-15. (Emphasis added). [3]

---

[3] See also Fathergill v. Rouleau, No. 03-CV-0879-D, 2003 U.S. Dist. Lexis 10654, at *3-5 (N.D. Tex. Jun. 23, 2003) (State law claims not based on federal law; federal right was not a substantial, disputed element).

Similarly, in <u>Stechler v. Sidley Austin Brown & Wood</u>, LLP, No. 05-3485, 2006 U.S. Dist. LEXIS 1148 (D.N.J. Jan. 13, 2006) (Ackerman, J.), defendants removed an action to the District of New Jersey, and argued in opposition to plaintiffs' remand motion that plaintiffs' breach of contract, breach of fiduciary duties and unjust enrichment claims required the interpretation and construction of certain federal tax law provisions.

Applying the <u>Grable</u> test, the court found that the primary issue was not one of federal tax law, but rather one of breach of fiduciary duty, a state law claim. The interpretation of relative tax law was, at most, a relatively minor issue. <u>See</u> <u>Stechler</u>, 2006 U.S. Dist. LEXIS 1148, at *6.

Here, as in <u>Fagin</u>, the violations of the federal securities laws do not form the basis of Plaintiff's claims. Rather, the claims of breach of fiduciary duty are based simply on the fact that Defendants have violated their own credit risk policies and caused the Company to engage in unsound underwriting practices, resulting in tens of billions of dollars of damage to the Company from 2003 through the third quarter of fiscal 2007, despite knowing that the risky CDOs were mostly backed by subprime mortgages. Cplt. ¶¶ 2, 26-28, 49-51. Although the Complaint here does allege that Defendants have caused the filing of false SEC statements, this allegation does not bring the federal securities laws to the forefront of this action.

Moreover, the gravamen of Plaintiff's Complaint is the alleged overexposure to risky investments. Defendants deliberately violated their own self-imposed Process Risk Management Program and Sub-Committee charters and thereby breached their fiduciary duties, in violation of New Jersey State law. Cplt. ¶¶ 46-47. Finally, Plaintiff's Complaint also alleges that Defendants wasted the corporation's assets by approving Defendant

O'Neal's resignation and awarding his mismanagement with $161 million in retirement benefits, another cause of action exclusive to state law. Cplt. ¶¶ 58-60.

Because the well-pleaded Complaint clearly alleges only violations of state law, and interpretation of the federal securities law is not a substantial and disputed element, Plaintiff respectfully requests that this Court promptly remand this action to the Superior Court of the State of New Jersey.

## <u>CONCLUSION</u>

Accordingly, Plaintiff respectfully requests this Court to remand his action to the Superior Court of New Jersey.

Dated: January 22, 2008

By: /S/ James V. Bashian

LAW OFFICES OF JAMES V. BASHIAN, P.C..
James V. Bashian, Esq. (JB-6331)
271 Route 46 West, Suite F207
Fairfield, New Jersey 07004
Tel: (973) 227-6330
Fax: (973) 808-8665

Paul O. Paradis, Esq.
Michael A. Schwartz, Esq.
Gina M. Tufaro, Esq.
Edward Kroub, Esq.
**HORWITZ, HORWITZ & PARADIS, Attorneys at Law**
28 West 44th Street, 16th Floor
New York, NY 10036
Phone: (212) 404-2200
Fax: (212) 404-2226

Attorneys for Derivative Plaintiff

LAW OFFICES OF JAMES V. BASHIAN, P.C.
James V. Bashian, Esq. (JB-6331)
271 Route 46 West, Suite F207
Fairfield, New Jersey 07004
Tel: (973) 227-6330
Fax: (973) 808-8665

Attorney for Plaintiff

[Additional Counsel Appear on Signature Page]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| David Eidman, Derivatively and on Behalf Of MERRILL LYNCH & CO., INC., <br><br> Plaintiff, <br><br> v. <br><br> ERNEST STANLEY O'NEAL, CAROL T. CHRIST, ARMANDO M. CODINA, VIRGIS W. COLBERT, ALBERTO CRIBIORE, JOHN D. FINNEGAN, JUDITH MAYHEW JONAS, AULANA L. PETERS, JOSEPH W. PRUEHER, ANN N. REESE and CHARLES O. ROSSOTTI <br><br> Defendants, <br><br> and <br><br> MERRILL LYNCH & CO., INC., <br><br> Nominal Defendant. | Hon. Susan D. Wigenton, U.S.D.J. <br><br> **CASE NO. 08-CV-00126 (SDW)(MCA)** <br><br><br> **[PROPOSED] ORDER OF REMAND** <br><br><br><br> **ELECTRONICALLY FILED** |

On this _____ day of _____ 2008, the court having

considered Plaintiff's Motion to Remand this action to New Jersey Superior Court, Civil

Division, Bergen County, State of New Jersey, and having considered the accompanying

papers in support thereof, any responses and replies, the arguments of counsel, if any, and

for good cause shown:

**IT IS ORDERED** that the Motion to Remand is hereby granted and the
action is remanded to the New Jersey Superior Court, Law Division, Bergen County.


_____
Hon. Susan D. Wigenton, U.S.D.J.

LAW OFFICES OF JAMES V. BASHIAN, P.C.
James V. Bashian, Esq. (JB-6331)
271 Route 46 West, Suite F207
Fairfield, New Jersey 07004
Tel: (973) 227-6330
Fax: (973) 808-8665

Attorney for Plaintiff

[Additional Counsel Appear on Signature Page]

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| David Eidman, Derivatively and on Behalf ) <br> Of MERRILL LYNCH & CO., INC., ) <br>       Plaintiff, ) <br> v. ) <br> ) <br> ERNEST STANLEY O'NEAL, ) <br> CAROL T. CHRIST, ARMANDO M. ) <br> CODINA, VIRGIS W. COLBERT, ) <br> ALBERTO CRIBIORE, JOHN D. ) <br> FINNEGAN, JUDITH MAYHEW JONAS, ) <br> AULANA L. PETERS, JOSEPH W. ) <br> PRUEHER, ANN N. REESE and ) <br> CHARLES O. ROSSOTTI ) <br> ) <br>       Defendants, ) <br> ) <br> and ) <br> ) <br> MERRILL LYNCH & CO., INC., ) <br> ) <br>       Nominal Defendant. ) | Hon. Susan D. Wigenton, U.S.D.J. <br><br> **CASE NO. 08-CV-00126 (SDW)(MCA)** <br><br><br><br><br><br><br><br> **ELECTRONICALLY FILED** |

### CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2008, I electronically filed and served the

foregoing Notice of Motion to Remove, Certification of James V. Bashian in Support of

the Motion to Remove, a proposed Order, and Certificate of Service with the Clerk of the

District Court using the CM/ECF system pursuant to Local Civil Rule 5.2. on:

Michael R. Griffinger
GIBBONS, P.C.
One Gateway Center
Newark, NJ 07102-5310

Also, on January 23, 2008, I caused a true and correct copy of the foregoing Notice of Motion to Remove, Certification of James V. Bashian in Support of the Motion to Remove, a proposed Order, and Certificate of Service upon the following counsel by regular mail:

Michael J. Chepiga
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avneue
New York, New York 10017-3954

Dennis Block
CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, New York 1028

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment

/s/ James V. Bashian
JAMES V. BASHIAN

LAW OFFICES OF JAMES V. BASHIAN, P.C.
James V. Bashian, Esq. (JB-6331)
271 Route 46 West, Suite F207
Fairfield, New Jersey 07004
Tel: (973) 227-6330
Fax: (973) 808-8665

Attorney for Plaintiff

[Additional Counsel Appear on Signature Page]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| David Eidman,<br>Derivatively On Behalf of<br>MERRILL LYNCH & CO., INC., | ) ) ) ) | **CASE NO. 08-cv-00126** |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) ) ) | **PLAINTIFF'S OPPOSITION<br>TO DEFENDANTS' MOTION<br>TO STAY PROCEEDINGS<br>PENDING DETERMINATION<br>OF THE JUDICIAL PANEL ON<br>MULTIDISTRICT LITIGATION** |
| ERNEST STANLEY O'NEAL,<br>CAROL T. CHRIST, ARMANDO M.<br>CODINA, VIRGIS W. COLBERT,<br>ALBERTO CRIBIORE, JOHN D.<br>FINNEGAN, JUDITH MAYHEW JONAS,<br>AULANA L. PETERS, JOSEPH W.<br>PRUEHER, ANN N. REESE and<br>CHARLES O. ROSSOTTI | ) ) ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| MERRILL LYNCH & CO., INC., | ) ) | Electronically Filed |
| Nominal Defendant.<br>_____ | ) ) | |

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ...................................................................... ii

INTRODUCTION ............................................................................... 1

FACTUAL BACKGROUND ..................................................................... 1

ARGUMENT ................................................................................... 2

    I.   LEGAL STANDARD FOR MOTION TO STAY ...................................... 2

    II.  THIS COURT SHOULD NOT STAY THE PROCEEDING
        BECAUSE A STAY WOULD UNNECESSARILY DELAY
        RULING ON PLAINTIFF'S MOTION TO REMAND AND
        WOULD NOT PROMOTE JUDICIAL ECONOMY ................................. 3

        A.   This Court Has Jurisdiction To Decide Plaintiff's
            Motion To Remand ................................................................ 3

        B.   Plaintiff's Motion To Remand Is Timely And This Court
            Should Not Delay In Deciding This Important Jurisdictional
            Issue ................................................................................... 4

        C.   Deciding The Jurisdictional Issue Now Will Prevent Delay
            And Preserve Judicial Assets ................................................. 5

    III. PLAINTIFF WILL BE PREJUDICED IF THIS SHAREHOLDER
        DERIVATIVE ACTION IS STAYED .................................................. 7

CONCLUSION ................................................................................. 8

## <u>TABLE OF AUTHORITIES</u>

**Page**

# CASES

<u>Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft,</u>
<u>Hoechst Marion Roussel, Inc.,</u>
54 F. Supp. 2d 1042 (D. Kan. 1999) ........................................................................3, 4

<u>Anthem, Inc. v. Bristol-Myers Squibb Co.,</u>
No. 03-0008, 2003 U.S. Dist. LEXIS 15762 (D.N.J. Mar. 18, 2003)...........................5

<u>Betts v. Eli Lilly & Co.,</u>
435 F. Supp. 2d 1180, 1182 (S.D. Ala. 2006)................................................................6

<u>Dix v. ICT Group, Inc.,</u>
No. CS-03-0315-LRS, 2003 U.S. Dist. LEXIS 21679 (E.D. Wash. Oct. 20, 2003) .....5

<u>Ford Motor Credit Co. v. Chiorazzo,</u>
No. 07-2852, 2008 U.S. Dist. LEXIS 830 (D.N.J. Jan. 7, 2008)...................................2

<u>Landis v. North American Co.,</u>
299 U.S. 248, 57 S. Ct. 163, 81 L. Ed. 153 (1936)........................................................2

<u>Local 478 Trucking & Allied Industries Pension Fund v. Jayne,</u>
778 F. Supp. 1289 (D.N.J. 1991) ...................................................................................2

<u>Medical Society v. Connecticut General Corp.,</u>
187 F. Supp. 2d 89 (S.D.N.Y. 2001)..............................................................................7

<u>Nekritz v. Canary Capital Partners, LLC,</u>
No. 03-5081 (DRD), 2004 U.S. Dist. LEXIS 12473 (D.N.J. Jan. 12, 2004).................7

<u>Register v. Bayer Corp.,</u>
No. Civ. A02-1013, 2002 U.S. Dist. LEXIS 13438 (E.D. La. Jul. 16, 2002)................7

<u>Smith v. Merck & Co.,</u>
No. 07CV170, 2007 U.S. Dist. LEXIS 78678 (D. Miss. Oct. 23, 2007).......................4

<u>Tench v. Jackson National Life Insurance Co.,</u>
No. 99 C 5182, 199 U.S. Dist. Lexis 18023 (N.D. Ill. Nov. 10, 1999) .........................7

<u>Texas ex rel. Ven-A-Care of the Fla. Keys, Inc. v. Abbott Labs. Inc.,</u>
No. 05CA879, 2005 U.S. Dist. LEXIS 42434 (W.D. Tex. Dec. 5, 2005).....................6

**Page**

Tortola Restaurants, L.P. v. Kimberly-Clark Corp.,
987 F. Supp. 1186 (N.D. Cal. 1997) ...........................................................4

Weinberg v. Sprint Corp.,
165 F.R.D. 431 (D.N.J. 1996) ...................................................................6

Weinke v. Microsoft Corp.,
84 F. Supp. 2d 989 (E.D. Wis. 2000) ........................................................7

Wisconsin v. Amgen, Inc.,
469 F. Supp. 2d 655, 661 (W.D. Wis. 2007) .............................................7

## STATUTES

Panel Rule 1.5, 181 F.R.D. 1, 3 (1998)......................................................3

Panel Rule 1.5, 199 F.R.D. 425 (2001).......................................................3

28 U.S.C. § 1331 ........................................................................................4

28 U.S.C. §1407..........................................................................................3

28 U.S.C. § 1447 (c) ...................................................................................4

## INTRODUCTION

Plaintiff David Eidman ("Plaintiff") submits this Memorandum of Law in Opposition to Defendants' Motion to Stay Proceedings Pending Determination of the Judicial Panel on Multidistrict Litigation ("JPML")("Motion to Stay").

Also pending before the Court is Plaintiff's Motion to Remand this case to New Jersey Superior Court, Bergen County, State of New Jersey. Plaintiff respectfully submits that the jurisdiction of this Court is based on Defendants' improper removal of this action and, therefore, judicial economy dictates that the Court decide Plaintiff's Motion to Remand prior to ruling on Defendants' Motion to Stay.  Further, a stay of these proceedings at this juncture would be prejudicial to Plaintiff, whose action should be remanded to New Jersey Court without unnecessary delay.

## FACTUAL BACKGROUND

This shareholder derivative action was filed in New Jersey Superior Court and brought on behalf of Nominal Defendant Merrill Lynch & Co., Inc. (hereinafter "Merrill" or the "Company").  By this action, Plaintiff seeks redress for injuries suffered by Merrill as a direct result of the Merrill's Board of Directors' ("Defendants") breach of fiduciary duties of loyalty, due care and oversight, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment. Cplt. ¶¶ 1, 69, 77, 83, 88-89, 93, 96-97. (Complaint is attached as Exhibit A to Defendants' Notice of Removal.)

On January 9, 2008, Defendants improperly removed this case from New Jersey Superior Court, Law Division, Bergen County, State of New Jersey to this Court. Despite the fact that the Complaint in this action alleges only state law claims derivatively on behalf of Merrill Lynch, Defendants' removal papers incorrectly argue

that "federal question" jurisdiction exists. Defendants claim that "federal question" jurisdiction purportedly exists because: (i) "the focus and thrust of the Complaint is alleged conduct that is governed by, and allegedly in contravention of, the federal securities laws"; and (ii) "Plaintiff's alleged injuries also depend primarily upon accusations against Merrill Lynch for violations under the federal securities laws." Defendants' Notice of Removal at ¶¶ 10, 16.

On January 22, 2008, Plaintiff filed a Motion to Remand this litigation to New Jersey Superior Court on grounds that this Court lacks subject matter jurisdiction since this shareholder derivative action pleads exclusively state law claims. It should also be noted that Plaintiff is a citizen of the State of New Jersey as is Defendant John D. Finnegan. Thus, complete diversity of citizenship among the Plaintiff and Defendants does not exist here. Cplt ¶¶ 5, 12.

For the reasons set forth below, the Court should decide Plaintiff's Motion for Remand prior to deciding Defendants' Motion to Stay.

## **ARGUMENT**

## I. **LEGAL STANDARD FOR MOTION TO STAY**

The court has the inherent power to efficiently manage its own docket. Landis v. North American Co., 299 U.S. 248, 254-55, 57 S. Ct. 163, 81 L. Ed. 153 (1936). In determining whether to stay an action a court should consider whether a stay would prejudice the plaintiff and if it would further the interest of judicial economy. See Local 478 Trucking & Allied Industries Pension Fund v. Jayne, 778 F. Supp. 1289, 1324 (D.N.J. 1991); see also Ford Motor Credit Co. v. Chiorazzo, No. 07-2852, 2008 U.S. Dist. LEXIS 830 (D.N.J. Jan. 7, 2008).

## II. THIS COURT SHOULD NOT STAY THE PROCEEDINGS BECAUSE A STAY WOULD UNNECESSARILY DELAY RULING ON PLAINTIFF'S MOTION TO REMAND AND WOULD NOT PROMOTE JUDICIAL ECONOMY

### A. This Court Has Jurisdiction To Decide Plaintiff's Motion To Remand

The pendency of Defendants' MDL transfer motion does not limit the jurisdiction of this Court.  See Panel Rule 1.5, 199 F.R.D. 425 (2001) ("the pendency of a motion [or] conditional transfer order . . . before the Panel concerning transfer . . . pursuant to 28 U.S.C. §1407 does not affect or suspend . . . pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court").

Defendants would have this Court stay this action until, at the earliest, mid April[1] on grounds that the JPML needs the ability to "advance the just and efficient conduct of the [17 federal] Actions" pending against Merrill Lynch et al..  Since, however, the federal court's (and the Panel's) jurisdiction over this action is a preliminary matter, and Panel Rule 1.5 grants this Court jurisdiction to decide Plaintiff's Remand Motion, there is no reason for this Court to delay ruling on Plaintiff's Motion to Remand.

In Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft, Hoechst Marion Roussel, Inc., 54 F. Supp. 2d 1042 (D. Kan. 1999), a case directly on point, defendants argued that the court should stay consideration of plaintiffs' motion for remand during the pendency of their transfer motion before the JPMDL.  The court disagreed:

---

[1] Defendants seek a stay until 10 days after the MDL Panel rules on Defendants' motion to transfer.

> The Court sees no reason to delay ruling on plaintiffs' motion to remand. The Court retains jurisdiction to decide the remand issue, despite defendants' motion to the JPMDL. See Panel Rule 1.5, 181 F.R.D. 1, 3 (1998).. . .
>
> . . . .. The parties will not save time, for they have already briefed the remand issue. . . . . <u>For purposes of judicial economy, the jurisdictional issue should be resolved immediately. If federal jurisdiction does not exist, the case can be remanded before federal resources are further expended. In the Court's view, judicial economy dictates a present ruling on the remand issue</u>. See generally Tortola Restaurants, L.P. v. Kimberly-Clark Corp., 987 F. Supp. 1186, 1188 (N.D. Cal. 1997).

<u>Id.</u> at 1047-48 (emphasis added).  <u>See also</u> <u>Smith v. Merck & Co.</u>, No. 07CV170, 2007 U.S. Dist. LEXIS 78678 at *3 (D. Miss. Oct. 23, 2007) (during pendency of transfer motion before JPML, court held that it is "still vested with jurisdiction in this case" and subsequently remanded the action).

Therefore, there is no reason for this Court to delay ruling on Plaintiff's Motion to Remand.

### B.  Plaintiff's Motion to Remand Is Timely And This Court Should <u>Not Delay In Deciding This Important Jurisdictional Issue</u>

The Defendants have improperly removed this action over which the District Court of New Jersey does not have original jurisdiction. <u>See</u> 28 U.S.C. § 1331. According to 28 U.S.C. § 1447 (c), "if at any time before final judgment it appears that the district court lacks subject mater jurisdiction, the case shall be remanded." Since this case has not reached final judgment, Plaintiff has timely filed his Motion to Remand.  <u>See</u> <u>Aetna U.S. Healthcare, Inc.</u>, 54 F. Supp. 2d at 1048 (citing 28 U.S.C. § 1447 (c), court noted the "importance of this preliminary issue" issue and found plaintiffs' motion to remand timely).

Plaintiff's Motion to Remand raises an important and timely jurisdictional issue, the resolution of which at this juncture is clearly in the interest of judicial economy. Defendants' attempt to delay this proceeding does not promote judicial economy, and, accordingly, their Motion to Stay should be denied.

### C. Deciding The Jurisdictional Issue Now Will Prevent Delay And Preserve Judicial Assets

The Court should deny Defendants' Motion to Stay, and thereby prevent unnecessary delay in the prosecution of this matter while preserving limited judicial assets. See, e.g., Dix v. ICT Group, Inc., No. CS-03-0315-LRS, 2003 U.S. Dist. LEXIS 21679 at *22 (E.D. Wash. Oct. 20, 2003) ("In the Court's view, judicial economy dictates a present ruling on the remand issue"; accordingly, court denied motion to stay). Another court in this District has done exactly that when previously faced with factually similar circumstances.

In Anthem, Inc. v. Bristol-Myers Squibb Co., No. 03-0008, 2003 U.S. Dist. LEXIS 15762 (D.N.J. Mar. 18, 2003) (J. Walls), defendants removed a state action alleging violations of state antitrust law, consumer protection statutes and unjust enrichment (among others) to the District Court of New Jersey. Plaintiffs subsequently filed a motion to remand the action to state court. Defendants then moved the JPML seeking to consolidate the cases before the Southern District of New York, and concurrently filed a motion to stay the district court's proceedings.

The court ruled on both the motion to remand and the motion to stay simultaneously. The Court reasoned that it had sufficient jurisdiction over the motion to remand and denied Defendant's motion to stay the proceeding pending the JPML's decision on the motion to transfer. The court stated that:

> Deciding the jurisdictional question now promotes judicial economy: if jurisdiction does not exist, then the case need not be transferred to the MDL court at all, and if it does exist then both the parties and the MDL court will be faced with one less contested issue if and when the case eventually is transferred.

Anthem, Inc., 2003 U.S. Dist. LEXIS 15762 at *7. (Emphasis added).

The very same reasoning applies here. Judicial economy would be promoted by denying Defendants' motion to stay, as this action should be remanded to New Jersey Superior Court and not transferred to the Southern District of New York because "federal question" jurisdiction does not exist. Moreover, this Court should decide the issue now because, should "federal question" jurisdiction be found, the parties will be faced with one less issue to litigate before the transferee court. The issue will have been fully briefed by the time the Court hears this Motion and there is little or no benefit in staying these important issues at this juncture. See Weinberg v. Sprint Corp., 165 F.R.D. 431 (D.N.J. 1996) (court ruled on the motion to remand, remanded the action to New Jersey Superior Court and denied as moot Defendant's motion to stay pending transfer to the JPML.)[2]

It is respectfully submitted that the Court would promote judicial economy by ruling on the jurisdictional issue currently before it. Therefore, the Court should rule on Plaintiff's Motion to Remand and deny Defendants' Motion to Stay.

---

[2]        Decisions in other jurisdictions support the premise that a motion to stay pending transfer to the JPML should be denied when there are motions to remand still at issue. See, e.g. , Betts v. Eli Lilly & Co., 435 F. Supp. 2d 1180, 1182 (S.D. Ala. 2006) (Court provided an in-depth analysis on how judicial economy is best served by ruling first on the motion to remand, granted the motion to remand and denied defendant's motion to stay); Texas ex rel. Ven-A-Care of the Fla. Keys, Inc. v. Abbott Labs. Inc., No. 05CA879, 2005 U.S. Dist. LEXIS 42434 at *4-5 (W.D. Tex. Dec. 5, 2005)("This Court… is of the opinion that judicial efficiency and economy are better served by this Court considering the motion to remand before the case is transferred to the MDL Court"; court denied motion to stay).

### III.   PLAINTIFF WILL BE PREJUDICED IF THIS SHAREHOLDER DERIVATIVE ACTION IS STAYED

Plaintiff will be prejudiced by a stay because of the months of undue delay that could result from Defendants' improper removal of this action. The Court can prevent this delay by ruling on Plaintiff's Motion for Remand.

Indeed, the Panel is not scheduled to hear Defendants motion until, at the earliest, the end of March.  Should the Panel decide to transfer this improperly removed action to the Southern District of New York, it would be one of at least 20 actions pending before the transferee court, making it unlikely that the court would decide this issue expeditiously. The resulting months of unnecessary delay of this litigation inflicts a very real prejudice upon Plaintiff.[3]  See Wisconsin v. Amgen, Inc., 469 F. Supp. 2d 655, 661

---

[3]     The few cases Defendants cite in their motion papers where a remand motion was pending are readily distinguished. For example, in Tench v. Jackson National Life Insurance Co., No. 99 C 5182, 199 U.S. Dist. Lexis 18023 (N.D. Ill. Nov. 10, 1999), the Court granted the defendants' motion to stay finding no prejudice to plaintiff because the motion to transfer was to be decided by the JPML in the very next week. Here, as discussed above, the potential delay could last for months. Accordingly, Tench is easily distinguishable.

As well, the Nekritz v. Canary Capital Partners, LLC, No. 03-5081 (DRD), 2004 U.S. Dist. LEXIS 12473 (D.N.J. Jan. 12, 2004) and Medical Society v. Connecticut General Corp., 187 F. Supp. 2d 89 (S.D.N.Y. 2001) cases cited involved actions where the remand issue was a complicated one and, as such, the courts determined to stay the case pending the JPML transfer. Here, remand is clearly appropriate because Plaintiff's breaches of fiduciary duties and unjust enrichment claims are purely state law claims and diversity is a non-issue.  Accordingly, Nekritz is inapposite.

Moreover, in Register v. Bayer Corp., No. Civ. A02-1013, 2002 U.S. Dist. LEXIS 13438 (E.D. La. Jul. 16, 2002), the JPML had already entered the transfer order and in Weinke v. Microsoft Corp., 84 F. Supp. 2d 989 (E.D. Wis. 2000) plaintiff cited no

(W.D. Wis. 2007) (Court denied defendant's motion to stay because staying the action pending the JPML's decision on a motion to transfer would "unnecessary delay" the action.).

Accordingly, the Court should deny Defendants' Motion to Stay and thereby prevent such unnecessary prejudice to Plaintiff.

## CONCLUSION

Plaintiff respectfully submits that the Court should rule on Plaintiff's pending Motion to Remand before hearing the instant application for a stay. This will promote fairness and judicial economy and ultimately it will avoid the need for this case, which Defendants have improperly removed, to be transferred to the JPML.

Dated: January 25, 2008

**LAW OFFICES OF JAMES V. BASHIAN, P.C.**

By: /S/ James V. Bashian
James V. Bashian, Esq. (JB-6331)
271 Route 46 West, Suite F207
Fairfield, New Jersey 07004
Tel: (973) 227-6330
Fax: (973) 808-8665

Paul O. Paradis, Esq.
Michael A. Schwartz, Esq.
Gina M. Tufaro, Esq.
Edward Kroub, Esq.
**HORWITZ, HORWITZ & PARADIS, Attorneys at Law**
28 West 44th Street, 16th Floor
New York, NY 10036
Phone: (212) 404-2200

---

controlling authority in support of his arguments that the action should not be stayed. Those cases are distinguishable because in the case at bar no transfer order has been entered by the Panel and Plaintiff here cites to controlling precedent supporting the Court's jurisdiction over this jurisdictional matter.

Fax:    (212) 404-2226

Attorneys For Derivative Plaintiff

LAW OFFICES OF JAMES V. BASHIAN, P.C.
James V. Bashian, Esq. (JB-6331)
271 Route 46 West, Suite F207
Fairfield, New Jersey 07004
Tel: (973) 227-6330
Fax: (973) 808-8665

Attorney for Plaintiff

[Additional Counsel Appear on Signature Page]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| David Eidman, Derivatively and on Behalf Of MERRILL LYNCH & CO., INC., ) ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | Hon. Susan D. Wigenton, U.S.D.J. |
| ERNEST STANLEY O'NEAL, ) | |
| CAROL T. CHRIST, ARMANDO M. ) | **CASE NO. 08-CV-00126 (SDW)(MCA)** |
| CODINA, VIRGIS W. COLBERT, ) | |
| ALBERTO CRIBIORE, JOHN D. ) | |
| FINNEGAN, JUDITH MAYHEW JONAS, ) | |
| AULANA L. PETERS, JOSEPH W. ) | |
| PRUEHER, ANN N. REESE and ) | |
| CHARLES O. ROSSOTTI ) | |
| ) | |
| Defendants, ) | |
| ) | |
| and ) | |
| ) | |
| MERRILL LYNCH & CO., INC., ) | |
| ) | **ELECTRONICALLY FILED** |
| Nominal Defendant. ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on January 25, 2008, I electronically filed and served the

foregoing Plaintiff's Opposition to Defendants' Motion to Stay Proceedings, and

Certificate of Service with the Clerk of the District Court using the CM/ECF system

pursuant to Local Civil Rule 5.2. on:

Michael R. Griffinger
GIBBONS, P.C.
One Gateway Center
Newark, NJ 07102-5310

Also, on January 25, 2008, I caused a true and correct copy of the foregoing
Plaintiff's Opposition to Defendants' Motion to Stay Proceedings and Certificate of
Service upon the following counsel by regular mail:

Michael J. Chepiga
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avneue
New York, New York 10017-3954

Dennis Block
CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, New York 1028

I hereby certify that the foregoing statements made by me are true. I am aware that if
any of the foregoing statements made by me are willfully false, I am subject to
punishment

/s/ James V. Bashian
JAMES V. BASHIAN

Michael R. Griffinger
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102-5310
mgriffinger@gibbonslaw.com
Tel: 973-596-4500
Fax: 973-639-6294

Jay B. Kasner (*Pro Hac Vice* Application to be Filed)
Scott D. Musoff
**SKADDEN, ARPS, SLATE,**
 **MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
Tel: 212-735-3000
Fax: 212-735-2000

*Co-Counsel for Nominal Defendant*
*Merrill Lynch & Co., Inc.*

<div align="center">

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

</div>

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| DAVID EIDMAN, Derivatively on Behalf of MERRILL LYNCH & CO., INC., | Civil Action No. 08-126 (SDW) (MCA) |
| Plaintiff, | **Document Filed Electronically** |
| vs. | **APPLICATION FOR AN ORDER EXTENDING DEFENDANTS' TIME TO ANSWER, MOVE OR OTHERWISE RESPOND TO PLAINTIFF'S VERIFIED AMENDED DERIVATIVE COMPLAINT** |
| ERNEST STANLEY O'NEAL, CAROL T. CHRIST, ARMANDO M. CODINA, VIRGIS W. COLBERT, ALBERTO CRIBIORE, JOHN D. FINNEGAN, JUDITH MAYHEW JONAS, AULANA L. PETERS, JOSEPH W. PRUEHER, ANN N. REESE and CHARLES O. ROSSOTTI, | |
| Defendants, | |
| -and- | |
| MERRILL LYNCH & CO., INC., | |
| Nominal Defendant. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Application is hereby made by Gibbons P.C., co-counsel for nominal defendant Merrill Lynch & Co, Inc. ("Merrill Lynch"), on behalf of Merrill Lynch as well as its co-defendants, Ernest Stanley O'Neal, Carol T. Christ, Armando M. Codina, Virgis W. Colbert, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, Aulana L. Peters, Joseph W. Prueher, Ann N. Reese and Charles O. Rossotti (collectively, the "Individual Defendants"), for an order, pursuant to Local Civil Rule 6.1, extending the time within which Merrill Lynch and the Individual Defendants shall answer, move or otherwise respond to the December 17, 2007 Verified Amended Derivative Complaint (the "Amended Complaint") filed by plaintiff David Eidman, suing derivatively on behalf of Merrill Lynch & Co., Inc. ("Plaintiff"), until and including ten (10) days after this Court hears and decides both the Stay Motion and the Remand Motion (each as defined, *infra*); and it is represented that:

1.      Counsel for Plaintiff consents to this application.

2.      On January 9, 2008 Merrill Lynch filed its Notice of Removal removing this action from the Superior Court of New Jersey, Law Division, Bergen County (the "New Jersey State Court") to this Court.

3.      On January 14, 2008 Merrill Lynch filed its motion for an order staying all proceedings in this action until ten (10) days after the Judicial Panel on Multidistrict Litigation has taken final action on the defendants' request that this action be transferred, pursuant to 28 U.S.C. § 1407, for coordination for pretrial purposes to the United States District Court for the Southern District of New York, where 17 other related federal actions are currently pending (the "Stay Motion").

#1263860 v1
101454-61824

4.      On January 23, 2008 plaintiff filed a motion to remand this action to the New Jersey State Court (the "Remand Motion").

5.      The time within which the defendants must answer, move or otherwise respond to the Amended Complaint is presently January 31, 2008.

6.      No previous applications for an extension of the time within which the defendants must answer, move or otherwise respond to the Amended Complaint have been made or granted, excepting the clerk's extension, pursuant to Local Civil Rule 6.1(b), that was granted to each of the defendants.

7.      A proposed form of order granting this application accompanies this application.

8.      For all the foregoing reasons, Merrill Lynch, on its own behalf and on behalf of the Individual Defendants, respectfully requests the entry of an order, pursuant to Local Civil Rule 6.1, extending the time within which Merrill Lynch and the Individual Defendants shall answer, move or otherwise respond to the Amended Complaint until and including ten (10) days after this Court hears and decides both the Stay Motion and the Remand Motion.

**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102-5310
Tel: 973-596-4500

*Co-Counsel for Nominal Defendant*
*Merrill Lynch & Co., Inc.*

By:  s/ Michael R. Griffinger
        Michael R. Griffinger

Dated: January 28, 2008
        Newark, New Jersey

3



MICHAEL R. GRIFFINGER
Director

Gibbons P.C.
One Gateway Center
Newark, New Jersey 07102-5310
Direct: (973) 596-4701 Fax: (973) 639-6294
griffinger@gibbonslaw.com

January 28, 2008

**BY ELECTRONIC CASE FILING**
**AND FEDERAL EXPRESS**

Hon. Madeline Cox Arleo, U.S.M.J.
United States District Court, District of New Jersey
Martin Luther King, Jr. Federal Building & U.S. Courthouse
50 Walnut Street, Room 2060
Newark, NJ 07101

      Re:  **Eidman v. O'Neal, Civil Action No. 08-126 (SDW) (MCA)**

Dear Judge Arleo:

     As Your Honor may recall, Gibbons P.C. is co-counsel for nominal defendant Merrill Lynch & Co., Inc. ("Merrill Lynch") in the above-referenced action. Enclosed for Your Honor's consideration, please find Merrill Lynch's application on consent for an order, pursuant to Local Civil Rule 6.1, extending defendants' time to answer, move or otherwise respond to plaintiff's December 17, 2007 Verified Amended Derivative Complaint (the "Application"). Merrill Lynch is filing the Application on its own behalf as well as on behalf of its codefendants in this action.

Respectfully submitted,

*Michael R. Griffinger / mcf*

Michael R. Griffinger
Director

MRG/mcf

Enclosures

cc:   Hon. Susan D. Wigenton, U.S.D.J.
      (*via* Federal Express)
      James V. Bashian, Esq.
      (*via* ECF)
      Paul O. Paradis, Esq.
      (*via* ECF)
      Michael Schwartz, Esq.
      (*via* electronic mail)
      Michael J. Chepiga, Esq.
      (*via* electronic mail)
      Jason M. Halper, Esq.
      (*via* electronic mail)

Michael R. Griffinger
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102-5310
mgriffinger@gibbonslaw.com
Tel: 973-596-4500
Fax: 973-639-6294

Jay B. Kasner (*Pro Hac Vice* Application to be Filed)
Scott D. Musoff
**SKADDEN, ARPS, SLATE,**
  **MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
Tel: 212-735-3000
Fax: 212-735-2000

*Co-Counsel for Nominal Defendant*
*Merrill Lynch & Co., Inc.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| DAVID EIDMAN, Derivatively on Behalf of MERRILL LYNCH & CO., INC., | Civil Action No. 08-126 (SDW) (MCA) |
| Plaintiff, : | **Document Filed Electronically** |
| vs. : | **[PROPOSED] ORDER EXTENDING DEFENDANTS' TIME TO ANSWER, MOVE OR OTHERWISE RESPOND TO PLAINTIFF'S VERIFIED AMENDED DERIVATIVE COMPLAINT** |
| ERNEST STANLEY O'NEAL, CAROL T. CHRIST, ARMANDO M. CODINA, VIRGIS W. COLBERT, ALBERTO CRIBIORE, JOHN D. FINNEGAN, JUDITH MAYHEW JONAS, AULANA L. PETERS, JOSEPH W. PRUEHER, ANN N. REESE and CHARLES O. ROSSOTTI, : | |
| Defendants, : | |
| -and- : | |
| MERRILL LYNCH & CO., INC., : | |
| Nominal Defendant. : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

#1263858 v1
101454-61824

This matter having been presented to the Court upon the application of nominal defendant Merrill Lynch & Co., Inc. ("Merrill Lynch"), on its own behalf and on behalf of its co-defendants, Ernest Stanley O'Neal, Carol T. Christ, Armando M. Codina, Virgis W. Colbert, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, Aulana L. Peters, Joseph W. Prueher, Ann N. Reese and Charles O. Rossotti (collectively, the "Individual Defendants"), for an order, pursuant to Local Civil Rule 6.1, extending the time within which Merrill Lynch and the Individual Defendants shall answer, move or otherwise respond to the December 17, 2007 Verified Amended Derivative Complaint (the "Amended Complaint") filed by plaintiff David Eidman, suing derivatively on behalf of Merrill Lynch & Co., Inc. ("Plaintiff"), until and including ten (10) days after this Court hears and decides both Merrill Lynch's pending motion to stay this action (the "Stay Motion") and Plaintiff's pending motion to remand this action (the "Remand Motion"); and the Court having considered Merrill Lynch's and the Individual Defendants' application for such order, and Plaintiff having consented to such application, and for good cause shown;

**IT IS** on this ___ day of January 2008,

**ORDERED** that the application is GRANTED, and the time within which Merrill Lynch and the Individual Defendants shall answer, move or otherwise respond to the Amended Complaint shall be and hereby is extended until and including ten (10) days after this Court hears and decides both the Stay Motion and the Remand Motion; and it is further

**ORDERED** that this order applies solely to Merrill Lynch's and the Individual Defendants' time to answer, move or otherwise respond to the Amended Complaint, and is without prejudice to, and is not a waiver of, any other claims and/or defenses that any defendant has or may assert; and it is further

-2-

#1263858 v1
101454-61824

**ORDERED** that neither this order nor the application underlying it constitutes an appearance by any of the defendants, either generally or specifically, in this jurisdiction, or a waiver of any defenses available to any of the defendants by such appearance.

_____

Hon.

#1263858 v1
101454-61824

Michael R. Griffinger
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102-5310
mgriffinger@gibbonslaw.com
Tel:  973-596-4500
Fax:  973-639-6294

Jay B. Kasner (*Pro Hac Vice* Application to be Filed)
Scott D. Musoff
**SKADDEN, ARPS, SLATE,**
 **MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
Tel: 212-735-3000
Fax: 212-735-2000

*Co-Counsel for Nominal Defendant*
*Merrill Lynch & Co., Inc.*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DAVID EIDMAN, Derivatively on Behalf of
MERRILL LYNCH & CO., INC.,                        :    Civil Action No. 08-126 (SDW) (MCA)

        Plaintiff,                                 :    **CERTIFICATE OF SERVICE**

        vs.                                        :    **Document Filed Electronically**

ERNEST STANLEY O'NEAL, CAROL T.             :
CHRIST, ARMANDO M. CODINA, VIRGIS W.
COLBERT, ALBERTO CRIBIORE, JOHN D.          :
FINNEGAN, JUDITH MAYHEW JONAS,
AULANA L. PETERS, JOSEPH W. PRUEHER,        :
ANN N. REESE and CHARLES O. ROSSOTTI,
                                             :
        Defendants,                                :

        -and-                                      :

MERRILL LYNCH & CO., INC.,                   :

        Nominal Defendant.                         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

I, **MELISSA C. FULTON**, hereby certify as follows:

1.      I am an associate of the law firm of Gibbons P.C., co-counsel for nominal defendant Merrill Lynch & Co., Inc. ("Merrill Lynch") in the above-captioned action.

2.      On January 28, 2008, pursuant to Local Civil Rule 5.2, I electronically filed and served defendants' (i) Application for an Order Extending Defendants' Time to Answer, Move or Otherwise Respond to Plaintiff's Verified Amended Derivative Complaint; (ii) [Proposed] Order Extending Defendants' Time to Answer, Move or Otherwise Respond to Plaintiff's Verified Amended Derivative Complaint; (iii) January 28, 2008 letter to Magistrate Judge Arleo enclosing items (i) and (ii); and (iv) this Certificate of Service; upon the following counsel:

James V. Bashian, Esq.
LAW OFFICES OF
JAMES V. BASHIAN, P.C.
271 Route 46 West, Suite F207
Fairfield, NJ 07004

*Attorneys for Plaintiffs*

Paul O. Paradis, Esq.
HORWITZ, HORWITZ & PARADIS
28 West 44th Street, 16th Floor
New York, NY 10036

*Attorneys for Plaintiffs*

3.      Additionally, I served each of the preceding documents *via* electronic mail upon the following counsel:

Michael Schwartz, Esq.
HORWITZ, HORWITZ & PARADIS
28 West 44th Street, 16th Floor
New York, NY 10036
mschwartz@hhplawny.com

*Attorneys for Plaintiffs*

Michael J. Chepiga, Esq.
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017-3954
mchepiga@stblaw.com

*Attorneys for Defendant Ernest Stanley O'Neal*

Jason M. Halper, Esq.
CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, NY 10281
jason.halper@cwt.com

*Attorneys for Defendants Carol T. Christ,*
*Armando M. Codina, Virgis W. Colbert,*
*Alberto Cribiore, John D. Finnegan,*

2

*Judith Mayhew Jonas, Aulana L. Peters,*
*Joseph W. Prueher, Ann N. Reese and Charles O. Rossotti*

    I hereby certify that the foregoing statements made by me are true.  I am aware that if any

of the foregoing statements made by me are willfully false, I am subject to punishment.

MELISSA C. FULTON

Dated:  January 28, 2008
        Newark, New Jersey

3



MICHAEL R. GRIFFINGER
Director

Gibbons P.C.
One Gateway Center
Newark, New Jersey 07102-5310
Direct: (973) 596-4701 Fax: (973) 639-6294
griffinger@gibbonslaw.com

January 31, 2008

**FILED & SERVED ELECTRONICALLY**

William T. Walsh, Clerk
United States District Court, District of New Jersey
Martin Luther King, Jr. Federal Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07101

> **Re:** **Eidman v. O'Neal, Civil Action No. 08-126 (SDW) (MCA)**

Dear Mr. Walsh:

Gibbons P.C. is co-counsel for nominal defendant Merrill Lynch & Co., Inc. ("Merrill Lynch") in the above-referenced action. By this letter, Merrill Lynch is adjourning plaintiff's motion to remand (Docket Entry 10) and the hearing thereon, pursuant to Local Civil Rule 7.1(d)(5).[1] Merrill Lynch has neither requested nor received any prior extensions with respect to plaintiff's motion to remand (Docket Entry 10).

Plaintiff's motion to remand (Docket Entry 10) was originally noticed to be heard on February 19, 2008. Thus, absent this adjournment, Merrill Lynch's opposition would have been due on February 4, 2008. The new motion day for plaintiff's motion to remand is now March 3, 2008, which is the next available motion day following the date originally noticed by plaintiff. As a result of this adjournment, Merrill Lynch's opposition papers, including its brief, now must be filed on or before February 19, 2008.

---

[1] *See In re U.S. Healthcare*, 159 F.3d 142, 146 (3rd Cir. 1998) ("[I]t is clear that as far as the federal courts are concerned, a remand order is dispositive of all the claims and defenses in the case as it banishes the entire case from the federal court."); *see also Sakrani v. Koenig*, Civil Action No. 05-1192 (JAG), 2006 WL 20514, *1 (D.N.J. Jan. 3, 2006) ("Since a motion to remand and a motion to dismiss are dispositive motions, this Court has conducted a *de novo* review of the parties' submissions ..."); *Nittoli v. Morris Cty. Bd. of Chosen Freeholders*, Civil Action No. 05-4007 (JAG), 2006 WL 1307694, *1 (D.N.J. May 9, 2006) (adopting Magistrate Judge Arleo's report and recommendation that plaintiffs' motion to remand should be denied after reviewing the same *de novo*, noting that "a magistrate judge's recommended disposition of a dispositive motion is subject to *de novo* review.").

G<span>IBBONS</span> P.C.

William T. Walsh, Clerk
January 31, 2008
Page 2

Respectfully submitted,

s/ Michael R. Griffinger

Michael R. Griffinger
Director

MRG/mcf

Enclosure (Certificate of Service)

cc: Hon. Susan D. Wigenton, U.S.D.J. (*via* Federal Express)
   Hon. Madeline Cox Arleo, U.S.M.J. (*via* Federal Express)
   James V. Bashian, Esq. (*via* ECF)
   Paul O. Paradis, Esq. (*via* ECF)
   Michael Schwartz, Esq. (*via* electronic mail and regular mail)
   Michael J. Chepiga, Esq. (*via* electronic mail and regular mail)
   Jason M. Halper, Esq. (*via* electronic mail and regular mail)

Michael R. Griffinger
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102-5310
mgriffinger@gibbonslaw.com
Tel: 973-596-4500
Fax: 973-639-6294

Jay B. Kasner (*Pro Hac Vice* Application to be Filed)
Scott D. Musoff
**SKADDEN, ARPS, SLATE,**
 **MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
Tel: 212-735-3000
Fax: 212-735-2000

*Co-Counsel for Nominal Defendant*
*Merrill Lynch & Co., Inc.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DAVID EIDMAN, Derivatively on Behalf of
MERRILL LYNCH & CO., INC.,                  :    Civil Action No. 08-126 (SDW) (MCA)

        Plaintiff,                        :    **CERTIFICATE OF SERVICE**

        vs.                               :    **Document Filed Electronically**

ERNEST STANLEY O'NEAL, CAROL T.              :
CHRIST, ARMANDO M. CODINA, VIRGIS W.
COLBERT, ALBERTO CRIBIORE, JOHN D.           :
FINNEGAN, JUDITH MAYHEW JONAS,
AULANA L. PETERS, JOSEPH W. PRUEHER,         :
ANN N. REESE and CHARLES O. ROSSOTTI,

                                    :

        Defendants,                       :

        -and-                             :

MERRILL LYNCH & CO., INC.,                   :

        Nominal Defendant.                :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

#1264250 v1
101454-61824

I, **MELISSA C. FULTON**, hereby certify as follows:

1.     I am an associate of the law firm of Gibbons P.C., co-counsel for nominal defendant Merrill Lynch & Co., Inc. ("Merrill Lynch") in the above-captioned action.

2.     On January 31, 2008, pursuant to Local Civil Rule 5.2, I electronically filed and served (i) Merrill Lynch's January 31, 2008 letter from Michael R. Griffinger to William T. Walsh, Clerk, United States District Court, District of New Jersey, adjourning plaintiff's pending motion to remand and the hearing thereon to March 3, 2008 and (ii) this Certificate of Service; upon the following counsel:

James V. Bashian, Esq.
LAW OFFICES OF
JAMES V. BASHIAN, P.C.
271 Route 46 West, Suite F207
Fairfield, NJ 07004

*Attorneys for Plaintiffs*

Paul O. Paradis, Esq.
HORWITZ, HORWITZ & PARADIS
28 West 44th Street, 16th Floor
New York, NY 10036

*Attorneys for Plaintiffs*

3.     Additionally, I served each of the preceding documents *via* electronic mail and regular mail upon the following counsel:

Michael Schwartz, Esq.
HORWITZ, HORWITZ & PARADIS
28 West 44th Street, 16th Floor
New York, NY 10036
mschwartz@hhplawny.com

*Attorneys for Plaintiffs*

Michael J. Chepiga, Esq.
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017-3954
mchepiga@stblaw.com

*Attorneys for Defendant Ernest Stanley O'Neal*

Jason M. Halper, Esq.
CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, NY 10281
jason.halper@cwt.com

*Attorneys for Defendants Carol T. Christ,*
*Armando M. Codina, Virgis W. Colbert,*
*Alberto Cribiore, John D. Finnegan,*
*Judith Mayhew Jonas, Aulana L. Peters,*
*Joseph W. Prueher, Ann N. Reese and Charles O. Rossotti*

2

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____
MELISSA C. FULTON

Dated:  January 31, 2008
       Newark, New Jersey

3

Michael R. Griffinger
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102-5310
mgriffinger@gibbonslaw.com
Tel: 973-596-4500
Fax: 973-639-6294

Jay B. Kasner (*Pro Hac Vice* Application to be Filed)
Scott D. Musoff
**SKADDEN, ARPS, SLATE,**
  **MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
Tel: 212-735-3000
Fax: 212-735-2000

*Co-Counsel for Nominal Defendant*
*Merrill Lynch & Co., Inc.*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DAVID EIDMAN, Derivatively on Behalf of
MERRILL LYNCH & CO., INC.,                          :

        Plaintiff,                                  :

        vs.                                         :

ERNEST STANLEY O'NEAL, CAROL T.                     :
CHRIST, ARMANDO M. CODINA, VIRGIS W.
COLBERT, ALBERTO CRIBIORE, JOHN D.                  :
FINNEGAN, JUDITH MAYHEW JONAS,
AULANA L. PETERS, JOSEPH W. PRUEHER,                :
ANN N. REESE and CHARLES O. ROSSOTTI,
                        :

        Defendants,                                 :

        -and-                                       :

MERRILL LYNCH & CO., INC.,                          :

        Nominal Defendant.                          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Civil Action No. 08-126 (SDW) (MCA)

**Document Filed Electronically**

**[PROPOSED] ORDER EXTENDING
DEFENDANTS' TIME TO ANSWER,
MOVE OR OTHERWISE RESPOND
TO PLAINTIFF'S VERIFIED
AMENDED DERIVATIVE
COMPLAINT**

#1263858 v1
101454-61824

This matter having been presented to the Court upon the application of nominal defendant Merrill Lynch & Co., Inc. ("Merrill Lynch"), on its own behalf and on behalf of its co-defendants, Ernest Stanley O'Neal, Carol T. Christ, Armando M. Codina, Virgis W. Colbert, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, Aulana L. Peters, Joseph W. Prueher, Ann N. Reese and Charles O. Rossotti (collectively, the "Individual Defendants"), for an order, pursuant to Local Civil Rule 6.1, extending the time within which Merrill Lynch and the Individual Defendants shall answer, move or otherwise respond to the December 17, 2007 Verified Amended Derivative Complaint (the "Amended Complaint") filed by plaintiff David Eidman, suing derivatively on behalf of Merrill Lynch & Co., Inc. ("Plaintiff"), until and including ten (10) days after this Court hears and decides both Merrill Lynch's pending motion to stay this action (the "Stay Motion") and Plaintiff's pending motion to remand this action (the "Remand Motion"); and the Court having considered Merrill Lynch's and the Individual Defendants' application for such order, and Plaintiff having consented to such application, and for good cause shown;

IT IS on this 2(th) day of January 2008,

ORDERED that the application is GRANTED, and the time within which Merrill Lynch and the Individual Defendants shall answer, move or otherwise respond to the Amended Complaint shall be and hereby is extended until and including ten (10) days after this Court hears and decides both the Stay Motion and the Remand Motion; and it is further

ORDERED that this order applies solely to Merrill Lynch's and the Individual Defendants' time to answer, move or otherwise respond to the Amended Complaint, and is without prejudice to, and is not a waiver of, any other claims and/or defenses that any defendant has or may assert; and it is further

-2-

**ORDERED** that neither this order nor the application underlying it constitutes an appearance by any of the defendants, either generally or specifically, in this jurisdiction, or a waiver of any defenses available to any of the defendants by such appearance.

Hon.

-3-



MICHAEL R. GRIFFINGER
Director

Gibbons P.C.
One Gateway Center
Newark, New Jersey 07102-5310
Direct: (973) 596-4701 Fax: (973) 639-6294
griffinger@gibbonslaw.com

February 7, 2008

**BY ELECTRONIC CASE FILING
AND FEDERAL EXPRESS**

Hon. Susan D. Wigenton, U.S.D.J.
United States District Court, District of New Jersey
Martin Luther King, Jr. Federal Building & U.S. Courthouse
50 Walnut Street, Room 5060
Newark, New Jersey 07101

> Re:  **Eidman v. O'Neal, Civil Action No. 08-126 (SDW) (MCA)**

Dear Judge Wigenton:

As Your Honor may recall, Gibbons P.C. is co-counsel for nominal defendant Merrill Lynch & Co., Inc. ("Merrill Lynch") in the above-referenced action. Plaintiff has requested that we adjourn the motion day for Merrill Lynch's pending motion to stay, brought on by notice of motion dated January 14, 2008 (the "Stay Motion"), from February 19, 2008 to March 3, 2008. Defendants have no objection to this request. Accordingly, we write on behalf of all parties to respectfully request that Your Honor enter the enclosed Proposed Order adjourning the motion day and extending the time within which Merrill Lynch may file and serve its reply papers on the Stay Motion to and including Friday, February 15, 2008. Absent this extension, Merrill Lynch's reply papers would be due on Monday, February 11, 2008.

The parties have agreed to this proposed adjournment and extension because plaintiff's pending motion to remand, brought on by notice of motion dated January 23, 2008, is now scheduled to be heard on March 3, 2008 in accordance with Merrill Lynch's January 31, 2008 letter to William T. Walsh, Clerk, invoking Local Civil Rule 7.1(d)(5). There have been no previous adjournments of the motion day for the Stay Motion, nor have any applications extending the time within which Merrill Lynch may file and serve its reply papers on the Stay Motion been made or granted.

Respectfully submitted,

s/ Michael R. Griffinger

Michael R. Griffinger
Director

MRG/mcf

Enclosures

GIBBONS P.C.

Hon. Susan D. Wigenton, U.S.D.J.
February 7, 2008
Page 2


cc:   Hon. Madeline Cox Arleo, U.S.M.J. (*via* Federal Express)
      James V. Bashian, Esq. (*via* ECF)
      Paul O. Paradis, Esq. (*via* ECF)
      Michael Schwartz, Esq. (*via* email and regular mail)
      Michael J. Chepiga, Esq. (*via* email and regular mail)
      Jason M. Halper, Esq. (*via* email and regular mail)

Michael R. Griffinger
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102-5310
mgriffinger@gibbonslaw.com
Tel: 973-596-4500
Fax: 973-639-6294

Jay B. Kasner (*Pro Hac Vice* Application to be Filed)
Scott D. Musoff
**SKADDEN, ARPS, SLATE,**
  **MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
Tel: 212-735-3000
Fax: 212-735-2000

*Co-Counsel for Nominal Defendant*
*Merrill Lynch & Co., Inc.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |
|---|---|
| DAVID EIDMAN, Derivatively on Behalf of MERRILL LYNCH & CO., INC., | Civil Action No. 08-126 (SDW) (MCA) |
| Plaintiff, : | **Document Filed Electronically** |
| vs. : | **[PROPOSED] ORDER ADJOURNING MOTION TO STAY AND EXTENDING MERRILL LYNCH & CO., INC.'S TIME TO FILE AND SERVE REPLY PAPERS ON ITS MOTION TO STAY** |
| ERNEST STANLEY O'NEAL, CAROL T. CHRIST, ARMANDO M. CODINA, VIRGIS W. COLBERT, ALBERTO CRIBIORE, JOHN D. FINNEGAN, JUDITH MAYHEW JONAS, AULANA L. PETERS, JOSEPH W. PRUEHER, ANN N. REESE and CHARLES O. ROSSOTTI, : | |
| Defendants, : | |
| -and- : | |
| MERRILL LYNCH & CO., INC., | |
| Nominal Defendant. : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

#1267118 v1
101454-61824

This matter having been presented to the Court upon the application of nominal defendant Merrill Lynch & Co., Inc. ("Merrill Lynch") for an order, pursuant to Local Civil Rule 6.1, adjourning the motion day for Merrill Lynch's pending motion to stay, brought on by notice of motion dated January 14, 2008 (the "Stay Motion"), from February 19, 2008 to March 3, 2008, and extending the time within which Merrill Lynch may file and serve reply papers on the Stay Motion to and including February 15, 2008; and the Court having considered Merrill Lynch's application for such order, and all parties having consented to such application, and for good cause shown;

**IT IS** on this ___ day of February 2008,

**ORDERED** that the application is GRANTED, and the motion day for the Stay Motion shall be and hereby is adjourned to March 3, 2008; and it is further

**ORDERED** that the time within which Merrill Lynch shall file and serve its reply papers on the Stay Motion shall be and hereby is extended to and including February 15, 2008.

_____
Hon.

#1267118 v1
101454-61824

Michael R. Griffinger
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102-5310
mgriffinger@gibbonslaw.com
Tel:  973-596-4500
Fax:  973-639-6294

Jay B. Kasner (*Pro Hac Vice* Application to be Filed)
Scott D. Musoff
**SKADDEN, ARPS, SLATE,**
 **MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
Tel: 212-735-3000
Fax: 212-735-2000

*Co-Counsel for Nominal Defendant*
*Merrill Lynch & Co., Inc.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DAVID EIDMAN, Derivatively on Behalf of | Civil Action No. 08-126 (SDW) (MCA)
MERRILL LYNCH & CO., INC.,
                                        :
  Plaintiff,                            :     **CERTIFICATE OF SERVICE**

                                        :     **Document Filed Electronically**
  vs.                                   :

ERNEST STANLEY O'NEAL, CAROL T.         :
CHRIST, ARMANDO M. CODINA, VIRGIS W.
COLBERT, ALBERTO CRIBIORE, JOHN D.      :
FINNEGAN, JUDITH MAYHEW JONAS,
AULANA L. PETERS, JOSEPH W. PRUEHER,    :
ANN N. REESE and CHARLES O. ROSSOTTI,
                                        :
  Defendants,                           :

  -and-                                 :

MERRILL LYNCH & CO., INC.,              :

  Nominal Defendant.                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

I, **MELISSA C. FULTON**, hereby certify as follows:

1.  I am an associate of the law firm of Gibbons P.C., co-counsel for nominal defendant Merrill Lynch & Co., Inc. ("Merrill Lynch") in the above-captioned action.

2.  On January 31, 2008, pursuant to Local Civil Rule 5.2, I electronically filed and served (i) Merrill Lynch's February 7, 2008 letter from Michael R. Griffinger to the Honorable Susan D. Wigenton, U.S.D.J., respectfully requesting the adjournment of Merrill Lynch's pending motion to stay as well as an extension of the time within which Merrill Lynch may file its reply papers on the same motion, (ii) a Proposed Order granting the same letter application and (iii) this Certificate of Service; upon the following counsel:

James V. Bashian, Esq.
LAW OFFICES OF
JAMES V. BASHIAN, P.C.
271 Route 46 West, Suite F207
Fairfield, NJ 07004

*Attorneys for Plaintiffs*

Paul O. Paradis, Esq.
HORWITZ, HORWITZ & PARADIS
28 West 44th Street, 16th Floor
New York, NY 10036

*Attorneys for Plaintiffs*

3.  Additionally, I served each of the preceding documents *via* electronic mail and regular mail upon the following counsel:

Michael Schwartz, Esq.
HORWITZ, HORWITZ & PARADIS
28 West 44th Street, 16th Floor
New York, NY 10036
mschwartz@hhplawny.com

*Attorneys for Plaintiffs*

Michael J. Chepiga, Esq.
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017-3954
mchepiga@stblaw.com

*Attorneys for Defendant Ernest Stanley O'Neal*

Jason M. Halper, Esq.
CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, NY 10281
jason.halper@cwt.com

*Attorneys for Defendants Carol T. Christ,
Armando M. Codina, Virgis W. Colbert,
Alberto Cribiore, John D. Finnegan,*

2

*Judith Mayhew Jonas, Aulana L. Peters,*
*Joseph W. Prueher, Ann N. Reese and Charles O. Rossotti*

 I hereby certify that the foregoing statements made by me are true.  I am aware that if any

of the foregoing statements made by me are willfully false, I am subject to punishment.

       _____
       MELISSA C. FULTON

Dated:  February 7, 2008
    Newark, New Jersey

3



MICHAEL R. GRIFFINGER
Director

Gibbons P.C.
One Gateway Center
Newark, New Jersey 07102-5310
Direct: (973) 596-4701 Fax: (973) 639-6294
griffinger@gibbonslaw.com

February 8, 2008

**BY ELECTRONIC CASE FILING**
**AND FEDERAL EXPRESS**

Hon. Susan D. Wigenton, U.S.D.J.
United States District Court, District of New Jersey
Martin Luther King, Jr. Federal Building & U.S. Courthouse
50 Walnut Street, Room 5060
Newark, New Jersey 07101

   **Re:  Eidman v. O'Neal, Civil Action No. 08-126 (SDW) (MCA)**

Dear Judge Wigenton:

   As Your Honor may recall, Gibbons P.C. is co-counsel for nominal defendant Merrill Lynch & Co., Inc. ("Merrill Lynch") in the above-referenced action.  At the request of Your Honor's chambers and further to my letter to Your Honor dated February 7, 2008 (copy enclosed), this is to advise that all parties consent to the adjournment of Merrill Lynch's pending motion to stay, brought on by notice of motion dated January 14, 2008 (the "Stay Motion"), from February 19, 2008 to March 3, 2008.  All parties likewise consent to an extension of the time within which Merrill Lynch may file and serve its reply papers on the Stay Motion to and including Friday, February 15, 2008.

   We thank the Court for its courtesies with respect to this matter.

Respectfully submitted,

s/ Michael R. Griffinger

Michael R. Griffinger
Director

Enclosures

MRG/mcf

cc:    Hon. Madeline Cox Arleo, U.S.M.J. (*via* Federal Express)
       James V. Bashian, Esq. (*via* ECF)
       Paul O. Paradis, Esq. (*via* ECF)
       Michael Schwartz, Esq. (*via* email and regular mail)
       Michael J. Chepiga, Esq. (*via* email and regular mail)
       Jason M. Halper, Esq. (*via* email and regular mail)



MICHAEL R. GRIFFINGER
Director

Gibbons P.C.
One Gateway Center
Newark, New Jersey 07102-5310
Direct: (973) 596-4701 Fax: (973) 639-6294
griffinger@gibbonslaw.com

February 7, 2008

**BY ELECTRONIC CASE FILING**
**AND FEDERAL EXPRESS**

Hon. Susan D. Wigenton, U.S.D.J.
United States District Court, District of New Jersey
Martin Luther King, Jr. Federal Building & U.S. Courthouse
50 Walnut Street, Room 5060
Newark, New Jersey 07101

Re:  **Eidman v. O'Neal, Civil Action No. 08-126 (SDW) (MCA)**

Dear Judge Wigenton:

As Your Honor may recall, Gibbons P.C. is co-counsel for nominal defendant Merrill Lynch & Co., Inc. ("Merrill Lynch") in the above-referenced action. Plaintiff has requested that we adjourn the motion day for Merrill Lynch's pending motion to stay, brought on by notice of motion dated January 14, 2008 (the "Stay Motion"), from February 19, 2008 to March 3, 2008. Defendants have no objection to this request. Accordingly, we write on behalf of all parties to respectfully request that Your Honor enter the enclosed Proposed Order adjourning the motion day and extending the time within which Merrill Lynch may file and serve its reply papers on the Stay Motion to and including Friday, February 15, 2008. Absent this extension, Merrill Lynch's reply papers would be due on Monday, February 11, 2008.

The parties have agreed to this proposed adjournment and extension because plaintiff's pending motion to remand, brought on by notice of motion dated January 23, 2008, is now scheduled to be heard on March 3, 2008 in accordance with Merrill Lynch's January 31, 2008 letter to William T. Walsh, Clerk, invoking Local Civil Rule 7.1(d)(5). There have been no previous adjournments of the motion day for the Stay Motion, nor have any applications extending the time within which Merrill Lynch may file and serve its reply papers on the Stay Motion been made or granted.

Respectfully submitted,

s/ Michael R. Griffinger

Michael R. Griffinger
Director

MRG/mcf

Enclosures

GIBBONS P.C.

Hon. Susan D. Wigenton, U.S.D.J.
February 7, 2008
Page 2


cc:   Hon. Madeline Cox Arleo, U.S.M.J. (*via* Federal Express)
      James V. Bashian, Esq. (*via* ECF)
      Paul O. Paradis, Esq. (*via* ECF)
      Michael Schwartz, Esq. (*via* email and regular mail)
      Michael J. Chepiga, Esq. (*via* email and regular mail)
      Jason M. Halper, Esq. (*via* email and regular mail)

Michael R. Griffinger
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102-5310
mgriffinger@gibbonslaw.com
Tel: 973-596-4500
Fax: 973-639-6294

Jay B. Kasner (*Pro Hac Vice* Application to be Filed)
Scott D. Musoff
**SKADDEN, ARPS, SLATE,**
 **MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
Tel: 212-735-3000
Fax: 212-735-2000

*Co-Counsel for Nominal Defendant*
*Merrill Lynch & Co., Inc.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DAVID EIDMAN, Derivatively on Behalf of
MERRILL LYNCH & CO., INC.,

        Plaintiff,

        vs.

ERNEST STANLEY O'NEAL, CAROL T.
CHRIST, ARMANDO M. CODINA, VIRGIS W.
COLBERT, ALBERTO CRIBIORE, JOHN D.
FINNEGAN, JUDITH MAYHEW JONAS,
AULANA L. PETERS, JOSEPH W. PRUEHER,
ANN N. REESE and CHARLES O. ROSSOTTI,

        Defendants,

        -and-

MERRILL LYNCH & CO., INC.,

        Nominal Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Civil Action No. 08-126 (SDW) (MCA)

**Document Filed Electronically**

**[PROPOSED] ORDER
ADJOURNING MOTION TO STAY
AND EXTENDING MERRILL
LYNCH & CO., INC.'S TIME TO
FILE AND SERVE REPLY PAPERS
ON ITS MOTION TO STAY**

#1267118 v1
101454-61824

This matter having been presented to the Court upon the application of nominal defendant Merrill Lynch & Co., Inc. ("Merrill Lynch") for an order, pursuant to Local Civil Rule 6.1, adjourning the motion day for Merrill Lynch's pending motion to stay, brought on by notice of motion dated January 14, 2008 (the "Stay Motion"), from February 19, 2008 to March 3, 2008, and extending the time within which Merrill Lynch may file and serve reply papers on the Stay Motion to and including February 15, 2008; and the Court having considered Merrill Lynch's application for such order, and all parties having consented to such application, and for good cause shown;

**IT IS** on this ___ day of February 2008,

**ORDERED** that the application is GRANTED, and the motion day for the Stay Motion shall be and hereby is adjourned to March 3, 2008; and it is further

**ORDERED** that the time within which Merrill Lynch shall file and serve its reply papers on the Stay Motion shall be and hereby is extended to and including February 15, 2008.

_____
Hon.

-2-

#1267118 v1
101454-61824

Michael R. Griffinger
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102-5310
mgriffinger@gibbonslaw.com
Tel: 973-596-4500
Fax: 973-639-6294

Jay B. Kasner (*Pro Hac Vice* Application to be Filed)
Scott D. Musoff
**SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
Tel: 212-735-3000
Fax: 212-735-2000

*Co-Counsel for Nominal Defendant
Merrill Lynch & Co., Inc.*

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| DAVID EIDMAN, Derivatively on Behalf of MERRILL LYNCH & CO., INC., | Civil Action No. 08-126 (SDW) (MCA) |
| Plaintiff, : | **CERTIFICATE OF SERVICE** |
| vs. : | **Document Filed Electronically** |
| ERNEST STANLEY O'NEAL, CAROL T. : CHRIST, ARMANDO M. CODINA, VIRGIS W. COLBERT, ALBERTO CRIBIORE, JOHN D. : FINNEGAN, JUDITH MAYHEW JONAS, AULANA L. PETERS, JOSEPH W. PRUEHER, : ANN N. REESE and CHARLES O. ROSSOTTI, | |
| Defendants, : | |
| -and- : | |
| MERRILL LYNCH & CO., INC., | |
| Nominal Defendant. : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

#1267323 v1
101454-61824

I, **MELISSA C. FULTON,** hereby certify as follows:

1.      I am an associate of the law firm of Gibbons P.C., co-counsel for nominal defendant Merrill Lynch & Co., Inc. ("Merrill Lynch") in the above-captioned action.

2.      On January 31, 2008, pursuant to Local Civil Rule 5.2, I electronically filed and served (i) Merrill Lynch's February 7, 2008 letter from Michael R. Griffinger to the Honorable Susan D. Wigenton, U.S.D.J., respectfully requesting the adjournment of Merrill Lynch's pending motion to stay as well as an extension of the time within which Merrill Lynch may file its reply papers on the same motion, (ii) a Proposed Order granting the same letter application and (iii) this Certificate of Service; upon the following counsel:

James V. Bashian, Esq.                      Paul O. Paradis, Esq.
LAW OFFICES OF                              HORWITZ, HORWITZ & PARADIS
JAMES V. BASHIAN, P.C.                       28 West 44th Street, 16th Floor
271 Route 46 West, Suite F207               New York, NY 10036
Fairfield, NJ 07004
                                            *Attorneys for Plaintiffs*
*Attorneys for Plaintiffs*

3.      Additionally, I served each of the preceding documents *via* electronic mail and regular mail upon the following counsel:

Michael Schwartz, Esq.                      Michael J. Chepiga, Esq.
HORWITZ, HORWITZ & PARADIS                  SIMPSON THACHER & BARTLETT LLP
28 West 44th Street, 16th Floor             425 Lexington Avenue
New York, NY 10036                          New York, NY 10017-3954
mschwartz@hhplawny.com                      mchepiga@stblaw.com

*Attorneys for Plaintiffs*                   *Attorneys for Defendant Ernest Stanley O'Neal*

Jason M. Halper, Esq.
CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, NY 10281
jason.halper@cwt.com

*Attorneys for Defendants Carol T. Christ,*
*Armando M. Codina, Virgis W. Colbert,*
*Alberto Cribiore, John D. Finnegan,*

2

Case 2:08-cv-00126-SDW-MCA   Document 15-3   Filed 02/07/2008   Page 3 of 3

*Judith Mayhew Jonas, Aulana L. Peters,*
*Joseph W. Prueher, Ann N. Reese and Charles O. Rossotti*

I hereby certify that the foregoing statements made by me are true.  I am aware that if any

of the foregoing statements made by me are willfully false, I am subject to punishment.

MELISSA C. FULTON

Dated:  February 7, 2008
        Newark, New Jersey

3

#1267323 v1
101454-61824

Michael R. Griffinger
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102-5310
mgriffinger@gibbonslaw.com
Tel: 973-596-4500
Fax: 973-639-6294

Jay B. Kasner (*Pro Hac Vice* Application to be Filed)
Scott D. Musoff
**SKADDEN, ARPS, SLATE,**
 **MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
Tel: 212-735-3000
Fax: 212-735-2000

*Co-Counsel for Nominal Defendant*
*Merrill Lynch & Co., Inc.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DAVID EIDMAN, Derivatively on Behalf of     Civil Action No. 08-126 (SDW) (MCA)
MERRILL LYNCH & CO., INC.,
                                      :     **CERTIFICATE OF SERVICE**

         Plaintiff,          :     **Document Filed Electronically**

         vs.            :

ERNEST STANLEY O'NEAL, CAROL T.     :
CHRIST, ARMANDO M. CODINA, VIRGIS W.
COLBERT, ALBERTO CRIBIORE, JOHN D.     :
FINNEGAN, JUDITH MAYHEW JONAS,
AULANA L. PETERS, JOSEPH W. PRUEHER,     :
ANN N. REESE and CHARLES O. ROSSOTTI,

                                            :

         Defendants,         :

           -and-            :

MERRILL LYNCH & CO., INC.,        :

        Nominal Defendant.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

I, **MELISSA C. FULTON**, hereby certify as follows:

1.  I am an associate of the law firm of Gibbons P.C., co-counsel for nominal defendant Merrill Lynch & Co., Inc. ("Merrill Lynch") in the above-captioned action.

2.  On February 8, 2008, pursuant to Local Civil Rule 5.2, I electronically filed and served (i) Merrill Lynch's February 8, 2008 letter from Michael R. Griffinger to the Honorable Susan D. Wigenton, U.S.D.J., confirming that all parties consent to the adjournment of Merrill Lynch's pending motion to stay as well as to an extension of the time within which Merrill Lynch may file its reply papers on the same motion, (ii) Merrill Lynch's February 7, 2008 letter from Michael R. Griffinger to the Honorable Susan D. Wigenton, U.S.D.J., respectfully requesting the adjournment of Merrill Lynch's pending motion to stay as well as an extension of the time within which Merrill Lynch may file its reply papers on the same motion, (iii) a Proposed Order granting the same letter application and (iv) this Certificate of Service; upon the following counsel:

James V. Bashian, Esq.
LAW OFFICES OF
JAMES V. BASHIAN, P.C.
271 Route 46 West, Suite F207
Fairfield, NJ 07004

*Attorneys for Plaintiffs*

Paul O. Paradis, Esq.
HORWITZ, HORWITZ & PARADIS
28 West 44th Street, 16th Floor
New York, NY 10036

*Attorneys for Plaintiffs*

3.  Also on February 8, 2008, I served each of the preceding documents *via* electronic mail and regular mail upon the following counsel:

Michael Schwartz, Esq.
HORWITZ, HORWITZ & PARADIS
28 West 44th Street, 16th Floor
New York, NY 10036
mschwartz@hhplawny.com

*Attorneys for Plaintiffs*

Michael J. Chepiga, Esq.
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017-3954
mchepiga@stblaw.com

*Attorneys for Defendant Ernest Stanley O'Neal*

2

Jason M. Halper, Esq.
CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, NY 10281
jason.halper@cwt.com

*Attorneys for Defendants Carol T. Christ,*
*Armando M. Codina, Virgis W. Colbert,*
*Alberto Cribiore, John D. Finnegan,*
*Judith Mayhew Jonas, Aulana L. Peters,*
*Joseph W. Prueher, Ann N. Reese and Charles O. Rossotti*

I hereby certify that the foregoing statements made by me are true. I am aware that if any

of the foregoing statements made by me are willfully false, I am subject to punishment.

MELISSA C. FULTON

Dated:  February 8, 2008
         Newark, New Jersey

3

Michael R. Griffinger
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102-5310
mgriffinger@gibbonslaw.com
Tel: 973-596-4500
Fax: 973-639-6294

Jay B. Kasner (*Pro Hac Vice* Application to be Filed)
Scott D. Musoff
**SKADDEN, ARPS, SLATE,**
  **MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
Tel: 212-735-3000
Fax: 212-735-2000

*Co-Counsel for Nominal Defendant*
*Merrill Lynch & Co., Inc.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DAVID EIDMAN, Derivatively on Behalf of
MERRILL LYNCH & CO., INC.,

        Plaintiff,

        vs.

ERNEST STANLEY O'NEAL, CAROL T.
CHRIST, ARMANDO M. CODINA, VIRGIS W.
COLBERT, ALBERTO CRIBIORE, JOHN D.
FINNEGAN, JUDITH MAYHEW JONAS,
AULANA L. PETERS, JOSEPH W. PRUEHER,
ANN N. REESE and CHARLES O. ROSSOTTI,

        Defendants,

        -and-

MERRILL LYNCH & CO., INC.,

        Nominal Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Civil Action No. 08-126 (SDW) (MCA)

**Document Filed Electronically**

**[PROPOSED] ORDER
ADJOURNING MOTION TO STAY
AND EXTENDING MERRILL
LYNCH & CO., INC.'S TIME TO
FILE AND SERVE REPLY PAPERS
ON ITS MOTION TO STAY**

#1267118 v1
101454-61824

This matter having been presented to the Court upon the application of nominal defendant Merrill Lynch & Co., Inc. ("Merrill Lynch") for an order, pursuant to Local Civil Rule 6.1, adjourning the motion day for Merrill Lynch's pending motion to stay, brought on by notice of motion dated January 14, 2008 (the "Stay Motion"), from February 19, 2008 to March 3, 2008, and extending the time within which Merrill Lynch may file and serve reply papers on the Stay Motion to and including February 15, 2008; and the Court having considered Merrill Lynch's application for such order, and all parties having consented to such application, and for good cause shown;

IT IS on this 13 day of February 2008,

**ORDERED** that the application is GRANTED, and the motion day for the Stay Motion shall be and hereby is adjourned to March 3, 2008; and it is further

**ORDERED** that the time within which Merrill Lynch shall file and serve its reply papers on the Stay Motion shall be and hereby is extended to and including February 15, 2008.

_____
Hon.

-2-

#1267118 v1
101454-61824

Michael R. Griffinger
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102-5310
mgriffinger@gibbonslaw.com
Tel: 973-596-4500
Fax: 973-639-6294

Jay B. Kasner (*Pro Hac Vice* Application to be Filed)
Scott D. Musoff
**SKADDEN, ARPS, SLATE,**
  **MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
Tel: 212-735-3000
Fax: 212-735-2000

*Co-Counsel for Nominal Defendant*
*Merrill Lynch & Co., Inc.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DAVID EIDMAN, Derivatively on Behalf of
MERRILL LYNCH & CO., INC.,

    Plaintiff,

    vs.

ERNEST STANLEY O'NEAL, CAROL T.
CHRIST, ARMANDO M. CODINA, VIRGIS W.
COLBERT, ALBERTO CRIBIORE, JOHN D.
FINNEGAN, JUDITH MAYHEW JONAS,
AULANA L. PETERS, JOSEPH W. PRUEHER,
ANN N. REESE and CHARLES O. ROSOTTI,

    Defendants,

    -and-

MERRILL LYNCH & CO., INC.,

    Nominal Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**FILED ELECTRONICALLY**

Civil Action No. 08-126 (SDW) (MCA)

Hon. Susan D. Wigenton, U.S.D.J.

Motion Day:  March 3, 2008

**REPLY MEMORANDUM OF
LAW IN FURTHER SUPPORT
OF MOTION TO STAY
PROCEEDINGS PENDING
DETERMINATION OF THE
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ............................................................................................................................2

THIS ACTION SHOULD BE STAYED PENDING RESOLUTION
OF THE MDL TRANSFER MOTION ..........................................................................................2

    A.    A Stay Is Appropriate Even If A Remand Motion Is Pending ...................................2

    B.    A Stay Will Promote Judicial Efficiency And Avoid Prejudice To Merrill
        Lynch On Whose Behalf Plaintiff Purports to Sue ....................................................4

    C.    Plaintiff Will Suffer No Prejudice From A Brief Stay ..............................................7

CONCLUSION ........................................................................................................................10

## TABLE OF AUTHORITIES

### CASES

*Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft,*
54 F. Supp. 2d 1042 (D. Kan. 1999)..............................................................6, 7

*Aikins v. Microsoft Corp.*, Civ. Action No. 00-0242,
2000 U.S. Dist. LEXIS 4371 (E.D. La. Mar. 23, 2000) ............................3, 4

*In re Air Crash Disaster at Florida Everglades,*
368 F. Supp. 812 (J.P.M.L. 1973) .................................................................5

*In re American Home Mortgage Securities Litigation*, MDL No. 1898,
2007 U.S. Dist. LEXIS 94723 (J.P.M.L. Dec. 19, 2007) ............................5

*Anthem, Inc. v. Bristol-Myers Squibb Co.*, Civil Action No. 03-0008,
2003 U.S. Dist. LEXIS 15762 (D.N.J. Mar. 18, 2003)................................7

*Board of Trustees of Teachers' Retirement System v. WorldCom, Inc.*,
244 F. Supp. 2d 900 (N.D. Ill. 2002)........................................................5, 8

*Commonwealth Insurance Co. v. Underwriters, Inc.*,
846 F.2d 196 (3d Cir. 1988) ........................................................................2

*Falgoust v. Microsoft Corp.*, Civil Action No. 00-0779,
2000 U.S. Dist. LEXIS 5417 (E.D. La. Apr. 19, 2000)................................8

*Ford Motor Credit Co. v. Chiorazzo*, Civil Action No. 07-2852,
2008 U.S. Dist. LEXIS 830 (D.N.J. Jan. 7, 2008)........................................4

*Good v. Prudential Insurance Co. of America,*
5 F. Supp. 2d 804 (N.D. Cal. 1998).............................................................5

*Heavy & General Laborers' Locals 472 & 172 Pension & Annuity Funds v.
Citigroup, Inc.*, No. 03-CV-1338 (JAP) (D.N.J. Apr. 22, 2003)...............3, 4

*Hertz Corp. v. Gator Corp.*,
250 F. Supp. 2d 421 (D.N.J. 2003)...............................................................3

*In re Ivy,*
901 F.2d 7 (2d Cir. 1990) .............................................................................5

*Jackson v. Johnson & Johnson, Inc.*, No. 01-2113 DA,
    2001 U.S. Dist. LEXIS 22329 (W.D. Tenn. Apr. 2, 2001) ...........................................3

*Kamen v. Kemper Finance Services, Inc.*,
    500 U.S. 90 (1991) ..................................................................................................7

*Landis v. North American Co.*,
    299 U.S. 248 (1936) .................................................................................................2

*Local 478 Trucking & Allied Industrial Pension Fund v. Jayne*,
    778 F. Supp. 1289 (D.N.J. 1991) .............................................................................4

*Medical Society of New York v. Connecticut General Corp.*,
    187 F. Supp. 2d 89 (S.D.N.Y. 2001) ........................................................................5

*Meyers v. Bayer AG*,
    143 F. Supp. 2d 1044 (E.D. Wis. 2001) ...................................................................3

*Moore v. Wyeth-Ayerst Laboratories*,
    236 F. Supp. 2d 509 (D. Md. 2002) ..........................................................................5

*Nekritz v. Canary Capital Partners, LLC*, Civ. No. 03-5081 (DRD),
    2004 U.S. Dist. LEXIS 12473 (D.N.J. Jan. 12, 2004) ........................................3, 4, 8

*In re Prudential Insurance Co. of America Sales Practices Litigation*,
    170 F. Supp. 2d 1346 (J.P.M.L. 2001) ......................................................................5

*In re Prudential Insurance Co. of America Sales Practices Litigation*,
    314 F.3d 99 (3d Cir. 2002) ........................................................................................6

*Seegott Holdings, Inc. v. Bayer AG*, Civil Action No: 04-5850 (JAP) ...............................8

*Tench v. Jackson National Life Insurance Co.*, No. 99 C 5182,
    1999 U.S. Dist. LEXIS 18023 (N.D. Ill. Nov. 10, 1999) ..........................................3

*Weinke v. Microsoft Corp.*,
    84 F. Supp. 2d 989 (E.D. Wis. 2000) .......................................................................3

**MISCELLANEOUS**

Manual for Complex Litigation (Fourth) § 20.131 (2004) ...................................................6

iii

Defendant Merrill Lynch & Co., Inc. ("Merrill Lynch") respectfully submits this Reply Memorandum in further support of its motion to stay all proceedings in this action until 10 days after the Judicial Panel on Multidistrict Litigation (the "MDL Panel") rules on Merrill Lynch's motion to transfer this related action to the United States District Court for the Southern District of New York for coordinated pretrial proceedings with 18 other related federal actions that are currently pending in that court.[1] There has been no opposition to the transfer of this action (including none from plaintiff here) and the MDL Panel has set Merrill Lynch's application for consideration at its next sitting on March 27, 2008.[2]

## PRELIMINARY STATEMENT

Plaintiff's opposition ("Opp. Br.") fails to overcome three salient factors compelling a stay of this action: (i) 18 related actions arising from the same facts alleged in his complaint are pending in the Southern District of New York, the proposed MDL transferee court; (ii) three of these 18 actions are substantially identical derivative actions, all purportedly brought for the benefit of Merrill Lynch and commenced before plaintiff filed this derivative action in New Jersey; and (iii) Merrill Lynch, on whose behalf plaintiff claims to be bringing this action, will be burdened with duplicative litigation and the risk of inconsistent rulings if a stay is not granted. Instead, plaintiff simply argues that this Court should address his remand motion first. This ignores that on February 21, 2008 --less than one week from now-- Judge Leonard B. Sand of the Southern District of

---

[1]    At the time the moving brief was filed, 17 actions were pending in the Southern District of New York.

[2]    A copy of the hearing order is attached as Exhibit A to the February 15, 2008 Reply Declaration of Scott D. Musoff ("Musoff Reply Decl.").

New York is scheduled to consider a motion to remand a derivative action removed from New York State Supreme Court based upon the same transactions or occurrences as alleged in this case.[3]  Thus, the conservation of judicial resources, the potential for inconsistent rulings and the hardship and inequity to Merrill Lynch, in the absence of a stay, outweigh any feigned prejudice asserted by plaintiff.

## **ARGUMENT**

### **THIS ACTION SHOULD BE STAYED PENDING RESOLUTION OF THE MDL TRANSFER MOTION**

**A.     A Stay Is Appropriate Even If A Remand Motion Is Pending**

There is no dispute that this Court enjoys broad discretion to issue a stay as part of its inherent power "to control . . . its docket" in the interest of "economy of time and effort for itself, for counsel, and for litigants."  Landis v. N. Am. Co., 299 U.S. 248, 254 (1936); see, e.g., Commonwealth Ins. Co. v. Underwriters, Inc., 846 F.2d 196, 199 (3d Cir. 1988); Opp. Br. at 2.  With respect to determining whether to grant a stay pending resolution by the MDL Panel of a transfer motion, three factors are considered: (i) prejudice to the nonmovant; (ii) hardship and inequity to the movant if there is no stay; and (iii) the impact on judicial resources.  (See Merrill Lynch's Moving Brief ("Mov. Br.") at 5.)

In assessing these factors, numerous courts from this district and others have granted stays pending an MDL transfer motion, even when there is an outstanding

---

[3]     Operative Plasterers & Cement Masons Local 262 Pension and Annuity Funds v. O'Neal, et al., 07 CV 11085 (LBS) (S.D.N.Y.), was removed to that court on December 7, 2007.  Plaintiff filed a motion to remand on January 8, 2008.  That motion is scheduled to be fully briefed on February 15.  (See Musoff Reply Decl. ¶¶ 6-8.)

remand or other dispositive motion.  See, e.g., Nekritz v. Canary Capital Partners, LLC, Civ. No. 03-5081 (DRD), 2004 U.S. Dist. LEXIS 12473, at *1-2 (D.N.J. Jan. 12, 2004) (granting stay of action pending MDL transfer notwithstanding pending motion to remand); Heavy & Gen. Laborers' Locals 472 & 172 Pension & Annuity Funds v. Citigroup, Inc., No. 03-CV-1338 (JAP), slip op. at 2 (D.N.J. Apr. 22, 2003) (Musoff Reply Decl. Ex. C) (same); Meyers v. Bayer AG, 143 F. Supp. 2d 1044, 1045-46, 1053 (E.D. Wis. 2001) (same); Aikins v. Microsoft Corp., Civ. Action No. 00-0242, 2000 U.S. Dist. LEXIS 4371, *1, *5 (E.D. La. Mar. 23, 2000) (same); Weinke v. Microsoft Corp., 84 F. Supp. 2d 989, 989-90 (E.D. Wis. 2000) (same); Tench v. Jackson Nat'l Life Ins. Co., No. 99 C 5182, 1999 U.S. Dist. LEXIS 18023, at *2-3, *5 (N.D. Ill. Nov. 10, 1999) (same).  Thus, the "general rule is for federal courts to defer ruling on pending motions to remand in MDL litigation until after the JPMDL has transferred the case to the MDL panel." Jackson v. Johnson & Johnson, Inc., No. 01-2113 DA, 2001 U.S. Dist. LEXIS 22329, at *17 (W.D. Tenn. Apr. 2, 2001).

Judge Bassler explained that the pendency of a pre-trial motion in a case considered for potential transfer by the MDL Panel "weighs more heavily in favor of granting the stay than against it." Hertz Corp. v. Gator Corp., 250 F. Supp. 2d 421, 427 (D.N.J. 2003).  Judge Bassler's reasoning in Hertz is directly on point here:

> The Court's considering [plaintiff's] motion before the MDL Panel decides the motion for consolidation would deprive [defendant] of the opportunity to obtain the benefits of MDL Panel consolidation. [Defendant] potentially would have conflicting decisions by this Court and the transferee court, if the MDL Panel grants the [transfer] motion, thereby decreasing a primary benefit of consolidation, namely consistent rulings on important pretrial legal issues.

Id.

**B.    A Stay Will Promote Judicial Efficiency And Avoid Prejudice To Merrill Lynch On Whose Behalf Plaintiff Purports To Sue**

Plaintiff ignores that a substantially similar motion to remand a derivative action is currently pending in the proposed transferee court.  A stay is therefore warranted in the interests of judicial economy and to avoid hardship to Merrill Lynch (on whose behalf plaintiff purports to sue).[4]

Plaintiff argues that granting a stay would not promote judicial economy because this Court has jurisdiction to hear his pending remand motion.  (Opp. Br. at 3-4.)  This argument is a non-sequitur.  There is no dispute that this Court has jurisdiction to hear the remand motion.  Instead, the issue is whether there is a waste of judicial resources and a risk of inconsistent rulings for this Court to hear a substantially similar remand motion that is slated to be heard by the proposed transferee court.  (See Mov. Br. at 5.)

Judicial economy and prevention of inconsistent results are significant factors in deciding to issue a stay.  See, e.g., Nekritz, 2004 U.S. Dist. LEXIS 12473, at *6 ("An immediate stay will permit the most efficient possible use of the courts' and the parties' resources, and it will eliminate the danger that a decision on this remand motion might be inconsistent with decisions by other courts on similar questions."); Heavy & Gen. Laborers, slip op. at 2 (granting stay pending determination of the Multi-District

---

[4]    Plaintiff ignores the element of hardship and inequity to Merrill Lynch.  Neither of the two cases upon which plaintiff relies for the standards, (Opp. Br. at 2.), addresses a stay pending a decision by the MDL Panel.  See Local 478 Trucking & Allied Indus. Pension Fund v. Jayne, 778 F. Supp. 1289, 1324 (D.N.J. 1991); Ford Motor Credit Co. v. Chiorazzo, Civil Action No. 07-2852, 2008 U.S. Dist. LEXIS 830, at *6 (D.N.J. Jan. 7, 2008).  It is beyond cavil that a defendant who must defend actions in multiple jurisdictions will be prejudiced in the absence of a stay.  (Mov. Br. at 7.)

4

Litigation Panel because judicial economy provided good cause); Aikins, 2000 U.S. Dist.

LEXIS 4371 at *3-5 (declining to decide motion to remand pending MDL Panel transfer

decision because "the same jurisdictional questions raised here will likely be raised in

many of the other cases pending against Microsoft.  Consistency and economy are both

served by resolution of these issues by a single court after transfer by the JPML."); Good

v. Prudential Ins. Co. of Am., 5 F. Supp. 2d 804, 809 (N.D. Cal. 1998) (staying

proceedings pending consolidation decision because "[t]he purpose of such transfers is . . .

to eliminate the potential for conflicting pretrial rulings").[5]

This Court should stay this action before addressing any issues relating to

remand.  See In re Ivy, 901 F.2d 7, 8-10 (2d Cir. 1990) (where action was transferred

while motion to remand was sub judice in transferor court, Second Circuit denied

mandamus ordering MDL Panel to vacate transfer order: "Once transferred the

jurisdictional objections can be heard and resolved by a single court and reviewed at the

appellate level in due course.  Consistency as well as economy is thus served."); Moore v.

Wyeth-Ayerst Labs., 236 F. Supp. 2d 509, 511-13 (D. Md. 2002) (granting a stay

pending the MDL Panel's transfer ruling and deferring consideration of plaintiff's motion

to remand because the stay "furthers the goals of judicial economy and consistency" and

---

[5]  See also Bd. of Trs. of Teachers' Ret. Sys. v. WorldCom, Inc., 244 F. Supp. 2d 900, 905-06 (N.D. Ill. 2002) (staying two actions pending a transfer decision by the MDL Panel after a motion to remand was filed and holding "that the interests of judicial economy and the threat of inconsistent rulings outweighs the prejudice to the [plaintiffs] from delay"); In re American Home Mortgage Sec. Litig., MDL No. 1898, 2007 U.S. Dist. LEXIS 94723, at *2 (J.P.M.L. Dec. 19, 2007) (observing that transferor court had "stayed all proceedings pending the Panel's decision on Section 1407 transfer, and the pending motion for remand [could] be presented to the transferee judge"); In re Prudential Ins. Co. of Am. Sales Practices Litig., 170 F. Supp. 2d 1346, 1347-48 (J.P.M.L. 2001) (same); In re Air Crash Disaster at Florida Everglades, 368 F. Supp. 812, 813 (J.P.M.L. 1973) (same).

5

"may reduce the burden on litigants and the judiciary"); Med. Soc'y of N.Y. v. Conn. Gen. Corp., 187 F. Supp. 2d 89, 92 (S.D.N.Y. 2001) (same); accord In re Prudential Ins. Co. of America Sales Practices Litig., 314 F.3d 99, 103 (3d Cir. 2002) (holding that the district court's jurisdiction to grant defendant's motion to stay did not depend on propriety of removal). Such a result would also be consistent with the counsel of the Manual for Complex Litigation that "it may be advisable to defer certain matters until the [MDL] Panel has the opportunity to rule on transfer." Manual for Complex Litigation (Fourth) § 20.131 (2004).

In addition to ignoring the risk of inconsistent rulings and the waste of judicial resources, Plaintiff simply fails to address Merrill Lynch's argument that forcing it to defend nearly identical derivative actions in multiple forums would be an utter waste of corporate resources – the very resources the plaintiff purports to seek to protect. (See Mov. Br. at 8.) It is ironic that this plaintiff, purporting to bring suit for the benefit of Merrill Lynch, is willing to cause Merrill Lynch to expend its time and resources defending duplicative litigation in a state where it is neither incorporated nor has a principal place of business. (See Compl. ¶ 6.)

In response, plaintiff cites a District of Kansas case, Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft, 54 F. Supp. 2d 1042 (D. Kan. 1999). (Opp. Br. at 3-4.) Although the case does address whether to stay an action pending an MDL transfer while a motion to remand is pending, Aetna differs materially from this case because (i) it was not a derivative action; (ii) it was not filed after three substantially similar derivative actions were already pending in the transferee court; and (iii) there was no substantially similar remand motion set to be heard in the transferee court. Rather, the

<u>Aetna</u> court found significant that each of the cases to be transferred by the MDL Panel "[was] from a different state involv[ing] different state-law claims." <u>Id.</u> at 1048 n.2. Here, Delaware law applies to all of the pending derivative actions. <u>See</u> <u>Kamen v. Kemper Fin. Servs., Inc.</u>, 500 U.S. 90, 98-99 (1991) (noting that corporations are "creatures of state law" and state law provides directors their powers).

Plaintiff also points to <u>Anthem, Inc. v. Bristol-Myers Squibb Co.</u>, Civil Action No. 03-0008, 2003 U.S. Dist. LEXIS 15762 (D.N.J. Mar. 18, 2003). (Opp. Br. at 5-6.) There, the court observed that either granting a stay while a remand is pending or granting a remand motion while a motion to stay is pending could be justified depending on the facts. <u>Anthem</u>, 2003 U.S. Dist. LEXIS 15762 at *6-7. That case, unlike this case, was not a derivative action with another identical motion to remand set to be heard within days by the proposed transferee court. Moreover, the <u>Anthem</u> court observed that "it is not clear that the other cases now before the MDL court involve perfectly identical facts and circumstances." <u>Id.</u> at *7. Here, there are three previously filed derivative actions virtually identical to plaintiff's later filed action. To the extent <u>Anthem</u> could be construed more broadly, Merrill Lynch respectfully submits that it is unpersuasive on the facts present in this case.

**C.      Plaintiff Will Suffer No Prejudice From A Brief Stay**

With respect to the factor of prejudice to nonmovant, plaintiff's opposition does not and cannot provide any examples of prejudice <u>plaintiff</u> will face if this Court grants Merrill Lynch's motion for a stay. (<u>See</u> Opp. Br. at 7-8.) First, Plaintiff misses the significance of having brought a derivative action: the interests it seeks to protect are Merrill Lynch's. <u>See</u> <u>Kamen</u>, 500 U.S. at 95. Moreover, those interests are presently

7

protected in the Southern District of New York by three different plaintiffs who commenced their purported derivative actions <u>before</u> plaintiff filed his.  (<u>See</u> Mov. Br. at 4-5.)  Plaintiff has articulated no harm <u>he</u> might face if the stay is granted.

To the extent plaintiff argues that <u>he</u> is prejudiced by a delay (<u>see</u> Opp. Br. at 7-8), courts generally conclude that a small delay is outweighed by concerns for judicial efficiency, potential for inconsistency of results or hardship to movant.  <u>See</u> <u>Seegott Holdings, Inc. v. Bayer AG</u>, Civil Action No: 04-5850 (JAP) (MCA), slip op. at 2 (D.N.J. May 12, 2005) (Musoff Reply Decl. Ex. D) (Magistrate Judge Arleo granted stay after balancing plaintiff's claim of prejudice due to delay with defendants' burden of defending in multiple fora and that an MDL transfer was pending); <u>Nekritz</u>, 2004 U.S. Dist. LEXIS 12473 at *15 ("[J]udicial economy will be best served by leaving the remand motion to the transferee court.  The courts' resources, along with those of the parties (especially the Defendants) will [be] best conserved by a stay; and any prejudice to the Plaintiff from a relatively brief delay in pursuing his claims will be minimal."); <u>Bd. of Trs. of Teachers' Ret. Sys.</u>, 244 F. Supp. 2d at 905-06 (staying two actions pending a transfer decision by the MDL Panel after a motion to remand was filed and holding "that the interests of judicial economy and the threat of inconsistent rulings outweighs the prejudice to the [plaintiffs] from delay"); <u>Falgoust v. Microsoft Corp.</u>, Civil Action No. 00-0779, 2000 U.S. Dist. LEXIS 5417, at *8 (E.D. La. Apr. 19, 2000) (the plaintiffs "failed to show any significant prejudice they would suffer, beyond the slight delay pending the JPML decision," and "the interests of judicial economy would best be served by granting a stay").

Here, the MDL Panel has scheduled the motion to transfer for its next sitting on March 27.  (Musoff Reply Decl. Ex. A).  No one, including plaintiff here, has opposed the transfer of this action to the proposed transferee court.  (Musoff Reply Decl. ¶ 3.)  Responses to Merrill Lynch's January 9, 2008 motion to transfer this action to the Southern District of New York were due by February 4, 2008.  (Id.)  Plaintiff's failure to file a response further undermines any claim of prejudice.

Plaintiff claims that if this action is transferred it is "unlikely that the court would decide this issue expeditiously."  (Opp. Br. at 7.)  That argument is quickly dispatched because the proposed transferee court is scheduled to consider on February 21, 2008 a remand motion brought by a derivative plaintiff.  (Musoff Reply Decl. ¶ 8.)

Therefore, when the three relevant factors are considered, the balance tips in favor of a stay.  Here, a stay will preserve judicial resources, prevent Merrill Lynch from suffering the hardship of simultaneously litigating multiple actions in multiple courts and cause no prejudice to plaintiff except for, at most, a small delay.

**CONCLUSION**

For all the foregoing reasons and the reasons stated in Merrill Lynch's

moving brief, this action should be stayed until 10 days after the MDL Panel decides

Merrill Lynch's motion to transfer.

Dated: Newark, New Jersey
February 15, 2008                                    GIBBONS P.C.


By:  s/ Michael R. Griffinger
     Michael R. Griffinger
     GIBBONS P.C.
     One Gateway Center
     Newark, NJ 07102-5310
     mgriffinger@gibbonslaw.com
     Tel: 973-596-4500
     Fax: 973-639-6294

     *Co-Counsel for Nominal Defendant*
     *Merrill Lynch & Co., Inc.*

Of counsel:

     Jay B. Kasner
     Scott D. Musoff
     SKADDEN, ARPS, SLATE,
       MEAGHER & FLOM LLP
     Four Times Square
     New York, New York 10036
     Tel: 212-735-3000
     Fax: 212-735-2000

     *Co-Counsel for Nominal Defendant*
     *Merrill Lynch & Co., Inc.*

Michael R. Griffinger
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102-5310
mgriffinger@gibbonslaw.com
Tel: 973-596-4500
Fax: 973-639-6294

Jay B. Kasner (*Pro Hac Vice* Application to be Filed)
Scott D. Musoff
**SKADDEN, ARPS, SLATE,**
 **MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
Tel: 212-735-3000
Fax: 212-735-2000

*Co-Counsel for Nominal Defendant*
*Merrill Lynch & Co, Inc.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DAVID EIDMAN, Derivatively On Behalf of
MERRILL LYNCH & CO., INC.,

          Plaintiff,

          vs.

ERNEST STANLEY O'NEAL, CAROL T.
CHRIST, ARMANDO M. CODINA, VIRGIS W.
COLBERT, ALBERTO CRIBIORE, JOHN D.
FINNEGAN, JUDITH MAYHEW JONAS,
AULANA L. PETERS, JOSEPH W. PRUEHER,
ANN N. REESE and CHARLES O ROSOTTI,

          Defendants,

          -and-

MERRILL LYNCH & CO., INC.,

          Nominal Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**FILED ELECTRONICALLY**

Civil Action No. 08-126 (SDW) (MCA)

Hon. Susan D. Wigenton, U.S.D.J.

Motion Day: March 3, 2008

**DECLARATION OF SCOTT D.
MUSOFF IN FURTHER SUPPORT
OF MERRILL LYNCH & CO., INC.'S
MOTION TO STAY PROCEEDINGS
PENDING DETERMINATION
OF THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

SCOTT D. MUSOFF, pursuant to 28 U.S.C. § 1746, declares under penalties of perjury as follows:

1.     I am a member of the law firm of Skadden, Arps, Slate, Meagher & Flom LLP, co-counsel for Merrill Lynch & Co., Inc. ("Merrill Lynch") in the above captioned action. I submit this declaration in further support of Merrill Lynch's Motion to Stay Proceedings Pending Determination of the Judicial Panel on Multidistrict Litigation. I am admitted in the United States District Court for the District of New Jersey and the Southern District of New York in addition to other federal courts.

2.     Annexed hereto as Exhibit A is a true and correct copy of a Hearing Session Order issued by the Judicial Panel on Multidistrict Litigation scheduling Merrill Lynch's Motion to Transfer to be heard on March 27, 2008.

3.     Annexed hereto as Exhibit B is a true and correct copy of the Docket Sheet for *In re: Merrill Lynch & Co., Inc., Securities, Derivative & "ERISA" Litigation*, MDL No. 1933.

4.     Annexed hereto as Exhibit C is a true and correct copy of the April 22, 2003 slip opinion issued in *Heavy & General Laborers' Locals 472 & 172 Pension & Annuity Funds v. Citigroup, Inc.*, No. 03-CV-1338 (JAP) (D.N.J.).

5.     Annexed hereto as Exhibit D is a true and correct copy of the May 12, 2005 slip opinion issued in *Seegott Holdings, Inc. v. Bayer AG*, Civil Action No: 04-5850 (JAP) (MCA) (D.N.J.).

6.     One of the three related derivative action pending in the United States District Court for the Southern District of New York, the proposed transferee court, is *Operative Plasterers & Cement Masons Local 262 Pension and Annuity Funds v. E. Stanley O'Neal, et al.*, 07 CV 11085 (LBS), which was removed on December 7, 2007. Attached hereto as Exhibit E is

a true and correct copy of the complaint in that action.

7.    On January 8, 2008, plaintiff Operative Plasterers & Cement Masons Local 262 Pension and Annuity Funds filed a motion to remand the action (the "Operative Plasterers' remand motion").  Defendants filed their opposition to remand on February 8, 2008 and the deadline for any reply by plaintiff is today, February 15, 2008.

8.    A conference is scheduled for February 21, 2008 in the proposed transferee court in connection with the 18 related actions.  I understand that the court intends on hearing argument on the Operative Plasterers' remand motion at this conference.

I declare under penalty of perjury that the foregoing is true and correct. Executed on February 15, 2008, New York, New York.

_____
Scott D. Musoff

# UNITED STATES JUDICIAL PANEL
## on
## MULTIDISTRICT LITIGATION

**CHAIRMAN:**
Judge John G. Heyburn II
United States District Court
Western District of Kentucky

**MEMBERS:**
Judge D. Lowell Jensen
United States District Court
Northern District of California

Judge J. Frederick Motz
United States District Court
District of Maryland

Judge Robert L. Miller, Jr.
United States District Court
Northern District of Indiana

Judge Kathryn H. Vratil
United States District Court
District of Kansas

Judge David R. Hansen
United States Court of Appeals
Eighth Circuit

Judge Anthony J. Scirica
United States Court of Appeals
Third Circuit

**DIRECT REPLY TO:**
Jeffery N. Lüthi
Clerk of the Panel
One Columbus Circle, NE
Thurgood Marshall Federal
Judiciary Building
Room G-255, North Lobby
Washington, D.C. 20002

Telephone: [202] 502-2800
Fax:       [202] 502-2888
http://www.jpml.uscourts.gov

February 13, 2008

## NOTICE OF HEARING SESSION

Dear Counsel:

Pursuant to the order of the Judicial Panel on Multidistrict Litigation filed today, you are hereby notified that a hearing session has been scheduled to consider various matters pursuant to 28 U.S.C. § 1407.

DATE OF HEARING SESSION:           March 27, 2008

LOCATION OF HEARING SESSION:       Homer Thornberry Judicial Building
                                   District Courtroom #334, 3rd Floor
                                   903 San Jacinto Boulevard
                                   Austin, Texas 78701

TIME OF HEARING SESSION: In those matters designated for oral argument, counsel presenting oral argument must be present at **8:30 a.m.** in order for the Panel to allocate the amount of time for oral argument. Oral argument will commence at **9:30 a.m.**

Please direct your attention to the enclosed Hearing Session Order and Schedule of Matters for Hearing Session for a listing of the matters scheduled for consideration at this hearing session.

- Section A of this Schedule lists the matters designated for oral argument.
- Section B of this Schedule lists the matters that the Panel has determined to consider **without oral argument**, pursuant to Rule 16.1(c), R.P.J.P.M.L., 199 F.R.D. 425, 439 (2001).

For those matters listed on Section A of the Schedule, the enclosed blue "Notice of Presentation or Waiver of Oral Argument" must be returned to this office no later than **March 10, 2008.** Note the procedures governing Panel oral argument which are outlined on the enclosed "Procedures for Oral Argument before the Judicial Panel on Multidistrict Litigation." These procedures are strictly adhered to and your cooperation is appreciated.

Very truly,

Jeffery N. Lüthi
Clerk of the Panel

cc: Clerk, U.S. District Court for the Western District of Texas

UNITED STATES
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

**Feb 13, 2008**

FILED
CLERK'S OFFICE

# UNITED STATES JUDICIAL PANEL
## on
## MULTIDISTRICT LITIGATION

### HEARING SESSION ORDER

The Panel issues the following orders in connection with its next hearing session,

IT IS ORDERED that on March 27, 2008, the Panel will convene a hearing session in Austin, Texas, to consider the matters on the attached Schedule under 28 U.S.C. § 1407.

IT IS FURTHER ORDERED that the Panel may, on its own initiative, consider transfer of any or all of the actions in those matters to any district or districts.

IT IS FURTHER ORDERED that the Panel will hear oral argument on the matters listed on Section A of the attached Schedule.

IT IS FURTHER ORDERED that the Panel will consider without oral argument the matters listed on Section B of the attached Schedule pursuant to Rule 16.1(c), R.P.J.P.M.L., 199 F.R.D. 425, 439 (2001). The Panel reserves the prerogative, on any basis including submissions of parties pursuant to Panel Rule 16.1(b), to designate any of those matters for oral argument.

IT IS FURTHER ORDERED that the Clerk of the Judicial Panel on Multidistrict Litigation shall direct notice of this hearing session to counsel for all parties involved in the matters on the attached Schedule.

PANEL ON MULTIDISTRICT LITIGATION:

John G. Heyburn II
Chairman

| | |
|---|---|
| D. Lowell Jensen | J. Frederick Motz |
| Robert L. Miller, Jr. | Kathryn H. Vratil |
| David R. Hansen | Anthony J. Scirica |

SCHEDULE OF MATTERS FOR HEARING SESSION
March 27, 2008 -- Austin, Texas

**SECTION A**
**MATTERS DESIGNATED FOR ORAL ARGUMENT**

MDL No. 1921 -- **IN RE: NISSAN NORTH AMERICA, INC., ODOMETER LITIGATION**
**(NO. II)**

Motion of defendant Nissan North America, Inc., for centralization of the following actions in the United States District Court for the Middle District of Tennessee:

Central District of California

James Selth v. Nissan North America, Inc., et al., C.A. No. 2:07-7841

Northern District of California

Nkem Anadu v. Nissan North America, Inc., et al., C.A. No. 5:07-3801

Eastern District of Michigan

Darryl Hidalgo v. Nissan North America, Inc., et al., C.A. No. 2:07-15024

Eastern District of Pennsylvania

Michael D. Shaffer v. Nissan North America, Inc., C.A. No. 2:07-4794

Eastern District of Texas

Rebecca Womack v. Nissan North America, Inc., et al., C.A. No. 2:06-479

Schedule of Matters for Hearing Session, Section A                    p. 2
Austin, Texas


## MDL No. 1922 -- **IN RE: BMW REVERSE TRANSMISSION PRODUCTS LIABILITY LITIGATION**

Motion of plaintiffs Daniel J. Corbett and David Contino, et al., for centralization of the following actions in the United States District Court for the District of New Jersey:

### District of Connecticut

Daniel J. Corbett v. BMW of North America, LLC, C.A. No. 3:07-1273

### District of New Jersey

David Contino, et al. v. BMW of North America, LLC, C.A. No. 2:07-5755


## MDL No. 1923 -- **IN RE: FEDEX EXPRESS WAGE AND HOUR EMPLOYMENT PRACTICES LITIGATION**

Motion of plaintiffs Victor Merlo, et al., and Brendan Masterson, et al., for centralization of the following actions in the United States District Court for the Southern District of Florida or, in the alternative, the United States District Court for the Middle District of Pennsylvania:

### Southern District of Florida

Ronald Clausnitzer, et al. v. Federal Express Corp., C.A. No. 1:06-21457

### District of New Jersey

Victor Merlo, et al. v. FedEx Express, et al., C.A. No. 2:07-4311

### Middle District of Pennsylvania

Brendan Masterson, et al. v. Federal Express Corp., et al., C.A. No. 3:07-2241

MDL No. 1924 -- **IN RE: ATOMOXETINE PATENT LITIGATION**

Motion of plaintiff Eli Lilly & Company for centralization of the following actions in the United States District Court for the District of New Jersey:

      <u>District of New Jersey</u>

Eli Lilly & Co. v. Actavis Elizabeth, LLC, et al., C.A. No. 2:07-3770

      <u>Eastern District of Virginia</u>

Eli Lilly & Co. v. Synthon Laboratories, Inc., C.A. No. 2:07-450

MDL No. 1925 -- **IN RE: AIR CRASH NEAR MEDAN, INDONESIA, ON SEPTEMBER 5, 2005**

Motion of defendant The Boeing Company for centralization of the following actions in the United States District Court for the Northern District of Illinois:

      <u>Central District of California</u>

Willy Kusumo, et al. v. The Boeing Co., et al., C.A. No. 2:07-5738

      <u>Northern District of Illinois</u>

Andre Adiputra, et al. v. The Boeing Co., et al., C.A. No. 1:07-250
Purbo Justy Antoro, et al. v. The Boeing Co., et al., C.A. No. 1:07-1387
Xu Kai Zu, et al. v. The Boeing Co., et al., C.A. No. 1:07-4845
Nurandini Adi, et al. v. The Boeing Co., et al., C.A. No. 1:07-4954

      <u>Western District of Washington</u>

Indra Laksono, et al. v. The Boeing Co., et al., C.A. No. 2:07-1907

Schedule of Matters for Hearing Session, Section A                    p. 4
Austin, Texas


**MDL No. 1926 -- IN RE: HALFTONE COLOR SEPARATIONS ('809) PATENT LITIGATION**

Motion of plaintiffs Canon U.S.A., Inc., et al., for centralization of the following actions in the United States District Court for the Western District of Washington or, in the alternative, the United States District Court for the Central District of California:

Central District of California

Electronics For Imaging, Inc. v. Acacia Research Corp., et al., C.A. No. 8:07-1333

District of Delaware

Heidelberg USA, Inc. v. Screentone Systems Corp., et al., C.A. No. 1:07-601
Konica Minolta Business Solutions USA, Inc. v. Screentone Systems Corp., et al., C.A. No. 1:07-602

Eastern District of Texas

Screentone Systems Corp. v. Canon U.S.A., Inc., et al., C.A. No. 2:07-340

Western District of Washington

Canon U.S.A., Inc., et al. v. Screentone Systems Corp., et al., C.A. No. 2:07-1544


**MDL No. 1927 -- IN RE: TEXAS ROADHOUSE FAIR AND ACCURATE CREDIT TRANSACTIONS ACT (FACTA) LITIGATION**

Motion of plaintiff Nichole M. Ehrheart for centralization of the following actions in the United States District Court for the Northern District of Illinois:

Northern District of Illinois

Mario Aliano v. Texas Roadhouse Holdings, LLC, et al., C.A. No. 1:07-4108

Western District of Pennsylvania

Nichole M. Ehrheart v. Texas Roadhouse, Inc., C.A. No. 1:07-54

Schedule of Matters for Hearing Session, Section A                    p. 5
Austin, Texas


MDL No. 1928 -- **IN RE: TRASYLOL PRODUCTS LIABILITY LITIGATION**

     Motion of defendants Bayer Corp., Bayer Pharmaceuticals Corp., Bayer HealthCare LLC, Bayer AG, and Bayer HealthCare AG for centralization of the following actions in the United States District Court for the District of Connecticut:

     <u>Northern District of Alabama</u>

Bobbie S. Burnette, etc. v. Bayer Corp., et al., C.A. No. 7:07-2238

     <u>Central District of California</u>

Sheila Ware v. Bayer Corp., et al., C.A. No. 5:07-1305

     <u>Northern District of California</u>

Lupe De Leon, et al. v. Bayer Pharmaceuticals Corp., C.A. No. 3:07-6206
Samuel Nitzberg, et al. v. Bayer Corp., C.A. No. 4:07-4399

     <u>Southern District of California</u>

Michael O'Connor v. Bayer Corp., et al., C.A. No. 3:07-633

     <u>Middle District of Florida</u>

Deborah Bakan, etc. v. Bayer Corp., et al., C.A. No. 8:07-220
Melissa Morrill, etc. v. Bayer Pharmaceuticals Corp., et al., C.A. No. 8:07-819

     <u>Southern District of Florida</u>

Ismael Rodriguez, et al. v. Bayer Corp., et al., C.A. No. 9:07-81172

     <u>Middle District of Georgia</u>

Sherry L. Shaw, etc. v. Bayer Healthcare, et al., C.A. No. 4:07-176

     <u>Northern District of Georgia</u>

David E. Wease, et al. v. Bayer Corp., et al., C.A. No. 1:07-1659

Schedule of Matters for Hearing Session, Section A                     p. 6
Austin, Texas

MDL No. 1928 (Continued)

### Northern District of Illinois

Thomas W. Durkin, etc. v. Bayer Corp., et al., C.A. No. 1:07-7162

### Western District of Louisiana

Evelyn Moreaux Reider, et al. v. Bayer Corp., et al., C.A. No. 2:07-1688

### Southern District of Mississippi

Jonnie Sessums, etc. v. Bayer AG, et al., C.A. No. 3:07-436

### Middle District of Tennessee

Ada M. Williams v. Bayer Corp., et al., C.A. No. 1:07-4
Linda L. Davis v. Bayer Corp., et al., C.A. No. 3:07-115

### Southern District of Texas

Kenneth L. Lanham v. Bayer Corp., et al., C.A. No. 4:07-1687
Vance Pesl, etc. v. Bayer Corp., et al., C.A. No. 4:07-2819

### Northern District of West Virginia

Crystal Fast, etc. v. Bayer Corp., et al., C.A. No. 5:07-82

MDL No. 1929 -- **IN RE: SONY 1080P RESOLUTION TELEVISION MARKETING AND
SALES PRACTICES LITIGATION**

Motion of plaintiffs Jason Demas, et al., for centralization of the following actions in the
United States District Court for the Southern District of California:

### Central District of California

Elliot Handler v. Sony Electronics, Inc., C.A. No. 2:07-5212

MDL No. 1929 (Continued)


      <u>Southern District of California</u>

Jason Demas, et al. v. Sony Electronics, Inc., C.A. No. 3:07-2126

      <u>Eastern District of Michigan</u>

David Date, Jr. v. Sony Electronics, Inc., et al., C.A. No. 2:07-15474


MDL No. 1930 -- **IN RE: WELLS FARGO MORTGAGE LENDING PRACTICES
               LITIGATION**

     Motion of defendant Wells Fargo Bank, N.A., for centralization of the following actions
in the United States District Court for the Northern District of Illinois or, in the alternative, the
United States District Court for the Southern District of Iowa or other federal district court:

      <u>Central District of California</u>

Juan Rodriguez, et al. v. Wells Fargo Bank, N.A., C.A. No. 2:07-6780

      <u>Northern District of California</u>

Nancy Jeffries, et al. v. Wells Fargo Bank, N.A., et al., C.A. No. 3:07-3880
Gilbert Ventura, Sr., et al. v. Wells Fargo Bank, N.A., C.A. No. 3:07-4309

      <u>Northern District of Illinois</u>

Judy Williams v. Wells Fargo Bank, N.A., C.A. No. 1:07-6342

MDL No. 1931 -- **IN RE: VIRGIN MOBILE INITIAL PUBLIC OFFERING (IPO) SECURITIES LITIGATION**

Motion of defendants Virgin Mobile USA, Inc.; Daniel H. Schulman; Jonathan Marchbank; John D. Feehan, Jr.; Frances Brandon-Farrow; Douglas B. Lynn; Mark Poole; Robert Samuelson; L. Kevin Cox; Thomas O. Ryder; Kenneth T. Stevens; Sprint Nextel Corp.; and Corvina Holdings, Ltd., for centralization of the following actions in the United States District Court for the Southern District of New York:

District of New Jersey

Michael Volpe v. Daniel H. Schulman, et al., C.A. No. 2:07-5619

Southern District of New York

Ellen Brodsky v. Virgin Mobile USA, Inc., et al., C.A. No. 1:07-10589
Roger Joseph, Jr. v. Virgin Mobile USA, Inc., et al., C.A. No. 1:07-11060
2 West, Inc. v. Virgin Mobile USA, Inc., et al., C.A. No. 1:07-11625

MDL No. 1932 -- **IN RE: FAMILY DOLLAR STORES, INC., WAGE AND HOUR EMPLOYMENT PRACTICES LITIGATION**

Motion of plaintiffs Luana Scott; Irene Grace, et al.; Shawn Eric Ward, et al.; Melanie Blake, et al.; and Pamela Fowler, et al., for centralization of the following actions in the United States District Court for the Northern District of Alabama:

Northern District of Alabama

Luana Scott v. Family Dollar Stores, Inc., C.A. No. 7:08-16

Middle District of Florida

Doris Moody v. Family Dollar Stores, Inc., C.A. No. 8:08-8

Western District of North Carolina

Irene Grace, et al. v. Family Dollar Stores, Inc., C.A. No. 3:06-306
Shawn Eric Ward, et al. v. Family Dollar Stores, Inc., C.A. No. 3:06-441
Melanie Blake, et al. v. Family Dollar Stores, Inc., et al., C.A. No. 3:07-244

MDL No. 1932 (Continued)

### Western District of North Carolina (Continued)

Pamela Fowler, et al. v. Family Dollar Stores, Inc., et al., C.A. No. 3:07-316
Lashanda Slater, et al. v. Family Dollar Stores, Inc., C.A. No. 3:07-501

### Middle District of Tennessee

Sheri Toms v. Family Dollar Stores, Inc., et al., C.A. No. 3:07-1277

### Eastern District of Texas

Betty S. McCarty, et al. v. Family Dollar Stores, Inc., C.A. No. 5:07-194

MDL No. 1933 -- **IN RE: MERRILL LYNCH & CO., INC., SECURITIES, DERIVATIVE & "ERISA" LITIGATION**

Motion of defendant Merrill Lynch & Co., Inc., for centralization of the following actions in the United States District Court for the Southern District of New York:

### District of New Jersey

David Eidman, etc. v. E. Stanley O'Neal, et al., C.A. No. 2:08-126

### Southern District of New York

Life Enrichment Foundation v. Merrill Lynch & Co., Inc., et al., C.A. No. 1:07-9633
Patricia Arthur, etc. v. E. Stanley O'Neal, et al., C.A. No. 1:07-9696
Michael J. Savena v. Merrill Lynch & Co., Inc., et al., C.A. No. 1:07-9837
Miriam Loveman, etc. v. E. Stanley O'Neal, et al., C.A. No. 1:07-9888
Elizabeth Estey v. Merrill Lynch & Co., Inc., et al., C.A. No. 1:07-10268
Mary Gidaro v. Merrill Lynch & Co., Inc., et al., C.A. No. 1:07-10273
Tara Moore v. Merrill Lynch & Co., Inc., et al., C.A. No. 1:07-10398
Gregory Yashgur v. Merrill Lynch & Co., Inc., et al., C.A. No. 1:07-10569
Christine Donlon v. Merrill Lynch & Co., Inc., et al., C.A. No. 1:07-10661

Schedule of Matters for Hearing Session, Section A                    p. 10
Austin, Texas

MDL No. 1933 (Continued)

   <u>Southern District of New York</u> (Continued)

  Carl Esposito v. Merrill Lynch & Co., Inc., et al., C.A. No. 1:07-10687
  Sean Shaughnessey, etc. v. Merrill Lynch & Co., Inc., et al., C.A. No. 1:07-10710
  Gary Kosseff v. Merrill Lynch & Co., Inc., et al., C.A. No. 1:07-10984
  Barbara Boland, et al. v. Merrill Lynch & Co., Inc., et al., C.A. No. 1:07-11054
  Robert R. Garber v. Merrill Lynch & Co., Inc., et al., C.A. No. 1:07-11080
  Operative Plasterers & Cement Masons Local 262 Pension & Annuity Funds, etc. v. E.
    Stanley O'Neal, et al., C.A. No. 1:07-11085
  Francis Lee Summers, III v. Merrill Lynch & Co., Inc., et al., C.A. No. 1:07-11615
  James Conn v. Merrill Lynch & Co., Inc., et al., C.A. No. 1:07-11626
  James Eastman v. Merrill Lynch & Co., Inc., et al., C.A. No. 1:08-58

MDL No. 1934 -- **IN RE: EPOGEN AND ARANESP OFF-LABEL MARKETING AND
    SALES PRACTICES LITIGATION**

  Motion of plaintiff United Food & Commercial Workers Central Pennsylvania and
Regional Health & Welfare Fund for centralization of the following actions in the United States
District Court for the Northern District of Illinois:

    <u>Central District of California</u>

  Ironworkers Local Union No. 68 & Participating Employers Health & Welfare Funds, et
   al. v. Amgen, Inc., C.A. No. 2:07-5157
  Sheet Metal Workers National Health Fund, et al. v. Amgen, Inc., et al.,
   C.A. No. 2:07-5620

    <u>Northern District of Illinois</u>

  Painters District Council No. 30 Health & Welfare Fund v. Amgen, Inc.,
   C.A. No. 1:07-6628

    <u>Eastern District of Michigan</u>

  Linda A. Watters v. Amgen, Inc., C.A. No. 4:07-15354

MDL No. 1934 (Continued)


### Middle District of Pennsylvania

United Food & Commercial Workers Central Pennsylvania & Regional Health & Welfare      Fund v. Amgen, Inc., C.A. No. 4:07-2125


## MDL No. 1935 -- **IN RE: CHOCOLATE CONFECTIONARY ANTITRUST LITIGATION**

Motion of plaintiff Michael McNamara for centralization of certain of the following actions in the United States District Court for the Middle District of Pennsylvania or, in the alternative, the United States District Court for the Eastern District of Pennsylvania; motion of plaintiffs CNS Confectionery Products, LLC, et al., and Stephen Snow, et al., for centralization of certain of the following actions in the United States District Court for the District of New Jersey; motion of plaintiffs Katherine Woodman and Glenn Coffey for centralization of certain of the following actions in the United States District Court for the Middle District of Pennsylvania; and motion of plaintiff Mandel Tobacco Co., Inc., for centralization of the following actions in the United States District Court for the Middle District of Pennsylvania:

### Northern District of California

Scott Lamson v. The Hershey Co., et al., C.A. No. 3:08-153

### Eastern District of Michigan

International Wholesale, Inc. v. The Hershey Co., et al., C.A. No. 2:08-10215
United Wholesale v. The Hershey Co., et al., C.A. No. 2:08-10275
United Customs Distribution v. The Hershey Co., et al., C.A. No. 5:08-10276

### District of New Jersey

CNS Confectionery Products, LLC, et al. v. The Hershey Co., et. al., C.A. No. 2:07-6088
Akisa Matsuda v. The Hershey Co., et al., C.A. No. 2:08-191
Eric Lense v. The Hershey Co., et al., C.A. No. 2:08-192
Diane Chiger v. The Hershey Co., et al., C.A. No. 2:08-195
Stephen Snow, et al. v. The Hershey Co., et al., C.A. No. 2:08-199

MDL No. 1935 (Continued)


      <u>Southern District of New York</u>

Webb's Candies, Inc. v. Cadbury Adams Canada, Inc., et al., C.A. No. 1:08-382

      <u>Eastern District of Pennsylvania</u>

Stephen L. LaFrance Pharmacy, Inc., etc. v. The Hershey Co., et al., C.A. No. 2:08-109
Richard Miller, et al. v. The Hershey Co., et al., C.A. No. 2:08-198
Western Skier, Ltd. v. The Hershey Co., et al., C.A. No. 2:08-205
Michael W. DeMarshall v. The Hershey Co., et al., C.A. No. 2:08-253

      <u>Middle District of Pennsylvania</u>

Michael McNamara v. Cadbury Schweppes, PLC, et al., C.A. No. 1:07-2335
Katherine Woodman v. The Hershey Co., et al., C.A. No. 1:07-2336
Glenn Coffey, etc. v. The Hershey Co., et al., C.A. No. 1:08-84
The Lorain Novelty Co., Inc. v. Cadbury Adams Canada, Inc., et al., C.A. No. 1:08-101
  Mandel Tobacco Co., Inc. v. The Hershey Co., et al., C.A. No. 1:08-122

      <u>Eastern District of Virginia</u>

STLE Corp. v. The Hershey Co., et al., C.A. No. 1:08-19


MDL No. 1936 -- **IN RE: TRAIN DERAILMENT NEAR TYRONE, OKLAHOMA, ON
      APRIL 21, 2005**

    Motion of Kawasaki Kisen Kaisha, Ltd., and K-Line America, Inc., for centralization of
the following actions in the United States District Court for the Southern District of New York:

      <u>Northern District of Illinois</u>

Kawasaki Kisen Kaisha, Ltd., et al. v. CMT International, Inc., et al., C.A. No. 1:07-5675

MDL No. 1936 (Continued)


      <u>Southern District of New York</u>

Indemnity Insurance Co. of North America v. K-Line America, Inc., et al.,
  C.A. No. 1:06-615
Royal & Sun Alliance Insurance PLC v. K-Line America, Inc., et al., C.A. No. 1:06-2557

Mitsui Sumitomo Insurance Co., Ltd., et al. v. K-Line America, Inc., et al.,
  C.A. No. 1:06-2956
Phillips PC Peripherals, et al. v. M/V Chang Jiang Bridge, et al., C.A. No. 1:06-2962
Federal Insurance Co. v. K-Line America, Inc., et al., C.A. No. 1:06-3038
ACK Controls, Inc. v. K-Line America, Inc., et al., C.A. No. 1:06-3040
Navigators Management Co., etc. v. Union Pacific Railroad Co., et al.,
  C.A. No. 1:06-3042
Tokio Marine & Nichido Fire Insurance Co., Ltd., et al. v. Kawasaki Kisen Kaisha, Ltd.,
  et al., C.A. No. 1:06-5159


MDL No. 1937 -- **IN RE: UNITED STATES POSTAL SERVICE PRIVACY ACT
        LITIGATION**

     Motion of defendant United States Postal Service for centralization of the following
actions in the United States District Court for the District of District of Columbia:

      <u>Northern District of Illinois</u>

Janet Diggins v. United States Postal Service, C.A. No. 1:07-4623

      <u>Western District of Washington</u>

Lance McDermott, et al. v. United States Postal Service, C.A. No. 2:07-1174

MDL No. 1938 -- **IN RE: VYTORIN/ZETIA MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION**

Motion of plaintiff RoseAnn S. Flores for centralization of certain of the following actions in the United States District Court for the Eastern District of Louisiana or, in the alternative, the United States District Court for the Northern District of Ohio; motions of plaintiffs Rita Polk; Jay Klitzner; Sandra Weiss; Lionel Galperin; Charles D. Maurer, et al.; Ken W. Bever; David DeAngelis; Ciro Verdi, et al.; and Marilyn Woodman for centralization of certain of the following actions in the United States District Court for the District of New Jersey; and motion of plaintiffs ASEA/AFSCME Local 52 Health Benefits Trust, et al., for centralization of certain of the following actions in a single United States district court:

    Eastern District of California

George Artenstein v. Merck & Co., Inc., et al., C.A. No. 2:08-152

    Northern District of California

Helen Aronis v. Merck & Co., Inc., et al., C.A. No. 3:08-352
Richard Haskin v. Merck & Co., Inc., et al., C.A. No. 3:08-376
ASEA/AFSCME Local 52 Health Benefits Trust, et al. v. Merck & Co., Inc., et al.,
 C.A. No. 3:08-531

    District of Colorado

Ronna Dee Kitsmiller v. Merck & Co., Inc., et al., C.A. No. 1:08-120

    Middle District of Florida

Marion J. Greene v. Merck & Co., Inc., et al., C.A. No. 3:08-69

    Southern District of Florida

Sam A. Ciotti v. Merck & Co., Inc., et al., C.A. No. 0:08-60077

    District of Kansas

Charles Swanson, et al. v. Merck & Co., Inc., et al., C.A. No. 2:08-2040
John P. Dudley v. Merck & Co., Inc., et al., C.A. No. 6:08-1027

Schedule of Matters for Hearing Session, Section A                    p. 15
Austin, Texas

MDL No. 1938 (Continued)

      Eastern District of Louisiana

RoseAnn S. Flores v. Merck & Co., Inc., et al., C.A. No. 2:08-674

      District of Minnesota

Jody Fischer v. Merck & Co., Inc., et al., C.A. No. 0:08-203

      Northern District of Mississippi

Susan McCulley v. Merck & Co., Inc., et al., C.A. No. 2:08-16
Lisa Mims v. Merck & Co., Inc., et al., C.A. No. 4:08-10

      District of New Jersey

Rita Polk v. Schering-Plough Corp., et al., C.A. No. 2:08-285
Jay Klitzner v. Schering-Plough Corp., et al., C.A. No. 2:08-316
Sandra Weiss v. Schering-Plough Corp., et al., C.A. No. 2:08-320
Lionel Galperin v. Merck & Co., Inc., et al., C.A. No. 2:08-349
Robert J. McGarry v. Merck & Co., Inc., et al., C.A. No. 2:08-350
Charles D. Maurer, et al. v. Schering-Plough Corp., et al., C.A. No. 2:08-393
Daniel A. Brown v. Merck & Co., Inc., et al., C.A. No. 2:08-395
Steven Knight v. Merck & Co., Inc., et al., C.A. No. 2:08-396
Ken W. Bever v. Schering-Plough Corp., et al., C.A. No. 2:08-430
David DeAngelis v. Schering-Plough Corp., et al., C.A. No. 2:08-431
Ciro Verdi, et al. v. Schering-Plough Corp., et al., C.A. No. 2:08-432
Marilyn Woodman v. Schering-Plough Corp., et al., C.A. No. 2:08-437

      Eastern District of New York

Sigmond Tomaszewski v. Merck & Co., Inc., et al., C.A. No. 1:08-258

      Southern District of New York

Joyce B. Rheingold, et al. v. Merck & Co., Inc., et al., C.A. No. 1:08-438
Stanley Levy, et al. v. Merck & Co., Inc., et al., C.A. No. 1:08-491

MDL No. 1938 (Continued)

<u>Northern District of Ohio</u>

Theodore Sahley v. Merck & Co., Inc., et al., C.A. No. 1:08-153
Panayiotis Balaouras v. Merck & Co., Inc., et al., C.A. No. 1:08-198

<u>Southern District of Ohio</u>

Dennis Kean v. Merck & Co., Inc., et al., C.A. No. 2:08-61

<u>Eastern District of Pennsylvania</u>

Fred Singer v. Merck & Co., Inc., et al., C.A. No. 2:08-331

<u>District of Puerto Rico</u>

Alexis Alicea-Figueroa, et al. v. Merck & Co., Inc., et al., C.A. No. 3:08-1099

MDL No. 1939 -- **IN RE: OILILY FAIR AND ACCURATE CREDIT TRANSACTIONS
                  ACT (FACTA) LITIGATION**

Motion of plaintiff Melanie A. Klingensmith for centralization of the following actions in
the United States District Court for the Northern District of California:

<u>Northern District of California</u>

Elizabeth McCoy v. Oilily B.V., et al., C.A. No. 3:07-4780

<u>Eastern District of Pennsylvania</u>

Melanie A. Klingensmith v. Oilily Retail USA, C.A. No. 2:07-4321

MDL No. 1940 -- **IN RE: AQUA DOTS PRODUCTS LIABILITY LITIGATION**

Motion of defendants Spin Master, Ltd., and Spin Master, Inc., for centralization of the following actions in the United States District Court for the Northern District of Illinois or, in the alternative, the United States District Court for the Eastern District of Arkansas:

Eastern District of Arkansas

Donald C. Erbach, Jr., et al. v. Spin Master, Ltd., et al., C.A. No. 4:07-1112

Central District of California

Kim A. Cosgrove v. Spin Master, Ltd., et al., C.A. No. 2:07-7544
Sandra Irene Soderstedt v. Moose Enterprise Pty Ltd., et al., C.A. No. 2:07-7546

Southern District of Florida

Simon Bertanowski, et al. v. Moose Enterprise Pty Ltd., et al., C.A. No. 1:07-22941

Northern District of Illinois

Robyn Williams v. Spin Master, Ltd., C.A. No. 1:07-6387

Western District of Missouri

Michael J. Burgess v. Spin Master, Ltd., C.A. No. 3:07-5110

Northern District of Texas

Eric K. Botsch v. Spin Master, Inc., et al., C.A. No. 3:07-1948

# SECTION B
# MATTERS DESIGNATED FOR CONSIDERATION WITHOUT ORAL ARGUMENT

MDL No. 875 -- **IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)**

  Oppositions of plaintiffs Laura Contois, etc.; Mary Ellen Harris, etc.; Warren W. Sether, et al.; Harold Hendley, et al.; Michael J. McCurdy, et al.; Dorothy Boyd, etc.; Ruth Shamir, etc.; Claude E. Newman; and Eugene F. Booth to transfer of their respective following actions to the United States District Court for the Eastern District of Pennsylvania:

   <u>District of Connecticut</u>

Laura Contois, etc. v. Able Industries, Inc., et al., C.A. No. 3:07-1328

   <u>Northern District of Illinois</u>

Mary Ellen Harris, etc. v. Rapid-American Corp., et al., C.A. No. 1:07-6055

   <u>Southern District of Illinois</u>

Warren W. Sether, et al. v. AGCO Corp., et al., C.A. No. 3:07-809

   <u>Western District of Kentucky</u>

Harold Hendley, et al. v. American Standard, Inc., et al., C.A. No. 5:07-208

   <u>District of Maryland</u>

Michael J. McCurdy, et al. v. John Crane-Houdaille, Inc., et al., C.A. No. 1:07-2681
Dorothy Boyd, etc. v. MCIC, Inc., et al., C.A. No. 1:07-3311

   <u>District of New Jersey</u>

Ruth Shamir, etc. v. Agilent Technologies, Inc., et al., C.A. No. 2:07-4185

MDL No. 875 (Continued)

### District of Oregon

Claude E. Newman v. Crown Cork & Seal Co., Inc., et al., C.A. No. 3:07-1533
Eugene F. Booth v. ArvinMeritor, Inc., et al., C.A. No. 3:07-1544

Oppositions of defendants AstenJohnson, Inc., and Eaton Corp., to remand, under 28 U.S.C. § 1407(a), of their respective following actions to their respective transferor courts:

### Eastern District of Pennsylvania

Diana Wheeler McCarthy, et al. v. Asten Johnson, Inc., et al., (C.D. California,
   C.A. No. 2:03-3046)
Beatrice M. Chiasson, et al. v. Honeywell International, Inc., et al., (E.D. Louisiana,
   C.A. No. 2:05-5221)

## MDL No. 1373 -- IN RE: BRIDGESTONE/FIRESTONE, INC., TIRES PRODUCTS LIABILITY LITIGATION

Opposition of plaintiffs Starr F. Traylor and Ruby Yarbrough, et al., to transfer of their respective following actions to the United States District Court for the Southern District of Indiana:

### Eastern District of Missouri

Starr F. Traylor v. Ford Motor Co., et al., C.A. No. 1:07-166
Ruby Yarbrough, et al. v. Ford Motor Co., et al., C.A. No. 1:07-167

## MDL No. 1431 -- **IN RE: BAYCOL PRODUCTS LIABILITY LITIGATION**

Opposition of plaintiff Mark Stodghill, etc., to transfer of the following action to the United States District Court for the District of Minnesota:

Eastern District of Pennsylvania

Mark Stodghill, etc. v. Bayer AG, et al., C.A. No. 2:07-5501

## MDL No. 1456 -- **IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION**

Oppositions of plaintiff State of Utah to transfer of the following actions to the United States District Court for the District of Massachusetts:

District of Utah

State of Utah v. Actavis US, Inc., et al., C.A. No. 2:07-870
State of Utah v. Abbott Laboratories, et al., C.A. No. 2:07-899

## MDL No. 1507 -- **IN RE: PREMPRO PRODUCTS LIABILITY LITIGATION**

Oppositions of plaintiffs Minnie Louise Gray, et al., and defendant Wyeth; Wyeth Pharmaceuticals, Inc.; Wyeth-Ayerst International, Inc.; Wyeth Pharmaceuticals; and Wyeth, Inc., to transfer of their respective following actions to the United States District Court for the Eastern District of Arkansas:

Southern District of Illinois

Minnie Louise Gray, et al. v. Wyeth, et al., C.A. No. 3:07-799

District of Minnesota

Garciana Manalo, et al. v. Wyeth, et al., C.A. No. 0:07-4557
Carol J. Hess v. Wyeth, Inc., C.A. No. 0:07-4567

MDL No. 1596 -- **IN RE: ZYPREXA PRODUCTS LIABILITY LITIGATION**

Opposition of plaintiff Greg Bounds to transfer of the following action to the United States District Court for the Eastern District of New York:

Southern District of Mississippi

Greg Bounds v. Pine Belt Mental Health Care Resources, et al., C.A. No. 2:07-356

MDL No. 1603 -- **IN RE: OXYCONTIN ANTITRUST LITIGATION**

Opposition of plaintiffs Commonwealth of Kentucky, et al., to transfer of the following action to the United States District Court for the Southern District of New York:

Eastern District of Kentucky

Commonwealth of Kentucky, et al. v. Purdue Pharma, L.P., et al., C.A. No. 7:07-222

MDL No. 1649 -- **IN RE: HELICOPTER CRASH NEAR WENDLE CREEK, BRITISH COLUMBIA, ON AUGUST 8, 2002**

Opposition of defendant Croman Corp. to transfer of the following action to the United States District Court for the District of Connecticut:

District of Oregon

Sikorsky Aircraft Corp., et al. v. Croman Corp., C.A. No. 3:07-1483

MDL No. 1657 -- **IN RE: VIOXX MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION**

Opposition of plaintiff Erie County, New York, to transfer of the following action to the United States District Court for the Eastern District of Louisiana:

District of New Jersey

Erie County, New York v. Merck & Co., Inc., C.A. No. 1:07-5517

MDL No. 1708 -- **IN RE: GUIDANT CORP. IMPLANTABLE DEFIBRILLATORS
PRODUCTS LIABILITY LITIGATION**

Opposition of plaintiff Judith Maher to transfer of the following action to the United
States District Court for the District of Minnesota:

Northern District of Illinois

Judith Maher v. Guidant Corp., et al., C.A. No. 1:07-6561

MDL No. 1715 -- **IN RE: AMERIQUEST MORTGAGE CO. MORTGAGE LENDING
PRACTICES LITIGATION**

Oppositions of plaintiffs Eldora Moore and Phyllis A. Hollis, et al., to transfer of their
respective following actions to the United States District Court for the Northern District of
Illinois:

Eastern District of Michigan

Eldora Moore v. Ameriquest Mortgage Co., et al., C.A. No. 2:07-14498

District of New Jersey

Phyllis A. Hollis, et al. v. Ameriquest Mortgage Co., et al., Bky. Advy. No. 3:07-2615

MDL No. 1718 -- **IN RE: FORD MOTOR CO. SPEED CONTROL DEACTIVATION
SWITCH PRODUCTS LIABILITY LITIGATION**

Oppositions of plaintiffs Terry R. Hamlin, et al., and Rudolpho Reyes, et al., to transfer
of their respective following actions to the United States District Court for the Eastern District of
Michigan:

Eastern District of Oklahoma

Terry R. Hamlin, et al. v. Ford Motor Co., et al., C.A. No. 6:07-372

Western District of Texas

Rudolpho Reyes, et al. v. Autos Etc., Ltd., et al., C.A. No. 6:07-352

MDL No. 1726 -- **IN RE: MEDTRONIC, INC., IMPLANTABLE DEFIBRILLATORS
PRODUCTS LIABILITY LITIGATION**

Oppositions of plaintiff Reginald Witcher, etc., and defendants Medtronic USA, Inc., and
Medtronic, Inc., to transfer of the respective following actions to the United States District Court
for the District of Minnesota:

Middle District of Alabama

Reginald Witcher, etc. v. Medtronic, Inc., C.A. No. 2:07-989

District of Nebraska

Nancy McGinley, etc. v. Medtronic USA, Inc., et al., C.A. No. 8:07-424

MDL No. 1769 -- **IN RE: SEROQUEL PRODUCTS LIABILITY LITIGATION**

Motion of defendants AstraZeneca Pharmaceuticals LP and AstraZeneca LP to transfer
the following actions to the United States District Court for the Middle District of Florida:

Southern District of Indiana

Mabel M. Hensley, etc. v. Astra Pharmaceuticals, L.P., et al., C.A. No. 1:07-596

Northern District of Texas

Pedro Garza, Jr., etc. v. AstraZeneca Pharmaceuticals, LP, C.A. No. 3:07-1987

MDL No. 1811 -- **IN RE: GENETICALLY MODIFIED RICE LITIGATION**

Opposition of plaintiff Rickmers Reismuehle GmbH to transfer of the following actions
to the United States District Court for the Eastern District of Missouri:

Eastern District of Arkansas

Rickmers Reismuehle GmbH v. Producers Rice Mill, Inc., C.A. No. 4:07-732
Rickmers Reismuehle GmbH v. Riceland Foods, Inc., C.A. No. 4:07-733

MDL No. 1845 -- **IN RE: CONAGRA PEANUT BUTTER PRODUCTS LIABILITY
              LITIGATION**

Oppositions of plaintiffs Tina Walker, et al., and Amanda Wyatt to transfer of their respective following actions to the United States District Court for the Northern District of Georgia:

Central District of California

Tina Walker, et al. v. ConAgra Foods, Inc., et al., C.A. No. 5:07-1423

Eastern District of Missouri

Amanda Wyatt v. ConAgra Foods, Inc., C.A. No. 4:07-2064


MDL No. 1850 -- **IN RE: PET FOOD PRODUCTS LIABILITY LITIGATION**

Oppositions of plaintiffs Winston David Snell, et al., and defendant Natural Balance Pet Foods, Inc., to transfer of the following action to the United States District Court for the District of New Jersey:

Southern District of Texas

Winston David Snell, et al. v. Dick Van Patten's Natural Balance Pet Foods, Inc., et al., C.A. No. 6:07-66


MDL No. 1871 -- **IN RE: AVANDIA MARKETING, SALES PRACTICES AND
              PRODUCTS LIABILITY LITIGATION**

Oppositions of plaintiffs Leslie Boone; Dorothy Bone, et al.; James Hall; James Jefferson; George Fisher; Hector Thornton; Ivan Upshaw; Rose Hefner, et al.; and Richard Bowles, et al., to transfer of their respective following actions to the United States District Court for the Eastern District of Pennsylvania:

Central District of California

Leslie Boone v. GlaxoSmithKline Corp., et al., C.A. No. 2:07-7699

Schedule of Matters for Hearing Session, Section B         p. 25
Austin, Texas

MDL No. 1871 (Continued)

    <u>Northern District of California</u>

    Dorothy Bone, et al. v. SmithKline Beecham Corp., et al., C.A. No. 3:07-5886
    James Hall v. SmithKline Beecham Corp., et al., C.A. No. 3:07-5887
    James Jefferson v. SmithKline Beecham Corp., et al., C.A. No. 3:07-5888
    George Fisher v. SmithKline Beecham Corp., et al., C.A. No. 3:07-5889
    Hector Thornton v. SmithKline Beecham Corp., et al., C.A. No. 3:07-5890
    Ivan Upshaw v. SmithKline Beecham Corp., et al., C.A. No. 3:07-5891
    Rose Hefner, et al. v. SmithKline Beecham Corp., et al., C.A. No. 3:07-6050
    Richard Bowles, et al. v. SmithKline Beecham Corp., et al., C.A. No. 3:07-6328

MDL No. 1877 -- **IN RE: CLASSICSTAR MARE LEASE LITIGATION**

    Opposition of plaintiff Gunshy Thoroughbreds, LLC, to transfer of the following action to the United States District Court for the Eastern District of Kentucky:

    <u>Eastern District of Michigan</u>

    Gunshy Thoroughbreds, LLC v. GeoStar Corp., C.A. No. 1:07-15266

PROCEDURES FOR ORAL ARGUMENT BEFORE THE
UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

All oral argument is governed by the provisions of Rule 16.1 of the <u>Rules of Procedure of the Judicial Panel on Multidistrict Litigation</u> (effective April 2, 2001). Rule 16.1(g) allows a maximum of twenty minutes for oral argument in each matter. In most cases, however, less time is necessary for the expression of all views and the Panel reserves the prerogative of reducing the time requested by counsel. Accordingly, counsel should be careful not to overstate the time requested for oral argument.

The Panel insists that counsel limit all oral argument to the appropriate criteria. <u>See generally In re "East of the Rockies" Concrete Pipe Antitrust Cases</u>, 302 F. Supp. 244, 255-56 (J.P.M.L. 1969) (concurring opinion) (discussion concerning criteria for transfer).

Rule 16.1 is duplicated in its entirety hereafter for your convenience.

RULE 16.1:     HEARING SESSIONS AND ORAL ARGUMENT

(a)     Hearing sessions of the Panel for the presentation of oral argument and consideration of matters taken under submission without oral argument shall be held as ordered by the Panel.  The Panel shall convene whenever and wherever desirable or necessary in the judgment of the Chairman.  The Chairman shall determine which matters shall be considered at each hearing session and the Clerk of the Panel shall give notice to counsel for all parties involved in the litigation to be so considered of the time, place and subject matter of such hearing session.

(b)     Each party filing a motion or a response to a motion or order of the Panel under Rules 7.2, 7.3, 7.4 or 7.6 of these Rules may file simultaneously therewith a separate statement limited to one page setting forth reasons why oral argument should, or need not, be heard.  Such statements shall be captioned "Reasons Why Oral Argument Should [Need Not] Be Heard," and shall be filed and served in conformity with Rules 5.12 and 5.2 of these Rules.

(c)     No transfer or remand determination regarding any action pending in the district court shall be made by the Panel when any party timely opposes such transfer or remand unless a hearing session has been held for the presentation of oral argument except that the Panel may dispense with oral argument if it determines that:
> (i)     the dispositive issue(s) have been authoritatively decided; or
> (ii)     the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.
Unless otherwise ordered by the Panel, all other matters before the Panel, such as a motion for reconsideration, shall be considered and determined upon the basis of the papers filed.

(d)     In those matters in which oral argument is not scheduled by the Panel, counsel shall be promptly advised.  If oral argument is scheduled in a matter the Clerk of the Panel may require counsel for all parties who wish to make or to waive oral argument to file and serve notice to that effect within a stated time in conformity with Rules 5.12 and 5.2 of these Rules. Failure to do so shall be deemed a waiver of oral argument by that party. If oral argument is scheduled but not attended by a party, the matter shall not be rescheduled and that party's position shall be treated as submitted for decision by the Panel on the basis of the papers filed.

(e)     Except for leave of the Panel on a showing of good cause, only those parties to actions scheduled for oral argument who have filed a motion or written response to a motion or order shall be permitted to appear before the Panel and present oral argument.

(f)     Counsel for those supporting transfer or remand under Section 1407 and counsel for those opposing such transfer or remand are to confer separately prior to the oral argument for the purpose of organizing their arguments and selecting representatives to present all views without duplication.

(g)     Unless otherwise ordered by the Panel, a maximum of twenty minutes shall be allotted for oral argument in each matter.  The time shall be divided equally among those with varying viewpoints.  Counsel for the moving party or parties shall generally be heard first.

- 2 -

(h)     So far as practicable and consistent with the purposes of Section 1407, the offering of oral testimony before the Panel shall be avoided.  Accordingly, oral testimony shall not be received except upon notice, motion and order of the Panel expressly providing for it.

(i)     After an action or group of actions has been set for a hearing session, consideration of such action(s) may be continued only by order of the Panel on good cause shown.

Docket: 1933 - IN RE: Merrill Lynch & Co., Inc., Securities, Derivative & "ERISA" Litigation

Status: Pending on / /

Transferee District:              Judge:

For: Entries Between 1 and 13

| Pleading | File Date | Description |
|---|---|---|
| 1 | 01/14/2008 | MOTION -- BRIEF, SCHEDULE OF ACTIONS (20 actions) Filed by deft. Merrill Lynch & Co., Inc. - SUGGESTED TRANSFEREE DISTRICT: S.D. New York; SUGGESTED TRANSFEREE JUDGE: ?- w/ Exhibit A, cert of svc & disk (trjs) |
| | | Revised cert of svc recv'd 1/11/08     (Received on 01/09/2008) |
| 2 | 01/17/2008 | CORPORATE DISCLOSURE STATEMENT -- (re: pldg. 1) Filed by Merrill Lynch & Co., Inc. - (bb)     (Received on 01/09/2008) |
| 3 | 01/25/2008 | APPEARANCE -- (Re: pldg. 1) DAVID A. P. BROWER, ESQ. for Miriam Loveman; MERRILL G. DAVIDOFF, ESQ. for State Teachers Retirement System of Ohio; LORI G. FELDMAN, ESQ. for James Eastman; JAY B. KASNER, ESQ. for Merrill Lynch & Co., Inc.; DEREK W. LOESER, ESQ. for Carl Esposito; EDWIN J. MILLS, ESQ. for Gregory Yashgur; BRUCE F. RINALDI, ESQ. for Barbara Boland, et al. & CURTIS W. TRINKO, ESQ. for Elizabeth Estey and Tara Moore -Notified involved counsel (trjs) |
| 4 | 01/28/2008 | LETTER (SUPPLEMENTAL INFORMATION) -- (Re: pldg. 1) Signed by Jay B. Kasner, Esq. counsel for Merrill Lynch & Co. (dated 1/24/08) - w/svc (trjs)     (Received on 01/24/2008) |
| 5 | 01/28/2008 | APPEARANCE -- (RE: pldg. 1) RALPH M. STONE, ESQ. for Mary Gidaro -w/cert of svc (trjs) |
| 6 | 01/29/2008 | APPEARANCE -- (Re: pldg. 1) ROBERT I. HARWOOD, ESQ. for Christine Donlon -w/cert of svc (trjs) |
| 7 | 01/30/2008 | APPEARANCE -- (RE: pldg. 1) THEODORE M. LIEVERMAN, ESQ. for Francis Lee Summers, III -w/cert of svc (trjs)     (Received on 01/29/2008) |
| 8 | 02/04/2008 | RESPONSE, MEMORANDUM -- (Re: pldg. 1) Filed by pltf. James Eastman, etc. -w/cert of svc & disk (trjs) |
| 9 | 02/04/2008 | RESPONSE -- (Re: pldg. 1) Filed by pltfs. Carl Esposito & Barbara Boland, et al. -w/Exhibit A, cert of svc & disk (trjs) |
| 10 | 02/04/2008 | RESPONSE -- (Re: pldg. 1) Filed by pltf. State Teachers' Retirement System of Ohio -w/cert of svc & disk (trjs) |
| 11 | 02/05/2008 | RESPONSE -- (Re: pldg. 1) Filed by Christine Donlon -w/cert of svc & disk (trjs) |
| 12 | 02/11/2008 | REPLY -- (Re: pldgs. 8-10) Filed by deft. Merrill Lynch & Co., Inc. -w/cert of svc & disk (trjs) |
| | | *Amended cert of svc rec'd 2/8/08     (Received on 02/08/2008) |
| 13 | 02/13/2008 | HEARING ORDER -- (re: pldg. 1) Setting motion to transfer for Panel hearing on March 27, 2008 in Austin, Texas - Notified involved counsel & Judges (rh) |

**FILED**

APR 2 3 2003

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP AT 8:30 . . . . . . . . . . . . . . M
(A Delaware Limited Liability Partnership)          WILLIAM T. WALSH
Robert J. Del Tufo (RJD 8783)                              CLERK
Andrew Muscato (AM 3025)
One Newark Center
Newark, New Jersey 07102
(973) 639-6800

**FILED**

APR 2 3 2003

AT 8:30 . . . . . . . . . . . M
WILLIAM T. WALSH
CLERK

Attorneys for Defendants
Salomon Smith Barney Inc.,
J.P. Morgan Securities Inc.,
Banc of America Securities LLC,
ABN AMRO Incorporated, Deutsche
Banc Alex. Brown Inc., Lehman Brothers Inc.,
Credit Suisse First Boston Corp., Goldman
Sachs & Co., UBS Warburg LLC, and
Nationsbanc Montgomery Securities LLC

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| HEAVY & GENERAL LABORERS' LOCALS 472 & 172 PENSION & ANNUITY FUNDS, TEAMSTERS LOCAL 408 PENSION FUND and TEAMSTERS LOCAL 863 GUARANTEED FUND, | : : : : : : : | Hon. Joel A. Pisano, U.S.D.J.  Civil Action No. 03-CV-1338(JAP)  **ORDER GRANTING UNDERWRITER DEFENDANTS' MOTION TO STAY PROCEEDINGS PENDING DETERMINATION OF THE MULTI-DISTRICT LITIGATION PANEL** |
| Plaintiffs, | : : : : | |
| v. | : : | |
| CITIGROUP, INC., et al., | : : | |
| Defendants. | : : | |

**ENTERED**
ON
THE DOCKET

APR 2 5 2003

WILLIAM T. WALSH, CLERK
By _____
(Deputy Clerk)

SENT BY Skadden Arps ... Case 2:08-cv-00326-DMC ... Document 18-5 Filed 02/06/2008 Page 2 of 3

This matter having been presented to the Court by the motion of Skadden, Arps, Slate, Meagher and Flom LLP, attorneys for defendants Salomon Smith Barney, Inc., J.P. Morgan Securities, Inc., Banc of America Securities LLC, ABN AMRO Incorporated, Deutsche Banc Alex. Brown, Inc. (n/k/a Deutsche Bank Securities, Inc.), Lehman Brothers Inc., Credit Suisse First Boston Corp., Goldman Sachs & Co., UBS Warburg LLC, and Nationsbanc Montgomery Securities LLC, for an Order Staying Proceedings Pending Determination of the Multi-District Litigation Panel, and the Court having considered the Certification of Robert J. Del Tufo in support thereof, the briefs and arguments of counsel, and all other matters presented to the Court, and finding that considerations of judicial economy provide good cause therefor,

IT IS on this 22<sup>d</sup> day of *April*, 2003,

ORDERED that defendants' Motion to Stay Proceedings Pending Determination of the Multi-District Litigation Panel is GRANTED, and it is further

ORDERED that all further proceedings herein are stayed until 30 days after the MDL Panel rules on the Underwriter Defendants request to transfer this action pursuant to 28 U.S.C. § 1407.

_____
HONORABLE JOEL A. PISANO, U.S.D.J.

2

# UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

**CHAMBERS OF**
**MADELINE COX ARLEO**
UNITED STATES MAGISTRATE JUDGE

MARTIN LUTHER KING COURTHOUSE
50 WALNUT ST.
ROOM 2060
NEWARK, NJ 07101
973-297-4903

May 12, 2005

Judson L. Hand, Esq.
Proskauer Rose LLP
One Newark Center
Newark, NJ 07102

Lisa J. Rodriguez, Esq.
Trujillo, Rodriguez & Richards, LLC
8 Kings Highway West
Haddonfield, NJ 08033

## <u>LETTER ORDER</u>

> **RE:** **Seegott Holdings, Inc. v. Bayer AG, et al.**
> **Civil Action No: 04-5850 (JAP)**

Dear Counsel,

Before this Court is Defendant's Motion to Stay the proceedings in this action until thirty (30) days after the Judicial Panel on Multi-District Litigation (the "MDL Panel") rules on Defendants' motions to transfer and to consolidate this case with one currently pending in Kansas. Plaintiff opposes the Motion. No oral argument was heard. FED. R. CIV. P. 78. Having considered the parties' submissions, and for the reasons set forth below, and for good cause shown, this Court finds that a stay of proceedings is warranted. Accordingly, Defendants' Motion to Stay is **GRANTED**.

The decision to stay proceedings is committed to the sound discretion of the Court. The Hertz Corp. v. The Gator Corp., 250 F. Supp. 2d 421, 426 (D.N.J. 2003). The Court's power to stay proceedings before it is a power incident to the power to schedule disposition of the cases on its docket "so as to promote fair and efficient adjudication." Id. at 424 (quoting U.S. v. Breyer, 41 F.3d 884, 893 (3d Cir. 1994)). To determine the appropriateness of a stay of proceedings, the Court balances the parties' competing interests. Id. at 426. Indeed, "the party seeking the stay must demonstrate 'a clear case of hardship or inequity, if there is even a fair possibility that the stay would work damage on another party.'" Id. at 424 (quoting Gold v. Johns-Manville Sales Corp., 723 F.2d 1068, 1075-76 (3d Cir. 1983)).

In the present case, the instant Motion to Stay comes on the heels of a motion to consolidate and to transfer this case to the District of Kansas. Plaintiff objects to the stay at this juncture

primarily because Defendants have yet to answer the Complaint, even though the time to answer has passed.[1]  Plaintiff contends that any further delay in the proceedings prejudices Plaintiff's right to an expeditious adjudication of its claims.  Plaintiff seeks to have Defendants answer the Complaint and to proceed with discovery in this matter until such a time that the MDL Panel determines the transfer request.  On the other hand, Defendants argue that since this case is in its infancy, and since the MDL Panel will most likely hear the transfer motion within the next several weeks, a temporary stay of proceedings serves the dual considerations of judicial economy and efficiency.

In Hertz, defendant, The Gator Corp. ("TGC"), moved for a temporary stay while the MDL Panel decided a motion to consolidate several cases with issues in common.  Id. at 422.  The District Court determined that there was "at least a possibility that a temporary stay [would] harm Hertz." Id. at 426.  Balancing the parties' interests, however, the Court ultimately concluded that clear hardships existed to support TGC's request to stay.  Those hardships included the heavy financial burden on TGC to defend itself in multiple fora, the pendency of the MDL Panel's decision on the consolidation motion, and the early phase of the litigation instituted against TGC by Hertz.  Id. at 427.

Likewise, this Court finds that there is at least a possibility that further delay of this litigation would harm Plaintiff.  However, that harm must be balanced against the hardship or inequity to Defendants.  Here, as in Hertz, Defendants are also faced with the potential heavy burden of defending in multiple fora, the pendency of the MDL Panel's decision, and the fact that this case is in its inception.  Furthermore, refusing to stay the proceedings risks depriving Defendants of the "opportunity to obtain benefits of MDL Panel consolidation." Id.  Finally, this Court is mindful of its obligation to preserve scarce judicial resources.  Thus, the balance of interests favors a stay.

This Court finds little purpose in proceeding with discovery until the MDL Panel has had a chance rule. Accordingly, Defendants' Motion to Stay proceedings is **GRANTED**.  The stay shall expire thirty (30) days after the MDL Panel has issued its ruling.

     **SO ORDERED.**

<div style="text-align:right">

*s/Madeline Cox Arleo*      
**MADELINE COX ARLEO**
**United States Magistrate Judge**

</div>

cc:     Hon. Joel A. Pisano, U.S.D.J.
        Clerk
        All parties
        File

---

[1]The Complaint was filed on November 23, 2004.  After several extensions, the Court ordered Defendants to respond by April 22, 2005. On March 31, 2005, Defendants moved before the MDL Panel to transfer and consolidate this case in the District of Kansas, and on April 1, 2005 Defendants requested that the action be stayed in the interim.

## SUPREME COURT OF THE STATE OF NEW YORK
## COUNTY OF NEW YORK, COMMERCIAL DIVISION

| | | |
|---|---|---|
| OPERATIVE PLASTERERS & CEMENT MASONS LOCAL 262 PENSION AND ANNUITY FUNDS, Derivatively On Behalf of Nominal Defendant MERRILL LYNCH & CO., INC., | ) ) ) ) | **CASE NO.** |
| | ) | **SUMMONS** |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| E. STANLEY O'NEAL, AHMASS L. FAKAHANY, GREGORY J. FLEMING, JEFFREY N. EDWARDS, CAROL T. CHRIST, ARMANDO D. CODINA, VIRGIS W. COLBERT, ALBERTO CRIBIORE, JOHN D. FINNEGAN, JUDITH MAYHEW JONAS, JOSEPH W. PRUEHER, ANN N. REESE, CHARLES O ROSOTTI, | ) ) ) ) ) ) ) ) ) | |
| Defendants, | ) ) | 07603860 |
| and | ) ) | |
| MERRILL LYNCH & CO., INC., | ) ) | |
| Nominal Defendant. | ) ) | |

**TO THE ABOVE NAMED DEFENDANTS:**

YOU ARE HEREBY SUMMONED to answer the shareholder's derivative complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the plaintiffs' attorneys within twenty days after service of this summons, exclusive of the date of service (or within thirty days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

FILED
NOV 2 1 2007
NEW YORK
COUNTY CLERK'S OFFICE

Dated: November 21, 2007

THE BRUALDI LAW FIRM P.C.

_signature_

Richard B. Brualdi
Gaitri Boodhoo
Ayesha N. Onyekwelu
29 Broadway, Suite 2400
New York, New York 10006
Telephone: (212) 952-0602
Facsimile: (212) 952-0608

*Attorneys for Plaintiff*


SAXENA WHITE P.A.
Maya Saxena
Joseph E. White III
2424 North Federal Highway
Suite 257
Boca Raton, FL 33431
Tel: 561.394.3399
Fax: 561.394.3082

*Of Counsel*

## SUPREME COURT OF THE STATE OF NEW YORK
## COUNTY OF NEW YORK, COMMERCIAL DIVISION

| | |
|---|---|
| OPERATIVE PLASTERERS & CEMENT MASONS LOCAL 262 PENSION AND ANNUITY FUNDS, Derivatively On Behalf of Nominal Defendant MERRILL LYNCH & CO., INC., | ) CASE NO.<br>)<br>)<br>) VERIFIED SHAREHOLDER'S<br>) DERIVATIVE COMPLAINT |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| E. STANLEY O'NEAL, AHMASS L. FAKAHANY, GREGORY J. FLEMING, JEFFREY N. EDWARDS, CAROL T. CHRIST, ARMANDO D. CODINA, VIRGIS W. COLBERT, ALBERTO CRIBIORE, JOHN D. FINNEGAN, JUDITH MAYHEW JONAS, JOSEPH W. PRUEHER, ANN N. REESE, CHARLES O ROSOTTI, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants, | )  07603860 |
| and | ) |
| MERRILL LYNCH & CO., INC., | ) |
| Nominal Defendant. | ) |

## VERIFIED SHAREHOLDER'S DERIVATIVE COMPLAINT

Plaintiff Operative Plasterers & Cement Masons Local 262 Pension and Annuity Funds ("Plaintiff"), by and through its undersigned attorneys, brings this action derivatively on behalf of Merrill Lynch & Co., Inc. ("Merrill Lynch" or the "Company"), and alleges based upon personal knowledge as to allegations pertaining to Plaintiff, and as to all other matters upon information and belief, as follows:

## NATURE OF THE ACTION

1.      This is a shareholder's derivative action brought for the benefit of Nominal Defendant Merrill Lynch against certain members of the Company's Board of Directors (the

"Board") and certain of its executive officers seeking to remedy Defendants' violations of New York state law, including breaches of fiduciary duties owed to the Company, during the period February 26, 2007 through October 24, 2007 (the "Relevant Period").

2.      Merrill Lynch is a holding company that, through its subsidiaries and affiliates, provides investment, financing, advisory, insurance, banking, and related products and services on a global basis.  These services include securities brokerage, trading and underwriting, investment banking, asset management, private equity investment and insurance underwriting.

3.      Defendants' breaches of fiduciary duty arise out of a scheme and wrongful course of conduct whereby Defendants (i) caused Merrill Lynch to engage in unsound investment practices relating to the Company's position as the lead underwriter of billions of dollars of Collateralized Debt Offerings ("CDOs") secured by high-risk subprime mortgages; (ii) caused the Company to disseminate materially false and misleading statements during the Relevant Period, and omit material information necessary to make such statements not false and misleading, in order to artificially inflate the price of the Company's stock; and (iii) caused the Company to engage in such unsound lending practices so as to unjustly enrich themselves through substantial executive compensation packages tied to the Company's financial results and performance, including a retirement package of $160 million awarded to Defendant E. Stanley O'Neal ("O'Neal") at a time when many observers felt that Defendant O'Neal should have been fired.

4.      As a result of Defendants' unlawful course of conduct and breaches of fiduciary duty, Merrill Lynch has sustained substantial financial losses, including a massive write down of more than $8 billion in the value of the Company's CDOs and other investments, as well as a $2.2 billion loss for the Company in the third quarter of 2007, with more losses expected to come

in the fourth quarter of 2007. In addition, Merrill Lynch has sustained significant damages to its reputation and goodwill as a result of Defendants' breaches of their fiduciary duties.

5. Because a majority of Merrill Lynch's directors will not authorize a lawsuit against themselves, Plaintiff brings this action on behalf of Merrill Lynch to, among other things, recover damages caused by Defendants' unlawful course of conduct and breaches of fiduciary duty.

## JURISDICTION AND VENUE

6. This court has jurisdiction over defendants and the subject matter of this action because defendants transact business within this State, and derivative claims on behalf of corporations against their wayward directors and officers for breach of their fiduciary obligations owed to the corporation are governed exclusively by state law. In addition, Merrill Lynch maintains its main office and principal place of business in the State of New York.

7. This Court retains general jurisdiction over each named Defendant who is a resident of New York. Additionally, this Court has specific jurisdiction over each named non-resident Defendant because these Defendants maintain sufficient minimum contacts with New York to render jurisdiction by this Court permissible under traditional notions of fair play and substantial justice. Merrill Lynch is headquartered in New York, and because the allegations contained herein are brought derivatively on behalf of Merrill Lynch, Defendants' conduct was purposefully directed at New York. Finally, exercising jurisdiction over any non-resident Defendant is reasonable under these circumstances.

8. Venue is proper in this Court because, although Merrill Lynch is a Delaware corporation, one or more of the Defendants either resides in or maintains executive offices in this County, a substantial portion of the transactions and wrongs complained of herein, including the

3

Defendants' primary participation in the wrongful acts alleged herein, as well as the aiding and abetting and conspiracy of violations of fiduciary duties owed to Merrill Lynch, occurred in this County. In addition, Defendants have received substantial compensation in this County by doing business here and engaging in numerous activities that had an effect in this County, and the Company's Board almost always meets in this County.

## PARTIES

9.  Plaintiff Operative Plasterers & Cement Masons Local 262 Pension and Annuity Funds is, and at all relevant times was, a shareholder of nominal defendant Merrill Lynch.

10. Nominal defendant Merrill Lynch is incorporated under the laws of Delaware with its principal executive offices located at 250 Vesey Street, 4 World Financial Center, New York, New York 10080.

11. Defendant O'Neal, until his retirement from the Company on October 30, 2007, was a member of Merrill Lynch's Board of Directors since 2001, the Chairman of the Board since 2003, and the Chief Executive Officer since 2002. In addition, Defendant O'Neal also served as the Company's President and Chief Executive Officer since 2002. Defendant O'Neal is believed to be a citizen and a resident of New York.

12. Defendant Ahmass L. Fakahany ("Fakahany") is, and at all relevant times was, President and Chief Executive Officer of Merrill Lynch. Defendant Fakahany is believed to be a citizen and a resident of New York.

13. Defendant Gregory J. Fleming ("Fleming") is, and at all relevant times was, President and Chief Operating Officer of Merrill Lynch. Defendant Fleming is believed to be a citizen and a resident of New York.

4

14.     Defendant Jeffrey N. Edwards ("Edwards") is, and at all relevant times was, Senior Vice President and Chief Financial Officer of Merrill Lynch. Defendant Edwards is believed to be a citizen and a resident of New York.

15.     Defendants O'Neal, Fakahany, Fleming and Edwards are sometimes collectively referred to herein as the "Officer Defendants".

16.     Defendant Carol T. Christ ("Christ") has served as a director of the Company since 2007. Defendant Christ is believed to be a citizen and a resident of Massachusetts.

17.     Defendant Armando M. Codina ("Codina") has served as a director of the Company since 2005. Defendant Codina is believed to be a citizen and a resident of Florida.

18.     Defendant Virgis W. Colbert ("Colbert") has served as a director of the Company since 2006. Defendant Colbert is believed to be a citizen and a resident of Wisconsin.

19.     Defendant Alberto Cribiore ("Cribiore") has served as a director of the Company since 2003. Defendant Cribiore is believed to be a citizen and a resident of New York.

20.     Defendant John D. Finnegan ("Finnegan") has served as a director of the Company since 2004. Defendant Finnegan is believed to be a citizen and a resident of New Jersey.

21.     Defendant Judith Mayhew Jonas ("Jonas") has served as a director of the Company since 2006. Defendant Jonas is believed to be a citizen and a resident of the United Kingdom.

22.     Defendant Joseph W. Prueher ("Prueher") has served as a director of the Company since 2001. Defendant Prueher is believed to be a citizen and a resident of Virginia.

23.     Defendant Ann N. Reese ("Reese") has served as a director of the Company since 2004. Defendant Reese is believed to be a citizen and a resident of New York.

5

24.    Defendant Charles O. Rossotti ("Rossotti") has served as a director of the Company since 2004.    Defendant Rossotti is believed to be a citizen and a resident of Washington D.C.

25.    Defendants Christ, Codina, Colbert, Cribiore, Finnegan, Jonas, Prueher, Reese and Rossotti are sometimes collectively referred to herein as the "Director Defendants".

26.    The Officer Defendants and the Director Defendants are sometimes collectively referred to herein as the "Individual Defendants".

## DUTIES OF THE INDIVIDUAL DEFENDANTS

27.    Because of the Individual Defendants' positions with the Company, they had access to adverse undisclosed information about its business, operations, products, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

28.    Each of the Individual Defendants, by virtue of their positions as directors and/or officers of the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels and/or was privy to confidential proprietary information concerning the Company and its business, operations, products, growth, financial statements, and financial condition, as alleged herein.    Such Defendants were involved in drafting, producing, reviewing, disseminating, approving, ratifying and/or recklessly permitting the dissemination of the false and misleading statements and

6

information alleged herein. Defendants were aware or recklessly disregarded that false and misleading statements were being issued regarding the Company, and approved or ratified these statements. In addition, Defendants were in a position and had a duty to implement procedures and controls to prevent the false and misleading statements as well as the Company's violations of New York state law as alleged herein, but completely abdicated their oversight responsibilities to the Company by failing to do so.

29.     As further alleged herein, Merrill Lynch's current Board of Directors is unable to make an impartial determination as to whether to institute legal proceedings to redress the wrongful conduct alleged herein because there is a substantial likelihood that a majority of its members would be found liable for non-exculpated breaches of their fiduciary duties to the Company and shareholders by participating or acquiescing in the wrongdoing alleged herein and/or completely failing to perform their oversight duties to the Company, and through their systematic failure to assure that a reasonable information and reporting system existed.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

30.     In committing the wrongful acts complained of herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their common plan or design. In addition to the wrongful conduct herein alleged as giving rise to primary liability, the Individual Defendants further aided and abetted and/or assisted each other in breaching their respective fiduciary duties.

31.     During all times relevant hereto, the Individual Defendants collectively and individually initiated a course of conduct that was designed to and did: (i) conceal the fact that the Company was disseminating materially misleading statements and omissions during the

Relevant Period; (ii) maintain the Individual Defendants' directorial and/or executive positions at Merrill Lynch and the profits, power and prestige that the Individual Defendants enjoyed as a result of these positions; and (iii) deceive the investing public, including shareholders of Merrill Lynch, regarding the Individual Defendants' management of Merrill Lynch's operations, the Company's financial health and stability, and the Company's future business prospects. In furtherance of this plan, the Individual Defendants collectively and individually took the actions set forth herein.

32.     The Individual Defendants engaged in a conspiracy, common enterprise and/or common course of conduct during the Relevant Period. During this time, the Individual Defendants caused the Company to conceal its misrepresentation of its true business prospects. In addition, Defendants also made other specific, improper and misleading statements about Merrill Lynch's financial performance and future business prospects, as further alleged herein.

33.     The purpose and effect of the Individual Defendants' conspiracy, common enterprise and/or common course of conduct was, among other things, to disguise the Individual Defendants' violations of New York state law, breaches of fiduciary duty, waste of corporate assets and abuse of control; to conceal material adverse information concerning the Company's operations, financial condition and future business prospects; and to artificially inflate the price of Merrill Lynch common stock in order to profit from and protect their positions as directors and/or executives of the Company and the benefits they obtained as a result.

34.     The Individual Defendants accomplished their conspiracy, common enterprise and/or common course of conduct by causing the Company to purposefully, recklessly or negligently misrepresent its business prospects and financial results. Because the actions complained of herein occurred under the authority of the Board, each of the Individual

Defendants was a direct, necessary and substantial participant in the conspiracy, common enterprise and/or common course of conduct alleged herein.

35.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein.  In taking such actions to substantially assist the commission of the wrongdoing alleged herein, each of the Individual Defendants acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

## SUBSTANTIVE ALLEGATIONS

### Background

36.     Merrill Lynch, together with its subsidiaries, provides broker-dealer, investment banking, financing, wealth management, advisory, asset management, insurance, lending, and related products and services worldwide.   The Company's Institutional Business segment provides equity, debt, and commodities trading, capital market services, investment banking, and advisory services to corporations, financial institutions, governments, and institutional investors. This segment also provides clients with financing, securities clearing, settlement, and custody services, and engages in principal and private equity investing.  In addition, Merrill Lynch offers underwritings and private placements of equity, debt, and related securities, lending and other financing activities, and advisory services to clients on strategic issues, valuation, mergers, acquisitions, and restructurings.

37.     The Company's Retail Wealth Management segment provides brokerage, investment advisory, and financial planning services.  This segment also offers commission and fee-based investment accounts, banking, cash management, and credit services, trust and

generational planning, retirement services, and insurance products to individuals, small-to mid-size businesses, and employee benefit plans. Merrill Lynch also provides various research services through its Global Securities Research & Economics Group. This group distributes research focusing on fundamental equity research, fixed income and equity-linked research, economics and foreign exchange research, and investment strategy research.

38. Merrill Lynch has operations primarily in the United States, Canada, Europe, the Middle East, Africa, the Pacific Rim, and Latin America. The Company was founded in 1820 and is headquartered in New York, New York.

39. In the years leading up to the Relevant Period, Merrill Lynch underwent a transformation in which the Company focused on fiscal discipline and cutting costs. In order to effectuate these changes, Defendant O'Neal, after assuming his position as Chief Executive Officer of the Company in 2002, led the Company to substantially cut back its fixed-income business and expand significantly into riskier CDOs for the lucrative fees these investments generated. Generally, CDOs are investment vehicles that buy securities backed by, among other things, mortgages, auto loans, and corporate bonds. Although this shift led to increased short-term revenue for Merrill Lynch, it also exposed the Company to substantial risk since a significant portion of Merrill Lynch's CDOs were backed by high-risk subprime mortgages.

40. O'Neal was successful in his campaign to shift the business strategy of Merrill Lynch as, one year after taking the reins of the Company, Merrill Lynch became the largest underwriter of CDOs in the world. Indeed, the Company soared from 15th place among the rankings of CDO underwriters in 2002, with just over $2 billion in CDO deals, to the No. 1 spot in 2004 with $19 billion. By 2005, the Company was underwriting $35 billion, of which $14 billion was backed by high-risk subprime mortgages. This trend continued well into 2006 and

mid-2007, as Merrill Lynch earned over $800 million in underwriting fees from CDO transactions worth $93 billion.

41.     Although the Company was earning lucrative fees on its CDO deals, Merrill Lynch's continued push in CDO investments exposed the Company to major risk of lower earnings amidst warnings from analysts that Companies with substantial subprime exposure could face significant financial problems should the subprime market collapse. However, since the Officer Defendants' compensation was tied to the Company's financial performance, the Company ignored these warnings at a time when most brokerage firms were decreasing their CDO investments and their subprime exposure.

42.     Merrill Lynch's top officers, including Defendant O'Neal, were well aware of the problems with CDOs in the Company's portfolio. Analysts and subordinates within the Company were advising O'Neal that CDOs were being downgraded as signs of trouble in the housing market abounded. Despite these warnings, Defendant O'Neal and the other Officer Defendants continued to push forward with the high-risk business strategy in order to boost the Company's earnings and increase their substantial executive compensation. For instance, the Officer Defendants collected the following compensation packages in 2006:

|  | Salary | Bonus | Stock Awards | Option Awards | Deferred Comp | Other | Total |
|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |
| O'Neal | $700,000 | $18,500,000 | $66,780,100 | $3,070,531 | $1,949,455 | $375,298 | $91,375,384 |
| Edwards | 270,833 | 5,625,000 | 21,974,472 | 366,577 |  | 14,719 | 28,251,601 |
| Fleming | 350,000 | 13,250,000 | 19,526,191 |  | 165,375 | 119,875 | 33,411,441 |
| Fakahany | 350,000 | 11,650,000 | 38,190,936 | 560,378 |  | 102,834 | 50,854,148 |

43.     When the predictions of a collapse in the housing market came to fruition, Merrill Lynch became one of the largest casualties. By June 2007, the Company held $32 billion worth of CDOs, which it was trying desperately to unload. However, Merrill Lynch was able to sell

only a little more than half of its holdings, and by the end of the third quarter of 2007 the Company was still holding $15 billion in CDO investments.

## False and Misleading Statements During the Relevant Period

44.     During the Relevant Period, the Individual Defendants caused or allowed the Company to issue materially false and misleading statements, and omitted to disclose information necessary to make such statements not false and misleading.

45.     For instance, on February 26, 2007, the Company filed its Form 10-K for fiscal year 2006, which included results for the fourth quarter and full year 2006, and included the same financial results as previously reported.  The Form 10-K stated in pertinent part as follows:

> During 2006, our GMI business generated record-setting financial performance by continuing to serve clients well, take measured principal risk and execute on a variety of key growth initiatives around the world. Every major GMI business produced revenue growth over 2005 against a market backdrop that was favorable for most of the year. Across all businesses, GMI had a net increase of more than 200 managing directors and directors and 280 vice presidents to its headcount.

> In FICC, we continued to broaden the scope of the commodities trading business in terms of product, geography, and linkage to the broader client franchise, including trading in oil and metals and geographically in the Pacific Rim. We also enhanced our structured finance business with three strategic transactions in the U.S., United Kingdom and South Korea that we expect to provide additional sources of origination and servicing for our non-prime mortgage-backed securitization and trading platform. We also made progress in key investment areas including both interest rate and credit derivatives, principal investing/real estate, and foreign exchange.

> Within FICC, on September 5, 2006, we announced an agreement to acquire the First Franklin mortgage origination franchise and related servicing platform from National City Corporation. We expect First Franklin to accelerate our vertical integration in mortgages, adding scale to our mortgage securitization and trading platform. This acquisition was completed on December 30, 2006, the first day of our 2007 fiscal year.

> In Equity Markets, we continued to enhance our leading cash equity trading platform by adding to our portfolio and electronic trading capabilities through additional investments in personnel and technology, as well as additional acquisitions, partnerships and investments. We also made progress in our equity-

12

linked trading business, another key area of investment which increased its revenues more than 50% in 2006. Our equity financing and services business, which includes prime brokerage, set a revenue record in 2006 and continued to gain scale as we further expanded our relationships with hedge funds. The strategic risk group, our distinct proprietary trading business, also generated record revenues, benefiting from continued investments in personnel and infrastructure that provided the capabilities to take more risk when market opportunities arose. We also continued to generate increased revenues and make significant new investments in our private equity business.

46.     On April 19, 2007, Merrill Lynch issued its financial results for the first quarter of

2007. The press release announcing the financial results stated in pertinent part as follows:

Merrill Lynch (**NYSE: MER**) today reported strong growth in net earnings and earnings per diluted share for the first quarter of 2007, driven by net revenues of $9.9 billion. Net revenues were up 24 percent from the prior-year period and up 14 percent from the fourth quarter of 2006, with increases both year over year and sequentially in both Global Markets & Investment Banking (GMI) and Global Wealth Management (GWM), and in all global regions. These are the second-highest quarterly net revenues Merrill Lynch has ever generated, only $51 million lower than in the third quarter of 2006, when net revenues included a $2.0 billion one-time, pretax gain arising from the merger of Merrill Lynch Investment Managers (MLIM) with BlackRock, Inc. (NYSE: BLK).

First-quarter 2007 net earnings per diluted share were $2.26, up 414 percent from 44 cents for the first quarter of 2006, or 37 percent on an operating basis, which excludes $1.2 billion, after taxes, of one-time compensation expenses from the 2006 first quarter. Net earnings per diluted share were down 6 percent from $2.41 for the fourth quarter of 2006. First-quarter 2007 net earnings were $2.2 billion, up 354 percent from the first quarter of 2006, or up 31 percent excluding the one-time expenses in the prior-year period. Net earnings were down 8 percent from the fourth quarter of 2006, which included a lower compensation expense ratio. The pretax profit margin for the first quarter of 2007 was 31.4 percent, and the annualized return on average common equity was 23.3 percent. At the end of the first quarter, book value per share was $41.95, up 13 percent from the end of the first quarter of 2006 and 1 percent from the end of 2006.

"This was a terrific quarter. In an environment which was volatile at times, we took full advantage of market opportunities and delivered value to our clients and our shareholders," said Stan O'Neal, chairman and chief executive officer. "Our product capabilities and geographic reach are stronger and broader now than at any point in our history, and we continue to make investments to further enhance our franchise. We remain focused on disciplined growth to capitalize on the positive secular trends we continue to see unfold."

**Business Segment Review:**

In the first quarter of 2006, Merrill Lynch recorded $1.8 billion, before taxes ($1.2 billion after taxes), in one-time compensation expenses. These expenses were recorded in the business segments as follows: $1.4 billion to Global Markets & Investment Banking, $281 million to Global Wealth Management and $109 million to Merrill Lynch Investment Managers (which ceased to exist as a business segment upon its merger with BlackRock). Comparisons to that period in the following discussion of business segment results exclude the impact of these one-time expenses. A reconciliation of these segment results appears on Attachment III to this release.

**Global Markets & Investment Banking (GMI)**

GMI generated record revenues, both over all and in each of its three major business lines, for the first quarter of 2007, as the business continued to execute on targeted organic and inorganic investments for diversification and profitable growth, executed with strong operating discipline in a favorable market environment. Non-U.S. revenues, which continue to comprise more than half of GMI's total net revenues, grew significantly faster than U.S. revenues in the period.

- GMI's first-quarter 2007 net revenues were a record $6.5 billion, up 43 percent from the year-ago quarter. Compared with the first quarter of 2006, net revenues increased in all three major business lines:

  - Fixed Income, Currencies and Commodities (FICC) net revenues increased 36 percent to a record $2.8 billion driven by nearly every major revenue category, as revenues from credit products, real estate, interest rate products and currencies grew to record levels. Revenues from trading commodities also increased significantly. Revenues from mortgage-related activities declined, resulting from a difficult environment for the origination, securitization and trading of non-prime mortgage loans and securities in the U.S. Revenues from activities related to U.S. non-prime mortgages, in aggregate, comprised less than 1 percent of Merrill Lynch's total net revenues over the past five quarters.

  - Equity Markets net revenues increased 50 percent to a record $2.4 billion, driven by every major business line, including a strong increase from private equity and record revenues from both the equity-linked and proprietary trading businesses.

  - Investment Banking net revenues increased 47 percent to a record $1.4 billion, as record revenues in debt origination were

14

complemented by strong growth in revenues from both merger and acquisition advisory services and equity origination.

- Pretax earnings for GMI were $2.3 billion, up 48 percent from the year-ago quarter, driven by the strong revenue growth. The first-quarter 2007 pretax profit margin was 35.8 percent, up from 34.7 percent in the prior-year period.

## Global Wealth Management (GWM)

GWM generated strong revenue and pretax earnings growth in the first quarter of 2007. The growth was driven by Global Private Client (GPC), which increased its net revenues year over year for the 10th consecutive quarter, as well as by the contribution of Global Investment Management (GIM), including earnings from Merrill Lynch's investment in BlackRock. GPC continues to focus on delivering a superior product and service offering, positioning Merrill Lynch financial advisors (FAs) as essential partners to their clients. GPC also continues to invest in technology to further enhance both the efficiency and effectiveness of the FA force, and to invest in growing the FA census globally.

- GWM's first-quarter 2007 net revenues were $3.4 billion, up 16 percent from the first quarter of 2006:

  - GPC's net revenues increased 11 percent to $3.1 billion, driven by every major revenue category, including record fee-based revenues, which reflected higher asset values and net flows into annuitized-revenue products. Transaction and origination revenues also increased, driven by new issue origination activity, and net interest revenues grew to a new record level.

  - GIM's net revenues increased 151 percent to $261 million, due primarily to revenues from Merrill Lynch's investment in BlackRock, which began to contribute to revenues during the 2006 fourth quarter, as well as increases in revenues from Merrill Lynch's ownership positions in other investment management companies and the business that creates alternative investment products for GPC clients.

- Pretax earnings for GWM in the first quarter of 2007 were $842 million, up 31 percent from the first quarter of 2006, driven by the growth in revenues. The pretax profit margin was 24.7 percent, up from 21.9 percent in the prior-year period, driven by the impact of the investment in BlackRock.

15

- Turnover among FAs, especially top-producing FAs, remained low. FA headcount reached 15,930 at quarter-end, as GPC continued to exercise discipline in recruiting and training high-quality FAs.

- Client assets in products that generate annuitized revenues ended the quarter at $633 billion, up 13 percent from the first quarter of 2006, and total client assets in GWM accounts were a record $1.6 trillion, up 10 percent. Net inflows of client assets into annuitized-revenue products were $16 billion for the first quarter, and total net new money was $16 billion.

- On January 29, 2007, Merrill Lynch announced that it had reached a definitive agreement to acquire First Republic Bank (NYSE: FRC), a private banking and wealth management firm focused on high-net-worth individuals and their businesses, for approximately $1.8 billion in cash and stock.

47.     Following the Company's announcement regarding its financial results for fiscal 2006, Merrill Lynch's stock traded above $90 at the end of April.

48.     In June 2007, Defendant O'Neal attended a conference in London where he stated that problems in the subprime area were "reasonably well contained", and that there "have been no clear signs it's spilling over into other subsets of the bond market, the fix-income market and the credit market."

49.     On July 17, 2007, the Company issued a press release announcing its financial results for the second quarter of 2007.  The press release stated in pertinent part as follows:

Merrill Lynch (**NYSE: MER**) today reported very strong net revenues, net earnings and earnings per diluted share for the second quarter of 2007, which enabled the company to achieve record net revenues, net earnings and net earnings per diluted share for the first half of 2007.

Second-quarter 2007 total net revenues of $9.7 billion increased 19 percent from $8.2 billion in the prior-year period and were down 1 percent from $9.9 billion in the first quarter of 2007. Year-over-year, strong revenue growth in both Global Markets & Investment Banking (GMI) and Global Wealth Management (GWM), as well as across all global regions, drove the increase. These are the highest net revenues Merrill Lynch has ever generated in a fiscal second quarter and the second highest the firm has generated for any quarterly period on an operating basis, excluding from the comparison the $2.0 billion one-time, pretax gain that

arose from the merger of Merrill Lynch Investment Managers with BlackRock, Inc. (NYSE: BLK) in the third quarter of 2006.

Second-quarter 2007 net earnings per diluted share were $2.24, up 37 percent from $1.63 in the second quarter of 2006 and down less than 1 percent from $2.26 for the first quarter of 2007. Net earnings were $2.1 billion, up 31 percent from the second quarter of 2006 and down 1 percent from the first quarter of 2007. The pretax profit margin for the second quarter of 2007 was 31.1 percent, up 2.4 percentage points from the prior-year period, and the annualized return on average common equity was 22.4 percent, up 3.8 points. At the end of the second quarter, book value per share was $43.55, up 17 percent from the end of the second quarter of 2006.

"We delivered another strong quarter in a volatile and, at times, hostile market environment," said **Stan O'Neal**, chairman and chief executive officer of Merrill Lynch. "These results reflect our revenue diversification, which makes possible strong performance despite uneven market conditions. Our focus on business and revenue growth, expense discipline and global expansion continues to enhance the earnings power of our franchise."

Net revenues for the first six months of 2007 set a record, at $19.6 billion, up 21 percent from $16.1 billion in the first half of 2006. Record net earnings per diluted share of $4.50 were up 117 percent from $2.07 in the prior-year period, while net earnings of $4.3 billion were up 104 percent. Results for the first six months of 2006 included $1.2 billion, after taxes, of one-time compensation expenses incurred in the first quarter of that period. Excluding those expenses, net earnings per diluted share were up 37 percent from the prior-year period, while net earnings were up 31 percent. The first-half pretax profit margin was 31.2 percent, up 13 percentage points from the first half of 2006, or 2.1 percentage points excluding the one-time expenses. The annualized return on average common equity was 22.8 percent, up 10.9 percentage points from the first six months of 2006, or 3.8 points excluding the one-time expenses.

**Business Segment Review:**

In the first quarter of 2006, Merrill Lynch recorded $1.8 billion, before taxes ($1.2 billion after taxes), in one-time compensation expenses. These expenses were recorded in the business segments as follows: $1.4 billion to Global Markets & Investment Banking, $281 million to Global Wealth Management and $109 million to Merrill Lynch Investment Managers (which ceased to exist as a business segment upon its merger with BlackRock). Comparisons to first-half 2006 results in the following discussion of business segment results exclude the impact of these one-time expenses. A reconciliation of these segment results appears on Attachment IV to this release.

**Global Markets & Investment Banking (GMI)**

- GMI's second-quarter 2007 net revenues were $6.2 billion, up 36 percent from the second quarter of 2006, as net revenues increased in all three major business lines:

  - Fixed Income, Currencies and Commodities (FICC) net revenues increased 55 percent to $2.6 billion, driven primarily by strong growth in net revenues from trading credit products, interest rate products and commodities, partially offset by a decline in net revenues from the structured finance and investments business, which includes mortgage-related activities. For the first six months of 2007, FICC generated a record $5.4 billion in net revenues, up 45 percent from 2006, reflecting increased diversity and depth across asset classes.

  - Equity Markets net revenues increased 15 percent to $2.1 billion, driven by nearly every major business line. Revenues from equity-linked trading, cash trading, financing and services, and proprietary trading all increased strongly over the prior-year quarter, while revenues from the firm's private equity business were meaningfully lower. For the first half of 2007, net revenues were a record $4.5 billion, up 31 percent from the prior-year period.

  - Investment Banking net revenues increased to a record level for the third consecutive quarter, up 41 percent to $1.4 billion, as record revenues in equity origination were complemented by strong growth in revenues from both merger and acquisition advisory services and debt origination. Investment Banking net revenues for the first six months of 2007 were $2.8 billion, up 44 percent from the 2006 period, reflecting the tremendous momentum in Merrill Lynch's global origination franchise.

  Second-quarter 2007 pretax earnings for GMI were $2.1 billion, up 43 percent from the year-ago quarter, driven by the strong revenue growth and continued focus on expenses. The pretax profit margin was 34.0 percent, up from 32.1 percent in the prior-year period.

- GMI's net revenues for the first six months of 2007 were a record $12.7 billion, up 39 percent from the first half of 2006, driven by record revenues in nearly every major line of business. Pretax earnings were $4.4 billion, up 46 percent from the prior-year period. The pretax profit margin was 34.9 percent, compared with 33.4 percent in the first half of 2006.

**Global Wealth Management (GWM)**

GWM generated record revenues and pretax earnings for both the second quarter and first half of 2007, driven by Global Private Client (GPC), as well as by the contribution of Global Investment Management (GIM), which includes earnings from Merrill Lynch's investment in BlackRock.

- GWM's second-quarter 2007 net revenues were $3.6 billion, up 18 percent from the second quarter of 2006:

    - GPC's net revenues increased 13 percent to $3.3 billion, driven by every major revenue category, including record fee-based revenues, which reflected higher asset values and net flows into annuitized-revenue products, as well as strong transaction and origination revenues. Net interest revenues also increased. For the first six months of 2007, GPC's net revenues increased 12 percent over the prior-year period to a record $6.5 billion.

    - GIM's net revenues increased 119 percent to $305 million, due primarily to revenues from Merrill Lynch's investment in BlackRock, which began to contribute to revenues during the 2006 fourth quarter, as well as increases in revenues from Merrill Lynch's ownership positions in other investment management companies and the business that creates alternative investment products for GPC clients. GIM's net revenues for the first half of 2007 were a record $566 million, up 133 percent from the 2006 first half.

    Second-quarter 2007 pretax earnings were $1.0 billion, up 39 percent from the second quarter of 2006, driven by the growth in revenues. The pretax profit margin was 27.9 percent, up from 23.7 percent in the prior-year period, driven by the impact of the investment in BlackRock and continued discipline in managing expenses.

- Turnover among financial advisors remained near historical lows, particularly among top-producing FAs. FA headcount reached 16,200 at quarter-end, reflecting an increase of 270 FAs for the quarter, as GPC continued to successfully execute its strategy for recruiting and training high-quality FAs.

- Client assets in products that generate annuitized revenues ended the quarter at $668 billion, up 19 percent from the second quarter of 2006, and total client assets in GWM accounts were a record $1.7 trillion, up 14 percent. Net inflows of client assets into annuitized-revenue products were $12 billion for the second quarter, and total net new money was $9 billion, reflecting the impact of client income-tax payments.

- For the first six months of 2007, GWM's net revenues increased 17 percent, to a record $7.0 billion, driven by the record revenues in both GPC and GIM. Pretax earnings increased 35 percent to $1.9 billion, demonstrating the continued operating leverage in this business. GWM's year-to-date pretax profit margin was 26.4 percent, up 3.6 percentage points from 22.8 percent in the first half of 2006.

### Merrill Lynch Investment Managers (MLIM)

On September 29, 2006, Merrill Lynch merged MLIM with BlackRock in exchange for a total of 65 million common and preferred shares representing an economic interest of approximately half of the newly combined BlackRock. Following the merger, the MLIM business segment ceased to exist, and under the equity method of accounting, an estimate of the net earnings associated with Merrill Lynch's ownership position in BlackRock is recorded in the GIM portion of the GWM segment. For the second quarter of 2006, MLIM's net revenues were $630 million, and its pretax earnings were $240 million. For the first six months of 2006, MLIM's net revenues were $1.2 billion and its pretax earnings were $462 million.

* * *

### Income Taxes

Merrill Lynch's second-quarter effective tax rate was 29.2 percent, compared with 30.5 percent for the second quarter of 2006. The effective tax rate for the first six months of 2007 was 29.8 percent, compared with 28.3 percent in the prior-year period, or 30.1 percent excluding the one-time compensation expenses.

### Share Repurchases

As part of its active management of equity capital, Merrill Lynch repurchased 19.8 million shares of its common stock for $1.8 billion during the second quarter of 2007, completing the $5 billion repurchase program authorized in October 2006 and utilizing $557 million of the $6 billion repurchase program authorized in April 2007.

50. During July of 2007, the problems in the housing market, coupled with a burgeoning credit crisis, led to significant declines in the stock prices of many financial institutions. However, Merrill Lynch's stock, while declining, remained at artificially inflated levels due to the false and misleading statements and financial results issued and publicly disseminated by the Individual Defendants during the Relevant Period.

51.   Merrill Lynch's statements during the Relevant Period were materially false and misleading because they failed to disclose and misrepresented the following material, adverse information:

a.   That the Company was more exposed to CDOs backed by high-risk subprime debt than it publicly disclosed; and

b.   That the Defendants' failed to inform the market of the extent of likely write downs in the Company's CDO portfolio due to the deteriorating subprime mortgage market, which caused Merrill Lynch's portfolio to be impaired.

52.   The Individual Defendants had actual knowledge of the foregoing material, adverse non-public information concerning the Company during the Relevant Period.  The Individual Defendants also knew, consciously disregarded, were reckless and grossly negligent in not knowing, or should have known that the Company's statements during the Relevant Period were false and materially misleading because of Defendants' failure to disclose the foregoing material, adverse information concerning Merrill Lynch's financial predicament and the true state of its business prospects.

**The Truth Is Revealed**

53.   On October 5, 2007, Merrill Lynch announced that it would write down the value of its CDO portfolio by $4.5 billion, and estimated that it would lose as much as 50 cents per share.  Although the news was surprising in that most analysts expected a profit for the Company of around $2 a share, other banks were announcing similar mortgage-related charges in the third quarter of 2007.

54.   Defendant O'Neal, commenting on the announcement, stated that "[d]espite solid underlying performances in most of our businesses in the third quarter, the impact of this

difficult market was much more severe in certain of our FICC [fixed income, currencies and commodities] business than we expected earlier in the quarter."

55.     However, on October 24, 2007, prior to the market opening, Merrill Lynch issued a press release announcing that the Company would take a third-quarter charge of $8 billion instead of $5 billion. The write down amounted to about one-eighth of the total value of the Company at the end of the quarter. In addition to a $463 million write down on leverage-buyout commitments, the Company's total write downs for the third quarter of 2007 would be over $8.3 billion. Merrill Lynch also announced a loss of $2.2 billion, or $2.85 per share, for the quarter – the biggest quarterly loss in its 93-year history. The loss was nearly six times the size of the loss that the Company had forecasted just three weeks earlier. The press release stated in pertinent part as follows:

> Merrill Lynch (**NYSE: MER**) today reported a net loss from continuing operations for the third quarter of $2.3 billion, or $2.85 per diluted share, significantly below net earnings of $2.22 per diluted share for the second quarter of 2007 and $3.14 for the third quarter of 2006. Third-quarter 2006 net earnings per diluted share, excluding the impact of the one-time, after-tax net benefit of $1.1 billion ($1.8 billion pretax) related to the merger of Merrill Lynch Investment Managers (MLIM) and BlackRock (NYSE: BLK), were $1.97. Third-quarter 2007 results reflect significant net write-downs and losses attributable to Merrill Lynch's Fixed Income, Currencies & Commodities (FICC) business, including write-downs of $7.9 billion across CDOs and U.S. subprime mortgages, which are significantly greater than the incremental $4.5 billion write-down Merrill Lynch disclosed at the time of its earnings pre-release. These write-downs and losses were partially offset by strong revenues in Global Wealth Management (GWM), Equity Markets and Investment Banking, particularly in regions outside of the U.S. The results described above and herein, exclude Merrill Lynch Insurance Group (MLIG), which is reported under discontinued operations.

> Third-quarter 2007 total net revenues of $577 million decreased 94 percent from $9.8 billion in the prior-year period and were down 94 percent from $9.7 billion in the second quarter of 2007. Merrill Lynch's third-quarter 2007 pretax net loss was $3.5 billion. At the end of the third quarter, book value per share was $39.75, down slightly from the end of the third quarter of 2006.

"Mortgage and leveraged finance-related write-downs in our FICC business depressed our financial performance for the quarter. In light of difficult credit markets and additional analysis by management during our quarter-end closing process, we re-examined our remaining CDO positions with more conservative assumptions. The result is a larger write-down of these assets than initially anticipated," said **Stan O'Neal**, chairman and chief executive officer. "We expect market conditions for subprime mortgage-related assets to continue to be uncertain and we are working to resolve the remaining impact from our positions," Mr. O'Neal continued. "Away from the mortgage-related areas, we continue to believe that secular trends in the global economy are favorable and that our businesses can perform well, as they have all year."

Net revenues for the first nine months of 2007 were $20.0 billion, down 23 percent from $25.8 billion in the comparable 2006 period. Net earnings per diluted share of $1.94 were down 62 percent from $5.12 in the prior-year period, and net earnings of $2.0 billion were down 61 percent. Results for the first nine months of 2006 included $1.2 billion of one-time, after-tax compensation expenses ($1.8 billion pretax) related to the adoption of Statement of Financial Accounting Standards No. 123R ("one-time compensation expenses") incurred in the first quarter of 2006, as well as the net benefit associated with the MLIM merger. Excluding these one-time items, net revenues for the first nine months of 2007 were down 16 percent, net earnings per diluted share were down 63 percent and net earnings were down 62 percent from the prior-year period. The pretax profit margin for the first nine months was 12.8 percent, down 14.2 percentage points from the comparable 2006 period, or down 16.3 percentage points excluding the one-time items. The annualized return on average common equity was 6.5 percent, down 13.0 percentage points from the first nine months of 2006, or down 13.4 percentage points excluding the one-time items.

**Business Segment Review:**

In the first quarter of 2006, Merrill Lynch recorded the one-time compensation expenses (pretax) in the business segments as follows: $1.4 billion to Global Markets and Investment Banking, $281 million to Global Wealth Management and $109 million to Merrill Lynch Investment Managers (which ceased to exist as a business segment upon its merger with BlackRock). The one-time net benefit associated with the MLIM merger was recorded in the Corporate Segment. Comparisons to results from the third quarter and first nine months of 2006 in the following discussion of business segment results exclude the impact of these one-time items. A reconciliation of these segment results appears on Attachment V to this release.

**Global Markets & Investment Banking (GMI)**

GMI recorded negative net revenues and a pretax loss for the third quarter of 2007 of $3.0 billion and $4.4 billion, respectively, as strong net revenues from Equity

Markets and Investment Banking were more than offset by the net losses in FICC. GMI's third quarter net revenues also included a net benefit of approximately $600 million due to the impact of the widening of Merrill Lynch's credit spreads on the carrying value of certain long-term debt liabilities.

- Third-quarter and year-to-date 2007 net revenues from GMI's three major business lines were as follows:

  - FICC net revenues were negative $5.6 billion for the quarter, impacted primarily by losses across CDOs and U.S. subprime mortgages. These positions consist of CDO trading positions and warehouses, as well as U.S. subprime mortgage related whole loans, warehouse lending, residual positions and residential mortgage backed securities. See below for details.

<div align="center">* * *</div>

*Third-quarter write-downs of $7.9 billion across CDOs and U.S. subprime mortgages are significantly greater than the incremental $4.5 billion write-downs Merrill Lynch disclosed at the time of its earnings pre-release. This is due to additional analysis and price verification completed as part of the quarter-end closing process, including the use of more conservative loss assumptions in valuing the underlying collateral.*

FICC net revenues were also impacted by write-downs of $967 million on a gross basis, and $463 million net of related fees, related to all corporate and financial sponsor, non-investment grade lending commitments, regardless of the expected timing of funding or closing. These commitments totaled approximately $31 billion at the end of the third quarter of 2007, a net reduction of 42 percent from $53 billion at the end of the second quarter. The net losses related to these commitments were limited through aggressive and effective risk management, including disciplined and selective underwriting and exposure reductions through syndication, sales and transaction restructurings.

Other FICC businesses reported strong results with record net revenues in interest rates and currencies and solid results in commodities and commercial real estate.

For the first nine months of 2007, FICC net revenues were negative $153 million as strength in interest rate products, currencies and commercial real estate was more than offset by declines in credit products and the structured finance and investments business.

- Equity Markets net revenues increased 4 percent from the prior-year quarter to $1.6 billion, driven by substantial growth in client volumes. Revenues from cash trading, equity-linked trading, and financing and services were significantly higher compared to the prior-year period, while revenues declined in the Strategic Risk Group and the private equity business. Excluding the private equity business, net revenues for the remaining Equity Markets businesses increased 40 percent from the 2006 third quarter. For the first nine months of 2007, Equity Markets net revenues were a record $6.1 billion, up 23 percent from the prior-year period, driven by strength in cash equities, equity-linked and the financing and services businesses.

- Investment Banking generated record net revenues for a fiscal third quarter, up 23 percent from the prior-year period to $1.0 billion. Revenues were driven by growth in both merger and acquisition advisory services and equity origination, partially offset by declines in debt origination. Investment Banking net revenues for the first nine months of 2007 were a record $3.8 billion, up 38 percent from the 2006 period, reflecting the momentum in Merrill Lynch's global origination franchise. Compared with the first nine months of 2006, significant increases in acquisition advisory services, equity and debt origination, more than offset a decline in leveraged finance origination revenues.

- The third-quarter 2007 pretax net loss for GMI was $4.4 billion compared with $1.5 billion of pretax earnings in the prior-year period.

- GMI's net revenues for the first nine months of 2007 were $9.7 billion, down 28 percent from the record prior-year period. Pretax earnings were $6 million, down from $4.5 billion in the prior-year period.

56.     Immediately after Merrill Lynch released this adverse information, the Company's shares dropped from $67.12 per share to an intra-day low of $61.40 per share, closing at $63.22 per share on volume of 52 million shares.

57.     During a conference call on October 24, 2007 regarding the announcement, Defendant O'Neal stated that he was "not going to talk around the fact that some mistakes were made", and that he was "accountable for the mistakes" and "accountable for the performance of the firm overall."

58. In an October 25, 2007 article in *The Wall Street Journal* headlined "O'Neal Faces Grilling As Losses Far Exceed Projection Made Oct. 5," further details began to spill out which indicated that Merrill Lynch's management were aware of the risks which led to the write down, but had concealed such details, ignored the warning signs and continued to make investments in CDOs in an effort to continue reaping rewards from the lucrative fees these investments generated. The article states that "[f]or Merrill, the fees it earned arranging deals were too lucrative to give up."

59. The article also quotes Win Smith, the son of one of the firm's founding partners, as stating that Merrill Lynch "was a great firm with a great franchise and it is not being led well", and that the Company "is in need of the right leadership for the future." The article further stated that the "$8.4 billion hit leaves it clear that Mr. O'Neal and his team didn't always appreciate the risks they took to achieve the greater profits," and that, during the conference call referenced above, analysts "pushed Merrill to say whether it had cut its exposure by selling the CDOs or by buying hedges in an attempt to balance future losses. Mr. O'Neal declined to give a breakdown."

60. On October 25, 2007, and as a result of the write down, S&P reduced Merrill Lynch's credit rating to negative, causing the Company's stock price to drop to $60.90 per share. In addition, Moody's Investor Service and other agencies downgraded the Company's credit and debt ratings.

## Defendant O'Neal Is Ousted

61. Despite the massive write down and losses that the Company was enduring, as well as the fact that, during his tenure, the Company lagged behind competitors such as Morgan Stanley and Goldman Sachs in annual returns, Defendant O'Neal remained at the helm of the

Company, and there was little immediate calling among the Director Defendants for O'Neal's ouster.

62. However, this all changed on October 26, 2007, when the *New York Times* reported that O'Neal had contacted the Chief Executive Officer of one of the Company's competitors, Wachovia Bank, about a potential merger, and did so without obtaining approval from or even informing the Company's Board. This stunning breach of loyalty to the Board raised concerns that Defendant O'Neal was attempting to broker a change of control of the Company pursuant to which he would stand to reap a windfall severance payment of $250 million.

63. After news of O'Neal's contact with Wachovia Bank became public, rumors quickly swirled that the Board would finally fire O'Neal. However, instead of firing O'Neal, the Director Defendant incredibly allowed him to broker a "retirement" package that was, once again, in furtherance of his own best interests rather than the best interests of the Company. Accordingly, on October 30, 2007, Merrill Lynch announced that O'Neal had retired, effective immediately, and that the Director Defendants had awarded O'Neal with a retirement package worth more than $160 million. After a tenure marked by ultimately flat performance, an $8 billion write down, and a $2.2 billion loss in the third quarter of 2007 – the largest in the firm's 93-year history – the Director Defendants allowed O'Neal to simply walk away from the Company with a windfall payment guised as a retirement package.

## DERIVATIVE AND DEMAND EXCUSED ALLEGATIONS

64. Plaintiff is an owner of Merrill Lynch common stock and was an owner of Merrill Lynch common stock at all times relevant to Defendants' wrongful course of conduct alleged herein.

65.     Plaintiff brings this action derivatively in the right and for the benefit of Merrill Lynch to redress injuries suffered, and to be suffered, by Merrill Lynch as a direct result of the breaches of fiduciary duty, waste of corporate assets, unjust enrichment and violations of New York state law, as well as the aiding and abetting thereof, by the Individual Defendants.

66.     Merrill Lynch is named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

67.     Plaintiff will adequately and fairly represent the interests of Merrill Lynch in enforcing and prosecuting its rights.

68.     Merrill Lynch's Board of Directors is currently composed of nine (9) directors – Defendants Christ, Codina, Colbert, Cribiore, Finnegan, Jonas, Prueher, Reese and Rossotti. Each of these directors has been named as a defendant in this action.

69.     The Director Defendants owed a duty to Merrill Lynch and its shareholders to be reasonably informed about the business and operations of the Company.    The Director Defendants completely abdicated their oversight duties to the Company by failing to implement internal procedures and controls necessary to prevent the wrongdoing alleged herein.

70.     Demand on the Merrill Lynch Board of Directors to institute this action is not necessary because such a demand would be a futile and useless act, particularly for the additional following reasons:

    a.     The Director Defendants, as detailed herein, participated in, approved and/or permitted the wrongs alleged herein to have occurred, and participated in efforts to conceal or disguise those wrongs from Merrill Lynch stockholders and investors and are, therefore, not disinterested parties and thus could not fairly and fully prosecute such a suit even if such suit was instituted by them;

28

b.     The Director Defendants had a responsibility and obligation to assure that all press releases and filings, including all financial reports, were accurate and that all internal controls and other oversight procedures were in place that would have detected and prevented the false and misleading statements put out by the Company to the public that are further described in this Complaint;

c.     In order to bring this suit, the Director Defendants would be forced to sue themselves and/or persons with whom they have extensive business and/or personal entanglements, which they will not do;

d.     The acts complained herein of constitute violations of New York state law and the fiduciary duties owed by the Director Defendants and are incapable of ratification;

e.     The Director Defendants are currently defendants in other securities class action lawsuits arising out of the wrongdoing alleged herein and a suit by them to remedy the wrongs alleged herein would likely expose them to liability in the securities class actions; thus, they are hopelessly conflicted in making any supposedly independent determination as to whether to sue themselves and the other Defendants;

f.     The actions of the Director Defendants have impaired the Board's ability to validly exercise its business judgment and rendered it incapable of reaching an independent decision as to whether to accept Plaintiff's demands;

g.     The misconduct complained of herein was not, and could not have been, an exercise of good faith business judgment;

h.     Merrill Lynch has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein; yet, the Director Defendants have not filed any lawsuits against themselves or others who were responsible for that wrongful course of

conduct, nor have they attempted to recover any part of the damages Merrill Lynch suffered and will suffer thereby; and

      i.     Accordingly, the Director Defendants are so personally and directly conflicted and committed to the unlawful course of conduct in dispute that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule.

    71.     Plaintiff has not made any demand on the shareholders of Merrill Lynch to institute this action since such demand would be a futile and useless act for the following reasons:

      a.     Merrill Lynch is a publicly traded company with thousands of shareholders;

      b.     Making demand on such a number of shareholders would be impossible for Plaintiff, who has no way of finding out the names, addresses or telephone numbers of shareholders; and

      c.     Making demand on all shareholders would force Plaintiff to incur huge expenses, assuming all shareholders could even be individually identified.

    72.     Plaintiff will adequately and fairly represent the interests of Merrill Lynch in enforcing and prosecuting its rights.

### FIRST CAUSE OF ACTION
**Derivative Claim for Breach of Fiduciary Duty**
**(Against All Defendants)**

    73.     Plaintiff incorporates by reference and realleges each of the foregoing allegations as though fully set forth herein.

74.     The Defendants owed a fiduciary duty to Merrill Lynch to supervise the issuance of its press releases and financial reporting to ensure that they were truthful and accurate and that they conformed with New York state law.

75.     The Defendants breached their fiduciary duties by failing to properly supervise and monitor the adequacy of Merrill Lynch's internal controls and by allowing misleading statements and filings to be issued and disseminated. Defendants abused their ability to control and influence Merrill Lynch, for which they are legally responsible.

76.     The Defendants have engaged, knowingly or recklessly, in a sustained and systematic failure to exercise their oversight responsibilities to ensure that Merrill Lynch complied with New York state laws, rules and regulations.

77.     As members of the Board of Directors of Merrill Lynch, the Director Defendants were directly responsible for authorizing or permitting the authorization of, or failing to monitor, the practices which resulted in violations of the New York state laws as alleged herein. Each of them had knowledge of and actively participated in and/or approved of or acquiesced in the wrongdoings alleged herein or abdicated his/her responsibilities with respect to these wrongdoings. The alleged acts of wrongdoing have subjected Merrill Lynch to unreasonable risks of loss and expenses.

78.     Each of the Defendants' acts in causing or permitting the Company to disseminate to the investing public material misrepresentations and omissions and abdicating his oversight responsibilities to the Company has subjected the Company to liability for violations of New York state law, and therefore was not the product of a valid exercise of business judgment and was a complete abdication of their duties as officers and/or directors of the Company. As a result of the Defendants' unlawful course of conduct and breaches of fiduciary duty, Merrill

Lynch has sustained substantial economic losses, is the subject of major securities fraud class action lawsuits by defrauded investors, and has had its reputation in the business community and financial markets irreparably tarnished.

79.     As a result of the misconduct alleged herein, Defendants are liable to the Company.

80.     By reason of the foregoing, Merrill Lynch was damaged.

81.     Plaintiff, on behalf of Merrill Lynch, has no adequate remedy at law.

<div align="center">

**SECOND CAUSE OF ACTION**
**For Gross Mismanagement**
**(Against All Defendants)**

</div>

82.     Plaintiff incorporates by reference and realleges each of the foregoing allegations as though fully set forth herein.

83.     Defendants had a duty to Merrill Lynch and its shareholders to prudently supervise, manage and control the operations, business and internal financial accounting and disclosure controls of the Company.

84.     Defendants, by their actions and by engaging in the wrongdoing described herein, abandoned and abdicated their responsibilities and duties with regard to prudently managing the business of Merrill Lynch in a manner consistent with the duties imposed upon them by law. By committing the misconduct alleged herein, Defendants breached their duties of due care, diligence, and candor in the management and administration of Merrill Lynch's affairs and in the use and preservation of Merrill Lynch's assets.

85.     During the course of the discharge of their duties, Defendants knew or recklessly disregarded the unreasonable risks and losses associated with their misconduct, yet Defendants caused Merrill Lynch to engage in the scheme complained of herein which they knew had an

unreasonable risk of damage to Merrill Lynch, thus breaching their duties to the Company. As a result, Defendants grossly mismanaged Merrill Lynch.

86. As a result of the misconduct alleged herein, Defendants are liable to the Company.

87. By reason of the foregoing, Merrill Lynch was damaged.

88. Plaintiff, on behalf of Merrill Lynch, has no adequate remedy at law.

## THIRD CAUSE OF ACTION
### For Contribution and Indemnification
### (Against All Defendants)

89. Plaintiff incorporates by reference and realleges each of the foregoing allegations as though fully set forth herein.

90. Merrill Lynch is alleged to be liable to various persons, entities and/or classes by virtue of the same facts or circumstances as are alleged herein that give rise to Defendants' liability to Merrill Lynch.

91. Merrill Lynch's alleged liability on account of the wrongful acts, practices and related misconduct described above arises, in whole or in part, from the knowing, reckless, disloyal and/or bad faith acts or omissions of the Defendants as alleged above, and Merrill Lynch is entitled to contribution and indemnification from each of the Defendants in connection with all such claims that have been, are or may in the future be asserted against Merrill Lynch by virtue of the Defendants' misconduct.

## FOURTH CAUSE OF ACTION
### For Abuse of Control
### (Against All Defendants)

92. Plaintiff incorporates by reference and realleges each of the foregoing allegations as though fully set forth herein.

93.     The Defendants owed duties as controlling persons to Merrill Lynch's public shareholders not to use their positions of control within the Company for their own personal interests and contrary to the interest of the Company's public shareholders.

94.     The conduct of Defendants amounted to an abuse of their abilities to control Merrill Lynch in violation of their obligations to Merrill Lynch and the Company's public shareholders.

95.     As a result of Defendants' abuse of control, Merrill Lynch has sustained and will continue to sustain irreparable injury, for which there is no adequate remedy at law.

### FIFTH CAUSE OF ACTION
### For Waste of Corporate Assets
### (Against All Defendants)

96.     Plaintiff incorporates by reference and realleges each of the foregoing allegations as though fully set forth herein.

97.     The Defendants breached their fiduciary duties by failing to properly supervise and monitor the adequacy of Merrill Lynch's internal controls and by allowing misleading statements and filings to be issued and disseminated.

98.     As a result of Defendants' breaches of fiduciary duties, Merrill Lynch has wasted valuable corporate assets through payments of incentive-based compensation to certain of its executive officers and has incurred significant potential liability for legal costs, penalties, fines, and/or legal fees in connection with the defense of Defendants' unlawful course of conduct complained of herein.

99.     As a result of the misconduct alleged herein, Defendants are liable to the Company.

100.     By reason of the foregoing, Merrill Lynch was damaged.

101. Plaintiff, on behalf of Merrill Lynch, has no adequate remedy at law.

## SIXTH CAUSE OF ACTION
### For Aiding and Abetting Breach of Fiduciary Duty
### (Against the Individual Defendants)

102. Plaintiff incorporates by reference and realleges each of the foregoing allegations as though fully set forth herein.

103. In addition to directly breaching their fiduciary duty to the Company, the Individual Defendants aided and abetted the other Defendants' breaches of fiduciary duty in a grossly negligent, willful and reckless manner, as described above,

104. These Defendants knowingly gave substantial assistance and encouragement to the other Defendants and each other in committing the grossly negligent, willful and reckless breach of fiduciary duties alleged above.

105. As a result of the misconduct alleged herein, Defendants are liable to the Company.

106. By reason of the foregoing, Merrill Lynch was damaged.

107. Plaintiff, on behalf of Merrill Lynch, has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

(A) Declaring that Defendants have breached and are breaching their fiduciary duties to Merrill Lynch and the Company's public shareholders;

(B) Requiring an accounting of Merrill Lynch's corporate expenditures that have been made to benefit the Defendants personally and requiring the Defendants to return to Merrill Lynch all salaries and the value of other remuneration of whatever kind paid to them by the Company during the time they were in breach of the fiduciary duties they owed to Merrill Lynch;

(C)     Directing the Defendants to account to the Company for all damages sustained or to be sustained by the Company by reason of the wrongs alleged herein;

(D)     Awarding compensatory and/or punitive damages plus interest to the Company;

(E)     Directing the Defendants to pay interest at the highest rate allowable by law on the amount of damages sustained by the Company as a result of Defendants' culpable conduct;

(F)     Directing Merrill Lynch to adopt and implement procedures and processes to improve its corporate governance and internal procedures to comply with New York state laws;

(G)     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees and expenses; and

(H)     Granting such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: November 21, 2007

By: _____
Richard B. Brualdi

**The BRUALDI LAW FIRM, P.C.**
Richard B. Brualdi
Gaitri Boodhoo
Ayesha N. Onyekwelu
29 Broadway, Suite 2400
New York, New York 10006
Tel: (212) 952-0602
Fax: (212) 952-0608

*Attorneys for Plaintiff*

**SAXENA WHITE P.A**
Maya Saxena
Joseph E. White III
2424 North Federal Highway
Suite 257
Boca Raton, FL 33431
Tel: 561.394.3399
Fax: 561.394.3082

*Of Counsel*

Michael R. Griffinger
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102-5310
mgriffinger@gibbonslaw.com
Tel: 973-596-4500
Fax: 973-639-6294

Jay B. Kasner (*Pro Hac Vice* Application to be Filed)
Scott D. Musoff
**SKADDEN, ARPS, SLATE,**
 **MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
Tel: 212-735-3000
Fax: 212-735-2000

*Co-counsel for Nominal Defendant*
*Merrill Lynch & Co., Inc.*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| DAVID EIDMAN, Derivatively on Behalf of MERRILL LYNCH & CO., INC., | : | Civil Action No. 08-126 (SDW) (MCA) |
| Plaintiff, | : | **CERTIFICATE OF SERVICE** |
| vs. | : | **Document Filed Electronically** |
| ERNEST STANLEY O'NEAL, CAROL T. CHRIST, ARMANDO M. CODINA, VIRGIS W. COLBERT, ALBERTO CRIBIORE, JOHN D. FINNEGAN, JUDITH MAYHEW JONAS, AULANA L. PETERS, JOSEPH W. PRUEHER, ANN N. REESE and CHARLES O. ROSOTTI, | : : : : | |
| Defendants, | : | |
| -and- | : | |
| MERRILL LYNCH & CO., INC., | : | |
| Nominal Defendant. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

#1270018 v1
101454-61824

I, **MELISSA C. FULTON**, hereby certify as follows:

1.     I am an associate of the law firm of Gibbons P.C., co-counsel for nominal defendant Merrill Lynch & Co., Inc. ("Merrill Lynch") in the above-captioned action.

2.     On February 15, 2008, pursuant to Local Civil Rule 5.2, I electronically filed and served (i) Merrill Lynch's Reply Memorandum of Law in Further Support of Motion to Stay Proceedings Pending Determination of the Judicial Panel on Multidistrict Litigation, (ii) Declaration of Scott D. Musoff in Further Support of Merrill Lynch & Co., Inc.'s Motion to Stay Proceedings Pending Determination of the Judicial Panel on Multidistrict Litigation, (iii) Merrill Lynch's February 15, 2008 letter to the Hon. Susan D. Wigenton enclosing Merrill Lynch's reply papers, and (iv) this Certificate of Service; upon the following counsel:

James V. Bashian, Esq.
LAW OFFICES OF
JAMES V. BASHIAN, P.C.
271 Route 46 West, Suite F207
Fairfield, NJ 07004

*Attorneys for Plaintiffs*

Paul O. Paradis, Esq.
HORWITZ, HORWITZ & PARADIS
28 West 44th Street, 16th Floor
New York, NY 10036

*Attorneys for Plaintiffs*

3.     Also on February 15, 2008, I caused true and correct copies of each of the preceding papers to be served upon the following counsel by email and regular mail:

Michael J. Chepiga, Esq.
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017-3954

*Attorneys for Defendant Ernest Stanley O'Neal*

Jason M. Halper, Esq.
CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, NY 10281

*Attorneys for Defendants Carol T. Christ, Armando M. Codina, Virgis W. Colbert, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, Aulana L. Peters, Joseph W. Prueher, Ann N. Reese and Charles O. Rossotti*

2

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

MELISSA C. FULTON

Dated: February 15, 2008
       Newark, New Jersey

#1270018 v1
101454-61824

Michael R. Griffinger
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102-5310
mgriffinger@gibbonslaw.com
Tel: 973-596-4500
Fax: 973-639-6294

Jay B. Kasner (*Pro Hac Vice* Application to be Filed)
Scott D. Musoff
**SKADDEN, ARPS, SLATE,**
  **MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
Tel: 212-735-3000
Fax: 212-735-2000

*Co-Counsel for Nominal Defendant*
*Merrill Lynch & Co., Inc.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID EIDMAN, Derivatively on Behalf of MERRILL LYNCH & CO., INC., <br><br> Plaintiffs, <br><br> v. <br><br> ERNEST STANLEY O'NEAL, CAROL T. CHRIST, ARMANDO M. CODINA, VIRGIS W. COLBERT, ALBERTO CRIBIORE, JOHN D. FINNEGAN, JUDITH MAYHEW JONAS, AULANA L. PETERS, JOSEPH W. PRUEHER, ANN N. REESE and CHARLES O. ROSSOTTI, <br><br> Defendants, <br><br> and <br><br> MERRILL LYNCH & CO., INC.,, <br><br> Nominal Defendant. | Civil Action No. 08-126 (SDW) (MCA) <br><br> ***Document Electronically Filed.*** <br><br> Motion Day: March 3, 2008 <br><br><br><br> **MEMORANDUM OF LAW OF** <br> **MERRILL LYNCH & CO., INC** <br> **IN OPPOSITION TO PLAINTIFF'S** <br> **MOTION TO REMAND** |

# TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................................................................... i

PRELIMINARY STATEMENT .............................................................................................. 1

BACKGROUND ....................................................................................................................... 2

    A.    The Parties ................................................................................................... 2

        1.    Plaintiff ............................................................................................. 2

        2.    Defendants ....................................................................................... 2

    B.    The Allegations of the Complaint Necessarily Raise Issues of Federal Law .......... 3

ARGUMENT .............................................................................................................................. 5

PLAINTIFF'S MOTION TO REMAND SHOULD BE DENIED ..................................... 5

I.    Removal Was Proper Because At Least One Of The Claims Asserted Arises Under Federal Law ................................................................................................ 5

    A.    Standards Governing Removal of a Purported State Law Claim ............................ 5

    B.    Plaintiff's Claims for Breach of Fiduciary Duty, Abuse of Control and Waste of Corporate Assets Necessarily Raise Substantial Federal Issues .............. 7

    C.    This Court May Entertain This Substantial Federal Issue "Without Disturbing Any Congressionally Approved Balance of Federal State Judicial Responsibilities" ..................................................................................... 13

CONCLUSION ......................................................................................................................... 14

# TABLE OF AUTHORITIES

## CASES

Broder v. Cablevision Systems Corp., 418 F.3d 187 (2d Cir. 2005) .........................5, 6, 10

In re California Wholesale Electricity Antitrust Litigation, No. CV-06-954-RHW,
    2006 U.S. Dist. LEXIS 83541 (S.D. Cal. Nov. 2, 2006) .............................10

Chirik v. TD Banknorth, N.A., No. 06-04866, 2008 U.S. Dist. LEXIS 3939
    (E.D. Pa. Jan. 15, 2008) ...................................................................9

Donovan v. Robbins, 752 F.2d 1170 (7th Cir. 1985) .........................................11

Exxon Mobil Corp. v. Allapattah Services, Inc., 545 U.S. 546 (2005)...............................6

Fagin v. Gilmartin, No. 03-2631, 2007 U.S. Dist. LEXIS 7256
    (D.N.J. Feb. 1, 2007) ......................................................... 7-8, 12

Fleming v. Lind-Waldock & Co., 922 F.2d 20 (1st Cir. 1990) ........................................11

Gobble v. Hellman, No. 1:02CV0076, 2002 U.S. Dist LEXIS 26833
    (N.D. Ohio Mar. 26, 2002) ...............................................................9

Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing,
    545 U.S. 308 (2005)...................................................1, 5, 6, 13

Green v. William Mason & Co., 976 F. Supp. 298 (D.N.J. 1997) ...................................13

Gross v. Weingarten, 217 F.3d 208 ...............................................11, 14

Koresko v. Murphy, 464 F. Supp. 2d 463 (E.D. Pa. 2006) .......................................... 9-10

In re Masters Mates & Pilots Pension Plan and IRAP Litigation,
    957 F.2d 1020 (2d Cir. 1992) .........................................................11, 13, 14

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, 547 U.S. 71 (2006) ...............12, 14

Musick, Peeler & Garrett v. Employers Insurance of Wausau,
    508 U.S. 286 (1993)..........................................................11

Rose v. SLM Finance Corp., No. 3:05CV445, 2007 U.S. Dist. LEXIS 14646
    (W.D.N.C. Feb. 28, 2007) ...............................................................9

Stechler v. Sidley Austin Brown & Wood, LLP, No. 05-3485,
    2006 U.S. Dist LEXIS 1148 (D.N.J. Jan. 13, 2006) ...................................12

Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc., No. 06-43,
    2008 U.S. LEXIS 1091 (Jan. 15, 2008) ......................................................................12

Wietschner v. Gilmartin, No. 02-4879, 2003 U.S. Dist. LEXIS 18997
    (D.N.J. Jan. 14, 2003) ...........................................................................................8, 9, 12

## STATUTES AND OTHER AUTHORITIES

15 U.S.C. § 78aa .................................................................................................................12

15 U.S.C. § 78u-4(f) .....................................................................................................11, 13

28 U.S.C. § 1331 .......................................................................................................2, 5, 13

28 U.S.C. § 1441 ............................................................................................................2, 5

29 U.S.C. § 1144(a) ...........................................................................................................12

H.R. Rep. No. 104-369 (1995) (Conf. Rep.), reprinted in
    1995 U.S.C.C.A.N. 730 ..................................................................................13, 14

Pub. L. No. 104-67, 109 Stat. 737 (1995) .......................................................................13

Judge Amy J. St. Eve & Brice C. Pilz, The Fault Allocation Provisions of the
    Private Securities Litigation Reform Act of 1995 - A Roadmap for Litigants
    and Courts, 3 N.Y.U. J. L. & Bus. 187 (2006) ...........................................................13

Marc I. Steinberg & Christopher D. Olive, Contribution and Proportionate
    Liability Under the Federal Securities Laws in Multidefendant Securities
    Litigation After the Private Securities Litigation Reform Act of 1995, 50
    S.M.U. L. Rev. 337 (1996) .........................................................................................13

Defendant Merrill Lynch & Co., Inc. ("Merrill Lynch") respectfully submits this Memorandum of Law in Opposition to Plaintiff David Eidman's ("plaintiff") motion to remand. Merrill Lynch has moved for a stay of this action pending resolution of a motion before the Judicial Panel on Multidistrict Litigation ("J.P.M.L.") to transfer this action to the Southern District of New York for coordination with 18 related actions pending there. The motion to stay is fully briefed before this Court. The J.P.M.L. has scheduled the transfer motion for consideration on March 27, 2008.

## PRELIMINARY STATEMENT

Merrill Lynch's removal of this action is proper because this action – alleging conduct identical to that alleged in the complaints asserting violations of the federal securities laws, yet purporting to assert only state-law claims – actually and necessarily raises substantial issues of federal law. Although plaintiff asserts that "it is clear from the face of the Complaint that Plaintiff has not alleged any claims 'arising under' the federal securities laws . . . but only alleges violations of state law," the complaint is actually replete with allegations that Merrill Lynch's board of directors violated the federal securities laws and plaintiff's claims depend primarily upon findings of liability under the federal securities laws. As such, plaintiff's right to relief depends upon the resolution of exclusively federal issues regarding the federal securities laws, among others. This Court may entertain these issues "without disturbing any congressionally approved balance of federal and state judicial responsibilities," Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, 545 U.S. 308, 314 (2005), because Congress has expressed a strong interest in the application of the federal laws in question. For these reasons, as set forth below, plaintiff's motion to remand should be denied.

## BACKGROUND

This action arises out of Merrill Lynch's announcement of its third quarter financial results on October 24, 2007, including that it had written down $7.9 billion across CDOs and U.S. subprime mortgages. (Compl. ¶¶ 2, 50-51.) In the days and weeks following that announcement, numerous related actions were filed in the Southern District of New York. There are currently 18 actions pending there. This action, filed in the Superior Court of New Jersey, Bergen County on December 4, 2007 – more than a month after the first derivative complaint was filed (on November 1, 2007) in the Southern District of New York – was timely removed to this Court on January 9, 2008 pursuant to 28 U.S.C. §§ 1331 & 1441. All defendants consented to removal. Merrill Lynch also moved the J.P.M.L. on January 9, 2008 to transfer this action to the Southern District of New York. The transfer motion will be considered by the J.P.M.L. on March 27. On January 14, Merrill Lynch moved to stay this action pending resolution of the Merrill Lynch's multidistrict transfer motion. On January 23, plaintiff filed a motion to remand the action to the state court.

### A.   The Parties

#### 1.   Plaintiff

Plaintiff David Eidman alleges that he resides in Bergen County, New Jersey and that he is and was a shareholder of Merrill Lynch "throughout the entirety of the time period of the complained of actions alleged" in the complaint. (Compl. ¶¶ 4-5.)

#### 2.   Defendants

##### (a)   Merrill Lynch & Co., Inc.

Nominal defendant Merrill Lynch & Co., Inc. ("Merrill Lynch") is a Delaware corporation headquartered in New York. Through various subsidiaries, Merrill Lynch provides wealth management, capital markets and advisory services. (Compl. ¶ 6.)

2

> (b) *The Director Defendants*

The complaint names as a defendant E. Stanley O'Neal, the Chief Executive Officer and Chairman of the Board of Directors of Merrill Lynch from 2003 until his resignation on November 1, 2007.  (Id. ¶ 7.)  In addition to Mr. O'Neal, the complaint names as defendants ten outside, non-management directors:  Carol T. Christ, Armando M. Codina, Virgis W. Colbert, Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, Aulana L. Peters, Joseph W. Prueher, Ann N. Reese and Charles O. Rossotti (collectively, the "Director Defendants").  (Compl. ¶¶ 8-17.)

**B.    The Allegations of the Complaint Necessarily Raise Issues of Federal Law**

Plaintiff's complaint is based upon the same alleged conduct that is at issue in the 18 related actions pending in the Southern District of New York.  (See, e.g., Compl. ¶¶ 61-68.)  Those actions constitute three nearly identical derivative actions, four actions brought under the federal securities laws and eleven actions brought under the Employee Retirement Income Security Act of 1974, as amended ("ERISA").  As in those cases, plaintiff here alleges that each of the Director "Defendants caused false statements to be issued in SEC filings."  (Id. ¶ 61.)  Plaintiff alleges that the "Director Defendants were involved in reviewing and/or disseminating false and misleading statements and information contained in the Company's SEC filings, press releases, and other public documents, were aware or recklessly disregarded that materially false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the securities laws."  (Id. ¶ 73(b)(i).)  Plaintiff further alleges that "[b]ecause the [Director] Defendants are liable for filing incorrect statements with the SEC and are thereby liable for violating the federal securities laws, demand would be futile."  (Id.)

Plaintiff continues that "[t]he Director Defendants Reese, Rossotti, Prueher and Jonas currently comprise the Audit Committee and individually and collectively failed in their

duties of ensuring that the Company file true and complete financial statements with the SEC and thereby are liable for violations of the federal securities laws." (Id. ¶ 73(b)(ii).)  Plaintiff also alleges that "[t]he Director Defendants Reese, Rossotti, Finnegan and Cribiore currently comprise the Finance Committee . . . . and collectively failed in their duties of ensuring that the Company file true and complete financial statements with the SEC and are thereby liable for violations of the federal securities laws." (Id. ¶ 72(b)(iii).)  "An informal inquiry has been initiated by the SEC in order to determine whether the Company has violated the federal securities laws." (Id.)  Plaintiff also alleges that the Director "Defendants have caused Merrill to waste valuable corporate assets by:  awarding excessive compensation to senior executives, and by incurring potentially million [sic] of dollars of legal liability and legal costs to defend Defendants' unlawful actions," (id. ¶ 93) and "[a]s a result of the misconduct alleged herein, Defendants are liable to the Company" (id. ¶¶ 85, 90).  Plaintiff seeks a judgment against the Director "Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of Defendants' breaches of fiduciary duties, waste of corporate assets and unjust enrichment."

Substantial federal questions are raised by plaintiff's allegations that the Director Defendants are liable for violations of the federal securities laws.  Plaintiff alleges that the Director Defendants violated the federal securities laws both as the basis for his failure to make demand on the Board of Directors prior to commencing this action and as a basis for seeking indemnification or contribution on behalf of the Company.[1]

---

[1]  Defendants reserve all rights and defenses in connection with the action including but not limited to that the complaint should be dismissed for failure to make demand.

4

## ARGUMENT

## PLAINTIFF'S MOTION TO REMAND SHOULD BE DENIED

I.  **REMOVAL WAS PROPER BECAUSE AT LEAST ONE OF THE CLAIMS ASSERTED ARISES UNDER FEDERAL LAW**

    A.  **Standards Governing Removal of a Purported State Law Claim**

District courts have original jurisdiction of civil actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The Supreme Court's decision in Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, 545 U.S. 308 (2005) "establishes that the existence of 'a cause of action created by federal law' is not a necessary condition for federal-question jurisdiction under 28 U.S.C. § 1331 or removal jurisdiction under 28 U.S.C. § 1441(a)." Broder v. Cablevision Sys. Corp., 418 F.3d 187, 194 (2d Cir. 2005). Accordingly, the question is not, as plaintiff maintains, whether plaintiff alleges "traditional state law counts." (Pl. Mem. at 4.) Instead, "arising under" jurisdiction under the "artful pleading doctrine" embodies the "commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." Grable & Sons Metal Prods., 545 U.S. at 312. "[F]ederal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." Id. at 313.

"[T]he presence of a disputed federal issue and the ostensible importance of a federal forum are never necessarily dispositive; there must always be an assessment of any disruptive portent in exercising federal jurisdiction." Id. at 314. Therefore, the Supreme Court

has not stated "a 'single, precise, all-embracing' test for jurisdiction over federal issues embedded in state-law claims between nondiverse parties." Id. (citation omitted). Accordingly, the "test" for whether a state law claim "arises under" federal law is, "does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Id. "A single claim over which federal-question jurisdiction exists is sufficient to allow removal." Broder, 418 F.3d at 194; see also Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 562-63 (2005) (explaining that "[o]nce the case [is] removed, the District Court ha[s] original jurisdiction over the federal-law claims and supplemental jurisdiction under [28 U.S.C.] § 1367(a) over the state-law claims").

As set forth in Grable, for a state law claim to "arise under" federal law, it must "necessarily raise a stated federal issue, actually disputed and substantial." 545 U.S. at 314. In Grable, the petitioner had brought a quiet title action in Michigan State court, asserting that respondent's title was invalid because the IRS, which had seized Grable's property and sold it to respondent, "failed to notify Grable of its seizure of the property in the exact manner required by [26 U.S.C.] § 6335(a)." Id. at 310-11. Respondent removed the action under federal question jurisdiction "because the claim of title depended on the interpretation of the notice statute in the federal tax law." Id. at 311. The Supreme Court (and both courts below) agreed: "Grable's state complaint must specify 'the facts establishing the superiority of [its] claim,' and Grable has premised its superior title claim on a failure by the IRS to give it adequate notice, as defined by federal law. Whether Grable was given notice within the meaning of the federal statute is thus an essential element of its quiet title claim . . . ." Id. at 314-15 (first alteration in original) (citation omitted).

6

**B.     Plaintiff's Claims for Breach of Fiduciary Duty, Abuse of Control and Waste of Corporate Assets Necessarily Raise Substantial Federal Issues**

Plaintiff's action was properly removed because, among other things, plaintiff alleges that the Director Defendants are liable for violations of the federal securities laws and, further, that they are liable to the Company for potentially millions of dollars of legal liability. (Compl. ¶¶ 73(b)(i)-(iii), 93; see also id. at ¶¶ 85, 90 ("As a result of the misconduct alleged herein, Defendants are liable to the Company.").)  Plaintiff alleges, for example, that the Director "Defendants were involved in reviewing and/or disseminating false and misleading statements and information contained in the Company's SEC filings, press releases, and other public documents, were aware or recklessly disregarded that materially false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the securities laws."  (Id. ¶ 73(b)(i).)  Additionally, plaintiff alleges that the Director Defendants who are members of the Audit Committee and the Finance Committee are "liable for violations of the federal securities laws" and therefore, plaintiff was excused from making a demand on the Board of Directors prior to filing suit.

In his motion to remand, despite the foregoing – including several explicit allegations that "Defendants are liable for violations of the federal securities laws," (Compl. ¶¶ 73(b)(i)-(iii)) –plaintiff insists that he "only alleges violations of state law."  (Pl. Mem. at 4.) Ignoring his own allegations, plaintiff maintains that merely "referenc[ing] the fact that Defendants caused Merrill to file false . . . SEC filings" does not make plaintiff's claims federal claims. (Pl. Mem. at 4.)[2]  Based on this mischaracterization of his own allegations, plaintiff maintains that according to a district court decision issued last year in Fagin v. Gilmartin, No.

03-2631, 2007 U.S. Dist. LEXIS 7256 (D.N.J. Feb. 1, 2007) (Chesler, J.), his claims do not arise under federal law. (Pl. Mem. at 5-7.) Not only do plaintiff's claims differ significantly from those considered in Fagin, but plaintiff fails even to mention – let alone address – the Wietschner v. Gilmartin case, described in Fagin, which held that claims such as those asserted by plaintiff here do arise under federal law. See Wietschner v. Gilmartin, No. 02-4879, 2003 U.S. Dist. LEXIS 18997 (D.N.J. Jan. 14, 2003) (Cooper, J.); compare Fagin, 2007 U.S. Dist. LEXIS 7256, at *19.

Judge Cooper in Wietschner held that plaintiff's claims for breach of fiduciary duty, misappropriation of confidential information and for contribution and indemnification arose under federal law because the cause of action "involve[d] a strong federal interest" and because the "'vindication of a right under state law necessarily turns on some construction of federal law.'" 2003 U.S. Dist. LEXIS 18997, at *6, *8 n.3 (citing D'Alessio v. N.Y. Stock Exch., Inc., 258 F.3d 93 (2d Cir. 2001) and quoting Merrill Dow Pharm., Inc. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 9 (1983)). Denying plaintiff's motion to remand, the court explained that "[p]laintiff's allegations here rely on federal law as more than mere evidence of breach of fiduciary duty." Id. at *9. "First, defendant-directors made their allegedly inflated earnings reports forming the basis of both Counts I and II of the Complaint, in large part, pursuant to the requirements of federal law. Moreover, plaintiff's alleged injuries depend primarily upon accusations against Merck for violations of federal law." Id. (citations omitted). Among other things, plaintiff alleged that the Company was the subject of an SEC investigation as well as securities fraud class actions and sought recovery from the director defendants therefor. Id. at *9

_____
(cont'd from previous page)
2    Plaintiff asserts that "[s]ignificantly, Defendants do not contest the fact that this Complaint, on its face, alleges traditional state law counts." (Pl. Mem. at 4.) To the contrary, although plaintiff only sets forth state law causes
                                                                                                                (cont'd)

& n.5 ; see also Gobble v. Hellman, No. 1:02CV0076, 2002 U.S. Dist. LEXIS 26833, at *9 (N.D.

Ohio Mar. 26, 2002) ("It is clear from the face of its well pleaded complaint that several counts

of Plaintiff's breach of fiduciary duty claims depend upon whether Defendants violated their

duties under the Federal Exchange Act and SEC Rules and regulations.  Therefore, the resolution

of Plaintiff's claims requires a construction and adjudication of substantial questions of federal

law . . . .").[3]

Here, as in Wietschner, "[p]laintiff's allegations here rely on federal law as more

than mere evidence of breach of fiduciary duty."  2003 U.S. Dist. LEXIS 18997, at *9.  Instead,

certain of plaintiff's claims and alleged injuries raise substantial federal questions.  First, plaintiff

repeatedly alleges that the Director Defendants "are liable for violating the federal securities

laws. " (Compl. ¶¶ 73(b)(i)-(iii).)  Plaintiff alleges that demand on the ten members of the Board

of Directors (all of which are non-management, outside directors (Compl. ¶¶ 8-17)) is excused

based on allegations that the Director Defendants are liable for violations of the federal securities

laws.  Compare, e.g., Gobble, 2002 U.S. Dist. LEXIS 26833, at *9 (denying remand and

rejecting plaintiff's contention that "[d]efendants cannot create federal jurisdiction by injecting a

federal question into the action," noting that, to the contrary, it was the plaintiff who had injected

the federal issue into the case); see also Wietschner, 2003 U.S. Dist. 18997, at *9; Koresko v.

Murphy, 464 F. Supp. 2d 463, 469 (E.D. Pa. 2006) ("Plaintiff's rescission claim necessarily

_____

*(cont'd from previous page)*
of action, as set forth in Notice of Removal (at ¶¶ 10-16) and herein, the complaint alleges a federal claim.

[3]    See also, e.g., Chirik v. TD Banknorth, N.A., No. 06-04866, 2008 U.S. Dist. LEXIS 3939, at *12-13 (E.D. Pa. Jan. 15, 2008) (federal jurisdiction existed as to declaratory judgment action seeking conversion of a savings account into a tax-qualified IRA nunc pro tunc, because plaintiff's action was "implicitly asking the Court (or a Pennsylvania state court) to declare that the IRS's procedures for giving retroactive effect to a rollover are not mandatory"); Rose v. SLM Fin. Corp., No. 3:05CV445, 2007 U.S. Dist. LEXIS 14646, at *10 (W.D.N.C. Feb. 28, 2007) (federal jurisdiction existed as to plaintiff's breach of contract claim, where plaintiff asserted that disclosures issued pursuant to the federal Truth in Lending Act and the Real Estate Settlement Procedures Act formed "some substantial part of the contract on which his state law claim is based").

raises a federal issue – i.e., whether the Defendants satisfied the condition precedent to the contract becoming binding by making the disclosures required by federal law . . . . The outcome-determinative nature of this issue makes it 'actually disputed and substantial' at this stage of the litigation.").[4]

Second, plaintiff's claim for waste of corporate assets (Compl. ¶¶ 92-94) seeks to recover from the Director Defendants for "caus[ing] Merrill Lynch to waste valuable corporate assets . . . by incurring potentially million [sic] of dollars of legal liability."[5]  The complaint also prays for a judgment against the defendants "in favor of the Company for the amount of damages sustained by the Company as a result of Defendants' breaches of fiduciary duties [and] waste of corporate assets."  The only existing exposure to legal liability against the Company based on the conduct alleged in the complaint are the federal claims, viz., claims under section 10(b) of the Securities Exchange Act of 1934[6] and claims under ERISA.[7]  Furthermore, the only other

---

[4]     Compare, e.g., In re Cal. Wholesale Elec. Antitrust Litig., No. CV-06-954-RHW, 2006 U.S. Dist. LEXIS 83541, at *2-3 (S.D. Cal. Nov. 2, 2006) (action brought by the State of California to enforce anti-fraud and consumer protection laws against energy trading company, alleging "unlawful, unfair, fraudulent and manipulative trading schemes to the detriment of the People of the State of California" arose under federal law because the "transaction[s] underlying the alleged fraudulent trading schemes occurred pursuant to the Federal Tariffs in the wholesale energy market").  "The basis for the award of statutory damages . . . would be violations of the obligations imposed by the Federal Tariff . . . . without them, the causes of action cannot be adjudicated."  Id. at *6.

[5]     Plaintiff's fourth cause of action for waste actually comprises three separate claims for waste.  See Broder, 418 F.3d at 194 ("[W]hat a plaintiff presents as one 'count' may be understood to encompass more than one 'claim.'").

[6]     The federal securities claims are asserted in Life Enrichment Foundation v. Merrill Lynch & Co., 07 CV 9633(LBS); Kossef v. Merrill Lynch & Co., 07 CV 10984(LBS); Garber v. Merrill Lynch & Co., 07 CV 11080(LBS); Conn v. Merrill Lynch & Co., 07 CV 11626(LBS).  A fifth putative securities class action that had been pending was voluntarily dismissed.

[7]     The actions asserting ERISA claims against Merrill Lynch are:  Estey v. Merrill Lynch & Co., 07 CV 10268(LBS); Gidaro v. Merrill Lynch & Co., 07 CV 10273(LBS); Moore v. Merrill Lynch & Co., 07 CV 10398(LBS); Yashgur v. Merrill Lynch & Co., 07 CV 10569(LBS); Donlon v. Merrill Lynch & Co., 07 CV 10661(LBS); Esposito v. Merrill Lynch & Co., 07 CV 10687(LBS); Shaughnessey v. Merrill Lynch & Co., 07 CV 10710(LBS); Boland v. Merrill Lynch & Co., 07 CV 11054(LBS); Summers v. Merrill Lynch & Co., 07 CV 11615(LBS); Eastman v. Merrill Lynch & Co., 08 CV 0058(LBS); Pascullo v. Merrill Lynch & Co., 08 CV 1116(LBS).

potential legal liability specifically identified in the complaint is "[a]n informal inquiry . . . initiated by the SEC in order to determine whether the Company has violated the federal securities laws."  (Compl. ¶ 73(b)(iii).)

Implicit within an attempt to recover for legal liability incurred by the Company for alleged violations of the securities laws and ERISA is a claim for contribution.  There is exclusive federal jurisdiction for claims under the federal securities laws and ERISA.  See Gross v. Weingarten, 217 F.3d 208, 224 (4th Cir. 2000) (allegations of violations of section 10(b) and Rule 10b-5 are subject to exclusive federal jurisdiction and a contribution claim based on such liability likewise is subject to exclusive federal jurisdiction) (citing Musick, Peeler & Garrett v. Employers Ins. of Wausau, 508 U.S. 286, 298 (1993)); 15 U.S.C. § 78u-4(f) (PSLRA contribution provisions).  In Gross, the Fourth Circuit held, among other things, that the district court erred in dismissing on abstention grounds a contribution claim predicated on violations of the federal securities laws because the contribution claim "is subject to exclusively federal jurisdiction."  Gross, 217 F.3d at 223-24; see also Musick, Peeler & Garrett, 508 U.S. at 297 (defendants in a 10(b) action have a right to seek contribution as a matter of federal law); In re Masters Mates & Pilots Pension Plan and IRAP Litig., 957 F.2d 1020, 1027 (2d Cir. 1992) ("[W]e have held that a system of proportional fault is to be developed as part of the federal common law of ERISA and have specifically incorporated rights to indemnity and contribution into that body of law."); Fleming v. Lind-Waldock & Co., 922 F.2d 20, 27 (1st Cir. 1990) ("[A] right to contribution for liability arising from a violation of a federal statute is a matter of federal law."); Donovan v. Robbins, 752 F.2d 1170, 1179 (7th Cir. 1985) ("Where contribution is sought by one who has had to pay damages for violating a federal statute, the scope and limitations of the right of contribution are invariably treated as questions of federal rather than state law.").

The <u>Fagin</u> case, upon which plaintiff principally relies (Pl. Mem. at 5-6), is inapposite.  There, plaintiff's complaint did not allege that the directors were liable for violating the federal securities laws and plaintiff's right to relief did "not depend on the construction of federal law."  <u>Fagin</u>, 2007 U.S. Dist. LEXIS 7256, at *12-13.  Plaintiff's complaint here, however, does:  Plaintiff has predicated his failure to make demand on the Board of Directors on the alleged "fact" that the Director Defendants are liable for violations of the federal securities laws, and the claim for waste seeks damages from the Director Defendants for the Company's "incurring potentially million[s] of dollars of legal liability" under laws that are exclusively federal subject matter.  <u>See</u> 15 U.S.C. § 78aa (exclusive federal jurisdiction over claims under the Securities Exchange Act of 1934); 29 U.S.C. § 1144(a) (exclusive federal jurisdiction over claims under ERISA).  Thus, the alleged violations of federal law are not, as the court explained in <u>Wietschner</u>, simply offered as "mere evidence of breach of fiduciary duty."  <u>Wietschner</u>, 2003 U.S. Dist. LEXIS 18997, at *9.  Rather, here, plaintiff's right to recover depends upon the construction of federal laws and a finding of liability under those laws. [8]

Congress has repeatedly expressed substantial federal interest in matters relating to the regulation of the securities markets.  As the Supreme Court has reiterated, "[t]he magnitude of the federal interest in protecting the integrity and efficient operation of the market for nationally traded securities cannot be overstated."  <u>Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit</u>, 547 U.S. 71, 78 (2006); <u>see also</u> <u>Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.</u>, No. 06-43, 2008 U.S. LEXIS 1091 (Jan. 15, 2008) (reiterating the strong federal interest in construction and application of the federal securities laws in rejecting a so-called

---

[8]    For the same reasons, the other case relied upon by plaintiff (Pl. Mem. at 7), <u>Stechler v. Sidley Austin Brown & Wood, LLP</u>, No. 05-3485, 2006 U.S. Dist LEXIS 1148 (D.N.J. Jan. 13, 2006), is inapposite.  Here, unlike in

<div align="right"><i>(cont'd)</i></div>

"scheme liability" under section 10(b)). Congress's codification in the Private Securities

Litigation Reform Act of 1995 ("PSLRA")[9] of special rules governing contribution in federal

securities cases further evinces the strong federal interest surrounding the findings necessary and

the corresponding degree to which a person may be held liable for contribution for securities law

violations. See 15 U.S.C. § 78u-4(f).[10]

      Although not codified by Congress, similar policy considerations have led to the

creation of federal common law to govern contribution claims relating to ERISA actions. See

Masters Mates, 957 F.2d at 1027; see also Green v. William Mason & Co., 976 F. Supp. 298,

300-01 (D.N.J. 1997).

    **C.**    **This Court May Entertain This Substantial Federal Issue "Without
Disturbing Any Congressionally Approved Balance of Federal State Judicial
Responsibilities"**

      As the Supreme Court explained in Grable, "the federal issue will ultimately

qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment

about the sound division of labor between state and federal courts governing the application of

[28 U.S.C.] § 1331." Grable & Sons Metal Prods., 545 U.S. at 313-14. Here, as set forth above,

any liability for alleged violations of the securities laws and/or ERISA are exclusively federal by

_____

*(cont'd from previous page)*

    Stechler, the federal issue is not a "minor issue" and retaining jurisdiction will not be inconsistent with the
congressionally approved balance of federal and state judicial responsibilities. Id. at *4.

[9]    Pub. L. No. 104-67, 109 Stat. 737 (1995) (codified in part at 15 U.S.C. §§ 77z-1, 78u-4).

[10]    Among other things, the PSLRA implemented a comprehensive contribution regime including proportionate
liability for "non-knowing" violations of the federal securities laws. See 15 U.S.C. § 78u-4(f).; see also Judge
Amy J. St. Eve & Brice C. Pilz, The Fault Allocation Provisions of the Private Securities Litigation Reform Act
of 1995 – A Roadmap for Litigants and Courts, 3 N.Y.U. J. L. & Bus. 187 (2006); Marc I. Steinberg &
Christopher D. Olive, Contribution and Proportionate Liability Under the Federal Securities Laws in
Multidefendant Securities Litigation After the Private Securities Litigation Reform Act of 1995, 50 SMU L.
Rev. 337 (1996); H.R. Rep. No. 104-369, at 37-38 (1995) (Cong. Rep.), reprinted in 1995 U.S.C.C.A.N. 730,
736-37 (noting that "[t]he current system of joint and several liability creates coercive pressure for entirely
innocent parties to settle meritless claims rather than risk exposing themselves to liability for a grossly
disproportionate share of the damages").

statute.  See Gross, 217 F.3d at 223-24; Masters Mates, 957 F.2d at 1027.  Thus, requiring

plaintiff's claims to be litigated in a federal forum is necessarily consistent with congressional

judgment.  This conclusion is reinforced by Congress having made substantial amendments to

the federal securities laws in the last fifteen years.  Congress has indisputably shown a strong

interest in such claims and could not have intended the state courts to determine whether the

defendants here are liable for federal securities violations.  See, e.g., H.R. Rep. 104-369 at 37-39;

see also Dabit, 547 U.S. at 78.

## CONCLUSION

      For all of the foregoing reasons, plaintiff's motion to remand should be denied.

Dated:  Newark, New Jersey
      February 19, 2008

Respectfully submitted,


By:    s/ Michael R. Griffinger   
     Michael R. Griffinger
     **GIBBONS P.C.**
     One Gateway Center
     Newark, NJ 07102-5310
     mgriffinger@gibbonslaw.com
     Tel: 973-596-4500
     Fax: 973-639-6294

     *Co-Counsel for Nominal Defendant*
     *Merrill Lynch & Co., Inc.*

Of Counsel:

Jay B. Kasner
Scott D. Musoff
**SKADDEN, ARPS, SLATE,**
  **MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
Tel: 212-735-3000
Fax: 212-735-2000

Michael R. Griffinger
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102-5310
mgriffinger@gibbonslaw.com
Tel: 973-596-4500
Fax: 973-639-6294

Jay B. Kasner (*Pro Hac Vice* Application to be Filed)
Scott D. Musoff
**SKADDEN, ARPS, SLATE,**
**MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
Tel: 212-735-3000
Fax: 212-735-2000

*Co-Counsel for Nominal Defendant*
*Merrill Lynch & Co., Inc.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID EIDMAN, Derivatively on Behalf of MERRILL LYNCH & CO., INC., <br><br> Plaintiffs, <br><br> v. <br><br> ERNEST STANLEY O'NEAL, CAROL T. CHRIST, ARMANDO M. CODINA, VIRGIS W. COLBERT, ALBERTO CRIBIORE, JOHN D. FINNEGAN, JUDITH MAYHEW JONAS, AULANA L. PETERS, JOSEPH W. PRUEHER, ANN N. REESE and CHARLES O. ROSSOTTI, <br><br> Defendants, <br><br> and <br><br> MERRILL LYNCH & CO., INC., <br><br> Nominal Defendant. | Civil Action No. 08-126 (SDW) (MCA) <br><br> *Document Electronically Filed.* <br><br><br> <u>**CERTIFICATE OF SERVICE**</u> |

**I, Geoffrey A. North**, hereby certify as follows:

1. I am an associate of the law firm of Gibbons P.C., co-counsel for nominal defendant Merrill Lynch & Co., Inc. ("Merrill Lynch") in the above-captioned action.

2. On February 19, 2008, pursuant to Local Civil Rule 5.2, I electronically filed and served (i) Memorandum of Law of Merrill Lynch & Co., Inc in Opposition to Plaintiff's Motion to Remand and (ii) this Certificate of Service; upon the following counsel:

James V. Bashian, Esq.
**Law Offices of James V. Bashian, P.C.**
271 Route 46 West, Suite F207
Fairfield, NJ 07004
*Attorneys for Plaintiffs*

Paul O. Paradis, Esq.
**Horwitz, Horwitz & Paradis**
28 West 44th Street, 16th Floor
New York, NY 10036
*Attorneys for Plaintiffs*

3. Also on February 19, 2008, I served each of the preceding documents *via* electronic mail and regular mail upon the following counsel:

Michael Schwartz, Esq.
**Horwitz, Horwitz & Paradis**
28 West 44th Street, 16th Floor
New York, NY 10036
mschwartz@hhplawny.com
*Attorneys for Plaintiffs*

Michael J. Chepiga, Esq.
**Simpson Thacher & Bartlett LLP**
425 Lexington Avenue
New York, NY 10017-3954
mchepiga@stblaw.com
*Attorneys for Defendant Ernest Stanley O'Neal*

Jason M. Halper, Esq.
**Cadwalader, Wickersham & Taft LLP**
One World Financial Center
New York, NY 10281
jason.halper@cwt.com
*Attorneys for Defendants Carol T. Christ,*
*Armando M. Codina, Virgis W. Colbert,*
*Alberto Cribiore, John D. Finnegan,*
*Judith Mayhew Jonas, Aulana L. Peters,*
*Joseph W. Prueher, Ann N. Reese and Charles O. Rossotti*

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: February 19, 2008
Newark, New Jersey

Geoffrey A. North

2

#1270799 v1
101454-61824

Michael R. Griffinger
Geoffrey A. North
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102-5310
mgriffinger@gibbonslaw.com
Tel:  973-596-4500
Fax:  973-639-6294

Jay B. Kasner (*Pro Hac Vice* Application to be filed)
Scott D. Musoff
**SKADDEN, ARPS, SLATE,**
**MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
Tel: 212-735-3000
Fax: 212-735-2000

*Co-Counsel for Nominal Defendant*
*Merrill Lynch & Co., Inc.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID EIDMAN, Derivatively on Behalf of MERRILL LYNCH & CO., INC., | Civil Action No. 08-126 (SDW) (MCA) |
| Plaintiffs, | *Document Electronically Filed.* |
| v. | |
| ERNEST STANLEY O'NEAL, CAROL T. CHRIST, ARMANDO M. CODINA, VIRGIS W. COLBERT, ALBERTO CRIBIORE, JOHN D. FINNEGAN, JUDITH MAYHEW JONAS, AULANA L. PETERS, JOSEPH W. PRUEHER, ANN N. REESE and CHARLES O. ROSSOTTI, | |
| Defendants, | **NOTICE OF APPEARANCE OF GEOFFREY A. NORTH** |
| and | |
| MERRILL LYNCH & CO., INC., | |
| Nominal Defendant. | |

PLEASE TAKE NOTICE that the undersigned hereby enters his appearance as counsel in this action for Nominal Defendant's Merrill Lynch & Co., Inc. in the above captioned action. Please serve copies of all papers in the captioned action upon the undersigned attorney at the e-mail address listed below.

PLEASE TAKE FURTHER NOTICE that I am an attorney associated with Gibbons, P.C. I am working on the above captioned matter with Michael R. Griffinger on behalf of Merrill Lynch & Co., Inc. I am a registered Electronic Case Filing user.

PLEASE TAKE FURTHER NOTICE that I hereby respectfully request that my appearance on behalf of Merrill Lynch & Co., Inc. be duly noted and that any future Notices of Electronic Filing in the above captioned matter also be sent to me through the CM/ECF System.


Dated:   February 20, 2008          By:      s/Geoffrey A. North
         Newark, New Jersey                  Michael R. Griffinger, Esq.
                                             Geoffrey A. North, Esq.
                                             GIBBONS P.C.
                                             One Gateway Center
                                             Newark, New Jersey 07102
                                             973 596 4500 - Phone
                                             973 596 0545 - Fax
                                             gnorth@gibbonslaw.com

LAW OFFICES OF JAMES V. BASHIAN, P.C.
James V. Bashian, Esq. (JB-6331)
271 Route 46 West, Suite F207
Fairfield, New Jersey 07004
Tel: (973) 227-6330
Fax: (973) 808-8665

Attorney for Plaintiff

[Additional Counsel Appear on Signature Page]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| David Eidman, | ) | **CASE NO. 08-CV-00126** |
| Derivatively On Behalf of | ) | |
| MERRILL LYNCH & CO., INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPLY BRIEF IN FURTHER** |
| | ) | **SUPPORT OF PLAINTIFF'S** |
| ERNEST STANLEY O'NEAL, | ) | **MOTION TO REMAND** |
| CAROL T. CHRIST, ARMANDO M. | ) | |
| CODINA, VIRGIS W. COLBERT, | ) | |
| ALBERTO CRIBIORE, JOHN D. | ) | |
| FINNEGAN, JUDITH MAYHEW JONAS, | ) | |
| AULANA L. PETERS, JOSEPH W. | ) | |
| PRUEHER, ANN N. REESE and | ) | |
| CHARLES O. ROSSOTTI, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MERRILL LYNCH & CO., INC., | ) | |
| | ) | |
| Nominal Defendant. | ) | |
| _____ | ) | |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................... ii

INTRODUCTION ................................................................................1

PRELIMINARY STATEMENT ................................................................1

ARGUMENT .....................................................................................4

DEFENDANT'S REMOVAL OF THIS ACTION
WAS IMPROPER BECAUSE THE COMPLAINT
DOES NOT ALLEGE ANY CLAIMS FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS ...............................4

    A.     There Are No Disputed and Substantial
            Federal Securities Laws Issues .................................................5

    B.     The Courts in <u>Fagin</u> and <u>Gargiulo</u> Disagree with
            the <u>Wietschner</u> Decision ..........................................................9

    C.     Plaintiff Does Not Allege
            a Cause of Action for Contribution..........................................11

CONCLUSION..................................................................................12

## TABLE OF AUTHORITIES

**Page**

### CASES

D'Alessio v. N.Y. Stock Exch., Inc.,
258 F.3d 93 (2d Cir. 2001)...........................................................................10

Fagin v. Gilmartin,
No. 03-2631, 2007 U.S. Dist. Lexis 7256 (D.N.J. Feb. 1, 2007)...................8, 9, 10, 11

Gargiulo v. Decker,
No. SACV05-00103, 2005 U.S. Dist. LEXIS 6002
(C.D. Cal. March 30, 2005) ...........................................................................6, 7, 9, 10

Gobble v. Hellman,
No. 1:02CV0076, 2002 U.S. Dist. LEXIS 26833 (N.D. Ohio Mar. 26, 2002)............10

Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.,
545 U.S. 308 (2005)...........................................................................4, 10

Lander v. Hartford Life & Annuity Ins. Co.,
251 F.3d 101 (2d Cir. 2001)...........................................................................10

Wietschner v. Gilmartin,
No. 02-4879, 2003 U.S. Dist. LEXIS 18997 (D.N.J. Jan. 14, 2003)......................9, 10

### STATUTES

15 U.S.C. § 78bb(f)(3)(5)(C) ...........................................................................10

**INTRODUCTION**

Plaintiff David Eidman ("Plaintiff") respectfully submits this reply memorandum of law in further support of his motion to remand this action to the Superior Court of New Jersey.

**PRELIMINARY STATEMENT**

Contrary to Defendant's arguments, Plaintiff's allegations do not raise disputed and substantial federal securities law issues. Accordingly, this action was improperly removed to federal court.

This shareholder derivative action alleges breaches of fiduciary duties, abuse of control, gross mismanagement, waste of corporate assets and violations of quasi contract/unjust enrichment. The gravamen of Plaintiff's Amended Derivative Complaint ("Complaint or "Cplt., ¶__") is that Merrill Lynch & Co., Inc.'s ("Merrill" or "Defendant") board of directors ("Director Defendants") knowingly abdicated their credit risk management responsibilities and thereby caused Merrill to: (i) incur losses exceeding $7.9 billion in the third quarter of 2007 as a result of reckless investments in high risk Collateralized Debt Obligations ("CDOs"); (ii) be exposed to over $40 billion in CDOs as of July 2007; and (iii) allow Director Defendant Stanley O'Neal to resign and receive a full retirement package worth over $160 million. Cplt., ¶ 2.

Central to Plaintiff's Complaint is the allegation that Merrill had an internal Process Risk Management Program that "the Director Defendants…completely disregarded…and, as a result, permitted Merrill to engage in and become exposed to highly risky investments such that Merrill's financial risk exposure was materially beyond the risk levels permitted by Merrill's Process Risk Management Program." Cplt.,

¶ 28.   Remarkably, the truth of this allegation was admitted by Merrill's new Chief Executive Officer John Thain in a January 18, 2008 Wall Street Journal article wherein Mr. Thain stated, "Merrill had a Risk Committee.  It just didn't function."  (Emphasis added.)

Merrill's overall exposure to the volatile CDOs of subprime mortgage backed securities exceeded $41 billion as of late June of 2007. Cplt., ¶ 45.  Despite Merrill's over-exposure in risky CDOs, the Director Defendants recklessly failed to require that Merrill's officers act in the best long and short term interests of Merrill. See, e.g., Cplt., ¶ 41 ("Director Defendants should have inquired and/or acted to insure that these investments were conducted in accordance with Merrill's Process Risk Management Program.  By failing to do so, the Director Defendants breached the fiduciary duties that each of them owed to Merrill").

It took a $7.9 billion loss for the Director Defendants to begin to address the failure to adhere to Merrill's stated Process Risk Management Program, and thereby limit the Company's exposure to high risk CDOs.  Only after Merrill had suffered billions of dollars in damages did Merrill create the position entitled Chief Risk Officer  who was to have the primary responsibility of monitoring both market and credit risk functions. Cplt., ¶ 67.

The Complaint details the fiduciary and other duties that the Director Defendants completely and recklessly abdicated in violation of state law. See, e.g., Cplt., ¶ 20 ("Finance Committee is primarily responsible for…[c]redit and market risk management."); Cplt., ¶ 21 ("Defendants…owed Merrill fiduciary obligations of fidelity, trust, loyalty, candor, and due care and… have a duty to manage the Company's exposure

to credit and market risk in order to prevent losses."); Cplt., ¶ 25 ("as…directors of a publicly held company, Defendants had a duty to assure themselves and shareholders that Merrill would not write down over $7.9 billion of losses due to its positional overexposure in risky CDOs");. Cplt., ¶ 30 (Director Defendants' failure to fulfill their fiduciary responsibilities led to Merrill's failure to adhere to its stated risk management policies).

The Complaint also identifies the substantial corporate assets that the Director Defendants wasted. For example, in addition to causing the Company to incur billions of dollars in losses in CDOs, the Director Defendants, rather than firing Defendant O'Neal for presiding over the Company's biggest loss in 100 years, rewarded him with a $160 million retirement package. Cplt., ¶ 59.

Because the Complaint only alleges state law claims for breach of fiduciary duty and does not allege claims for violations of the federal securities laws, this action was improperly removed, and this Court should now remand the action to the New Jersey Superior Court where is was originally and properly filed.

As detailed above and in the Complaint, the issues relating to federal securities laws cited by Defendant are entirely contrived, and are not necessary or substantial issues that need to be resolved. Further, Plaintiff alleges no cause of action the prosecution of which fundamentally relies on the interpretation of federal law. Defendant's Memorandum of Law ("Defs. Br.") attempts to sidestep this point by repeatedly citing to the scant few paragraphs in the Complaint that mention federal securities laws. Defendant fails to appreciate that the mere mention of the federal securities laws in the Complaint does not transform this action alleging violations of state law into an action

'arising under' federal law. Although the violation of the securities laws may be one of the many consequences of Defendant's conduct, that does not require the trial court to decide issues of federal law.

Moreover, Defendant's bald assertion that federal securities issues form Plaintiff's basis for "seeking indemnification and contribution on behalf of the Company" does not make it true. Plaintiff does not request contribution or indemnification in any of the Counts in the Complaint, either explicitly or implicitly. The corporate waste alleged throughout the Complaint is based on a number of factors, including the billions of dollars lost a result of the reckless CDO strategy (Cplt., ¶ 29); the unjustifiable "reward" of over $160 million paid to Defendant O'Neal (Cplt., ¶ 59); and the costs of defending the Company from the class actions brought against it – none of which involve any allegation that the federal securities laws were violated or require the trial court to determine issues of federal law.

All of Plaintiff's allegations can and should be adjudicated in New Jersey state court.

## ARGUMENT

### DEFENDANT'S REMOVAL OF THIS ACTION WAS IMPROPER BECAUSE THE COMPLAINT DOES NOT ALLEGE ANY CLAIMS FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

A fair reading of the Complaint reveals purely state-law claims which do <u>not</u> "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." <u>Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.</u>, 545 U.S. 308, 312 (2005).

A.    There Are No Disputed and Substantial
       Federal Securities Laws Issues

Defendant repeatedly cites paragraph 73(b) of the Complaint (see, e.g., Defs. Br. at 3, 4, 7, 9), in a vain attempt to re-cast the Complaint as having causes of action which implicate violations of federal law.  The Court should reject such tactics. The heart of this Complaint does not involve allegations that the Director Defendants caused false statements to be issued in Merrill's SEC filings.  Rather, central to the Complaint is the allegation that the Director Defendants breached their fiduciary duties by recklessly ignoring Merrill's imprudent overexposure to billions of dollars of risky investments. Cplt., ¶ 2 (the action seeks to remedy Defendants' breach of fiduciary duties); id., ¶¶ 21-25 (enumerates the numerous duties that the Director Defendants failed to adhere to); id., ¶¶ 44-55 (discusses the overexposure to CDOs and the fact that the Director Defendants did not question this imprudent investment strategy).

Plaintiff does not allege that the damages were necessarily caused to the Company by the violations of the securities laws.  To the contrary, the relief requested derives from the necessary and substantial violations of state law vis-à-vis the Director Defendants' voluntary abdication of their fiduciary responsibilities, which resulted in tens of billions of dollars in damages to Merrill from February 2007 through the third fiscal quarter of 2007.

Moreover, Defendant's attempt to justify their argument that a federal issue is substantial and necessary to the adjudication of Plaintiff's claims by citing to 8 paragraphs of the 97 paragraph Complaint that mention the securities laws is flawed. Defs. Br. at 7.  Not one of these paragraphs can be  viewed as containing a necessary or substantial element of any of Plaintiff's claims because the substantial damages incurred

by the Company arose from the Director Defendants' violations of their duties of loyalty and good faith when they violated their own credit risk policies and caused the Company to engage in unsound underwriting practices. See, e.g., Gargiulo v. Decker, No. SACV05-00103, 2005 U.S. Dist. LEXIS 6002 at *2-4 (C.D. Cal. March 30, 2005).

In Gargiulo, plaintiff brought a shareholder derivative suit under state statutory and common law on behalf of Conexant Systems, Inc. Defendants removed the action to federal court and the plaintiff moved to remand the action. In remanding the action, the court took note that the complaint made numerous references to the federal securities laws:

> (1) Individual Defendants "participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and [SEC] filings,"
>
> (2) the Individual Defendants had a duty to:
>
> (a) "ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and investing public,";
>
> (b) "to comply with federal and state securities laws,"; and
>
> (c) "ensure that the Company was operated in a diligent, honest and prudent manner in compliance with all applicable federal, state and local laws, rules and regulations,";
>
> (3) "In addition, as a result of defendants' illegal actions and course of conduct . . . the Company is now the subject of several class action law suits that allege violations of federal securities laws. As a result, Conexant has expended and will continue to expend significant sums of money,"; and
>
> (4) Plaintiff has not made any demand on the board of Conexant to bring suit since:
> (a) "it is their actions that have subjected Conexant to millions of dollars in liability for possible violations of applicable securities laws,"; and

(b) "[a]ny suit by the current directors . . . would likely expose the Individual Defendants and Conexant to further violations of the securities laws . . .,"

Id. at *5-6 (internal citations omitted) (emphasis added).

Nevertheless, the court remanded the action and dismissed nearly identical arguments as those made by Defendant here. The court held that despite all of the references to the federal securities laws, the federal issues were not "essential elements of any of Plaintiff's state law claims." Gargiulo, 2005 U.S. Dist. LEXIS 6002 at *6 (emphasis added). Significantly, the court found that "the complaint does not refer to specific provisions of federal securities laws allegedly violated herein. The general references to the federal securities laws are never made as the sole or predominant reason for Plaintiff's claims." Id. at *8 (emphasis added).

In the instant litigation, the Complaint may mention the federal securities laws, but the sole allegation in the Complaint concerning the violation of the federal securities laws are contained in only one paragraph out of the 97 paragraphs in the Complaint, namely, paragraph 73(b), which Defendant cites to 9 times in their brief. The allegation that Director Defendants' caused legal liability for Merrill by violating the securities laws, however, was asserted in order to demonstrate that demand on the Director Defendants would be futile and not for the purpose of establishing any liability on the part of the Director Defendants for violation of the federal securities laws.

Contrary to Defendant's assertions, the Complaint is not "actually replete with allegations that Merrill Lynch's board of directors violated the federal securities laws." Defs. Br. at 1. Indeed, the necessary and substantial allegations laid out in the Complaint stem from the violations of the Director Defendants' duties to enforce the Company's

risk management policies and procedures so as to not overexpose the Company to injurious high risk; a claim created and controlled by under state law. The Complaint contains specific allegations that the Director Defendants breached their fiduciary duties and caused Merrill to suffer billions of dollars in losses. Cplt., ¶ 1 ("connection with breaches of their fiduciary duties of loyalty, due care and oversight of Merrill's imprudent underwriting of [CDOs] and insufficient internal controls and mismanagement by the Company's managing senior executives between 2003 and 2007"); id., ¶ 2 ("This shareholder derivative suit seeks to remedy Defendants' breach of fiduciary duties, abuse of control, and gross mismanagement arising out of a wrongful course of business conduct…"), id., ¶¶ 21-25 ("Defendants' Duties"); id., ¶¶ 26-30 (describing Director Defendants' failure to adhere to Merrill's internal risk management program); id., ¶¶ 41-42 (Director Defendants' failure to inquire about Merrill's poor investment strategy); id., ¶¶ 44-55 (describes Merrill's overexposure in CDOs); see also id., ¶¶ 19, 20, 58-60, 66, 67, 69, 73(a), 73(b)(iii) and (iv), 75-76, 79-81, 82-86, 87-91, 92, 95-97.

Moreover, the facts in Fagin v. Gilmartin are squarely on point. Fagin v. Gilmartin, No. 03-2631, 2007 U.S. Dist. Lexis 7256 (D.N.J. Feb. 1, 2007) (Chesler, J.). Indeed, Defendant's attempts to distinguish Fagin are not only unpersuasive; they squarely support Plaintiff's position. Defendant contends that in Fagin "plaintiff's complaint did not allege that the directors were liable for violating the federal securities laws and plaintiff's right to relief did not depend on the construction of federal law." Defs. Br. at 12. This statement, however, misses the point. Fagin holds that even though the complaint "alleg[es] that one component of the alleged wrongdoing was, in essence,

making false filings with the SEC (<u>id.</u> at *13), such allegations did not "<u>raise a substantial</u> <u>and disputed question of federal law.</u>" <u>Id.</u> at *13.

Thus, the <u>Fagin</u> court rejected the very same argument that Defendant advances here -- namely, that the merits of the plaintiff's state law claims necessarily required the court to resolve whether the acts alleged to constitute breach of fiduciary duty violated federal securities laws. <u>Id.</u> at *13. In so doing, the court found that the violations of federal securities laws was <u>not</u> an essential element of plaintiff's state law derivative suit alleging state law breaches of fiduciary duty. The same holds true for Plaintiff's claims herein, <u>i.e.</u>, that Plaintiff's "right to relief [does] not depend on the construction of federal law." Defs. Br. at 12.

### B. The Courts In <u>Fagin</u> and <u>Gargiulo</u> Disagree with the Wietschner Decision

Defendant relies heavily on <u>Wietschner v. Gilmartin</u>, No. 02-4879, 2003 U.S. Dist. LEXIS 18997 (D.N.J. Jan. 14, 2003) (Cooper, J.), a decision criticized by two courts, including the <u>Fagin</u> court, for lacking an appropriate analysis. Indeed, the courts in <u>Fagin</u> and <u>Gargiulo</u> both analyzed the <u>Wietschner</u> decision and flat out disagreed with that court's reasoning, or lack thereof.

In <u>Fagin</u>, the court provided its own legal and factual analysis, and then stated:

> For the reasons discussed above**,** <u>this Court respectfully disagrees with the</u> <u>analysis of the Wietschner court</u>. At the core of this case, the injuries of which Plaintiffs complain arise from Defendants' alleged breach of duties created and defined by state law. <u>The fact that a court may have to look to</u> <u>federal law to evaluate whether Defendants' alleged misconduct violated</u> <u>their state law obligations does not, in this case, elevate the federal law</u> <u>aspect of the alleged misconduct into a substantial question of federal law.</u>

<u>Fagin</u>, 2007 U.S. Dist. Lexis 7256 at *19 (emphasis added).

The court in <u>Gargiulo</u> reached the very same conclusion:

> The rationale of <u>Wietschner</u> is also <u>unhelpful</u> since the <u>court merely stated that the breach of fiduciary duty claim was "primarily" based on federal securities laws without explaining what made it "primarily" so, and the court relied on D'Alessio, which, as described above, is inapplicable.</u>[1]

<u>Gargiulo</u>, 2005 U.S. Dist. LEXIS 6002 (emphasis added).[2]

Accordingly, Plaintiff's allegations of violations of state law do not require interpretation of federal law or any duties which are exclusively federal in nature. Therefore, federal securities law issues are not substantial and necessary issues herein, and as such, this Court lacks jurisdiction over this action.[3]

---

[1]     <u>D'Alessio v. N.Y. Stock Exch., Inc.</u>, 258 F.3d 93 (2d Cir. 2001) involved an action premised on duties derived exclusively from federal law -- the Exchange Act of 1934.  Here, the duties that the directors were required to abide to are <u>exclusively</u> derived from state law.

[2]     Defendant also incorrectly relies on <u>Gobble v. Hellman</u>, No. 1:02CV0076, 2002 U.S. Dist. LEXIS 26833 (N.D. Ohio Mar. 26, 2002). The <u>Gobble</u> court actually supports Plaintiff's position by acknowledging that "allegations that simply provide a factual basis for a claim and which could independently support either a state law claim or a federal law claim are generally not sufficient to create a substantial question of federal law or to confer jurisdiction to the federal courts." Id. at *8 n.1.  Here, the facts in the Complaint strongly and independently support the state law fiduciary duty claims.

[3]     Defendant incorrectly claims that Congress intended shareholder derivative actions containing federal securities laws questions remain in federal court. (Defs. Br. at 13-14). Indeed, the State Law Uniform Standards Act ("SLUSA"), which allows for the removal of any "covered class action" to federal court, has a specific carve out  for "an exclusively derivative action brought by one or more shareholders on behalf of a corporation." 15 U.S.C. § 78bb(f)(3)(5)(C); <u>see</u> <u>Lander v. Hartford Life & Annuity Ins. Co.</u>, 251 F.3d 101, 113 (2d Cir. 2001). Congress intended the shareholder derivative action to remain in state court and removal of this action would "disturb the congressionally approved balance of federal and state judicial responsibilities." <u>Grable</u>, 545 U.S. 308 at 312.

### C.     Plaintiff Does Not Allege
###         a Cause of Action for Contribution

Defendant further argues that "implicit within an attempt to recover for legal liability incurred by the Company for alleged violations of the securities laws and ERISA is a claim for contribution." Defs. Br. at 11.

Defendant's argument is particularly odd because the Complaint does not allege any cause of action for contribution or indemnification.  In apparent recognition of this fact, Defendant urges this Court to improperly imply such a cause of action.  Not surprisingly, Defendant has not cited any case  to support this position.

 Moreover, in Fagin, where the plaintiff specifically alleged a cause of action for indemnification and contribution for violations under the securities laws, the court held that the state court was the proper forum to evaluate and assess the merits of that cause of action. Fagin, 2007 U.S. Dist. Lexis 7256 at *2-3, 20. Thus, even if the Court were to construe any portion of the Complaint as alleging a claim for either contribution or indemnification, such construction would not confer jurisdiction to this Court.

Defendant also alleges that Plaintiff confines his allegations concerning corporate waste to issues of liability under the federal securities laws.  See Defs. Br. at 10.  Such a claim is disingenuous at best, since Defendant has intentionally omitted the allegations that are at the heart of Plaintiff's Complaint. For example, in paragraph 93, which is cited by Defendant, Defendant uses an ellipse to omit Plaintiff's allegations that the Director Defendants are liable for corporate waste for, "awarding excessive compensation to senior executives…" See also Cplt., ¶¶ 59, 73(b)(iv).   Since Plaintiff has alleged acts of waste which have nothing to do with liability arising under with the federal securities

laws or ERISA, and instead directly impact state laws of corporate waste, Defendant's argument that Plaintiff's claims belong in federal court is without merit.

Thus, Defendant's argument that Plaintiff is seeking contribution under a federal statute in this shareholder derivative action is incorrect as a matter of both fact and law. Accordingly, this action should be remanded to the Superior Court of New Jersey.

## **CONCLUSION**

On the basis of the foregoing and the entirety of the record in this action, Plaintiff respectfully requests that this Court immediately remand this improperly removed shareholder derivative action to the Superior Court of New Jersey, Bergen County, Law Division.

Dated: February 25, 2008

LAW OFFICES OF JAMES V. BASHIAN, P.C..
By: /S/ James V. Bashian
James V. Bashian, Esq. (JB-6331)
271 Route 46 West, Suite F207
Fairfield, New Jersey 07004
Tel: (973) 227-6330
Fax: (973) 808-8665

Paul O. Paradis, Esq.
Michael A. Schwartz, Esq.
Gina M. Tufaro, Esq.
Edward Kroub, Esq.
**HORWITZ, HORWITZ &
PARADIS, Attorneys at Law**
28 West 44th Street, 16th Floor
New York, NY 10036
Phone: (212) 404-2200
Fax:      (212) 404-2226

Attorneys for Plaintiff

LAW OFFICES OF JAMES V. BASHIAN, P.C.
James V. Bashian, Esq. (JB-6331)
271 Route 46 West, Suite F207
Fairfield, New Jersey 07004
Tel: (973) 227-6330
Fax: (973) 808-8665

Attorney for Plaintiff

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| David Eidman,<br>Derivatively On Behalf of<br>MERRILL LYNCH & CO., INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>ERNEST STANLEY O'NEAL,<br>CAROL T. CHRIST, ARMANDO M.<br>CODINA, VIRGIS W. COLBERT,<br>ALBERTO CRIBIORE, JOHN D.<br>FINNEGAN, JUDITH MAYHEW JONAS,<br>AULANA L. PETERS, JOSEPH W.<br>PRUEHER, ANN N. REESE and<br>CHARLES O. ROSSOTTI,<br><br>    Defendants,<br><br>and<br><br>MERRILL LYNCH & CO., INC.,<br><br>    Nominal Defendant.<br>_____ | **CASE NO. 08-CV-00126 (SDW)(MCA)**<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>**ELECTRONICALLY FILED** |

### CERTIFICATE OF SERVICE

I hereby certify that on February 25, 2008, I electronically filed and served the foregoing Reply Brief in Further Support of Plaintiff's Motion to Remand and Certificate of Service with the Clerk of the District Court using the CM/ECF system pursuant to Local Civil Rule 5.2 on:

Michael R. Griffinger
GIBBONS, P.C.
One Gateway Center
Newark, NJ 07102-5310

Also, on February 25, 2008, I caused a true and correct copy of the foregoing Reply Brief in Further Support of Plaintiff's Motion to Remand and Certificate of Service upon the following counsel by regular mail:

Jay B. Kasner, Esq.
Scott D. Musoff, Esq.
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036

Michael J. Chepiga, Esq.
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017-3954

Dennis Block, Esq.
Jason M. Halper, Esq.
CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, New York 10281

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

/s/ James V. Bashian
JAMES V. BASHIAN



MICHAEL R. GRIFFINGER
Director

Gibbons P.C.
One Gateway Center
Newark, New Jersey 07102-5310
Direct: (973) 596-4701 Fax: (973) 639-6294
griffinger@gibbonslaw.com

February 27, 2008

**BY FEDERAL EXPRESS**

Hon. Susan D. Wigenton, U.S.D.J.
United States District Court, District of New Jersey
Martin Luther King, Jr. Federal Building & U.S. Courthouse
50 Walnut Street, Room 5060
Newark, New Jersey 07101

     **Re:   Eidman v. O'Neal, Civil Action No. 08-126 (SDW) (MCA)**

Dear Judge Wigenton:

     Gibbons P.C. is co-counsel for nominal defendant Merrill Lynch & Co., Inc. ("Merrill Lynch") in the above-referenced action.  As the Court is aware from the January 14, 2008 motion to stay filed by Merrill Lynch, Merrill Lynch filed with the Judicial Panel on Multidistrict Litigation a motion to transfer this action to the United States Court for the Southern District of New York (the "proposed transferee court") where 17 (now 18) related actions are pending, including *Operative Plasterers & Cement Masons Local 262 Pension and Annuity Funds v. O'Neal, et al.*, 07 CV 11085 (LBS) ("Operative Plasterers").

     We write to provide an update as to the Operative Plasterers Action.[1]  As the stay papers note, the Operative Plasterers action is a derivative action that was originally filed in New York state court and subsequently removed to the proposed transferee court.  The Operative Plasterers plaintiff had filed a substantially similar motion to remand in the transferee court to plaintiff's motion here.

     The Operative Plasterers motion had been scheduled to be heard at a conference in the proposed transferee court on February 21, 2008.  At the conference, the plaintiff in the Operative Plasterers action, conceding the existence of subject matter jurisdiction, filed a withdrawal of its motion to remand.  At the February 21 conference before the Honorable Leonard B. Sand, the Operative Plasterers plaintiff confirmed that it had earlier that day filed a notice of withdrawal of its remand motion and the court ordered that action consolidated with the other federal derivative actions.  Copies of the notice of withdrawal and the relevant portion of the hearing transcript are enclosed herein for the Court's information.

     Also at the February 21 conference, the proposed transferee court consolidated the Operative Plasterers actions with the pending derivative actions and set a schedule for the filing of a consolidated amended derivative complaint and a briefing schedule for a motion to dismiss.

---

[1] We recognize no sur-reply is permitted, so this letter is confined to an update on subsequent related procedural matters in the proposed transferee court.

GIBBONS P.C.

Hon. Susan D. Wigenton, U.S.D.J.
February 27, 2008
Page 2

The parties are preparing an order memorializing the schedule and we will provide the Court with a copy if the order when it is submitted to the proposed transferee court.

Respectfully submitted,

Michael R. Griffinger
Director

Enclosures

MRG/mcf

cc: Hon. Madeline Cox Arleo, U.S.M.J. (*via* Federal Express)
James V. Bashian, Esq. (*via* email and regular mail)
Paul O. Paradis, Esq. (*via* email and regular mail)
Michael Schwartz, Esq. (*via* email and regular mail)
Michael J. Chepiga, Esq. (*via* email and regular mail)
Jason M. Halper, Esq. (*via* email and regular mail)

THE BRUALDI LAW FIRM, P.C.
Richard Brualdi
29 Broadway, Suite 2400
New York, New York 10006
Tel: (212) 952-0602
Fax: (212) 952-0608

SAXENA WHITE P.A
Maya Saxena
Joseph E. White III
Christopher S. Jones
2424 North Federal Highway
Suite 257
Boca Raton, FL 33431
Tel: 561.394.3399
Fax: 561.394.3082

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OPERATIVE PLASTERERS & CEMENT MASONS LOCAL 262 PENSION AND ANNUITY FUNDS, Derivatively On Behalf of Nominal Defendant MERRILL LYNCH & CO., INC., <br><br> Plaintiff, <br><br> vs. <br><br> E. STANLEY O'NEAL, AHMASS L. FAKAHANY, GREGORY J. FLEMING, JEFFREY N. EDWARDS, CAROL T. CHRIST, ARMANDO D. CODINA, VIRGIS W. COLBERT, ALBERTO CRIBIORE, JOHN D. FINNEGAN, JUDITH MAYHEW JONAS, JOSEPH W. PRUEHER, ANN N. REESE, CHARLES O ROSOTTI, <br><br> Defendants, <br><br> and <br><br> MERRILL LYNCH & CO., INC., <br><br> Nominal Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) **CASE NO. 07-CV-11085** |

## PLAINTIFF'S NOTICE OF WITHDRAWAL OF MOTION TO REMAND

Plaintiff Operative Plasterers & Cement Masons Local 262 Pension and Annuity Funds

hereby gives notice that it is withdrawing its motion to remand the above-referenced action to the

Supreme Court of the State of New York.

Dated: February 21, 2008

By:_____S/_____
Richard Brualdi

**The Brualdi Law Firm, P.C.**
Richard Brualdi
29 Broadway, Suite 2400
New York, New York 10006
Tel: (212) 952-0602
Fax:  (212) 952-0608

**SAXENA WHITE P.A**
Maya Saxena
Joseph E. White III
2424 North Federal Highway
Suite 257
Boca Raton, FL 33431
Tel: 561.394.3399
Fax: 561.394.3082

**Attorneys for Plaintiff**

28LTESTC                    Conference

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   ELIZABETH ESTEY, individually
    and on behalf of all others
4   similarly situated,

5                Plaintiffs,

6          v.                        07 CV 9633 (LBS)
                                     Related Cases:
7   MERRILL LYNCH & CO., et al.,     07 CV 9696 (LBS)
                                     07 CV 9888 (LBS)
8            Defendants.             07 CV 10268 (LBS)
                                     07 CV 10273 (LBS)
9   ------------------------------x  07 CV 10398 (LBS)
                                     07 CV 10569 (LBS)
10                                   07 CV 10661 (LBS)
                                     07 CV 10687 (LBS)
11                                   07 CV 10710 (LBS)
                                     07 CV 10984 (LBS)
12                                   07 CV 11054 (LBS)
                                     07 CV 11080 (LBS)
13                                   07 CV 11085 (LBS)
                                     07 CV 11615 (LBS)
14                                   07 CV 11626 (LBS)
                                     08 CV 0058 (LBS)
15                                   08 CV 01116 (LBS)

16  Before:

17              HON. LEONARD B. SAND, District Judge
                     ANDREW J. PECK, Magistrate Judge
18                   DOUGLAS F. EATON, Magistrate Judge

19                   APPEARANCES

20  BERGER & MONTAGUE
         Attorneys for Plaintiff Ohio State Teachers Retirement
21  System
    BY:  MERRILL G. DAVIDOFF
22       LAWRENCE J. LEDERER

23  MARC DANN
         STATE OF OHIO ATTORNEY GENERAL
24  BY:  BRITT K. STROTTMAN, Assistant Attorney General

25


                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

2

28LTESTC                    Conference

1

2    KAPLAN, FOX & KILSHEIMER
          Attorneys for Plaintiff Ohio State Teachers Retirement
3    System
     BY:  ROBERT N. KAPLAN
4         FREDERIC S. FOX

5    BARRACK, RODOS & BACINE
          Attorneys for Plaintiff Ohio State Teachers Retirement
6    System
     BY:  JEFFREY A. BARRACK
7         M. RICHARD KOMINS
          A. ARNOLD GERSON
8

9    POMERANTZ, HAUDEK, BLOCK, GROSSMAN & GROSS
          Attorneys for Plaintiff James Conn
     BY:  STANLEY M. GROSSMAN
10        PATRICK V. DAHLSTROM

11   COTCHETT, PITRE & McCARTHY
          Attorneys for Plaintiff James Conn
12   BY:  MARK C. MOLUMPHY

13   LAW OFFICE OF CURTIS V. TRINKO
          Attorneys for Plaintiffs Elizabeth Estey and Tara Moore
14   BY:  CURTIS V. TRINKO

15   KELLER ROHRBACK
          Attorneys for Plaintiff Elizabeth Estey
16   BY:  LYNN LINCOLN SARKO

17   COHEN MILSTEIN
          Attorneys for Plaintiffs Carl Esposito, Barbara Boland and
18   Ann Molin
     BY:  MARK I. MACHIZ
19        LYNDA J. GRANT

20   HARWOOD FEFFER
          Attorneys for Plaintiff Christine Donlon
21   BY:  SAMUEL K. ROSEN

22   SHALOV, STONE, BONNER & ROCCO
          Attorneys for Plaintiff Mary Gidaro
23   BY:  RALPH M. STONE

24   ZIMMERMAN REED
          Attorneys for Plaintiffs Barbara Boland and Ann Molin
25   BY:  CAROLYN GLASS ANDERSON

```
28LTESTC                    Conference
```

```
 1   JOHNSON BOTTINI
          Attorneys for Plaintiff Patricia Arthur
 2   BY:  FRANCIS A. BOTTINI, JR.

 3   LAW OFFICES OF THOMAS G. AMON
          Attorneys for Plaintiff Patricia Arthur.
 4   BY:  HARRY H. WISE, III

 5   MURRAY, FRANK & SAILER
          Attorneys for Plaintiff Gary Kosseff
 6   BY:  MARVIN L. FRANK

 7   STULL, STULL & BRODY
          Attorneys for Plaintiff Gregory Yghur
 8   BY:  EDWIN J. MILLS

 9   BROWER PIVEN
          Attorneys for Plaintiff Miriam Loveman
10   BY:  DAVID A. P. BROWER

11   SAXENA WHITE
          Attorneys for Plaintiff Local 1262
12   BY:  JOSEPH E. WHITE, III

13   CADWALADER, WICKERSHAM & TAFT
          Attorneys for Defendant Merrill Lynch
14   BY:  GREGORY A. MARKEL

15   SKADDEN, ARPS, SLATE, MEAGHER & FLOM
          Attorneys for Defendant Merrill Lynch
16   BY:  JAY B. KASNER
          SCOTT D. MUSOFF
17
     SHEARMAN & STERLING
18        Attorneys for Defendants other than Merrill Lynch
     BY:  STUART J. BASKIN
19        ADAM HAKKI

20

21

22

23

24

25
```

28LTESTC                    Conference

1          (In open court)

2          JUDGE SAND:  Magistrate Eaton, Magistrate Peck is on

3   the far right and I'm in the middle, and you may all be seated.

4   And I take it everybody who should appropriately do so has

5   noticed their appearance.

6          Am I to take it that all of the parties have received

7   copies of the February 15th letter from Jay Kasner from Skadden

8   Arps, counsel for the defendants, who writes:  With a consent

9   of all defendants to summarize the matters presently before the

10  Court.  Which letter we'll mark as Court Exhibit A, today's

11  date.  And my thought is to take up the matters in the order

12  set forth in that letter.

13         We have a group of cases which are called Federal

14  Security Act cases, we have a group of cases which are

15  derivative suits, we have got a group of cases that are ERISA

16  cases, and Mr. Conn would have us have another category which

17  are the merger cases.

18         With respect to the federal security cases,

19  Mr. Kasner --

20         Is Mr. Kasner here?

21         MR. KASNER:  Good afternoon, your Honors.

22         JUDGE SAND:  -- says in his letter that Ohio STRS is

23  currently the only movant seeking to be lead plaintiff to

24  represent the putative class of acquirers of Merrill Lynch

25  stock.  Is there --

28LTESTC                    Conference

1   and so on, and applying all the relevant factors I conclude

2   that Keller Rohrback and Cohen Milstein should serve as the

3   interim lead counsel on behalf of the ERISA claimants.  And of

4   course relying, as I think we should all be able to rely, on

5   the fact that there will be full cooperation and opportunity to

6   participate on the part of other counsel.

7              Now what is the status with respect to the derivative

8   suits?

9              MR. BROWER:  Good afternoon, your Honor, David Brower

10  from Brower Piven.  May I approach the court reporter?  I

11  didn't get a chance to give him my card.

12             JUDGE SAND:  Yes.

13             MR. BROWER:  With respect to the derivative cases,

14  originally there were two federal actions, the Arthur case and

15  the Loveman case.  There is now a third case that was removed

16  to federal court and there had been a remand motion.  The

17  remand motion has been withdrawn.

18             JUDGE SAND:  Just for the record, I think we received

19  a telephone call.  Who is it who brought the remand motion?

20             MR. WHITE:  Your Honor, that was me, Joseph White from

21  Saxena White.

22             JUDGE SAND:  Has it in fact been withdrawn?

23             MR. WHITE:  Yes, it has.  I wanted to give the Court

24  as much notice as possible.

25             JUDGE SAND:  Thank you.  Good move.

1          MR. BROWER:  The plaintiffs and the counsel in the

2     derivative actions have discussed this matter.  We are now

3     proposing to the Court a three-firm executive committee.  The

4     executive committee will also have the liaison counsel in New

5     York, which would be my firm, Brower Piven, which we are

6     headquartered here, and we would coordinate within the

7     derivative case and of course coordinate with the securities

8     and ERISA cases.

9          JUDGE SAND:  What are the names of the firms again?

10         MR. BROWER:  The names of the firms are Brower Piven,

11    Johnson Bottini and Saxena White.

12         JUDGE SAND:  And so that's one joint application?

13         MR. BROWER:  That is one joint application that

14    involves all of the cases pending before your Honor.

15         JUDGE SAND:  Any opposition to that?

16         Granted.

17         MR. BROWER:  Thank you, your Honor.  We'll submit an

18    order.

19         JUDGE SAND:  Please.

20         JUDGE PECK:  Actually what would be useful for all of

21    these, and you can tell me who wants to volunteer, is an order

22    that consolidates all of the securities actions under the

23    lowest securities number, which I believe is 07 Civil 9633, all

24    the derivative actions under its lowest number and all the

25    ERISA actions under its lowest number, list in that order what

28LTESTC                  Conference

1    all the cases are that are consolidated into each of those

2    three.  And we will also use the securities number, since it is

3    the lowest, for filings that apply to all cases, which we

4    presume will be most of the discovery filings.

5           Now does somebody want to volunteer on that?

6           MR. KAPLAN:  For the securities cases, Robert Kaplan,

7    Kaplan Fox.  We will, after consultation with our co-counsel

8    and the Ohio Attorney General's Office, we'll submit a proposed

9    order.

10          JUDGE SAND:  Thank you.

11          Is Mr. Conn here?

12          MR. GROSSMAN:  Stanley Grossman from the Pomerantz

13   firm.  I apologize, we tried to reach your Honor's chambers

14   earlier in the day.  We seek to withdraw our motion.  We have

15   had discussions with the now lead counsel for the acquiring

16   class and we reached an accommodation so that we're satisfied

17   the interests of the merging people that we represent will be

18   adequately represented.

19          JUDGE SAND:  Very well.

20          MR. KASNER:  Your Honor, if it please the Court, in

21   response to Magistrate Judge Peck's inquiry about preparation

22   of the order, I suspect it goes without saying that given the

23   familiarity we have had with many counsel, we probably can

24   agree upon the form of the order.  I know Mr. Kaplan obviously

25   assumed that in what he said to Magistrate Judge Peck, but we

1   would hope to be able to review it and submit something that

2   has been agreed upon.

3            MR. KAPLAN:  Of course.

4            JUDGE PECK:  Considering the number of firms, make it

5   a fast review and get it in.

6            MR. KAPLAN:  There's one other issue, your Honor.  Did

7   you want to discuss any schedule going forward?

8            JUDGE SAND:  Yes.  That's the next matter.  Somebody

9   propose a schedule.

10           MR. DAVIDOFF:  Yes, your Honor.  We have had

11  discussions with Mr. Kasner -- this is for the securities

12  cases -- we would propose that a consolidated amended complaint

13  on behalf of the securities plaintiffs be filed 60 days after

14  the entry of the order that Magistrate Judge Peck referred to.

15           JUDGE PECK:  Actually the order that is necessary to

16  trigger your PSLRA period is the order that Judge Sand has

17  dictated to the court reporter appointing the lead plaintiffs,

18  so that should start the time period.

19           MR. DAVIDOFF:  60 days, your Honor, for the

20  consolidated amended complaint, then I believe the defendants

21  requested 60 days, to which we had no objection, for a response

22  to the consolidated amended complaint.

23           JUDGE PECK:  Remind me, are those the maximums under

24  the PSLRA?  I thought there was a 30 day in there but I haven't

25  looked at it in a while.

28LTESTC                    Conference

1          MR. DAVIDOFF:  I think once the appointment is made,

2   Magistrate Judge Peck, that's the maximum.  I think at that

3   point the scheduling is within the discretion of the Court.

4   There is a 90-day maximum -- putative maximum which is often

5   exceeded within which the lead plaintiff application is

6   supposed to be considered.  But that's the time period that I

7   think your Honor is referring to.  So 60 and 60 then 30 I think

8   was the --

9          MR. KAPLAN:  To clarify, the PSLRA doesn't speak to

10  what happens after the appointment of lead counsel and lead

11  plaintiff, that's up to the Court how long the Court wants to

12  use for consolidated complaint or a motion.

13         JUDGE SAND:  So 60 days for the consolidated

14  complaint?

15         MR. DAVIDOFF:  Yes, your Honor.

16         JUDGE SAND:  And then?

17         MR. DAVIDOFF:  60 days for Merrill Lynch and the other

18  defendants to answer, move or otherwise respond to the

19  consolidated amended complaint, and then I think 30 was the

20  agreed period thereafter.

21         JUDGE SAND:  For?

22         MR. DAVIDOFF:  Well, if they move, presumably we will

23  need at least 30 days to respond to their motions.

24         JUDGE SAND:  Anybody to object to that schedule?

25         All right.

28LTESTC                    Conference

1          MR. KASNER:  Your Honor, I believe we discussed with

2     Mr. Fox an opportunity for the defendants to file a reply.

3          JUDGE SAND:  Reply to?

4          MR. KASNER:  To the opposition unless -- if there is

5     an opposition to the motion to dismiss, we would want 30 days

6     to file a reply in further support of the motion, your Honor.

7     And I believe plaintiffs' counsel agreed to that.

8          MR. FOX:  That's correct, your Honor.

9          JUDGE PECK:  Do you have a guess at this time,

10    Mr. Kasner, or anyone else representing the defendants, at

11    least based on the complaints you have seen so far, whether

12    we'll see the reflexive motion to dismiss?

13         MR. KASNER:  Magistrate Judge Peck, we have had the

14    pleasure of one another's company before --

15         JUDGE PECK:  Indeed.

16         MR. KASNER:  -- and as I hope your Honor knows, our

17    motions are certainly not reflexive.  In this case --

18         JUDGE PECK:  Reflexive was just an attempt to get a

19    little jab.

20         MR. KASNER:  And I thought it was all the

21    complimentary things plaintiffs' counsel had said about me you

22    Honor figured you wouldn't let Kasner walk out without

23    something.  But I appreciate that, your Honor.

24         Yes, there will be a motion to dismiss this case.

25    You've heard a lot about Enron, Worldcom, Global Crossing,

1   largest ERISA case in history.  I'm not here today to talk

2   about the merits, your Honor, but just because those names were

3   bandied about, this is not Enron, this is isn't Worldcom, it's

4   not Global Crossing, this is a case about an unprecedented

5   development in the credit markets that has affected the entire

6   U.S. banking system.

7          Thank you, your Honor.

8          JUDGE SAND:  I think you'll have lots of time and

9   opportunity to make that argument, but not now.

10         Anything further?

11         JUDGE PECK:  Are there going to be amended

12  consolidated complaints in any of the ERISA or derivative

13  actions?

14         MR. SARKO:  Yes, your Honor, Lynn Sarko on behalf of

15  the ERISA plaintiffs.  I would suggest that we file our amended

16  consolidated complaint 75 days only that it will push

17  everything two weeks later.  I'm sure that the defendants don't

18  want to be working on both responses at the same time, but a

19  suggestion would be that if they're filling theirs 60 days,

20  we're happy to use the same schedule.

21         JUDGE SAND:  Use the same schedule.  Having made such

22  an effective presentation of the resources available --

23         MR. SARKO:  We can do it in 30 days, your Honor.

24         JUDGE SAND:  Does anybody want to cut these dates

25  down?

28LTESTC                          Conference

1            JUDGE PECK:  On the derivatives?

2            MR. BROWER:  Your Honor, the derivative cases we'll

3       file on the same schedule.

4            JUDGE SAND:  Thank you.  Anything else?

5            Thank you all, we're adjourned.

6                                oOo

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



MICHAEL R. GRIFFINGER
Director

Gibbons P.C.
One Gateway Center
Newark, New Jersey 07102-5310
Direct: (973) 596-4701 Fax: (973) 639-6294
griffinger@gibbonslaw.com

March 17, 2008

**BY FEDERAL EXPRESS**

Hon. Susan D. Wigenton, U.S.D.J.
United States District Court, District of New Jersey
Martin Luther King, Jr. Federal Building & U.S. Courthouse
50 Walnut Street, Room 5060
Newark, New Jersey 07101

    Re:  **Eidman v. O'Neal, Civil Action No. 08-126 (SDW) (MCA)**

Dear Judge Wigenton:

    Gibbons P.C. is co-counsel for nominal defendant Merrill Lynch & Co., Inc. ("Merrill Lynch") in the above-referenced action. As stated in our February 27, 2008 letter, we write to provide the Court with a copy of the case management order entered by Judge Leonard B. Sand of the United States District Court for the Southern District of New York (the "Order"). As set forth in the Order, *Operative Plasterers & Cement Masons Local 262 Pension and Annuity Funds v. O'Neal, et al.*, 07 CV 11085 (LBS) ("Operative Plasterers"), a derivative action removed from New York state court, has been consolidated with two other derivative actions and a schedule has been set for filing an amended consolidated complaint (the "Amended Complaint") and for briefing in the event defendants move to dismiss the Amended Complaint.

Respectfully submitted,

s/ Michael R. Griffinger

Michael R. Griffinger
Director

Enclosure

MRG/mcf

cc:  Hon. Madeline Cox Arleo, U.S.M.J. (*via* Federal Express)
   James V. Bashian, Esq. (*via* email and regular mail)
   Paul O. Paradis, Esq. (*via* email and regular mail)
   Michael Schwartz, Esq. (*via* email and regular mail)
   Michael J. Chepiga, Esq. (*via* email and regular mail)
   Jason M. Halper, Esq. (*via* email and regular mail)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3-12-08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LIFE ENRICHMENT FOUNDATION, individually and on behalf of all others similarly situated, | |
| Plaintiff, | 07cv9633 (LBS)(AJP)(DFE) |
| v. | |
| MERRILL LYNCH & CO., INC., E. STANLEY O'NEAL, AHMASS L. FAKAHANY, GREGORY J. FLEMING, and JEFFREY N. EDWARDS, | |
| Defendants. | |

**[Additional Captions on Following Page]**

**[PROPOSED] ORDER REGARDING: (1) CONSOLIDATION OF SECURITIES ACTIONS, APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; (2) CONSOLIDATION OF DERIVATIVE ACTIONS AND APPOINTMENT OF PLAINTIFFS' EXECUTIVE COMMITTEE AND LIAISON COUNSEL; (3) CONSOLIDATION OF ERISA ACTIONS AND APPOINTMENT OF INTERIM CO-LEAD COUNSEL; AND (4) SCHEDULING OF THE FILING OF CONSOLIDATED AMENDED COMPLAINTS IN EACH OF THE ACTIONS AND RESPONSES THERETO**

PATRICIA ARTHUR, Derivatively on Behalf of
MERRILL LYNCH & CO., INC.,

                Plaintiff,

      v.

E. STANLEY O'NEAL, AHMASS L.
FAKAHANY, GREGORY J. FLEMING,
JEFFREY N. EDWARDS, CAROL T. CHRIST,
ARMANDO D. CODINA, VIRGIS W. COLBERT,
ALBERTO CRIBIORE, JOHN D. FINNEGAN,
JUDITH MAYHEW JONAS, JOSEPH W.
PRUEHER, ANN N. REESE, CHARLES O.
ROSSOTTI,

                Defendants(s).

        -and-

MERRILL LYNCH & CO., INC.,

                Nominal Defendant(s).

07cv9696 (LBS)(AJP)(DFE)

---

ELIZABETH ESTEY, Individually and On Behalf of
All Others Similarly Situated,

                Plaintiff,

      v.

MERRILL LYNCH & CO., INC., MERRILL
LYNCH & CO., INC. PLAN "INVESTMENT
COMMITTEE," MERRILL LYNCH & CO., INC.
PLAN ADMINISTRATIVE COMMITTEE,
MERRILL LYNCH & CO., INC. MANAGEMENT
DEVELOPMENT AND COMPENSATION
COMMITTEE, LOUIS DIMARIA, E. STANLEY
O'NEAL, ALBERTO CRIBIORE, ARMANDO M.
CODINA, VIRGIS W. COLBERT, JOHN D.
FINNEGAN, AULANA L. PETERS and JOHN
DOES 1-10,

                Defendants.

07cv10268 (LBS)(AJP)(DFE)

WHEREAS, the following captioned putative securities class actions (the "Securities Actions") are or were pending in this Court against defendant Merrill Lynch & Co., Inc. ("Merrill Lynch"), *et al.*, alleging purported violations of the federal securities laws:

    i)    *Life Enrichment Foundation v. Merrill Lynch & Co., Inc., et al.*, 07cv9633 (LBS) (the "*Life Enrichment* Action");

    ii)    *Michael J. Savena v. Merrill Lynch & Co., Inc., et al.*, 07cv9837 (LBS) (the "*Savena* Action")[1];

    iii)    *Gary Kosseff v. Merrill Lynch & Co., Inc., et al.*, 07cv10984 (LBS) (the "*Kosseff* Action")[2];

    iv)    *Robert R. Garber v. Merrill Lynch & Co., Inc., et al.*, 07cv11080 (LBS); and

    v)    *James Conn v. Merrill Lynch & Co., Inc., et al.*, 07cv11626 (LBS); and

WHEREAS, the following captioned shareholder derivative actions (the "Derivative Actions") are pending before this Court against certain current and/or former directors and/or officers of Merrill Lynch purportedly alleging, among other causes of action, breaches of fiduciary duties:

    i)    *Patricia Arthur v. E. Stanley O'Neal, et al.*, 07cv9696 (LBS);

    ii)    *Miriam Loveman v. E. Stanley O'Neal, et al.*, 07cv9888 (LBS); and

    iii)    *Operative Plasterers & Cement Masons Local 262 Pension and Annuity Funds v. E. Stanley O'Neal, et al.*, 07cv11085 (LBS); and

---

[1] On January 9, 2008, plaintiff in the *Savena* Action filed with the Court a Notice of Voluntary Dismissal Without Prejudice (Doc. No. 4), which was so ordered by the Court on February 5, 2008. (Doc. No. 13.)

[2] Plaintiff in the Kosseff Action filed an Amended Class Action Complaint on February 26, 2008 (the "Kosseff Amended Complaint"). The Kosseff Amended Complaint was not filed by the court appointed Lead Plaintiff in the Securities Actions, does not constitute the Consolidated Amended Complaint referred to in paragraph 22 below that is to be filed in the Securities Actions and will be superseded by the Consolidated Amended Complaint scheduled to be filed by Lead Plaintiff in the Securities Actions by April 21, 2008. Accordingly, the Kosseff Amended Complaint will not be the operative pleading and no defendant named in the Kosseff Amended Complaint shall be required to answer, move or otherwise respond to any pleading in that action.

WHEREAS, the following captioned actions (the "ERISA Actions") are pending in this Court against defendant Merrill Lynch, *et al.* purportedly alleging violations of the Employee Retirement Income Security Act ("ERISA"):

i)      *Elizabeth Estey v. Merrill Lynch & Co., Inc., et al.*, 07cv10268 (LBS);

ii)     *Mary Gidaro v. Merrill Lynch & Co., Inc., et al.*, 07cv10273 (LBS);

iii)    *Tara Moore v. Merrill Lynch & Co., Inc., et al.*, 07cv10398 (LBS);

iv)     *Gregory Yashgur v. Merrill Lynch & Co., Inc., et al.*, 07cv10569 (LBS);

v)      *Christine Donlon v. Merrill Lynch & Co., Inc., et al.*, 07cv10661 (LBS);

vi)     *Carl Esposito v. Merrill Lynch & Co., Inc., et al.*, 07cv10687 (LBS);

vii)    *Sean Saughnessey v. Merrill Lynch & Co., Inc., et al.*, 07cv10710 (LBS);

viii)   *Barbara Boland v. Merrill Lynch & Co., Inc., et al.*, 07cv11054 (LBS);

ix)     *Francis Lee Summers, III v. Merrill Lynch & Co., Inc., et al.*, 07cv11615 (LBS);

x)      *James Eastman v. Merrill Lynch & Co., Inc., et al.*, 08cv0058 (LBS); and

xi)     *Dominick J. Pascullo v. Merrill Lynch & Co., Inc., et al.*, 08cv1116 (LBS); and

WHEREAS, on February 21, 2008, the Court held a hearing and, for the reasons set forth on the record at the hearing, the Court determined the motions for consolidation and appointment of lead plaintiff and lead counsel in the Securities Actions; the motions for consolidation and appointment of a plaintiffs' executive committee and liaison counsel in the Derivative Actions; and the motions for consolidation and appointment of interim counsel in the ERISA Actions.

NOW THEREFORE IT IS HEREBY ORDERED THAT:

## SECURITIES ACTIONS

1.      Pursuant to Fed. R. Civ. P. 42(a) and Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"),15 U.S.C. § 78u-4(a)(3)(B)(ii), the Securities

Actions are consolidated into the docket number 07cv9633 (LBS)(AJP)(DFE) for all purposes including, but not limited to, discovery, pretrial proceedings and trial (the "Securities Action").

2.     Pursuant to Section 21D(a)(3)(B) of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B), Ohio STRS is appointed Lead Plaintiff in the Securities Action for the proposed class of persons and entities who purchased or otherwise acquired Merrill Lynch securities.

3.     Ohio STRS' choice of co-lead counsel is approved.  Accordingly, the law firms of Kaplan Fox & Kilsheimer LLP, Berger & Montague, P.C. and Barrack Rodos & Bacine are appointed co-Lead Counsel for the Securities Action.

## DERIVATIVE ACTIONS

4.     Pursuant to Fed. R. Civ. P. 42(a), the Derivative Actions are consolidated into the docket number 07cv9696 (LBS)(AJP)(DFE) for all purposes including, but not limited to, discovery, pretrial proceedings and trial (the "Derivative Action").

5.     The Court appoints Brower Piven, A Professional Corporation ("Brower Piven"), Johnson Bottini LLP and Saxena White LLP as Plaintiffs' Executive Committee in the Derivative Action, and appoints Brower Piven as Plaintiffs' Liaison Counsel in the Derivative Action.

## ERISA ACTIONS

6.     Pursuant to Fed. R. Civ. P. 42(a), the ERISA Actions are consolidated into the docket number 07cv10268 (LBS)(AJP)(DFE) for all purposes including, but not limited to, discovery, pretrial proceedings and trial (the "ERISA Action").

7.     Pursuant to Fed. R. Civ. P. 23(g)(2)(A) for the ERISA Action, the Court appoints the law firms of Keller Rohrback L.L.P. and Cohen, Milstein, Hausfeld & Toll, P.L.L.C as interim co-lead counsel to act on behalf of the putative class ("Interim Co-Lead Counsel").

## RESPONSIBILITIES AND DUTIES OF COUNSEL

8.  Co-Lead Counsel in the Securities Action, the Plaintiffs' Executive Committee in the Derivative Action and Interim Co-Lead Counsel in the ERISA Action, shall manage the prosecution of the respective actions to which each was appointed. Co-Lead Counsel in the Securities Action, the Plaintiffs' Executive Committee in the Derivative Action and Interim Co-Lead Counsel in the ERISA Action shall each avoid duplicative or unproductive activities and are hereby vested by the Court with responsibilities and duties that include in each of the respective actions to which they were appointed, without limitation, the following: 1) preparation of all pleadings; 2) direction and coordination of the briefing and arguing of motions in accordance with the schedules set by the orders and rules of this Court; 3) the initiation and direction of discovery; 4) the coordination of all communications with the defendants and the Court on behalf of the proposed class; 5) preparation of the case for trial; 6) trying of the actions, if required; and 7) the engagement in settlement negotiations.

9.  Co-Lead Counsel in the Securities Action, the Plaintiffs' Executive Committee in the Derivative Action and Interim Co-Lead Counsel in the ERISA Action shall coordinate efforts to avoid duplication including, but not limited, to discovery, if necessary.

10.  Defendants need only formally serve one law firm for each of Co-Lead Counsel in the Securities Action, the Plaintiffs' Executive Committee in the Derivative Action and Interim Co-Lead Counsel in the ERISA Action.

11.  Defendants shall be entitled to rely on any agreements with one law firm for each of Co-Lead Counsel in the Securities Action, the Plaintiffs' Executive Committee in the Derivative Action and Interim Co-Lead Counsel in the ERISA Action to the extent such one law firm represents to Defendants that, for any particular agreement, it has authority to speak for the other Co-Lead Counsel in the Securities Action, members of the Plaintiffs' Executive Committee

in the Derivative Action or other Interim Co-Lead Counsel in the ERISA Action, as the case may

be. Before entering any agreements with either defendants, Co-Lead Counsel in the Securities

Action and/or Interim Co-Lead Counsel in the ERISA Action, any member of Plaintiffs'

Executive Committee in the Derivative Action shall first obtain the consent of a majority of the

members of Plaintiffs' Executive Committee in the Derivative Action.  Plaintiffs' Liaison

Counsel in the Derivative Action is to sign all pleadings, motions, agreements and other papers

filed, served and/or entered into by plaintiffs in the Derivative Action.

## MASTER DOCKET AND CAPTION

12.     The docket in 07cv9633 (LBS)(AJP)(DFE) shall constitute the Master Docket for

the Securities Action, Derivative Action and ERISA Action.

13.     Every pleading filed in the Securities Action, Derivative Action and ERISA

Action shall bear the following caption:

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE MERRILL LYNCH & CO., INC. SECURITIES, DERIVATIVE AND ERISA LITIGATION | Master File No.: 07cv9633 (LBS)(AJP)(DFE) |
| This Document Relates To: | |

14.     The file in docket 07cv9633(LBS)(AJP)(DFE) shall constitute a master file for

the Securities Action, Derivative Action and ERISA Action.  When the document being filed

pertains to the Securities Action, Derivative Action and ERISA Action, the phrase "All Actions"

shall appear immediately after the phrase "This Document Relates To:".

15.     When a document applies only to one or more, but not all, of the actions, the

document shall list, immediately after the phrase "This Document Relates To:", Securities

Action, 07cv9633 (LBS)(AJP)(DFE), Derivative Action, 07cv9696 (LBS) (AJP)(DFE) and/or ERISA Action, 07cv10268 (LBS)(AJP)(DFE), as applicable.

16.    Courtesy copies of all correspondence and filings shall be provided to each of Judge Sand, Magistrate Judge Peck and Magistrate Judge Eaton.

17.    A copy of this Order shall be placed in all dockets identified in pages 1-2 herein. The Clerk of this Court is directed to close each of those dockets, other than the dockets in the Securities Action, 07cv9633 (LBS)(AJP)(DFE), Derivative Action, 07cv9696 (LBS) (AJP)(DFE) and ERISA Action, 07cv10268 (LBS)(AJP)(DFE).

18.    This Court requests the assistance of counsel in calling to the attention of the Clerk of this Court the filing or transfer of any case that might properly be consolidated as part of the Securities Action, 07cv9633 (LBS)(AJP)(DFE), Derivative Action, 07cv9696 (LBS) (AJP)(DFE) and/or ERISA Action, 07cv10268 (LBS)(AJP)(DFE).

19.    When a case that arises out of the same subject matter of the Securities Action, the Derivative Action or the ERISA Action is hereinafter filed in this Court or transferred from another Court, the Clerk of this Court shall:

(a)    File a copy of this Order in the separate file for such action;

(b)    Mail a copy of this Order to the attorneys for the plaintiff(s) in the newly-filed or transferred case and to any new defendant(s) in the newly-filed or transferred case; and

(c)    Make the appropriate entry in the Master Docket.

20.    Each new case that arises out of the subject matter of either the Securities Action, the Derivative Action or the ERISA Action which is filed in, or transferred to, this Court, shall be consolidated with the Securities Action, the Derivative Action or the ERISA Action, as appropriate, and this Order shall apply thereto, unless a party objects to consolidation, as provided for herein, or any provision of this Order, within ten (10) days after the date upon

- 6 -

which a copy of this Order is served on counsel for such party, by filing an application for relief and this Court deems it appropriate to grant such application.

21.     The defendants do not have to answer, move, or otherwise respond to any complaints filed in any of actions consolidated hereunder or any action subsequently filed and consolidated. Nothing in the foregoing shall be construed as a waiver of the defendants' right to object to consolidation of any subsequently-filed or transferred related action.

**SCHEDULING FOR THE FILING OF SEPARATE CONSOLIDATED AMENDED COMPLAINTS AND RESPONSES IN THE SECURITIES ACTION, DERIVATIVE ACTION AND ERISA ACTION**

22.     Lead Plaintiff in the Securities Action, Plaintiffs' Executive Committee in the Derivative Action and Interim Co-Lead Counsel in the ERISA Action shall each file a separate Consolidated Amended Complaint no later than April 21, 2008. The Consolidated Amended Complaint in each of the Securities Action, 07cv9633 (LBS)(AJP)(DFE), Derivative Action, 07cv9696 (LBS) (AJP)(DFE), and ERISA Action, 07cv10268 (LBS)(AJP)(DFE) shall be the only operative complaints.

23.     Defendants in each of the Securities Action, 07cv9633 (LBS)(AJP)(DFE), Derivative Action, 07cv9696 (LBS) (AJP)(DFE) and/or ERISA Action, 07cv10268 (LBS)(AJP)(DFE), shall have to and including June 20, 2008 to answer, move or otherwise respond to each of the Consolidated Amended Complaints.

24.     In the event that defendants file motions to dismiss the Consolidated Amended Complaint in one or more of the Securities Action, 07cv9633 (LBS)(AJP)(DFE), Derivative Action, 07cv9696 (LBS) (AJP)(DFE) and/or ERISA Action, 07cv10268 (LBS)(AJP)(DFE), Lead Plaintiff in the Securities Action, Plaintiffs' Executive Committee in the Derivative Action and Interim Co-Lead Counsel in the ERISA Action, as applicable, shall serve any opposition to such motions no later than July 21, 2008.

25.     Defendants shall serve any reply papers in further support of any such motions to dismiss no later than August 19, 2008.

SO ORDERED.

DATED:  New York, New York
        March 12, 2008

_____
USDJ

Michael R. Griffinger
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102-5310
mgriffinger@gibbonslaw.com
Tel: 973-596-4500
Fax: 973-639-6294

Jay B. Kasner (*Pro Hac Vice* Application to be Filed)
Scott D. Musoff
**SKADDEN, ARPS, SLATE,**
 **MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
Tel: 212-735-3000
Fax: 212-735-2000

*Co-counsel for Nominal Defendant*
*Merrill Lynch & Co., Inc.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DAVID EIDMAN, Derivatively on Behalf of
MERRILL LYNCH & CO., INC.,

                                 :   Civil Action No. 08-126 (SDW) (MCA)

           Plaintiff,           :   **<u>CERTIFICATE OF SERVICE</u>**

              vs.             :   **Document Filed Electronically**

ERNEST STANLEY O'NEAL, CAROL T.
CHRIST, ARMANDO M. CODINA, VIRGIS W.   :
COLBERT, ALBERTO CRIBIORE, JOHN D.
FINNEGAN, JUDITH MAYHEW JONAS,      :
AULANA L. PETERS, JOSEPH W. PRUEHER,
ANN N. REESE and CHARLES O. ROSOTTI,   :

                               :

          Defendants,          :

            -and-            :

MERRILL LYNCH & CO., INC.,

                               :

         Nominal Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

I, **MELISSA C. FULTON**, hereby certify as follows:

1.      I am an associate of the law firm of Gibbons P.C., co-counsel for nominal defendant Merrill Lynch & Co., Inc. ("Merrill Lynch") in the above-captioned action.

2.      On March 17, 2008, pursuant to Local Civil Rule 5.2, I electronically filed and served (i) Merrill Lynch's March 17, 2008 letter to the Honorable Susan D. Wigenton, U.S.D.J. together with the enclosure to the same letter and (ii) this Certificate of Service; upon the following counsel:

James V. Bashian, Esq.
LAW OFFICES OF
JAMES V. BASHIAN, P.C.
271 Route 46 West, Suite F207
Fairfield, NJ 07004
jbashian@bashianlaw.com
*Attorneys for Plaintiffs*

Paul O. Paradis, Esq.
HORWITZ, HORWITZ & PARADIS
28 West 44th Street, 16th Floor
New York, NY 10036
PParadis@HHPLAWNY.COM
*Attorneys for Plaintiffs*

I simultaneously transmitted each of the preceding documents to Messrs. Bashian and Paradis by electronic mail.

3.      Also on March 17, 2008, I caused true and correct copies of each of the preceding documents to be served upon the following counsel by electronic mail and regular mail:

Michael J. Chepiga, Esq.
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017-3954
mchepiga@stblaw.com
*Attorneys for Defendant Ernest Stanley O'Neal*

Michael Schwartz, Esq.
HORWITZ, HORWITZ & PARADIS
28 West 44th Street, 16th Floor
New York, NY 10036
mschwartz@hhplawny.com
*Attorneys for Plaintiffs*

Jason M. Halper, Esq.
CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, NY 10281
jason.halper@cwt.com
*Attorneys for Defendants Carol T. Christ, Armando M. Codina,*
*Virgis W. Colbert, Alberto Cribiore, John D. Finnegan, Judith Mayhew*
*Jonas, Aulana L. Peters, Joseph W. Prueher, Ann N. Reese and Charles O. Rossotti*

2

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

MELISSA C. FULTON

Dated:  March 17, 2008
        Newark, New Jersey

#1284295 v1
101454-61824



MICHAEL R. GRIFFINGER
Director

Gibbons P.C.
One Gateway Center
Newark, New Jersey 07102-5310
Direct: (973) 596-4701 Fax: (973) 639-6294
griffinger@gibbonslaw.com

April 7, 2008

**BY HAND DELIVERY AND ECF**

Hon. Susan D. Wigenton, U.S.D.J.
United States District Court, District of New Jersey
Martin Luther King, Jr. Federal Building & U.S. Courthouse
50 Walnut Street, Room 5060
Newark, New Jersey 07101

Re:   **Eidman v. O'Neal, Civil Action No. 08-126 (SDW) (MCA)**

Dear Judge Wigenton:

Gibbons P.C. is co-counsel for nominal defendant Merrill Lynch & Co., Inc. in the above-referenced action. We write to apprise the Court of the April 7, 2008 Transfer Order of the United States Judicial Panel on Multidistrict Litigation (the "Transfer Order") transferring this action, pursuant to 28 U.S.C. § 1407, to the Southern District of New York and, with the consent of that court, assigning it to the Honorable Leonard B. Sand for coordinated and consolidated pretrial proceedings with the related actions pending there. A copy of the Transfer Order is enclosed for Your Honor's reference.

Respectfully submitted,

s/ Michael R. Griffinger

Michael R. Griffinger
Director

Enclosure

MRG/mcf

cc:   Hon. Madeline Cox Arleo, U.S.M.J. (By Hand Delivery)
      James V. Bashian, Esq. (*via* email and regular mail)
      Paul O. Paradis, Esq. (*via* email and regular mail)
      Michael Schwartz, Esq. (*via* email and regular mail)
      Michael J. Chepiga, Esq. (*via* email and regular mail)
      Jason M. Halper, Esq. (*via* email and regular mail)

UNITED STATES
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

# UNITED STATES JUDICIAL PANEL
### on
## MULTIDISTRICT LITIGATION

**Apr 07, 2008**

FILED
CLERK'S OFFICE

IN RE: MERRILL LYNCH & CO., INC.,
SECURITIES, DERIVATIVE & "ERISA"
LITIGATION

MDL No. 1933

## TRANSFER ORDER

**Before the entire Panel**[*]: Defendant Merrill Lynch & Co., Inc. (Merrill Lynch) has moved, pursuant to 28 U.S.C. § 1407, for coordinated or consolidated pretrial proceedings of this litigation in the Southern District of New York. Plaintiffs in four Southern District of New York actions and interested party plaintiff the State Teachers' Retirement System of Ohio support or do not oppose the motion.

This litigation currently consists of eighteen actions listed on Schedule A and pending in two districts, seventeen actions in the Southern District of New York and one action in the District of New Jersey.

After considering all argument of counsel, we find that these actions involve common questions of fact, and that centralization under Section 1407 in the Southern District of New York will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation. These actions share factual questions arising from Merrill Lynch's conduct and representations regarding its investments in collateralized debt obligations secured by subprime mortgage debt. Whether the actions are brought by securities holders seeking relief under the federal securities laws, shareholders suing derivatively on behalf of Merrill Lynch, or participants in retirement savings plans suing for violations of ERISA, all actions can be expected to focus on a significant number of common events, defendants, and/or witnesses. Centralization under Section 1407 will eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel and the judiciary.

We are persuaded that the Southern District of New York is an appropriate transferee forum for this litigation. Merrill Lynch is headquartered in New York and, therefore, discovery is likely to take place there. Moreover, all actions save one are already pending in that district.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, the action listed on Schedule A and pending outside the Southern District of New York is transferred to the Southern District of New York and, with the consent of that court, assigned to the Honorable Leonard B. Sand for coordinated or consolidated pretrial proceedings with the actions pending there and listed on Schedule A.

---

[*] Judge Scirica did not participate in the disposition of this matter.

-2-

PANEL ON MULTIDISTRICT LITIGATION

_John G. Heyburn II_
Chairman

| D. Lowell Jensen | J. Frederick Motz |
| Robert L. Miller, Jr. | Kathryn H. Vratil |
| David R. Hansen | Anthony J. Scirica[*] |

**IN RE: MERRILL LYNCH & CO., INC.,
SECURITIES, DERIVATIVE & "ERISA"
LITIGATION**                                            MDL No. 1933

## SCHEDULE A

District of New Jersey

David Eidman, etc. v. E. Stanley O'Neal, et al., C.A. No. 2:08-126

Southern District of New York

Life Enrichment Foundation v. Merrill Lynch & Co., Inc., et al., C.A. No. 1:07-9633
Patricia Arthur, etc. v. E. Stanley O'Neal, et al., C.A. No. 1:07-9696
Miriam Loveman, etc. v. E. Stanley O'Neal, et al., C.A. No. 1:07-9888
Elizabeth Estey v. Merrill Lynch & Co., Inc., et al., C.A. No. 1:07-10268
Mary Gidaro v. Merrill Lynch & Co., Inc., et al., C.A. No. 1:07-10273
Tara Moore v. Merrill Lynch & Co., Inc., et al., C.A. No. 1:07-10398
Gregory Yashgur v. Merrill Lynch & Co., Inc., et al., C.A. No. 1:07-10569
Christine Donlon v. Merrill Lynch & Co., Inc., et al., C.A. No. 1:07-10661
Carl Esposito v. Merrill Lynch & Co., Inc., et al., C.A. No. 1:07-10687
Sean Shaughnessey, etc. v. Merrill Lynch & Co., Inc., et al., C.A. No. 1:07-10710
Gary Kosseff v. Merrill Lynch & Co., Inc., et al., C.A. No. 1:07-10984
Barbara Boland, et al. v. Merrill Lynch & Co., Inc., et al., C.A. No. 1:07-11054
Robert R. Garber v. Merrill Lynch & Co., Inc., et al., C.A. No. 1:07-11080
Operative Plasterers & Cement Masons Local 262 Pension & Annuity Funds, etc. v. E.
    Stanley O'Neal, et al., C.A. No. 1:07-11085
Francis Lee Summers, III v. Merrill Lynch & Co., Inc., et al., C.A. No. 1:07-11615
James Conn v. Merrill Lynch & Co., Inc., et al., C.A. No. 1:07-11626
James Eastman v. Merrill Lynch & Co., Inc., et al., C.A. No. 1:08-58

Michael R. Griffinger
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102-5310
mgriffinger@gibbonslaw.com
Tel: 973-596-4500
Fax: 973-639-6294

Jay B. Kasner (*Pro Hac Vice* Application to be Filed)
Scott D. Musoff
**SKADDEN, ARPS, SLATE,**
 **MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
Tel: 212-735-3000
Fax: 212-735-2000

*Co-Counsel for Nominal Defendant*
*Merrill Lynch & Co., Inc.*

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DAVID EIDMAN, Derivatively on Behalf of
MERRILL LYNCH & CO., INC.,

               Plaintiff,

               vs.

ERNEST STANLEY O'NEAL, CAROL T.
CHRIST, ARMANDO M. CODINA, VIRGIS W.
COLBERT, ALBERTO CRIBIORE, JOHN D.
FINNEGAN, JUDITH MAYHEW JONAS,
AULANA L. PETERS, JOSEPH W. PRUEHER,
ANN N. REESE and CHARLES O. ROSOTTI,

               Defendants,

               -and-

MERRILL LYNCH & CO., INC.,

               Nominal Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

: Civil Action No. 08-126 (SDW) (MCA)

: **CERTIFICATE OF SERVICE**

: **Document Filed Electronically**

:

:

:

:

:

:

:

:

I, **MELISSA C. FULTON**, hereby certify as follows:

1.     I am an associate of the law firm of Gibbons P.C., co-counsel for nominal defendant Merrill Lynch & Co., Inc. ("Merrill Lynch") in the above-captioned action.

2.     On April 7, 2008, pursuant to Local Civil Rule 5.2, I electronically filed and served (i) Merrill Lynch's April 7, 2008 letter to the Honorable Susan D. Wigenton, U.S.D.J. together with the enclosure to the same letter and (ii) this Certificate of Service; upon the following counsel:

James V. Bashian, Esq.  
LAW OFFICES OF  
JAMES V. BASHIAN, P.C.  
271 Route 46 West, Suite F207  
Fairfield, NJ 07004  
jbashian@bashianlaw.com  
*Attorneys for Plaintiffs*

Paul O. Paradis, Esq.  
HORWITZ, HORWITZ & PARADIS  
28 West 44th Street, 16th Floor  
New York, NY 10036  
PParadis@HHPLAWNY.COM  
*Attorneys for Plaintiffs*

I simultaneously transmitted each of the preceding documents to Messrs. Bashian and Paradis by electronic mail.

3.     Also on April 7, 2008, I caused true and correct copies of each of the preceding documents to be served upon the following counsel by electronic mail and regular mail:

Michael J. Chepiga, Esq.  
SIMPSON THACHER & BARTLETT LLP  
425 Lexington Avenue  
New York, NY 10017-3954  
mchepiga@stblaw.com  
*Attorneys for Defendant Ernest Stanley O'Neal*

Michael Schwartz, Esq.  
HORWITZ, HORWITZ & PARADIS  
28 West 44th Street, 16th Floor  
New York, NY 10036  
mschwartz@hhplawny.com  
*Attorneys for Plaintiffs*

Jason M. Halper, Esq.  
CADWALADER, WICKERSHAM & TAFT LLP  
One World Financial Center  
New York, NY 10281  
jason.halper@cwt.com  
*Attorneys for Defendants Carol T. Christ, Armando M. Codina,*  
*Virgis W. Colbert, Alberto Cribiore, John D. Finnegan, Judith Mayhew*  
*Jonas, Aulana L. Peters, Joseph W. Prueher, Ann N. Reese and Charles O. Rossotti*

#1297317 v1  
101454-61824

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

MELISSA C. FULTON

Dated:  April 7, 2008
            Newark, New Jersey

3

DAVID EIDMAN, Derivatively on
Behalf of MERRILL LYNCH & CO.,
INC.,

    Plaintiff,

    -vs-

ERNEST STANLEY O'NEAL, et al.

    Defendants,

:      UNITED STATES DISTRICT COURT
:      DISTRICT OF NEW JERSEY
:
:
:
:      Civil Action No. 08-126 (SDW)
:
:      ORDER
:
:
:
:
:

      **THIS MATTER** having been opened to the Court by the Motion of Nominal Defendant

Merrill Lynch & Co., Inc. ("Merrill Lynch") to Stay Proceedings Pending a Ruling on Transfer and

Consolidation by the Judicial Panel on Multidistrict Litigation ("Panel") (Dkt. Entry No. 7) and the

Motion of Plaintiff, David Eidman, derivatively on behalf of Merrill Lynch & Co., Inc. ("Plaintiff")

to remand the pending action to the Superior Court of New Jersey (Dkt. Entry No. 10); the Court

having considered the papers submitted in support of and in opposition to the motions; for good

cause shown; and in light of the Panel's Order, attached hereto;

      **IT IS on this 1st day of May, 2008,**

      **ORDERED** that Defendant Merrill Lynch's Motion to Stay (Dkt Entry No. 7) is DENIED

AS MOOT; and

      **IT IS FURTHER ORDERED** that Plaintiff's Motion to Remand (Docket Entry No. 10) is

DENIED AS MOOT.

                                                                                  Hon. Madeline Cox Arleo, U.S.M.J.

# 08 CV 03392

A CERTIFIED TRUE COPY

ATTEST

By Mecca Thompson on Apr 07, 2008

FOR THE UNITED STATES
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUDGE SAND

UNITED STATES
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

### UNITED STATES JUDICIAL PANEL
### on
### MULTIDISTRICT LITIGATION

**Apr 07, 2008**

FILED
CLERK'S OFFICE

IN RE: MERRILL LYNCH & CO., INC.,
SECURITIES, DERIVATIVE & "ERISA"
LITIGATION

MDL No. 1949

CIV 08-126
SDW/MCA

**TRANSFER ORDER**

**Before the entire Panel**[*]: Defendant Merrill Lynch & Co., Inc. (Merrill Lynch) has moved, pursuant to 28 U.S.C. § 1407, for coordinated or consolidated pretrial proceedings of this litigation in the Southern District of New York. Plaintiffs in four Southern District of New York actions and interested party plaintiff the State Teachers' Retirement System of Ohio support or do not oppose the motion.

This litigation currently consists of eighteen actions listed on Schedule A and pending in two districts, seventeen actions in the Southern District of New York and one action in the District of New Jersey.

After considering all argument of counsel, we find that these actions involve common questions of fact, and that centralization under Section 1407 in the Southern District of New York will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation. These actions share factual questions arising from Merrill Lynch's conduct and representations regarding its investments in collateralized debt obligations secured by subprime mortgage debt. Whether the actions are brought by securities holders seeking relief under the federal securities laws, shareholders suing derivatively on behalf of Merrill Lynch, or participants in retirement savings plans suing for violations of ERISA, all actions can be expected to focus on a significant number of common events, defendants, and/or witnesses. Centralization under Section 1407 will eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel and the judiciary.

We are persuaded that the Southern District of New York is an appropriate transferee forum for this litigation. Merrill Lynch is headquartered in New York and, therefore, discovery is likely to take place there. Moreover, all actions save one are already pending in that district.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, the action listed on Schedule A and pending outside the Southern District of New York is transferred to the Southern District of New York and, with the consent of that court, assigned to the Honorable Leonard B. Sand for coordinated or consolidated pretrial proceedings with the actions pending there and listed on Schedule A.

---

[*] Judge Scirica did not participate in the disposition of this matter.

A CERTIFIED COPY
J. MICHAEL McMAHON

BY _____
DEPUTY CLERK

CLERK

-2-

PANEL ON MULTIDISTRICT LITIGATION

John G. Heyburn II
Chairman

D. Lowell Jensen            J. Frederick Motz
Robert L. Miller, Jr.       Kathryn H. Vratil
David R. Hansen             Anthony J. Scirica*

IN RE: MERRILL LYNCH & CO., INC.,
SECURITIES, DERIVATIVE & "ERISA"
LITIGATION                                    MDL No. 1933

## SCHEDULE A

### District of New Jersey

David Eidman, etc. v. E. Stanley O'Neal, et al., C.A. No. 2:08-126

### Southern District of New York

Life Enrichment Foundation v. Merrill Lynch & Co., Inc., et al., C.A. No. 1:07-9633
Patricia Arthur, etc. v. E. Stanley O'Neal, et al., C.A. No. 1:07-9696
Miriam Loveman, etc. v. E. Stanley O'Neal, et al., C.A. No. 1:07-9888
Elizabeth Estey v. Merrill Lynch & Co., Inc., et al., C.A. No. 1:07-10268
Mary Gidaro v. Merrill Lynch & Co., Inc., et al., C.A. No. 1:07-10273
Tara Moore v. Merrill Lynch & Co., Inc., et al., C.A. No. 1:07-10398
Gregory Yashgur v. Merrill Lynch & Co., Inc., et al., C.A. No. 1:07-10569
Christine Donlon v. Merrill Lynch & Co., Inc., et al., C.A. No. 1:07-10661
Carl Esposito v. Merrill Lynch & Co., Inc., et al., C.A. No. 1:07-10687
Sean Shaughnessey, etc. v. Merrill Lynch & Co., Inc., et al., C.A. No. 1:07-10710
Gary Kosseff v. Merrill Lynch & Co., Inc., et al., C.A. No. 1:07-10984
Barbara Boland, et al. v. Merrill Lynch & Co., Inc., et al., C.A. No. 1:07-11054
Robert R. Garber v. Merrill Lynch & Co., Inc., et al., C.A. No. 1:07-11080
Operative Plasterers & Cement Masons Local 262 Pension & Annuity Funds, etc. v. E.
    Stanley O'Neal, et al., C.A. No. 1:07-11085
Francis Lee Summers, III v. Merrill Lynch & Co., Inc., et al., C.A. No. 1:07-11615
James Conn v. Merrill Lynch & Co., Inc., et al., C.A. No. 1:07-11626
James Eastman v. Merrill Lynch & Co., Inc., et al., C.A. No. 1:08-58

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
### OFFICE OF THE CLERK
50 WALNUT STREET
NEWARK, NEW JERSEY 07101

CAMDEN OFFICE
1 JOHN F. GERRY PLAZA
CAMDEN, NJ 08101

WILLIAM T. WALSH
Clerk

TRENTON OFFICE
402 EAST STATE STREET
ROOM 2020
TRENTON, NJ 08608

CLERK'S OFFICE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
500 Pearl Street
New York, NY 10007

REPLY TO: <u>NEWARK</u>

6/6/08

Re: EIDMAN v O'NEAL, ETAL
**Civil Docket No.** 08-126

Dear Clerk:

The above-captioned case has been transferred to your court pursuant to the enclosed Certified copy of the MDL Order dated 6/5/08. Also enclosed is a Certified Copy of the Docket Sheet. You can obtain the original record by accessing CM/ECF through PACER. Kindly acknowledge receipt on the duplicate of this letter, which is provided for your convenience.

Very truly yours,

WILLIAM T. WALSH, Clerk

By: Jane DelleMonache
Jane DelleMonache
Deputy Clerk

**RECEIPT ACKNOWLEDGED BY:** _____ **DATE:** _____.

**YOUR CIVIL DOCKET NUMBER:** _____.

UNITED STATES DISTRICT COURT
Southern District of New York
Office of the Clerk
500 Pearl Street
New York, N.Y. 10007
(212)805-0136

**RECEIVED**

**JUN 5 – 2008**

AT 8:30_____M
WILLIAM T. WALSH, CLERK

J. Michael McMahon
Clerk
DISTRICT OF NEW JERSEY

Date:     04/07/2008

In Re:     MERRILL LYNCH & CO.

MDL     1933

Your Docket #
2:08-126
SDW | MCA

S.D. OF N.Y.
08 CV 3392

Dear Sir:

Enclosed is a certified copy of the order of the Judicial Panel on Multidistrict Litigation, transferring the above entitled action presently pending in your court, to the Southern District of New York and assigned to Judge SAND   for coordinated or consolidated pretrial processing pursuant to 28 USC 1407.

Please return the copy of this letter when transmitting YOUR FILE and a CERTIFIED COPY OF THE DOCKET SHEET.

Sincerely,
J.Michael McMahon

By: PHYLLIS ADAMIK
MDL Unit
(212) 805-0646

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

UNITED STATES DISTRICT COURT
Southern District of New York
Office of the Clerk
500 Pearl Street
New York, N.Y. 10007

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by *(Please Print Clearly)*   B. Date of Delivery

C. Signature

X   ☐ Agent
    ☐ Addressee

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☐ Certified Mail      ☐ Express Mail
   ☐ Registered          ☐ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)*   ☐ Yes

2. Article Number

PS Form

7595-00-M-0952

*Thomas 08-136*